SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
J. BARRETT MARUM, Cal. Bar No. 228628
MATT KLINGER, Cal. Bar No. 307362
GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        okatz@sheppardmullin.com
              bmarum@sheppardmullin.com
              mklinger@sheppardmullin.com
              gsegretti@sheppardmullin.com

Proposed Counsel for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 20-30604 |
| | (Jointly Administered with Case No. 20-30579) |
| PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation; PROFESSIONAL INVESTORS SECURITY FUND, INC., a California corporation, | Chapter 11 |
| | **DEBTORS' EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTOR TO HONOR PREPETITION OBLIGATIONS TO EMPLOYEES** |
| Debtors. | |
| | [*Hearing Requested on Shortened Time*] |
| | Date:    August 5, 2020 |
| | Time:    TBD |
| | Judge:   Hannah L. Blumenstiel |
| | Place:   **Telephonic/Video Appearances Only** |
| | 450 Golden Gate Avenue |
| | 16th Floor, Courtroom 19 |
| | San Francisco, CA 94102 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................... 1

II. STATEMENT OF FACTS ......................................................... 3

    A.   The Debtors' Background.......................................................... 3

    B.   The Debtors' Employees and Employee Claims ......................... 3

    C.   PFI's ' Employees are Essential to The Debtors' Continued Operations and to Preserve the Value of the Estates.................... 4

    D.   Employee Benefits.................................................................. 5

        1.   Paid Time Off Benefits. ................................................ 6

        2.   Medical and Dental Benefits. ......................................... 6

    E.   Employee Reimbursements ...................................................... 7

III. NEED FOR RELIEF ................................................................ 8

IV. REQUESTED RELIEF ............................................................. 8

V. ARGUMENT ........................................................................... 9

    A.   PFI's Employees Are Essential to the Debtors' Continued Operations........ 9

    B.   Honoring The Prepetition Employee Obligations Is Just And Necessary To Preserve Employee Morale. ................................. 10

    C.   The Prepetition Employee- Related Amounts Are Within The Priority Claim Cap of Section 507(a)(4) And Would Be Paid Ahead of Unsecured Claims. ............................................................... 11

    D.   Reimbursing Employee Business Expenses and Honoring Employee Benefits Programs Are Matters that Are Within the Debtors' Business Judgment. ............................................................................ 12

    E.   It Is In The Best Interests Of the Debtors' Estates that Prepetition Payroll and Reimbursement Payments Be Paid and the Benefit Programs Be Maintained as to Continuing Employees. ................. 13

VI. EMERGENCY CONSIDERATION ......................................... 14

VII. REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS .................. 14

VIII. CONCLUSION ...................................................................... 15

Case: 20-30604    Doc# 21    Filed: 07/30/20    Entered: 07/30/20 22:35:31    Page 2 of 23

# TABLE OF AUTHORITIES

**Page(s)**

Cases

Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)
   829 F.2d 1484 (9th Cir. 1987) ...................................................................................... 11

Czyzewski v. Jevic Holding Corp.
   137 S. Ct. 973 (2016) .................................................................................................. 10

Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.)
   37 B.R. 334 (W.D. Mo. 1984), appeal dismissed, 738 F. 2d 445 (8th Cir.
   1984) ............................................................................................................................ 13

In re Eagle-Picher Indus., Inc.
   124 B.R. 1021 (Bankr. S.D. Ohio 1991) ..................................................................... 13

In re Equalnet Comm. Corp.
   258 B.R. 368 (Bankr. S.D. Tex. 2000) .......................................................................... 9

In re Gulf Air, Inc.
   112 B.R. 152 (Bankr. W.D. La. 1989) ............................................................... 9, 12, 13

LTV Corp. v. Aetna Cas. & Surety Co. (In re Chateaugay Corp.)
   116 B.R. 887 (Bankr. S.D.N.Y. 1990) ............................................................... 9, 12, 13

Statutes

11 U.S.C. .................................................................................................. 1, 3, 9, 10, 12, 14

11 U.S.C. §§ 105 and 507 ...................................................................................................... 1

11 U.S.C. § 507(a) ............................................................................................................... 11

