1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
2 | Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
3 | J. BARRETT MARUM, Cal. Bar No. 228628
MATT KLINGER, Cal. Bar No. 307362
4 | GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
5 | San Francisco, California 94111-4109
Telephone: 415.434.9100
6 | Facsimile: 415.434.3947
Email: okatz@sheppardmullin.com
7 | bmarum@sheppardmullin.com
mklinger@sheppardmullin.com
8 | gsegretti@sheppardmullin.com

9 | Proposed Counsel for Debtors

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation; PROFESSIONAL INVESTORS SECURITY FUND, INC., a California corporation,<br><br>Debtors. | Case No. 20-30604<br>(Jointly Administered with Case No. 20-30579)<br><br>Chapter 11<br><br>**DEBTORS' EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTORS TO MAINTAIN THEIR EXISTING BANK ACCOUNTS AND APPROVING CONTINUATION OF THEIR CASH MANAGEMENT SYSTEM**<br><br>[*Hearing Requested on Shortened Time*]<br><br>Date: August 5, 2020<br>Time: TBD<br>Judge: Hannah L. Blumenstiel<br>Place: **Telephonic/Video Appearances Only**<br>450 Golden Gate Avenue<br>16th Floor, Courtroom 19<br>San Francisco, CA 94102 |

# I.

# INTRODUCTION

Professional Financial Investors, Inc. ("PFI") and Professional Investors Security Fund, Inc. ("PISF" and, together with PFI, the "Debtors"), the debtors in the respective above-captioned bankruptcy cases, move this Court, on an emergency basis, for an interim and final order in the form attached as **Exhibit A**, authorizing the Debtors to maintain their respective bank accounts and cash management systems post-petition. In connection with those requests, the Debtors also seek a waiver of the United States Trustee's requirement to establish a specific bank account for tax payments.

# II.

# PRELIMINARY STATEMENT

The Debtors currently have a total of twenty-eight bank accounts (collectively, the "Debtors' Accounts"), all of which serve or have served as operating accounts, and the vast majority of which are in PFI's name. Of these twenty-eight accounts, twenty-three are primarily used to collect rents from tenants at real properties owned by PFI (each a "PFI Real Property" and collectively, the "PFI Real Properties") and pay the expenses of those properties; two accounts are used by PFI to pay its operating costs, including payroll and other business expenses; and the final three accounts were previously used by PISF for various purposes, but are now dormant.

The above accounts and arrangements collectively comprise the Debtors' cash management system, which enables the Debtors to, among other things, receive rent payments from tenants of the PFI Real Properties, make payments on mortgages secured by the PFI Real Properties, make payments to vendors that provide services to the PFI Real Properties, and generate timely and accurate financial information related to the operations of the PFI Real Properties and the Debtors.

The above-described cash management system is essential to the Debtors' operations and business. If the Debtors' cash management practices and procedures are disrupted, the Debtors' efforts to maintain their existing operations and restructure their

affairs will likely be significantly hampered.  The Debtors believe their creditors and the bankruptcy estate would not receive any benefit if the Debtors were required to close the Debtors' Accounts and open new ones.

To continue operating effectively post-bankruptcy, the Debtors need continuity in their cash management system and bank accounts.  Specially, the Debtors seek to maintain the Debtors' Accounts.  The Debtors believe that obtaining an order approving this motion is critical, because absent such an order, (i) PFI would need to advise each of the numerous tenants of the PFI Real Properties to direct their rent payments to a new account, which could create confusion for those tenants and hinder PFI's ability to timely collect rents on the PFI Real Properties, (ii) the Debtors would need to make new arrangements for making payments to vendors of services to the PFI Real Properties, which could cause confusion for those service providers, make them uncomfortable providing services to the PFI Real Properties, and delay the provision of those services which are necessary to maintain the value of the PFI Real Properties, and (iii) the Debtors would need to spend time closing accounts and opening new ones, including dormant accounts, with no corresponding benefit to creditors or the estate.

This motion is based on the discussion below, the *Declaration of Michael Hogan in Support of the Bankruptcy Filing and Early Case Administration Motions* filed on July 26, 2017 as Docket No. 5 (the "<u>First Day Hogan Declaration</u>"), as supplemented by the *Supplemental Declaration of Michael Hogan In Support of the Bankruptcy Filing and Early Case Administration Motions* filed concurrently with this motion (the "<u>Supplemental Hogan Declaration</u>" and the First Day Hogan Declaration as supplemented by the Supplemental Hogan Declaration, the "<u>Hogan Declaration</u>"), the other papers of record in this case and upon such further oral and documentary evidence as may be presented prior to or at the time of the hearing on the motion.

