U.S. SECURITIES AND EXCHANGE COMMISSION
David W. Baddley, Fla Bar 0148393, Ill Bar 6282466
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326-1382
Telephone: 404.842.7625
Facsimile: 404.842.7633
Email: Baddleyd@sec.gov

Counsel for U.S. Securities and Exchange Commission

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation; PROFESSIONAL INVESTORS SECURITY FUND, INC., a California corporation,<br><br>    Debtors. | Case No. 20-30604 (HLB)<br>(Jointly Administered with Case No. 20-30579)<br><br>Chapter 11<br><br>Hon. Hannah L. Blumenstiel<br><br>**OMNIBUS RESPONSE BY THE U.S. SECURITIES AND EXCHANGE COMMISSION OBJECTING TO PROPOSED HOURLY RATES FOR CERTAIN PROFESSIONALS TO BE PAID BY THE DEBTORS' ESTATES**<br><br>**Hearing: Oct 1, 2020 at 11:00 a.m. (PT)**<br><br>**Place: Telephonic/Video Appearances Only** |

//
//
//
//
//
//

-1-

The U.S. Securities and Exchange Commission (the "**SEC**"), appearing in this case as a creditor, files this omnibus response objecting to the proposed hourly rates for attorneys and other professionals in the following applications and motions, each of which contemplate the payment of attorneys' fees, and fees of other professionals, from the Debtors' estates:

1. *Debtors' Application for Entry of an Order Authorizing the Retention of Michael Hogan of Armanino, LLP as their Chief Restructuring Officer* (**ECF No. 77**),

2. *Debtors' Application for Order Authorizing Employment of Sheppard, Mullin, Richter & Hampton, LLP as General Bankruptcy Counsel* (**ECF No. 78**),

3. *Debtors' Application for Order Authorizing Employment of Ragghianti Freitas LLP as Special Counsel* (**ECF No. 79**),

4. *Debtors' Application for Order Authorizing Employment of Nardell, Chitsaz & Associates, as Special Real Estate Counsel to the Debtors* (**ECF No. 81**),

5. *Debtors' Application for Order Authorizing Employment of Weinstein & Numbers LLP as Special Insurance Coverage Counsel* (**ECF No. 83**),

6. *Application for Authority to Employ Trodella & Lapping LLP as Conflicts Counsel to the Debtors* (**ECF No. 85**),

7. *Application of the Official Committee of Unsecured Creditors for Order Approving Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors* (**ECF No. 108**), and

8. *Debtors' Motion for Order Approving Agreement with Ad Hoc Committees and Authorizing Debtors to Pay Fees and Expenses of Ad Hoc Committees' Professionals Pursuant to 11 U.S.C. §363(b)* (**ECF No. 112**).

(collectively, the "**Employment Applications**"). To be clear, the SEC does not oppose the proposed employment of any of these firms. Rather, the SEC's opposition is limited solely to the proposed hourly rates that would be charged to the Debtors' estates, and ultimately, paid by the investors in this case.

## **INTRODUCTION**

Although this case is in Chapter 11, it does not involve the reorganization of a legitimate business. The Debtors acknowledge that prior management appears to have operated a

fraudulent scheme, and the "debtor-in-possession" now is being managed exclusively by newly-hired lawyers and insolvency professionals. There is no business here to reorganize.

Further, the huge majority of the Debtors' 1,000+ creditors are individual investors who are victims of the Debtors' fraudulent scheme. They are not looking for a decent-sized distribution on an unpaid invoice. Rather, they are trying to avoid financial ruin by recovering as much of their lost retirement funds and family savings as possible. Nothing about this case involves a typical Chapter 11 business reorganization. Yet, the professionals in this case are proposing to charge these victims the same hourly rates (or nearly the same rates) that the professionals would charge their clients in a complex business reorganization, where the creditors are mostly well-funded banks and businesses.

