SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
J. BARRETT MARUM, Cal. Bar No. 228628
MATT KLINGER, Cal. Bar No. 307362
GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
Email: okatz@sheppardmullin.com
       bmarum@sheppardmullin.com
       mklinger@sheppardmullin.com
       gsegretti@sheppardmullin.com

Counsel for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation; PROFESSIONAL INVESTORS SECURITY FUND, INC., a California corporation,<br><br>Debtors. | Case No. 20-30604<br>(Jointly Administered with Case No. 20-30579)<br><br>Chapter 11<br><br>**DEBTORS' MOTION FOR ORDER AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §§ 363(b), (f), AND (m)**<br><br>Date: November 12, 2020<br>Time: 10:00 a.m.<br>Place: **Telephonic/Video Appearances Only**<br>450 Golden Gate Avenue<br>16th Floor, Courtroom 19<br>San Francisco, CA 94102<br>Judge: Hon. Hannah L. Blumenstiel |

**POTENTIALLY AFFECTED LIENHOLDERS**: None known.

# I.

# INTRODUCTION

Professional Financial Investors, Inc. ("PFI") and Professional Investors Security Fund, Inc. ("PISF" and, together with PFI, the "Debtors"), the debtors in the respective above-captioned bankruptcy cases (the "Bankruptcy Cases"), hereby move (the "Motion") the Court to approve the sale of the certain assets ("Assets") that will be set forth in an Exclusive Asset Disposition Agreement ("Disposition Agreement"), attached as Exhibit 1 to the Declaration of Michael Hogan filed in support of this Motion (the "Hogan Decl."), free and clear of any liens, claims and interests pursuant to 11 U.S.C. §§ 105, 363(b), (f), (m), and 365.

The Debtors believe the Assets mainly consist of Christmas items, geodes (rocks lined with crystals), and other consumer-related inventory. The Assets do not generate any income for the Debtors, are unnecessary to the Debtors' continued operations, and are not subject to any known liens. The Debtors believe the Assets are likely to sell for a total of less than $100,000 and perhaps substantially less than that amount. The primary reasons the Debtors' seek to sell the Assets are to (i) stop paying the costs of storing the Assets, (ii) get the property where many of the Assets are located ready for sale, and (iii) avoid the costs of disposing the Assets. The Debtors propose to have an experienced disposition firm publicly advertise and attempt to sell the Assets by public negotiated sale and/or public auction to the highest bidder and have separately filed an application to employ Auctioneer to conduct the sales. With respect to any items not sold by January 15, 2021, the Debtors request that the Court grant them leave to dispose of those items. Finally, the Debtors request that the Court waive the stay period imposed by Bankruptcy Rule 6004(h), as many of the items are holiday items that will lose value if they are not sold sufficiently in advance of the holidays.

## II.

## BACKGROUND

**A.      The Debtors' Brief Background[1]**

PFI is a privately held California corporation founded by Ken Casey on or about August 15, 1990. Doc. No. 5, Hogan Decl., ¶ 8. Mr. Casey founded PISF on or about November 1, 1983 and served as its sole shareholder, officer, and director from that date until his death on May 6, 2020. *Id.* at ¶ 9.

The Debtors each own various real properties in Northern California (Marin and Sonoma Counties) and also own interests in various other entities that in turn own real property in California. *Id.* at ¶ 10. PFI serves as the property manager for all of these real properties as well as the operational arm that manages and accounts for both Debtors' activities. *Id.*

**B.      The Bankruptcies**

On July 16, 2020, Jacques Achsen, Samuel Goldberger, Elizabeth Goldblatt, Arthur Indenbaum, Andrew Michaels, Mary Michaels, and Joel Rubenzahl, each of which assert that they are creditors of PISF, commenced an involuntary chapter 11 bankruptcy action against PISF, Case No. 20-30579. On July 26, 2020, PISF filed a consent to the entry of an order for relief in the PISF Case, which this Court entered on July 27, 2020.

On July 26, 2020, PFI also commenced its bankruptcy case, Case No. 20-30604, by filing a voluntary chapter 11 petition and sought joint administration with the PISF Case, which this Court granted on July 27, 2020.

The Debtors continue to operate their respective businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Hogan Decl., ¶ 4.

