Ori Katz (CA Bar No. 209561)
J. Barrett Marum (CA Bar No. 228628)
Matt Klinger (CA Bar No. 307362)
Gianni Segretti (CA Bar No. 323645)
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
(A Limited Partnership Including Professional
Corporations)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4019
Telephone:     (415) 434-9100
Facsimile:     (415) 434-3947
Email:          okatz@sheppardmullin.com
                bmarum@sheppardmullin.com
                mklinger@sheppardmullin.com
                gsegretii@sheppardmullin.com

*Counsel to Debtors and Debtors in Possession*

Debra I. Grassgreen (CA Bar No. 169978)
John D. Fiero (CA Bar No. 136557)
Cia H. Mackle (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA  94111
Telephone:     (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:        dgrassgreen@pszjlaw.com
                jfiero@pszjlaw.com
                cmackle@pszjlaw.com

*Counsel to the Official Committee of
Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., *et al.*,[1]<br><br>                                   Debtors. | Chapter 11<br><br>Case No. 20-30604<br><br>(Jointly Administered)<br><br>**AMENDED JOINT CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND SUPPORTED BY THE AD HOC LLC MEMBERS COMMITTEE AND THE AD HOC DOT NOTEHOLDERS COMMITTEE** |

---

[1] A complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses is attached hereto as **Exhibit 1**.

Case: 20-30604     Doc# 554     Filed: 04/09/21     Entered: 04/09/21 18:34:53     Page 1 of 62

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................1

DEFINED TERMS AND RULES OF INTERPRETATION...............................1

ARTICLE I. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..........................17

    1.1.    Summary and Classification of Claims.............................17

    1.2.    Classification & Voting Controversies ..........................18

ARTICLE II. TREATMENT OF CLAIMS AND EQUITY INTERESTS ....................18

    2.1    Unclassified Claims .........................................18

    2.2    Class 1: Non-Investor First-Priority Lender Claims..............19

    2.3    Class 2: Non-Investor Other Secured Claims....................21

    2.4    Class 3: Priority Claims .......................................22

    2.5    Class 4: DOT Noteholder Claims................................22

    2.6    Class 5: Non-DOT Investor Claims..............................23

    2.7    Class 6: Other Unsecured Claims ...............................24

    2.8    Class 7: Other Subordinated Claims ............................25

    2.9    Class 8: Equity Interests.......................................25

    2.10    Comprehensive Settlement of Claims and Controversies..........25

ARTICLE III. ACCEPTANCE OR REJECTION OF THE PLAN .........................27

    3.1    Impaired Class of Claims Entitled to Vote .....................27

    3.2    Acceptance by an Impaired Class ...............................27

    3.3    Presumed Acceptances by Unimpaired Classes ...................27

    3.4    Impaired Classes Deemed to Reject Plan ........................27

    3.5    Modifications of Votes ........................................27

    3.6    Confirmation Pursuant to Bankruptcy Code Section 1129(b) .......27

    3.7    Elimination of Vacant Classes .................................28

    3.8    Severability of Joint Plan.....................................28

ARTICLE IV. IMPLEMENTATION OF THE PLAN ...................................................28

    **4.1**    Implementation of the Plan. ...................................................................28

    **4.2**    Streamlining of the Debtors' Corporate Affairs .....................................28

    **4.3**    PFI Trust .................................................................................................29

    **4.4**    Alternative Restructuring Transactions. ..................................................35

    **4.5**    Preservation of Privileges and Defenses. ................................................35

    **4.6**    Preservation of Rights of Action. ............................................................35

    **4.7**    Cancellation of Instruments. ...................................................................36

    **4.8**    Substantive Consolidation Including of Professional Investors 28, LLC and PFI Glenwood LLC. .............................................................................36

ARTICLE V. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............37

    5.1    Assumption of Certain Executory Contracts and Unexpired Leases. ....37

    5.2    Rejection of Executory Contracts and Unexpired Leases. ......................39

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...........................39

    **6.1**    Distributions TO SENIOR CLAIMS; SENIOR CLAIMS RESERVE. ...............39

    **6.2**    Timing of Distributions for Allowed Claims. .........................................39

    **6.3**    calculating distributions and related matters. .........................................40

    **6.4**    Application of the Schedule of Allowed Netted Claims. ........................40

    **6.5**    Interest and Other Amounts Regarding Claims. ......................................40

    **6.6**    Means of Cash Payment. .........................................................................40

    **6.7**    Form of Currency for Distributions. .......................................................41

    **6.8**    Fractional Distributions. ..........................................................................41

    **6.9**    No Distributions With Respect to Certain Claims. ..................................41

    **6.10**    Delivery of Distributions. ........................................................................41

    **6.11**    Application of Distribution Record Date & Other Transfer Restrictions. .............41

    **6.12**    Withholding, Payment, and Reporting Requirements Regarding Distributions. ....42

**6.13**   Defenses and Setoffs. ................................................................................42

**6.14**   Allocation of Distributions. ........................................................................42

**6.15**   Joint Distributions. ....................................................................................42

**6.16**   Forfeiture of Distributions. .......................................................................43

ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO ...43

7.1   Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties or Disputing Claimants. ...............................................43

7.2   Claim objections. .......................................................................................43

7.3   Estimation of Certain Claims. ...................................................................43

7.4   Distributions Following Allowance. ...........................................................44

7.5   Disposition of Assets in Reserves After Disallowance................................44

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .........................44

**8.1**   Conditions to the Effective Date. ...............................................................44

**8.2**   Waiver of Conditions to the Effective Date.................................................45

**8.3**   Effect of Non-Occurrence of Conditions to the Effective Date.....................45

**8.4**   Notice of the Effective Date. .......................................................................45

ARTICLE IX. RETENTION OF JURISDICTION AND POWER .............................................45

**9.1**   Scope of Retained Jurisdiction and Power....................................................45

**9.2**   Reserved Rights to Seek Bankruptcy Court Approval. ................................46

**9.3**   Non-Exercise of Jurisdiction.......................................................................47

ARTICLE X. MISCELLANEOUS PROVISIONS ..................................................................47

**10.1**   Lien expungement procedures. ...................................................................47

**10.2**   Administrative Claims. ...............................................................................47

**10.3**   Professional Fee Claims..............................................................................47

**10.4**   Payment of Statutory Fees. ........................................................................48

**10.5**   SEC related Provisions. ..............................................................................48

| | | |
|---|---|---|
| **10.6** | Post-Effective-Date Reporting. | 48 |
| **10.7** | Dissolution of the Committees. | 48 |
| **10.8** | Modifications and Amendments. | 48 |
| **10.9** | Severability of Plan Provisions. | 49 |
| **10.10** | Compromises and Settlements. | 49 |
| **10.11** | Binding Effect of Plan. | 49 |
| **10.12** | Non-Discharge of the Debtors; Injunction. | 49 |
| **10.13** | Releases and Related Matters. | 50 |
| **10.14** | Exculpation and Limitation of Liability. | 50 |
| **10.15** | Term of Injunctions or Stays. | 51 |
| **10.16** | Revocation, Withdrawal, or Non-Consummation. | 51 |
| **10.17** | Exemption from Transfer Taxes. | 51 |
| **10.18** | Computation of Time. | 51 |
| **10.19** | Transactions on Business Days. | 51 |
| **10.20** | Good Faith. | 51 |
| **10.21** | Governing Law. | 52 |
| **10.22** | Notices. | 52 |
| **10.23** | Final Decree. | 52 |
| **10.24** | Additional Documents. | 52 |
| **10.25** | Conflicts with the Plan. | 52 |
| ARTICLE XI. | REQUEST FOR CONFIRMATION AND RECOMMENDATION | 53 |
| **11.1** | Request for Confirmation. | 53 |
| **11.2** | Recommendation. | 53 |

# INTRODUCTION[1]

The Debtors and the Unsecured Creditors Committee jointly hereby propose this Plan, which provides for the resolution of the outstanding Claims asserted against and Equity Interests in the Debtors. This Plan was developed after extensive negotiations by and among the Debtors, the Unsecured Creditors Committee, the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee and, as presented, is backed by the full support and recommendation of all three (3) Committees and the Debtors. Provided herewith as a separate enclosure is a brief summary of the Plan, as well as the statements of the Ad Hoc Committees in support of this Plan, which all Investors are encouraged to read in their entirety in conjunction with this Plan and other documents referenced herein.[2]

Further reference is made to the Disclosure Statement for (i) a discussion of the Debtors' history, businesses, properties and other assets, and results of operations and other financial information; (ii) a summary and analysis of this Plan; and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan.

The Debtors and the Unsecured Creditors' Committee are the proponents of the Plan within the meaning of Bankruptcy Code section 1129. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Sections 10.8 and 10.16 of the Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS AND SCHEDULES THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

(a)     all Defined Terms shall have the meanings ascribed to them in this Article I of the Plan;

(b)     any term used in the Plan that is not a Defined Term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable;

---

[1] Capitalized terms used in this Introduction have the meanings ascribed to those terms in Article I below.

[2] In the event of any inconsistencies between the terms of the Plan and information and descriptions in the above-referenced Plan summary, the terms of the Plan shall control.

(c)     whenever the context requires, terms shall include the plural as well as the singular number, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(d)     any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document shall be substantially in such form or substantially on such terms and conditions;

(e)     any reference in the Plan to an existing document, instrument, or exhibit means such document, instrument, or exhibit as it may have been or may be amended, modified, or supplemented from time to time;

(f)     any reference to a specific Person includes any successors or lawful assigns of such Person, and all rights, benefits, interests, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, trustee, liquidator, rehabilitator, conservator, successor, or lawful assign of such Person;

(g)     unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(h)     unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan;

(i)     the words "herein," "hereof," "hereto," "hereunder," "herewith," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(j)     whenever the Plan uses the word "including," such reference shall be deemed to mean "including, without limitation,";

(k)     captions and headings to articles and sections are intended to be a part of the Plan;

(l)     whenever the Plan provides that a document or thing must be "acceptable" or "satisfactory" to any Person, such requirement shall in each case be subject to a reasonableness qualifier;

(m)     the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document other than the Confirmation Order; and

(n)     all other rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

The following Defined Terms shall have the respective meanings specified below:

**1.1     Ad Hoc Committees:** The Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee.

**1.2     Ad Hoc DOT Noteholders Committee:** The *ad hoc* committee composed of certain DOT Noteholders.

**1.3     Ad Hoc LLC Members Committee:** The *ad hoc* committee composed of certain PFI LLC Members.

**1.4** **Administrative Claim:** A Claim, to the extent not previously paid, otherwise satisfied, or withdrawn, for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date or the Order for Relief Date, as applicable, until and including the Effective Date, of preserving the Estates and operating the Debtors' businesses; (b) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code; and (c) all Section 503(b)(9) Claims.

**1.5** **Administrative Claims Bar Date:** The last date by which any Person must File a request for payment of an Administrative Claim other than a Professional Fee Claim, which date shall be the first Business Day that is at least thirty (30) calendar days after the Effective Date. For the avoidance of doubt, post-petition statutory tax Claims shall not be subject to the Administrative Claims Bar Date. For the further avoidance of doubt, the Claims Bar Date for Section 503(b)(9) Claims is the General Claims Bar Date.

**1.6** **Allowed**, **Allowed Claim**, or **Allowed [ ] Claim:**

      (a)      with respect to a Claim arising prior to the Petition Date (including a Section 503(b)(9) Claim):

            (i)      either (A) a proof of claim was timely Filed by the applicable Claims Bar Date, or (B) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and

            (ii)     either (A) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (B) the Claim is expressly allowed by a Final Order or under the Plan;

      (b)      with respect to a Claim arising on or after the Petition Date (excluding a Section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Plan.

Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date. Moreover, any portion of a Claim that is withdrawn, expunged, satisfied, released, or waived during the Chapter 11 Cases or following the Effective Date is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Notwithstanding any of the foregoing, Investor Claims will be Allowed as set forth in Section 6.4 of the Plan.

**1.7** **Alternative Restructuring Transactions:** Such arrangements, restructurings, continuances, transfers, dispositions, liquidations, dissolutions, mergers, amalgamations, consolidations and/or other corporate transactions, if any, that the Debtors, after consultation with each of the Committees, may determine to be necessary to implement the Plan, as an alternative to or in addition to one or more of the transactions contemplated under the Plan, whether based on tax, corporate, business and/or other considerations.

**1.8** **Alternative Restructuring Transactions Memorandum:** An exhibit which sets forth the steps to be carried out to effectuate the Alternative Restructuring Transactions, if applicable, on and after the Effective Date, and which will be reasonably acceptable to each of the Committees. Articles III and V of the Plan are subject to any modifications set forth in the Alternative Restructuring Transactions Memorandum, if applicable. The Alternative Restructuring Transactions Memorandum (if any) will be Filed no later than seven (7) days prior to the Confirmation Hearing and be available at https://www.donlinrecano.com/Clients/pfi/Index.

SMRH:4816-5664-3557.1
040921

73ZL-319169

**1.9** **Available Cash:** All Cash held by the Debtors on the Effective Date or by the PFI Trust on and after the Effective Date; in each case, after payments, allocations, or reserves in accordance with the Plan and the PFI Trust Agreement.

**1.10** **Avoidance Actions:** Any and all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 506(c), 510, 542, 544, 545, 547, 548, 549, 550, 551, 552(b) or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.11** **Ballot:** The ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

**1.12** **Bankruptcy Code:** Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.13** **Bankruptcy Court:** The United States Bankruptcy Court for the Northern District of California, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the Northern District of California.

**1.14** **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.15** **Bar Date Order:** The order of the Bankruptcy Court setting and establishing, among other things, the General Claims Bar Date.

**1.16** **BOV:** A board for the PFI Trust, whose initial, volunteer members shall be selected by the Committees and identified in the Plan Supplement. If any member of the BOV later becomes unavailable for any reason, any replacement member shall be selected and appointed as provided in the PFI Trust Agreement.

**1.17** **Business Day:** Any day other than a Saturday, a Sunday or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

**1.18** **Cash:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.19** **Cash Collateral Orders:** Collectively, all orders entered by the Bankruptcy Court authorizing the applicable Debtors to use cash collateral pursuant to section 363 of the Bankruptcy Code.

**1.20** **Causes of Action:** Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise.

SMRH:4816-5664-3557.1
040921

73ZL-319169

**1.21** __Chapter 11 Cases:__ The voluntary and involuntary chapter 11 bankruptcy cases commenced by the Debtors, which are being jointly administered under the case caption *In re Professional Financial Investors, Inc., et al.*, Case No. 20-30604 (Bankr. N.D. Cal.).

**1.22** __Claim:__ Any "claim," as defined in Bankruptcy Code section 101(5), against any of the Debtors or against any property of the Debtors.

**1.23** __Claim Objection Deadline:__ Subject to extension as set forth in Section 70 of the Plan, the date that is the first Business Day that is at least 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by order of the Bankruptcy Court.

**1.24** __Claims Agent:__ Donlin, Recano & Co., Inc., the Debtors' court-appointed claims, noticing, and balloting agent.

**1.25** __Claims Bar Date:__ As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, the Rejection Claims Bar Date, or any additional bar date set by the Bankruptcy Court with respect to Investor Claims.

**1.26** __Class:__ A category of Claims or Equity Interests designated pursuant to the Plan, or any subclass thereof.

**1.27** __Class A PFI Trust Interests:__ The PFI Trust Interests to be distributed to: (a) Investors under the Plan and the PFI Trust Agreement on account of any Investor Restitution Claim; and (b) Holders of Other Unsecured Claims on account of their Allowed Class 6 Claims.

**1.28** __Class B PFI Trust Interests:__ The PFI Trust Interests to be distributed to Investors under the Plan and the PFI Trust Agreement on account of any Investor Subordinated Claim.

**1.29** __Closing Date:__ The date on which all of the Chapter 11 Cases have been closed in accordance with Section 10.23 of the Plan.

**1.30** __Collateral:__ Any Estate Asset that is subject to a Lien to secure the payment or performance of a Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable nonbankruptcy law.

**1.31** __Collateral Source Recoveries:__ Any recoveries from other sources (other than those pursuant to the Plan) that an Investor receives on account of losses represented by its Investor Claim, including, without limitation, proceeds of insurance, litigation, or settlements.

**1.32** __Committees:__ Collectively, the Ad Hoc LLC Members Committee, the Ad Hoc DOT Noteholders Committee, and the Unsecured Creditors' Committee.

**1.33** __Confirmation:__ Entry by the Bankruptcy Court of the Confirmation Order.

**1.34** __Confirmation Hearing:__ The hearing or hearings held by the Bankruptcy Court to consider Confirmation of the Plan as required by Bankruptcy Code section 1128(a), as such hearing may be continued from time to time.

**1.35** __Confirmation Order:__ The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129 in a form reasonably acceptable to the Debtors and each of the Committees.

**1.36** __Contingent Claim:__ Any Claim that is Scheduled or Filed as contingent.

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 10 of 62

**1.37 Contributed Claims:** All Causes of Action (1) that are legally assignable (including Causes of Action that are legally assignable solely because of the preemptive effect of the Plan) that an Investor has against any Person that is not a Released Party and that are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, including (a) all Causes of Action based on, arising out of, or related to the marketing, sale, and issuance of any investments related to the Debtors; (b) all Causes of Action for unlawful dividend, fraudulent conveyance, fraudulent transfer, voidable transaction, or other avoidance claims under state or federal law; (c) all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; (d) all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of, any of the wrongful conduct described in the Disclosure Statement, including in respect of any alleged fraud related thereto; and (e) all Causes of Action based on aiding or abetting, entering into a conspiracy with, or otherwise supporting torts committed by the Debtors or their agents, and (2) for which a Contributing Claimant elects to contribute such Causes of Action on its Ballot. For the avoidance of doubt, the following are <u>not</u> Contributed Claims: (i) Causes of Action based upon loss of liens or lien priority, and (ii) Causes of Action by Investors against their own professionals, investment advisers, or investment managers related to their decision to invest in PFI, PISF or any of the LLC/LP Debtors or the handling of such investments; *provided, however,* that any recoveries on such Causes of Action shall be Collateral Source Recoveries.

