Ori Katz (CA Bar No. 209561)
J. Barrett Marum (CA Bar No. 228628)
Matt Klinger (CA Bar No. 307362)
SHEPPARD, MULLIN, RICHTER & HAMPTON
LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4019
Telephone:     (415) 434-9100
Facsimile:     (415) 434-3947
Email:     okatz@sheppardmullin.com
             bmarum@sheppardmullin.com
             mklinger@sheppardmullin.com

*Counsel to Debtors and Debtors in Possession*

Debra I. Grassgreen (CA Bar No. 169978)
John D. Fiero (CA Bar No. 136557)
Cia H. Mackle (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES
LLP
150 California Street, 15th Floor
San Francisco, CA  94111
Telephone:     (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:     dgrassgreen@pszjlaw.com
             jfiero@pszjlaw.com
             cmackle@pszjlaw.com

*Counsel to the Official Committee of
Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., *et al.*,<br><br>               Debtors. | Chapter 11<br><br>Case No. 20-30604<br><br>(Jointly Administered)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND SUPPORTED BY THE AD HOC LLC MEMBERS COMMITTEE AND THE AD HOC DOT NOTEHOLDERS COMMITTEE (DATED MAY 20, 2021)**<br><br><u>Plan Confirmation Hearing:</u><br>Date:     May 27, 2021<br>Time:     10:00 a.m. (Pacific Time)<br>Place:    **Telephonic/Video Appearances Only**<br>           450 Golden Gate Avenue, 16th Floor<br>           San Francisco, CA 94102<br>Judge:   Hon. Hannah L. Blumenstiel |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND........................................................................................ 3

III. ARGUMENT .............................................................................................................. 5

    A.    The Plan Complies With Bankruptcy Code Section 1129(a)(1). ............................ 5

        1.    The Plan Complies With The Classification Requirements Of Bankruptcy Code Section 1122. ....................................................................... 5

        2.    The Plan Contains All Mandatory Provisions And Certain Permissive Provisions Set Forth In Bankruptcy Code Section 1123............................. 9

                a.    Compliance With Bankruptcy Code Section 1123(a)(1) (Classification of Claims).................................................................. 9

                b.    Compliance With Bankruptcy Code Section 1123(a)(2) (Specification of Unimpaired Classes and Interests). ...................... 9

                c.    Compliance With Bankruptcy Code Section 1123(a)(3) (Specification of Treatment of Impaired Classes and Interests). .... 10

                d.    Compliance With Bankruptcy Code Section 1123(a)(4) (Provide Same Treatment For Each Claim or Interest Within a Class). ........ 10

                e.    Compliance With Bankruptcy Code Section 1123(a)(5) (Adequate Means for Implementation of Plan). ................................ 10

                f.    Compliance With Bankruptcy Code Section 1123(a)(6) (Amendment to Corporate Charter). ............................................... 11

                g.    Compliance With Bankruptcy Code Section 1123(a)(7) (Selection of Trustee)................................................................................ 11

                h.    Section 1123(a)(8) Does Not Apply................................................. 12

                i.    Compliance With Bankruptcy Code Section 1123(b) (Permissive Plan Provisions)............................................................. 12

    B.    The Plan Proponents Have Complied With The Requirements Of Bankruptcy Code Section 1129(a)(2) (Compliance With Applicable Provisions of Title 11). ........... 13

        1.    Compliance With Bankruptcy Code Section 1121(a) (Who May File a Plan). ............................................................................................... 13

        2.    Compliance With Bankruptcy Code Section 1125 (Post-petition Disclosure and Solicitation). .......................................................................... 13

    C.    The Plan Satisfies the Other Consensual Plan Requirements of Section 1129(a), with the Exception of Section 1129(a)(8) as to Certain Subclasses of Class 1....... 14

Case: 20-30604   Doc# 650   Filed: 05/04/21   Entered: 05/04/21 12:27:21   Page 1 of
43

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

| | | 1. | The Plan Has Been Proposed In Good Faith In Compliance With Bankruptcy Code Section 1129(a)(3)............................................................ 14 |
| | | 2. | The Plan Complies With The Requirements Of Bankruptcy Code Section 1129(a)(4) (Payment for Services or Costs in Connection With the Case)................................................................................................................. 15 |
| | | 3. | The Plan Complies With Bankruptcy Code Section 1129(a)(5) Regarding the Identity and Affiliations of Officers, Directors, and Insiders................ 15 |
| | | 4. | The Plan Complies With Bankruptcy Code Section 1129(a)(6) Regarding Governmental Regulatory Approval of Rates. ............................................. 15 |
| | | 5. | The Plan Satisfies the Requirements Of Bankruptcy Code Section 1129(a)(7) ("Best Interests" Test). ...................................................... 15 |
| | | 6. | Each Class of Claims and Interests has Accepted the Plan, is Unimpaired, or May be Crammed Down – Sections 1129(a)(8) and 1129(b). .................... 17 |
| | | 7. | The Plan Complies With Bankruptcy Code Section 1129(a)(9). ................ 20 |
| | | 8. | The Plan Has Been Accepted By At Least One Impaired Class in Compliance With Bankruptcy Code Section 1129(a)(10). ......................... 20 |
| | | 9. | The Plan is Feasible and in Compliance with Bankruptcy Code Section 1129(a)(11)........................................................................................ 20 |
| | | 10. | The Debtor Will Pay on or Before the Effective Date All Fees Payable Under 28 U.S.C. § 1930 in Compliance With Bankruptcy Code Section 1129(a)(12).......................................................................................... 21 |
| | | 11. | Section 1129(a)(13) Regarding Retiree Benefits Does Not Apply. ............ 21 |
| | | 12. | Section 1129(a)(14) Regarding Domestic Support Obligations Does Not Apply.............................................................................................................. 21 |
| | | 13. | Section 1129(a)(15) Does Not Apply........................................................... 21 |
| | | 14. | The Plan Complies With Bankruptcy Code Section 1129(d) Because The Principal Purpose Of The Plan Is Not To Avoid Taxes Or Applicable Securities Laws. .......................................................................................... 22 |
| | D. | | Substantive Consolidation is Appropriate and Necessary to the Plan ................... 22 |

IV. CONCLUSION ................................................................................................................... 24

Case: 20-30604   Doc# 650   Filed: 05/20/25   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*In re Acequia, Inc.*
787 F.2d 1352 (9th Cir. 1986) ..................................................................................21

*Alexander v. Compton (In re Bonham)*
229 F.3d 750 (9th Cir. 2000) ....................................................................................22

*Barclay v. Mackenzie (In re AFI Holding, Inc.)*
525 E3d 700, 708-09 (9th Cir. 2008) .................................................................13, 16

*Brady v. Andrew (In re Commercial Western Fin. Corp.)*
761 F.2d 1329 (9th Cir. 1985) ...............................................................................5, 9

*In re Drexel Burnham Lambert Group*
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ......................................................................15

*In re Eagle-Picher Indus., Inc.*
203 B.R. 256 (Bankr. S.D. Ohio 1996) .....................................................................14

*In re Haardt*
65 B.R. 697 (Bankr. E.D. Pa. 1986) ...........................................................................9

*In re Hoff*
54 B.R. 746 (Bankr. D.N.D. 1985) ............................................................................13

*In re Jeppson*
66 B.R. 269 (Bankr. D. Utah 1986) ...........................................................................13

*JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props. (In re Transwest Resort Props.)*
881 F.3d 724 (9th Cir. 2018) ....................................................................................20

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
843 F.2d 636 (2d Cir. 1988) .......................................................................................5

*In re Montclair Retail Ctr., L.P.*
177 B.R. 663 (B.A.P. 9th Cir. 1995) ...........................................................................6

*In re Patrician St. Joseph Partners*
169 B.R. 669 (Bankr. D. Ariz. 1994) .........................................................................20

*Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*
67 F.3d 1394 (9th Cir. 1995) ......................................................................................5

*In re Rexford Properties LLC*
558 B.R. 352 (Bankr. C.D. Cal. 2016) ........................................................................6

-iii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

*In re Smith*
    123 B.R. 863 (Bankr. C.D. Cal. 1991) ................................................................................10

*Steelcase Inc. v. Johnston (In re Johnston)*
    21 F.3d 323 (9th Cir. 1994) ...............................................................................................5

*In re Sullivan*
    26 B.R. 677 (Bankr. W.D.N.Y. 1982) ................................................................................7

*In re Texaco Inc.*
    84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed* 92 B.R. 38 (S.D.N.Y.
    1988) ....................................................................................................................................5

*In re Toy & Sports Warehouse, Inc.*
    37 B.R. 141 (Bankr. S.D.N.Y. 1984) ................................................................................13

*United States v. Energy Resources Co.*
    495 U.S. 545 (1990) ..........................................................................................................21

*In re WCI Cable, Inc.*
    282 B.R. 457 (Bankr. D. Or. 2002) ..................................................................................21

Statutes

11 U.S.C. .............................................................................................1, 2, 3, 4, 5, 11, 13

11 U.S.C.
    § 1126(c) ......................................................................................................................17, 19
    § 1126(f) ...........................................................................................................................18
    § 1128(a)(7) ......................................................................................................................15
    § 1129(a)(9)(A) ..................................................................................................................7
    § 1129(b)(1) ................................................................................................................18, 19
    § 1129(b)(2)(A) .................................................................................................................18
    § 1129(b)(2)(B) .................................................................................................................19
    § 1129(b)(2)(C) .................................................................................................................20

28 U.S.C.
    § 1930 ................................................................................................................................21

Bankruptcy Code ......................................................................................................3, 5, 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

