1  NATHAN A. SCHULTZ (SBN 223539)
   nschultzesq@gmail.com
2  **LAW OFFICE OF NATHAN A. SCHULTZ, P.C.**
   10621 Craig Road
3  Traverse City, MI 49686
   Telephone:    310-429-7128
4

5  Counsel for Christina Ensign

6

7

8                     UNITED STATES BANKRUPTCY COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12 | In re:                              | Chapter 11

13 | PROFESSIONAL FINANCIAL              | Case No. 20-30604

14 | INVESTORS, INC., *et al.*,[1]       | (Jointly Administered)

15 |                    Debtors.         |

16 |                                     | **LIMITED OPPOSITION OF CHRISTINA
                                           ENSIGN TO DEBTORS' MOTION FOR
17 |                                     | ORDER APPROVING BID PROCEDURES
                                           AND RELATED RELIEF**
18

19 |                                     | Hearing Date:    July 9, 2021
                                           Hearing Time:    10:00 a.m.
20

21

22       Christina Hariclia Ensign, as Trustee of the Amended and Restated Christina Hariclia

23 Ensign Trust dated August 15, 1996, hereby submits her Limited Opposition to the motion

24 [Docket No. 713] (the "Bid Procedures Motion") filed by the Debtors seeking approval for bid

25

26 _____

27       [1]      A complete list of the Debtors and their respective chapter 11 case numbers may
   be found at www.donlinrecano.com/pfi. The federal tax identification numbers of each of the
28 Debtors is also available in the bankruptcy petitions of each Debtor, also available at the Donlin
   Recano website.

procedures (the "Proposed Bid Procedures") and certain related relief.  Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Bid Procedures Motion.

In support of this Limited Opposition, Ms. Ensign respectfully represents as follows:

## FACTUAL BACKGROUND

**A.  The Ensign Property.**

Ms. Ensign is a TIC Owner who holds a tenant-in-common interest in one of the multi-family TIC Properties that is included in the Stalking Horse APA: "The Heights Apartment Homes" located at 109 Professional Center, San Rafael (the "Ensign Property").  *See* Stalking Horse APA at Exhibit A-1.  Ms. Ensign purchased her interest in the Ensign Property pursuant to a grant deed that was recorded on December 21, 2018 (just over 19 months before the commencement of these cases).  The grant deed for the Ensign Property provides that the only other tenant-in-common owner is Professional Investors 43, LLC ("43 LLC").  The grant deed does not specify the respective tenant-in-common ownership percentages held by Ms. Ensign and 43 LLC.

Ms. Ensign purchased her interest in the Ensign Property for $826,142.92 as part of "1031 Exchange."  Ms. Ensign is retired and her interest in the Ensign Property represents a significant portion of her retirement savings.  Ms. Ensign understands that because she purchased her interest in the Ensign Property via a 1031 Exchange, a sale of her interest now likely would have adverse tax consequences.

**B.  The Stalking Horse APA.**

The Stalking Horse APA contemplates that the Stalking Horse Bidder will acquire 100% of the interests in the Ensign Property.  *See, e.g.,* Bid Procedures Motion at fn. 3.  The Stalking Horse APA obligates the Debtors to attempt to obtain a "TIC Owner Stipulation" from Ms. Ensign (and the TIC Owners for the other TIC Properties) providing (in part) that each TIC Owner approves the sale of its tenant-in-common interest and will deliver a grant deed and other documents in connection with such sale.  *See* Stalking Horse APA at § 6.1.4.  The Stalking Horse APA also has detailed procedures whereby the Debtors are obligated to initiate "363(h) Litigation" against any "Holdout TICs" who have not entered into a TIC Owner Stipulation.  *Id.*

The Debtors are required to initiate 363(h) Litigation as soon as July 9, 2021 and not later than July 16, 2021. *See id.*

However, the Stalking Horse APA also contemplates that if a resolution cannot be reached regarding the interest of a Holdout TIC, then the Stalking Horse Bidder may opt to acquire just the Debtors' ownership interest (and any other consenting TIC Owner interest) in a TIC Property without acquiring the interest of a Holdout TIC, or that the Stalking Horse Bidder may choose to exclude the affected TIC Property from the sale entirely. *See, e.g.,* Bid Procedures Motion at fn. 6. In addition, the Stalking Horse APA provides for the sale of investor contact information to the Stalking Horse Bidder. *See, e.g.,* Bid Procedures Motion at fn. 4; [Docket No. 736].

**C. The Proposed Bid Procedures.**

The Proposed Bid Procedures require that a Qualified Competing Bid must exceed $442,680,000. *See* Proposed Bid Procedure at § 3. Thus, the Bid Procedures effectively are restricted to single bidder "bulk sale" offers only and do not allow potential overbidders to submit bids for individual Real Properties or smaller sub-sets thereof.

