UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| PROFESSIONAL FINANCIAL INVESTORS, INC., and | : | Case No. 20-30579 |
| PROFESSIONAL INVESTORS SECURITY FUND, INC. | : | Case No. 20-30604 |
| | : | |
| | : | (Jointly Administered Under |
| Debtors. | : | Case No. 20-30579) |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY,
TO THE EXTENT APPLICABLE, TO ALLOW ADVANCEMENT, REIMBURSEMENT,
AND/OR PAYMENT OF DEFENSE COSTS UNDER D&O POLICY**

Leslie Wallach (the "Movant"), on behalf of herself, Manuel Romero, Charlene Albanese, and Professional Financial Investors, Inc. ("PFI") (collectively, the "Insured Persons"), as former Chief Financial Officer of PFI, by and through the undersigned counsel and pursuant to Bankruptcy Code, 11 U.S.C. sections 105(a) and 362, and Federal Rule of Bankruptcy Procedure 4001, hereby respectfully moves for an Order for relief from the automatic stay, to the extent applicable, to permit the payment, reimbursement, and/or advancement of all defense costs incurred and to be incurred under the Business and Management Indemnity Policy No. EKS3309995 (the "Policy") issued by E-Risk Services, LLC and underwritten by Scottsdale Insurance Company ("Scottsdale"), through Nationwide Insurance Company ("Nationwide") for those reasons discussed below.

**I.      INTRODUCTION**

1.      The Insured Persons are named in some or all of the following regulatory and criminal investigations and/or proceedings (collectively, the "Actions"):

   (a)   *In the Matter of Professional Financials Investors, Inc.* (SF-4393) (the "SEC Investigation");

(b)　*Susan Aiken v. Professional Financial Investors, Inc., et al.*, Case No. CIV-2001560, Superior Court of the State of California, Marin County (the "State Court Action");

(c)　Subpoenas issued by the Securities Exchange Commission to Movant and Romero (the "SEC Subpoenas"); and

(d)　Subpoena issued by the U.S. Department of Justice to PFI (the "DOJ Subpoena").

2.　By this Motion, the Insured Persons seek an order that the automatic stay does not bar the payment, reimbursement, and/or advancement of insurance proceeds under the Policy issued for any of the Insured Persons' defense costs, wherever incurred, including, but not limited to, those defense costs incurred in connection with the Actions.

3.　In addition to the Actions, the Insured Persons further seek that the relief requested herein shall apply to any covered Claim (as defined in the Policy), including any future, related investigation and/or proceeding, noticed under the Policy (an "Additional Action"). The Bankruptcy Court will resolve any dispute between the parties as to whether the automatic stay should be lifted with respect to any Additional Action.

4.　As discussed herein, the bankruptcy estate either has no interest in some or all of the proceeds of the Policy, or any interest that the bankruptcy estate has is expressly subordinate to the Insured Persons' priority rights in such proceeds. Thus, the proceeds of the Policy that are available to pay the Insured Persons' defense costs are not estate property and are not subject to the automatic stay. Alternatively, the Insured Persons' are entitled to relief from the automatic stay in order to access proceeds of the Policy to pay their costs in defending, among other things, the claims being asserted against them.

//

//

4

Case: 20-30604　Doc# 752　Filed: 07/09/21　Entered: 07/09/21 14:23:21　Page 2 of 13

## II. JURISDICTION

5. On July 16, 2020, Professional Investors Security Fund, Inc. ("PISF," together with PFI, the "Debtors"), commenced a Chapter 11 case, Case No. 20-30579, by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Subsequent to the petition filed by PISF, PFI commenced its Chapter 11 case, Case No. 20-30604, by filing a voluntary petition on July 26, 2020. Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtors continue as debtors-in-possession. The Debtors are headquartered in Novato, California, and operate as a business selling investments in residential and commercial real estate.