11 U.S.C. § 507(a)(4) ..................................................................................................... 11, 12

11 U.S.C. § 507(a)(5) ........................................................................................................... 12

11 U.S.C. § 549 .................................................................................................................... 13

Bankruptcy Code ................................................................................................................. 11

Bankruptcy Code §§ 1107(a) and 1108 ................................................................................. 3

Other Authorities

Bankruptcy Rule 6003 ......................................................................................................... 14

Case: 20-30604    Doc# 21    Filed: 07/30/20    Entered: 07/30/20 22:35:31    Page 3 of 23

Bankruptcy Rule 6004 ........................................................................... 14

Bankruptcy Rule 6004(a) ................................................................. 14, 15

Bankruptcy Rule 6004(h) ................................................................. 14, 15

4 *Collier on Bankruptcy* ¶ 507.06 (16th ed. rev. 2019) ..................................... 10

Case: 20-30604    Doc# 21    Filed: 07/30/20    Entered: 07/30/20 22:35:31    Page 4 of 23

## INTRODUCTION

Professional Financial Investors, Inc. ("PFI") and Professional Investors Security Fund, Inc. ("PISF" and, together with PFI, the "Debtors"), the debtors in the respective above-captioned bankruptcy cases, move this Court, on an emergency basis, for an interim and final order authorizing – but not requiring – PFI, the only Debtor in these Bankruptcy Cases that has employees, to pay any prepetition claims arising from the Debtors' employee benefit plans and programs, and otherwise honor, in the ordinary course of business, existing employee benefit plans and programs and paid time off accruals, including all related costs and expenses, as such policies were in effect as of the commencement of these cases, even if so doing involves honoring prepetition claims.

The Debtors bring this motion (the "Motion") pursuant to Sections 105 and 507 of title 11 of the United States Code.  This motion is based on the discussion below, the *Declaration of Michael Hogan in Support of the Bankruptcy Filing and Early Case Administration Motions* filed on July 26, 2017 as Docket No. 5 (the "First Day Hogan Declaration"), as supplemented by the *Supplemental Declaration of Michael Hogan in Support of the Bankruptcy Filing and Early Case Administration Motions* filed concurrently with this motion (the First Day Hogan Declaration, as so supplemented, the "Hogan Declaration"), the other papers of record in this case and upon such further oral and documentary evidence as may be presented prior to or at the time of the hearing on the motion.

The relief requested in this Motion is necessary and appropriate to ensure a smooth transition into chapter 11, to maintain existing business operations during the turbulent early stages of this bankruptcy case, to maintain stable operations at the numerous apartment buildings and office parks owned directly by the Debtors or in which they have an indirect ownership interest (each individually a "Real Property" and, collectively, the "Real Properties") for the benefit of each Real Properties' respective tenants, and to preserve and maximize the value of the Real Properties for the benefit of the Debtors'

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 5 of 23

creditors.  PFI serves as the property manager for all of the Real Properties as well as the operational arm that manages and accounts for both Debtors' activities.  PFI is continuing to perform those roles post-petition and the Debtors believe that any failure to honor certain of PFI's employee-related obligations in the ordinary course of its business would create hardship and discontent among PFI's employees, which would in turn decrease productivity and undermine PFI's ability to retain employees and both Debtors' abilities to continue normal operations, and ultimately, to preserve and maximize the value of their assets, including the Real Properties.  No insiders of either PFI or PISF are current employees and so the relief covered in this motion does not request any relief regarding insiders.

If PFI cannot assure its employees that it will promptly pay employment-related payments and benefits, employee morale and the Debtors' operations will suffer, and numerous tenants and the Real Properties likely will be negatively impacted.  The Debtors believe that the livelihood of many of the employees of PFI depends on the income provided through their work for PFI.  Many of them rely on their wages as their only source of income, and the loss of this income for even a few days may result in a financial hardship for them.  Additionally, many of PFI's employees have incurred hundreds of dollars of prepetition reimbursable expenses in the course of their employment, which they would be otherwise obligated to pay themselves.  Lastly, PFI's employees and their dependents would also unduly suffer if they were to be unable to utilize PFI's medical benefits, which are particularly essential during the current COVID-19 pandemic.  Employee support for the Debtors' continued operations is critical.  Without such support, the Debtors face the imminent risk that their operations will be severely impaired, potentially endangering the well-being and business operations of the tenants at the Real Properties.