## III.

## STATEMENT OF FACTS

**A.  The Debtors' Background.**

On July 16, 2020, Jacques Achsen, Samueal Goldberger, Elizabeth Goldblatt, Arthur Indenbaum, Andrew Michaels, Mary Michaels, and Joel Rubenzahl (the "<u>Petitioning Creditors</u>"), each of which assert that they are creditors of PISF, commenced an involuntary chapter 11 bankruptcy action against PISF, Case No. 20-30579 (the "<u>PISF Case</u>").  On July 26, 2020, PISF filed a consent to the entry of an order for relief in the PISF Case, which this Court entered on July 27, 2020.

On July 26 (the "<u>Petition Date</u>"), PFI also commenced its bankruptcy case, Case No. 20-30604, by filing a voluntary chapter 11 petition (the "<u>PFI Case</u>" and together with the PISF case, the "<u>Bankruptcy Cases</u>") and sought joint administration with the PISF Case, which this Court granted on July 27, 2020.  The Debtors continue to operate their respective businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committee has been appointed by the Office of the United States Trustee in either of the Bankruptcy Cases.

The First Day Hogan Declaration contains a detailed discussion of the Debtors' background, capital structure, and the events leading to their chapter 11 cases.  The discussion contained in the Hogan Declaration is incorporated in this motion as though fully set forth here.

**B.  The Debtors' Accounts.**

The Debtors' Accounts are all maintained at Umpqua Bank ("<u>Umpqua</u>").[1]  Umpqua is on the United States Trustee's List of Cooperating Depositories, and consist of the following types of accounts:

---

[1] The Debtors have asked Umpqua whether it is able to convert each of the existing Debtors' Accounts into a debtor in possession account.

1. **PFI Real Property-Related Operating Accounts**.  PFI maintains and controls twenty-three operating accounts that are primarily used for receiving rent payments and paying expenses related to the PFI Real Properties (each a "**PFI Real Property Operating Account**" and, collectively, the "**PFI Real Property Operating Accounts**").  Twenty-two PFI Real Property Operating Accounts receive rent payments and pay expenses related to just one of the PFI Real Properties.  At least one PFI Real Property Operating Account receives rent payments and pays expenses related to more than one of the PFI Real Properties.

2. **PFI Business Operating Accounts**.  PFI maintains and controls two operating accounts that it uses to pay its own expenses, including employee wages and salaries (collectively, the "**PFI Business Operating Accounts**").

3. **PISF Business Operating Accounts**.  PISF maintains and controls three operating accounts that it historically has used to pay the expenses of PISF's former senior leadership, pay investors that withdrew funds from PISF or hold funds to be used for purchasing interests in real property (collectively, the "**PISF Business Operating Accounts**").  PISF no longer has any employees and the PISF Business Operating Accounts are currently dormant, although they do currently hold certain funds.

A complete list of the Debtors' Accounts that identifies the type of each account as described in this Motion and includes a redacted account number for each account is attached here to as **Exhibit B**.

**C.     The Proposed Post-Petition Cash Management System.**

The Debtors propose to maintain the existing cash management system with respect to the Debtors' Accounts as described above with the following changes.  First, the signature cards on all of the Debtors' respective accounts will be changed to reflect the Debtors' status as a "debtor-in-possession".  Second, the Debtors will work with Umpqua to ensure that no pre-petition checks or other pre-petition claims are honored.  The cash management system with respect to the Debtors' respective bank accounts, with these changes, would remain in place subject to further order of this Court.

Subject to a prohibition against honoring prepetition checks or offsets without specific authorization from this Court, the Debtors request that they be authorized to maintain and continue the use of the Debtors' Accounts in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period.

As part of the relief requested, the Debtors also seek a waiver of the requirement by the United States Trustee for Region 17 to establish specific bank accounts for tax payments. *See* Region 17 United States Trustee Guidelines, § 4.4.6(a)(2). The Debtors believe that tax obligations can be paid most efficiently pursuant to its existing cash management system, that the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the Debtors' Accounts through the Debtors' required monthly operating reports, and that the creation of new debtor in possession accounts designated solely for tax obligations would be unnecessary and inefficient.