In other fraud cases, where there is a substantial public service interest because of the number and nature of the victims involved, it is common for fiduciaries and other estate professionals to substantially discount their standard rates, often by more than 30% or 40%. The discounts are given in recognition of the fact that every dollar saved in the cost of professional fees adds one more dollar to the victims' recovery. Prior to filing this objection, the SEC staff requested that the professionals in this case agree to a 25% discount from their standard rates, which would directly benefit the Debtors' victims. That request was declined. Accordingly, the SEC is objecting to the proposed hourly rates, and believes that the Court should consider the discounted rate structures in comparable fraud cases (discussed below) when deciding what constitutes a reasonable hourly rate in this case.[1]

## THE PROPOSED HOURLY RATES

The Employment Applications seek to retain and/or pay compensation to various professionals who will represent either the Debtors, the Official Committee of Unsecured

---

[1] The SEC recognizes that determining whether a proposed hourly rate is "reasonable" may be premature at the employment stage when the professional's compensation will be subject to the Section 330(a) standard and the professional is not seeking approval of that rate under Section 328(a). However, the SEC is raising this issue now for two reasons: (1) in case a professional intends for the employment order to be a determination that the proposed rates are reasonable for purposes of Section 330 review, and (2) to provide professionals advance notice that the SEC intends to challenge the reasonableness of the proposed rates when they seek compensation.

Creditors (the "**Committee**"), or one of the two Ad Hoc Committees comprised of investors. The employment of professionals for the Debtors is sought pursuant to either Section 327(a) or Section 327(e) of the Bankruptcy Code. The Committee's application to employ its counsel is made pursuant to Section 1103 of the Bankruptcy Code. The applicable Employment Applications provide that the Debtors' professionals, and the Committee's counsel, will seek compensation and reimbursement of expenses from the Debtors' estates, pursuant to Section 330 of the Bankruptcy Code.

Counsel for the two Ad Hoc Committees will not be retained as estate or official committee professionals. However, the Debtors seek approval of an agreement under Section 363(b) of the Bankruptcy Code, pursuant to which the Debtors will pay for the fees and expenses incurred by Ad Hoc Committee professionals. Each Committee will have an initial budget of $1.2 million, which may be increased by agreement of the parties. The agreement requires Ad Hoc Committee professionals to file fee applications with the Court, which will be subject to the standard in Section 330 of the Bankruptcy Code.

In most of the Employment Applications, the professionals are proposing to charge their standard hourly rates. Lead bankruptcy counsel for the Debtors and counsel for the Committee have agreed to a ten percent (10%) rate reduction, but even with those discounts, each propose rates approaching $1,000 per hour. Below is a list of the proposed hourly rates by professionals (those with an asterisk reflect a 10% discount or as otherwise stated):

| | | |
|---|---|---|
| **Sheppard Mullins**: | Ori Katz (Partner) | $985* |
| | J. Barrett Marum (Partner) | $795* |
| | Matt Klinger (Associate) | $665* |
| | Gianna Segretti (Associate) | $525* |
| **Pachulski Stang**: | Debra Grassgreen (Partner) | $985* |
| | John Fiero (Partner) | $855* |

|   |                          |                              |                          |
|---|--------------------------|------------------------------|--------------------------|
|   |                          | Cia Mackle (Of Counsel)      | $607.50*[2]              |
|   |                          | Paralegal                    | $425                     |
|   | **Baker Hostetler**:     | Cecily Dumas (Partner)       | $995                     |
|   |                          | Joseph Esmont (Partner)      | $640                     |
|   |                          | Michael Delaney (Counsel)    | $485                     |
|   |                          | Elyssa Kates (Associate)     | $845                     |
|   | **Sklar Kirsh**:         | Robbin Itkin (Partner)       | $840*  (6.1% discount)[3]|
|   |                          | Peter Fischer (Partner)      | $675                     |
|   |                          | Kelly Frazier (Of Counsel)   | $550*  (4.4% discount)   |
|   |                          | Associates                   | $350-$575                |
|   |                          | Paralegals                   | $175-$415                |
|   | **Trodella & Lapping**:  | Robert Trodella (Partner)    | $600                     |
|   |                          | Richard Lapping (Partner)    | $550                     |
|   | **Ragghianti Freitas**:  | Eric Sternberger (Partner)   | $515                     |
|   |                          | Sarah Leger (Partner)        | $475                     |
|   |                          | Charles Dresow (Partner)     | $425                     |
|   |                          | Jose Herrera (Partner)       | $375                     |
|   | **Armanino**:            | Michael Hogan (CRO)          | $500                     |
|   |                          | Robert Margoni (Partner)     | $560                     |
|   |                          | Patrick Chylinski (Partner)  | $550                     |
|   | **Weinstein & Numbers**: | Barron Weinstein (Partner)   | $575                     |
|   |                          | Alexandria Carraher (Assoc.) | $375                     |