---

[1] The *Declaration of Michael Hogan in Support of the Bankruptcy Filing and Early Case Administration Motions* filed on July 26, 2017 as Doc. No. 5 (the "First Day Hogan Declaration") contains a detailed discussion of the Debtors' background, capital structure, and the events leading to their chapter 11 cases.

C.  **Proposed Sale of Assets**

The Debtors wish to sell certain estate Assets by negotiated sale and/or public auction. The Debtors have concurrently filed an application to employ Auctioneer to conduct the negotiated sale and/or public auction of the Assets.

The Debtors believe the Assets mainly consist of holiday items, including but not limited to decorations and costumes. Hogan Decl., ¶ 6. The Assets also include geodes and related items that were abandoned by one of PFI's prior tenants. *Id.* The Debtors do not currently have a list of all the Assets as the Assets consist of a large number of items, many of which are in boxes and have not been fully inventoried. Hogan Decl., ¶ 6. The entire list of Assets will be added as <u>Exhibit A</u> to final form of the Disposition Agreement. *See* Hogan Decl., Ex. 1. The Debtors are not aware of any liens against the Assets. Hogan Decl., ¶ 6.

The Assets do not generate any income for the Debtors and they are unnecessary to the Debtors' continued operations. Hogan Decl., ¶ 7. The Debtors believe the Assets are likely to sell for a total of less than $100,000 and perhaps substantially less than that amount. Hogan Decl., ¶ 7. The primary reasons the Debtors' seek to sell the Assets are to (i) stop paying any costs to store the Assets, (ii) get a specific PFI-owned property where many of the Assets are located ready for sale, and (iii) avoid the costs of disposing of the Assets. Hogan Decl., ¶ 9.

## III.

## RELIEF REQUESTED

The Debtors seek an order from this Court (the "<u>Sale Order</u>") approving the sale of the Assets pursuant to the terms of the Disposition Agreement. The Debtors also request that the Sale Order provide that the sale of the Assets be free and clear of liens, claims, encumbrances and other interests, including but not limited to, persons listed as creditors on the Debtors' schedules or who have filed a proof of claim or request for notice in the Debtors' case, with any such liens, claims, encumbrances or interests to attach to the proceeds of the sale.

The Debtors further request leave to dispose of any Assets that are not sold through the auction process by January 15, 2021.

The Debtors further request that the Sale Order provide that any successful bidder be afforded the protections of Section 363(m) of the Bankruptcy Code.

Finally, the Debtors request that the Sale Order provide that the provisions of the Federal Rule of Bankruptcy Procedure 6004(h), which would otherwise stay any order approving the sale of the Assets, be waived.

## IV.

## AUTHORITY FOR REQUESTED RELIEF

### A. The Sale Is Within the Sound Business Judgment of the Debtors and Should Be Approved

Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.

However, courts in the Ninth Circuit and others have required that the decision to sell assets outside the ordinary cause of business be based upon the sound business judgment of the debtors. *See In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. BAP 1996) ("debtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification") (citing *In re Lionel Corp.*, 722 F. 2d 1063, 1070 (2nd Cir. 1983)); *In re Humboldt Creamery, LLC*, No. 09-11078, 2009 Bankr. LEXIS 2470, at *3 (Bankr. N.D. Cal. Aug. 14, 2009).

Bankruptcy Code Section 363 does not require that the Court substitute its own business judgment for that of the debtor. *See, e.g., In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 678 (Bankr. S.D.N.Y. 1989); *In re Highway Equip. Co.*, 61 B.R. 58, 60 (Bankr. S.D. Ohio 1986). Rather, the Court should ascertain whether the debtor has articulated a valid business justification for the proposed transaction. *See, e.g., Lewis v. Anderson*, 615 F.2d

778, 781 (9th Cir. 1979). This is consistent with the congressional intent to limit judicial involvement in business decisions and to leave day-to-day operational matters within the debtor's broad authority. *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982) (recognizing "broad authority to operate the business of a debtor . . . [which] indicates congressional intent to limit court involvement in business decisions by a trustee . . . [so that] a court may not interfere with a reasonable business decision made in good faith by a trustee").

Several courts have held that the "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, "(1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice to creditors was proper; and (4) the sale is made in good faith." *In re Slates*, No. 12-1168, 2012 Bankr. LEXIS 5159, at *31 (B.A.P. 9th Cir. Oct. 31, 2012).

Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *See In re Humboldt Creamery, LLC*, 2009 Bankr. LEXIS 2470, at *3 (Bankr. N.D. Cal. Aug. 14, 2009) (citing *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2nd Cir. 1983)).

*1.     There is a sound business purpose for the sale of the Assets*

A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

In this case, the Debtors submit that a sound business purpose exists to proceed with the Sale of the Assets pursuant to the Disposition Agreement. Indeed, more than ample business justification exists to approve the Disposition Agreement. The Assets, which consist mainly of Christmas items, geodes and other consumer-related items, do not generate any income for the Debtors and they are unnecessary to the Debtors' continued operations. Hogan Decl., ¶ 7. Thus, the sale of the Assets would benefit the Debtors, the estates, and creditors by generating cash for the Debtors' estates, and eliminate the costs

and hassle to the Debtors of retaining or disposing of the Assets.  Moreover, the sale of the Assets will assist the Debtors in getting the PFI-owned property where many of the Assets are located ready for sale.  Accordingly, there is a sound business purpose for the sale of the Assets.

### 2. *The Debtors have retained an Auctioneer to sell the Assets at a fair and reasonable price*

The Debtors have concurrently filed a motion for entry of an order authorizing the employment of Silicon Valley Disposition, Inc. ("Auctioneer") to sell the assets.  The Auctioneer has more than 20 years of experience in liquidating machinery and equipment both in and out of bankruptcy, and has conducted liquidation sales in various assignments for the benefit of creditors and in bankruptcy cases.  *See* Doc. No. 218-1, Declaration of John Carroll, ¶ 4.  Over the past 10 years, the Auctioneer has conducted more than a dozen auctions and negotiated sales of assets like the Assets.  *Id.* ¶ 6.  Thus, the Auctioneer is well-qualified to market and sell the Assets.

Pursuant to the Disposition Agreement, which was negotiated at arms' length, the Auctioneer will advertise and conduct a public negotiated sale followed by an auction of the Assets.  At all times, the sale and auction will be conducted exclusively over the internet and advertised on the Auctioneer's website.  The Auctioneer's in-house marketing team will work directly with the Debtors to create high interest in the sale of the Assets to ensure that a competitive bidding environment is set.  The Auctioneer will also provide advanced search, notifications and watch options to ensure buyers can easily find the Assets.  All of the Assets will be sold to the highest bidder (subject only to the purchaser's timely payment in full and removal of purchased Assets.)

For all the reasons set forth above, the sale price of the Assets will be fair and reasonable.

### 3. *All interested parties will be provided with notice of the sale*

In addition, the Debtors believe that reasonable and adequate notice of the sale of the Assets is being provided to interested persons.  Notice of the hearing on the will be

served on all potentially interested parties. Accordingly, the notice prong of the "sound business judgment" test is satisfied.

### 4. *The sale is proposed in good faith*

The fourth prong of the "sound business judgment" test examines whether the sale of the Assets is in good faith. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to Section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

Although the Bankruptcy Code does not define "good faith purchaser," the Ninth Circuit, construing Section 363(m) of the Bankruptcy Code, has stated that "[a] good faith buyer 'is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert* (*In re Ewell*), 958 F. 2d 276, 281 (9th Cir. 1992); *see also Paulman v. Gateway Venture Partners Iii, Ltd. P'ship (In re Filtercorp, Inc.),* 163 F.3d 570, 577 (9th Cir. 1998); *In re Hunt*, No. 12-08439, 2014 U.S. Dist. LEXIS 189464, at *59 (C.D. Cal. July 25, 2014) ("Good faith' encompasses fair value, and further speaks to the integrity of the transaction.").

Generally, lack of good faith can be shown by "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Kwai v. Wirum (In re Glob. Reach Inv. Corp.)*, 570 F. App'x 723, 723 (9th Cir. 2014) (citing *In re Ewell*, 958 F.2d at 281); *In re Filtercorp, Inc.,* 163 F.3d at 577; *In re Hunt*, 2014 U.S. LEXIS 189464, at *59 ("Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers.").