**1.38 Contributing Claimants:** The Investors that elect on their Ballots to contribute Contributed Claims to the PFI Trust.

**1.39 Contributing Claimants' Enhancement Multiplier:** Five percent (5%) (*i.e.*, the applicable Investor's Allowed Investor Claim amount will be increased by 5%).

**1.40 Corporate Action:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, or other Person to in turn act.

**1.41 Creditor:** Any Holder of a Claim.

**1.42 Cure Payment:** The payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) that is necessary to cure any and all defaults under an executory contract or unexpired lease so that such contract or lease may be assumed, or assumed and assigned, pursuant to Bankruptcy Code section 1123(b)(2).

**1.43 Debtor** or **Debtors:** Individually and collectively, each of the entities listed on **Exhibit 1** hereto, as the same may be amended from time to time, including, without limitation, the Plan-Consolidated Debtors as of the Effective Date.

**1.44 Defined Term:** Any capitalized term that is defined in this Article I of the Plan.

**1.45 Disallowed Claim:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is expressly Allowed by a Final Order or under the Plan; or (b) has been disallowed pursuant to an order of the Bankruptcy Court.

**1.46 Disclosure Statement:** That certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as it subsequently may be amended, modified, or supplemented by the Plan Proponents.

**1.47    Disputed Claim:** Any Claim:

 (a) that is disputed in whole or in part under the Plan or that is Scheduled as disputed, contingent, unliquidated, or in an amount equal to zero; or

 (b) that is asserted by any of the Excluded Parties or any Disputing Claimant, which are Disputed Claims in their entirety and, as such, will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order; or

 (c) that

  (i) is not expressly Allowed by a Final Order or under the Plan; and

  (ii) as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

  (iii) as to which either:

   (1) an objection or request for estimation or subordination (A) has been timely Filed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or

   (2) the Claim Objection Deadline has not passed as to such Claim (unless the PFI Trust has determined that it will not object to such Claim).

**1.48    Disputing Claimant:** An Investor (other than an Excluded Party) that disputes the amounts set forth for such Person in the Schedule of Allowed Netted Claims in accordance with the deadlines and procedures to be established by further order of the Bankruptcy Court or that challenges the expungement of such Investor's lien in Real Property under the Plan.

**1.49    Distribution:** Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan or the PFI Trust Agreement.

**1.50    Distribution Agent:** (i) The PFI Trustee solely in his, her or its capacity as distribution agent under the Plan with respect to Distributions to Holders of Allowed Administrative Claims (including Professional Fee Claims), Involuntary Gap Claims, Priority Tax Claims, and Claims in Classes 1, 2 and 3 on account of such Allowed Claims, or (ii) any party designated by the PFI Trustee to serve in such capacity.

**1.51    Distribution Date:** Any date on which a Distribution is made.

**1.52    Distribution Fund:** Cash that is and becomes available for funding the Distributions to the PFI Trust Beneficiaries in accordance with the Plan and the PFI Trust Agreement.

**1.53    Distribution Record Date:** The record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

**1.54    Distribution Reserve:** One or more reserves in respect of Contingent Claims, Disputed Claims, or Unliquidated Claims established under the Plan for PFI Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved PFI Trust Interests.

**1.55    DOT Noteholder Claims:** Claims of DOT Noteholders.

**1.56    DOT Noteholders:**  Those certain Investor lenders to PFI in the form of promissory notes that are purportedly secured by deeds of trust on certain of the Real Properties owned by PFI. Although such deeds of trust were typically junior or subordinated, it is understood that some DOT Noteholders may hold, or assert that they hold, senior deeds of trust on certain Real Properties, and both types are included within this definition.

**1.57    DOT Noteholders' Deeds of Trust:**  Any and all deeds of trust that secure notes held by DOT Noteholders, regardless of whether such deeds of trust are senior or junior in priority to other deeds of trust.

**1.58    Effective Date:** The date that is the first Business Day on which each condition set forth in Article VIII of the Plan has been satisfied or waived as set forth therein but in no event later than 120 days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court.

**1.59    Equity Interests:** All previously issued and outstanding common stock, preferred stock, membership interests, or other ownership interests in any of the Debtors (including, without limitation, the Plan-Consolidated Debtors) outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, membership interests, or other ownership interests. For the avoidance of doubt, any and all purported equity interests of an Investor in any Debtor shall be deemed Investor Claims of the Investor pursuant to the Plan, regardless of the pre-petition designations used by the Debtors and/or Investors.

**1.60    Estate Assets:** Collectively, (a) any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including books and records, the Real Properties, all Avoidance Actions and Causes of Action as of the Effective Date; and (b) any assets contributed to or recovered by the PFI Trust or the OpCo on or after the Effective Date.

**1.61    Estates:** The chapter 11 estates of the Debtors created by Bankruptcy Code section 541(a).

**1.62    Excluded Parties:** Any prepetition Insider of any of the Debtors, any non-debtor affiliates of the Debtors or Insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the marketing, sale, or collecting or handling of any funds regarding the investments of the Investors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the marketing, sale, or collecting or handling of any funds regarding the investments of the Investors, including those Persons identified on the Schedule of Excluded Parties.

**1.63    Exculpated Parties:** Collectively, (a) the Debtors, (b) the Committees and their respective current and former members (in their capacities as such), and (c) each of the preceding's respective Related Parties; *provided, however*, that the Exculpated Parties shall not include any Excluded Party.

**1.64    File**, **Filed**, or **Filing:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases, except with respect to proofs of claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official claims register maintained by the Claims Agent.

**1.65    Final Decree:** An order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 3022-1 closing the Chapter 11 Cases.

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 13 of 62

**1.66    Final Order:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Cases:

>    (a)    that has not been reversed, rescinded, stayed, modified, or amended;

>    (b)    that is in full force and effect; and

>    (c)    with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be or has been filed with respect to such order.

**1.67    General Claims Bar Date:** [•], 2021, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors that arose prior to the Petition Date, other than Claims of governmental units or Investors.

**1.68    General Unsecured Claims:**    All Non-DOT Investor Claims, TIC Claims, and Other Unsecured Claims.

**1.69    Governmental Claims Bar Date:** [•], 2021, which is the deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims of governmental units against the Debtors that arose prior to the Petition Date.

**1.70    Holder:** The Person that is the owner of record of a Claim, Equity Interest, or PFI Trust Interest, as applicable.

**1.71    Impaired:** Any Class of Claims or Equity Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.72    Individual Investor-Specific Claims:** As defined in Section 2.10.3(a) of the Plan.

**1.73    Insider:** Any "insider," as defined in Bankruptcy Code section 101(31), and with respect to a limited liability company, any director, officer, person in control or relative of any of the foregoing. For clarity purposes, an insider as used herein does not include any PFI LLC Member or LP Interest Holder but does include Excluded Parties.

**1.74    Intercompany Claim:** Any Claim of one Debtor against another Debtor, except any postpetition claim arising from an "Intercompany Transaction" authorized in the several Cash Management Orders, e.g., Docket 354, issued in these Chapter 11 Cases.

**1.75    Intercompany Lien:** Any Lien securing an Intercompany Claim.

**1.76    Initial PFI Trustee:** Michael Goldberg in his capacity as the PFI Trustee of the PFI Trust as of the Effective Date.   Mr. Goldberg was jointly selected by the Committees as the Initial PFI Trustee.

**1.77    Investor:** A Person or Entity that purchased an investment product or made an investment offered by any Debtor, including, without limitation, any investments, interests and/or other rights

SMRH:4816-5664-3557.1
040921

73ZL-319169

with respect to any Debtor that were styled, marketed or sold as, among others, "PISF LP notes," "PFI DOT notes," "straight notes," "DOT notes," or "membership interests" in limited liability companies. Investors include, without limitation, PISF Straight Noteholders, DOT Noteholders, LP Interest Holders, and PFI LLC Members, but expressly excludes any of the Debtors, the Excluded Parties, and Holders of TIC Interests.

**1.78** **Investor Claims:** Any and all Claims of an Investor against any Debtor, which shall be composed of (i) an Investor Restitution Claim and (ii) an Investor Subordinated Claim.

**1.79** **Investor Claims Special Provisions:** As defined in Section 2.10.2 of the Plan.

**1.80** **Investor Lookback Period:** The prepetition period commencing July 26, 2013 (*i.e.*, seven (7) years prior to the Petition Date for PISF).

**1.81** **Investor Restitution Claim:** A Claim for restitution of an Investor to be treated *pari passu* with Other Unsecured Claims. Such claim is in lieu of contractual or other rights to return of principal investment, and is calculated as follows for a particular Investor: total Outstanding Principal Amount minus the Prepetition Distribution. For clarity purposes, although the calculation set forth herein is based on a method accounting for the Debtors' record keeping methods, in plain terms, the Investor Restitution is intended to be a "netted claim," that, in broad terms, calculates the remaining principal owed to a "cash-Investor" by looking at the "starting balance" plus "cash-in" minus "cash-out" transactions during the relevant time periods.

**1.82** **Investor Subordinated Claim:** A Claim of an Investor that is subordinated to Investor Restitution Claims and Other Unsecured Claims under the Plan, but senior in priority to Other Subordinated Claims, comprised of (i) seven percent (7%) interest, compounded annually, on the Investor's principal investments from the Ponzi Start Date until July 26, 2020, and (ii) any amount (if any) that is paid by the Investor to the PFI Trust on account of an Avoidance Action. For avoidance of doubt, an Allowed Investor Subordinated Claim shall be reduced dollar for dollar on account of any Collateral Source Recoveries the Investor receives on account of the losses represented by its Investor Claim, and if such Allowed Investor Subordinated Claim is reduced to zero, the Investor's Allowed Investor Restitution Claim will be reduced dollar for dollar on account of any additional Collateral Source Recoveries that may be received by the Investor. Investors who were paid referral fees shall not receive an Investor Subordinated Claim on account of such fee.

**1.83** **Involuntary Gap Claim:** A Claim specified in Bankruptcy Code section 502(f) and entitled to priority against the applicable Debtors and Estates under Bankruptcy Code section 507(a)(3).

**1.84** **Lien:** Has the meaning ascribed in Bankruptcy Code section 101(37), including any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, deed of trust, assignment of rents, assignment or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.85** **LLC/LP Debtors:** All of the Debtors listed on **Exhibit 1** attached to the Plan other than Debtors PFI and PISF.

**1.86** **Local Rules:** The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of California, as amended from time to time.

**1.87** **LP Interest Holder**: A holder of an interest in an LP Debtor.

**1.88** **Net PFI Trust Action Proceeds:** As defined in Section 4.3.10 of the Plan.

SMRH:4816-5664-3557.1
040921

73ZL-319169

**1.89** **Net Prepetition Investor Recovery:** With respect to a specific Investor, (a) the total Cash value remitted to the Investor during the Investor Lookback Period (whether the payment was considered a return on the investment, a referral fee, or a repayment of principal), minus (b) the total Cash value invested prepetition as principal by the Investor, provided that the value of (a) is greater than the value of (b).

**1.90** **Net Recovery:** As defined in Section 2.10.3(b) of the Plan.

**1.91** **Non-Compensatory Penalty Claims:** Any Claim, secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, to the extent such fine, penalty, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim.

**1.92** **Non-DOT Investor Claims:** Investor Claims other than DOT Noteholder Claims. For the avoidance of doubt, Non-DOT Investor Claims include Claims of PISF Straight Noteholders, PFI LLC Members, and LP Interest Holders.

**1.93** **Non-Investor First-Priority Lender:** A lender to a Debtor or an affiliate of a Debtor (including, without limitation, a retail or commercial bank) that is not an Investor and that asserts a Secured Claim on account of a first-priority deed of trust or Lien against one or more of the Real Properties.

**1.94** **Non-Investor First-Priority Lender Claims:** Any and all Secured Claims of Non-Investor First Priority Lenders in relation to one or more of the Real Properties.

**1.95** **Non-Investor Other Secured Claims:** Any and all Secured Claims of a Person that is not an Investor or a Non-Investor First-Priority Lender.

**1.96** **Nonpayment Default:** As defined in subsection 2.2.3(a) of the Plan.

**1.97** **OpCo:** A new operating company established on the Effective Date in accordance with the terms of the Plan and the PFI Trust Agreement for the sole purpose of managing, operating and monetizing the OpCo Assets for the benefit of the PFI Trust and the PFI Trust Beneficiaries thereunder.

**1.98** **OpCo Assets:** Collectively, all Estate Assets (including all partnership or membership interests in a Debtor entity, as determined by the PFI Trust) and other assets or entities that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the Debtors (after the Petition Date but before the Effective Date) or the OpCo (on or after the Effective Date) by any Person, but not including the PFI Trust Assets (including the PFI Trust Actions), the Senior Claims Reserve, the Distribution Reserve or the Professional Fee Reserve.

**1.99** **Order for Relief Date:** (a) July 26, 2020, when used in reference to PISF (the date that the Bankruptcy Court entered the order for relief in the Chapter 11 Case of PISF); (b) December 11, 2020, when used in reference to the LLC/LP Debtors (the date that the Bankruptcy Court entered the respective orders for relief in the Chapter 11 Cases of the LLC/LP Debtors); and (c) the other respective dates specified in **Exhibit 1** hereto, when used in reference to other Debtors (other than PISF, PFI and the LLC/LP Debtors).

**1.100** **Other Subordinated Claim:** Collectively, (a) any Non-Compensatory Penalty Claims and (b) any other Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Creditor holding such Claim, but not any Investor Claims.

SMRH:4816-5664-3557.1
040921

73ZL-319169

**1.101** **Other Unsecured Claim:** Any unsecured, non-priority Claim asserted against any of the Debtors or the Estates that is not a Non-Investor First-Priority Lender Claim, Investor Claim, TIC Claim or Other Subordinated Claim, including, for the avoidance of doubt, all Rejection Claims, but excluding (a) any Claims arising from any executory contracts or unexpired leases that are assumed during the Chapter 11 Cases and (b) any vendor or other Claims satisfied in the ordinary course of business or pursuant to an order of the Bankruptcy Court.

**1.102** **Outstanding Principal Amount:** When used in reference to an Investor Claim, an amount equal to the aggregate of the Investor's balance at the Ponzi Start Date, inclusive of interest actually accrued prior to the Ponzi Start Date, and actual dollars invested at any time between the Ponzi Start Date and the Petition Date (whether or not rolled over from another investment by an Investor or from the account of another Investor) on account of the Investor Claim held by the applicable Investor.

**1.103** **Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.104** **Petition Date:** (a) July 16, 2020, when used in reference to PISF (the date that an involuntary petition for relief under chapter 11 of the Bankruptcy Code was filed against PISF); (b) July 26, 2020, when used in reference to PFI that filed its voluntary chapter 11 petition on such date; (c) the other respective dates specified in **Exhibit 1** hereto, when used in reference to the LLC/LP Debtors; and (d) July 26, 2020, when used in reference to the Plan-Consolidated Debtors.

**1.105** **PFI:** Professional Financial Investors, Inc., a Debtor.

**1.106** **PFI LLC Member:** An Investor who is a member of a PFI-Managed LLC.

**1.107** **PFI-Managed LLC:** A limited liability company that is managed by PFI and/or in which PFI holds an interest.

**1.108** **PFI Trust Actions:** Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates and any Causes of Action that are contributed to the PFI Trust as Contributed Claims, in each case as against any Person that is not a Released Party.

**1.109** **PFI Trust Assets:** Collectively, (a) the PFI Trust Actions, (b) 100% of the equity interests in the OpCo (including all proceeds and distributions from OpCo), (c) Available Cash as of the Effective Date and Available Cash that is possessed by or turned over to the PFI Trust after the Effective Date, excluding the Senior Claims Reserve and the Professional Fee Reserve, and (d) other assets or entities that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the PFI Trust (on or after the Effective Date) by any Person.

**1.110** **PFI Trust Beneficiary:** Each Holder of a PFI Trust Interest. PFI Trust Interests are to be Distributed to Holders of Allowed Investor Claims and Allowed Other Unsecured Claims in accordance with Sections 2.5, 2.6 and 2.7 of the Plan.

**1.111** **PFI Trust Expenses:** Any and all reasonable fees, costs, and expenses incurred by the PFI Trustee in managing and operating the PFI Trust not inconsistent with the Plan or the PFI Trust Agreement, including the maintenance or disposition of the PFI Trust Assets and the OpCo Assets (including PFI Trustee fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the PFI Trustee or by the OpCo, personnel-related expenses, and any taxes

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 17 of 62

imposed on the PFI Trust, in respect of the PFI Trust Assets, the OpCo or the OpCo Assets), and any other expenses incurred or otherwise payable in accordance with the PFI Trust Agreement.

**1.112 PFI Trust Indemnified Parties:** The PFI Trustee, the BOV, and their respective Related Parties, each in their respective capacity as such.

**1.113 PFI Trust Interests:** Any Class A PFI Trust Interests distributed to Investors and other creditors and Class B PFI Trust Interests distributed to Investors under the Plan and the PFI Trust Agreement.

**1.114 PFI Trust Interests Waterfall:** As defined in Section 4.3.10 of the Plan.

**1.115 PFI Trustee:** The Initial PFI Trustee (Michael Goldberg), who was jointly selected by the Committees, and any successor thereto appointed pursuant to the PFI Trust Agreement, in each case acting in the capacity as trustee of the PFI Trust.