Bankruptcy Code
    Chapter 7 ...........................................................................................................16, 17
    § 365(b)(2) .................................................................................................................7
    § 507(a)(2) .................................................................................................................9
    § 507(a)(3) .................................................................................................................9
    § 507(a)(8) .................................................................................................................9
    § 1121 ......................................................................................................................13
    § 1121(a) ..................................................................................................................13
    § 1121(c) ..................................................................................................................13
    § 1122 ....................................................................................................................5, 6
    §§ 1122 and 1123 .....................................................................................................5
    § 1122(a) ................................................................................................................5, 9
    § 1123 .......................................................................................................................9
    § 1123(a) ...................................................................................................................9
    § 1123(a)(1) ..............................................................................................................9
    § 1123(a)(2) ..........................................................................................................9, 10
    § 1123(a)(3) .............................................................................................................10
    § 1123(a)(3) .............................................................................................................10
    § 1123(a)(4) .............................................................................................................10
    § 1123(a)(5) .............................................................................................................10
    § 1123(a)(6) .............................................................................................................11
    § 1123(a)(7) .............................................................................................................11
    § 1123(a)(8) .............................................................................................................12
    §§ 1123(a) and (b) ....................................................................................................9
    § 1123(b) ..............................................................................................................9, 12
    § 1123(b)(1) .............................................................................................................12
    § 1123(b)(2) .............................................................................................................12
    § 1123(b)(3) .............................................................................................................12
    § 1123(b)(4) .............................................................................................................12
    § 1123(b)(5) .............................................................................................................12
    § 1124(2) ...................................................................................................................7
    § 1125 ......................................................................................................................13
    § 1125 ......................................................................................................................13
    § 1125(b) ..................................................................................................................13
    § 1129 ...................................................................................................................5, 24
    § 1129(a) ..................................................................................................................14
    § 1129(a)(1) ...............................................................................................................5
    § 1129(a)(1) ...............................................................................................................5
    § 1129(a)(2) .........................................................................................................13, 14
    § 1129(a)(3) .............................................................................................................14
    § 1129(a)(4) .............................................................................................................15
    § 1129(a)(5) .............................................................................................................15
    § 1129(a)(5)(A)(i) .....................................................................................................15
    § 1129(a)(6) .............................................................................................................15
    § 1129(a)(7) .........................................................................................................15, 16
    § 1129(a)(8) .........................................................................................................14, 17
    §§ 1129(a)(8) and 1129(b) ......................................................................................17
    § 1129(a)(9) .............................................................................................................20

Case: 25-30604   Doc# 650   Filed: 05/20/25   Entered: 05/20/25 17:31:35   Page 6 of 43
SMRH:4930-3054-9677   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

§ 1129(a)(10)..................................................................................20
§ 1129(a)(11)..............................................................................20, 21
§ 1129(a)(12)..................................................................................21
§ 1129(a)(13)..................................................................................21
§ 1129(a)(14)..................................................................................21
§ 1129(a)(15)..................................................................................21
§ 1129(b)........................................................................................17
§ 1129(d)........................................................................................22

Other Authorities

Bankruptcy Rule 3017(d)..............................................................14

www.donlinrecano.com/pfi..................................................................1

-vi-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

# I. INTRODUCTION

This Plan[1] is the product of unprecedented cooperation between a highly-organized investor body and the Debtors[2] and is overwhelmingly supported by the creditors who cast ballots. Nearly 2,200 votes, representing over $461 million in claims, were received prior to the May 13, 2021 voting deadline. Nearly 99.8% of those votes, representing over $457 million in claims, voted in favor of the Plan.[3] In total, only five (5) ballots rejected the Plan, representing less than $1.5 million in claims.

This incredible level of Plan support is a testament to the hard work of numerous interested parties in these Chapter 11 Cases. Perhaps most notably, since even before the commencement of the Chapter 11 Cases, the investor body has played a critical role by organizing themselves to ensure their interests were well-represented. In addition, the Official Committee of Unsecured Creditors (the "OCUC"), and the Ad Hoc LLC Members Committee and Ad Hoc Committee of Deed of Trust Holders (together the "Ad Hoc Committees" and, collectively with the OCUC, the "Committees") made extensive efforts to communicate with the respective constituencies regarding the Plan and the voting process. These efforts included participating in several Zoom meetings open to all Investors and in numerous other communications responding to Investor inquiries regarding the Plan and the voting procedures. The Debtors themselves also fielded

---

[1] The "Plan" shall refer to the *Second Amended Joint Plan of Professional Financial Investors, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee (Dated May 20, 2021)* filed concurrently with this Memorandum. All capitalized terms used but not defined in this Memorandum shall have the meaning given to them in the Plan. On March 21, 2021, the Proponents filed their *Joint Plan of Professional Financial Investors, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee* as Dkt. No. 489 (the "Original Plan"). The Original Plan was superseded on April 9, 2021, when the Proponents filed their *Amended Joint Plan of Professional Financial Investors, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee* as Dkt. No. 554 (the "First Amended Plan"). Later, the First Amended Plan was superseded by the Plan.

[2] A complete list of the Debtors and their respective chapter 11 case numbers may be found at www.donlinrecano.com/pfi. The federal tax identification numbers of each of the Debtors is also available in the bankruptcy petitions of each Debtor, also available at the Donlin Recano website.

[3] As of May 20, 2021, twenty-nine (29) total ballots have been received after the voting deadline and such ballots are summarized on Exhibit B to the Burlacu Declaration (defined below). The Proponents believe that at least several of these ballots likely would have arrived before the voting deadline but for delays in their delivery that were outside of the sender's control. The Proponents request that the Court permit all of these ballots to be counted pursuant to the Tabulation Rules approved by this Court and that any election indicated on such ballots be honored under the Plan.

numerous questions from Investors and other claimants and, through their conflicts counsel, communicated extensively with the Debtor's bank lenders to explain the details of the Plan and the voting process. Ultimately, all those lenders that cast a ballot voted in favor of the Plan.

Meanwhile, only one (limited) objection to the Plan (the "<u>Limited Objection</u>") was lodged and the Proponents have addressed the bases of that objection through revisions to the Plan that are discussed below. No other plan of reorganization or liquidation has been proposed in the Chapter 11 Cases.

The Plan provides built-in flexibility in order to achieve a value-maximizing result. In that regard, the Plan provides an option to place the Real Properties owned by the Debtors, either directly or indirectly, into an operating company called "<u>OpCo</u>" (short for Operating Company) which will, in turn, be owned by the PFI Trust, and managed by experts retained by the trustee of the PFI Trust.

A second option under the Plan contemplates the Debtors' selling the Real Properties prior to the Effective Date, in which case there will be no need for an OpCo (and consequently an OpCo will not be established) and the post-Effective Date corporate governance will be greatly simplified.

As it stands the Debtors intend to pursue a sale of all or a substantial portion of their Real Properties pursuant to proposed sale procedures that will soon be submitted to this Court for approval. As such, the Proponents do not presently anticipate that the PFI Trust will be overseeing the operation of a large number of the Real Properties as part of an OpCo structure once the Effective Date occurs.

Investors and other unsecured creditors of the Debtors will, in exchange for their allowed claims against any of the Debtors, become beneficiaries of the PFI Trust and will be entitled to distributions on their allowed claims as set forth in the Plan. Under either option (*i.e.*, an OpCo or a pre-Effective Date sale) a "Board of Advisors" (composed of investors in the Debtors) will have certain duties and rights as the PFI Trustee attempts to best monetize the PFI Trust's assets.

The Plan should be confirmed so that the PFI Trust (and, only in the unlikely event it is necessary, the OpCo) can be established and the reorganization of the Debtors' affairs can

commence. The Proponents request the Court to issue an order confirming the Plan in the form attached hereto as Exhibit B.

This Memorandum is supported by the concurrently filed Declaration of Andrew Hinkelman and Declaration of John Burlacu (the "Burlacu Declaration"), including the Final Tabulation Results attached as Exhibit A to the Burlacu Declaration (the "Final Tabulation Results"), as well as the facts, evidence, and pleadings of record in this case.

By this Memorandum, the Proponents respectfully request that the Court find that the Plan meets all of the requirements of the Bankruptcy Code and enter an order confirming the Plan over the Limited Objection.

## II. FACTUAL BACKGROUND

Originally founded by Ken Casey ("Casey"), the Debtors comprise a group of related entities that directly or indirectly own, manage and/or otherwise control various real properties in California, including Marin and Sonoma Counties.[4] Although touted and marketed to Investors as a premier real estate investment and management firm, in fact, while the Real Properties do indeed exist, the business was nothing more than a Ponzi scheme. After Casey's death in May 2020, new management was installed, and the Debtors' prior fraudulent scheme was uncovered.

On July 16, 2020, certain creditors commenced an involuntary chapter 11 bankruptcy action against PISF, Case No. 20-30579 (the "PISF Case") and this Court entered an order for relief in the PISF Case on July 27, 2020.

Also on July 26, 2020, PFI commenced its bankruptcy case by filing a voluntary chapter 11 petition. On November 20, 2020, under authority granted by this Court, PFI commenced involuntary petitions against 29 of its limited liability company and limited partnership affiliates (collectively, the "November 2020 Debtors"). On December 11, 2020, this Court entered orders for relief against the November 2020 Debtors. Between February 3-4, 2021, PFI filed involuntary chapter 11 petitions against ten additional limited liability company affiliates (the "February 2021 Debtors"), and this Court subsequently entered orders for relief against the February 2021 Debtors

---

[4]  Overall, the Debtors own either direct or indirect interests in approximately seventy (70) real property locations (collectively, the "Real Properties"), primarily consisting of apartment buildings and office parks. A Schedule of the Real Properties is attached to the Disclosure Statement as Schedule 1.

-3-

Case: 20-30604   Doc# 650   Filed: 05/11/22   Entered: 05/11/22 14:22:46   Page 10 of 43

on February 18, 2021. All of the Debtors' Chapter 11 Cases are jointly administered under Case

No. 20-30604.

Following the revelation of the massive Ponzi scheme and the resulting bankruptcy filings,

the Proponents, together with the Ad Hoc Committees, have worked diligently to maximize

recoveries for the Debtors' Investors and other creditors. To this end, the Debtors and the

Committees, through months of open cooperation, information gathering and negotiation for the

benefit of all Investors, reached a global resolution, embodied in the Plan, aimed at: (i) mitigating

the damage inflicted by Casey (and others) having operated the Debtors as a Ponzi scheme; and

(ii) developing a level playing field that attempts to treat all aggrieved Investors equally and fairly.

To effectuate distributions to Investors and other creditors, the Plan provides for the

creation of the PFI Trust, which will own the Estates' assets (including indirectly owning any Real

Properties that remain in the Debtors' portfolio as of the Effective Date through the OpCo) and

will sell or otherwise dispose of those assets to generate cash, and then distribute that (and other)

cash to creditors (including to Investors). The PFI Trust also will own litigation claims against

third parties that may generate cash through prosecution or settlement of those claims. Cash will

be distributed by the PFI Trust to Investors and other creditors over time (as the PFI Trust collects

on the PFI Trust Assets and/or the OpCo upstreams operating profits from and/or sale proceeds

from the disposition of the Real Properties).

Critically, the Plan Proponents have ensured that Investors will continue to have an

advisory role in connection with certain key decisions that will be made by the PFI Trust by

creating the Board of Advisors (the "Board") to serve in connection with the PFI Trust. The

proposed PFI Trustee (Michael Goldberg) has been jointly selected by the Committees and the

Committees have also jointly selected the initial members of the Board.