The Proposed Bid Procedures also require that a Qualified Competing Bid must be "substantially in the form of the Stalking Horse APA" and include a purchase price allocation for the TIC Properties that are included in the Stalking Horse APA. *See* Proposed Bid Procedures at § 5(e). The Stalking Horse Bidder's purchase price allocation for the TIC Properties was filed with the Court. *See* [Docket No. 720].

The Proposed Bid Procedures do not provide any opportunity for a TIC Owner like Ms. Ensign to consult with the Debtors regarding potential overbids, designation of a Qualified Bidder, or the potential Auction. Instead, the Proposed Bid Procedures contemplate an "in person" Auction with attendance limited to the Debtors, the Official Committee, the Stalking Horse Bidder and Qualified Bidders (and their respective counsel).[2]

---

[2] The Proposed Bid Procedures provide for virtual/videoconference access to the Auction only if the Debtors, after consultation with the Official Committee, determine that it is "appropriate given the COVID-19 pandemic." The Proposed Bid Procedures also permit other parties to attend the Auction only if agreed by the Debtors, after consultation with the Official Committee and the Stalking Horse Bidder.

1    According to the Proposed Bid Procedures, the Sale and Cure Objection Deadline would

2   be set six days before the proposed Bid Deadline and 12 days before the potential Auction.  *See*

3   Bid Procedures at § 2.

4                                              **LIMITED OPPOSITION**

5          Although the Proposed Bid Procedures follow a typical format, this is not a typical sale

6   process.  The TIC Owners' undisputed ownership of deeded tenant-in-common interests in the

7   TIC Properties poses its own set of unique issues on top of the pervasive fraud that permeated

8   the Debtors' prepetition conduct and precipitated these cases.  The Stalking Horse APA and

9   Proposed Bid Procedures carefully address these tenant-in-common issues from the perspective

10  of the Stalking Horse Bidder and the Debtors' estate.  However, the same cannot be said from

11  the perspective of a TIC Owner like Ms. Ensign.

12         As the owner of a tenant-in-common interest in the Ensign Property, Ms. Ensign has a

13  much stronger property right to be protected here than the typical party with a much more

14  attenuated interest in estate property proposed to be sold pursuant to section 363 (e.g. a contract

15  counterparty, a landlord, a tenant, etc.).  The value of Ms. Ensign's interest in the Ensign

16  Property is directly linked to the disposition of the interest held by the estate.  The Stalking

17  Horse APA, the Bid Procedures, and section 363(h) of the Bankruptcy Code all recognize that

18  the value of a tenant-in-common interest often can only be maximized through a sale of the

19  property as a whole.

20         Section 363(h) balances the interests of the estate and the interests of a tenant-in-common

21  co-owner by permitting the sale of the entire property only upon the satisfaction of certain

22  conditions, which include requisite findings that "sale of the estate's undivided interest in such

23  property would realize significantly less for the estate than sale of such property free of the

24  interests of such co-owners" and "the benefit to the estate of a sale of such property free of the

25  interests of co-owners out-weighs the detriment, if any to such co-owners."  11 U.S.C.

26  § 363(h)(3)&(4).

27         Ms. Ensign recognizes that the actual sale of the Ensign Property and any potential relief

28  under section 363(h) are not yet before the Court.  But because the Proposed Bid Procedures

4

would dictate the process by which the sale is vetted and presented for approval, it is crucial that the rights and status of Ms. Ensign as a TIC Owner are acknowledged and protected prospectively rather than being relegated to after-the-fact consideration.

Ms. Ensign does not oppose the Bid Procedures Motion in its entirety, nor is Ms. Ensign necessarily opposed to the sale of the Ensign Property (to the Stalking Horse Bidder or otherwise). Instead, Ms. Ensign respectfully submits that the following modest clarifications and modifications should be made to the Proposed Bid Procedures in order to strike a balance that is commensurate with her status and rights as a TIC Owner and consistent with the balance struck in section 363(h):[3]

1. <u>Minimum Bid Requirement</u>: Rather than requiring each Qualified Competing Bid to exceed the minimum price threshold, the Proposed Bid Procedures should be modified to permit a Qualified Competing Bid to consist of two or more otherwise qualified overbids that exceed the minimum price threshold in the aggregate, thus inviting "partial" overbids. The Debtors acknowledge that they received significant interest from parties seeking to acquire individual or groups of the Debtors' properties, and that they continue to engage with new potential bidders. *See* Bid Procedures Motion at p. 6. Given the number and variety of the properties involved, it is very reasonable to believe that the highest and best "bid" for the Debtors' properties might be a combination of two or more bids rather than a single bulk sale bid. Requiring Qualified Competing Bids to independently exceed the minimum price threshold precludes this potential value maximizing scenario.