6. This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334(b). Venue of the Debtors' Chapter 11 cases and this application is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Bankruptcy Code section 362. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## II. THE POLICY AND REQUEST FOR TOLLING AGREEMENT

### A. The Policy's Relevant Provisions.

7. On or about October 31, 2019, the Debtors purchased the Policy, otherwise known as a "Directors and Officers," or "D&O," policy. *See Declaration of Gabriel Z. Reynoso* ("Reynoso Decl.") ¶ 4; **Exhibit A**, *Directors and Officers and Company Coverage Section*. The Policy was in effect from October 31, 2019 through October 31, 2020, at 12:01 a.m.

8. The Directors and Officers and Company Coverage Section of the Policy defines an "Insured" as the "Company and the Directors and Officers." *See id.* p. 2, § B.5. "Directors and Officers" are defined, in pertinent part, as "a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the company." *Id*. § B.4.a. "Loss" is defined as "damages, judgments, settlements, pre-judgment or post-judgment interest

awarded by a court, and Costs, Charges and Expenses incurred by Directors and Officers under Insuring Clauses 1. or 2. Or the Company under Insuring Clause 3." *Id*. § B.7. The Policy defines "Costs, Charges, and Expenses" as "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability" and "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in investigating a written demand, by one or more of the securities holders of the Company upon the board of directors or the management board of the Company, to bring a civil proceeding against any of the Directors and Officers on behalf of the Company." *Id.*, pp. 1-2, § B.3.a-b.

9. "Claim" means "a written demand against any Insured for monetary damages or non-monetary or injunctive relief." *Id.,* pp. 1-2, § B.1.b.

10. Pursuant to the Policy's Insuring Clauses, Nationwide agrees to:

> The Insurer shall pay the Loss of the Directors and Officers for which the Directors and Officers are not indemnified by the Company and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period or, if elected, the Extended Period, and reported to the Insurer pursuant to Section E.1. herein, for any Wrongful Act taking place prior to the end of the Policy Period.

*Id.*, p. 1, § A.1. Nationwide further has agreed to "pay the Loss of the Company which the Company becomes legally obligated to pay by reason of a Claim first made against the Company during the Policy Period . . . for any Wrongful Act taking place prior to the end of the Policy Period." *Id.*, p. 1, § A.3.

11. For purposes of the Directors and Officers and Company Coverage provided by the Policy, "Wrongful Act" means "any or actual alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by:

    (a) any of the Directors and Officers, while acting in their capacity as such, or any matter claimed against any Director and Officer solely by reason of his or her serving in such capacity;

    (b) any of the Directors and Officers, while acting in their capacity as a director, officer, trustee, governor, executive director or similar position of any Outside Entity where such service is with the knowledge and consent of the Company; and

    (c) the Company, but only with respect to Insuring Clause 3. of this Coverage Section."

*Id.*, p. 3, § 9.

12. Professional Financial Investors, Inc., is the "Company" named under the Policy. The Insured Persons were each duly-appointed Directors and Officers of PFI: (1) Movant, as the former Chief Financial Officer; (2) Romero, as the Chief Financial Officer; and (3) Albanese, listed as a former Director. *See* Reynoso Decl. ¶ 3; *Declaration of Chad Weaver* ("Weaver Decl.") ¶ 3; *Declaration of Wendy M. Thomas* ("Thomas Decl.") ¶ 3.

13. The Insured Persons have incurred, and will continue to incur, attorneys' fees and other defense costs in connection with, among other actions and/or claims, the Actions. The Insured Persons are entitled to access proceeds from the Policy in order to defend themselves in connection with, among other actions and/or claims, the Actions.