SMRH:4834-8871-3669.5

## II.

## STATEMENT OF FACTS

**A. The Debtors' Background.**

PFI commenced its bankruptcy case, Case No. 20-30604 (the "PFI Case"), by filing a voluntary chapter 11 petition on July 26, 2020. PISF's bankruptcy case, Case No. 20-30579 (the "PISF Case" and together with the PFI Case, the "Bankruptcy Cases") commenced July 16, 2020 when certain investors filed an involuntary chapter 11 petition against PISF. The Debtors continue to operate their respective businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee has been appointed by the Office of the United States Trustee in either of the Bankruptcy Cases.

The Hogan Declaration contains a detailed discussion of the Debtors' background, capital structure, and the events leading to their chapter 11 cases. The discussion contained in the Hogan Declaration is incorporated in this motion as though fully set forth here.

**B. The Debtors' Employees and Employee Claims**

As of the date each of the Bankruptcy Cases commenced, various amounts of prepetition employee obligations were owed or had accrued because, among other things:

(a) PFI filed its chapter 11 petition in the middle of one of its regular and customary expense reimbursement periods. PFI normally distributes expense reimbursement checks to its employees on or around the fifteenth (15th) day of each month for all expenses incurred by such Employees over the course of the preceding month. On July 15, 2020, PFI issued expense reimbursement checks for expenses incurred by its employees up through that date; however, the next round of reimbursement checks covering expenses incurred by PFI's employees beginning on July 16, 2020 are not due to be issued until on or about August 15, 2020. Accordingly, various amounts in prepetition expense reimbursement liabilities were due and owing as of the date the PFI Case commenced.

(b)     Some payroll and expense reimbursement checks issued to PFI employees prior to the date the PFI Case commenced have not been presented for payment yet or have not cleared the banking systems yet and, accordingly, have not been honored and paid as of such date; and

(c)     Certain other forms of compensation (including sick pay, paid time off, and withholdings for benefit plan contributions) related to prepetition services have not been honored because such benefits, although accrued before the date the PFI Case commenced, were not payable but rather will become payable in the ordinary course of PFI's business.

For the reasons discussed below, it is crucial that PFI be authorized to pay certain prepetition benefits and expense reimbursements to their employees.

**C.     PFI's ' Employees are Essential to The Debtors' Continued Operations and to Preserve the Value of the Estates**

PFI has a total staff of forty five (45) full-time employees in the United States (the "Employees").  PISF does not currently have any employees.  PFI serves as the property manager for all of the Debtors' Real Properties, which consist of approximately seventy total apartment complexes and office parks in Marin and Sonoma Counties, California. Approximately eleven (11) of PFI's Employees occupy administrative roles (e.g., accounting, marketing, leasing, and business development), while the majority are employed to manage and maintain the Real Properties. This includes eight (8) Employees whose primary role is commercial property management and twenty-six (26) Employees whose role is residential property management and maintenance (e.g., Property Managers, Maintenance Technicians, and Facilities Coordinators), of which six (6) are Resident Property Managers who each live on-site at one of the Real Properties.  Accordingly, if any of PFI's Employees were to leave, operations at the Real Properties – including those in which PISF has an ownership interest — almost certainly would be negatively impacted and potentially cease, the tenants at the Real Properties likely would suffer, and the value of the Real Properties would be reduced.  Accordingly, PFI's Employees are essential to

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 8 of 23

both Debtors' continued operations and viability, as well as to the Debtors' ability to fulfill their duties as debtors-in-possession in these bankruptcy cases. Certain PFI Employees are and will be involved in preparing the schedules and statement of financial affairs in this case, preparing financial analyses and budgets, preparing monthly operating reports, overseeing both Debtors' operations, and managing and maintaining both Debtors' Real Properties during the pendency of these bankruptcy cases.