**D.     Benefits of the Cash Management System**

The existing cash management system is efficient and effective. It will be disruptive to the Debtors' ongoing business operations to shut the existing system down and close the Debtors' Accounts. Such a disruption would require the Debtors to dedicate its scarce human resources to opening approximately nearly thirty new bank accounts, informing the tenants of the PFI Real Properties of the new account to which rent should be paid, and making arrangements to pay vendors from those new accounts – all with no corresponding benefit to creditors. A drastic shift in the cash management system would likely confuse the numerous residents and businesses that are tenants at the PFI Real Properties and the various providers of services to the PFI Real Properties, disrupt the flow of rental revenue from the PFI Real Properties, and distract the Debtors from ensuring stable day-to-day operations as the PFI Real Properties. Some tenants might mistakenly mis-direct their rental payments to a recently-closed account or fail to make a timely rental payment because they are uncertain where it should be sent. Similarly, some service providers may delay or cease providing maintenance and other services to the PFI Real

Case: 20-30604    Doc# 23    Filed: 07/30/20    Entered: 07/30/20 22:43:43    Page 6 of 14

Properties. In addition, requiring PISF to close the dormant PISF Business Operating Accounts would provide no benefit to any party in interest, but would distract the Debtors' current leadership from attending to other, more pressing property management and reorganization issues. The resulting effects could be devastating to the Debtors' efforts to preserve their assets by ensuring that all property management functions continue uninterrupted, including collection of rent, ongoing leasing, and onsite maintenance and repairs. The PFI Real Properties are of key value to all parties in interest in the Debtors' bankruptcy cases and preserving their continued operations is critical.

The continuation of the Debtors' existing cash management systems, subject to the protections described above with respect to the Debtors' Accounts, are more than adequate to protect creditors, the Debtors' respective estates and parties in interest.

## IV.

## ARGUMENT

**A.     Maintenance of the Debtors' Accounts Should Be Approved.**

A request for authority to continue using existing cash management with respect to the bank accounts is considered a "simple matter" and bankruptcy courts routinely grant such requests. *See In re Baldwin United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see also In re The Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (finding use of pre-petition cash management system was consistent with Bankruptcy Code). The Court is authorized to grant the relief requested pursuant to § 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

The continued use of the Debtors' Accounts as part of the cash management system will benefit the Debtor's creditors and estate because it will allow for the seamless and continuous operation of the Debtor's business and ease the burden on the Debtor's already taxed workforce. The Debtor has brought this Motion on an emergency basis because the continued use of the Debtors' Accounts is important to its ability to operate and focus on its reorganization.

SMRH:4825-6646-7268.4

-6-

Case: 20-30604     Doc# 23     Filed: 07/30/20     Entered: 07/30/20 22:43:43     Page 7 of 14

737L-319169

# V.

# EMERGENCY CONSIDERATION

The Debtors respectfully request emergency consideration of this motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As previously discussed in this motion, without entry of an order granting the relief requested herein, the Debtors would need to immediately begin closing their nearly ninety existing bank accounts and opening new replacement accounts, which would likely create confusion for the Debtors' tenants, hinder PFI's ability to timely collect rents on the PFI Real Properties, disrupt payments to vendors that provide services to the PFI Real Properties, and cause other disturbances to the Debtor's operations and the operations at the PFI Real Properties, all without any clear benefit to creditors. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

# VI.

# REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtors respectfully request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the Hogan Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

# VII.
# CONCLUSION

WHEREFORE the Debtor respectfully requests entry of an interim and final order, substantially in the form attached as **Exhibit A**, granting the relief requested, and providing such other and further relief as is just and proper.

Dated: July 30, 2020

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By  /s/ Ori Katz
ORI KATZ
J. BARRETT MARUM
MATT KLINGER
GIANNA SEGRETTI

Proposed Counsel for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation; PROFESSIONAL INVESTORS SECURITY FUND, INC., a California corporation,<br><br>Debtor. | Case No. 20-30604<br>(Jointly Administered with Case No. 20-30579)<br><br>Chapter 11<br><br>**[PROPOSED] ORDER APPROVING DEBTORS' EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTORS TO MAINTAIN THEIR EXISTING BANK ACCOUNTS AND APPROVING DEBTORS' CONTINUATION OF THEIR CASH MANAGEMENT SYSTEM**<br><br>Date:   August 5, 2020<br>Time:   TBD<br>Judge:  Hannah L, Blumenstiel<br>Place:  **Telephonic/Video Appearances Only**<br>         450 Golden Gate Avenue<br>         16th Floor, Courtroom 19<br>         San Francisco, CA  94102 |

The *Debtors' Emergency Motion For An Order Authorizing Debtors To Maintain Their Existing Bank Accounts And Approving Debtor's Continuation Of Their Cash Management System* (the "Motion"), filed on July 30, 2020 as Docket No. __by Professional Financial Investors, Inc. ("PFI") and Professional Investors Security Fund, Inc. ("PISF" and, together with PFI, the "Debtors"), the debtors in the above-captioned bankruptcy cases, came before the Court for hearing on August __, 2020 at ___ _.m. Appearances were as noted on the record.  Based upon the Court's review of the Motion, the declarations and other pleadings filed in support of the Motion, the arguments of counsel at the hearing on the Motion, and all pleadings and evidence of record in this case,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED. Capitalized terms not defined in this Order shall have the meanings given to them in the Motion.