---

[2] Pachulski Stang initially agreed to a 10% rate discount only for partners. In response to the SEC's request for a 25% discount, the firm agreed to discount all attorney rates by 10%. Paralegal rates will not be discounted.

[3] The 6.1% discount for Ms. Itkin is calculated based on the $895 standard rate disclosed in her supporting declaration. Ms. Itkin has informed the SEC staff that her standard rate at her prior law firm was $970. Using her prior rate as the baseline, her $840 rate would constitute a 13.4% discount.

|   |   |   |
|---|---|---|
|   | Legal Assistant | $195 |
| **Nardell Chitsaz**: | J. Timothy Nardell (Partner) | $450 |
|   | Houman Chitsaz (Partner) | $425 |
|   | Aaron Davis (Of Counsel) | $350 |

It appears from the Employment Applications that all rates will increase at the end of 2020.

## LEGAL DISCUSSION

### A. The Court Should Evaluate the Reasonableness of the Proposed Hourly Rates By Referencing the Market for Comparable Services in Similar Cases.

When a professional is retained under Section 327 or Section 1103 of the Bankruptcy Code, the terms and conditions of employment must be reasonable. See 11 U.S.C. §328(a); See also United Artists Theatre Co. v. Walton, 315 F.3d 217, 229 (3d Cir. 2003) ("Section 328(a) of the Bankruptcy Code requires that the terms and conditions of employment of any professionals engaged under § 327 be 'reasonable.'"). Courts generally take a "market-driven" approach to determine whether a particular term or condition of employment is reasonable. Id.

In the United Artists case, the issue was whether it was a reasonable term of employment for the debtors to agree to indemnify their financial advisor for its own negligence. 315 F.3d at 228-29. The United Artists court relied upon the Busy Beaver, *infra*, "market driven" framework to assess the reasonableness of the indemnification provision. The court stated that a market-driven approach "underscores that some reference to the market is not out of place when considering whether terms of retention are 'reasonable' in the bankruptcy context." Id. at 229.

In re Busy Beaver Bldg. Ctrs, Inc., 19 F.3d 833 (3d Cir. 1994) was one of the first cases to thoroughly discuss the compensation structure under the Bankruptcy Code. The issue was whether it was reasonable for the estate to pay for clerical services performed by a paralegal. The Busy Beaver court determined that "the principal purpose of the 1978 amendments to § 330 was to compensate bankruptcy attorneys at the same level as non-bankruptcy attorneys." 19 F.3d at 848. According to the Court, prior to 1978, bankruptcy compensation was driven largely by

economy and value. Id. Under the Code, however, Congress intended to offer bankruptcy professionals market rates in order to attract competent lawyers to work on bankruptcy matters:

> "[The legislative history] repeatedly refers to the billing practices of nonbankruptcy professionals, justified by the goal of retaining competent legal representation for the debtor. Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts."

Id. (internal quotations omitted).

The Busy Beaver court made clear, however, that professional compensation in bankruptcy cases should not offer a premium, by exceeding the compensation paid in comparable non-bankruptcy cases. 19 F.3d at 855 (The Code "does not entitle debtors' attorneys to any *higher* compensation than that earned by non-bankruptcy attorneys.")(emphasis in original). As such, the bankruptcy court should, among other things, "compare the costs of 'equivalent' practitioners of the art (including their billing structures)…." Id. at 853; Accord In re Fleming Companies, Inc., 304 B.R. 85, 93 (Bankr. D. Del. 2003) ("Thus, we conclude that the hourly rates of bankruptcy practitioners must be commensurate with the hourly rates charged by their peers in other practice areas."). Section 330 of the Bankruptcy Code also shows that Congress intended for bankruptcy professionals to be compensated the same as professionals in non-bankruptcy cases, by requiring the bankruptcy court to consider "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. §330(a)(3)(F).