Here, the sale of the Assets is in good faith. The Debtors have engaged a neutral third-party Auctioneer to sell the Assets to the public through negotiated sale and public auction. Thus, there is no evidence of fraud or collusion between the Debtors and potential buyers in the terms of the Disposition Agreement, or elsewhere. Moreover, there is no evidence of any attempt to take unfair advantage of potential purchasers. The Disposition Agreement does not contain any special treatment for the Debtors, the bankruptcy estate, any potential purchasers, or insiders. Rather, the Auctioneer will advertise and conduct a public negotiated sale followed by an auction of the Assets, and consign any Assets not sold through negotiated sale into one or more online auctions. Thus, all interested parties will have a fair opportunity to submit a bid for any of the Assets. Accordingly, the sale of the Assets is in good faith.

5. *Purchasers should be afforded protections under Section 363(m) of the Bankruptcy Code*

Under the circumstances, any winning bidder for the purchased Assets should be afforded protections that Section 363(m) of the Bankruptcy Code provides to a good faith purchaser. The auction procedures are designed to prevent the Debtors or the winning bidders from engaging in any conduct that would cause or permit the Disposition Agreement or the sales to be avoided under Section 363(n) of the Bankruptcy Code. All creditors and parties in interest will receive notice of the hearing on the Motion and will be provided with an opportunity to be heard. The Debtors submit that such notice is adequate for entry of the order approving the sale of Assets pursuant to the Disposition Agreement and satisfies the requisite notice provisions required under Section 363(b) of the Bankruptcy Code. Accordingly, all purchasers of the Assets should be afforded protections under Section 363(m) of the Bankruptcy Code.

**B.** **The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code**

Under Section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party

asserting such a lien, claim or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f).

"Because Section 363(f) is written in the disjunctive, satisfaction of any one condition is sufficient to sell the property 'free and clear of any interest.'" *SEC v. Capital Cove Bancorp LLC*, No. 15-00980, 2015 U.S. Dist. LEXIS 186531, at *4-5 (C.D. Cal. Nov. 19, 2015); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by Section 363(f). *See, e.g.*, *In re TWA*, Case No. 01-0056, 2001 Bankr. LEXIS 723, at *5 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

Finally, to the extent a party receives notice of, but does not file a written objection to, this Motion, such party should be deemed to have consented to the sale free and clear of their liens. *See In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo 1990).

Here, the Debtors are not aware of any liens against the Assets, which consists of holiday items, consumer goods and geodes. Hogan Decl., ¶ 6. Moreover, the Debtors will cause notice of the hearing on the Motion to be provided to all persons and entities who were scheduled by the Debtors or who have filed a Proof of Claim, among others, and the notice will specify the relief requested in this Motion. To the extent any person or entity asserts that it has a lien, claim or interest in or to the Assets, such lien, claim or interest is in bona fide dispute.

Accordingly, the sale free and clear of such interests is authorized pursuant to Section 363(f)(4) of the Bankruptcy Code.

## C. Relief From The Waiting Periods Under Bankruptcy Rule 6004(h) Is Appropriate

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors request that the Sale Order be effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rule 6004(h) is waived. Such relief should be granted for several reasons.

First, the purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before an order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14 day stay period, Collier on Bankruptcy suggests that the 14 day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy, ¶ 6004.11 (16th ed. rev. 2019). Therefore, to the extent there are no objections to this Motion, the 14 day stay should be waived given that its purpose is to allow an objecting party to prepare an appeal.

Even if an objection is filed and overruled, this court should still waive the 14 day stay. When an objection is overruled to a sale motion, a court may waive the stay "upon a showing that there is a sufficient business need to close the transaction within the 14-day period and the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected." 10 Collier on Bankruptcy ¶ 6004.11 (16th ed. rev. 2019).

In this case, there is a strong justification to initiate the sale process as soon as possible because the Assets at issue include holiday items, which will lose value if they are not sold sufficiently in advance of the holidays. Thus, even if an objection is made and overruled, the 14-day stay of Rule 6004(h) should be waived.

# V.
# CONCLUSION

Based on the foregoing reasons, the Debtors respectfully request that the Court enter an order granting this Motion and such other and further relief as the Court deems just and proper.

SUBMITTED BY:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     */s/ J. Barrett Marum*
ORI KATZ
J. BARRETT MARUM
MATT KLINGER
GIANNA SEGRETTI

Counsel for Debtors