**1.116 PISF Straight Noteholders:** Those certain lenders to PISF evidenced in the form of promissory notes that are purportedly secured by PISF's interests in limited partnerships that are Debtors or affiliated with a Debtor.

**1.117 Plan:** This *Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors and Supported By the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee* and all exhibits thereto, including the Plan Supplement, as the same may be amended, modified, or supplemented in the Plan Proponents' reasonable discretion after consultation with each of the Ad Hoc Committees.

**1.118 Plan-Consolidated Debtors:** Professional Investors 28, LLC and PFI Glenwood LLC.

**1.119 Plan Proponents:** The Debtors and the Unsecured Creditors' Committee, as proponents of the Plan.

**1.120 Plan Supplement:** The ancillary documents regarding the implementation and effectuation of the Plan, which will be Filed on or before the date that is seven (7) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented prior to the Confirmation Hearing in the Plan Proponents' reasonable discretion after consultation with each of the Committees. The Plan Supplement may include, without limitation, the form of the PFI Trust Agreement, the Schedule of Assumed Agreements, and additional information relating to tax matters.

**1.121 Ponzi Start Date:** January 1, 2007.

**1.122 PFI Trust:** A trust established on the Effective Date for the benefit of the PFI Trust Beneficiaries in accordance with the terms of the Plan and the PFI Trust Agreement.

**1.123 PFI Trust Agreement:** The agreement substantially in the form Filed in the Plan Supplement and reasonably acceptable to each of the Committees establishing and delineating the terms and conditions of the PFI Trust, including the rights and duties of the PFI Trustee and the BOV.

**1.124 Prepetition Distribution:** Any readily identifiable consideration (including distributions, payments, referral fees, roll-overs to other investments of an Investor, and transfers to accounts of other Investors) that was transferred any time between the Ponzi Start Date and the Petition Date from any Person to an Investor on account of any of the Investor's investments related to the Debtors. Such consideration shall include any transfers, whether or not denominated as "principal," "interest,"

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 18 of 62

"roll-overs," "dividends," or other similar terms on account of investments held at any time even if such investment had been paid or was otherwise no longer existing as of the Petition Date.

**1.125  Priority Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim, Professional Fee Claim, an Involuntary Gap Claim, and a Priority Tax Claim.

**1.126  Priority Tax Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

**1.127  Pro Rata:** Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim or PFI Trust Interest to (b) the amount or number of that Allowed Claim or PFI Trust Interest, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included or all applicable PFI Trust Interests to (y) as applicable, the amount of all Allowed Claims of that Class or the number of applicable PFI Trust Interests, as adjusted to take into account any applicable Distribution Reserves.

**1.128  Professional:** Any professional employed in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 363, 1103, or 1104 or any professional or other Person seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(3) or 503(b)(4).

**1.129  Professional Fee Claim:** A Claim of a Professional for compensation or reimbursement of costs and expenses (or of members of the Committees for reimbursement of expenses) relating to services provided during the period from the applicable Petition Date through and including the Effective Date.

**1.130  Professional Fee Reserve:** The reserve established and funded by the PFI Trust pursuant to Section 10.3 of the Plan to provide sufficient funds to satisfy in full all unpaid Allowed Professional Fee Claims.

**1.131  Real Properties:**  Any and all real property locations (primarily consisting of apartment buildings and commercial office parks) in which a Debtor holds a direct or indirect ownership interest, including the real property locations listed on <u>Schedule 1</u> to the Disclosure Statement.

**1.132  Rejection Claim:** Any Claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

**1.133  Rejection Claims Bar Date:** To the extent not previously established by prior order of the Bankruptcy Court, the first Business Day that is at least thirty (30) calendar days after the Effective Date.

**1.134  Related Parties:** Collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, and successors of the referenced Person; *provided, however,* that the Debtors' Related Parties will be limited to the following Persons: the directors, officers, attorneys, accountants, consultants, professionals, and employees who are employed by the Debtors on the Effective Date.

**1.135  Released Parties:** Collectively, (a) the Debtors, (b) the Committees and their respective current and former members including any ex-officio members (in their capacities as such), and (c)

SMRH:4816-5664-3557.1
040921

73ZL-319169

each of the preceding's respective Related Parties; *provided, however*, that the Released Parties shall not include any Excluded Party.

**1.136** <u>**Releasing Parties:**</u> Collectively, (a) the Debtors, (b) the Estates, and (c) any Person exercising or seeking to exercise any rights of the Estates (but solely in that capacity), including each of the Committees (but not their individual members), the PFI Trustee, and any other successor to the Debtors or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

**1.137** <u>**Schedule of Allowed Netted Claims:**</u> A schedule, or any applicable portion thereof, that will be served on Investors by a deadline to be established by the Bankruptcy Court that indicates both the Outstanding Principal Amount and the Prepetition Distributions for each Investor that is not an Excluded Party.

**1.138** <u>**Schedule of Assumed Agreements:**</u> The schedule of those certain executory contracts and unexpired leases that the Debtors have determined, in the Debtors' reasonable discretion after consultation with each of the Committees, the Debtors may assume and assign to the PFI Trust or the OpCo, as applicable, on the Effective Date. The initial Schedule of Assumed Agreements will be Filed as part of the Plan Supplement, but remains subject to any modifications that may be made prior to the Effective Date pursuant to Section 55.1.1 of the Plan.

**1.139** <u>**Schedule of Excluded Parties**</u>: A non-exclusive schedule to the Disclosure Statement that lists certain of the Excluded Parties.

**1.140** <u>**Scheduled:**</u> Set forth in the Schedules.

**1.141** <u>**Schedules:**</u> The respective Schedules of Assets and Liabilities and Statements of Financial Affairs Filed by the Debtors, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**1.142** <u>**SEC:**</u> The U.S. Securities and Exchange Commission.

**1.143** <u>**Section 503(b)(9) Claim:**</u> A Claim arising under Bankruptcy Code section 503(b)(9) for the value of any goods received by the Debtors within twenty (20) calendar days before the applicable Petition Date and that were sold to the Debtors in the ordinary course of their business.

**1.144** <u>**Secured Claim:**</u> A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtors or the Estates have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtors' interest in the Collateral or to the extent of the amount subject to setoff against a Cause of Action held by the Debtors, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtors' interest in the subject Collateral or the amount subject to setoff against a Cause of Action held by the Debtors (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent Allowed. For the avoidance of doubt, Investor Claims are not defined, classified, or treated as Secured Claims under the Plan.

**1.145** <u>**Securities Act:**</u> The Securities Act of 1933, as amended.

SMRH:4816-5664-3557.1
040921

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 20 of 62

**1.146** **Senior Claims Reserve**: One or more reserves of Cash in respect of, as applicable, Administrative Claims (other than Professional Fee Claims), Involuntary Gap Claims, Priority Tax Claims, Non-Investor First Priority Lender Claims, Non-Investor Other Secured Claims, and Priority Claims (including such Claims that are Contingent Claims, Disputed Claims, or Unliquidated Claims), in amounts to be established by the PFI Trustee, after consultation with the Debtors and the Committees, on or as soon as reasonably practicable after the Effective Date, out of which (i) the Distribution Agent will make Distributions to the Holders of the foregoing Claims (if and to the extent Allowed) in accordance with the Plan, and (ii) the PFI Trustee and his, her or its agents, including the Distribution Agent (if not the PFI Trustee), will be reimbursed from such monies for reasonable costs and expenses incurred by said parties (including fees and costs to litigate and otherwise resolve Contingent Claims, Disputed Claims or Unliquidated Claims, and administer and make Distributions out of the Senior Claims Reserve).

**1.147** **Solicitation Procedures Order:** The order conditionally approving the Disclosure Statement, authorizing the Plan Proponents to solicit acceptances of the Plan, and establishing certain related procedures and deadlines.

**1.148** **TIC Agreements:** All tenancy-in-common agreements, as amended or modified from time to time, between PFI and any Holder of a TIC Interest.

**1.149** **TIC Claim:** Any and all Claims of a Holder of TIC Interests against any Debtor with respect to his or her TIC Interests.

**1.150** **TIC Interests:** The respective tenant-in-common interests of non-debtor parties in Real Properties owned in part by PFI or limited liability companies that are managed by PFI or affiliated with a Debtor.

**1.151** **TIC Investor Treatment Election:** The option provided to each Holder of a TIC Claim on his or her Ballot or by written agreement with the Debtors or PFI Trustee, as applicable, to elect to transfer his or her TIC Interests to the Debtors or PFI Trust, as applicable, and receive the treatment provided to Holders of Class 5 Non-DOT Investor Claims, including the Special Provisions Relating to Investor Claims and Special Provisions Relating to Individual Investor-Specific Claims as set forth in sections 2.11.2 and 2.11.3, respectively.

**1.152** **Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.153** **Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was Filed in an unliquidated amount.

**1.154** **Unsecured Creditors' Committee:** The official committee of unsecured creditors, as provided for under Bankruptcy Code section 1102, which was appointed in the Chapter 11 Cases of PFI and PISF, as it may be reconstituted from time to time.

**1.155** **U.S. Trustee:** The Office of the United States Trustee for the Northern District of California.

**1.156** **Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Solicitation Procedures Order.

SMRH:4816-5664-3557.1
040921

73ZL-319169

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 21 of 62

# ARTICLE I.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**1.1.** **SUMMARY AND CLASSIFICATION OF CLAIMS**. This Section classifies Claims – except for Administrative Claims, Professional Fee Claims, Involuntary Gap Claims, and Priority Tax Claims, which are not classified – for all purposes, including confirmation, Distributions, and voting. A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of a Claim falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims under the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| None | Administrative Claims | Unimpaired | Not Entitled to Vote |
| None | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| None | Involuntary Gap Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Non-Investor First-Priority Lender Claims[3] | Impaired | Entitled to Vote |
| Class 2 | Non-Investor Other Secured Claims[4] | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 3 | Priority Claims | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 4 | DOT Noteholder Claims[5] | Impaired | Entitled to Vote |
| Class 5 | Non-DOT Investor Claims | Impaired | Entitled to Vote |
| Class 6 | TIC Claims | Impaired | Entitled to Vote |
| Class 7 | Other Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 | Other Subordinated Claims | Impaired | Not Entitled to Vote (deemed to reject) |

[3] For voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Non-Investor First-Priority Lender Claim shall be deemed to be in its own subclass.

[4] For voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Non-Investor Other Secured Claim shall be deemed to be in its own subclass.

[5] For voting purposes and to comply with Bankruptcy Code section 1122(a), Allowed DOT Noteholder Claims shall be deemed to be in their own subclass on a property by property basis.

SMRH:4816-5664-3557.1
040921

73ZL-319169

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Class 9 | Equity Interests | Impaired | Not Entitled to Vote (deemed to reject) |

**NOTWITHSTANDING ANY OTHER TERM OR PROVISION OF THE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM, AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS A DISALLOWED CLAIM. IN ADDITION, THE PROPOSED CLASSIFICATION AND TREATMENT OF ANY CLAIMS SET FORTH HEREIN, INCLUDING, WITHOUT LIMITATION, THE DESIGNATION OF ANY CLASS AS IMPAIRED OR UNIMPAIRED, SHALL NOT BE DEEMED A WAIVER OR RELEASE OF ANY CAUSE OF ACTION OR AVOIDANCE ACTION AGAINST ANY HOLDER OF A CLAIM OR ANY OTHER PARTY, INCLUDING, WITHOUT LIMITATION, THE DEBTORS' OR THE PFI TRUST'S RIGHT TO SEEK SUBORDINATION OF ANY CLAIM AND RECLASSIFY SUCH CLAIMS INTO CLASS 7, AND ALL SUCH CAUSES OF ACTION AND AVOIDANCE ACTIONS ARE HEREBY PRESERVED UNDER THE PLAN.**

**1.2. CLASSIFICATION & VOTING CONTROVERSIES.**

(a) If a controversy arises regarding whether any Claim is properly classified under the Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.

(b) If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**ARTICLE II.**
**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**2.1 UNCLASSIFIED CLAIMS.**

**2.1.1 Administrative Claims.** Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) thirty (30) calendar days following the date on which an Administrative Claim becomes an Allowed Administrative Claim, (c) the date on which such Allowed Administrative Claim is otherwise due and payable, or (d) such other date as may be mutually agreed to by the PFI Trust and the Holder of such Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other less favorable treatment as to which such Holder and the PFI Trust shall have agreed upon in writing.

**2.1.2 Professional Fee Claims.** Professional Fee Claims shall be paid as set forth in Section 10.3 of the Plan.

SMRH:4816-5664-3557.1
040921

73ZL-319169

**2.1.3** **Involuntary Gap Claims.** To be eligible to receive Distributions under the Plan on account of an Involuntary Gap Claim, a proof of Claim must be Filed or deemed Filed with the Bankruptcy Court so as to be received on or before the applicable Claims Bar Date. Any Holder of an Involuntary Gap Claim that does not properly assert such Claim shall have its Claim be deemed Disallowed under the Plan and be forever barred from asserting such Claim against PISF, any of the other Debtors, and/or any of their respective Estates, assets or property. Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim. Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which an Involuntary Gap Claim becomes Allowed, the Holder of such Allowed Involuntary Gap Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Involuntary Gap Claim, (a) Cash equal to the unpaid portion of such Allowed Involuntary Gap Claim or (b) such other less favorable treatment as to which such Holder and the PFI Trust shall have agreed upon in writing.

**2.1.4** **Priority Tax Claims.** In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid, at the PFI Trust's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the PFI Trust shall have agreed upon in writing.

## 2.2 CLASS 1: NON-INVESTOR FIRST-PRIORITY LENDER CLAIMS.

Class 1 consists of all Non-Investor First Priority Lender Claims. Class 1 is Impaired under the Plan and entitled to vote. The treatment of Class 1 will not be changed, altered, amended or modified by any Alternate Restructuring Transaction referred to in section 4.4 or elsewhere in the Plan.

**2.2.1** The legal, equitable, contractual, Lien and priority rights of Holders of Class 1 Claims are unaltered by the Plan except to the extent provided in subsections 2.2.2, 2.2.3, and 2.2.4, and, notwithstanding substantive consolidation of the Debtors and vesting of the PFI Trust Assets and the OpCo Assets (including, without limitation, the Real Properties) in the PFI Trust and the OpCo, as applicable, either directly or indirectly, the Liens of the Holders of Class 1 Claims will continue to attach to their respective Collateral, and such Holders shall retain all rights and defenses, including rights of setoff and recoupment, that would apply had substantive consolidation not occurred and such Holders shall not be prejudiced by and may take advantage of substantive consolidation in asserting any rights or defenses, provided that all such Claims shall remain subject to any and all objections, defenses, counterclaims, and setoff or recoupment rights of the Debtors, the Post-Effective Date Trust, and the OpCo with respect thereto. PFI Trust or OpCo, as applicable, shall make, execute and deliver to the Holder of a Class 1 Claim such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents, amendments, modifications, assumptions and other agreements as such Holder or its attorney may reasonably request after the Effective Date and from time to time thereafter to evidence and secure such Holder's Claim and loan and to perfect and maintain the priority of all Liens. For avoidance of doubt, the Holders of Class 1 Claims shall not be affected by subsection 4.8.3 of this Plan.

Case: 20-30604   Doc# 554   Filed: 04/09/21   Entered: 04/09/21 18:34:53   Page 24 of
62

**2.2.2** Unless the PFI Trust and the Holder of a Class 1 Claim agree to other treatment, on or as soon as is reasonably practicable after the Effective Date, each Holder of a Class 1 Claim will receive either: (i) in the event of a sale or refinance concerning the Collateral, cash in the Allowed Amount of such Holder's Class 1 Claim that shall be immediately paid from escrow in exchange for release of such Holder's Lien; or (ii) the return by the PFI Trust or OpCo, as applicable, and subject to mutual agreement or court order, by deed in lieu of foreclosure, surrender, or termination of any stay, of the Collateral securing such Class 1 Claim, without representation or warranty by any Person; or (iii) (A) reinstatement of the maturity of such Class 1 Claim in the Allowed Amount as the maturity existed before any default, (B) payment of any taxes, contractual legal fees, cost and other charges, and past due installments of principal or interest, and (C) continuation thereafter of payments of principal, interest and other obligations when and as the same come due. In no event will a sale or refinance of the Collateral of any such Holder as provided in (i) above close without payment in full of the Allowed Amount of such Holder's Class 1 Claim or if such claim is subject to objection, the Holder's lien shall attach to the refinance or sale net proceeds after payment of costs of sale, property taxes and senior liens, if any. The disputed amount of net proceeds will be held in a segregated interest bearing account from which the Allowed Amount, including interest, fees, costs and other charges provided under agreement or applicable nonbankruptcy law, will be paid upon Final Order determining the claim objection or upon agreement of the Holder and the PFI Trustee. For the avoidance of doubt, and in addition to the foregoing, Holders of Class 1 Claims shall be entitled to payment of any reasonable costs, including attorneys' fees and filing fees, associated with the implementation of the Plan and the treatment provided under this section 2.2.