In response to the Limited Objection,[5] the Plan changed the definition of "Investor" from

what appeared in the First Amended Plan, to ensure that PFI LLC Members that also hold TIC

Interests do not have their membership interests cancelled.

---

[5] On May 13, 2021, Christina Hariclia Ensign, as Trustee of the Amended and Restated Christina Hariclia Ensign Trust dated August 15, 1996, and Felix Arts and Carol Sue Sproule, as Trustees of the Arts-Sproule Family Trust dated December 3, 2018 filed the Limited Objection to the First Amended Plan as Dkt. No. 636.

-4-

Case: 20-30604   Doc# 650   Filed: 05/17/21   Entered: 05/17/21 21:34:19   Page 11 of 43

SMRH:4841-9644-9670   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

**III. ARGUMENT**

Under the Bankruptcy Code, a plan "shall" be confirmed if all of the applicable confirmation requirements set forth in Bankruptcy Code Section 1129 are satisfied. *See Brady v. Andrew (In re Commercial Western Fin. Corp.)*, 761 F.2d 1329, 1338 (9th Cir. 1985). As discussed below, the Plan satisfies all of the applicable confirmation requirements of Section 1129 and should therefore be confirmed.

**A.      The Plan Complies With Bankruptcy Code Section 1129(a)(1).**

Bankruptcy Code Section 1129(a)(1) requires that a plan comply with the "applicable provisions of this title." *See* 11 U.S.C. § 1129(a)(1); *Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995). "The legislative history of Subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this Subsection to mean provisions of chapter 11 that concern the *form* and *content* of reorganization plans." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988) (emphasis added). The two applicable provisions relating to the form and content of a plan of reorganization are Bankruptcy Code Sections 1122 and 1123, which govern classification of claims and interests and the contents of a plan, respectively. *See In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988), *appeal dismissed* 92 B.R. 38 (S.D.N.Y. 1988) ("In determining whether a plan complies with Section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to classification of claims and the contents of a plan of reorganization."). As demonstrated below, the Plan complies with both Bankruptcy Code Sections 1122 and 1123, and thus satisfies the requirements of Subsection 1129(a)(1).

1.      The Plan Complies With The Classification Requirements Of Bankruptcy Code Section 1122.

Section 1122(a) of the Bankruptcy Code requires that each claim or interest within a class be substantially similar to all other claims or interests within that class. *See* 11 U.S.C. § 1122(a). Courts are afforded broad discretion to decide the propriety of classification in plans in light of the facts of each case. *See Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994). A plan proponent is afforded significant flexibility in classifying claims under § 1122(a) provided there is a reasonable, non-discriminatory basis for the classification scheme and all

-5-

claims within a particular class are substantially similar. *In re Montclair Retail Ctr., L.P.*, 177 B.R. 663, 665 (B.A.P. 9th Cir. 1995) (citing *In re Johnston, supra*); *In re Rexford Properties LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016).

Here, the Plan's classification of Claims satisfies the requirements of Bankruptcy Code Section 1122. The Plan sets forth nine separate and distinct classes of claims and interests in the following classes:

| Class 1 | Non-Investor First-Priority Lender Claims | Class 6 | TIC Claims |
| Class 2 | Non-Investor Other Secured Claims | Class 7 | Other Unsecured Claims |
| Class 3 | Priority Claims | Class 8 | Other Subordinated Claims |
| Class 4 | DOT Noteholder Claims | Class 9 | Equity Interests |
| Class 5 | Non-DOT Investor Claims | | |

The foregoing classification scheme is appropriate because the Plan adheres to the statutory requirements that the claims and interests within each class be substantially similar to all other claims and interests in that class. Pursuant to the Plan's classification scheme secured debt is classified separately from unsecured debt and each secured creditor position is placed in its own sub-class (thereby reflecting its unique collateral).

Class 1 consists of the Non-Investor First-Priority Lender Claims, which are impaired under the Plan. Each allowed Non-Investor First-Priority Lender Claim is deemed to be in its own subclass. On or as soon as is reasonably practicable after the Effective Date, each Holder of a Class 1 Claim will receive either: (i) in the event of a sale or refinance concerning the Collateral, cash in the Allowed Amount of such Holder's Class 1 Claim that shall be immediately paid from escrow in exchange for release of such Holder's Lien; or (ii) the return by the PFI Trust or OpCo, as applicable, and subject to mutual agreement or court order, by deed in lieu of foreclosure, surrender, or termination of any stay, of the Collateral securing such Class 1 Claim, without representation or warranty by any Person; or (iii) (A) reinstatement of the maturity of such Class 1 Claim in the Allowed Amount as the maturity existed before any default, (B) payment of any taxes, contractual legal fees, cost and other charges, and past due installments of principal or

-6-

1   interest, and (C) continuation thereafter of payments of principal, interest and other obligations

2   when and as the same come due.  Treatment for the claims in Class 1 is different and distinct than

3   the treatment provided for the other secured classes of claims.

4          Class 2 consists of the Non-Investor Other Secured Claims, and each such claim is treated

5   as a separate sub-Class within Class 2.  The claims in Class 2 are all unimpaired under the Plan.

6   On or as soon as is reasonably practicable after the Effective Date, each Holder of an Allowed

7   Class 2 Claim shall receive, at the PFI Trust's option: (i) Cash from the PFI Trust in the Allowed

8   amount of such Holder's Allowed Class 2 Claim; or (ii) the return by the PFI Trust of the

9   Collateral securing such Allowed Class 2 Claim, without representation or warranty by any Person

10  (and without recourse against any Person regarding such Non-Investor Other Secured Claim); or

11  (iii) (A) the cure of any default, other than a default of the kind specified in Bankruptcy Code

12  section 365(b)(2), that Bankruptcy Code section 1124(2) requires to be cured, with respect to such

13  Holder's Allowed Class 2 Claim, without recognition of any default rate of interest or similar

14  penalty or charge, and upon such cure, no default shall exist; (B) the reinstatement of the maturity

15  of such Allowed Class 2 Claim as the maturity existed before any default, without recognition of

16  any default rate of interest or similar penalty or charge; and (C) retention of its unaltered legal,

17  equitable, and contractual rights with respect to such Allowed Clam.  Treatment for the claims in

18  Class 2 is different and distinct than the treatment provided for the other secured classes of claims.

19         Class 3 consists of Priority Claims, which are unimpaired under the Plan.  The Plan

20  provides that each claimant in this Class shall receive full satisfaction for such claim by, or as

21  soon as reasonably practicable after, the later of the Effective Date or the date such claim in this

22  Class becomes Allowed.  See 11 U.S.C. § 1129(a)(9)(A); see also In re Sullivan, 26 B.R. 677, 678

23  (Bankr. W.D.N.Y. 1982) (holding that it is improper to classify general unsecured claims and

24  priority claims together in the same class).

25         Class 4 consists of DOT Noteholder Claims, which are impaired under the Plan.  For

26  purposes of distributions under the Plan, Holders of DOT Noteholder Claims in Class 4 are

27  considered to be in separate subclasses within Class 4 on a property by property basis (i.e., Class

28  4A is composed of all DOT Noteholder Claims relating to Real Property A, Class 4B is composed

-7-

of all DOT Noteholder Claims relating to Real Property B, etc.), and each such subclass for each applicable Real Property is deemed to be a separate Class for purposes of the Plan.

Class 5 consists of the Non-DOT Investor Claims. These claims are impaired under the Plan and the claimants in Class 5 shall receive, in full satisfaction, settlement, and release of and in exchange for such Claims, (i) one (1) Class A PFI Trust Interest for each dollar of Allowed Investor Restitution Claims held by the applicable Investor and one (1) Class B PFI Trust Interest for each dollar of Allowed Investor Subordinated Claims, and (ii) the other consideration provided for in the Investor Claims Special Provisions. These claims are classified separately because they receive a different treatment under the Plan than the other classes comprised of unsecured claims.

Class 6 consists of the TIC Claims. Claims in Class 6 are impaired under the Plan and the claimants in Class 6 shall receive, in full satisfaction, settlement, and release of and in exchange for such Claims, one (1) Class A PFI Trust Interest for each dollar of Allowed TIC Claims held by the applicable Holder. Alternatively, if the Holder of a TIC Claim makes a valid TIC Investor Treatment Election, that Holder shall receive the treatment provided to Holders of Class 5 Non-DOT Investor Claims, with one important exception regarding creditor claim aggregation. Claims in Class 6 are classified separately from other types of Claims because they are receiving a different treatment under the Plan than other types of Claims.

Class 7 consists of the Other Unsecured Claims. These claims are impaired under the Plan and claimants in Class 7 shall receive, in full satisfaction, settlement, and release of and in exchange for such Claims, one (1) Class A PFI Trust Interest for each dollar of Allowed Other Unsecured Claims held by the applicable Holder. Class 7 Claims are classed separately because they receive different treatment under the Plan than other classes comprised of unsecured Claims.

Class 8 consists of Other Subordinated Claims. These claims are impaired under the Plan and retain only a residual right to receive Available Cash that remains in the PFI Trust after the final administration of all PFI Trust Assets and OpCo Assets, and the complete satisfaction of all senior payment rights within the PFI Trust Interests Waterfall, including satisfaction of all Investor Subordinated Claims.

Class 9 consists of Equity Interests and is impaired under the Plan. Subject to any Alternative Restructuring Transactions, Equity Interests will be deemed void, cancelled, and of no further force and effect as of the Effective Date. Holders of Equity Interests shall not be entitled to, and shall not receive or retain any property or interest in property on account of such interests.

As explained above, valid business, factual and legal reasons exist for the Plan's claim classification scheme. Based on their security position, if any, their legal priority against the Debtors' assets, and other relevant criteria, each of the stated Classes contains substantially similar Claims in terms of the legal or factual rights of the members within a particular Class. Accordingly, the Plan meets the requirements of Bankruptcy Code section 1122(a).

2. <u>The Plan Contains All Mandatory Provisions And Certain Permissive Provisions Set Forth In Bankruptcy Code Section 1123.</u>

Bankruptcy Code Section 1123(a) sets forth mandatory requirements for a plan, and Section 1123(b) identifies various permissive provisions that may be included in a plan, but which are not required. The Plan proposed in this case complies with both Section 1123(a) and (b).

a. *Compliance With Bankruptcy Code Section 1123(a)(1) (Classification of Claims).*

Bankruptcy Code Section 1123(a)(1) requires a plan to designate classes of claims and interests, other than claims of a kind specified in Bankruptcy Code Section 507(a)(2) (administrative expense claims, including Professional Fee Claims), Bankruptcy Code Section 507(a)(3) (claims arising during the "gap" period in an involuntary case), and Bankruptcy Code Section 507(a)(8) (priority tax claims). *See* 11 U.S.C. § 1123(a)(1); *see also In re Haardt*, 65 B.R. 697, 700 (Bankr. E.D. Pa. 1986); *accord In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1334 (9th Cir. 1985).