2. <u>Sale Objection Deadline</u>: The Proposed Bid Procedures should be clarified or modified to provide that a TIC Owner like Ms. Ensign may file an objection to the sale <u>after</u> either (a) the Bid Deadline (if no Auction is held), or (b) the Auction (if one is held). Requiring TIC Owners to object to the sale before the Bid Deadline and potential Auction is premature. It is possible that a potential objection from a TIC

---

[3]     Counsel for Ms. Ensign contacted counsel for the Debtors on July 6 but was unable to resolve these concerns prior to the July 8 response deadline.

Case: 20-30604    Doc# 749    Filed: 07/08/21    Entered: 07/08/21 09:39:49    Page 5 of 8

Owner could be resolved or mooted by the receipt of one or more Qualified Competing Bids, and/or the results of a potential Auction, and/or negotiations with the Successful Bidder and/or the Debtors. While an earlier objection deadline often makes sense for other types of interested parties, it is not reasonable to require Ms. Ensign to file an objection to the sale before she knows what the proposed sale is or how it might impact her rights and recoveries.

3. <u>Consultation Rights</u>: The Proposed Bid Procedures should be modified to provide Ms. Ensign (via her counsel) with limited consultation rights solely to the extent that an issue involving an overbid or the Auction directly affects Ms. Ensign's interest in the Ensign Property. The Proposed Bid Procedures clearly recognize the interests of unsecured creditors in the sale process by granting the Official Committee broad consultation rights. The interest of Ms. Ensign is much more specific and direct, and thus calls for limited consultation rights that are tailored accordingly.

4. <u>Auction Attendance/Participation</u>: Regardless of whether Ms. Ensign is granted consultation rights, she should be allowed to observe the Auction (if one is held), her counsel should have the right to be heard, and the Proposed Bid Procedures should be clarified or modified to permit them to do so remotely regardless of any COVID-19 restrictions. Permitting Ms. Ensign to observe a potential Auction will not risk any disruption, and her counsel would limit any involvement to matters directly affecting Ms. Ensign's interest in the Ensign Property. Moreover, Ms. Ensign resides outside of California (and outside of the United States); expanded remote access during the pandemic has greatly facilitated the participation of investors and other parties in interest in these cases. If nothing else, this would enhance transparency and foster much needed trust that the process is being conducted fairly.

5. <u>Contact with Stalking Horse Bidder and Potential Overbidders</u>: The Proposed Bid Procedures should be clarified or modified to provide a clear process to facilitate contact between a TIC Owner like Ms. Ensign and a potential Successful Bidder (whether the Stalking Horse Bidder or a potential overbidder). The Stalking Horse

APA expressly contemplates that there are several alternative approaches that could be taken with respect to the disposition of each TIC Property. *See, e.g.,* Stalking Horse APA at § 6.1.4. And the Stalking Horse APA provides for the sale of investor contact information to the Stalking Horse Bidder. Yet the Proposed Bid Procedures do not address any potential communication between a TIC Owner and a bidder that might be helpful to assess the alternatives and develop a collaborative approach. At a minimum, (a) the Debtors should be authorized and directed to inform the Stalking Horse Bidder and any potential overbidders that a TIC Owner like Ms. Ensign has requested a discussion, and (b) it should be made clear to all parties that discussion between a TIC Owner and any potential bidder who is willing to engage will not violate the Proposed Bid Procedures.

6. <u>Purchase Price Allocation(s)</u>: The Proposed Bid Procedures should be clarified or modified to clearly state that the purchase price allocation provided by the Stalking Horse Bidder or any overbidder will be without prejudice to the rights of a TIC Owner like Ms. Ensign, including regarding the distribution of sale proceeds. A purchase price allocation unilaterally determined by a bidder (or even as negotiated between a bidder and the Debtors) should not be binding on a party like Ms. Ensign who had no input or insight into its calculation. At a minimum this is an issue that should be deferred to the Sale Hearing or thereafter.

Ms. Ensign submits that the foregoing clarifications and modifications will not adversely affect the estate but instead will provide her (and the Court) with comfort that the Proposed Bid Procedures are reasonably fair and balanced in light of the varied interests at stake.

## **RESERVATION OF RIGHTS**

Nothing herein is a waiver of any right of Ms. Ensign regarding the actual sale of the Ensign Property or her interests therein, including, without limitation, the right to object to any proposed allocation of purchase price or distribution of sale proceeds, and all such rights are expressly reserved.

7

WHEREFORE, Ms. Ensign respectfully request that the Court (i) sustain this Limited Opposition, (ii) condition any approval of the Proposed Bid Procedures on clarifications or modifications consistent with the foregoing, and (iii) grant such other and further relief as is just and proper.

Date: July 8, 2021

LAW OFFICE OF NATHAN A. SCHULTZ, P.C.

By: */s/ Nathan A. Schultz*
NATHAN A. SCHULTZ (SBN 223539)

10621 Craig Road
Traverse City, MI 49686
Telephone: 310-429-7128
Email: nschultzesq@gmail.com

*Counsel for Christina Ensign*

8