14. Under the Policy, Nationwide assumes no duty to defend the Insured Persons against the Actions. However, Nationwide retains the right to associate with the Insured Persons regarding the defense of the Claims. In this regard, Nationwide has approved the retention of the following as counsel for the Insured Persons: (1) Gabriel Z. Reynoso, Esq., of Winget Spadafora

& Schwartzberg, LLP, appointed as counsel for Movant; (2) Wendy M. Thomas, Esq., of Tadjedin Thomas & Engbloom Law Group, appointed as counsel for Romero; (3) Chad Weaver, Esq., of Freeman Mathis & Gary, LLP, appointed as counsel for Albanese; and (4) David Aveni, Esq., of Wilson Elser Moskowitz Edelman & Dicker LLP, appointed as counsel for PFI. *See* Reynoso Decl. ¶ 2; Weaver Decl. ¶ 2; Thomas Decl. ¶ 2; *Declaration of David J. Aveni* ("Aveni Decl.") ¶ 2.

### B. The Request for Tolling Agreement.

15. On July 2, 2020, the State Court Action, a class action complaint stylized as *Susan Aiken, et al. v. Professional Financial Investors, Inc., et al.*, Case No. CIV2001560, was filed in the Superior Court of the State of California, County of Marin, against the Debtors, among others, which asserted the following causes of action: (1) California Statutory Securities Fraud; (2) Sale of Unregistered Securities; (3) Breach of Fiduciary Duty; (4) Negligent Misrepresentation; and (5) Breach of Contract. *See* Reynoso Decl. ¶ 5; Exhibit B, *State Court Action*, ¶¶ 50-80. Further, on or about September 29, 2020, the Securities and Exchange Commission ("SEC") initiated an investigation into PFI, the SEC Investigation, stylized as *In the Matter of Professional Financial Investors, Inc.*, SF-4393. On August 19, 2020, the Official Committee of Unsecured Creditors of the Debtors (the "Creditors Committee") was appointed to investigate and, if appropriate, initiate and prosecute estate claims and causes of action, including derivative claims, against the current and former officers, directors, members, managers and professionals of the Debtors.

16. On October 30, 2020, counsel for the Creditors Committee issued a letter to Scottsdale, requesting a tolling agreement or waiver of the statute of limitations for certain potential claims of alleged negligence and breaches of fiduciary duties based on and/or resulting from certain financial improprieties in the management of PFI that were purportedly discovered during an audit following the death of Kenneth Casey, the founder of PFI. *See* Reynoso Decl. ¶ 6; Weaver Decl. ¶ 4; Thomas Decl. ¶ 4; Exhibit C, *October 30, 2020 Tolling Request Letter from*

8

*John D. Fiero*, at 2. Specifically, the Creditors Committee allege that the Insured Persons engaged in the following purported actions:

(a) Commingling of funds in a manner contrary to (a) the representations PFI, PISF and its affiliated entities made to investors; (b) applicable corporate formalities; and (c) the legal principles of corporate separateness. This includes mishandling of investor checks, mishandling of wired funds, over-subscription of legal entities resulting in investor dilution, and use of one entity's assets for the benefit of another;

(b) Inappropriate transactions with insiders, including (a) "sales" of interests in company assets to officers and control persons without receipt of identifiable or reasonable consideration; (b) insiders taking corporate opportunities for themselves; and (c) bookkeeping irregularities in which insider transactions were inconsistent with the actual underlying transaction and which obscured the malfeasance;

(c) Mishandling of client account rollovers, including using affiliate cash to substitute for client account cash and wrongful use of pooled accounts that frustrated the ability to trace investor and affiliate funds;

(d) Irregularities in the administration of client investments secured by deeds of trust, including mishandling of the recordation or reconveyance of deeds of trust, failing to record or rerecord deeds of trust, and…in many instances doing so contrary to fiduciary duties owed to creditors;

(e) Agreement to "special" deals with favored investors contrary to the fiduciary duties owed to investors at large, including incurring additional obligations to such favored investors for no additional consideration and awarding property interests to certain investors greater than the value provided to the enterprise; and

(f) Inappropriate diversions of corporate assets to insiders, including but not limited to (a) purported "loans" to Mr. Casey that were later expunged at year-end through accounting irregularities, (b) direct cash transfers to Mr. Casey in violation of corporate fiduciary duties, use of investor monies paid directly to Mr. Casey where the entity then acknowledged an obligation to the investor without having received appropriate consideration,…[p]ayments to Ken Casey; (c) direct and indirect cash payments to or for the benefit of Lewis Wallach including payments to the "Liberty Lakes" property owned by Wallach, cash payments to Mr. Wallach, and payments on Mr. Wallach's personal credit card.