The filing of this bankruptcy case has disrupted the Debtors' normal operations. Unless PFI can promptly honor its prepetition employee obligations, the Debtors believe that employee morale will suffer, and many Employees may be unable to meet their own personal obligations in these already trying times. If that happens, it will lead to the risk that Employees will find employment elsewhere, and both Debtors' business operations will be interrupted in the midst of this critical period. PFI's Employees are intimately knowledgeable about both of the Debtors' operations and business affairs, as well as about operations at the Real Properties, and their retention is necessary to ensure a timely and efficient bankruptcy process. Moreover, the continued provision of regular building maintenance and property management services by PFI's Employees is critical to the approximately 2,700 residents and 400 businesses that call the Real Properties their home and/or their office. The suspension or diminution of such maintenance and property management services could also diminish the value of the affected Real Properties, and thus harm creditors. Without PFI's Employees, neither Debtor will be able to continue to effectively operate its business, and their ability to preserve and maximize the value of their assets – particularly, the Real Properties – will be jeopardized. Therefore, all major constituencies, including creditors, Employees, and tenants, will benefit from PFI's ability to pay certain prepetition benefits and expenses to its Employees.

## D.    Employee Benefits

PFI's business practice has been to supplement the wages and salaries of its full-time Employees by providing them with certain employee benefit programs. These programs include such standard benefits as paid time off and medical and dental insurance.

PFI is continuing these programs in the ordinary course of its business operations.  The relief sought in this Motion relates only to those unpaid, prepetition benefits that were earned in connection with certain of PFI's benefit programs as more fully described below.

1. <u>Paid Time Off Benefits.</u>

The majority of PFI's Employees accrue two (2) weeks of paid time off per year, while a small minority of PFI's Employees accrue three (3) weeks of paid time off per year.  Annually accrued paid time off is not capped for either of these groups.

Upon termination, PFI pays all Employees for any accrued but unused paid time off, pursuant to applicable law.  By this Motion, the Debtors seek authority, in their sole discretion, to continue to honor PFI's paid time off policies in the ordinary course, including to allow Employees post-petition to take paid time off earned prepetition.  The Debtors are not seeking authority now to compensate Employees for accrued and unused paid time off in the event of a termination.  The Debtors do not expect PFI to be terminating any of its Employees as a result of this bankruptcy, but to the extent any Employees are terminated in the ordinary course of business, such terminated Employees will instead retain a claim for such prepetition accrued and unused paid time off.

2. <u>Medical and Dental Benefits.</u>

Employees are also entitled to certain medical and dental benefits.  PFI's average total monthly expense for medical and dental benefits for its Employees is approximately $16,000.  By this Motion, the Debtors seek authority, in their sole discretion, to continue to honor PFI's medical and dental benefits policies in the ordinary course, including allowing Employees post-petition to utilize such benefits.  The Employees' continued ability to utilize PFI's medical benefits is particularly crucial given the need for affordable access to healthcare and testing during the global COVID-19 pandemic, which has had a significant impact on the San Francisco Bay Area (where the Debtors believe the majority of PFI's Employees reside).

### E. Employee Reimbursements

From time to time, the Employees incur miscellaneous expenses related to their jobs, including mileage costs as well as gas, cell phone, and utilities expenses for certain Employees. These expenses were routinely reimbursed by PFI before the Petition Date. Employees generally submit expense reports, including receipts or other backup documentation, in order to receive reimbursement for their business expenses. After receiving approvals, PFI would remit payment to the employee on or about the fifteenth (15th) day of each month.

For the four (4) months preceding the Petition Date (April through July 2020), the total monthly expenses reimbursed by PFI to its Employees have ranged between $3,211.14 and $5,484.75 in total, with an average of $4,330.435. Out of this, PFI incurs fixed reimbursement costs of approximately (i) a total of $300.00 per month for certain Employees' PG&E expenses, (ii) a total of $310.00 per month for certain Employees' cell phone expenses for the preceding month's billing period (that is, on July 15, 2020, PFI reimbursed employees for the billing period lasting June 1, 2020 through June 30, 2020), as well as (iii) $844.00 per month for certain Employees' fuel allowance. Additionally, PFI reimburses variable costs for mileage expenses incurred by certain Employees each month, ranging from a total of $1,757.14 to $4,030.75, and averaging a total of $2,876.44 for the four (4) months preceding the commencement of the PFI Case.