2. The Debtors are authorized, but not directed, to maintain the Debtors' Accounts and continue the use of those accounts in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period, subject to the following:

   a. The signature cards on all of the Debtors' Accounts shall be changed to reflect the Debtors' "debtor-in-possession" status;

   b. The Debtors are authorized to open any new bank accounts and close bank accounts consistent with this Order so long as the Debtors provide notice to the U.S. Trustee and any official committee of unsecured creditors that may be appointed in this case; and.

   c. The Debtors are not authorized to make any payment on account of pre-petition debts, except as may be expressly authorized by further order of this Court, no checks or transfers issued on the Debtors' Accounts pre-petition on account of pre-petition debts or obligations and presented for payment post-petition shall be honored or paid, and the Debtors shall provide Umpqua with a list identifying such outstanding pre-petition checks or transfers so that it is clear which checks or transfers may not be paid;

3. The Court finds the protections described above adequately protect creditors, the Debtors' respective estates, and parties in interest.

4.      The requirements for immediate entry of this Interim Order pursuant to Bankruptcy Rule 6003(b) have been satisfied.

5.      The requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived.

6.      Notwithstanding the provisions of Bankruptcy Rules 4001(a)(2) and 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

7.      A final hearing to consider the relief requested in the Motion shall be held on [_____] at [_____] (prevailing Pacific Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to [_____] at [_____] (prevailing Pacific Time).

8.      The Court retains jurisdiction over the matters arising from or related to the interpretation or implementation of this Order.

***END OF PROPOSED ORDER***

# EXHIBIT B

# EXHIBIT B

| PFI REAL PROPERTY-RELATED OPERATING ACCOUNTS | | | |
|---|---|---|---|
| Bank | Account Name/Description | Account Number | Description |
| Umpqua Bank | 1 Hammondale | XXXXX9668 | Operating |
| Umpqua Bank | 107 Marin | XXXXX1763 | Operating |
| Umpqua Bank | 1129 3rd Street Apartments | XXXXXX6841 | Operating |
| Umpqua Bank | 117 to 121 Paul Drive | XXXXXX2461 | Operating |
| Umpqua Bank | 1222 Glenwood Apts | XXXXXX3125 | Operating |
| Umpqua Bank | 1315 Rafael Gardens | XXXXXX5643 | Operating |
| Umpqua Bank | 1506 Vallejo | XXXXXX8965 | Operating |
| Umpqua Bank | 16914 Sonoma 4869701682 | XXXXXX1682 | Operating |
| Umpqua Bank | 30-42 Clay Court | XXXXX0740 | Operating |
| Umpqua Bank | 350 Ignacio Condo Assoc | XXXXXX6163 | Operating |
| Umpqua Bank | 353 Bel Marin Keys | XXXXXX2589 | Operating |
| Umpqua Bank | 355 Boyes Redwood Manor Apartments | XXXXXX1478 | Operating |
| Umpqua Bank | 390 Woodland Apartments | XXXXXX8839 | Operating |
| Umpqua Bank | 419 Prospect Drive | XXXXXX5799 | Operating |
| Umpqua Bank | 501 Ignacio | XXXX7498 | Operating |
| Umpqua Bank | 7200 North Bay Center | XXXXXX6136 | Operating |
| Umpqua Bank | 885 Broadway | XXXXX1771 | Operating |
| Umpqua Bank | Duffy Place | XXXXX5375 | Operating |
| Umpqua Bank | Gate 5 | XXXXX6910 | Operating |
| Umpqua Bank | Ignacio Lane Apartments | XXXXX0575 | Operating |
| Umpqua Bank | Merrydale 4866807177 | XXXXXX7177 | Operating |
| Umpqua Bank | PFI dba 515 B Street | XXXXXX8278 | Operating |
| Umpqua Bank | PFI dba Santaland | XXXXXX7823 | Operating |
| PFI OPERATING ACCOUNTS | | | |
| Bank | Account Name/Description | Account Number | Description |
| Umpqua Bank | PFI Clearing Account | XXXXXX7399 | Operating |
| Umpqua Bank | PFI General 20112763 | XXXX2763 | Operating |
| | | | |
| PISF OPERATING ACCOUNTS | | | |
| Bank | Account Name/Description | Account Number | Description |
| Umpqua Bank | PISF Inc 11001849 | XXXX1849 | Operating |
| Umpqua Bank | PISF Transfer Account | XXXXXX1054 | Operating |
| Umpqua Bank | New clearing account | XXXXX1599 | Operating |