**B. The Court Should Compare the Proposed Hourly Rates in this Case to the Rates Charged by Professionals in Similar Fraud Cases with a Substantial Public Service Interest.**

As noted above, the "comparable case" to a case such as this one is not a traditional Chapter 11 involving a secured lending facility, business creditors and the reorganization of a legitimate business. A typical Chapter 11 involves a sale or restructuring transaction aimed at preserving the business as a going-concern. Preserving the business maximizes value, and benefits the debtor's creditors, employees, customers and suppliers, as well as the debtor's community. The professional fees associated with a typical Chapter 11 are largely borne by the

business constituencies, and are viewed as the transaction costs necessary to achieve the greater benefits of a surviving business with an increased going concern value.

On the other hand, the liquidation of a fraudulent business, which has victimized hundreds if not thousands of individual investors, is an entirely different type of case. There is no business to reorganize. Rather, the goal is to get as much money as possible by selling the debtor's assets and pursuing claims against others who were involved in the fraud. Fraud cases also often require resolving complicated and delicate priority disputes between different classes of investors, which relies in part upon the results of a complex forensic financial investigation. And, because most of the creditors in a fraud case are individual, and often elderly, investors who have lost most of their retirement and household savings, there is a substantial public service component, which inspires professionals to charge deeply discounted rates for their work. Thus, the market for professional services in a fraud case is quite different from the market for professional services in a normal Chapter 11 reorganization.

### C. Most Professionals Charge Significantly Discounted Rates in Comparable Cases with a Substantial Public Service Interest.

The SEC has significant experience in cases involving Ponzi and other fraudulent schemes impacting a large number of individual investors. The SEC frequently charges the companies engaged in such schemes in federal court actions, and seeks a court-appointed receiver to administer the company's assets and pay victims. The receiver is usually an attorney at a private law firm with extensive experience in securities fraud cases, litigation, and bankruptcy law. Because of the substantial public service interest in receiverships, the receivers and other professionals often agree to deeply discounted rates from the standard rates they charge clients in other cases. Below are some examples of receivership cases, and a bankruptcy case, demonstrating such discounted rates.[4]

SEC v. Bivona, et. al., Case No. 3:16-cv-01386 (N.D. Cal.)("**Bivona**"). This case involved a Ponzi-like scheme by a New Jersey investment adviser that defrauded investors (most

---

[4] The SEC will separately file a request for the Court to take judicial notice of the relevant court-filings in these cases, along with copies or excerpts of such filings.

of whom resided in the San Francisco Bay Area) out of more than $53 million. (Bivona, ECF No. 1 at ¶¶ 1-2). In early 2019, the district court appointed Kathy Bazoian Phelps, a Los Angeles-based attorney at Diamond McCarthy, LLP, with 29 years' experience in the areas of Business Insolvency and Restructuring and Fiduciary Representation, as replacement receiver in the case. (Bivona, ECF No. 469). The receiver discounted her standard rate of $650 to $425 for the case, a 34.6% discount. (Bivona, ECF No. 431 at p. 8). Further, Diamond McCarthy attorneys and paralegals representing the receiver discounted their rates from $595 to $425 (28.6%), from $295 to $265 (10.2%) and from $220 to $195 (11.4%). (Id.). The receiver also agreed that her discounted rate would remain in effect for the entirety of the case. (Id.).