**2.2.3** (a) Unless the PFI Trust and the Holder of a Class 1 Claim agree in writing otherwise, each Holder of a Class 1 Claim shall be deemed to have irrevocably waived as of the Effective Date any and all defaults or breaches of contract listed in the following clauses (i) through (xi) that occurred or arose, or may have occurred or arose, prior to the Effective Date, whether discovered or undiscovered, whether continuing thereafter or not, and any fees or penalties in connection therewith (i) of the kind specified in Bankruptcy Code section 365(b)(2); (ii) related to failure to pay property taxes provided that all such taxes shall be brought current by the Effective Date; (iii) related to allowing or granting junior liens or encumbrances against or transfer of the Collateral securing the Class 1 Claim; (iv) arising from any misrepresentations or omissions made by any Debtor or any Person on behalf of a Debtor, or any breach of any covenant to provide financial, operating, or other reports, in or in connection with the contracts, agreements, or promissory notes executed by any Debtor; (v) related to the Debtors' participation in the Ponzi scheme; (vi) related to any Debtor's misuse or diversion of funds in violation of any covenant; (vii) related to any Debtor's neglect of repair or maintenance of, or physical waste with respect to, any Collateral securing the Class 1 Claim; (viii) related to any default or breach by Lewis Wallach or any Debtor or other Person under any guaranty provided to a Holder of an Class 1 Claim, including any breach of a representation or warranty thereof; (ix) related to any default arising from a change in management or control of or transfer of any interest in a Debtor, including transfers of partnership or limited partnership or limited liability company membership interests; (x) arising from or related to the substantive consolidation of the Debtors or the transfer to and vesting of the PFI Trust Assets and the OpCo Assets (including, without limitation, the Real Properties) in the PFI Trust and the OpCo, as applicable, either directly or indirectly; and (xi) related to any nonpayment breach by any Debtor of any other nonpayment covenant in any loan or security agreement between a Debtor and the Holder of a Class 1 Claim. The foregoing defaults and breaches listed in clauses (i) through (xi) are each a "Nonpayment Default," and for the avoidance of doubt, a Holder of a Class 1 Claim is not deemed to have waived any default or breach of contract that is not a Nonpayment Default.

(b) In consideration of the waivers in clause (a) of subsection 2.2.3 and in recognition of the oversecured status of all Class 1 Claims, no Avoidance Action, cause of action, or claim for relief based on constructive intent, insolvency or lack of reasonable exchange value shall be asserted or lie against any Holder of a Class 1 Claim.

SMRH:4816-5664-3557.1
040921

73ZL-319169

(c)     For the avoidance of doubt, the Liens of each Holder of a Class 1 Claim are hereby modified to prohibit post-Effective Date enforcement of any remedy or other provision of any contract, agreement, or promissory note on account of any Nonpayment Default deemed to have been waived by the Plan as set forth in subsections 2.2.2 and 2.2.3, including without limitation the assessment of a default rate of interest or similar penalty or charge, late charges, other penalties, or acceleration of the maturity date of any loan, provided however, that nothing contained in the Plan shall affect the ability of a Holder of a Class 1 Claim to declare an event of default related to a Nonpayment Default  triggered by new facts first arising after the Effective Date of the Plan or any other breach, default or event of default, including any payment default, arising after the Effective Date of the Plan. The waivers and modifications set forth in this subsection 2.2.3 shall only apply to the ability of a Holder of a Class 1 Claim to enforce rights and remedies with respect to such Claim, and shall not operate to waive, modify, or impair any right or  defense the Holder of a Class 1 Claim may have to any claims asserted against such Holder, including Avoidance Actions and Causes of Action. Nor shall such waivers or modifications relieve the PFI Trust or OpCo from the performance post-Effective Date of (i) any covenant or obligation requiring the repair or maintenance of the Real Properties and (ii) any duty, covenant, negative covenant, representation, warranty or obligation required to be performed under applicable law and the applicable contracts, instruments, documents or agreements, including, without limitation, any requirement to prepare financial reports, repair or maintain Collateral or to pay the costs, expenses and attorneys' fees related to post-Effective Date default. Notwithstanding the foregoing, any deferred repairs, maintenance and/or physical waste, whenever having occurred, with respect to any Collateral shall be promptly addressed, remedied and abated, within six months after the Effective Date.

(d)     For the avoidance of doubt, if the Effective Date does not occur, the modifications and waivers of the rights of Holders of Class 1 Claims in this Section 2.2 and this Plan shall be null and void and of no effect.

**2.2.4**   The Bankruptcy Court shall retain jurisdiction and power to determine the Allowed Amount necessary to satisfy any Class 1 Claim for which treatment is elected under clause (i) or clause (iii) of subsection 2.2.2.

## 2.3    CLASS 2: NON-INVESTOR OTHER SECURED CLAIMS.

Class 2 consists of all Non-Investor Other Secured Claims. Class 2 is Unimpaired under the Plan.

The legal, equitable, and contractual rights of Holders of Allowed Class 2 Claims are unaltered by the Plan, and, notwithstanding substantive consolidation of the Debtors and vesting of the PFI Trust Assets and the OpCo Assets (including, without limitation, the Real Properties) in the PFI Trust and the OpCo, as applicable, either directly or indirectly, the Liens of the Holders of Allowed Class 2 Claims will continue to attach to their respective Collateral, provided that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto. Unless the PFI Trust and the Holder of an Allowed Class 2 Claim agree to other treatment, on or as soon as is reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim shall receive, at the PFI Trust's option: (i) Cash from the PFI Trust in the Allowed amount of such Holder's Allowed Class 2 Claim; or (ii) the return by the PFI Trust of the Collateral securing such Allowed Class 2 Claim, without representation or warranty by any Person (and without recourse against any Person regarding such Non-Investor Other Secured Claim); or (iii) (A) the cure of any default, other than a default of the kind specified in Bankruptcy Code section 365(b)(2), that Bankruptcy Code section 1124(2) requires to be cured, with respect to such Holder's Allowed Class 2 Claim, without recognition of any default rate of interest or similar penalty or charge, and upon such cure, no default shall exist; (B) the reinstatement of the maturity of such Allowed Class 2 Claim as the maturity existed before any default, without recognition of any default rate of interest or similar penalty or charge; and (C) retention of its unaltered legal, equitable, and

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 26 of
62

contractual rights with respect to such Allowed Class 2 Claim, including through the retention of any associated Lien on the specific Collateral securing such Allowed Class 2 Claim.

The Bankruptcy Court shall retain jurisdiction and power to determine the amount necessary to satisfy any Allowed Class 2 Claim for which treatment is elected under clause (i) or clause (iii) of the immediately foregoing paragraph. With respect to any Allowed Class 2 Claim for which treatment is elected under clause (i), any Holder of such Allowed Class 2 Claim shall release (and by the Confirmation Order shall be deemed to release) all Liens against any Estate Assets securing such Allowed Class 2 Claim.

**2.4     CLASS 3: PRIORITY CLAIMS**.

Class 3 consists of all Priority Claims. Class 3 is Unimpaired under the Plan.

On, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date on which a Priority Claim becomes payable pursuant to and as specified by an order of the Bankruptcy Court, the Holder of such Allowed Priority Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Claim, either (a) Cash from the PFI Trust equal to the unpaid portion of such Allowed Priority Claim or (b) such other less favorable treatment from the PFI Trust to which such Holder and the PFI Trust shall have agreed upon in writing.

**2.5     CLASS 4: DOT NOTEHOLDER CLAIMS**.

Class 4 consists of all DOT Noteholder Claims, including such claims of Investors whose notes are allegedly secured by a first priority deed of trust. Class 4 is Impaired under the Plan. For purposes of distributions under the Plan, Holders of DOT Noteholder Claims in Class 4 are considered to be in separate subclasses within Class 4 on a property by property basis (*i.e.*, Class 4A is composed of all DOT Noteholder Claims relating to Real Property A, Class 4B is composed of all DOT Noteholder Claims relating to Real Property B, *etc.*), and each such subclass for each applicable Real Property is deemed to be a separate Class for purposes of the Plan.

To the extent (a) the Real Properties securing the liens of DOT Noteholders have not been sold prior to the Effective Date, or (b) the liens of DOT Noteholders have attached to the proceeds of the sale of any Real Properties and have not been otherwise removed and expunged pursuant to an order of the Bankruptcy Court, DOT Noteholder Claims shall be compromised as follows: (1) Holders of DOT Noteholder Claims will be treated as general unsecured creditors for purposes of distribution; (2) the Confirmation Order shall include provisions expunging the liens of the DOT Noteholders from the record of the Real Properties, or the sale proceeds thereof, such expungement to become effective with respect to each Real Property, or the sale proceeds thereof, on the later of the thirtieth (30th) day after entry of the Confirmation Order or the date of entry of a final order adjudicating an Avoidance Action with respect to a lien on that Real Property or the sale proceeds thereof; (3) any DOT Noteholder that wishes to challenge the expungement of its lien shall file an objection with the Bankruptcy Court no later than twenty (20) days after entry of the Confirmation Order and serve its objection on the Debtors or PFI Trustee, as applicable; (4) the Debtors or PFI Trustee, as applicable, shall file the Avoidance Action no later than thirty (30) days after service of the objection.

With regard to the foregoing provision (1), the Holders of Allowed Class 4 Claims will receive on or as soon as reasonably practicable after the Effective Date, (i) one (1) Class A PFI Trust Interest for each dollar of Allowed Investor Restitution Claims held by the applicable Investor and one (1) Class B PFI Trust Interest for each dollar of Allowed Investor Subordinated Claims (any resulting fractional PFI Trust Interests will be rounded to the nearest hundredth of such PFI Trust Interest with five thousandths thereof rounded up to the next hundredth), and (ii) the other

SMRH:4816-5664-3557.1
040921

consideration provided for in the Investor Claims Special Provisions set forth in Section 2.10.2 of the Plan. As set forth more fully herein, subsequent Distributions of Cash on account of the PFI Trust Interests will be made by the PFI Trust in accordance with the PFI Trust Interests Waterfall.

The treatment of any and all Investor Claims under the Plan is not intended to and will not reduce, impair, satisfy, limit, or otherwise affect any rights that any Investor may have against any Person that is not a Released Party (including those rights that may be included in the Contributed Claims and contributed to the PFI Trust by making the Ballot election described below).

Each Holder of an Investor Claim (including a Class 4 DOT Noteholder Claim) may agree, by electing on its Ballot, to contribute its Contributed Claims to the PFI Trust. By electing such option on its Ballot, the Investor agrees that, subject to the occurrence of the Effective Date and the formation of the PFI Trust, it will be deemed, without further action, (i) to have contributed its Contributed Claims to the PFI Trust and (ii) to have agreed to execute any documents reasonably requested to memorialize such contribution. The relative share of PFI Trust recoveries for any so electing Investor will be enhanced by having the amounts that otherwise would be its Allowed Investor Restitution Claim and its Allowed Investor Subordinated Claim each increased by the Contributing Claimants' Enhancement Multiplier. Investors also may choose to make such election because aggregating all Contributed Claims and similar PFI Trust Actions may enable the pursuit and settlement of such litigation claims in a more efficient and effective manner.

**2.6    CLASS 5: NON-DOT INVESTOR CLAIMS.** Class 5 consists of all Non-DOT Investor Claims.  Class 5 is Impaired under the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Class 5 Claims will receive on or as soon as reasonably practicable after the Effective Date, one (1) Class A PFI Trust Interest for each dollar of Allowed Investor Restitution Claims held by the applicable Investor and one (1) Class B PFI Trust Interest for each dollar of Allowed Investor Subordinated Claims (any resulting fractional PFI Trust Interests will be rounded to the nearest hundredth of such PFI Trust Interest with five thousandths thereof rounded up to the next hundredth), and (ii) the other consideration provided for in the Investor Claims Special Provisions set forth in Section 2.10.2 of the Plan.  As set forth more fully herein, subsequent Distributions of Cash on account of the PFI Trust Interests will be made by the PFI Trust in accordance with the PFI Trust Interests Waterfall.

The treatment of any and all Investor Claims under the Plan is not intended to and will not reduce, impair, satisfy, limit, or otherwise affect any rights that any Investor may have against any Person that is not a Released Party (including those rights that may be included in the Contributed Claims and contributed to the PFI Trust by making the Ballot election described below).

Each Holder of an Investor Claim (including a Class 5 Non-DOT Investor Claim) may agree, by electing on its Ballot, to contribute its Contributed Claims to the PFI Trust. By electing such option on its Ballot, the Investor agrees that, subject to the occurrence of the Effective Date and the formation of the PFI Trust, it will be deemed, without further action, (i) to have contributed its Contributed Claims to the PFI Trust and (ii) to have agreed to execute any documents reasonably requested to memorialize such contribution. The relative share of PFI Trust recoveries for any so electing Investor will be enhanced by having the amounts that otherwise would be its Allowed Investor Restitution Claim and its Allowed Investor Subordinated Claim each increased by the Contributing Claimants' Enhancement Multiplier. Investors also may choose to make such election because aggregating all Contributed Claims and similar PFI Trust Actions may enable the pursuit and settlement of such litigation claims in a more efficient and effective manner.

On the Effective Date, the interests of the PFI LLC Members in the PFI-Managed LLCs and LP Interest Holders shall automatically be recharacterized as Non-DOT Investor Claims, with such

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 28 of 62

recharacterization to be retroactive in each instance to the date or dates on which such PFI LLC Member or LP Interest Holder transferred funds to the respective PFI-Managed LLC(s) or LP Debtor. Such recharacterized claims shall be treated as Non-DOT Investor Claims.

**2.7    CLASS 6: TIC CLAIMS**.

Class 6 consists of all TIC Claims. Class 6 is Impaired under the Plan.  Holders of Allowed Class 6 Claims will receive either:

(a)    In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Class 6 Claims will receive on or as soon as reasonably practicable after the Effective Date, one (1) Class A PFI Trust Interest for each dollar of Allowed TIC Claims held by the applicable Holder (any resulting fractional Class A PFI Trust Interests will be rounded to the nearest hundredth of such Class A PFI Trust Interest with five thousandths thereof rounded up to the next hundredth).  As set forth more fully herein, subsequent Distributions of Cash on account of the Class A PFI Trust Interests will be made by the PFI Trust in accordance with the PFI Trust Interests Waterfall.  Under this treatment option, a Holder of TIC Interests will maintain such Holder's ownership interest equal to such tenant in common's ownership percentage in the Real Property (as set forth in the grant deed of the Real Property, unless there is an applicable TIC Agreement, in which case the ownership percentage in the TIC Agreement will control).  To the extent a TIC Interest was obtained using rolled over funds or funds that were otherwise commingled or traceable to PFI, the Debtors or PFI Trust, as applicable, reserves all rights in connection therewith.  TIC Interests shall not be substantively consolidated under the Plan and will not be treated as Estate Assets, PFI Trust Assets or OpCo Assets.  Any and all of any Debtor's interests in the applicable Real Property that is an Estate Asset prior to the Effective Date will become a PFI Trust Asset or an OpCo Asset, as applicable; or

(b)    If the Holder of a TIC Claim makes a valid TIC Investor Treatment Election on his or her timely-returned Ballot or by written agreement with the Debtors or PFI Trustee, as applicable, the Holder of a TIC Claim, in exchange for transferring his or her TIC Interests to the Debtors or PFI Trust, as applicable, in a manner satisfactory to the Debtors or PFI Trustee, as applicable, shall receive the treatment provided to Holders of Class 5 Non-DOT Investor Claims, including the Special Provisions Relating to Investor Claims and Special Provisions Relating to Individual Investor-Specific Claims as set forth in sections 2.11.2 and 2.11.3, respectively.  By making the TIC Investor Treatment Election, the Holder of a TIC Interest shall only be entitled to the equivalent of his or her Investor Claim, and shall not be entitled to any additional Claim for damages related to his or her TIC Interest.  If such an election is made, all provisions in the Plan applicable to Investors shall apply to Holders of TIC Interests who made the TIC Investor Treatment Election.

**2.8    CLASS 7: OTHER UNSECURED CLAIMS**.

Class 7 consists of all Other Unsecured Claims. Class 7 is Impaired under the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Class 7 Claims will receive on or as soon as reasonably practicable after the Effective Date, one (1) Class A PFI Trust Interest for each dollar of Allowed Other Unsecured Claims held by the applicable Holder (any resulting fractional Class A PFI Trust Interests will be rounded to the nearest hundredth of such Class A PFI Trust Interest with five thousandths thereof rounded up to the next hundredth). As set forth more fully herein, subsequent Distributions of Cash on account of the Class A PFI Trust Interests will be made by the PFI Trust in accordance with the PFI Trust Interests Waterfall.

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 29 of 62

**2.9     CLASS 8: OTHER SUBORDINATED CLAIMS**.

Class 8 consists of all Other Subordinated Claims. Class 8 is Impaired under the Plan.

The Holders of Allowed Other Subordinated Claims will retain a residual right to receive Available Cash that remains in the PFI Trust after the final administration of all PFI Trust Assets and OpCo Assets, and the complete satisfaction of all senior payment rights within the PFI Trust Interests Waterfall, including satisfaction of all Investor Subordinated Claims.  The Plan Proponents have determined not to solicit the votes of the Holders of any Other Subordinated Claims, and such Holders shall be deemed to have rejected the Plan and, therefore, such Holders are not entitled to vote on the Plan.

**2.10    CLASS 9: EQUITY INTERESTS**.

Class 9 consists of all Equity Interests in the Debtors. Class 9 is Impaired under the Plan.

As of the Effective Date, subject to the Alternative Restructuring Transactions (if any), all Equity Interests shall be deemed void, cancelled, and of no further force and effect.  On and after the Effective Date, Holders of Equity Interests shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Equity Interests. Class 9 is deemed to have rejected the Plan and, therefore, Holders of Equity Interests are not entitled to vote on the Plan.

For the avoidance of doubt, any and all purported Equity Interests of an Investor in any Debtor shall be deemed void, cancelled, and of no further force and effect; such Claims shall be treated as Investor Claims of the Investor pursuant to the Plan, regardless of the pre-petition designations used by the Debtors and/or Investors.

**2.11    COMPREHENSIVE SETTLEMENT OF CLAIMS AND CONTROVERSIES**.

**2.11.1  Generally.**  Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims, Intercompany Liens, and Causes of Action against any Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise and settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises and settlements are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable. This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of myriad disputed Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.  This Section 2.11.1 shall not apply to Holders of Class 1 Claims.