Section 1.1 of the Plan classifies the Claims and Equity Interests into nine separate Classes. The Plan does not classify administrative claims, including professional fee claims, involuntary gap claims or priority tax claims. Thus, the Plan satisfies the requirements of Bankruptcy Code Section 1123(a)(1).

b. *Compliance With Bankruptcy Code Section 1123(a)(2) (Specification of Unimpaired Classes and Interests).*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

Bankruptcy Code Section 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2); *see also In re Smith*, 123 B.R. 863, 865 (Bankr. C.D. Cal. 1991).

Section 1.1 of the Plan sets forth the two classes whose rights are unimpaired by the Plan – Class 2 (Non-Investor Other Secured Claims) and Class 3 (Priority Claims). The Plan thus satisfies Bankruptcy Code Section 1123(a)(2).

c. **Compliance With Bankruptcy Code Section 1123(a)(3) (Specification of Treatment of Impaired Classes and Interests).**

Bankruptcy Code Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). In accordance with Bankruptcy Code Section 1123(a)(3), Sections 2.2, 2.5, 2.6, 2.7, 2.8, 2.9, and 2.10 of the Plan specify the treatment of Classes 1, 4, 5, 6, 7, 8, and 9, respectively, all of which are impaired under the Plan.

d. **Compliance With Bankruptcy Code Section 1123(a)(4) (Provide Same Treatment For Each Claim or Interest Within a Class).**

Bankruptcy Code Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). As set forth in Sections 2.2 – 2.10 of the Plan, each claim or interest in each of the classes set forth in the Plan will receive the same treatment as every other claim or interest in such class.

e. **Compliance With Bankruptcy Code Section 1123(a)(5) (Adequate Means for Implementation of Plan).**

Bankruptcy Code Section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation" and sets forth several examples of such adequate means. 11 U.S.C. § 1123(a)(5).

The means for implementing the Plan are set forth throughout the Plan, but are primarily described in Article IV of the Plan. On the Effective Date, among other things, Michael Goldberg will become the PFI Trustee, the PFI Trust will be established and automatically vested with the PFI Trust Assets, the Board will begin to serve its advisory function, the OpCo Assets (if any) shall be assigned or otherwise transferred or conveyed to the OpCo, and PFI, PISF, the LLC/LP Debtors, Professional Investors 28, LLC, and PFI Glenwood LLC shall be substantively

-10-

consolidated. The PFI Trust will then begin pursuing, collecting from, and/or monetizing the PFI Trust Assets and the OpCo Assets and making Distributions from the proceeds of such assets to the PFI Trust Beneficiaries.

        f.     *Compliance With Bankruptcy Code Section 1123(a)(6) (Amendment to Corporate Charter).*

Section 1123(a)(6) requires a reorganizing debtor to amend its corporate charter to prohibit the issuance of nonvoting securities. As set forth in Section 4.2.3 of the Plan, on the Effective Date each of the Debtors will be dissolved automatically. Moreover, the Debtors' property assets are expected to be sold within the next several months (and prior to the Effective Date). As such, the requirement of Section 1123(a)(6) should not be applicable in this situation.

        g.     *Compliance With Bankruptcy Code Section 1123(a)(7) (Selection of Trustee).*

Bankruptcy Code Section 1123(a)(7) requires that a plan:

> contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee.

11 U.S.C. § 1123(a)(7). The Plan proposes that Michael Goldberg serve as the Initial PFI Trustee. Mr. Goldberg was jointly selected by the Committees as the Initial PFI Trustee. He has served as the court-approved sole director of Professional Financial Investors, Inc. and Professional Investors Security Fund, Inc. since August 11, 2020. Mr. Goldberg chairs Akerman LLP's Fraud and Recovery Practice, an experienced team of lawyers focused on unraveling high-profile investor fraud, including Ponzi schemes. He has wide-ranging experience as a counsel, receiver or other senior official in cases involving fraud. As such, Mr. Goldberg's appointment as the Initial PFI Trustee satisfies the requirements of section 1123(a)(7).

As set forth in Section 8.4 of the PFI Trust Agreement, upon the resignation, death, incapacity, or removal of a PFI Trustee, and after an affirmative vote of 2/3s of the members of the Board of Advisors at a Non-Emergency Meeting, the Board of Advisors shall appoint a successor PFI Trustee to fill the vacancy so created, subject to the approval of this Court so long as any of the Chapter 11 Cases are pending. As such, the Plan's provisions regarding the appointment of any successor PFI Trustee satisfy the requirements of section 1123(a)(7).

-11-

Case: 20-30604 Doc# 650 Filed: 05/07/21 Entered: 05/07/21 12:42:10 Page 18 of 43

> h.     *Section 1123(a)(8) Does Not Apply.*

Bankruptcy Code Section 1123(a)(8) contains requirements applicable to individual debtor cases which do not apply to this corporate debtor.

> i.     *Compliance With Bankruptcy Code Section 1123(b) (Permissive Plan Provisions).*

Bankruptcy Code Section 1123(b) describes various other provisions that are permitted in a plan. The Plan contains a number of these provisions, all of which are intended to facilitate the reorganization of the Debtors and payment to creditors. These include the following:

- In Article 1, the Plan treats the (i) Non-Investor First-Priority Lender Claims (Class 1), (ii) DOT Noteholder Claims (Class 4), (iii) Non-DOT Investor Claims (Class 5), (iv) TIC Claims, (Class 6), (v) Other Unsecured Claims (Class 7), (vi) Other Subordinated Claims (Class 8), and (vii) Equity Interests (Class 9) as impaired, but leaves the (i) Non-Investor Other Secured Claims (Class 2) and (ii) Priority Claims (Class 3) unimpaired, all as permitted by Section 1123(b)(1).

- In Article V, the Plan assumes all executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements assigns such contracts and leases to the PFI Trust or the OpCo, as appropriate, as permitted by Section 1123(b)(2) of the Bankruptcy Code.

- In Section 10.10, the Plan provides that (i) from and after the Effective Date, the PFI Trust may compromise and settle certain disputes about any Claims or about any PFI Trust Actions, without any further approval by this Court, subject to the terms and conditions of the PFI Trust Agreement and (ii) until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of this Court) any Avoidance Actions and Causes of Action belonging to the Estates, as permitted by Section 1123(b)(3) of the Bankruptcy Code.

- Section 4.3.5(g) of the Plan provides that, under the conditions set forth therein, the PFI Trustee shall have the authority and right on behalf of the PFI Trust, without the need for this Court's approval, to, among other things, sell, monetize, assign or otherwise dispose of the PFI Trust Assets or the OpCo Assets (including, without limitation, any Real Properties) or any part thereof or interest therein upon such terms as the PFI Trustee determines to be necessary, appropriate, or desirable, subject to the provisions of the PFI Trust Agreement, as permitted by Section 1123(b)(4) of the Bankruptcy Code.

- Bankruptcy Code section 1123(b)(5) provides that a plan may "modify the rights of holders of secured claims . . . or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5). As set forth in Article II of the Plan, the Plan modifies the rights of the holders of allowed Claims and Interests in Classes 1, 4, 5, 6, 7, 8, and 9. The Plan leaves unaffected the rights of the holders of allowed Claims in Class 2 and Class 3. Pursuant to the Plan, interests of PFI LLC Members in the PFI-Managed LLC and LP Interest Holders are automatically recharacterized as Class 5 Non-DOT Investor Claims (and are not treated as Equity Interests). This is permissible as this Court has entered an Order approving a stipulation that the Debtors were part of a "Ponzi scheme, *see* Dkt. No. 640, and limited partners or LLC members that invest in such a scheme actually receive restitution claims when they purchase their fraudulent LP

or LLC interest.  *See Barclay v. Mackenzie (In re AFI Holding, Inc.)*, 525 E3d 700, 708-09 (9th Cir. 2008).[6]

**B.** **The Plan Proponents Have Complied With The Requirements Of Bankruptcy Code Section 1129(a)(2) (Compliance With Applicable Provisions of Title 11).**

Bankruptcy Code Section 1129(a)(2) requires that the proponent of the plan also comply with "the applicable provisions" of title 11.  11 U.S.C. § 1129(a)(2).  The "applicable provisions" of title 11 are Bankruptcy Code Section 1121 (dealing with who may file a plan) and Bankruptcy Code Section 1125 (dealing with the solicitation of acceptances of a plan).  *See In re Hoff*, 54 B.R. 746, 750-51 (Bankr. D.N.D. 1985); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

1.  Compliance With Bankruptcy Code Section 1121(a) (Who May File a Plan).

Bankruptcy Code section 1121 allows a debtor to propose a plan at any time in a voluntary bankruptcy case or an involuntary bankruptcy case.  Bankruptcy Code section 1121 also allows a creditor under certain circumstances to propose a plan.  Here, the Proponents of the Plan are the Debtors and the OCUC.  Thus the proposal of the Plan complies with Section 1121(c).

2.  Compliance With Bankruptcy Code Section 1125 (Post-petition Disclosure and Solicitation).

One of the principal purposes of Bankruptcy Code Section 1129(a)(2) is to ensure that plan proponents have complied with the requirements of Bankruptcy Code Section 1125 in the solicitation of acceptances of a plan of reorganization.  *See, e.g., In re Jeppson*, 66 B.R. 269, 296-97 (Bankr. D. Utah 1986).  Bankruptcy Code Section 1125(b) provides that a proponent may not solicit acceptances of its plan unless, at or before the time of such solicitation, there is transmitted to the claimant, or the authorized representative thereof, the plan or a summary of the plan and a court-approved disclosure statement.

The Plan Proponents have fully complied with the mandates of Section 1125.  Pursuant to the Solicitation Procedures Order, the Court, among other things, (i) conditionally approved the Disclosure Statement as containing adequate information within the meaning of Section 1125, (ii) approved the Proponents' Plan Summary, among other items, as part of the solicitation package to

---

[6]  The fact that the PFI LLC Members and the LP Interest Holders actually have restitution claims means that including the PFI LLC Members and LP Interest Holders' claims in Class 5 does not raise an absolute priority issue as such claims are not actually junior to Class 5.