9

*Id.* at 2-3.

**III. ARGUMENT**

17. "Section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *In re Kissenger*, 28 72 F.3d 107, 108 (9th Cir. 1995) (quoting *In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992)). Movant now petitions this Court to lift the automatic stay, pursuant to 11 U.S.C. § 362(d), in order to allow Nationwide to advance defense costs to the Insured Persons in defense of the claims that are being pursued by the Creditors Committee, including, but not limited to, the Actions.

18. Movant urges the Court to acknowledge the considerable legal fees that have been incurred, and will be incurred, arising from numerous regulatory investigations and threats of future lawsuits. As more fully set forth below, the Insured Persons have been provided a defense by Nationwide in response to the claims brought by the Creditors Committee. As such, the Policy proceeds should not be subject to the automatic stay in place in connection with the present request for tolling agreement made by the Creditors Committee. In the alternative, even if the Policy proceeds did constitute property of the bankruptcy estate, this Court should lift the automatic stay with respect to the Policy proceeds in order to allow payment of defense costs that have been incurred and will be incurred by the Insured Persons.

**A.   The Policy Proceeds Are Not Bankruptcy Estate Assets.**

19. Section 362 of the Bankruptcy Code provides, in relevant part, that the automatic stay which is imposed as of the petition date stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to create, perfect, or enforce any lien against property of the estate." *Adelphia Communs. Corp. v. Associated Elec. & Gas Ins. Servs. (In Re Adelphia Communs. Corp.)*, 285 B.R. 580, 590 (Bankr.

S.D.N.Y. 2002); 11 U.S.C. §§ 362(a)(3)-(a)(4). "Property of the estate is defined as all legal or equitable interests of the debtor in property as of the commencement of the case . . . ." *Id.* (citing 11 U.S.C. § 541(a)(1)).

20. "The majority view is that insurance policies are property of the bankruptcy estate and protected by the automatic stay provision of Section 362(a)(3) of the Code." (Internal citations omitted). *In re Focus Capital, Inc.*, 504 B.R. 296, 304 (Bankr. N.H. 2014). However, the relevant question is "not who owns the policies, but who owns the liability proceeds." *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987). Where a D&O policy provides coverage to both the corporate entity and individual directors and officers, "courts have held that the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." (Internal citations and quotation marks omitted). *In re MF Global Holdings Ltd.*, 515 B.R. 193, 203 (Bankr. S.D.N.Y. 2014). In such circumstances, courts consider the extent to which a "colorable insurance claim" exists against the debtor. *See, e.g., In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004). In *Allied Digital*, the Court held that the debtor could have held an interest in insurance policy proceeds *if* it had been subject to a covered litigation claim, but because no party had made a claim against it, the policy proceeds were held not to be part of the bankruptcy estate's assets. *Id.* at 511.

21. Here, the Policy at issue promises payment of defense costs incurred by the Policy's directors and officers in defending claims potentially falling within the Policy's coverage. Nationwide has already acknowledged its defense obligations as it concerns the claims asserted by the Creditors Committee, including the Actions, subject to a reservation of rights and has agreed to forward defense costs to the Insured Persons. The Creditors Committee brings claims against

11

the Insured Persons as former directors and officers of PFI, which falls within the purview of claims covered under the Policy. Because these claims are covered under the terms of the Policy and Nationwide has agreed to forward defense costs to the Insured Persons, Movant respectfully requests that this Court confirm that the Policy proceeds—to which the Insured Persons are contractually entitled as defense costs—do not constitute bankruptcy estate assets. Movant further respectfully requests that this Court confirm that Nationwide's payment of the Insured Persons' defense costs incurred in defending against the various claims that the Creditors Committee have asserted or that may be asserted against the Insured Persons, and each of them, by the Creditors Committee, including, but not limited to, the Actions, will not violate the automatic stay in place.