In accordance with its standard reimbursement policies, on July 15, 2020 PFI issued $4,678.15 in reimbursements to its Employees for expenses incurred over the preceding month. However, PFI estimates that approximately $3,232.76 in reimbursements have not been presented for payment yet or have not cleared the banking systems yet and, accordingly, have not been honored and paid as of July 29, 2020. Additionally, based on current information, PFI estimates that there are approximately $2,222.19 in reimbursements owing to its Employees for expenses incurred between July 15, 2020 and before the commencement of the PFI Case. By way of this Motion, the Debtors seek

SMRH:4834-8871-3669.5

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 11 of 23

RZL-319169

authority to reimburse Employees for such expenses, in order to avoid hardship for the Employees who would otherwise be independently obligated to pay such amounts.

Failure to approve payment for prepetition reimbursable expenses would be a blow to employee morale and could undermine PFI's ability to retain its Employees at this critical time period. Many Employees are reliant on the timely payment of reimbursements for expenses incurred in the course of their employment by PFI, which can amount to nearly $700 per month for certain Employees. The denial of prepetition reimbursements due and owing to the Employees would create additional hardship in the midst of an already challenging macroeconomic climate, and could erode their commitment to PFI, which is crucial for the Debtors to successfully navigate through the bankruptcy process.

**III.**

**NEED FOR RELIEF**

The Debtors seek the relief requested by the Motion because any delay by PFI in honoring its prepetition employee obligations will destroy its relationship with its Employees, irreparably impair employee morale, and may cause a mass exodus of Employees. The Debtors believe that the livelihood of many of PFI's Employees depends on the income provided through their work for PFI. Many of them rely on their wages as their only source of income. To them, the loss of this income for even a few days may result in a financial hardship. Employee support for the Debtors' continued operations is critical. Without such support, the Debtors face the imminent risk that their operations will be severely impaired, which could result in harm to the numerous businesses and residents that are tenants of the Real Properties.

**IV.**

**REQUESTED RELIEF**

By way of this Motion, the Debtors seek an interim and final order from the Court, substantially in the form attached hereto as Exhibit A:

        2.      authorizing (but not requiring) PFI to:

(b)     pay prepetition wages and salaries owed to its Employees, including payroll and reimbursement requests;

(c)     pay any prepetition claims arising from PFI's employee benefit plans and programs, and otherwise honor, in the ordinary course of business, existing employee benefit plans and programs and paid time off accruals, including all related costs and expenses, as such policies were in effect as of the commencement of these cases, even if so doing involves honoring prepetition claims; and

3.     authorizing, but not directing, applicable banks and other financial institutions to receive, process, honor and pay any and all checks drawn on and transfers made from the Debtors' accounts to the extent that those checks or transfers relate to any of the foregoing; and

4.     granting related relief.

# V.

# ARGUMENT

**A.     PFI's Employees Are Essential to the Debtors' Continued Operations.**

It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating chapter 11 cases is critical to preserving the value of the bankruptcy estate.[1]  As noted by one court, "the need to pay pre-petition employee wage claims in an ordinary course of business time frame is simple common sense.  Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted."  *In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000). The Debtors believe that any failure by PFI to pay its prepetition employee-related

---

[1] *See, e.g., LTV Corp. v. Aetna Cas. & Surety Co. (In re Chateaugay Corp.)*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990); *In re Gulf Air, Inc.*, 112 B.R. 152, 154 (Bankr. W.D. La. 1989) ("[R]etention of skills, organization, and reputation . . . must be considered valuable assets contributing to going concern value and aiding rehabilitation . . . .").

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 13 of 23

obligations and otherwise honor such obligations in the ordinary course of business would create great concern and discontent among its Employees and undermine morale, and would therefore endanger PFI's ability to retain its Employees. As discussed above, the Debtors require the services of these Employees to operate their businesses, maintain and manage the Real Properties, and to preserve the value of the bankruptcy estate. Due to the Employees' familiarity with the Debtors' business operations and the Real Properties, PFI's current Employees are crucial to the Debtors' operations on a day-to-day basis, and ultimately, to a successful outcome for creditors.