SEC v. Quiros, et. al., Case No. 16-cv-21301 (S.D. Fla.) ("**Jay Peak**"). This case involves a $350 million fraud involving hundreds of so-called "EB-5 investors" who invested money to fund the development of the Jay Peak Ski Resort in Vermont. (Jay Peak, ECF No. 1 at ¶¶ 1-2). The SEC sought the appointment of a receiver, and one of the receiver candidates was Michael Goldberg, the current Independent Director of the Debtors in these cases. (Jay Peak, ECF No. 7 at p.5). Mr. Goldberg agreed to discount his then standard rate of $695 to $395 (43.2%). (Id. at Exh. 2, p. 7). The district court appointed Mr. Goldberg as receiver on April 13, 2016. (Jay Peak, ECF No. 13). The work done by the receiver and his professionals in that case has been time-consuming and complex, as reflected in the receiver's most recent interim report filed on May 26, 2020. (Jay Peak, ECF No. 591). The receiver has retained lawyers from his own firm (Akerman LLP) and other lawyers, accountants and professionals, each of whom also have significantly discounted their rates, in many cases by 40% to 60%. (Jay Peak, ECF No. 592, Ex. 3). As a result of these deep discounts, in his most recent fee application, the receiver and his professionals performed more than 2,420 hours of work over a 6-month period, for a combined total of only $622,107.90 in fees, or $257 per hour. (Id.).

SEC v. Kinetic Investment Group, LLC, Case No. 8:20-cv-00394 (M.D. Fla.) ("**Kinetic**"). This case involves a fraudulent securities offering by a purported hedge fund that raised at least $39 million from more than 30 investors. (Kinetic, ECF No. 1 at ¶¶ 1-2). On

February 20, 2020, the SEC filed a motion seeking the appointment of a receiver. (Kinetic, ECF No. 3). One of the proposed candidates was Mark Kornfeld, a partner at the law firm of Quarles & Brady with nearly 30 years of experience and who is the co-chair of the firm's Securities Litigation Team. (Id. at pp. 6-15). Mr. Kornfeld agreed to provide a 30% public interest discount, reducing his standard $625 hourly rate to $437.50. (Id. at 8). Mr. Kornfeld also agreed that other professionals at his firm would discount their standard rates by between 18% and 30%. (Id. at 9). On March 6, 2020, the district court entered an order appointing Mr. Kornfeld as receiver in the case. (Kinetic, ECF No. 34).

In re 1 Global Capital LLC, et. al., [Case No. 18-19121 (Bankr. S.D. Fla.) ("**1 Global Bankruptcy**")/Case No. 18-cv-61991 (S.D. Fla.)("**1 Global District Court**") – This case involved a nationwide securities offering fraud involving more than 3,400 individuals who invested more than $287 million. (1 Global District Court, ECF No. 1 at ¶1). Several weeks before the SEC filed its complaint, 1 Global filed a voluntary Chapter 11 petition in the 1 Global Bankruptcy under the direction of a Chief Restructuring Officer. The debtor retained Greenberg Traurig, LLP as its lead bankruptcy counsel. (1 Global Bankruptcy, ECF No. 81). In its employment application, the firm represented that its customary hourly rates ranged from $340 for junior associates to $1,500 for senior shareholders, and paralegal rates ranged from $75 to $430. (Id. at ¶24). However, in light of the "public interest surrounding these Chapter 11 Cases," the firm agreed to discount the hourly rate for all timekeepers by 20%, and further, to impose an hourly rate cap of $750, which discounted senior shareholder rates by up to 50%. (Id.). The firm also agreed not to increase its rates throughout the case. After a Chapter 11 plan was confirmed, in early 2020, the liquidating trustee retained Greenberg Traurig under the same terms and conditions as the prior engagement. (1 Global Bankruptcy, ECF No. 2235 at ¶25). As part of the firm's continued employment in 2020, it agreed to maintain the discounted 2018 hourly rates for all timekeepers. (Id.).

## CONCLUSION

Based on the discounted rates customarily charged in comparable cases, the SEC requests that the Court not approve the hourly rates proposed in the Employment Applications.

Dated: September 21, 2020

Respectfully Submitted,

/s/ *David W. Baddley*
David W. Baddley
Fla Bar No. 0148393
Ill Bar No. 6282466
Telephone: (404) 842-7625
baddleyd@sec.gov

*Counsel for*:

**U.S. SECURITIES AND EXCHANGE COMMISSION**
Atlanta Regional Office
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326-1382
Telephone: (404) 842-7625