**2.11.2  Special Provisions Relating to Investor Claims.**  The Plan effectuates, among other things, the following (the "**Investor Claims Special Provisions**"):

(a)      Unless held by Excluded Parties or Disputing Claimants or where a Cause of Action has been commenced against an Investor, including, without limitation, any Avoidance Action (in which case any Claims held by such Excluded Parties, Disputing Claimants or Investors against whom Causes of Action are commenced are deemed Disputed Claims), all Investor Claims are

Case: 20-30604     Doc# 554     Filed: 04/09/21     Entered: 04/09/21 18:34:53     Page 30 of
62

deemed Allowed under the Plan in the amounts set forth in the Schedule of Allowed Netted Claims prepared by the Debtors and/or the PFI Trust.

(b)     The Holders of Allowed Investor Claims will receive the treatment provided for such Holders under the Plan.  For the avoidance of doubt, any and all purported equity interests of an Investor in any Debtor shall be deemed and treated as Investor Claims of the Investor pursuant to the Plan, regardless of the pre-petition designations used by the Debtors and/or Investors.

(c)     The PFI Trust will be created to effectively and efficiently pursue the PFI Trust Actions for the collective benefit of all the PFI Trust Beneficiaries, as well as to own the interests of the OpCo, establish and hold the Distribution Reserves, and receive and distribute to the holders of PFI Trust Interests the net proceeds of the monetization or other disposition of the PFI Trust Assets in accordance with the Plan and the PFI Trust Agreement.

(d)     No Avoidance Action may be brought, directly or indirectly, on account of a payment to an Investor outside the Investor Lookback Period, unless such Investor is an Excluded Party.

(e)     The PFI Trustee shall have discretion, subject to the PFI Trust Agreement, to determine whether and how to make demand upon, or sue, Investors liable for a Net Prepetition Investor Recovery, including but not limited to the discretion not to bring suit or make a demand because of the Investor's financial hardship. That discretion shall be exercised in accordance with guidelines developed by the PFI Trustee and thereafter approved by the BOV subject to the PFI Trust Agreement.  No party should assume that they will be entitled to the exercise of such discretion.

### 2.11.3  Special Provisions Relating to Individual Investor-Specific Claims.

(a)     Nothing in the Plan will impair the right of Investors to independently pursue claims in which they have independent legal standing against third parties that are unique to such Investors ("**Individual Investor-Specific Claims**"). By way of example, and not limitation, such unique claims include claims based on loss of lien or loss of lien priority, claims against investors' professional advisors, claims against retirement servicers and similar claims that may be asserted based on such investors' particular circumstances. The Individual Investors Claims do not include Investor Claims common to all Investors and/or claims to recover commissions or referral fees paid by the Debtors to third parties in connection with an Investor's investment with the Debtors.

(b)     Any recoveries on Individual Investor Claims shall reduce the amount of distributions from the PFI Trust to the individual Investor receiving such recovery as follows:

(i)     Any recovery, net of reasonable fees and expenses actually incurred (the "**Net Recovery**"), shall first be applied to reduce the applicable Investor Subordinated Claim (to the extent the Investor has an Investor Subordinated Claim) and then, after such subordinated claim is reduced to $0, shall next be applied to reduce the individual Investor's Investor Restitution Claim.

By way of example, in the year prior to the Petition Date, Investor A invested $500,000 at one time with the Debtors and received $45,000 in cash distributions on such claim prior to the bankruptcy, representing a 9% per annum return on the investment during that year. Under the claims netting process, Investor A shall receive: (i) a $455,000 Investor Restitution Claim (original investment amount of $500,000 minus the $45,000 distribution received); and (ii) a $35,000 Investor Subordinated Claim (representing a 7% per annum interest on the $500,000 investment). If Investor A brings an Individual Investor-Specific Claim against a third party, recovers $30,000 and incurs $10,000 in reasonable legal fees and costs, Investor A's Net Recovery is $20,000. The $20,000 Net Recovery shall be applied first to reduce Investor A's Investor Subordinated Claim from $35,000 to

SMRH:4816-5664-3557.1
040921

73ZL-319169

$15,000, and Investor A's Investor Restitution Claim shall not be affected (*i.e.,* it will remain a claim in the amount of $455,000).

By way of a second example, assume Investor A brings an Individual Investor-Specific Claim against a third party and recovers $100,000 and incurs $30,000 in reasonable legal fees and costs. Investor A's Net Recovery is thus $70,000. Under this example, where Investor A has an Investor Subordinated Claim of $35,000, the $70,000 Net Recovery is first applied to reduce the Investor Subordinated Claim to $0 (*i.e.,* $35,000 - $35,000 = $0). The remaining $35,000 of Investor A's Net Recovery would then be applied to reduce Investor A's Investor Restitution Claim of $455,000 – resulting in a reduced Investor Restitution Claim of $420,000 (*i.e.,* $455,000 - $35,000 = $420,000).

(ii)     Each individual Investor has an affirmative duty to report, in writing, to the Debtors or the PFI Trustee, as appropriate, the Net Recoveries on account of their Individual Investor Claims. Such report shall be made within thirty (30) days of the receipt of such Net Recoveries and include the gross amount recovered, and the fees and expenses incurred in obtaining such Net Recoveries. If requested, the individual Investor shall provide documentation in support of such fees and expenses. The failure to comply with the obligation to timely report Net Recoveries shall result in the individual Investor's claim against the Debtors being automatically disallowed, and the clawback of any previously received distributions under the Plan.

## ARTICLE III.
## ACCEPTANCE OR REJECTION OF THE PLAN

**3.1     IMPAIRED CLASS OF CLAIMS ENTITLED TO VOTE**. Only the votes of Holders of Allowed Claims in Class 1, Class 4, Class 5, Class 6, and Class 7 shall be solicited with respect to the Plan.

**3.2     ACCEPTANCE BY AN IMPAIRED CLASS**. In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class (including any subclass) entitled to vote on the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class (or subclass) that have timely and properly voted to accept or reject the Plan.

**3.3     PRESUMED ACCEPTANCES BY UNIMPAIRED CLASSES**. Classes 2 and 3 are Unimpaired under the Plan. Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Plan, and, therefore, the votes of such Holders shall not be solicited.

**3.4     IMPAIRED CLASSES DEEMED TO REJECT PLAN.** The Plan Proponents have determined not to solicit the votes of Holders of any Claims in Class 8, and such Holders shall be deemed to have rejected the Plan and, therefore, such Holders are not entitled to vote on the Plan. Holders of Equity Interests in Class 9 are not entitled to receive or retain any property or interests in property under the Plan. Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

**3.5     MODIFICATIONS OF VOTES**. Following the Voting Deadline, no Creditors entitled to vote on the Plan will be able to change their votes cast on the Plan or any attendant elections or preferences without the written consent of the Plan Proponents, which consent may be given or withheld in the Plan Proponents' reasonable discretion after consultation with the Ad Hoc Committees.

**3.6     CONFIRMATION PURSUANT TO BANKRUPTCY CODE SECTION 1129(B)**.

SMRH:4816-5664-3557.1
040921

73ZL-319169

Because at least one Impaired Class is deemed to have rejected the Plan, the Plan Proponents will and hereby request confirmation of the Plan under Bankruptcy Code section 1129(b). The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**3.7** **ELIMINATION OF VACANT CLASSES**. Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

**3.8** **SEVERABILITY OF JOINT PLAN**. This Plan represents a joint plan comprised of individual plans for each of the Debtors. As further discussed in Section 10.7 of the Plan, the Plan Proponents may alter, amend, or modify this Plan at or before the Confirmation Hearing, including to remove one or more Debtors from this Plan, in the Plan Proponents' reasonable discretion after consultation with each of the Ad Hoc Committees.

### ARTICLE IV.
### IMPLEMENTATION OF THE PLAN

**4.1** **IMPLEMENTATION OF THE PLAN**. Subject to the Alternative Restructuring Transactions, the Plan will be implemented by various acts and transactions as set forth in the Plan, including, among other things, the establishment of the PFI Trust, the OpCo, the BOV and the PFI Trustee, and the making of Distributions by the PFI Trust in accordance with the Plan.

**4.2** **STREAMLINING OF THE DEBTORS' CORPORATE AFFAIRS**.

**4.2.1** **Debtors' Existing Directors, Officers, and Managers.** On the Effective Date, each of the Debtors' existing directors, officers, and managers shall be terminated automatically without the need for any Corporate Action and without the need for any corporate or limited liability company filings, and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated). On the Effective Date, the PFI Trustee shall succeed to all such powers as would have been applicable to the Debtors' officers and managers in respect of all PFI Trust Assets, the OpCo and the OpCo Assets; *provided, however*, that the PFI Trustee may continue to consult with or employ the Debtors' former directors, officers, employees, and managers to the extent required to comply with applicable law and/or to implement the Plan, the OpCo and/or PFI Trust.

**4.2.2** **The OpCo.** On the Effective Date, the OpCo Assets shall be assigned or otherwise transferred or conveyed to the OpCo in form and substance acceptable to the PFI Trustee in his discretion in consultation with the BOV, and subject to the Liens of each Holder of Class 1 Claims with respect to its Collateral. Without the need for any Corporate Action and without the need for any corporate, limited liability company or limited partnership filings, (a) all Equity Interests of the Debtors issued and outstanding immediately before the Effective Date shall be automatically cancelled and extinguished on the Effective Date and (b) as of the Effective Date, a new equity interest in the OpCo, representing all of the issued and outstanding equity interests in the OpCo shall be issued to the PFI Trust, which new equity interests so issued shall be deemed to have been offered and sold to the PFI Trust in reliance on the exemption from registration under the Securities Act afforded by section 4(a)(2) thereof. On and after the Effective Date, the OpCo will be a wholly-owned subsidiary of the PFI Trust, and the PFI Trust may expend with respect to the OpCo such amounts as the PFI Trust determines is appropriate, in its discretion. The OpCo (a) shall have the PFI Trust as its sole equity interest holder, (b) shall be treated as a disregarded entity for income tax purposes, (c) shall have a purpose consistent with the purpose of the PFI Trust as set forth in Section

SMRH:4816-5664-3557.1
040921

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 33 of 62

4.3.4 of the Plan, and (d) shall be subject to the same limitations imposed on the PFI Trustee under the terms of this Plan and the PFI Trust Agreement. The PFI Trust will have all additional rights regarding the OpCo as are set forth in the Plan and the PFI Trust Agreement.

**4.2.3 Dissolution of the Debtors.** Subject to any Alternative Restructuring Transactions (if any), on the Effective Date, each of the Debtors will be dissolved automatically without the need for any Corporate Action, without the need for any corporate or limited liability company filings, and without the need for any other or further actions to be taken by or on behalf of such dissolving Debtor or any other Person or any payments to be made in connection therewith; *provided, however,* that the PFI Trust may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of the Debtors. Subject to any Alternative Restructuring Transactions (if any), on and as of the earlier of the Closing Date and the date on which the PFI Trustee Files with the Bankruptcy Court a notice of dissolution as to a Debtor, such Debtor will be dissolved automatically without the need for any Corporate Action, without the need for any corporate or limited liability company filings, and without the need for any other or further actions to be taken by or on behalf of such dissolving Debtor or any other Person or any payments to be made in connection therewith; *provided, however*, that the PFI Trust may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of any Debtors. Any dissolution of a Debtor under the Plan or any Alternative Restructuring Transactions shall have no impact on the rights of a Holder of a Class 1 Claim with respect to its Collateral, and any Liens of such Holders shall be retained.

**4.2.4 Corporate Documents and Corporate Authority.** On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of all the Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors, the OpCo and the PFI Trustee, as applicable, to take or cause to be taken all actions (including, if applicable, Corporate Actions and any Alternative Restructuring Transactions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

## 4.3 PFI TRUST.

### 4.3.1 Appointments.

(a) On and after the Effective Date, the Initial PFI Trustee shall become and serve as PFI Trustee. The PFI Trustee's compensation and other related information will be more specifically set forth in the PFI Trust Agreement.

(b) On and after the Effective Date, the initial BOV shall begin to serve without further action, consistent with the Plan and the PFI Trust Agreement, and shall oversee the PFI Trustee's performance of his, her or its duties and otherwise serve the functions described in the Plan and the PFI Trust Agreement. The BOV members shall serve on a voluntary basis without compensation, but they shall be reimbursed by the PFI Trust for any reasonable expenses in accordance with the PFI Trust Agreement.

**4.3.2 Creation and Governance of the PFI Trust.** On the Effective Date, the PFI Trustee shall execute the PFI Trust Agreement and shall take any other steps necessary to establish the PFI Trust in accordance with the Plan and the beneficial interests therein. For federal income tax purposes, the transfer of the assets to the PFI Trust will be treated as a sale or other disposition of assets (except for the assets transferred to the Disputed Ownership Fund as provided in Section 6.9 of the Plan) to the PFI Trust Beneficiaries in exchange for their claims in the Chapter 11 Cases. Any

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 34 of 62

income or loss from the transfer of assets to the PFI Trust shall flow through to the ultimate taxpaying member of each Debtor who will be responsible to pay the tax liability, if any. For federal income tax purposes, the PFI Trust Beneficiaries shall be treated as the grantors of the PFI Trust and deemed to be the owners of the assets of the PFI Trust. The transfer of the PFI Trust Assets to the PFI Trust shall be deemed a transfer to the PFI Trust Beneficiaries by the Debtors, followed by a deemed transfer by such PFI Trust Beneficiaries to the PFI Trust. The Debtors, the PFI Trust Beneficiaries, and the PFI Trust will consistently report the valuation of the assets transferred to the PFI Trust. Such consistent valuations and revised reporting will be used for all federal income tax purposes. Income deductions, gain, or loss from the PFI Trust shall be reported to the beneficiaries of the PFI Trust in conjunction with the filing of the PFI Trust's income tax returns. Each PFI Trust Beneficiary shall report income, deductions, gain, or loss on such PFI Trust Beneficiary's income tax returns. The PFI Trust shall be governed by the PFI Trust Agreement and administered by the PFI Trustee. The powers, rights, and responsibilities of the PFI Trustee shall be specified in the PFI Trust Agreement. After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, the PFI Trust Interests and/or Cash held in the Disputed Ownership Fund shall be transferred as described in the PFI Trust Agreement.

**4.3.3** <u>**Vesting of PFI Trust Assets, Free and Clear of Liens and Interests; Monies from Governmental Units.**</u> On the Effective Date, and subject to Section 2.2, the PFI Trust shall be automatically vested with all of the Debtors' and the Estates' respective rights, title, and/or interest in and to all PFI Trust Assets, and the OpCo shall be automatically vested with all of the Debtors' and the Estates' respective rights, title and/or interest in and to all OpCo Assets. Except as specifically provided in the Plan or the Confirmation Order, in accordance with Bankruptcy Code section 1141, the PFI Trust Assets, the OpCo Assets and any other assets shall automatically vest in the PFI Trust and the OpCo, as applicable, free and clear of all Claims, Liens, or interests (including, without limitation, any and all DOT Noteholders' Deeds of Trust), subject only to the PFI Trust Interests and the PFI Trust Expenses, as provided for in the PFI Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The PFI Trustee shall be the exclusive trustee of the PFI Trust Assets (including all ownership interests in the OpCo) for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all PFI Trust Assets, the OpCo and the OpCo Assets. The PFI Trust shall hold and distribute the PFI Trust Assets and shall collect and distribute all proceeds from the operations and/or sale of the OpCo and the OpCo Assets in accordance with the provisions of the Plan and the PFI Trust Agreement. The vesting of the PFI Trust Assets and the OpCo Assets will not affect the rights of a Holder of a Class 1 Claim with respect to its Collateral, including to assert rights and defenses, including setoff and recoupment, as if those Assets were retained by such Holder's single borrower.

Notwithstanding the foregoing or any other provision in the Plan, in the event that the PFI Trust receives any monies from the United States or any other governmental unit (as defined in Bankruptcy Code section 101(27)), obtained as forfeited assets (or otherwise) by the governmental unit for the benefit of the investor victims of the Debtors' prepetition Ponzi scheme, all such monies shall not constitute Estate Assets, PFI Trust Assets or OpCo Assets, and the PFI Trustee is authorized to and shall distribute all such monies only to Investors who are Holders of Class A PFI Interests or Class B PFI Interests on account thereof, subject to the Plan and the PFI Trust Agreement; provided that the PFI Trust and his, her or its agents will be reimbursed from such monies for reasonable costs and expenses incurred by said parties related to the PFI Trust's collection, administration, and distribution of such monies to the applicable Investors.

**4.3.4** <u>**Purpose of the PFI Trust.**</u> The PFI Trust shall be established for the purpose of pursuing, collecting from and/or monetizing the PFI Trust Assets and the OpCo Assets and making Distributions from the proceeds of such assets to the PFI Trust Beneficiaries in accordance with

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 35 of 62

Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business other than as sole owner of the OpCo.