-13-

Case: 20-30604  Doc# 650  Filed: 05/05/24  Entered: 05/05/24  Page 20 of 43

1   be distributed for the solicitation of votes to accept or reject the Plan (the "<u>Solicitation Package</u>"),

2   and (iii) authorized the Proponents to post the Plan and Disclosure Statement on Donlin Recano's

3   PFI website in a dedicated location, with instructions provided in the Solicitation Package for

4   accessing them, rather than including a hard copy of each in the Solicitation Package.

5   Subsequently, in compliance with Bankruptcy Rule 3017(d), between April 22-23, 2021, the Plan

6   Proponents transmitted the Solicitation Package to creditors and equity holders entitled to vote on

7   the Plan.  The certificate of service regarding the distribution of the solicitation package has been

8   filed with this Court as Docket No. 608.  The Solicitation Package provided notice of the

9   deadlines to (i) submit a ballot on the Plan and (ii) object to confirmation of the Plan.

10          The Plan Proponents have complied with the applicable provisions of the Bankruptcy

11  Code, the Bankruptcy Rules and the solicitation procedures approved by this Court, and thus the

12  Plan complies with the requirements of Bankruptcy Code Section 1129(a)(2).

13  **C.**      **The Plan Satisfies the Other Consensual Plan Requirements of Section 1129(a), with the Exception of Section 1129(a)(8) as to Certain Subclasses of Class 1.**

14

15          1.       <u>The Plan Has Been Proposed In Good Faith In Compliance With Bankruptcy Code Section 1129(a)(3).</u>

16          Bankruptcy Code Section 1129(a)(3) requires a plan to be "proposed in good faith and not

17  by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  Good faith for purposes of Section

18  1129(a)(3) of the Bankruptcy Code also may be found where the plan is supported by key creditor

19  constituencies, or was the result of extensive arm's-length negotiations with creditors.  *In re*

20  *Eagle-Picher Indus., Inc*., 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996).

21          From the facts and the circumstances of this case, it is evident that the Plan Proponents

22  have proposed the Plan in good faith.  Here, the Plan is the result of extensive negotiations

23  between the Debtors and the Committees.  The Plan was jointly prepared and submitted by the

24  Debtors and the OCUC and is supported by the Ad Hoc Committees.  Because the Plan was

25  heavily negotiated and reflects the input of key creditor constituencies, nearly 99.8% of voting

26  creditors accepted the Plan.  For these reasons, it is clear the Plan was proposed in good faith

27  under Bankruptcy Code section 1129(a)(3).

28

-14-

SMRH:4849-9944-9675.5      MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

Case: 20-30604    Doc# 650    Filed: 05/10/21    Entered: 05/10/21 14:29:14    Page 21 of
43

2. **The Plan Complies With The Requirements Of Bankruptcy Code Section 1129(a)(4) (Payment for Services or Costs in Connection With the Case).**

Bankruptcy Code Section 1129(a)(4) requires payments to estate professionals to be approved by this Court or subject to this Court's approval. Section 10.3 of the Plan provides that all final requests for payment of Professional Fee Claims "must be made by application Filed with the Bankruptcy Court." Thus the Plan complies with Section 1129(a)(4).

3. **The Plan Complies With Bankruptcy Code Section 1129(a)(5) Regarding the Identity and Affiliations of Officers, Directors, and Insiders.**

Pursuant to Bankruptcy Code Section 1129(a)(5)(A)(i), a proponent of a plan must disclose the identity and affiliations of the debtor's post-confirmation management. Exhibit B to the Plan Supplement discloses the identity and affiliations of the PFI Trustee as well as each of the members of the Board. Section 1129(a)(5) is thus satisfied.

4. **The Plan Complies With Bankruptcy Code Section 1129(a)(6) Regarding Governmental Regulatory Approval of Rates.**

Section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates of the debtor approve any changes in rates provided in the plan. *See* 11 U.S.C. § 1129(a)(6). This is not applicable here; no such regulatory commission exists.

5. **The Plan Satisfies the Requirements Of Bankruptcy Code Section 1129(a)(7) ("Best Interests" Test).**

The "best interests" test set forth in Section 1129(a)(7) requires that the plan proponent demonstrate that:

with respect to each impaired class of claims or interests –

(A) each holder of a claim or interest of such class –

(i) has accepted the plan, or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . .

11 U.S.C. § 1128(a)(7). The "best interests" test focuses on individual dissenting creditors rather than classes of claims. *See, In re Drexel Burnham Lambert Group*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992). On its face, Section 1129(a)(7) only applies to impaired and classified claims or interests. It does not, therefore, apply to unimpaired or unclassified claims.

-15-

In this case, more than ninety-nine percent (99%) of impaired claimants that voted accepted the Plan, satisfying the best interests test under subpart (A)(i) above. However, some claimants in Class 4 and Class 5 voted to reject the Plan and a number of impaired claimants that were entitled to vote did not do so and are thus deemed to have rejected the Plan. For the claimants that either voted to reject the Plan or are deemed to have rejected the Plan, the best interests test needs to be satisfied under subpart (A)(ii) above.

Here, the liquidation analysis is simple and set forth in <u>Exhibit C</u> to the Disclosure Statement [Docket No. 572]. The Plan assumes both the ultimate sale of the Real Properties and pursuit of the Avoidance Actions, Causes of Action and Contributed Claims. Using two different sets of assumptions regarding the success and expense of the foregoing, the Plan Proponents believe that the Plan will provide holders of Allowed Class 4 and 5 Investor Restitution Claims[7] (which, for investors, will be their claim remaining after "netting"), Allowed Class 6 TIC Claims, and Allowed Class 7 Other Unsecured Claims with aggregate dividends over a period of years totaling 35% for the low estimate and 50% for the high estimate.[8]

In contrast, the Proponents believe that the dividends realized in a Chapter 7 liquidation would be substantially lower – primarily because of (a) the potentially accelerated pace of sales of the Real Properties likely to occur in a Chapter 7 liquidation; and (b) the statutory fee due to the Chapter 7 trustee for services in liquidating the assets. In addition, Conversion to chapter 7 of the Bankruptcy Code would mean the establishment of a new claims bar date, which could result in new Claims being asserted against the Estates, thereby diluting the recoveries of other Holders of Allowed Claims. Significantly, the benefits of the Investor Claims Special Provisions, the terms of which are substantially incorporated into the Plan, are available only under the Plan. The Plan embodies a comprehensive, extensively negotiated settlement and compromise of myriad novel and complex legal and factual issues relating to the Investors of the Debtors. In the event of

---

[7] To the extent that any Class 5 claimants whose Claims are based on their status as a PFI LLC Member or as an LP Interest Holder either voted to reject the Plan or are deemed to have rejected the Plan, such claimants have an Investor Restitution Claim. *See In re AFI Holding, Inc.*, 525 E3d 708-09.

[8] The foregoing estimates do not take into account the potential effect of capital gains taxes that would be due upon sale of the Real Properties by the PFI Trust, as the Plan Proponents' examination of that subject is ongoing (and as yet incomplete). Such taxes would reduce the foregoing projected percentage dividends.

-16-

conversion, the Chapter 7 trustee, Investors, and other creditors would have to confront the pursuit of extensive litigation to resolve these and other issues, or would need to try to negotiate an alternative settlement, all without the benefit of committee representation for creditors. This process would be extremely time-consuming and costly, and would very likely reduce and delay any recoveries available for creditors of the Estates. Accordingly, in a Chapter 7 liquidation, the Proponents believe general unsecured creditors would receive substantially less over time: 25% estimated low case and 35% estimated high case.

Another advantage of the Plan over a Chapter 7 liquidation is the likely ability of LLC and LP investors to avoid paying pass-through capital gains taxes when the Real Properties are sold. Such taxes are generally not expected to pass through to LLC and LP investors under the Plan. Accordingly, the Proponents believe the Plan is likely to produce an outcome significantly better than what could be expected in a Chapter 7 liquidation. Section 1129(a)(7) is therefore satisfied.

      6.    <u>Each Class of Claims and Interests has Accepted the Plan, is Unimpaired, or May be Crammed Down – Sections 1129(a)(8) and 1129(b).</u>

Bankruptcy Code Section 1129(a)(8) requires that each class of claims and interests has either accepted the plan or is not impaired under the plan. *See* 11 U.S.C. § 1129(a)(8). A class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of claims of that class vote to accept the plan, counting only those claims whose holders actually vote on the plan. *See* 11 U.S.C. § 1126(c). If a class of creditors or interests holders does not accept the Plan, then section 1129(b) of the Bankruptcy Code provides that a plan may be confirmed if it does not discriminate unfairly and is fair and equitable with respect to each class that is impaired under the plan and has not accepted the Plan. <u>See</u> 11 U.S.C. § 1129(b).

The following analysis demonstrates that each Class has accepted the Plan, is not impaired or satisfies the requirements for cram down confirmation:

<u>Class 1 (Non-Investor First-Priority Lender Claims)</u>: Class 1 is impaired and entitled to vote. As set forth in the Final Tabulation Results, each subclass of Class 1 that voted submitted a ballot accepting the Plan. No subclass of Class 1 voted to reject the Plan, but twelve of the twenty subclasses in Class 1 did not submit (or did not timely submit) a ballot as shown in <u>Exhibit A</u> to the Burlacu Declaration. To the extent any subclass of Class 1 cannot be deemed to accept, the

-17-

Case: 26-30604-97   Doc# 650   Filed: 05/08/25   Entered: 05/08/25 21:14   Page 24
SMRH:4931-9144-9675.5
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

1    Plan can nevertheless be confirmed with respect to any such subclass(es) because it satisfies the

2    requirements of section 1129(b)(1).

3           Under the Plan, no other Class is set to receive more favorable treatment than Class 1.  In

4    addition, the Holders of all Class 1 Claims are substantially oversecured, based on the mortgage

5    balance for each of the Real Properties and the broker's opinion of value for each of the Real

6    Properties obtained by the Debtors prior to the bankruptcy cases  [*See* Dkt. Nos. 296 and 414].

7    The Plan, therefore, does not unfairly discriminate against Class 1.

8           The Plan also satisfies the condition that it be fair and equitable with respect to secured

9    claims, as such condition is set forth in 11 U.S.C. § 1129(b)(2)(A).  Under the Plan, the Liens of

10   the Holders of Class 1 Claims will continue to attach to their respective Collateral and all Class 1

11   claimants shall, on or as soon as is reasonably practicable after the Effective Date, receive either:

12   (i) in the event of a sale or refinance concerning the Collateral, cash in the Allowed Amount of

13   such Holder's Class 1 Claim immediately paid from escrow, (ii) the return, by deed in lieu of

14   foreclosure, surrender, or termination of any stay, of the Collateral securing such Class 1 Claim, or

15   (iii) past due installments of principal or interest and the continuation thereafter of payments of

16   principal, interest, and other applicable obligations, all as more fully set forth in the Plan.