### B. Even if Policy Proceeds are Property of the Bankruptcy Estate, the Stay Should Be Lifted to Allow Payment of Defense Costs to the Insured Persons.

22. In the alternative, in the event that this Court determines that the Policy proceeds are part of the bankruptcy estate's assets, this Court should nevertheless lift the automatic stay currently in place so that the Insured Persons may receive defense costs to which they are contractually entitled to under the terms of the Policy. "Courts conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Downey Fin. Corp.*, 428 B.R. 595, 608-09 (Bankr. D. Del. 2010). "It is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers . . . ." *In re Allied Digital Techs. Corp.*, *supra*, 306 B.R. at 509 (Bankr. D. Del. 2004).

23. Several courts have held that where policies like that at issue in the present matter provide coverage to the directors and officers for covered claims and defense costs, as well as indemnification and entity coverage to the debtor, the automatic stay is properly lifted and defense costs are forwarded to the insureds. For example, in *In re CyberMedica*, the court held that the

12

stay should be lifted: "[The directors and officers] may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments. [The directors and officers] are in need *now* of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense of the Trustee's Complaint." 280 B.R. 12, 18 (Bankr. D. Mass 2002)*; see also In re Laminate Kingdom, LLC*, 2008 Bankr. LEXIS 1594 (Bankr. S.D. Fla. 2008) (granting relief from stay in order to permit insurer to advance defense costs to insured directors and officers); *In re Boston Reg'l Med. Ctr. Inc.*, 285 B.R. 87 (Bankr. D. Mass 2002) (same). "The automatic stay, to the extent applicable [ ] should be modified to permit the payment of [ ] defense costs." *In re RC Liquidating Co.*, 2007 Bankr. LEXIS 401, at *5 (Bankr. M.D.N.C. 2007).

24. In the present matter, like *In re CyberMedica*, the Insured Persons will suffer substantial and irreparable harm if they are denied access to defense costs provided by Nationwide under the Policy. The present proceeding—indeed, each of the Actions—will be litigated in earnest for the foreseeable future, at great financial cost. Moreover, lifting the stay as to the Policy proceeds will benefit all parties and the bankruptcy estate in that the Insured Persons will not be forced to dilute the estate assets in defense of this matter, allowing for the fair and timely resolution of this matter. As such, Movant respectfully requests that, even if the Policy proceeds are deemed to be part of the bankruptcy estate, the automatic stay be lifted as to the Policy proceeds to allow the Insured Persons access to the defense costs to which they have a contractual right.

## IV. **CONCLUSION**

For the foregoing reasons, Movant respectively requests that this Court issue an Order lifting the stay so as to allow Nationwide to pay, reimburse, and/or advance defense costs incurred and to be incurred by the Insured Persons in connection with claims covered by the Policy,

13

including, but not limited to, the Actions and other claims which may be asserted by the Creditors Committee. In the alternative, to the extent the automatic stay is applicable to the Policy proceeds, Movant respectfully requests such stay be modified so as to permit the payment, reimbursement, and/or advancement of defense costs incurred and to be incurred by the Insured Persons in connection with claims covered by the Policy, including, but not limited to, the Actions and other claims which may be asserted by the Creditors Committee, to which they are contractually entitled.

Dated: July 9, 2021

Respectfully submitted,

By: _____
Gabriel Z. Reynoso (CA SBN 234027)
**Winget, Spadafora & Schwartzberg, LLP**
1900 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Tel.: (310) 836-4800
Fax: (310) 836-480
Reynoso.g@wssllp.com

*Counsel for Movant Leslie Wallach*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on July 9, 2021, the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's system.

                                                    Gabriel Z. Reynoso