Courts have often permitted debtors to pay prepetition wage claims in the ordinary course of business in response to a motion filed by the debtor in possession near the beginning of the case.[2] Furthermore, the relief requested herein is routinely granted in chapter 11 cases that involve a workforce that is critical to the debtor's business operations.[3] The Debtors cannot afford to lose the services of the Employees during this critical time period. The Debtors' businesses cannot continue without PFI's workforce. If the Debtors cannot promptly assure the Employees that PFI will honor employment benefits as described above, the Debtors' operations likely will suffer immediate and irreparable harm, due to resulting employee resentment, loss of employee goodwill, and possible attrition, all at this critical time for the Debtors.

**B.      Honoring The Prepetition Employee Obligations Is Just And Necessary To Preserve Employee Morale.**

The prepetition employee obligations are critical to the Employees' livelihood. Many of these Employees rely on their wages as their only source of income. To them, the loss of this income for even a few days may result in a financial hardship. Allowing PFI to

---

[2] *See e.g., Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973, 985 (2016) (recognizing that "'first-day' wage orders" serve "significant Code-related [] objectives"); *see also,* 4 *Collier on Bankruptcy* ¶ 507.06 (16th ed. rev. 2019).

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 14 of 23
BZL-319169

1  honor its prepetition employee obligations is just under the circumstances because it would

2  reassure the Employees that these essential benefits will not be disrupted.  This would

3  ameliorate the financial difficulties of PFI's Employees, which is recognized as one of the

4  reasons for the priority status that the Bankruptcy Code affords the wages of debtors'

5  employees.

6       The Debtors believes that any failure by PFI to honor its prepetition employee

7  obligations would cause hardship to its Employees.  Granting the requested relief and

8  approving these obligations contributes to alleviating the financial hardship of the

9  employees and should be approved.

10  **C.     The Prepetition Employee- Related Amounts Are Within The Priority Claim**

11         **Cap of Section 507(a)(4) And Would Be Paid Ahead of Unsecured Claims.**

12       Section 507(a) provides fourth priority for:

13         (4) allowed unsecured claims, but only to the extent of $13,650
       for each individual or corporation, as the case may be, earned

14         within 180 days before the date of the filing of the petition or
       the date of the cessation of the debtor's business, whichever

15         occurs first, for —

16            (A) wages, salaries, or commissions, including vacation,
          severance, and sick leave pay earned by an individual…[4]

17

18       The wages and other prepetition employee-related obligations accrued within the

19  180-day period prior to the Petition Date are well within the priority claim cap under

20  section 507(a)(4).  The Employees owed these obligations may file claims for these

21  amounts against PFI's estate.  Such claims would be entitled to section 507(a)(4) priority

22  status and, thus, would be paid ahead of other unsecured claims.  As such, the Debtors

23  maintain that the payment of the prepetition employee-related amounts is appropriate and

24  should be approved.

25

26

---

27  [3] *See, e.g., Burchinal v. Central Washington Bank (In re Adams Apple, Inc.),* 829 F.2d

28  1484, 1490 (9th Cir. 1987) (courts have permitted the payment of employee prepetition
debts when necessary for rehabilitation).

## D. Reimbursing Employee Business Expenses and Honoring Employee Benefits Programs Are Matters that Are Within the Debtors' Business Judgment.

It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating chapter 11 cases is critical. As the court stated in *In re Chateaugay Corp.*:

> [E]mployee good will and contentment is an asset which is vital to the continuation of a debtor's business operation and its ability to effectively reorganize during the Chapter 11 process. [citation omitted] In granting Debtors' applications for permission to provide hardship payments to injured workers, this Court determined that the uninterrupted payment of LTV Steel workers' compensation obligations is essential to employee morale and industrial tranquility which, in turn, are critical to a successful reorganization.[5]

The relief requested to make payroll and reimbursement payments for the prepetition period and to honor employee benefit programs in the ordinary course of business is necessary to preserve employee morale and ensure that the Debtors can retain the valuable and experienced employees that are the backbone of their businesses and will preserve the value of their estates. The relief requested will also provide an incentive for employees to continue to provide quality services to the Debtors and their tenants.