**4.3.5    Authority.** Subject to the authority and supervision of the BOV as set forth in the PFI Trust Agreement, the PFI Trustee shall have the authority and right on behalf of the PFI Trust, without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan and the PFI Trust Agreement), to carry out and implement all applicable provisions of the Plan, including to:

(a)    appear on behalf of the PFI Trust in the Chapter 11 Cases and any proceedings related thereto;

(b)    review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(c)    calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

(d)    retain, compensate, and employ professionals and other Persons to represent the PFI Trustee, including, without limitation, assisting in managing and representing the OpCo, with respect to and in connection with its rights and responsibilities;

(e)    establish, maintain, and administer documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(f)    maintain, conserve, collect, settle, and protect the PFI Trust Assets and the OpCo Assets, including, without limitation, any Real Properties (subject to the limitations described herein and in the PFI Trust Agreement);

(g)    sell, monetize, transfer, assign, distribute, abandon, or otherwise dispose of the PFI Trust Assets and OpCo Assets (including, without limitation, any Real Properties) or any part thereof or interest therein upon such terms as the PFI Trustee determines to be necessary, appropriate, or desirable, subject to the provisions of the PFI Trust Agreement;

(h)    pursue, prosecute, settle or abandon any PFI Trust Actions;

(i)    negotiate, incur, and pay the PFI Trust Expenses, including the expenses of the OpCo;

(j)    prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any governmental unit, or by applicable law;

(k)    compile and maintain the official claims register, including for purposes of making Distributions under the Plan;

(l)    take such actions as are necessary or appropriate to manage and, when appropriate, wind-down and dissolve the OpCo;

(m)    comply with the Plan, exercise the PFI Trustee's rights, and perform the PFI Trustee's obligations; and

(n)    exercise such other powers as deemed by the PFI Trustee to be necessary and proper to implement the Plan.

SMRH:4816-5664-3557.1
040921
1535643

73ZL-319169

To the extent necessary to give full effect to its administrative rights and duties under the Plan, the PFI Trustee shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or limited liability company officer or manager of the OpCo and each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of the OpCo and each of the Debtors under Bankruptcy Code sections 704 and 1106.

**4.3.6** __Limitation of Liability.__ The PFI Trustee and the BOV shall enjoy all of the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability, subject to the PFI Trust Agreement. The PFI Trustee and the BOV may, in connection with the performance of their respective functions, in their sole and absolute discretion, consult with their attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, neither the PFI Trustee nor the BOV shall be under an obligation to consult with any such attorneys, accountants, advisors, or agents, and their determination not to do so shall not result in the imposition of liability on the PFI Trustee or the BOV, as applicable, unless such determination is based on willful misconduct, gross negligence, or fraud. Except with regard to gross negligence, fraud or willful misconduct by the PFI Trustee or the BOV, Persons dealing with the PFI Trustee and the BOV shall look only to the PFI Trust Assets to satisfy any liability incurred by the PFI Trustee or the BOV to such Person in carrying out the terms of the Plan or the PFI Trust Agreement, and the PFI Trustee and the BOV shall have no personal obligation to satisfy such liability.

**4.3.7** __Indemnification.__ The PFI Trust shall indemnify the PFI Trust Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without gross negligence or willful misconduct on the part of the PFI Trust Indemnified Parties (which gross negligence or willful misconduct, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the PFI Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the PFI Trust Agreement, as applicable. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct. In addition, the PFI Trust shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the PFI Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the PFI Trust or the implementation or administration of the Plan if the PFI Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the PFI Trust. To the extent the PFI Trust indemnifies, defends, and holds harmless any PFI Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the PFI Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as PFI Trust Expenses. The costs and expenses incurred in enforcing the right of indemnification in this Section shall be paid by the PFI Trust.

**4.3.8** __Insurance.__ The PFI Trustee shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the PFI Trust's sole expense, for itself and its agents, and the BOV, including coverage with respect to the liabilities, duties, and obligations of the PFI Trustee and the BOV, which insurance coverage may, at the sole discretion of the PFI Trustee, be extended for a reasonable period after the termination of the PFI Trust.

**4.3.9** __Tax Reporting.__

(a)     The PFI Trustee shall timely file tax returns for the PFI Trust treating the PFI Trust as

Case: 20-30604     Doc# 554     Filed: 04/09/21     Entered: 04/09/21 18:34:53     Page 37 of 62

a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(b)     The PFI Trust shall be responsible for timely payment of all taxes (if any) imposed on and payable by the PFI Trust, the OpCo, or any PFI Trust Assets.

(c)     The PFI Trust shall distribute such tax-related notices, beneficiary statements, and information returns, as applicable, to the applicable Holders of Allowed Claims as are required by applicable law or that the PFI Trustee determines are otherwise necessary or desirable.

(d)     The PFI Trust is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

**4.3.10  <u>Distributions to PFI Trust Beneficiaries.</u>**

(a)     After the payment of or reserve for all senior claims (including, without limitation, Administrative Claims, Non-Investor First Priority Lender Claims, Involuntary Gap Claims, Priority Tax Claims, and Priority Claims) in accordance with the Plan and the PFI Trust Agreement, the PFI Trust will make Distributions of Available Cash from the Distribution Fund to the PFI Trust Beneficiaries pursuant to the following sequence and related provisions (the "**<u>PFI Trust Interests Waterfall</u>**"):

(i)     The PFI Trust shall distribute Available Cash to each Holder of Class A PFI Trust Interests on a Pro Rata basis (based on such Holder's number of Class A PFI Trust Interests) until all Allowed Investor Restitution Claims and Allowed Other Unsecured Claims have been paid in full (without post-petition or post-Confirmation interest);

(ii)     Thereafter, the PFI Trust shall distribute Available Cash to each Holder of Class B PFI Trust Interests on a Pro Rata basis (based on such Holder's number of Class B PFI Trust Interests) until all Allowed Investor Subordinated Claims have been paid in full (without post-petition or post-Confirmation interest);

(iii)     The net proceeds of any PFI Trust Actions recovered by the PFI Trust ("**<u>Net PFI Trust Action Proceeds</u>**") will be shared equally among all Investors and Holders of Other Unsecured Claims, first on account of Class A PFI Interests, until all Allowed Investor Restitution Claims and Allowed Unsecured Claims have been paid in full (without post-petition or post-Confirmation interest) (also taking into account payments made pursuant to subsection (1) above), and second on account of Class B PFI Interests, until all Allowed Investor Subordinated Claims have been paid in full (without post-petition or post-Confirmation interest) (also taking into account payments made pursuant to subsection (2) above).

(b)     The PFI Trust, in the PFI Trustee's discretion, may make periodic Distributions to the PFI Trust Beneficiaries at any time following the Effective Date, provided that such Distributions are otherwise permitted under, and not inconsistent with, the PFI Trust Interests Waterfall, the other terms of the Plan, the PFI Trust Agreement, and applicable law.

(c)     No later than (i) the first Business Day that is at least 180 calendar days after the Effective Date and (ii) the last Business Day of each subsequent 180-calendar-day period after the Effective Date until the Closing Date, the PFI Trustee shall calculate the Distributions that could potentially be made to the PFI Trust Beneficiaries based on the amount of then-available Available Cash and, based on such calculation, promptly thereafter may make Distributions, if any, of the amount so determined.

**4.3.11  <u>Cash Investments.</u>** Except as may be otherwise provided in the PFI Trust Agreement, the PFI Trustee may invest Cash of the PFI Trust, including any earnings thereon or proceeds

SMRH:4816-5664-3557.1
040921

73ZL-319169

Case: 20-30604     Doc# 554     Filed: 04/09/21     Entered: 04/09/21 18:34:53     Page 38 of 62

therefrom, any Cash realized from the monetization of the PFI Trust Assets, or any Cash that is remitted to the PFI Trust from the OpCo, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b); *provided, however,* that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities, except as may be otherwise provided in the PFI Trust Agreement.

**4.3.12 <u>Exemption.</u>** To the extent the PFI Trust Interests are deemed to be "securities," the issuance of such interests under the Plan are exempt, pursuant to Bankruptcy Code section 1145, from registration under the Securities Act and any applicable state and local laws requiring registration of securities.

**4.3.13 <u>Contribution of Contributed Claims.</u>** On the Effective Date, all Contributed Claims will be irrevocably contributed to the PFI Trust and shall thereafter be deemed included in the PFI Trust Actions for all purposes. No Person may rely on the absence of a specific reference in the Plan, the Confirmation Order, the PFI Trust Agreement, or the Disclosure Statement to any Contributed Claims against such Person as any indication that the PFI Trust will not pursue any and all available Contributed Claims against such Person. The objection to the Allowance of any Claims will not in any way limit the ability or the right of the PFI Trust to assert, commence, or prosecute any Contributed Claims. Nothing contained in the Plan, the Confirmation Order, the PFI Trust Agreement, or the Disclosure Statement will be deemed to be a waiver, release, or relinquishment of any Contributed Claims that the Contributing Claimants had immediately prior to the Effective Date. The PFI Trust shall have, retain, reserve, and be entitled to assert all Contributed Claims fully as if the Contributed Claims had not been contributed to the PFI Trust in accordance with the Plan and the PFI Trust Agreement. For the avoidance of doubt, (a) the Contributed Claims shall not include the rights of any of the Contributing Claimants to receive the Distributions, if any, to which they are entitled under the Plan; (b) a Contributed Claim shall not include a Cause of Action that could not be successfully maintained by a hypothetical Investor who invested in PISF straight notes at the same time(s) the actual Investor made his or her investments, after receiving the same information which the Debtors or their agents had provided the actual Investor; (c) claims based upon loss of liens or lien priority, and claims by an Investor against their own professionals, investment advisers, or investment managers related to their decision to invest in PFI or PISF are not Contributed Claims; (d) the Contributed Claims shall not include any Causes of Action against any of the Released Parties; and (e) in the exercise of its reasonable discretion and in accordance with the PFI Trust Agreement, the PFI Trust shall not be obligated to pursue all or any given Contributed Claims.

**4.3.14 <u>Pursuit and Resolution of PFI Trust Actions.</u>** The PFI Trust, as a successor in interest to the Debtors, the Estates, and the Contributing Claimants, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants, subject to the PFI Trust Agreement, to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all PFI Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the PFI Trust Agreement. From and after the Effective Date, the PFI Trust, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as a representative of the Estates with respect to any and all PFI Trust Actions that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all PFI Trust Actions in any court or other tribunal.

**4.3.15 <u>Termination of the PFI Trust.</u>** The PFI Trustee, the PFI Trust and the OpCo shall be discharged or terminated, as the case may be, at such time as: (a) the PFI Trustee determines that the pursuit of additional PFI Trust Actions is not likely to yield sufficient additional proceeds to justify further pursuit of such PFI Trust Actions; (b) the PFI Trustee determines that the continued operation of the OpCo is not likely to yield sufficient additional proceeds to justify further operation

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 39 of 62

of the OpCo or the OpCo Assets; and (c) all Distributions required to be made by the PFI Trust to the Holders of Allowed Claims and to the PFI Trust Beneficiaries under the Plan and the PFI Trust Agreement have been made, but in no event shall the PFI Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (subject to the terms of the PFI Trust Agreement) is necessary to facilitate or complete the recovery on, and monetization of, the PFI Trust Assets and the OpCo Assets. Upon termination of the PFI Trust, any remaining PFI Trust Assets and OpCo Assets that exceed the amounts required to be paid under the Plan may be transferred by the PFI Trustee to a non-profit organization of his, her or its choosing.

**4.3.16** <u>**Control Provision.**</u> To the extent there is any inconsistency between the Plan as it relates to the PFI Trust and the PFI Trust Agreement, the specific provisions in the PFI Trust Agreement shall control.

**4.4** <u>**ALTERNATIVE RESTRUCTURING TRANSACTIONS**</u>. Notwithstanding any other provision of the Plan, but subject to Section 2.2, in the event that the Debtors file an Alternative Restructuring Transactions Memorandum, on and after the Effective Date, the PFI Trust shall be authorized to consummate the Alternative Restructuring Transactions and take all actions to effectuate the Alternative Restructuring Transactions consistent with the Alternative Restructuring Transactions Memorandum.

**4.5** <u>**PRESERVATION OF PRIVILEGES AND DEFENSES**</u>. The actions taken by the Debtors, the PFI Trust, the OpCo, or any of their respective Related Parties in connection with the Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors, the PFI Trust, or the OpCo, as applicable, including any attorney-client privilege or work-product doctrine. Notwithstanding any Debtors providing any privileged information related to any PFI Trust Actions to the PFI Trustee, the PFI Trust, the OpCo, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the PFI Trust Actions and shall remain privileged. The PFI Trust shall retain the right to waive its own privileges. Only the PFI Trustee shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors, the OpCo, and the PFI Trust.

**4.6** <u>**PRESERVATION OF RIGHTS OF ACTION**</u>.

**4.6.1** <u>**Maintenance of Avoidance Actions and Causes of Action.**</u> Except as otherwise provided in the Plan or the Confirmation Order (including in the Investor Claims Special Provisions), from and after the Effective Date, the PFI Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action and Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as PFI Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Plan and the PFI Trust Agreement. The PFI Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the PFI Trust Actions without notice to or approval from the Bankruptcy Court, subject to the PFI Trust Agreement. In accordance with the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the PFI Trust may compromise and settle PFI Trust Actions, subject to the PFI Trust Agreement. It is anticipated that the PFI Trust will pursue PFI Trust Actions primarily under alternate fee arrangements and not a typical hourly fee structure, employing the services of professionals selected by (i) the Debtors, in consultation with

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 40 of 62

the Committees, prior to the Effective Date or (ii) the PFI Trustee, as provided in the PFI Trust Agreement, on and after the Effective Date.

**4.6.2    Preservation of All PFI Trust Actions Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement (including the exhibits and schedules thereto) or the Plan any potential or existing Avoidance Actions or Causes of Action as a PFI Trust Action is not intended to and shall not limit the rights of the PFI Trust to pursue any such Avoidance Actions or Causes of Action. Unless a PFI Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such PFI Trust Action for later resolution by the PFI Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). As such, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor, the PFI Trust, or the OpCo is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

**4.7    CANCELLATION OF INSTRUMENTS**. Except as otherwise provided in the Plan, including Section 2.2, and except with respect to any executory contracts and unexpired leases that are assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be discharged.

**4.8    SUBSTANTIVE CONSOLIDATION INCLUDING OF PROFESSIONAL INVESTORS 28, LLC AND PFI GLENWOOD LLC**

**4.8.1**    On the Effective Date, PFI, PISF, the LLC/LP Debtors, Professional Investors 28, LLC, and PFI Glenwood LLC (collectively, the "**Consolidated Estates**") shall be substantively consolidated pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code.  As a result of the substantive consolidation, on the Effective Date, all property, rights and claims of the Consolidated Estates  and all Claims against the Consolidated Estates shall be deemed to be pooled for purposes of distributions under the Plan and, in the PFI  Trustee's discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Consolidated Estates shall be cancelled, subject to any Alternative Restructuring Transactions. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Consolidated Estates based upon claims for which one or more of the Consolidated Estates are also liable shall be disallowed.

**4.8.2**    Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of all of the Debtors (including the Plan-Consolidated Debtors) and in the manner set forth in this Section; *provided, however*, that (i) while all Debtors shall be substantively consolidated for purposes of distribution to creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the PFI Trust, and subject to any Alternative Restructuring Transactions,

SMRH:4816-5664-3557.1
040921

73ZL-319169

and (ii) any and all TIC Interests in the Real Properties that are held by any Debtor shall not be substantively consolidated. Notwithstanding the substantive consolidation to be implemented under the Plan, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

**4.8.3** The substantive consolidation effected pursuant to the Plan shall not affect, without limitation, (i) the Debtors', the OpCo's, or the PFI Trust's defenses to any Claim, Avoidance Action, or other Cause of Action, including the ability to assert any counterclaim; (ii) the Debtors', the OpCo's, or the PFI Trust's setoff or recoupment rights; (iii) requirements for any third party to establish mutuality prior to substantive consolidation in order to assert a right of setoff against the Debtors, the OpCo, or the PFI Trust; (iv) distributions to the Debtors, the Estates, the OpCo, or the PFI Trust out of any insurance policies or proceeds of such policies or (v) the rights of Holders of Class 1 Claims as provided in Section 2.2.

**4.8.4** Any Intercompany Claims that could be asserted by one Debtor against another Debtor (including any Plan-Consolidated Debtors) will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided, however*, that solely with respect to any Secured Claim of a non-Debtor Person or Entity as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by, the PFI Trust as to any Collateral that is Cash and, otherwise, the OpCo so as to retain the relative priority and seniority of such Intercompany Claim and associated Intercompany Lien; *and provided, however*, and for the avoidance of doubt, this subsection 4.8.4 shall not affect the rights of any Holder of a Class 1 Claim whose cash collateral was used in an "Intercompany Transaction" authorized in the several Cash Management Orders, e.g., Docket 354, issued in these Chapter 11 Cases.

**4.8.5** The Disclosure Statement and the Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the substantive consolidation contemplated by the Plan. Unless an objection to the proposed substantive consolidation is made in writing by any Creditor purportedly affected by such substantive consolidation on or before the deadline to object to Confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation contemplated by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing. In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, be the Confirmation Hearing.

## ARTICLE V.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1 ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

### 5.1.1 <u>Assumption of Agreements</u>.

Subject to the Alternative Restructuring Transactions (if applicable), on the Effective Date, the Debtors shall assume all executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements, and shall assign such contracts and leases to the PFI Trust or the OpCo, as appropriate. The Confirmation Order will constitute a Bankruptcy Court order approving the assumption and assignment or rejection, as applicable, of executory contracts and unexpired leases consistent with the foregoing.

SMRH:4816-5664-3557.1
040921

73ZL-319169

The Debtors reserve the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date, in the Debtors' reasonable discretion after consultation with each of the Committees, (i) to delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (ii) to add any executory contract or unexpired lease and provide for its assumption and assignment under the Plan. The Debtors will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to those agreements affected by the amendment.

Unless otherwise specified on the Schedule of Assumed Agreements, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is also listed on the Schedule of Assumed Agreements.