17          Class 2 (Non-Investor Other Secured Claims) and Class 3 (Priority Claims):  Class 2 and

18   Class 3 are unimpaired and each is thus conclusively presumed to have accepted the Plan.  See 11

19   U.S.C. § 1126(f).

20          Class 4 (DOT Noteholder Claims):

21          Class 4 is impaired and entitled to vote.  As set forth in the Final Tabulation Results, each

22   subclass of Class 4 that voted, submitted a ballot accepting the Plan.   As set forth in Exhibit A to

23   the Burlacu Declaration, the following thirteen subclasses of Class 4, however, did not submit (or

24   did not timely submit) a ballot: 4A6, 4A8, 4A12, 4A14-4A19, 4A22, 4A32, 4B2, and 4B25.  To

25   the extent any subclass of Class 4 cannot be deemed to accept, the Plan can nevertheless be

26   confirmed with respect to any such subclass(es) because it satisfies the requirements of section

27   1129(b)(1).  No one has alleged that the Plan discriminates unfairly against Class 4 claims (or any

28   other claims) and the fact that of the 806 Class 4 ballots that were cast, only two voted to reject the

-18-

Case: 26-30604   Doc# 650   Filed: 05/02/24   Entered: 05/02/24 12:33:26   Page 25 of
43

Plan clearly shows that Class 4 claimants do not feel they are the subject of such discrimination.[9] The Plan also treats Class 4 claimants fairly and equitably. For those Class 4 claimants that have not released their Lien, the Plan provides a means for their Lien to be preserved if such claimants take the steps to do so set forth in the Plan. For those 762 Class 4 claimants that have released their Lien, their claims are treated *pari passu* with the other classes of unsecured claims.

Class 5 (Non-DOT Investor Claims): Class 5 is impaired and entitled to vote. As set forth in the Final Tabulation Results, Class 5 voted to accept the Plan pursuant to 11 U.S.C. § 1126(c).

Class 6 (TIC Claims): Class 6 is impaired and entitled to vote. As set forth in the Final Tabulation Results, Class 6 voted to accept the Plan pursuant to 11 U.S.C. § 1126(c).

Class 7 (Other Unsecured Claims): Class 7 is impaired and entitled to vote. As set forth in the Final Tabulation Results, Class 7 voted to accept the Plan. As such, Class 7 has accepted the Plan pursuant to 11 U.S.C. § 1126(c).

Class 8 (Subordinated Claims): Class 8 is impaired and deemed to reject the Plan. The Plan can nevertheless be confirmed because it satisfies the requirements of section 1129(b)(1) with respect to Class 8. The Plan does not unfairly discriminate against Class 8 claimants because there is no class of the same priority that receives better treatment under the Plan. Moreover, under the Plan, (i) the Holders of Allowed Class 8 Claims retain a residual right to receive Available Cash that remains in the PFI Trust after the final administration of all PFI Trust Assets and OpCo Assets, and the complete satisfaction of all senior payment rights within the PFI Trust Interests Waterfall, including satisfaction of all Investor Subordinated Claims and (ii) the only Class that is junior to Class 8 under the Plan (Class 9 Equity Interests), receives nothing and all Equity Interests are deemed void, cancelled, and of no further force and effect. As such, the Plan is fair and equitable with respect to Class 8 Claims under the terms of 11 U.S.C. § 1129(b)(2)(B).

Class 9 (Equity Interests): Class 9 is impaired and deemed to reject the Plan. The Plan can nevertheless be confirmed because it satisfies the requirements of section 1129(b)(1) with respect to Class 9. The Plan does not unfairly discriminate against Class 9 claimants because there is no other class of interests that receives better treatment under the Plan. Moreover, there is no class

---

[9] Of the timely Class 4 ballots received 797 voted to accept the Plan, 2 voted to reject, and 9 abstained.

1  junior to Class 9 under the Plan and, as such, the Plan is fair and equitable with respect to Class 9

2  Claims under the terms of 11 U.S.C. § 1129(b)(2)(C).

3         7.     The Plan Complies With Bankruptcy Code Section 1129(a)(9).

4        Bankruptcy Code Section 1129(a)(9) provides generally that (i) administrative claims and

5  involuntary gap claims must be paid in full on the effective date of a plan, and (ii) priority tax

6  claims may be paid in full on the effective date of the plan or in installments over a period not

7  greater than five years.  *See* 11 U.S.C. § 1129(a)(9).

8        The Plan satisfies the requirements of Section 1129(a)(9).  Sections 2.1.1 and 2.1.3 of the

9  Plan provide that administrative claims and involuntary gap claims are to be paid in full on the

10  Effective Date.  Meanwhile, Section 2.1.4 provides that priority tax claims shall be paid either on

11  the Effective Date or in regular installments over a period not exceeding five years.

12         8.     The Plan Has Been Accepted By At Least One Impaired Class in Compliance With Bankruptcy Code Section 1129(a)(10).

13        Bankruptcy Code Section 1129(a)(10) requires at least one class of impaired claims to

14  have accepted the Plan, determined without including any acceptance of the Plan by an insider

15  holding a claim in such class.  *See* 11 U.S.C. § 1129(a)(10).  Once a single impaired class accepts

16  a plan, section 1129(a)(10) is satisfied as to the entire plan, even in jointly-administered cases

17  involving a plan covering multiple debtors.  *JPMCC 2007-C1 Grasslawn Lodging, LLC v.*

18  *Transwest Resort Props. (In re Transwest Resort Props.)*, 881 F.3d 724, 729 (9th Cir. 2018).  As

19  discussed above and as set forth in the Final Tabulation Results, Classes 5, 6, and 7 are all

20  impaired and have accepted the Plan.  In addition, Classes 1 and 4 are impaired and all subclasses

21  in Classes 1 and 4 that voted have voted to accept the Plan.  Section 1129(a)(10) is thus satisfied.

22         9.     The Plan is Feasible and in Compliance with Bankruptcy Code Section 1129(a)(11).

23        Bankruptcy Code Section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely

24  to be followed by the liquidation, or need for further financial reorganization, of the debtor or any

25  successor to the debtor under the plan, unless such liquidation is proposed in the plan."  11 U.S.C.

26  § 1129(a)(11).  This is sometimes referred to as the "feasibility test," and requires the Court to

27  determine whether the Plan is workable and has a reasonable likelihood of success.  *See In re*

28  *Patrician St. Joseph Partners*, 169 B.R. 669, 674 (Bankr. D. Ariz. 1994).  Feasibility does not, nor

-20-

can it, require the certainty that a reorganized company will succeed. *See, e.g., United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re WCI Cable, Inc.*, 282 B.R. 457, 486 (Bankr. D. Or. 2002) ("Guaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under § 1129(a)(11)."). The feasibility standard merely requires the Court to determine whether a plan is workable and has a reasonable likelihood (*i.e.*, more likely than not) of success. *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986).

Here, the Plan is feasible because it does not make pie in the sky promises, but instead only provides for payment to creditors from the Available Cash and any additional proceeds from the PFI Trust Assets with a projected potential dividend in excess of 30 cents on the dollar. Thus, confirmation of the Plan is not likely to be followed by the need for further reorganization.

10. <u>The Debtor Will Pay on or Before the Effective Date All Fees Payable Under 28 U.S.C. § 1930 in Compliance With Bankruptcy Code Section 1129(a)(12).</u>

Bankruptcy Code Section 1129(a)(12) requires the payment of "[a]ll fees payable under Section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12). The Plan complies with Section 1129(a)(12) by providing in Section 10.4 that all U.S. Trustee fees payable pursuant to 28 U.S.C. Section 1930 shall be paid in full on or before the Effective Date.

11. <u>Section 1129(a)(13) Regarding Retiree Benefits Does Not Apply.</u>

Bankruptcy Code Section 1129(a)(13) requires a corporate debtor with a retirement plan to continue funding retiree benefits. This does not apply in this case, where the Debtors did not have a retirement plan pre-petition.

12. <u>Section 1129(a)(14) Regarding Domestic Support Obligations Does Not Apply.</u>

Bankruptcy Code Section 1129(a)(14) sets forth certain requirements with respect to the payment of domestic support obligations by individual debtors. This does not apply here as the Debtors are corporations, limited liability companies or limited partnerships.

13. <u>Section 1129(a)(15) Does Not Apply.</u>

Bankruptcy Code Section 1129(a)(15) sets forth certain requirements with respect to the distributions to unsecured claimants in the event that a holder of an allowed unsecured claim

Case: 20-30604   Doc# 650   Filed: 05/20/22   Entered: 05/20/22 14:24:17   Page 28 of 43

objects to the plan in an individual case. This section does not apply as the Debtors are corporations, limited liability companies or limited partnerships.

14. The Plan Complies With Bankruptcy Code Section 1129(d) Because The Principal Purpose Of The Plan Is Not To Avoid Taxes Or Applicable Securities Laws.

Bankruptcy Code Section 1129(d) provides:

> Notwithstanding any other provision of this Section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

11 U.S.C. § 1129(d). Here, the principal purpose of the Plan is not to avoid taxes or the securities laws. No governmental party in interest has requested the denial of confirmation on any of the foregoing grounds (or indeed on any grounds). Accordingly, the Plan satisfies Section 1129(d).

**D. Substantive Consolidation is Appropriate and Necessary to the Plan**

The Plan provides for substantive consolidation of the Debtors' and their non-debtor affiliates' assets and liabilities for the purposes of distributions under the Plan. To help accomplish this, on April 29, 2021, the Debtors filed their *Motion for Order of Substantive Consolidation of Non-Debtor Affiliates Professional Investors 28, LLC and PFI Glenwood, LLC with Debtors* (the "Subcon Motion"), which motion seeks to substantively consolidate LLC 28 and PFI Glenwood with the Debtors' bankruptcy estate pursuant to the terms set forth in the Plan. No objection to the Subcon Motion was filed prior to the May 13, 2021 deadline to do so.