The employee benefit plan payments are further justified because they are within the priority claim cap under Section 507(a)(5) and thus would be paid ahead of other unsecured claims in any event.

---

[4] 11 U.S.C. § 507(a)(4).

[5] *LTV Corp. v. Aetna Casualty & Surety Co. (In re Chateaugay Corp.),* 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990); *see also In re Gulf Air, Inc.*, 112 B.R. 152, 154 (Bankr. W.D. La. 1989) ("[R]etention of skills, organization, and reputation . . . must be considered valuable assets contributing to going concern value and aiding rehabilitation. . . .").

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 16 of 23

**E.      It Is In The Best Interests Of the Debtors' Estates that Prepetition Payroll and Reimbursement Payments Be Paid and the Benefit Programs Be Maintained as to Continuing Employees.**

As described above, failure to honor payroll payments for the prepetition period and to maintain the benefit programs would be detrimental to PFI's employee base and diminish the Debtors' prospects for maximizing the return to its creditors.

Courts frequently have allowed debtors-in-possession to engage in transactions that encourage employee stability for the good of the debtor's estate and creditors.  In *In re Gulf Air, Inc.*,[6] the court authorized the payment of all prepetition amounts due to the debtor's employees, including salary, expenses, and the payment of prepetition health, life, and workers' compensation premiums.  The court stated:

> While prepetition claims are normally disposed of in a plan of reorganization and in accordance with statutory priorities, there are well-established "necessity of payment" and similar exceptions.
>
> * * * *
>
> The Court finds and concludes that grant of the Debtor's Motion in its entirety is in the best interest of creditors, the Debtor, and its employees, and is "necessary", in fact, indispensable at this time for any successful reorganization. An air carrier, no less than a rail carrier, is more than the sum of its parts.  Despite the capital-intensive nature of the railroad industry, and to a lesser extent, the airline industry, retention of skills, organization, and reputation for performance must be considered valuable assets contributing to going concern value and aiding rehabilitation where that is possible.[7]

---

[6] *In re Gulf Air, Inc.,* 112 B.R. 152 (Bankr. W.D. La. 1989).

[7] *Id.* at 153-54.  *In re Chateaugay Corp.*, 116 B.R. at 898 ("In granting Debtors' applications for permission to provide hardship payments to injured workers**,** this Court determined that the . . . payment . . . is essential to employee morale . . . ."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (debtor may pay prepetition debt due employees to avert serious threat to continued operations); *Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.)*, 37 B.R. 334, 336 n.3 (W.D. Mo. 1984), *appeal dismissed,* 738 F. 2d 445 (8th Cir. 1984) ("It would appear that the proposed transfers could be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack under section 549 . . . .").

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 17 of 23

Likewise here, PFI's Employees should be allowed their regular benefits and paid time off accruals. These are important components of their compensation. As to paid time off, it would be unfair to penalize those Employees with substantially earned paid time off accruals, which result from Employees' decisions to provide service to the Debtors instead of taking vacation time. The Debtors propose to honor such paid time off and to allow Employees to use it until terminated, in order to reward loyalty to the Debtors.

**VI.**

**EMERGENCY CONSIDERATION**

The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As previously discussed throughout, the Employees are the lifeblood of the Debtors' operations. They are critical to the maintaining the property management services that PFI has customarily provided to the Real Properties and will be critical as well to the Debtors' ability to meet their financial and operational reporting and other obligations in bankruptcy. If the Debtors do not receive the requested relief immediately, their business operations would be severely disrupted at this critical juncture in the chapter 11 cases and the tenants at the Real Properties could suffer the consequences. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

**VII.**

**REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS**

The Debtors respectfully request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the Hogan Declaration, the relief requested herein is necessary to avoid immediate and irreparable

SMRH:4834-8871-3669.5

SBZL-319169

harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice

requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy

Rule 6004(h), to the extent such notice requirements and such stay apply.