### 5.1.2 <u>Cure Payments</u>.

Any amount that must be paid under Bankruptcy Code section 365(b)(1) to cure a default under and compensate the non-debtor party to an executory contract or unexpired lease to be assumed under the Plan is identified as the "Cure Payment" on the Schedule of Assumed Agreements. Unless the parties mutually agree to a different date, such payment shall be made in Cash within thirty (30) days following the later of: (i) the Effective Date and (ii) entry of a Final Order resolving any disputes regarding (A) the amount of any Cure Payment, (B) the ability of the Debtors or their successors under the Plan to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365 with respect to a contract or lease to be assumed, to the extent required, or (C) any other matter pertaining to assumption and assignment.

Pending the Bankruptcy Court's ruling on any such dispute, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors, unless otherwise agreed by the parties or ordered by the Bankruptcy Court.

### 5.1.3 <u>Objections to Assumption/Cure Payment Amounts</u>.

Any Person that is a party to an executory contract or unexpired lease that will be assumed and/or assigned under the Plan and that objects to such assumption or assignment (including the proposed Cure Payment) must File with the Bankruptcy Court and serve on parties entitled to notice a written statement and, if applicable, a supporting declaration stating the basis for its objection. This statement and, if applicable, declaration must be Filed and served on or before the deadline established by the Solicitation Procedures Order. Any Person that fails to timely File and serve such a statement and, if applicable, a declaration shall be deemed to waive any and all objections to the proposed assumption and assignment (including the proposed Cure Payment) of its contract or lease.

In the absence of a timely objection by a Person that is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination regarding the amount of any cure and compensation due under the applicable executory contract or unexpired lease, as well as a conclusive finding that adequate assurance of future performance with respect to such executory contract or unexpired lease has been demonstrated, to the extent required.

### 5.1.4 <u>Resolution of Claims Relating to Assumed Contracts and Leases</u>. Payment of the Cure Payment established under the Plan, by the Confirmation Order, or by any other order of the Bankruptcy Court, with respect to an assumed and/or assigned executory contract or unexpired lease, shall be deemed to satisfy, in full, any prepetition or postpetition arrearage or other Claim (including any Claim asserted in a Filed proof of claim or listed on the Schedules) with respect to such contract or lease (irrespective of whether the Cure Payment is less than the amount set forth in such proof of

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 43 of
62

claim or the Schedules). Upon the tendering of the Cure Payment, any such Filed or Scheduled Claim shall be disallowed with prejudice, without further order of the Bankruptcy Court or action by any Person.

## 5.2 REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

**5.2.1  Rejected Agreements.** On the Effective Date all executory contracts and unexpired leases of the Debtors shall be rejected except for (i) executory contracts and unexpired leases that have been previously assumed or rejected by the Debtors, (ii) all executory contracts and unexpired leases specified as to be assumed in Section 5.1.1 above (including all contracts and leases set forth in the Schedule of Assumed Agreements, as may be amended), and (iii) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not executory or a lease, but that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365. For the avoidance of doubt, executory contracts and unexpired leases that have been previously assumed or assumed and assigned pursuant to an order of the Bankruptcy Court shall not be affected by the Plan. The Confirmation Order will constitute a Bankruptcy Court order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases to be rejected under the Plan.

**5.2.2  Rejection Claims Bar Date.** Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims. If one or more Rejection Claims are timely Filed pursuant to the Plan, the PFI Trust may object to any Rejection Claim on or prior to the Claim Objection Deadline. For the avoidance of doubt, the Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of the Bankruptcy Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1  DISTRIBUTIONS TO SENIOR CLAIMS; SENIOR CLAIMS RESERVE.** On or as soon as reasonably practicable after the Effective Date, the PFI Trustee, after consultation with the Debtors and the Committees, will establish the Senior Claims Reserve out of Available Cash, and the Distribution Agent shall make Distributions out of the Senior Claims Reserve to Holders of, as applicable, Allowed Administrative Claims (other than Professional Fee Claims), Involuntary Gap Claims, Priority Tax Claims, Non-Investor First Priority Lender Claims, Non-Investor Other Secured Claims, and Priority Claims in accordance with the Plan, provided that upon the sale or refinancing of any Collateral subject to a Lien of a Holder of a Class 1 Claim, such Claim shall be paid from the escrow or treated as otherwise provided in subsection 2.2.2. After the payment of all such Claims in accordance with the Plan and the payment of all related reasonable costs and expenses of the PFI Trustee and the Distribution Agent (including fees and costs to litigate and otherwise resolve Contingent Claims, Disputed Claims or Unliquidated Claims, and administer and make Distributions), any remaining Cash in the Senior Claims Reserve will be promptly remitted to the PFI Trust to be used for any purposes subject to the Plan and the PFI Trust Agreement. The PFI Trustee or its designee shall not be required to give any bond or surety or other security for the performance of any duties as the Distribution Agent.

**6.2  TIMING OF DISTRIBUTIONS FOR ALLOWED CLAIMS.** Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date; *provided, however*, that the PFI Trustee, in its discretion, may defer

SMRH:4816-5664-3557.1
040921

73ZL-319169

Distributions to a given Holder of PFI Trust Interests (other than the final Distribution) if the amount available for Distribution to such Holder is not at least $100. Notwithstanding anything else to the contrary in this Plan, and as provided in section 502(d) of the Bankruptcy Code, the PFI Trustee is not required to make any Distributions to Holders of Allowed Claims, and no such Claims shall be deemed Allowed, unless and until such Holder has paid the Net Prepetition Investor Recovery, or such portion thereof as agreed to as a compromise and settlement, to the PFI Trust or until any PFI Trust Action seeking recovery of the Net Prepetition Investor Recovery is disallowed in its entirety by a Final Order. Distributions on account of Claims that first become Allowed Claims after the applicable Distribution Date shall be made pursuant to Section 7.4 of the Plan and on the day selected by the PFI Trustee. Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date.

**6.3    CALCULATING DISTRIBUTIONS AND RELATED MATTERS.** The PFI Trust shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, Investor Claims, and of other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the PFI Trust or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the PFI Trust, and may establish and holdback from Distributions reasonable reserves for other contingencies. When calculating Distributions (and amounts to hold in Distribution Reserves) with respect to Investor Claims, the Outstanding Principal Amounts and Prepetition Distributions to be utilized by the PFI Trust shall be as set forth in the Schedule of Allowed Netted Claims or as determined pursuant to the following section.

**6.4    APPLICATION OF THE SCHEDULE OF ALLOWED NETTED CLAIMS.** For any Investor that is not a Disputing Claimant, all Distributions and reserves shall be made or established based on the applicable amounts in the Schedule of Allowed Netted Claims. For any Investor that is a Disputing Claimant, in connection with a calculation by the PFI Trust for a Distribution or to establish reserves, unless otherwise provided in a Bankruptcy Court order, all calculations with respect to Claims asserted by such Disputing Claimant shall be made based on the aggregate claim amounts asserted by the Disputing Claimant in the objection made by such Disputing Claimant to the amount listed in the Schedule of Allowed Netted Claims for such Disputing Claimant or, for Unliquidated Claims, as estimated in the reasonable discretion of the PFI Trust, and all such PFI Trust Interests and Cash shall be held in a Distribution Reserve unless and until (i) the PFI Trust and the particular Disputing Claimant agree regarding the Outstanding Principal Amounts and Prepetition Distributions to utilize or (ii) a Final Order establishes such Outstanding Principal Amounts and Prepetition Distributions, including, if applicable, after taking into account any PFI Trust Actions that the PFI Trust may pursue against the particular Disputing Claimant (as to which all rights of the PFI Trust are reserved unless otherwise provided in the Plan).

**6.5    INTEREST AND OTHER AMOUNTS REGARDING CLAIMS.** Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

**6.6    MEANS OF CASH PAYMENT.** Cash payments under the Plan shall be made, at the option and in the sole discretion of the PFI Trustee, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the PFI Trustee by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance thereof. Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the PFI Trustee.

SMRH:4816-5664-3557.1
040921

73ZL-319169

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 45 of 62

**6.7 FORM OF CURRENCY FOR DISTRIBUTIONS.** All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**6.8 FRACTIONAL DISTRIBUTIONS.** Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**6.9 NO DISTRIBUTIONS WITH RESPECT TO CERTAIN CLAIMS.** Notwithstanding anything in the Plan to the contrary with the exception of Section 2.2, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim, including rights conferred by Bankruptcy Code section 506(b) which shall be continue to apply until Distribution to the Holders of Class 1 Claims (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the PFI Trust), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the PFI Trustee otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the PFI Trustee shall be used with respect to such Claim. Distributions due in respect of a Contingent Claim, Disputed Claim, or Unliquidated Claim shall be held in reserve by the PFI Trust in one or more Distribution Reserves. The PFI Trust will elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments from such fund.

**6.10 DELIVERY OF DISTRIBUTIONS.** Distributions in respect of PFI Trust Interests shall be made to Holders of PFI Trust Interests as of the record date set for such Distribution. Distributions to Holders of PFI Trust Interests or Allowed Claims that have not been converted to PFI Trust Interests shall be made (a) at the addresses set forth in the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Claims Agent or the PFI Trustee. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the PFI Trustee is notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the PFI Trustee with a current address of a Holder of PFI Trust Interests or Claims shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the PFI Trustee shall be held in trust on behalf of the Holder of the PFI Trust Interest or Claim to which they are payable by the PFI Trustee until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

**6.11 APPLICATION OF DISTRIBUTION RECORD DATE & OTHER TRANSFER**

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 46 of 62

**RESTRICTIONS.** At the close of business on the Distribution Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the PFI Trust and its Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. Nothing in this Section 6.11 is intended to or will impair or limit (i) the transferability of any PFI Trust Interests once such PFI Trust Interests have been Distributed to the record holders of Allowed Investor Claims and Allowed Other Unsecured Claims or (ii) the right of Holders at the record dates established from time to time regarding PFI Trust Interests to receive all Distributions in respect of such PFI Trust Interests when any Distributions are made.

**6.12 WITHHOLDING, PAYMENT, AND REPORTING REQUIREMENTS REGARDING DISTRIBUTIONS.** All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The PFI Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the PFI Trust, requiring each Holder of a PFI Trust Interest or Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of a PFI Trust Interest or an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the PFI Trust in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the PFI Trust for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**6.13 DEFENSES AND SETOFFS.** On and after the Effective Date, the PFI Trust shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Nothing under the Plan except as provided in Section 2.2, shall affect the rights and defenses of the Debtors, the Estates, or the PFI Trust in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, setoffs, or recoupment against such Claims. Accordingly, the PFI Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments and other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the PFI Trust, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

**6.14 ALLOCATION OF DISTRIBUTIONS.** All Distributions received under the Plan by Holders of PFI Trust Interests and Claims shall be deemed to be allocated first to the principal amount of such Claim, or the Claim to which the applicable PFI Trust Interest relates, as determined for United States federal income tax purposes, and then to accrued interest, if any, with respect to such Claim.

**6.15 JOINT DISTRIBUTIONS.** The PFI Trustee may, in its sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the PFI Trustee has determined to have an interest in such Claim.

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 47 of 62

**6.16** **FORFEITURE OF DISTRIBUTIONS.** If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 6.6, fails to claim an undeliverable Distribution within the time limit set forth in Section 6.106.10, or fails to complete and return to the PFI Trustee the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Section 6.12 (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO**

**7.1** **OBJECTIONS TO AND RESOLUTION OF DISPUTED CLAIMS, INCLUDING ANY CLAIMS OF EXCLUDED PARTIES OR DISPUTING CLAIMANTS.** From and after the Effective Date, the PFI Trust shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, except as otherwise provided in the PFI Trust Agreement, and any agreement entered into by the PFI Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim; *provided, however*, that, under the Plan, all Claims asserted by any of the Excluded Parties or any Disputing Claimant are Disputed Claims in their entirety and will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order. Notwithstanding anything else to the contrary herein, and as provided in section 502(d) of the Bankruptcy Code, the PFI Trustee is not required to make any Distributions to Holders of Allowed Claims, and no such Claims shall be deemed Allowed, unless and until such Holder has paid the Net Prepetition Investor Recovery, or such portion thereof as agreed to as a compromise and settlement, to the PFI Trust or until any PFI Trust Action seeking recovery of the Net Prepetition Investor Recovery is disallowed in its entirety by a Final Order.

**7.2** **CLAIM OBJECTIONS.** All objections to Claims (other than Professional Fee Claims, which shall be governed by Section 10.3 of the Plan, but including any Claims of Excluded Parties or Disputing Claimants) shall (i) with respect to non-Investor Claims, be Filed by the PFI Trust on or before the Claim Objection Deadline, which date may be extended by order of the Bankruptcy Court for cause after notice to parties who have Filed requests for notice on motion by the PFI Trust filed prior to the expiration of such period; (ii) with respect to Investor Claims, be filed in accordance with the procedures and deadlines to be set by order of the Bankruptcy Court with respect to the Schedule of Allowed Netted Claims; and (iii) with respect to the expungement of any liens held by Investors in Real Property, be filed in accordance with Section 10.1 of the Plan. With respect to non-Investor Claims, if a timely objection has not been Filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim. With respect to Investor Claims, if an Investor does not file an objection to the amount set forth in the Schedule of Allowed Netted Claims in accordance with further order of the Bankruptcy Court and does not object to the expungement of a lien on Real Property under the Plan, such Investor Claim will be treated as an Allowed Claim in the amounts set forth in the Schedule of Allowed Netted Claims.

**7.3** **ESTIMATION OF CERTAIN CLAIMS.** The PFI Trust may, at any time, move for a Bankruptcy Court order estimating any Contingent Claim, Disputed Claim, or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), subject to Section 2.2 of the Plan, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any

SMRH:4816-5664-3557.1
040921

73ZL-319169

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 48 of 62

Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.

**7.4** **DISTRIBUTIONS FOLLOWING ALLOWANCE.** Once a Contingent Claim, a Disputed Claim, or an Unliquidated Claim becomes an Allowed Claim, in whole or in part, including pursuant to the Plan, the PFI Trust shall distribute from the applicable Distribution Reserves to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Plan. Such Distributions, if any, shall be made on the next Distribution Date after the date on which the order or judgment allowing any such Claim becomes a Final Order or on which the Claim otherwise becomes an Allowed Claim, or, if there is no applicable Distribution Date, then within ninety (90) calendar days after the date on which the Claim becomes an Allowed Claim. Unless otherwise specifically provided in the Plan, such as in Section 2.2, or allowed by a Final Order, no interest shall be paid on Contingent Claims, Disputed Claims, or Unliquidated Claims that later become Allowed Claims.

**7.5** **DISPOSITION OF ASSETS IN RESERVES AFTER DISALLOWANCE.** After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan and any reserved PFI Trust Interests shall be cancelled.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**8.1** **CONDITIONS TO THE EFFECTIVE DATE.** The occurrence of the Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 8.2 of the Plan:

     (a)    the Bankruptcy Court shall have entered the Confirmation Order in a form reasonably acceptable to the Debtors and the Committees;

     (b)    the Confirmation Order shall not be subject to any stay;

     (c)    all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained and be in full force and effect;

     (d)    all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable;

     (e)    the Professional Fee Reserve is funded pursuant to Section 10.3 of the Plan;

     (f)    the Committees shall have agreed on and selected the BOV;

     (g)    the Committees shall have agreed on the powers of the BOV to oversee the PFI Trustee, and the mechanism, terms, and conditions under which the BOV may exercise those powers, including the removal of the PFI Trustee, as set forth in the PFI Trust Agreement; and

     (h)    the Committees shall have agreed on a business plan for the OpCo, which shall have been duly organized.

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 49 of 62

**8.2    WAIVER OF CONDITIONS TO THE EFFECTIVE DATE.** The conditions to the Effective Date set forth in clauses (iii) and (iv) of Section 8.1 of the Plan may be waived in writing by agreement of each of the Committees and the Debtors in their reasonable discretion, at any time without further order.

**8.3    EFFECT OF NON-OCCURRENCE OF CONDITIONS TO THE EFFECTIVE DATE.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Sections 8.1 and 8.2 of the Plan, upon notification Filed by the Debtors with the Bankruptcy Court, (i) the Confirmation Order shall be vacated; (ii) no Distributions shall be made; (iii) the Debtors, the Estates, the Committees and all Creditors shall be restored to the *status quo* as of the day immediately preceding the Confirmation Hearing as though the Confirmation Order was not entered; and (iv) all of the Debtors' and the Estates' obligations with respect to Claims shall remain unchanged and nothing contained in the Plan shall constitute a waiver or release of any Causes of Action by or against the Debtors, the Estates, or any other Person or prejudice in any manner the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

**8.4    NOTICE OF THE EFFECTIVE DATE.** Promptly after the occurrence of the Effective Date, the PFI Trust or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (iv) the deadline established under the Plan for the filing of Administrative Claims; and (v) such other matters as the PFI Trustee finds appropriate.

**ARTICLE IX.**
**RETENTION OF JURISDICTION AND POWER**

**9.1    SCOPE OF RETAINED JURISDICTION AND POWER.** Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including jurisdiction and power to do the following:

(a)    except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), 1103, and 1129(a)(4);

(c)    hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(d)    effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 50 of 62

(e)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the PFI Trust Actions, and with respect to the Plan;

(f)     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements (including, without limitation, the PFI Trust Agreement), documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

(h)     consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)     hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

(l)     enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

(m)     except as otherwise limited herein, recover all Estate Assets, wherever located;

(n)     hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(o)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

(p)     resolve any cases, controversies, suits, or disputes related to the PFI Trust, the BOV, the PFI Trustee, or the OpCo; and

(q)     enter a final decree closing the Chapter 11 Cases of the Debtors, other than PFI.

**9.2     RESERVED RIGHTS TO SEEK BANKRUPTCY COURT APPROVAL.** Notwithstanding any provision of the Plan allowing an act to be taken without Bankruptcy Court approval, the PFI Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which either of them may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the PFI Trust, including the

Case: 20-30604     Doc# 554     Filed: 04/09/21     Entered: 04/09/21 18:34:53     Page 51 of 62

administration, distribution, or proposed sale of any of the PFI Trust Assets or OpCo Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion Filed by the PFI Trust.