Here, substantive consolidation of the Debtors with each other and of the Debtors with LLC 28 and PFI Glenwood is clearly warranted. The primary purpose of substantive consolidation "is to ensure the equitable treatment of all creditors." *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 764 (9th Cir. 2000). Courts have permitted the consolidation of non-debtor and debtor entities in furtherance of the equitable goals of substantive consolidation. *Id.* at 765. Two broad themes have emerged from substantive consolidation case law: in ordering substantive consolidation, courts must (1) consider whether there is a disregard of corporate formalities and commingling of assets by various entities; and (2) balance the benefits that substantive consolidation would bring against the harms that it would cause. *Id.*

-22-

Although creditors generally may not have treated all of the Debtors and their non-debtor affiliates as one legal entity, there is very substantial scrambling and commingling of assets and liabilities between and among the Debtors themselves and between and among the Debtors and the two non-debtor affiliates – Professional Investors 28, LLC ("LLC 28") and PFI Glenwood LLC ("PFI Glenwood").  As more fully described in the *Declaration of David Alfaro* filed on April 29, 2021 as Dkt. No. 595 (the "Alfaro Declaration"), (i) funds were transferred to-and-from based on cash needs across the overall PFI Enterprise (as defined in the Alfaro Declaration, which definition encompasses LLC 28 and PFI Glenwood) and every individual property within the PFI Enterprise periodically received transfers to its bank accounts from PFI/PISF bank accounts and periodically transferred cash to PFI/PISF bank accounts, (ii) the organizational structure and movements of cash within the PFI Enterprise involved pervasive transfers of cash between and across the property specific entity bank accounts and the PFI/PISF corporate bank accounts—rendering the segregation of each investor's dollars impossible, (iii) intercompany activity was generally not transacted directly between the individual properties, but rather through the pooling of funds at the PFI/PISF corporate level and then redistributing the cash needed to the individual properties, (iv) funds were commonly commingled during the property purchasing cycle and during each property's operating cycle, and (iv) the investments and financial transactions specific to LLC 28 and PFI Glenwood are inextricably entangled with those of the other entities within the PFI Enterprise.[10]  These circumstances clearly show a disregard of corporate formalities and the commingling of the assets of the Debtors, LLC 28, and PFI Glenwood.

Similarly, the evidence is overwhelming that the benefits of substantive consolidation outweigh any harm that might be caused.  The Plan represents a negotiated settlement between the Debtors' key Investor constituencies and substantive consolidation is a key component of that settlement.  Such consolidation is broadly supported by the Investors and the Debtors other creditors as shown by the fact that no party objected to the SubCon Motion and that nearly 99.8% of ballots cast voted to accept the Plan.

---

[10]   The entire Alfaro Declaration is hereby incorporated into this Memorandum as if fully set forth herein.

-23-

Case: 20-30604   Doc# 650   Filed: 05/10/21   Entered: 05/10/21 12:14:44   Page 30 of 43

In addition, the only outside Investor in LLC 28 (The Belline Family Trust dated February 20, 2015) is party to a stipulation with the Debtors and the OCUC filed on May 12, 2021 as Dkt. No. 628 (the "Stipulation") in which it agrees, among other things, that it would not oppose confirmation of the Plan and that it would vote its ballots pertaining to investments in the Debtors in favor of the Plan. This Court entered an order approving the Stipulation on May 12, 2021 as Dkt. No. 630 and the The Belline Family Trust timely voted its ballots to accept the Plan.

Similarly, the only outside Investor in PFI Glenwood, Peter Zabelin, timely voted his ballots pertaining to investments in the Debtors in favor of the Plan.

This level of support for the Plan by all the key Investors that would be most affected by substantive consolidation is resounding evidence that the benefits that substantive consolidation outweigh its potential harms.

## IV. CONCLUSION

For the reasons stated above, the Plan meets all of the requirements of Bankruptcy Code section 1129 and should be confirmed. The Plan Proponents request the Court to issue an order confirming the Plan in the form attached hereto as Exhibit A.

Dated:  May 20, 2021    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _/s/ Ori Katz_
      Ori Katz
      J. Barrett Marum

      Attorneys for the Debtors


Dated:  May 20, 2021    PACHULSKI STANG ZIEHL & JONES LLP


By    _/s/ Debra Grassgreen_
      Debra Grassgreen
      John D. Fiero
      Cia H. Mackle

      Attorneys for the Official Committee of
      Unsecured Creditors

-24-

SMRH:4853-9944-9675.5    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

Case: 20-30604    Doc# 650    Filed: 05/20/21    Entered: 05/20/21 12:24:14    Page 31 of 43

**EXHIBIT A**

2

**(Proposed Order Confirming Plan)**

3  Ori Katz (CA Bar No. 209561)
   J. Barrett Marum (CA Bar No. 228628)
4  Matt Klinger (CA Bar No. 307362)
   SHEPPARD, MULLIN, RICHTER & HAMPTON
5  LLP
   Four Embarcadero Center, 17th Floor
6  San Francisco, CA 94111-4019
   Telephone:    (415) 434-9100
7  Facsimile:    (415) 434-3947
   Email:    okatz@sheppardmullin.com
8            bmarum@sheppardmullin.com
             mklinger@sheppardmullin.com
9
   *Counsel to Debtors and Debtors in Possession*

   Debra I. Grassgreen (CA Bar No. 169978)
   John D. Fiero (CA Bar No. 136557)
   Cia H. Mackle (admitted *pro hac vice*)
   PACHULSKI STANG ZIEHL & JONES
   LLP
   150 California Street, 15th Floor
   San Francisco, CA  94111
   Telephone:    (415) 263-7000
   Facsimile:    (415) 263-7010
   E-mail:    dgrassgreen@pszjlaw.com
              jfiero@pszjlaw.com
              cmackle@pszjlaw.com
   *Counsel to the Official Committee of
   Unsecured Creditors*

10

11  **UNITED STATES BANKRUPTCY COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA**

13  **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 14  In re: | Chapter 11 |
| 15  PROFESSIONAL FINANCIAL INVESTORS, INC., *et al.*, | Case No. 20-30604 |
| 16 | (Jointly Administered) |
| 17                    Debtors. | **[PROPOSED] ORDER CONFIRMING SECOND AMENDED JOINT CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND SUPPORTED BY THE AD HOC LLC MEMBERS COMMITTEE AND THE AD HOC DOT NOTEHOLDERS COMMITTEE (DATED MAY 20, 2021)** |

18

19

20

21

22

23      Plan Confirmation Hearing:
        Date:    May 27, 2021
24      Time:    10:00 a.m. (Pacific Time)
        Place:   **Telephonic/Video Appearances Only**
25               450 Golden Gate Avenue, 16th Floor
                 San Francisco, CA 94102
26       Judge:   Hon. Hannah L. Blumenstiel

27

28

SMRH:4816-0944-9675   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                      CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

On May 27, 2021, at approximately 10:00 a.m., this Court held a hearing (the "Confirmation Hearing") on confirmation of the *Second Amended Joint Plan of Professional Financial Investors, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee (Dated May 20, 2021)* filed on May 20, 2021 (as amended or modified to date, the "Plan") by plan proponents Professional Financial Investors, Inc. ("PFI") and its affiliated debtors and debtors in possession (collectively, with PFI, the "Debtors")[11] and the Official Committee of Unsecured Creditors (the "OCUC" and together with the Debtors, the "Proponents").

The Court, having considered the Plan, all declarations, pleadings, and evidence submitted in support of the Plan; the *Limited Objection of Christina Ensign, Felix Arts and Carol Sue Sproule to Confirmation of Chapter 11 Plan* filed on May 13, 2021, as Docket No. 636 (the "Limited Objection"); all other relevant facts, pleadings, and evidence of record in the Chapter 11 Cases; and the arguments of counsel at the Confirmation Hearing, issued detailed findings of fact and conclusions of law on the record at the Confirmation Hearing, which constitute the Court's findings of fact and conclusions of law for the purposes of Federal Rule of Bankruptcy Procedure 7052, as made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014, and which findings of fact and conclusions of law are incorporated herein by this reference.

For the reasons stated by the Court on the record at the Confirmation Hearing, and for good cause appearing therefore,

**IT HAS BEEN DETERMINED BY THE COURT THAT:**

**A.    Jurisdiction and Venue.**  This Court has jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§ 1334 and 157. The Confirmation Hearing is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and venue of the Bankruptcy Case in the Northern District of California is proper under 28 U.S.C. § 1408.

---

[11]    A complete list of the Debtors and their respective chapter 11 case numbers may be found at www.donlinrecano.com/pfi. The federal tax identification numbers of each of the Debtors is also available in the bankruptcy petitions of each Debtor, also available at the Donlin Recano website.

1    **B.    Notice of Confirmation Hearing.**  Due and sufficient notice of the Confirmation

2    Hearing has been provided under the circumstances and under applicable rules and consistent with

3    the requirements imposed by this Court in its *Order (I) Approving the Plan Summary and*

4    *Conditionally Approving Disclosure Statement; (II) Scheduling Combined Hearing on Approval of*

5    *Disclosure Statement and Confirmation of Plan and Approving the Form and Manner of Service*

6    *of the Combined Hearing Notice; (III) Establishing Non-Investor Bar Dates for Filing Proofs of*

7    *Claim; (IV) Approving Form and Manner of Notice of Non-Investor Bar Dates; (V) Establishing*

8    *Procedures for the Solicitation and Tabulation of Votes on Plan; and (VI) Approving Related*

9    *Matters* entered on April 9, 2021, as Docket No. 575 (the "Solicitation Procedures Order").

10   **C.    Voting on Plan.**  The Solicitation Procedures Order fixed May 13, 2021, at 4:00

11   p.m. Pacific Time as the deadline to submit ballots to accept or reject the Plan. The Proponents

12   have tabulated the ballots received, as evidenced by the Declaration of John Burlacu filed on May

13   20, 2021 as Dkt. No. [_____] (the "Burlacu Declaration") and the Final Tabulation Results

14   attached as Exhibit A thereto (the "Final Tabulation Results").  As set forth in the Burlacu

15   Declaration, out of 2,193 timely ballots cast, a total of 2,188 voted to accept the Plan and only five

16   (5) voted to reject the Plan.

17   **D.    Objections.**  No formal objections to the Plan other than the Limited Objection

18   were filed.

19   **E.    Compliance with Confirmation Requirements of Bankruptcy Code Sections**

20   **1123, 1129, 1181, 1190 and 1191.**  The Plan, as modified by this Order, complies with the

21   applicable requirements of sections 1123, 1129, 1181, 1190, and 1191 of the Bankruptcy Code,

22   which set forth the conditions necessary for confirmation.  In particular, the Plan is fair and

23   equitable pursuant to Bankruptcy Code sections 1191(b) and (c).