**VIII.**

**CONCLUSION**

WHEREFORE the Debtors respectfully request entry of an order, substantially in

the form attached as _Exhibit A_, granting the relief requested, and providing such other and

further relief as is just and proper.

Dated:  July 30, 2020

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By  _____
                                    _/s/ Ori Katz_
                                    ORI KATZ
                                    J. BARRETT MARUM
                                    MATT KLINGER
                                    GIANNA SEGRETTI

Proposed Counsel for Debtors

SMRH:4834-8871-3669.5

## **EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation; PROFESSIONAL INVESTORS SECURITY FUND, INC., a California corporation,<br><br>Debtors. | Case No. 20-30604<br>(Jointly Administered with Case No. 20-30579)<br><br>Chapter 11<br><br>**[PROPOSED] ORDER APPROVING DEBTORS' EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTOR TO HONOR PREPETITION OBLIGATIONS TO EMPLOYEES**<br><br>Date:    TBD<br>Time:    TBD<br>Judge:  Hannah L. Blumenstiel<br>Place:  **Telephonic/Video Appearances Only**<br>      450 Golden Gate Avenue<br>      16th Floor, Courtroom 19<br>      San Francisco, CA  94102 |

## **DEBTORS' EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTOR TO HONOR PREPETITION OBLIGATIONS TO EMPLOYEES**

The *Debtors' Emergency Motion for An Order Authorizing Debtor To Honor Prepetition Obligations To Employees* (the "Motion"), filed by Professional Financial Investors, Inc. ("PFI") and Professional Investors Security Fund, Inc. ("PISF" and, together with PFI, the "Debtors") on July 30, 2020 as Docket No. __, came before the Court for hearing on _____, 2020 at [ : ] [a.m]/[p.m.].  Appearances were as noted on the record.  Based upon the Court's review of the Motion, the declarations and other pleadings filed in support of the Motion, the arguments of counsel at the hearing on the Motion, and all pleadings and evidence of record in this case,

Exh A-1

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 20 of 23

IT IS HEREBY ORDERED THAT:

2.  The Motion is GRANTED.  Capitalized terms not defined in this Order shall have the meanings given to them in the Motion.

3.  PFI is authorized, but not required to, in its sole discretion:

(b)  to pay the prepetition wages and salaries owed to its Employees, including payroll and reimbursement requests in an amount up to the cap of $13,650 per employee under Section 507(a)(4) of the Bankruptcy Code (except where otherwise noted in the Motion); and

(c)  to pay any prepetition claims arising from PFI's employee benefit plans and programs and otherwise honor, in the ordinary course of business, existing employee benefit plans and programs and paid time off accruals, including medical and dental benefits and all related costs and expenses, as such policies were in effect as of the commencement of this bankruptcy case, even if so doing involves honoring prepetition claims.

4.  All Banks and other financial institutions are authorized and directed to receive, process, honor, and pay all checks presented for payment by the Debtors and to honor all fund transfer requests related to such obligations.  The Banks shall not be liable to any party on account of: (a) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry); (b) the honoring of any prepetition checks, drafts, wires, or ACH Payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire, or ACH Payments; or (c) an innocent mistake made despite implementation of reasonable handling procedures.

5.  Nothing in this Order: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates;

(iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors. Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.      Notwithstanding anything to the contrary contained in this Order, any payment made or other action taken by the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to any final orders regarding the Debtors' use of cash collateral approved by this Court in these Chapter 11 Cases (the "Cash Collateral Order").

7.      In the event of any inconsistency between the terms or conditions of this Order and the terms or conditions of the Cash Collateral Order, the provisions of the Cash Collateral Order shall govern and control.

8.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

12.     A final hearing to consider the relief requested in the Motion shall be held on [_____] at [_____] (prevailing Pacific Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to , [_____] at [_____] (prevailing Pacific Time).

Case: 20-30604   Doc# 21   Filed: 07/30/20   Entered: 07/30/20 22:35:31   Page 22 of 23

1    13.    This Court shall retain jurisdiction to hear and determine all matters arising

2  from or related to the implementation, interpretation, or enforcement of this [Interim]

3  Order.

4

5                            ***END OF PROPOSED ORDER***