**9.3**    <u>**NON-EXERCISE OF JURISDICTION.**</u> If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Section 9.1 of the Plan, the provisions of this **Error! Reference source not found.** shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

**ARTICLE X.**
**<u>MISCELLANEOUS PROVISIONS</u>**

**10.1**    <u>**LIEN EXPUNGEMENT PROCEDURES.**</u>   Any DOT Noteholder that wishes to challenge the expungement of its lien under the Plan shall file an objection with the Bankruptcy Court no later than twenty (20) days after entry of the Confirmation Order (the "**<u>Objection Deadline</u>**") and serve its objection on the PFI Trustee and counsel for the Plan Proponents and Ad Hoc Committees. The Debtors or the PFI Trustee, as applicable, shall file an Avoidance Action no later than thirty (30) days after service of any such objection. Such lien expungement shall automatically become effective with respect to each Real Property on the later of the thirtieth (30th) day after entry of the Confirmation Order, if no objection is timely filed, or if an objection is timely filed, the date of entry of a final order adjudicating the Avoidance Action with respect to a lien on that Real Property.

**10.2**    <u>**ADMINISTRATIVE CLAIMS.**</u> Subject to the last sentence of this Section 10.2, all requests for payment of an Administrative Claim must be Filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. In the event of an objection to Allowance of an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. **THE FAILURE TO FILE A MOTION REQUESTING ALLOWANCE OF AN ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE, OR THE FAILURE TO SERVE SUCH MOTION TIMELY AND PROPERLY, SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISALLOWED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.** Postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**10.3**    <u>**PROFESSIONAL FEE CLAIMS.**</u> All final requests for payment of Professional Fee Claims pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application Filed with the Bankruptcy Court and served on counsel to the PFI Trust, counsel to the U.S. Trustee, and counsel to the SEC, no later than forty-five (45) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such applications must be Filed and served on counsel to the PFI Trust, counsel to the U.S. Trustee, and the requesting Professional in accordance with the instructions set forth in notice(s) to be filed with the Bankruptcy Court. All Professional Fee Claims shall be promptly paid by the PFI Trust to the extent approved by order of the Bankruptcy Court. On the Effective Date, the PFI Trust shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the PFI Trust and shall be maintained by the PFI Trust in accordance with the Plan. The PFI Trust shall fully fund the Professional Fee Reserve on the Effective Date in an amount that is agreed upon by the Debtors and each of the Committees prior to the Confirmation Hearing and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. If the Debtors and the Committees are unable to agree on an amount by which the Professional Fee Reserve is to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding. All Professional Fee Claims that have not previously been paid, otherwise satisfied, or withdrawn shall be paid from the Professional Fee Reserve. Any excess funds in the Professional Fee Reserve shall be released to the PFI Trust to be used for other

SMRH:4816-5664-3557.1
040921
73ZL-319169

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 52 of 62

purposes consistent with the Plan. For the avoidance of doubt, the Professional Fee Reserve is an estimate and shall not be construed as a cap on the PFI Trust's obligation to pay in full Allowed Professional Fee Claims.

**10.4** **PAYMENT OF STATUTORY FEES.** All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the PFI Trust.

**10.5** **SEC RELATED PROVISIONS. Notwithstanding any provision herein to the contrary or an abstention from voting on the Plan, no provision of the Plan, or any order confirming the Plan: (i) releases any non-debtor person or entity from any claim or cause of action of the SEC; or (ii) enjoins, limits, impairs, or delays the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-debtor person or entity in any forum.**

**10.6** **POST-EFFECTIVE-DATE REPORTING.**

(a)     Beginning the first quarter-end following the Effective Date and continuing on each quarter-end thereafter until the Closing Date, within thirty (30) calendar days after the end of such period, the PFI Trust shall File quarterly reports with the Bankruptcy Court. Each quarterly report shall contain financial, Distributions, settlement, sale and/or such other information as provided for in the PFI Trust Agreement.

(b)     The PFI Trust shall, as soon as practicable after the end of each calendar year and upon termination of the PFI Trust, provide or make available a written report and account to the Holders of PFI Trust Interests, which report and account sets forth (i) the assets and liabilities of the PFI Trust at the end of such calendar year or upon termination and the receipts and disbursements of the PFI Trust for such calendar year or period, and (ii) changes in the PFI Trust Assets and actions taken by the PFI Trustee in the performance of its duties under the Plan or the PFI Trust Agreement that the PFI Trustee determines in its discretion may be relevant to Holders of PFI Trust Interests, such as material changes or actions that, in the opinion of the PFI Trustee, may have a material effect on the PFI Trust Assets that were not previously reported. The PFI Trust may provide or make available to Holders of PFI Trust Interests similar reports for such interim periods during the calendar year as the PFI Trustee deems advisable. Such reports may be provided or made available to the Holders of PFI Trust Interests, in the discretion of the PFI Trustee, by any reasonable means, including U.S. mail, electronic transmission, or a virtual data room to which Holders shall have access, or publication to a publicly-available website or by press release distributed via a generally recognized business news service.

**10.7** **DISSOLUTION OF THE COMMITTEES.** The Unsecured Creditors' Committee, together with the Ad Hoc Committees, shall be automatically dissolved on the Effective Date and, on the Effective Date, each member thereof and each Professional retained by the Unsecured Creditors' Committee and the Ad Hoc Committees shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on the Unsecured Creditors' Committee or the Ad Hoc Committees, as applicable, the Plan, or the Chapter 11 Cases, except with respect to (a) any matters concerning any Professional Fee Claims held or asserted by any Professional retained by the Unsecured Creditors' Committees or the Ad Hoc Committees; and (b) the rights (if any) of former members of the Unsecured Creditors' Committee and the Ad Hoc Committees to select successor designees on the BOV in accordance with the terms of the PFI Trust Agreement.

**10.8** **MODIFICATIONS AND AMENDMENTS.**

Case: 20-30604     Doc# 554     Filed: 04/09/21     Entered: 04/09/21 18:34:53     Page 53 of 62

(a)     In the Plan Proponents' reasonable discretion after attempting agreement with the Ad Hoc Committees, the Plan Proponents may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing, provided that the Schedule of Assumed Contracts may be altered, amended or modified up until the Effective Date or by further order of the Bankruptcy Court. All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127. The Debtors shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

(b)     After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Plan Proponents or the PFI Trust, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan. Such proceedings must comply with Bankruptcy Code section 1127. To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

**10.9    SEVERABILITY OF PLAN PROVISIONS.** If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

**10.10    COMPROMISES AND SETTLEMENTS.** From and after the Effective Date, the PFI Trust may compromise and settle disputes about any Claims or about any PFI Trust Actions, without any further approval by the Bankruptcy Court, subject to the terms and conditions of the PFI Trust Agreement. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

**10.11    BINDING EFFECT OF PLAN.** Upon the Effective Date, Bankruptcy Code section 1141 shall become applicable with respect to the Plan and the Plan shall be binding on all Persons to the fullest extent permitted by Bankruptcy Code section 1141(a). Confirmation of the Plan binds each Holder of a Claim or Equity Interest to all the terms and conditions of the Plan, whether or not such Holder's Claim or Equity Interest is Allowed, whether or not such Holder holds a Claim or Equity Interest that is in a Class that is Impaired under the Plan, and whether or not such Holder has accepted the Plan.

**10.12    NON-DISCHARGE OF THE DEBTORS; INJUNCTION. In accordance with Bankruptcy Code section 1141(d)(3)(A), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan, including, without limitation, the Real Properties, is free and clear of all Claims**

SMRH:4816-5664-3557.1
040921

and Equity Interests against the Debtors, except as otherwise provided with respect to the Non-Investor First-Priority Lenders in Section 2.2 of the Plan. As such, no Person holding a Claim (other than the Non-Investor First-Priority Lenders as provided in Section 2.2) or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan. As of the Effective Date, all Persons are precluded and barred from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, Equity Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

**10.13    <u>RELEASES AND RELATED MATTERS</u>.**

(a)    **On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' businesses, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined in a Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in this Section 10.12 shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.**

(b)    **Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Section 10.13; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.**

(c)    **Notwithstanding any provision herein to the contrary or an abstention from voting on the Plan, no provision of the Plan, or any order confirming the Plan, (i) releases any non-Debtor Person from any Cause of Action of the SEC; or (ii) enjoins, limits, impairs, or delays the SEC from commencing or continuing any Causes of Action, proceedings, or investigations against any non-Debtor Person in any forum.**

**10.14    <u>EXCULPATION AND LIMITATION OF LIABILITY</u>. On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any prepetition or postpetition act or omission in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided, however*, that nothing in this Section 10.14 shall release or otherwise affect any Person's rights under the Plan or the Confirmation**

Order; and *provided, further*, that the exculpation provisions of this Section 10.14 shall not apply to acts or omissions constituting actual fraud or willful misconduct by such Exculpated Party as determined by a Final Order. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute actual fraud or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and administration thereof. The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this Section 10.14 of the Plan.

**10.15 <u>TERM OF INJUNCTIONS OR STAYS</u>.** Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in or arising from the Plan or the Confirmation Order), shall remain in full force and effect through and inclusive of the Effective Date and thereafter shall automatically terminate unless otherwise ordered by the Bankruptcy Court.

**10.16 <u>REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION</u>.** The Plan Proponents, after consultation with the Ad Hoc Committees, reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Hearing and to File subsequent plans. If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Hearing, or if the Effective Date does not occur, then (a) the Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Equity Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

**10.17 <u>EXEMPTION FROM TRANSFER TAXES</u>.** Pursuant to Bankruptcy Code section 1146, the vesting of the PFI Trust Assets in the PFI Trust, the vesting of the OpCo Assets in the OpCo, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**10.18 <u>COMPUTATION OF TIME</u>.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**10.19 <u>TRANSACTIONS ON BUSINESS DAYS</u>.** If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

**10.20 <u>GOOD FAITH</u>.** Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Plan Proponents and their respective Related Parties have acted in good faith in connection therewith.

SMRH:4816-5664-3557.1
040921

73ZL-319169

**10.21 <u>GOVERNING LAW.</u>** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of California shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate, limited liability company or limited partnership governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the appointment of the PFI Trustee, (iii) the wind down of the Debtors, (iv) the monetization of some or all of the PFI Trust Assets, or (v) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

**10.22 <u>NOTICES.</u>** Following the Effective Date, all pleadings and notices Filed in the Chapter 11 Cases shall be served solely on (a) the PFI Trust and its counsel, (b) the U.S. Trustee, (c) any Person whose rights are affected by the applicable pleading or notice, and (d) any Person Filing a specific request for notices and papers on and after the Effective Date.

**10.23 <u>FINAL DECREE.</u>** Upon the PFI Trustee's determination that all Claims have been Allowed, disallowed, expunged, or withdrawn and that all PFI Trust Assets and OpCo Assets have been monetized, abandoned, or otherwise administered, the PFI Trust shall move for the entry of the Final Decree. On entry of the Final Decree, the PFI Trustee and the BOV shall be deemed discharged and have no further duties or obligations to the PFI Trust or any other Person.

**10.24 <u>ADDITIONAL DOCUMENTS.</u>** On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and the PFI Trust, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**10.25 <u>CONFLICTS WITH THE PLAN.</u>** In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that if there is any inconsistency between the Plan, the provisions of the Disclosure Statement, and any other order entered in the Chapter 11 Cases, on the one hand, and the PFI Trust Agreement regarding the protocols, authority and decision-making power of the BOV, on the other hand, the specific provisions in the PFI Trust Agreement regarding the BOV shall control; *provided further* that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

*[Remainder of page intentionally left blank]*

Case: 20-30604    Doc# 554    Filed: 04/09/21    Entered: 04/09/21 18:34:53    Page 57 of 62

# ARTICLE XI.
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**11.1    REQUEST FOR CONFIRMATION.** The Plan Proponents request confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**11.2    RECOMMENDATION.** The Plan Proponents believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Dated:  April 9, 2021

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____
*/s/ Ori Katz*
ORI KATZ
J. BARRETT MARUM
MATT KLINGER

Counsel for Debtors

Dated:  April 9, 2021

PACHULSKI STANG ZIEHL & JONES LLP

By _____
*/s/ Debra Grassgreen*
DEBRA GRASSGREEN
JOHN D. FIERO
CIA H. MACKLE

Counsel for the Official Committee of Unsecured Creditors

SMRH:4816-5664-3557.1
040921

73ZL-319169

**Exhibit 1**

**(List of the Debtors)**

| | Entity Name | Case No. | Date Petition/Invol. Petition Filed | EIN | Address |
|---|---|---|---|---|---|
| 1. | Professional Investors Security Fund, Inc. | 20-30579 | 7/16/20 | 68-0040208 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 2. | Professional Financial Investors, Inc. | 20-30604 | 7/26/20 | 68-0233228 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 3. | Professional Investors Security Fund I, A California Limited Partnership | 20-30908 | 11/20/20 | 68-0022483 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 4. | Professional Investors Security Fund IV, A California Limited Partnership | 20-30909 | 11/20/20 | 68-0049491 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 5. | Professional Investors Security Fund VII, A California Limited Partnership | 20-30911 | 11/20/20 | 68-0115840 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 6. | Professional Investors Security Fund IX, A California Limited Partnership | 20-30910 | 11/20/20 | 68-0184540 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 7. | Professional Investors Security Fund XII, A California Limited Partnership | 20-30912 | 11/20/20 | 68-0233359 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 8. | Professional Investors Security Fund XIII, A California Limited Partnership | 20-30913 | 11/20/20 | 68-0264951 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 9. | Professional Investors Security Fund XIV, A California Limited Partnership | 20-30914 | 11/20/20 | 68-0287489 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 10. | Professional Investors Security Fund XV, A California Limited Partnership | 20-30915 | 11/20/20 | 68-0298084 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 11. | Professional Investors Security Fund XVII, A California Limited Partnership | 20-30916 | 11/20/20 | 68-0322071 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 12. | Professional Investors Security Fund XVIII, A California Limited Partnership | 20-30917 | 11/20/20 | 68-0340123 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 13. | Professional Investors 20, LLC | 20-30919 | 11/20/20 | 46-3353668 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 14. | Professional Investors 21, LLC | 20-30920 | 11/20/20 | 46-5084863 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 15. | Professional Investors 22, LLC | 20-30922 | 11/20/20 | 47-1285602 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 16. | Professional Investors 23, LLC | 20-30923 | 11/20/20 | 47-1699320 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 17. | Professional Investors 24, LLC | 20-30924 | 11/20/20 | 47-3144421 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |

SMRH:4839-0453-0658.1

73ZL-319169

| | | | | | |
|---|---|---|---|---|---|
| 18. | Professional Investors 25, LLC | 20-30925 | 11/20/20 | 47-3879056 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 19. | Professional Investors 26, LLC | 20-30927 | 11/20/20 | 47-4335145 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 20. | Professional Investors 27, LLC | 20-30928 | 11/20/20 | 47-4930703 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 21. | Professional Investors 28, LLC | TBD [Plan-Consolidated Debtor] | TBD [Plan-Consolidated Debtor] | 47-5310122 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 22. | Professional Investors 29, LLC | 20-30929 | 11/20/20 | 81-2625418 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 23. | Professional Investors 30, LLC | 20-30930 | 11/20/20 | 37-1827607 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 24. | Professional Investors 31, LLC | 21-30093 | 2/4/21 | 81-3273083 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 25. | Professional Investors 32, LLC | 20-30934 | 11/20/20 | 81-2625418 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 26. | Professional Investors 33, LLC | 20-30935 | 11/20/20 | 37-1827607 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 27. | Professional Investors 34, LLC | 20-30936 | 11/20/20 | 81-2625418 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 28. | Professional Investors 35, LLC | 20-30937 | 11/20/20 | 37-1827607 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 29. | Professional Investors 36, LLC | 20-30938 | 11/20/20 | 81-2625418 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 30. | Professional Investors 37, LLC | 20-30939 | 11/20/20 | 37-1827607 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 31. | Professional Investors 38, LLC | 21-30082 | 2/3/21 | 82-2734722 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 32. | Professional Investors 39, LLC | 21-30083 | 2/3/21 | 82-3661635 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 33. | Professional Investors 40, LLC | 20-30940 | 11/20/20 | 82-3823200 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 34. | Professional Investors 41, LLC | 20-30941 | 11/20/20 | 82-3839566 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 35. | Professional Investors 42, LLC | 21-30084 | 2/3/21 | 82-5497471 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 36. | Professional Investors 43, LLC | 21-30085 | 2/3/21 | 83-2208999 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |

| | | | | | |
|---|---|---|---|---|---|
| 37. | Professional Investors 44, LLC | 21-30086 | 2/3/21 | 83-2294816 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 38. | Professional Investors 45, LLC | 21-30087 | 2/3/21 | 83-2315445 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 39. | Professional Investors 46, LLC | 20-30942 | 11/20/20 | 84-1743732 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 40. | Professional Investors 47, LLC | 21-30088 | 2/3/21 | 84-2157268 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 41. | Professional Investors 48, LLC | 21-30089 | 2/3/21 | 84-3537563 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 42. | Professional Investors 49, LLC | 21-30094 | 2/4/21 | 84-3792687 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |
| 43. | PFI Glenwood, LLC | TBD [Plan-Consolidated Debtor] | TBD [Plan-Consolidated Debtor] | 82-2779085 | 350 Ignacio Blvd., Suite 300 Novato, CA 94949 |

SMRH:4839-0453-0658.1

73ZL-319169