24   **F.    Settlement of Claims and Controversies**.  Pursuant to Bankruptcy Code sections

25   1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for

26   the Distributions and other benefits provided under the Plan, the provisions of the Plan constitute a

27   good faith compromise and settlement of all claims and controversies relating to the rights that a

28   Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim,

-3-

Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims, Intercompany Liens, and Causes of Action against any Debtor. The compromise and settlement of all such claims or controversies are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable

**G.** Based upon the record of the Confirmation Hearing, all the proceedings held before this Court in these Bankruptcy Cases, and the foregoing findings of fact and conclusions of law,

**IT IS HEREBY ORDERED THAT:**

**A. Confirmation of the Plan**

1. The Plan and each of its provisions (whether or not specifically approved herein) is hereby APPROVED and CONFIRMED in all respects, as modified herein; *provided, however,* that if there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control. All objections and responses to, and statements regarding, the Plan, to the extent that they have not been withdrawn, waived, or settled prior to the entry of this Order or are not cured by the relief granted herein, are hereby expressly overruled.

2. The Limited Objection is OVERRULED in its entirety.

**B. Conditions Precedent**

3. The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the conditions set forth in Section 8.1 of the Plan have been satisfied or duly waived pursuant to Section 8.2 of the Plan

4. Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 7062 and 9014, this Order is not subject to any stay, and the Plan shall become effective at the option of the Debtors at any time in their sole discretion following (i) entry of this Order, and (ii) satisfaction of the requirements set forth in the preceding paragraph 3 of this Order.

**C. Successors and Assigns**

5. The terms of this Order are binding on the Debtors, any and all holders of Claims and Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have acted or rejected the Plan), any and all non-debtor parties to executory contracts and unexpired leases with

-4-

the Debtors and any and all entities who are parties to or are subject to the settlements, compromises, releases, discharges and injunctions set forth in the Plan and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

**D.      Substantive Consolidation**

6.      On the Effective Date, PFI, PISF, the LLC/LP Debtors, Professional Investors 28, LLC, and PFI Glenwood LLC (collectively, the "Consolidated Estates") shall be substantively consolidated pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code.  As a result of such substantive consolidation, on the Effective Date, all property, rights and claims of the Consolidated Estates and all Claims against the Consolidated Estates shall be deemed to be pooled for purposes of distributions under the Plan and, in the PFI Trustee's discretion, other purposes. Further, as a result of such substantive consolidation, all claims between and among the Consolidated Estates shall be cancelled, subject to any Alternative Restructuring Transactions; provided, however, that (i) while all Debtors shall be substantively consolidated for purposes of distribution to creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the PFI Trust, and subject to any Alternative Restructuring Transactions, and (ii) any and all TIC Interests in the Real Properties that are held by any Debtor shall not be substantively consolidated.

**E.      Vesting of Assets**

7.      On the Effective Date, and subject to Section 2.2 of the Plan, the PFI Trust shall be automatically vested with all of the Debtors' and the Estates' respective rights, title, and/or interest in and to all PFI Trust Assets, and the OpCo shall be automatically vested with all of the Debtors' and the Estates' respective rights, title and/or interest in and to all OpCo Assets.  Except as specifically provided in the Plan or this Order, in accordance with Bankruptcy Code section 1141, the PFI Trust Assets, the OpCo Assets and any other assets shall automatically vest in the PFI Trust and the OpCo, as applicable, free and clear of all Claims, Liens, or interests (including, without limitation, any and all DOT Noteholders' Deeds of Trust), subject only to the PFI Trust Interests and the PFI Trust Expenses, as provided for in the PFI Trust Agreement, and such

vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The PFI Trustee shall be the exclusive trustee of the PFI Trust Assets (including all ownership interests in the OpCo) for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all PFI Trust Assets, the OpCo and the OpCo Assets. The PFI Trust shall hold and distribute the PFI Trust Assets and shall collect and distribute all proceeds from the operations and/or sale of the OpCo and the OpCo Assets in accordance with the provisions of the Plan and the PFI Trust Agreement.

**F.      Expungement of DOT Noteholder Liens**

8.      The liens of the DOT Noteholders shall be expunged from the record of the Real Properties, or the sale proceeds thereof, with such expungement to become effective with respect to each Real Property, or the sale proceeds thereof, on the later of the thirtieth (30th) day after entry of this Order or the date of entry of a final order adjudicating an Avoidance Action with respect to a lien on any given Real Property or the sale proceeds thereof. Any DOT Noteholder that wishes to challenge the expungement of its lien shall file an objection with this Court and serve its objection on the PFI Trustee and counsel for the Proponents and Ad Hoc Committees no later than twenty (20) days after entry of this Order. The Debtors or PFI Trustee, as applicable, shall file the Avoidance Action no later than thirty (30) days after service of any such objection.

**G.      Executory Contracts and Unexpired Leases**

9.      On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements, and shall assign such contracts and leases to the PFI Trust or the OpCo, as appropriate. The Debtors shall have the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date, in the Debtors' reasonable discretion after consultation with each of the Committees. The Debtors shall provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to those agreements affected by the amendment.

10.      On the Effective Date all executory contracts and unexpired leases of the Debtors shall be rejected except for (i) executory contracts and unexpired leases that have been previously

Case: 20-30604   Doc# 650   Filed: 05/05/22   Entered: 05/05/22 13:42:49   Page 37 of
SMRH:4894-9544-9675   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

assumed or rejected by the Debtors, (ii) all executory contracts and unexpired leases specified as to be assumed in paragraph 7 above (including all contracts and leases set forth in the Schedule of Assumed Agreements, as may be amended), and (iii) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not executory or a lease, but that is later determined by this Court to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365.

11. Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims. If one or more Rejection Claims are timely Filed pursuant to the Plan, the PFI Trust may object to any Rejection Claim on or prior to the Claim Objection Deadline. For the avoidance of doubt, the Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of this Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

## H. Preservation of Causes of Action

12. Except as otherwise provided in the Plan or the Order (including in the Investor Claims Special Provisions), from and after the Effective Date, the PFI Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, (a) any and all of the Debtors' or Estates' Causes of Action, (b) Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and (c) all Avoidance Actions, all as PFI Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Plan and the PFI Trust Agreement.

13. The PFI Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the PFI Trust Actions

-7-

SMRH:4892-9144-9675 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF SECOND AMENDED JOINT CHAPTER 11 PLAN

Case: 20-30604 Doc# 650 Filed: 05/27/22 Entered: 05/27/22 15:22:24 Page 38 of 43

without notice to or approval from this Court, subject to the PFI Trust Agreement. In accordance with the Plan, without any further notice to or action, order, or approval of this Court, from and after the Effective Date, the PFI Trust may compromise and settle PFI Trust Actions, subject to the PFI Trust Agreement.

14. The failure to specifically identify in the Disclosure Statement (including the exhibits and schedules thereto) or the Plan any potential or existing Avoidance Actions or Causes of Action as a PFI Trust Action shall not limit the rights of the PFI Trust to pursue any such Avoidance Actions or Causes of Action. Unless a PFI Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including this Order), the Debtors have expressly reserved such PFI Trust Actions for later resolution by the PFI Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). As such, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or this Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor, the PFI Trust, or the OpCo is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

**I.     Actions in Furtherance of the Plan**

15. The Proponents and the PFI Trustee are authorized to: (a) take any and all such actions as may be necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms as modified by this Order; and (b) execute any and all such documents and instruments as may be required to effectuate the Plan.

## J. Releases

16.     Any releases contained in the Plan are approved in all respects.  The commencement or prosecution by any entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan are permanently enjoined.

## K. Non-Discharge of the Debtors; Property Free and Clear

17.     In accordance with Bankruptcy Code section 1141(d)(3)(A), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan, including, without limitation, the Real Properties, is free and clear of all Claims and Equity Interests against the Debtors, except as otherwise provided with respect to the Non-Investor First-Priority Lenders in Section 2.2 of the Plan. As such, no Person holding a Claim (other than the Non-Investor First-Priority Lenders as provided in Section 2.2 of the Plan) or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan.

## L. Injunction

18.     As of the Effective Date, all Persons are precluded and barred from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, Equity Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or this Order.  The foregoing discharge, release and injunction are an integral part of the Plan and are essential to its implementation.

19.     Notwithstanding any provision in the Plan to the contrary or an abstention from voting on the Plan, no provision of the Plan, or this Order: (i) releases any non-debtor person or entity from any claim or cause of action of the SEC; or (ii) enjoins, limits, impairs, or delays the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-debtor person or entity in any forum.

Case: 26-30604   Doc# 650   Filed: 05/02/25   Entered: 05/02/25 12:24   Page 40 of
43

**M.      Term of Injunctions or Stays**

20.      Unless otherwise provided in the Plan, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in or arising from the Plan or the Order), shall remain in full force and effect through and inclusive of the Effective Date and thereafter shall automatically terminate unless otherwise ordered by this Court, at which time they are replaced with the injunction set forth in Section J above.

**N.      Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtors on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by the PFI Trust.

**O.      Reference to and Validity and Enforceability of the Plan Provisions**

21.      The failure to reference any particular provision in the Plan in this Order shall have no effect on the binding effect, enforceability or legality of such provision and such provision shall have the same binding effect, enforceability or legality as every other provision of the Plan. Each term and provision of the Plan, as modified or interpreted by the Court, is valid and enforceable pursuant to its terms.

**P.      Notice of Entry of Confirmation Order**

22.      Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors are hereby directed to serve a notice of the entry of this Order, and if it has occurred, the Effective Date, on all parties that received notice of the Confirmation Hearing, no later than 15 Business Days after the date of this Order; *provided, however,* that the Debtors shall be obligated to serve the such notice only on the record holders of Claims and Interests.

**Q.      SEC Related Provisions**

23.      Nothing in the Plan or this Order constitutes a determination as to whether any claim by the SEC for disgorgement or civil penalties is entitled to be subordinated to payment of general unsecured claims, notwithstanding the definition of Other Subordinated Claims in the Plan.  Further, the SEC shall retain the right, at any time after the Effective Date, to amend any timely filed proofs of claim to assert such claims in specific dollar amounts.

-10-

1   **R.    Retention of Jurisdiction**

2          24.     This Court shall retain jurisdiction to the fullest extent permitted by the Plan and

3   applicable law to enforce, implement, interpret and resolve issues and disputes with respect to the

4   Plan and all matters related to the Plan.

5                              **\*\*END OF ORDER\*\***

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                           **Court Service List**

2 Registered ECF Participants only.