

Signed and Filed: November 2, 2021

1 Ori Katz (CA Bar No. 209561)
J. Barrett Marum (CA Bar No. 228628)
2 Matt Klinger (CA Bar No. 307362)
SHEPPARD, MULLIN, RICHTER
3 HAMPTON LLP
Four Embarcadero Center, 17th Floor
4 San Francisco, CA 94111-4019
Telephone:  (415) 434-9100
5 Facsimile:  (415) 434-3947
Email:    okatz@sheppardmullin.com
6        bmarum@sheppardmullin.com
         mklinger@sheppardmullin.com

_____
**HANNAH L. BLUMENSTIEL**
U.S. Bankruptcy Judge

7

8 *Counsel to Debtors and Debtors in Possession*

9                **UNITED STATES BANKRUPTCY COURT**

10                **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 12  In re: | Chapter 11 |
| 13  PROFESSIONAL FINANCIAL | Case No. 20-30604 |
| 14  INVESTORS, INC., *et al.*, | (Jointly Administered) |
| 15                Debtors. | **AMENDED ORDER FINALLY** |

16

**AMENDED ORDER FINALLY
APPROVING AMENDED DISCLOSURE
STATEMENT AND CONFIRMING
MODIFIED SECOND AMENDED JOINT
CHAPTER 11 PLAN OF PROFESSIONAL
FINANCIAL INVESTORS, INC. AND ITS
AFFILIATED DEBTORS PROPOSED BY
THE DEBTORS AND OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS AND SUPPORTED BY THE
AD HOC LLC MEMBERS COMMITTEE
AND THE AD HOC DOT NOTEHOLDERS
COMMITTEE (DATED MAY 20, 2021)**

22  Plan Confirmation Hearing:
23  Date:    May 27, 2021
    Time:    10:00 a.m. (Pacific Time)
24  Place:   **Telephonic/Video Appearances
             Only**
25          450 Golden Gate Avenue, 16th Floor
            San Francisco, CA 94102
26  Judge:   Hon. Hannah L. Blumenstiel

27

28

-1-

On October 29, 2021, at approximately 10:00 a.m. ("Plan Modification Hearing"), this Court held a hearing on the *Plan Proponents' Motion to (I) Modify Confirmed Second Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors and (II) Enter Amended Confirmation Order* ("Plan Modification Motion") filed on September 30, 2021 as Docket No. 928; on May 27, 2021, this Court held a hearing (the "Confirmation Hearing," and together with the Plan Modification Hearing, the "Hearings") on: (i) confirmation of the *Second Amended Joint Plan of Professional Financial Investors, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee (Dated May 20, 2021)* filed on May 20, 2021 as Exhibit A to the notice that is Docket No. 649, an identical, standalone version of which was also filed on June 8, 2021 as Docket No. 677 (the "Plan"), as amended by Exhibit B to the Plan Modification Motion and by the *Plan Proponents' Notice of Agreed Further Modifications to Plan and Proposed Order After Conferring with Objecting Bank Lenders* (the "Modification Notice") filed on October 28, 2021 as Dkt. No. 956 (or later modified, and including all supplements, exhibits and schedules thereto, the "Modified Plan"), by plan proponents Professional Financial Investors, Inc. ("PFI") and its affiliated debtors and debtors in possession (collectively, with PFI, the "Debtors")[1] and the Official Committee of Unsecured Creditors (together with the Debtors, the "Proponents");[2] and (ii) final approval of the *Amended Disclosure Statement for the Amended Joint Plan of Professional Financial Investors, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members*

---

[1] A complete list of the Debtors and their respective chapter 11 case numbers may be found at www.donlinrecano.com/pfi. The federal tax identification numbers of each of the Debtors is also available in the bankruptcy petitions of each Debtor, also available at the Donlin Recano website. As used in this Order and the Plan, use of the term "Debtors" also includes Professional Investors 28, LLC and PFI Glenwood LLC as of the Effective Date.

[2] Capitalized terms used but not defined in this order shall have the meaning given to them in the Modified Plan (Dkt No. 964) or the Purchase Agreement.

*Committee and the Ad Hoc DOT Noteholders Committee,* filed on April 16, 2021 as Docket No. 572 (as amended or modified to date, and including all exhibits and schedules thereto, the "Disclosure Statement").

The Court, having considered: the Plan Modification Motion; the Modification Notice; the Modified Plan; the Disclosure Statement; the Declarations of Andrew Hinkelman and David Alfaro in support of the Plan Modification Motion; other pleadings and evidence submitted in support of the Plan Modification Motion; the *Limited Objection of Christina Ensign, Felix Arts and Carol Sue Sproule to Confirmation of Chapter 11 Plan filed on May 13, 2021, as Docket No. 636* (the "Limited Objection") and any objections to the Plan Modification Motion; all other relevant facts, pleadings, and evidence of record in the Chapter 11 Cases; and the arguments of counsel at the Hearings, and having issued detailed findings of fact and conclusions of law on the record at the Hearings, which constitute the Court's findings of fact and conclusions of law for the purposes of Federal Rule of Bankruptcy Procedure 7052, as made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014, and which findings of fact and conclusions of law are incorporated herein by this reference.

For the reasons stated by the Court on the record at the Hearings,

**IT HAS BEEN DETERMINED BY THE COURT THAT:**

A.  **Findings and Conclusions.**  The findings and conclusions set forth herein and in the record at the Hearings constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  **Jurisdiction and Venue.**  This Court has jurisdiction to confirm the Modified Plan and the transactions contemplated thereunder, including those contemplated by that certain Purchase Agreement and Escrow Instructions by and between the Debtors and NCP JV, LLC, assignee of Hamilton Zanze & Company (collectively, "Hamilton

-3-

Zanze") dated as of June 16, 2021 (as amended, modified, and supplemented from time to time, the "Purchase Agreement"), pursuant to 28 U.S.C. §§ 1334 and 157. The Hearings are core proceedings under 28 U.S.C. § 157(b)(2)(L) and venue of the Chapter 11 Cases in the Northern District of California is proper under 28 U.S.C. § 1408.

C. **Notice of the Hearings.** Due and sufficient notice of the Disclosure Statement, Plan, Modified Plan, Plan Modification Motion, Sale (as defined below), the Investor opt-out procedure approved by this Court in connection with the sharing of Investors' information with Hamilton Zanze (as defined below) and the hearings thereon, was provided under the circumstances and under applicable rules, consistent with the requirements imposed by this Court in its *Order (I) Approving the Plan Summary and Conditionally Approving Disclosure Statement; (II) Scheduling Combined Hearing on Approval of Disclosure Statement and Confirmation of Plan and Approving the Form and Manner of Service of the Combined Hearing Notice; (III) Establishing Non-Investor Bar Dates for Filing Proofs of Claim; (IV) Approving Form and Manner of Notice of Non-Investor Bar Dates; (V) Establishing Procedures for the Solicitation and Tabulation of Votes on Plan; and (VI) Approving Related Matters* entered on April 19, 2021, as Docket No. 575 (the "Solicitation Procedures Order"), and reasonably calculated to reach and apprise all holders of Interests (as defined below) about the Sale and the assumption and assignment of the unexpired leases and executory contracts that Hamilton Zanze (as defined below) may elect to have the Debtors assume and assign (the "Purchased Contracts and Leases").

D. **Voting on Plan.** The Solicitation Procedures Order fixed May 13, 2021, at 4:00 p.m. Pacific Time as the deadline to submit ballots to accept or reject the Plan. The Proponents have tabulated the ballots received ("Ballots"), as evidenced by the Declaration of John Burlacu filed on May 20, 2021 as Docket No. 650-1 (the "Burlacu Declaration") and the Final Tabulation Results attached as Exhibit A thereto (the "Final Tabulation Results"). As set forth in the Burlacu Declaration, out of 2,193 timely Ballots cast, a total of 2,188 voted to accept the Plan and only five (5) voted to reject the Plan.

-4-

E.     **Plan Modification Effect**. The modifications to the Plan as described in the Plan Modification Motion, Modification Notice, and the Modified Plan filed as Docket No. 964 neither materially adversely affect the treatment of any Claim against or Equity Interest in any of the Debtors under the Plan nor require re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code or Bankruptcy Rules 3018 or 3019. Accordingly, the Modified Plan is properly before this Court and all Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Modified Plan and no Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the modifications to the Plan. The Plan Modification Motion, the Modified Plan and this Order shall constitute the Alternative Restructuring Transactions contemplated in the Plan.

F.     **Objections.**  Beyond the Limited Objection, other creditors filed limited or conditional objections or responses to the Plan Modification Motion, as noted in the record, which were resolved at or prior to the October 29 hearing.  No formal objections to the adequacy of the information contained in the Disclosure Statement (as that term is defined in the Solicitation Procedures Order) were filed.

G.     **Compliance with Confirmation Requirements of Bankruptcy Code Sections 1123 and 1129.**  The Modified Plan complies with the applicable requirements of sections 1123 and 1129 of the Bankruptcy Code, which set forth the conditions necessary for confirmation.

H.     **Settlement of Claims and Controversies.**  Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Modified Plan, the provisions of the Modified Plan constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims, Intercompany Liens, and Causes of Action against any Debtor.  The compromise and

-5-

settlement of all such claims or controversies are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

I. **Marketing of the Purchased Assets.** As demonstrated by (i) evidence submitted by declaration, proffered or adduced at the Hearings, and (ii) the representation of counsel made on the record at the Hearings, the Debtors have marketed the Property as defined in the Purchase Agreement (collectively, the "Purchased Assets") and conducted the sale process in compliance with the *Order (A) Approving Bid Procedures for the Portfolio Sale of Certain Real and Personal Property Assets; (B) Approving Related Notice Procedures; (C) Authorizing Debtors to Enter Into Stalking Horse Agreement and Approving Break-Up Fee and Expense Reimbursement; (D) Scheduling A Sale Hearing; and (E) Granting Certain Related Relief* [Docket No. 768] (the "Bid Procedures Order"), and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets and the Purchased Contracts and Leases.

J. **Corporate Authority.** Andrew Hinkelman, Chief Restructuring Officer of PFI, on behalf of each Debtor, (i) has full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, (ii) has all of the corporate power and authority necessary to authorize and consummate the transactions contemplated by the Purchase Agreement, (iii) has taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate such transactions.

K. **Best Interest of the Estates.** Approval of the Purchase Agreement and consummation of the transactions contemplated thereby (the "Sale") pursuant to the terms of the Modified Plan is in the best interests of the Debtors, their creditors, their estates, and other parties in interest. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale of the Purchased

-6-

SMRH:4865-1014-1043.3

AMENDED ORDER CONFIRMING SECOND AMENDED JOINT
CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC.

Case: 20-30604 Doc# 966 Filed: 11/02/21 Entered: 11/02/21 15:53:29 Page 6 of
148

Assets. The consideration provided by Hamilton Zanze under the Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery to the Debtors' estates than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, (including the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and similar laws). The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Purchased Contracts and Leases to Hamilton Zanze in connection with the consummation of the Sale, and the assumption and assignment of the Purchased Contracts and Leases is in the best interests of the Debtors, their estates, and their creditors. The Purchased Contracts and Leases being assigned to, and the liabilities being assumed by, Hamilton Zanze are an integral part of the Purchased Assets being purchased by Hamilton Zanze and, accordingly, such assumption and assignment of the Purchased Contracts and Leases and Assumed Obligations (as defined below) are reasonable and enhance the value of the Debtors' estates.

L. **Good Faith.** The Purchase Agreement was negotiated, proposed and entered into by the Debtors and Hamilton Zanze without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtors, Hamilton Zanze, nor any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs or damages imposed under section 363(n) of the Bankruptcy Code. Hamilton Zanze is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code. As demonstrated by (i) evidence submitted by declaration, proffered or adduced at the Hearing on the Plan Modification Motion, and (ii) the representation of counsel made on the record at the Hearing on the Modification Hearing, Hamilton Zanze proceeded in good faith in all respects in

-7-

Case: 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 15:53:35   Page 7 of 148

connection with these chapter 11 cases in that: (1) Hamilton Zanze recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (2) Hamilton Zanze complied with the provisions of the Bid Procedures Order; (3) Hamilton Zanze's bid was subject to the competitive bid procedures set forth in the Bid Procedures Order; (4) all payments to be made by Hamilton Zanze and other agreements or arrangements entered into by the Hamilton Zanze in connection with the Sale have been disclosed; and (5) the negotiation and execution of the Purchase Agreement, including the Sale contemplated thereby, were at arms'-length and in good faith. There was no evidence of insider influence or improper conduct by Hamilton Zanze or any of its affiliates in connection with the negotiation of the Purchase Agreement with the Debtors, conducting its due diligence and the Sale process.  Accordingly, Hamilton Zanze is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such, is entitled to all of the protection afforded thereby.

M. **Not a Successor.**  By consummating the Sale pursuant to the Purchase Agreement, Hamilton Zanze is not a mere continuation of any Debtor or any Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between Hamilton Zanze and any Debtor.  Hamilton Zanze shall not be deemed to be holding itself out as a continuation of the Debtors based on the Sale, the Purchase Agreement or this Order.  Hamilton Zanze is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de facto merger of Hamilton Zanze and the Debtors.  Neither Hamilton Zanze nor any of its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliates thereof) or any Debtor's estate, except to the extent expressly provided in the Purchase Agreement.

N. **Free and Clear.**  Regardless of whether before, on or after the Effective Date, the transfer of the Purchased Assets to Hamilton Zanze will be a legal, valid, and effective transfer of the Purchased Assets and, except for the liabilities being assumed by

-8-

Hamilton Zanze (as defined in paragraph 3.4.3 of the Purchase Agreement, the "Assumed Obligations"), will vest Hamilton Zanze with all right, title, and interest of the Debtors to the Purchased Assets free and clear of interests, Claims (as that term is defined in the Bankruptcy Code), encumbrances, or liens, including, but not limited to (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or Hamilton Zanze's interest in the Purchased Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets before the consummation of the Sale (the "Closing"), (iii) Non-Investor First Priority Lender Claims and Non-Investor Other Secured Claims, DOT Noteholder Claims, and Non-DOT Investor Claims, (iv) TIC Claims of the other tenants-in-common (the "TIC Owners") of the TIC Properties[3] that executed an (a) TIC Owner Stipulation under paragraph 6.1.4(a) of the Purchase Agreement or (b) a stipulation by which such tenant-in-common consents to the sale of the TIC Property in which it has an interest, or TIC Owners who have had a final judgment under section 363(h) of the Bankruptcy Code entered against them, and (v) (a) those Claims arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, DOT Noteholder Claims, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (b) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, pre-petition management, or affiliates, Claims, objections, liabilities, demands, guaranties, options, rights, contractual or other commitments, indemnities, indemnity obligations and warranties relating to any acts, omissions or

---

[3]    The TIC Properties mean, collectively: (i) 16914 Sonoma Highway, Sonoma, CA; (ii) 19 Merrydale Road, San Rafael, CA; (iii) 109 Professional Center Parkway, San Rafael, CA; (iv) 100 Sycamore Avenue, San Anselmo, CA; (v) 240 Tamal Vista, Corte Madera, CA; (vi) and 1441 Casa Buena Drive, Corte Madera, CA...

SMRH:4835-0014-1042

circumstances arising before the Closing, including those constituting Excluded Liabilities (as defined in paragraph 3.2 of the Purchase Agreement), restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising before or after the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to Claims otherwise arising under doctrines of successor liability or any Claims or Interests related to the Excluded Assets (as defined in Section 1.1.5 of the Purchase Agreement) or the Excluded Liabilities (collectively, the "Interests").  Hamilton Zanze would not have entered into the Purchase Agreement and would not have consummated the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Purchased Assets to Hamilton Zanze, the assignment of the Purchased Contracts and Leases to Hamilton Zanze, and the assumption of the Assumed Obligations by Hamilton Zanze were not, except as otherwise provided for in the Purchase Agreement, free and clear of all Interests of any kind or nature whatsoever, or if Hamilton Zanze would, or in the future could, be liable for any of the Interests including, but not limited to (i) any employment or labor agreements; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (iii) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related Claim, including without limitation Claims that might otherwise arise under (a) the Employee Retirement, Income, Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964,  (d) the National Labor Relations Act, (e) the Worker Adjustment and Retraining Act of 1988, (f) the Age Discrimination and Employee Act of 1967, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Federal Rehabilitation Act of 1973, (i) the Multiemployer Pension Plan Amendments Act of 1980, (j) the Consolidated Omnibus Budget Reconciliation Act of 1985, or (k) any applicable state or local laws or regulations similar to the foregoing laws in clauses (a)-(j); (iv) environmental Claims or liens arising from

-10-

conditions first existing on or before the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. or similar state statute; (v) any bulk sales or similar law; (vi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (vii) any antitrust laws; and (viii) any common law doctrine of de facto merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing.

O. **Adequate Assurance.** Hamilton Zanze, at Closing will cure or has provided adequate assurance of cure of any default existing before the date hereof under any of the Purchased Contracts and Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and Hamilton Zanze has provided adequate assurance of future performance under the Purchased Contracts and Leases, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

Based upon the record of the Hearings, all the proceedings held before this Court in these Chapter 11 Cases, and the foregoing findings of fact and conclusions of law,

**IT IS HEREBY ORDERED THAT:**

A. **Final Approval of Disclosure Statement**

1. On May 27, 2021, the Court approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

B. **Confirmation of the Modified Plan**

2. As none of the modifications to the Plan made in filings with the Court or on the record at the Hearings violate Bankruptcy Code sections 1122 or 1123, such modifications meet the requirements of Bankruptcy Code section 1127(a) and are

-11-

approved. Accordingly, the Modified Plan and each of its provisions (whether or not specifically approved herein) is hereby APPROVED and CONFIRMED in all respects; *provided, however,* that if there is any direct conflict between the terms of the Modified Plan or the Plan Modification Motion and the terms of this Order, the terms of this Order shall control. Each of the terms and conditions of the Plan, including the *Supplement to Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc Dot Noteholders Committee*, filed on May 6, 2021 as Docket No. 612, , and all other exhibits and schedules thereto, are an integral part of the Modified Plan and are incorporated by reference into this Order. All objections and responses to, and statements regarding, the Modified Plan, to the extent that they have not been withdrawn, waived, or settled prior to the entry of this Order or are not cured by the relief granted herein, are hereby expressly overruled.

3. The Limited Objection remains moot under the Modified Plan.

4. With respect to the twenty-nine (29) ballots received after the voting deadline that are summarized on <u>Exhibit B</u> to the Burlacu Declaration, the Proponents are authorized to honor the following elections made on such Ballots as valid and binding:

(a) Any election to contribute Contributed Claims to the PFI Trust;

(b) Any election to treat a Class 4 DOT Noteholder Claim as an unsecured claim under the Modified Plan and release and reconvey any DOT Noteholders' Deed of Trust in such claimant's name; and

(c) Any TIC Investor Treatment Election.

C. **Conditions Precedent**

5. The Effective Date shall not occur and the Modified Plan shall not be consummated unless and until each of the conditions set forth in Section 8.1 of the Modified Plan have been satisfied or duly waived pursuant to Section 8.2 of the Modified Plan.

6. Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 7062 and 9014, this Order is not subject to any stay, and the Modified Plan shall become effective at the option of the Debtors at any time in their sole discretion, after consultation with the Committees, following (a) entry of this Order, and (b) satisfaction of the requirements set forth in the preceding paragraph 4 of this Order.

D. **Successors and Assigns**

7. Pursuant to Bankruptcy Code section 1141, effective as of the Effective Date, the provisions of the Modified Plan (including all documents and agreements executed pursuant to or in connection with the Modified Plan) and the terms of this Order are binding on the Debtors, any and all holders of Claims and Interests (irrespective of whether such Claims or Interests are impaired under the Modified Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Modified Plan), any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors and any and all Persons who are parties to or are subject to the settlements, compromises, releases, discharges and injunctions set forth in the Modified Plan, including, without limitation, any Person deemed a beneficiary under the PFI Trust, and the respective heirs, executors, administrators, representatives, agents, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.

E. **Substantive Consolidation**

8. On the Effective Date, PFI, PISF and the LLC/LP Debtors (collectively, the "Consolidated Estates")[4] shall be substantively consolidated pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code. As a result of such substantive consolidation, on the Effective Date, all property, rights and claims of the Consolidated Estates and all Claims against the Consolidated Estates shall be deemed to be pooled for purposes of distributions under the Modified Plan and, in the PFI Trustee's

---

[4] Professional Investors 28, LLC and PFI Glenwood LLC were previously ordered substantively consolidated with the Debtors by order dated July 12, 2021, entered as docket number 758.

-13-

Case: 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 16:55:55   Page 13 of
148

discretion, other purposes.  Further, as a result of such substantive consolidation, all claims between and among the Consolidated Estates shall be cancelled, provided, however, that (a) while all Consolidated Estates shall be substantively consolidated for purposes of distribution to creditors, such that all Investors shall have claims against a single pool of the Consolidated Estates' assets, the actual substantive consolidation of entities, particularly for tax purposes or the closing of sale transactions, shall be at the option of the Debtors or the PFI Trust, as applicable, and (b) any and all TIC Interests in the Real Properties that are held by any Consolidated Estate shall not be substantively consolidated.

F.    **Vesting of Assets**

9.    On the Effective Date, and subject to Section 2.2 of the Modified Plan, the PFI Trust shall be automatically vested with all of the Debtors' and the Estates' respective rights, title, and/or interest in and to all PFI Trust Assets, other than the Other Assets (as defined below), which Other Assets shall be automatically vested in the PFI Trust as provided in the Modified Plan.  Notwithstanding the occurrence of the Effective Date or anything to the contrary in the Modified Plan, until the closing of the sale of all of the Purchased Assets and any other Real Properties not included in the Purchased Assets, all such assets shall remain property of the respective Estate.  Any and all such assets of the Estates remaining following the Sale of the Purchased Assets and the sale of any other Real Properties not included in the Purchase Assets (such remaining assets, collectively, the "Other Assets") shall vest in the PFI Trust and become PFI Trust Assets.  Except as specifically provided in the Modified Plan or this Order, in accordance with Bankruptcy Code sections 1141 and 1146(a), the PFI Trust Assets and the Other Assets shall automatically vest in the PFI Trust, as applicable, free and clear of all Claims, Liens, or Interests (including, without limitation, any and all DOT Noteholders' Deeds of Trust), subject only to the PFI Trust Interests and the PFI Trust Expenses, as provided for in the PFI Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.  The PFI Trustee shall be the exclusive trustee of the PFI Trust Assets for purposes of 31 U.S.C. §

-14-

Case: 20-30604    Doc# 966    Filed: 11/02/22    Entered: 11/02/22 16:55:50    Page 14 of
148

3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all PFI Trust Assets. The PFI Trust shall hold and distribute the PFI Trust Assets and shall collect and distribute all proceeds from the operations and/or sale of the Estate Assets in accordance with the provisions of the Modified Plan and the PFI Trust Agreement.

G. **Sale of Property**

10. Pursuant to 11 U.S.C. §§ 1123(a)(5)(D), 1141(c), and 363(f), the Debtors are authorized to sell the Property and any other Real Properties not within the definition of Property under the Purchase Agreement, free and clear of any and all Interests in one or more sales. Without limiting the foregoing, the Debtors are specifically authorized to sell the Purchased Assets to Hamilton Zanze, and/or its assigns or designees, including NCP Multifamily, LLC, a Delaware limited liability company, and NCP Commercial, LLC, a Delaware limited liability company, in accordance with the Purchase Agreement. A copy of the Purchase Agreement is attached to this Order as Exhibit A and incorporated by this reference.

11. Pursuant to 11 U.S.C. §§ 1123(a)(5)(D), 1141(c), and 363(f), the Purchase Agreement and documents ancillary thereto, and all of the terms and conditions thereof, and the Sale and related transactions contemplated thereby, are hereby approved. The Debtors are authorized to perform their obligations under and comply with the terms of the Purchase Agreement, and consummate the Sale, under the terms and conditions of the Purchase Agreement. In accordance with the Purchase Agreement and as more fully set forth therein, Closings may occur with respect to the Purchased Assets on a location by location basis.

12. Andrew Hinkelman, Chief Restructuring Officer of PFI, on behalf of each Debtor, is authorized to execute and deliver, and empowered to perform under, consummate and implement the Purchase Agreement, together with all additional instruments and documents that the Debtors or Hamilton Zanze deem necessary or appropriate to implement the Purchase Agreement and effectuate the Sale and to take all

-15-

AMENDED ORDER CONFIRMING SECOND AMENDED JOINT
CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC.

Case: 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 15:55:59   Page 15 of
148

further actions as may be reasonably requested by Hamilton Zanze for the purpose of assigning, transferring, granting, conveying and conferring to Hamilton Zanze or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

13.     Except for the Assumed Liabilities, regardless of whether occurring before, on, or after the Effective Date, the Purchased Assets shall be transferred to Hamilton Zanze, and upon the Closing of such Purchased Assets, shall be, free and clear of all Interests of any kind or nature whatsoever, and all such Interests of any kind or nature whatsoever shall attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.  Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order, all persons and entities, including, but not limited to, all holders of Non-Investor First-Priority Lender Claims, all holders of Non-Investor Other Secured Claims, all holders of DOT Noteholder Claims, all other debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, tort claimants, trade and other creditors, holding interests of any kind or nature whatsoever against or in any of the Debtors, the Excluded Assets, Excluded Liabilities or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Excluded Assets, the Excluded Liabilities, the Purchased Assets, the operation of the Purchased Assets before the Closing, or the Sale, are forever barred, estopped, and permanently enjoined from asserting against Hamilton Zanze, its successors or assigns, its Purchased Assets, or the Purchased Assets, such persons' or entities' Interests.

14.     The transfer of the Purchased Assets to Hamilton Zanze under the Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest Hamilton Zanze with all right, title, and interest of the Debtors and

-16-

Case: 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 14:14:55   Page 16 of 148

the TIC Owners in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever (including those arising out of or related to the Excluded Assets and the Excluded Liabilities) other than the Assumed Liabilities.

15.     If, after a properly noticed demand, any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtors or the Purchased Assets shall not have delivered to the Debtors before the applicable Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Debtors or the Purchased Assets and (b) Hamilton Zanze is hereby authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Interests in the Debtors or the Purchased Assets of any kind or nature whatsoever.

16.     On each applicable Closing of the Sale, each of the Debtors' creditors and any other holder of an Interest is authorized and directed to execute such documents and take all other actions as may be necessary to document the release of its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

17.     The Debtors are authorized and shall pay the allowed secured claims of the holders of the Non-Investor First-Priority Lender Claims and Non-Investor Other Secured Claims in full in cash from the escrows(s) out of the proceeds of the Sale on each applicable Closing or thereafter if agreed to by any such holder of a Non-Investor First-Priority Lender Claim and a Non-Investor Other Secured Claim.  Any holder of an allowed Non-Investor First Priority Lender Claim whose collateral is being sold as part of any sale of real property approved or authorized under the Plan outside of the Portfolio Sale shall be paid in full on the closing of any such sale.

-17-

18.     Subject to and conditioned upon the applicable Closing, the Debtors' assumption and assignment to Hamilton Zanze of the Purchased Contracts and Leases with respect to each Real Property, and Hamilton Zanze's assumption of such contracts with respect to each Real Property on the terms set forth in the Purchase Agreement and including the limitations described herein, is hereby approved. The Debtors are hereby authorized and directed to (a) assume and assign to Hamilton Zanze, effective upon the applicable Closing, the Purchased Contracts and Leases relating to such Real Properties subject to the Closing, free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities and subject to the limitations described herein, and (b) execute and deliver to Hamilton Zanze such documents or other instruments as Hamilton Zanze deems may be necessary to assign and transfer the Purchased Contracts and Leases and Assumed Liabilities to Hamilton Zanze.

19.     All defaults or other obligations of the Debtors under the Purchased Contracts and Leases arising or accruing before the applicable Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) with respect to a Real Property shall be cured by Hamilton Zanze at the applicable Closing, or as soon thereafter as practicable by payment of the Cure Amounts. The schedule attached as <u>Exhibit B</u> to this Order, reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Purchased Contracts and Leases (collectively, the "Cure Amounts"), and no other amounts are or shall be due to the non-Debtor parties in connection with the assumption by the Debtors and the assignment to Hamilton Zanze of the Purchased Contracts and Leases at the time of the applicable Closing. Notwithstanding the foregoing, to the extent objections to the Cure Amounts are not resolved consensually, the Debtors will schedule a hearing to consider such objections after the Plan Modification Hearing and, pending resolution of such objections, shall establish a post-Closing escrow in an amount equal to the differential between the cure amounts alleged in the objections to the Cure Amounts and the respective Cure Amounts set forth in the Assumption Notice. If

-18-

one or more agreements is added to or deleted from Exhibit B on or before the applicable Closing, the Debtors will serve a notice of the amended Exhibit B on the non-Debtor parties to such contract or lease. To the extent such non-Debtor parties are added to Exhibit B, such non-Debtor parties shall have thirteen (13) days thereafter to object to the Cure Amount, unless such period is shortened by the Court.

20. Each non-Debtor party to a Purchased Contract and Lease hereby is forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or Hamilton Zanze, or the Purchased Assets of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising before or existing as of the Closing, included those constituting Excluded Liabilities, or, against Hamilton Zanze, any counterclaim, defense, setoff or any other Claim asserted or assertable against the Debtors; and (b) imposing or charging against Hamilton Zanze or its affiliates any rent accelerations, assignment fees, increases or any other fees because of the Debtors' assumption and assignments to Hamilton Zanze of the Purchased Contracts and Leases. The validity of such assumption and assignments of the Purchased Contracts and Leases shall not be affected by any dispute between the Debtors and any non-Debtor party to a Purchased Contract and Lease relating to such contract's respective Cure Amount.

21. The failure of the Debtors or Hamilton Zanze to enforce at any time one or more terms or conditions of any Purchased Contracts and Leases shall not be a waiver of such terms or conditions, or of the Debtors' and Hamilton Zanze's rights to enforce every term and condition of the Purchased Contracts and Leases.

22. The consideration provided by Hamilton Zanze for the Purchased Assets under the Purchase Agreement is deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and similar laws). The consideration provided by Hamilton Zanze for the

-19-

SMRH:4855-0945-1093.5

1  Purchased Assets under the Purchase Agreement is fair and reasonable and the Sale may

2  not be avoided under section 363(n) of the Bankruptcy Code.

3  　　　　　23.　　This Order (a) shall be effective as a determination that, except for the

4  Assumed Liabilities, at each applicable Closing, all Interests of any kind or nature

5  whatsoever existing as to the Debtors and the Purchased Assets before the Closing have

6  been unconditionally released, discharged and terminated, and that the conveyances

7  described in this Order have been effected, and (b) shall be binding upon and shall govern

8  the acts of all entities including without limitation, all filing agents, filing officers, title

9  agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

10  administrative agencies, governmental departments, secretaries of state, federal, state, and

11  local officials, and all other persons and entities who may be required by law, the duties of

12  their office, or contract, to accept, file, register or otherwise record or release any

13  documents or instruments, or who may be required to report or insure any title or state of

14  title in or to any of the Purchased Assets.

15  　　　　　24.　　Each and every federal, state, and local governmental agency or

16  department is hereby directed to accept any and all documents, instruments, and permits

17  necessary and appropriate to consummate the transactions contemplated by the Purchase

18  Agreement.

19  　　　　　25.　　Except as otherwise expressly provided in the Purchase Agreement,

20  Hamilton Zanze shall have no obligation to pay wages, bonuses, severance pay, benefits

21  (including, without limitation, contributions or payments because of any under-funding

22  with respect to any and all pension plans) or any other payment with respect to employees

23  or former employees of the Debtors.  Except as otherwise expressly provided in the

24  Purchase Agreement, Hamilton Zanze shall have no liability with respect to any collective

25  bargaining agreement, employee pension plan, employee welfare or retention, benefit

26  and/or incentive plan to which any Debtor is a party and relating to the Purchased Assets

27  (including, without limitation, arising from or related to the rejection or other termination

28  of any such agreement), and Hamilton Zanze shall in no way be deemed a party to or

-20-

SMRH:4858-0045-1070.9          AMENDED ORDER CONFIRMING SECOND AMENDED JOINT
                               CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC.

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:55:55    Page 20 of
                                          148

assignee of any such agreement, and no employee of Hamilton Zanze shall be deemed in any way covered by or a party to any such agreement, and except for Assumed Liabilities, all parties to any such agreement are hereby enjoined from asserting against Hamilton Zanze any and all Claims or Interests arising from or relating to such agreement. All notices, if any, required to be given to the Debtors' employees under the Workers Adjustment and Relocation Adjustment Act, or any similar federal or state law, shall be the sole responsibility and obligation of the Debtors, and, notwithstanding anything set forth in this Order, Hamilton Zanze shall have no duties, responsibility, or liability therefore.

26. All entities who are in possession of some or all of the Purchased Assets on the applicable Closing are hereby directed to surrender possession of the Purchased Assets to Hamilton Zanze at the applicable Closing.

27. Except for the Assumed Liabilities or as expressly permitted or otherwise specifically provided for in the Purchase Agreement, Hamilton Zanze shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets other than for the Assumed Liabilities, and shall have no obligations arising out of or related to the Excluded Assets or Excluded Liabilities. Without limiting the generality of the foregoing, and except for the Assumed Liabilities, Hamilton Zanze shall not be liable for any Claims or Interests in or against the Debtors or any of their predecessors or affiliates, and Hamilton Zanze shall have no successor or vicarious liabilities of any kind or character including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising before the Closing, including, but not limited to, liabilities because of any taxes arising, on account of the nefarious acts of the Debtors' prior management, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets before the Closing or the Excluded Assets and Excluded Liabilities before or after the Closing. Hamilton Zanze has given substantial

-21-

consideration under the Purchase Agreement for the benefit of holders of Interests and the Estates. The consideration given by Hamilton Zanze shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability of Hamilton Zanze, releases which the Court holds shall be deemed to have been given in favor of Hamilton Zanze by all holders of Claims against or Interests in the Debtors or their respective assets.

28. Under no circumstances shall Hamilton Zanze be deemed a successor of or to the Debtors for any Interest against or in the Debtors, the Purchased Assets, the Excluded Assets or the Excluded Liabilities of any kind or nature whatsoever. Except for the Assumed Liabilities, the sale, transfer, assignment and delivery of the Purchased Assets shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors. Except for the Assumed Liabilities, all persons holding Interests against or in the Debtors, the Purchased Assets, the Excluded Assets or the Excluded Liabilities of any kind or nature whatsoever (including but not limited to, the Debtors and/or their respective successors, including any trustees thereof, creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state and local officials, maintaining any authority relating to any environmental, health and safety laws, and their respective successors or assigns) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against Hamilton Zanze, its Purchased Assets, its successors and assigns, or the Purchased Assets, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors, the Debtors' estates, their respective officers, directors, shareholders, the Purchased Assets, the Excluded Assets or the Excluded Liabilities. Following the Closing, no holder of an Interest in the Debtors shall interfere with Hamilton Zanze's title to or use and enjoyment of the Purchased Assets based on or related to such Interest, or any actions that the Debtors may take in their Chapter 11 Cases.

## H. Disposition of Property Outside of the Sale

29. Upon the Effective Date, unsold Real Property not subject to the Sale shall remain property of the Estates, and shall not, under any circumstances, vest either automatically or without Court order in any other entity, including the PFI Trust, and instead such property shall expressly remain property of the Estates. Further upon the Effective Date, PFI, its affiliates, and PFI's Chief Restructuring Officer (currently Andrew Hinkelman) are authorized to sell such Real Property under the Modified Plan and take necessary steps to carry out such sale upon: (i) the filing of a supplement (the "Sale Supplement") with this Court outlining the material terms of the proposed sale of such Real Property, (ii) setting a hearing on the Sale Supplement and providing an opportunity for objection to the Sale Supplement, and (iii) obtaining an order from this Court authorizing such sale. Except for any liabilities explicitly assumed by a purchaser of Real Property not subject to the Sale, regardless of whether occurring before, on, or after the Effective Date, such purchased property shall be transferred to the purchaser upon the closing of such sale, free and clear of all Interests of any kind or nature whatsoever, and all such Interests of any kind or nature whatsoever shall attach to the net proceeds of such sale in the order of their priority, with the same validity, force, and effect which they now have as against such property, subject to any claims and defenses the Debtors may possess with respect thereto.

## I. DOT Reconveyances

30. If it will assist to close the Sale of any given Real Property, including to Hamilton Zanze or any other purchaser for purposes of obtaining title insurance, PFI and PISF, in their respective capacities as designated trustees under the deeds of trust, are authorized and empowered to execute reconveyances ("DOT Reconveyances") pursuant to either: (a) DOT Noteholders' written consent (the "DOT Consents"), including but not limited to, consent given in a Ballot(s) cast by such DOT Noteholder, and such consents shall be effective whether the consent is delivered before or after entry of this Order, or (b) a Final Order in the form of a judgment (a "DOT Judgment") by the Debtors (or the Plan

-23-

Trustee as successor to the Debtors) in an adversary proceeding to avoid liens pursuant to 11 U.S.C. § 548 or other applicable grounds against any DOT Noteholder(s) not consenting to the release and reconveyance of their Liens. Mr. Hinkelman is authorized and empowered to act on behalf of PFI and PISF with respect to such reconveyances.

31. PFI and PISF are authorized to record the DOT Reconveyances in the public record of the county in which the Real Property is located upon obtaining DOT Consents, DOT Judgment(s) or a combination of DOT Consents and DOT Judgments as to 100% of the DOT Noteholders as to such particular Real Property.

### J. Executory Contracts and Unexpired Leases

32. On the Effective Date, the Debtors shall assume all of the Purchased Contracts and Leases and all of the other executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements and that have not been previously rejected. Upon consummation of the applicable sale transaction, the Debtors shall assign such contracts and leases to the PFI Trust or the purchaser of the Real Property with which such contract or lease is associated, as appropriate. The Debtors shall have the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date, in the Debtors' reasonable discretion after consultation with each of the Committees and the purchaser(s) of any of the Debtors' Real Properties. The Debtors shall provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to those agreements affected by the amendment.

33. Notwithstanding anything to the contrary set forth in this Order; the *Notice of Possible Assumption and Assignment and Cure Amounts with Respect to Certain Executory Contracts and Unexpired Leases in Connection with Debtors' Sale of Portfolio of Properties* [Docket No. 827]; the Bid Procedures Order; the Modified Plan; or any other document filed in this case prior to entry of this Order, in connection with the Sale by the Debtors of the real property commonly identified as 1050 Northgate Drive, San Rafael, CA 94903, the Debtors shall assume that certain Standard Multi-Tenant Office Lease – Gross dated June 11, 2019, between Debtor Professional Investors 42 LLC and Pacific

-24-

SMRH:4855-0045-1053.8
AMENDED ORDER CONFIRMING SECOND AMENDED JOINT
CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC.

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 15:55:56    Page 24 of 148

Coast Psychiatric Associates, Inc. ("Pacific"), as amended in accordance with its terms from time to time (as amended, the "Pacific Lease") and assign the Pacific Lease to Hamilton Zanze, which assumption and assignment shall be effective at the time of the Closing of the Sale. Pending the effectiveness of the assumption and assignment of the Pacific Lease to Hamilton Zanze, Pacific reserves all rights under applicable law.

34. On the Effective Date all executory contracts and unexpired leases of the Debtors shall be rejected except for (a) executory contracts and unexpired leases that have been previously assumed or rejected by the Debtors, (b) all executory contracts and unexpired leases specified as to be assumed in paragraph 32 above (including all contracts and leases set forth in the Schedule of Assumed Agreements, as may be amended), and (c) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not executory or a lease, but that is later determined by this Court to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365.

35. Any Rejection Claim or other Claim for damages arising from the rejection under the Modified Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims. If one or more Rejection Claims are timely Filed pursuant to the Modified Plan, the PFI Trust may object to any Rejection Claim on or prior to the Claim Objection Deadline. For the avoidance of doubt, the Rejection Claims Bar Date established by the Modified Plan does not alter any rejection claims bar date established by a prior order of this Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

K. **Modified Plan Classification Controlling.**

36. The classification of Claims and Interests for purposes of the distributions to be made under the Modified Plan shall be governed solely by the terms of

the Modified Plan. The classifications and amounts of Claims, if any, set forth on the Ballots tendered to or returned by Holders of Claims or Interests in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Modified Plan for distribution purposes, (c) shall not be binding on the Debtors or the PFI Trust except with respect to voting on the Plan, and (d) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claims or Interests under the Modified Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan).

## L.  **Preservation of Causes of Action**

37.  Except as otherwise provided in the Modified Plan or the Order (including in the Investor Claims Special Provisions), from and after the Effective Date, the PFI Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, (a) any and all of the Debtors' or Estates' Causes of Action, (b) Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and (c) all Avoidance Actions, all as PFI Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Modified Plan and the PFI Trust Agreement.

38.  The PFI Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants, to enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the PFI Trust Actions without notice to or approval from this Court, subject to the PFI Trust Agreement. In accordance with the Modified Plan, without any further notice to or action, order, or approval of this Court, from and after the Effective Date, the PFI Trust may compromise and settle PFI Trust Actions, subject to the PFI Trust Agreement.

Case: 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21   Page 26 of
148

SMRH:4855-0415-1096   AMENDED ORDER CONFIRMING SECOND AMENDED JOINT
CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC.

39. The failure to specifically identify in the Disclosure Statement (including the exhibits and schedules thereto) or the Modified Plan any potential or existing Avoidance Actions or Causes of Action as a PFI Trust Action shall not limit the rights of the PFI Trust to pursue any such Avoidance Actions or Causes of Action. Unless a PFI Trust Action is expressly waived, relinquished, released, compromised, or settled in the Modified Plan or any Final Order (including this Order), the Debtors have expressly reserved such PFI Trust Actions for later resolution by the PFI Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor or the PFI Trust is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

M. **Actions in Furtherance of the Modified Plan**

40. The Proponents and the PFI Trustee are authorized to: (a) take any and all such actions as may be necessary or appropriate to implement, effectuate, and consummate the Modified Plan in accordance with its terms as modified by this Order; and (b) execute any and all such documents and instruments as may be required to effectuate the Modified Plan.

N. **Releases**

41. Any releases contained in the Modified Plan are approved in all respects. The commencement or prosecution by any entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Modified Plan are permanently enjoined.

O. **Non-Discharge of the Debtors; Property Free and Clear**

-27-

42. In accordance with Bankruptcy Code section 1141(d)(3)(A), the Modified Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Modified Plan, including, without limitation, the Real Properties, is free and clear of all Liens, Claims and Interests against the Debtors, except as otherwise provided with respect to the Non-Investor First-Priority Lenders in Section 2.2 of the Modified Plan. As such, no Person holding a Claim (other than the Non-Investor First-Priority Lenders as provided in Section 2.2 of the Modified Plan) or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Modified Plan other than assets required to be distributed to that Person under the Modified Plan.

### P. Injunction

43. As of the Effective Date, all Persons are precluded and barred from asserting against any property to be distributed under the Modified Plan any Claims, rights, Causes of Action, liabilities, Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Modified Plan or this Order. The foregoing discharge, release and injunction are an integral part of the Modified Plan and are essential to its implementation.

44. Notwithstanding any provision in the Modified Plan to the contrary or an abstention from voting on the Plan, no provision of the Modified Plan, or this Order: (a) releases any non-debtor person or entity from any claim or cause of action of the SEC; or (b) enjoins, limits, impairs, or delays the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-debtor person or entity in any forum.

### Q. Term of Injunctions or Stays

45. Unless otherwise provided in the Modified Plan, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in

or arising from the Modified Plan or this Order), shall remain in full force and effect through and inclusive of the Effective Date and thereafter shall automatically terminate unless otherwise ordered by this Court, at which time they are replaced with the injunction set forth in Section P above.

### R. Payment of Statutory Fees

46.    All fees payable pursuant to 28 U.S.C. § 1930, shall be paid by the Debtors on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by the PFI Trust.

### S. Exemption from Transfer Taxes

47.    Pursuant to Bankruptcy Code section 1146, the Portfolio Sale of the Purchased Assets and any other Real Properties, vesting of the PFI Trust Assets in the PFI Trust, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### T. Reference to and Validity and Enforceability of the Modified Plan Provisions

48.    The failure to reference any particular provision in the Modified Plan in this Order shall have no effect on the binding effect, enforceability or legality of such provision and such provision shall have the same binding effect, enforceability or legality as every other provision of the Modified Plan.  Each term and provision of the Modified Plan, as modified or interpreted by the Court, is valid and enforceable pursuant to its terms.

### U. Notice of Entry of Confirmation Order

49.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors are hereby directed to serve a notice of the entry of this Order, as soon as practicable, on all parties that received notice of the Confirmation Hearing, *provided, however,* that the

-29-

SMRH:4855-0445-1090.3    AMENDED ORDER CONFIRMING SECOND AMENDED JOINT
CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC.

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 16:55:55    Page 29 of 148

Debtors shall be obligated to serve such notice only on the record holders of Claims and Interests.

### V. SEC Related Provisions

50. Nothing in the Modified Plan or this Order constitutes a determination as to whether any claim by the SEC for disgorgement or civil penalties is entitled to be subordinated to payment of general unsecured claims, notwithstanding the definition of Other Subordinated Claims in the Modified Plan. Further, the SEC shall retain the right, at any time after the Effective Date, to amend any timely filed proofs of claim to assert such claims in specific dollar amounts.

### W. Waiver of 14-Day Stay

51. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, this Order shall not be stayed and is effective immediately, and the Debtors are immediately authorized to take any action in preparation for the Effective Date and/or any applicable Closing.

### X. Retention of Jurisdiction

52. This Court shall retain jurisdiction to the fullest extent permitted by the Modified Plan, the Purchase Agreement, and applicable law to enforce, implement, interpret and resolve issues and disputes with respect to the Modified Plan and all matters related to the Modified Plan, the Purchase Agreement, including, but not limited to, the Sale.

### Y. Headings

53. The headings contained within this Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Order.

**\*\*END OF ORDER\*\***

## **EXHIBIT A**

# PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

THIS PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS ("**Agreement**"), dated for reference purposes June 16, 2021, is between:

Professional Financial Investors, Inc., a California corporation, and all affiliates
(collectively "**Seller**"),

and

Hamilton Zanze & Company, a California corporation

("**Buyer**").

This Agreement is entered into with reference to the recitals set forth in ARTICLE 1 and constitutes (i) a contract of purchase-and-sale between the parties, and (ii) escrow instructions to Chicago Title Insurance Company ("**Escrow Holder**"), the consent of which appears at the end of this Agreement. Unless this Agreement has been terminated as hereinafter set forth below, Buyer shall deliver to Escrow Holder the Purchase Price (defined below) in the amount and in the manner hereinafter provided, and any additional funds and instruments required under this Agreement from Buyer, to enable Escrow Holder to comply with these instructions which Escrow Holder is to use on or before the Closing Date when the contingencies have been satisfied and when Escrow Holder can perform pursuant to ARTICLE 8, ARTICLE 9 and ARTICLE 10.

## ARTICLE 1. RECITALS

1.1     **The Property**.

      1.1.1     **Real Property**.  Seller is the owner of those certain improved commercial and residential real properties as more particularly described on Exhibit A attached hereto ("**Land**"). The Land is improved with buildings, structures, improvements, and fixtures owned by Seller located on the Land ("**Improvements**"). The Land and the Improvements are referred to as the "**Real Property**", which term shall also encompass each of the following: all of Seller's right, title and interest in and to (a) any easements, privileges, rights of way and other rights, including but not limited to air rights, mineral, water and riparian rights appurtenant to the Land; (b) all affixed tangible personal property, if any, located on and affixed to the Real Property and used in connection with the ownership, operation or maintenance of the Real Property, including without limitation all sign poles, signs, and landscaping and maintenance equipment, and warranties associated therewith; (c) all land use entitlements, development rights, sewer capacity, map approvals, trip generation rights, density allocations and other rights or approvals relating to or authorizing the development, construction, ownership, or the operation of the Real Property, and any bonds held by third parties relating to the same;

      1.1.2     **Personal Property**. Seller is the owner or lessee of certain other tangible personal property that is used by Seller in the operation and management of the Real Property ("**Business**") including, but not limited to, (i) books and records related to the Real Properties, (ii) all removable furnishings at each of (X) the Real Properties, and (Y) PFI's corporate headquarters located at 350 Ignacio Blvd, Suite 100 ("**PFI HQ**") including, without exception, artwork, furniture, equipment, and inventory located at the PFI HQ, Seller's maintenance shop (whether such maintenance shop is located at the PFI HQ or elsewhere), and in the common areas of each Real Property (collectively, "**Common Areas**"), (iii) other equipment (including, information technology equipment), tools, machinery, inventory used in the Business whether located at the PFI HQ, the Common Areas, or elsewhere on each of the Real Properties, (iv) vehicles ("**Vehicles**"), and (v) leasehold improvements ((i)-(v), collectively, "**Personal Property**"), which in part shall be described on Exhibit A-2,  but excluding assets that are not owned by the Seller but located at the PFI HQ

and as identified on Exhibit A-3. Exhibit A-2 shall be prepared with the on-site cooperation of Buyer and contain a description of each of the Vehicles (including VIN number), and such of the Personal Property located in Seller's maintenance shop (whether such maintenance shop may be located at PFI HQ or elsewhere). Exhibit A-2 and Exhibit A-3 shall be completed and delivered to Buyer within fifteen (15) days of the Escrow Opening Date; provided, however, if Seller is unable to complete Exhibit A-2 and Exhibit A-3 by such date, Seller shall not be considered in breach of this Agreement and the Contingency Date shall be extended on a day-for-day basis until Seller completes and delivers Exhibit A-2 and Exhibit A-3 to Buyer;

   1.1.3 **Intellectual Property and Intangible Property**. In the operation of its Business, Seller utilizes certain accounting, investor, and property management software, service marks, trademarks, trade names, logos, domain names, copyrights, website content, investor lists (including, without limitation, contact information/email addresses of such investors), licenses, *Facebook* accounts, *Twitter* accounts, and Certain Environmental Claims (defined below), including, without limitation, as set forth on Exhibit A-4 hereof (collectively, "**Intellectual Property**"). Exhibit A-4 shall be completed and delivered to Buyer within fifteen (15) days of the Escrow Opening Date; provided, however, if Seller is unable to complete Exhibit A-4 by such date, Seller shall not be considered in breach of this Agreement and the Contingency Date shall be extended on a day-for-day basis until Seller completes and delivers Exhibit A-4 to Buyer;

   1.1.4 **Executory Contracts and Unexpired Leases**. Seller is a party to certain personal property leases and real property leases (including, Seller's right, title and interest in and to all leases, subleases, subtenancies, licenses, occupancy agreements and concessions affecting the Real Property or any portion thereof or space therein now or hereafter existing, including any and all amendments thereto, and all right, title and interest of Seller under the same, including, without limitation, any unapplied refundable tenant security deposits) (collectively, "**Leases**") and contracts (including Seller's right, title and interest in and to service contracts, maintenance agreements, construction contracts, architect's agreements, leasing brokerage agreements, parking agreements, consultant agreements, management contracts, bonds, other contracts or agreements) (collectively, "**Contracts**") with respect to the operation and management of the Property (defined below), which Buyer, upon written notice given to Seller on or before three (3) Business Days before the Auction (as defined in Paragraph 20.7), may elect to have certain Contracts and Leases assumed by Seller and assigned to Buyer as of the Closing Date pursuant to Paragraph 13.2, subject, however, to the terms of Paragraph 7.4 below (collectively, "**Purchased Contracts and Leases,**" and collectively with Real Property, Personal Property, and Intellectual Property, the "**Property**"); and

   1.1.5 **Excluded Assets**. Notwithstanding the foregoing, Property shall not include any of Seller's right, title, or interest in or to the following (collectively, the "**Excluded Assets**"): (i) any lump sum or upfront payments paid to or earned by Seller or its predecessors under any of the Contracts that are not assumed and assigned to Buyer, (ii) any unearned insurance premiums, (iii) any insurance policies or insurance contracts owned or held by Seller or its affiliates in connection with the Property prior to the Closing Date, (iv) any and all deposits, cash and other accounts owned or held by Seller or its affiliates, except for any unapplied refundable tenant security deposits, (v) the Contracts and Leases that are not assumed by and assigned to Buyer pursuant to the terms herein, and (vi) any and all claims, demands, lawsuits, legal proceedings, awards, judgments, or settlement amounts related to or arising from Seller's purchase of the Real Property from the prior owner(s), Seller's pre-petition management team, or other third parties, excluding, however, any environmental claims, demands, lawsuits , if any,  regarding the Real Property but excluding any such environmental claims, demands, or lawsuits to which Seller is a party ("**Certain Environmental Claims**").

  1.2 **Bankruptcy Case**. Seller filed voluntary petitions for relief under Chapter 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Northern District of California, San Francisco Division ("**Bankruptcy Court**") for the Bankruptcy Case (defined below), lead

Case No. 20-30604 of Professional Financial Investors, Inc. ("**PFI**"), which is being jointly administered with the Chapter 11 cases of PFI's affiliate entities ("**Affiliated Entities,**" with PFI, the "**Debtors**").

1.3     **Confirmation of Plan**. On May 27, 2021, the Bankruptcy Court confirmed the Amended Joint Plan of Reorganization of the Debtors proposed by the Debtors, the Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee ("**Plan**").   The transactions contemplated herein constitute an Alternative Restructuring Transaction under the Plan.

1.4     **Intention of the Parties**. Buyer wishes to purchase Seller's rights, title, and interest in and to all the Property free and clear of all Liens (defined below) pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, and Seller is willing to sell Seller's rights, title, and interest in and to all the Property to Buyer, all on the terms and subject to the conditions of this Agreement.

## ARTICLE 2. DEFINITIONS

2.1     **Definitions**. Unless the context otherwise indicates, whenever used in this Agreement:

2.1.1     "**Allocated Purchase Price**" means the allocation of the Purchase Price to each site of Real Property as agreed upon by the parties pursuant to a separate written agreement of even date herewith.   The parties hereby acknowledge and agree that the Allocated Purchase Price is intended only to be used as provided in Paragraphs 3.3.1, 6.1.4, 6.1.5, and 17.1.

2.1.2     "**Amended SubCon Order**" means an order amending the Bankruptcy Court's May 28, 2021 Order Granting Debtors' Motion For Order Of Substantive Consolidation Of Non-Debtor Affiliates Professional Investors 28, LLC And PFI Glenwood, LLC With Debtors entered as docket number 666 in the Bankruptcy Case to make the substantive consolidation of Professional Investors 28, LLC and PFI Glenwood, LLC effective immediately.

2.1.3     "**Bankruptcy Case**" means the Chapter 11 proceeding entitled in re Professional Financial Investors, Inc., case number 20-30604 and all those proceedings being jointly administered with case numbers 20-30579, 20-30908, 20-30909, 20-30910, 20-30911, 20-30912, 20-30913, 20-30914, 20-30915, 20-30916, 20-30917, 20-30919, 20-30920, 20-30922, 20-30923, 20-30924, 20-30925, 20-30927, 20-30928, 20-30929, 20-30930, 20-30934, 20-30935, 20-30936, 20-30937, 20-30938, 20-30939, 20-30940, 20-30941, 20-30942, 21-30082, 21-30083, 21-30084, 21-30085, 21-30086, 21-30087, 21-30088, 21-30089, 21-30093, and 21-30094, all pending in the Bankruptcy Court.

2.1.4     "**Business Day**" means any day when City's administration offices are open for the transaction of business by members of the general public.

2.1.5     "**Cash**" means (i) currency, or (ii) a check(s), currently dated, payable to Escrow Holder and honored upon presentation for payment or otherwise constituting immediately available funds, or (iii) if Escrow Holder requires or if the party depositing funds so desires, funds wire-transferred into Escrow Holder's general escrow account(s).

2.1.6     "**City**" means, as applicable, the city in which each Real Property is located.

2.1.7     "**Closing**" or "**Close of Escrow**" means the date Seller's Grant Deeds are filed for record with the County Recorder of the County, conveying the Land from Seller to Buyer.

2.1.8     "**Closing Date**" means the date that is one (1) Business Day following the Sale Order (defined below) becoming a final order (i.e. such order shall not have been stayed,

vacated or otherwise rendered ineffective, and to which the fourteen (14) day appeal period from entry of the Sale Order has expired or been waived by Buyer, in Buyer's sole discretion), unless such date is extended (i) at the request of the Escrow Holder because additional time is needed by Escrow Holder to effectuate the closing, or (ii) by agreement of the parties.

2.1.9 "**Commercial Leases**" is defined in Paragraph 6.1.5.

2.1.10 "**Contingency Date**" means August 2, 2021; however, Buyer shall have the right to extend the Contingency Date through and until August 16, 2021 if Buyer delivers, on or before August 2, 2021, (i) written notice of such extension to Seller, and (ii) the Extension Deposit (as defined below) to Escrow Holder.

2.1.11 "**Contracts**" is defined in Paragraph 1.1.4.

2.1.12 "**County**" means, as applicable, the county in which each Property is located.

2.1.13 "**Deposits**" means the deposits made by Buyer pursuant to Paragraph 3.4 below.

2.1.14 "**Escrow**" means the escrow created hereby.

2.1.15 "**Escrow Opening Date**" means the date Escrow Holder receives this Agreement, signed by Buyer and Seller.

2.1.16 "**Escrow Opening Deposit**" means the sum of Five Million Dollars ($5,000,000.00) Cash.

2.1.17 "**General Assignment and Transfer**" means an instrument in the form of Exhibit C, pursuant to which Seller shall convey to Buyer any tangible or intangible personal property owned by Seller other than Excluded Assets that relates to each Real Property.

2.1.18 "**Hazardous Materials**" means any substance, material or other thing regulated by or pursuant to federal, state or local statutes or ordinances by reason of its potential for harm to human health or the environment, or because of its flammability, toxicity, reactivity or corrosiveness, including but not limited to those substances defined as "hazardous substances", "hazardous materials", or "toxic substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601 et seq.; or the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801 et seq.; or the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq.; and also including those substances defined as "hazardous wastes" in Section 25117 of the California HEALTH & SAFETY CODE or as "hazardous substances" in Section 25316 of the California HEALTH & SAFETY CODE; in the regulations adopted and publications promulgated pursuant to all such current and future federal and state laws and local ordinances; and those chemicals to which reference is made in the Safe Drinking Water and Toxic Enforcement Act of 1986, Section 25249.5 et seq. of the California HEALTH & SAFETY CODE.

2.1.19 "**Individual Property**" is defined in Paragraph 17.1.

2.1.20 "**Leases**" is defined in Paragraph 1.1.4.

2.1.21 "**Lien**" means any lien, including, without limitations, mechanic liens, encumbrance, hypothecation, pledge, mortgage, deed of trust, security interest, claim, charge, option, right of first refusal, including, without limitation, any right of first refusal of any Tenants-In-Common under any agreement by and between Seller and Tenants-In-Common, easement,

encroachment, servitude, or other encumbrance, other than Permitted Encumbrances and Permitted Exceptions.

2.1.22 "**Non-Debtor Property**" shall mean the Property owned by Professional Investors 28, LLC and PFI Glenwood, LLC, as described on Exhibit A-1.

2.1.23 "**Nonrefundable Deposit**" is defined in Paragraph 3.4.1.

2.1.24 "**Permitted Encumbrances**" means any items or exceptions to the Surveys (defined below) or title which are accepted or waived in writing by Buyer pursuant to the terms of this Agreement.

2.1.25 "**Permitted Exceptions**" means those covenants, conditions, reservations, restrictions, easements and other matters (excepting Property Taxes (defined below), deeds of trust, mechanic liens, other matters placed on title by Seller and/or TIC after the Title Approval Date without Buyer's consent), and other liens listed as exceptions to coverage in the Preliminary Reports (defined below) that are approved by Buyer pursuant to Paragraph 6.1.2, including, without limitation, any right of first refusal of any Tenants-In-Common Agreements relating to any Unsigned Property in which Buyer acquires Seller's interest.

2.1.26 "**Post-Petition Construction Contracts Assignment and Transfer**" means an instrument in the form of Exhibit F, pursuant to which Seller shall convey to Buyer one or more of the Post-Petition Construction Contracts (defined below).

2.1.27 "**Preliminary Reports**" means those certain preliminary reports to be issued by Title Insurer (defined below) for each portion of the Real Property as soon as possible after the Escrow Opening Date, together with legible copies of all recorded documents referred to therein and plotted easements prepared by the Title Insurer (defined below).

2.1.28 "**Property Documents**" means all documents provided in the virtual data room or before fifteen (15) days after the Escrow Opening Date.

2.1.29 "**Property Taxes**" means all charges against the Land evidenced by the secured tax bill issued by the Tax Collector of the County, including, but not limited to, amounts allocated to (i) County or City general governmental purposes, (ii) bonded indebtedness of County or City, (iii) bonded or other indebtedness and operating expenses of any school, college, sewer, water, irrigation, hospital, library, utility, county service or other district, and (iv) any other lawful purpose.

2.1.30 "**Purchase Price**" is defined in Paragraph 3.3 below.

2.1.31 "**Qualified Competing Bid**" is defined in Paragraph 20.7.1.

2.1.32 "**Sale Motion**" means the motion of Seller seeking approval and entry of the Sale Order (defined below) in the Bankruptcy Case. Seller and Buyer agree to cooperate in preparing and filing notice(s) and motion with the court for the sale of the Property to Buyer.

2.1.33 "**Sale Order**" means an order of the Bankruptcy Court issued pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code in form and substance acceptable to Buyer, Buyer's lender, Title Insurer, and Seller, meeting the requirements of Paragraph 20.3, and which shall provide, among other things, (i) approval of this Agreement and all of the terms and conditions hereof; (ii) approval and authorization of the sale of the Property to Buyer free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code; (iii) approval and authorization for Seller to execute and deliver the requisite documents to effectively convey title to the Property to Buyer; (iv) the assumption and assignment of the Purchased Contracts and Leases to Buyer; (v) the

consummation of the transactions contemplated by this Agreement and all other transactions and agreements contemplated hereby; and (vi) the finding that Buyer is a good faith purchaser for value and is purchasing the Property in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code.

2.1.34    "**Sale Procedures**" means the bidding and sale procedures described in Paragraph 20.4.

2.1.35    "**Sale Procedures Order**" means a final order of the Bankruptcy Court, in form and substance reasonably acceptable to Buyer and Seller, meeting the requirements of Paragraph 20.4, and which, among other things establishes a date by which Qualified Competing Bids must be submitted.

2.1.36    "**Seller's Grant Deeds**" means a grant deed in the form of <u>Exhibit B</u> for each individual portion of the Real Property.

2.1.37    "**Surveys**" is defined in Paragraph 6.1.3.

2.1.38    "**TIC Owners**" is defined in Paragraph 6.1.4.

2.1.39    "**TIC Documents**" is defined in Paragraph 6.1.4.

2.1.40    "**Title Approval Date**" means the date which is ten (10) days prior to the Contingency Date.

2.1.41    "**Title Insurer**" means Chicago Title Insurance Company.

2.1.42    "**Title Policies**" means the standard 2006 ALTA owner's policy of title insurance for each individual portion of the Property, with liability in the amount of the applicable Purchase Price for such individual portion of the Property, plus a mechanic's lien endorsement, insuring that the fee title to the Land vests in Buyer subject only to the Permitted Exceptions and other matters described in Paragraph 8.1.4; provided, however, in the event Buyer obtains an irrevocable commitment from Title Insurer prior to the Contingency Date to issue an ALTA extended coverage owner's policy of title insurance for each individual portion of the Property containing those certain endorsements that Title Insurer irrevocably agrees to issue in connection therewith, then the definition of Title Policies shall be conformed to mean such title policies.

## ARTICLE 3. AGREEMENT OF PURCHASE AND SALE

3.1    <u>**Agreement of Purchase and Sale**</u>. In consideration of the mutual promises and covenants contained in this Agreement, on the Closing Date and subject to the terms and conditions of this Agreement, Seller shall sell, assign, transfer, convey and deliver to Buyer, free and clear of all Liens and Buyer shall acquire and assume, Seller's right, title and interest in and to the Property.

3.2    <u>**Excluded Liabilities**</u>.    Buyer shall not assume or become responsible for any duties, obligations or liabilities of Seller that are not assumed by Buyer pursuant to the terms of this Agreement (the "**Excluded Liabilities**"), and Seller shall remain fully and solely responsible for all of such Seller's debts, liabilities, contract obligations, expenses, obligations and claims of any nature whatsoever related to the Property and the Business unless (i) expressly assumed by Buyer under this Agreement, (ii) pursuant to any such conveyance document executed in connection therewith, or (iii) those duties, obligations, or liabilities of Seller incurred after the filing of the Bankruptcy Case in connection with design agreements, construction contracts and related agreements (collectively, "**Post-Petition Construction Contracts**") entered into by Seller in connection with repairs, maintenance, and other improvements to the Real Property and to which certain obligations and liabilities remain as of the Closing Date ( "**Post-Petition Liabilities**");

provided that such Post-Petition Liabilities may be amended or modified by Seller, with the consent of Buyer, in Buyer's reasonable discretion, up to ten (10) days prior to the Auction.

3.3     **Purchase Price**. Subject to the terms and conditions of this Agreement, the purchase price ("**Purchase Price**") shall consist of the following:

3.3.1     Cash payment to Sellers of Four Hundred Thirty-Four Million Dollars ($434,000,000), less (i) applicable Allocated Purchase Price attributable to any such Excluded Unsigned Properties (as defined in Paragraph 6.1.4 below) as identified in <u>Exhibit A-1</u>, should Buyer elect not to purchase Seller's right, title, and interest in the Excluded Unsigned Properties pursuant to Paragraph 6.1.4, (ii)  application of the Deposits;  (iii) payments due, as of the Closing under any Post-Petition Construction Contract that were not timely paid by Seller, (iv) and proration credits provided Paragraph 9.3.4;

3.3.2     Payment of cure costs, if any, associated with any Purchased Contracts and Leases;

3.3.3     The aggregate amount of assumed Post-Petition Liabilities associated with the Post-Petition Construction Contracts; and

3.3.4     Lump-sum payment of Seller's accrued vacation and other paid time off (collectively, "**PTO**") as of the Closing, only with respect to Hired Employees (as defined in Paragraph 9.3.5). The amount paid pursuant to this Paragraph 3.3.4 shall  be paid directly to the respective Hired Employee regardless of the payment priorities of the Bankruptcy Code and the payment provisions under the Plan.  For the avoidance of doubt, Buyer is not assuming any claims, liabilities, contract obligations, expenses, or obligations of the Seller with respect to Seller employees, including, without exception, claims, obligations, charges arising under all state or federal statutes, laws and ordinances.  The aggregate amount of items in Paragraphs 3.3.2, 3.3.3, and 3.3.4 shall be referred to as "**Assumed Obligations**".

3.4     **Deposits**.

3.4.1     <u>Escrow Opening Deposit</u>.  Buyer shall, within three (3) Business Days following delivery of this Agreement, deliver to Escrow Holder the Escrow Opening Deposit. The Escrow Opening Deposit shall be invested by Escrow Holder pursuant to Paragraph 10.1, and both the Escrow Opening Deposit and all interest accrued thereon shall be applicable to the Purchase Price. Notwithstanding any provision set forth in this Agreement to the contrary, $100.00 of the Escrow Opening Deposit ("**Nonrefundable Deposit**") shall be nonrefundable to Buyer in all circumstances (other than Seller's default) at any time prior to the Closing. The Nonrefundable Deposit shall be applicable to the Purchase Price at Closing. The Nonrefundable Deposit is in addition to and independent of all other consideration provided in this Agreement.

3.4.2     <u>Extension Deposit</u>.  Buyer shall deliver an additional Two Million Dollars ($2,000,000) to Escrow Holder (the "**Extension Deposit**") in the event Buyer elects to extend the Contingency Date as provided in Paragraph 2.1.10 above. The Extension Deposit shall be invested by Escrow Holder pursuant to Paragraph 10.1, and both the Extension Deposit and all interest accrued thereon shall be applicable to the Purchase Price.

3.4.3     <u>Go-Hard Deposit</u>.  Buyer shall, if Buyer elects not to terminate this Agreement pursuant to Paragraph 6.1.1, deliver to the Escrow Holder the difference between Ten Million Dollars ($10,000,000) and the aggregate amount delivered to the Escrow Holder pursuant to Paragraphs 3.4.1 and 3.4.2 ("**Go-Hard Deposit**"), within one (1) Business Day after the Contingency Date. The Go-Hard Deposit shall be invested by Escrow Holder pursuant to Paragraph

10.1, and both the Go-Hard Deposit and all interest accrued thereon shall be applicable to the Purchase Price.

        3.4.4    <u>Auction Deposit</u>. Buyer shall deliver to the Escrow Holder within one (1) Business Day after Buyer receives written email confirmation that there is at least one Qualified Competing Bid and the Auction will be proceeding as provided in Paragraph 20.6 and copies of the Qualified Competing Bid, the difference between Twenty-Five Million Dollars ($25,000,000) and the aggregate amount delivered to the Escrow Holder pursuant to Paragraphs 3.4.1, 3.4.2, and 3.4.3 ("**Auction Deposit**").

    3.5    <u>Non-Refundable Nature of Deposit</u>. If Seller and Buyer complete the purchase and sale of the Property in accordance with this Agreement, the Deposits shall be applied to payment of the Purchase Price for the Property in accordance with Paragraph 3.4 above or returned to Buyer in accordance with Paragraph 20.8, if Buyer is not the Successful Bidder (as defined in Paragraph 20.3). If the purchase and sale of the Property is not so completed and this Agreement terminates as provided in Paragraph 14.2 (Buyer's Default), then Seller shall be entitled to damages as provided in Paragraph 14.2. If the purchase and sale of the Property is not so completed and this Agreement terminates for any reason other than pursuant to Paragraph 14.2, then the Deposits shall be returned to Buyer upon such termination of this Agreement pursuant to Paragraph 6.4. As noted in Paragraph 20.8, if Buyer is not the Successful Bidder and Buyer agrees to be the back-up bidder as provided in Paragraph 20.8, then the Auction Deposit less Five Million Dollars ($5,000,000) shall be returned to Buyer pursuant to Paragraph 20.8 and such $5,000,000 ("**Back-up Deposit**") shall be the Buyer's deposit for purpose of the transaction should the Successful Bidder not close.

## ARTICLE 4. BUYER'S DELIVERIES TO ESCROW HOLDER

    4.1    **Deliveries Before Closing Date**. Subject to the following Paragraph, Buyer shall, no later than 3:00 p.m. on the Business Day before the Closing Date (or, with respect to Cash being wire-transferred to Escrow Holder, no later than 11:00 a.m. on the Closing Date), deliver to Escrow Holder each of the following:

        4.1.1    <u>Cash for Purchase Price</u>. In Cash, the balance of the Purchase Price after crediting the Deposits and application of the prorations as set forth in this Agreement.

        4.1.2    <u>General Assignments</u>. The General Assignment and Transfer with respect to each separately identified Real Property, signed by Buyer.

        4.1.3    <u>Post-Petition Construction Contracts Assignments</u>. The Post-Petition Construction Contracts Assignment and Transfer with respect to each separately identified Post-Petition Construction Contract, signed by Buyer.

        4.1.4    <u>Additional Documents</u>. Any additional documents that Escrow Holder or Title Insurer may reasonably require that are not inconsistent with the other provisions of this Agreement.

        4.1.5    <u>Buyer's Charges</u>. In Cash, the charges to Buyer under ARTICLE 9.

    4.2    **Condition to Delivery**. Buyer's obligation under the preceding Paragraph to deliver funds is conditional upon Buyer's receipt of written or telephonic notification by Escrow Holder that, except for the delivery of such funds, this Escrow is in condition to be closed. Escrow Holder is instructed to give the notification to Buyer when this Escrow can, except as to the receipt and disbursement of Cash and the recording of documents, be closed.

## ARTICLE 5. SELLER'S DELIVERIES TO ESCROW HOLDER

5.1     **Deliveries Before Closing Date**. Seller shall (i) convey to Buyer the fee estate to the Property free of all encumbrances and matters except those permitted by Paragraph 8.1.4, and (ii) no later than 3:00 p.m. of the Business Day before the Closing Date (other than as to the timing for the deliveries required under Paragraph 5.1.12 below) deliver to Escrow Holder:

       5.1.1     <u>Seller's Grant Deeds</u>. Seller's Grant Deeds, conveying each individual portion of the Real Property to Buyer, signed and acknowledged by the authorized individual of the Seller approved by the Bankruptcy Court and as consented to by the Title Insurer pursuant to Paragraph 6.1.6.

       5.1.2     <u>General Assignments</u>. The General Assignment and Transfer with respect to each separately identified Real Property, signed by Seller.

       5.1.3     <u>Bill of Sale</u>.  A Bill of Sale, attached hereto as <u>Exhibit H</u>, conveying the Seller's interest in any Personal Property and Intellectual Property to Buyer, to the extent any such Personal Property and Intellectual Property is not included in a General Assignment and Transfer referenced in Paragraph 5.1.2.

       5.1.4     <u>Post-Petition Construction Contracts Assignments</u>.  The Post-Petition Construction Contracts Assignment and Transfer with respect to each separately identified Post-Petition Construction Contract, signed by Seller.

       5.1.5     <u>Assignments of Purchased Contracts and Leases</u>.  Assignment of Purchased Contracts and Leases with counter-party consent, if such consent is necessary to effectuate the assignment to Buyer, in a form satisfactory to Buyer.

       5.1.6     <u>Vehicle Titles</u>.  Appropriate transfer documents conveying title to any vehicles being acquired by Buyer.

       5.1.7     <u>Tenants-In-Common Agreements.</u> Subject to the terms of Paragraph 6.4, the Tenants-In-Common Agreements needed in connection with acquisition of the Signed Properties (defined below).

       5.1.8     <u>FIRPTA Affidavit</u>. A FIRPTA affidavit stating that Seller is not a "foreign person" as defined in the federal Foreign Investment in Real Property Tax Act of 1980 and the 1984 Tax Reform Act, and a California Form FTB 593, as and to the extent prescribed by California law and California Revenue and Taxation Code Sections 18805 and 26131; provided, however, that in the event Seller is unable or unwilling to deliver the FIRPTA affidavit and/or FTB 593, in lieu thereof Escrow Holder shall adjust the funds payable to Seller in such a manner as to comply with the withholding provisions of such statutes.

       5.1.9     <u>Documents</u>. Originals of the Purchased Contracts and Leases to the extent in Seller's possession or control, and otherwise, copies thereof.

       5.1.10     <u>Certificate</u>. A certificate from Seller that each of Seller's representations and warranties contained in Paragraphs 12.5 and 12.7 below is true and correct as set forth herein as of the Closing Date.

       5.1.11     <u>Notice Letters</u>.  A form of the Notice Letters (herein so called) originally executed by Seller and addressed to tenants under all Leases, in form and substance as set forth in <u>Exhibit D</u> attached hereto.

5.1.12   <u>Rent Rolls and A/R Reports</u>. Ten (10) days prior to the Closing Date, Seller shall deliver to Buyer an updated rent roll and accounts receivable reports for the Real Property.

5.1.13   <u>Additional Documents</u>. Any additional documents that Escrow Holder or Title Insurer may reasonably require that are not inconsistent with the other provisions of this Agreement, including, without limitation, any customary and commercially reasonable gap indemnity covering the period between the authorization of Closing and the date that the Seller's Grant Deeds record and a customary and any commercially reasonable owner's affidavit in favor of Title Insurer sufficient for Title Insurer to issue the Title Policies, and lien releases with respect to Post-Petition Construction Contracts.

5.1.14   <u>Seller's Charges</u>. If the funds deposited with Escrow Holder by Buyer are insufficient to (i) discharge all encumbrances other than those permitted under Paragraph 8.1.4, and (ii) pay the charges to Seller under ARTICLE 9, Seller shall deliver to Escrow Holder sufficient funds and instruments to discharge and pay such encumbrances and charges.

**ARTICLE 6. SPECIAL CONDITIONS; WAIVER; TERMINATION**

6.1   **Special Conditions**. The Close of Escrow is subject to the following special conditions:

6.1.1   <u>Suitability of the Property for Buyer's Purposes</u>. Buyer's approval of the physical condition, soils, appearance, marketability, investment potential, geological conditions, tax bills, any studies or investigations made by Buyer pursuant to Paragraph 11.3 below, the Property Documents and all other aspects of the Property which Buyer, in its sole discretion, deems material to Buyer's decision to purchase the Property. This condition shall be conclusively deemed to have been approved unless Buyer delivers to Seller and Escrow Holder, on or before the Contingency Date, written notice of disapproval. In the event that Buyer should in its sole discretion disapprove this condition on or before the Contingency Date, then (i) the Nonrefundable Deposit shall be delivered to Seller, (ii) the balance of the Escrow Opening Deposit (and the Extension Deposit, if made) and all accrued interest thereon shall be returned to Buyer and this Agreement shall terminate; provided, however, that Buyer's obligations under Paragraph 11.3 shall survive any such termination.

6.1.2   <u>Title</u>. Buyer's approval of the covenants, conditions, reservations, restrictions, easements and other matters (excepting delinquent taxes, deeds of trust or mechanic's liens) described in the Preliminary Reports and depicted on the Surveys, and of any title commitment requested by Buyer from Title Insurer.  Unless Buyer delivers written notice of disapproval of the state of title to Seller and to Escrow Holder on or before the Title Approval Date, this special condition shall be conclusively deemed to have been satisfied, in which case all covenants, conditions, reservations, restrictions, easements listed as exceptions to coverage in the Preliminary Reports shall be conclusively deemed to be Permitted Exceptions (excepting deeds of trust, mechanic's liens, lis pendens notices and any other matters placed on title by Seller or Tenants-In-Common after the Title Approval Date without Buyer's consent; provided, however that any such matter placed on title by Tenants-In-Common shall not constitute a default by Seller and Buyer shall not have a right to terminate this Agreement as a result thereof, but Buyer shall have the right to either (A) exclude such Individual Property from the definition of Property and designate such Individual Property as an Excluded Unsigned Property (as defined in Paragraph 6.1.4 below) or (B) require Seller to cure such matter placed on title by Tenants-In-Common in Bankruptcy Court within fourteen (14) days after Seller receives written notice of Buyer's election.  In connection with subsection (B), the Closing for any such Individual Property shall be extended to permit such cure and upon such cured matter being removed from title, the Closing for such Individual Property shall occur on the earlier of the Closing Date (if such cure is effectuated before the Closing Date) or five (5) Business Days after the cure is completed and such cured matter is removed from title.  In lieu of simple approval or disapproval of the state of title, Buyer may at its option deliver to Seller and to Escrow Holder, on or before the Title Approval Date, Buyer's conditional approval thereof

accompanied by a written statement of the exceptions listed in the Preliminary Reports that are objected to by Buyer ("**Title Objections**") and which must be removed by Seller or endorsed by Title Insurer in order for Buyer's approval to become unconditional. In the event Buyer does provide such conditional approval and list of Title Objections, Seller shall, within five (5) days after receipt of Buyer's Title Objections, respond in a writing delivered to Buyer and to Escrow Holder in which Seller, as to each exception objected to by Buyer, either (i) agrees to remove (or cause to be removed) the exception at or before the Close of Escrow or obtain the endorsement (if any) specified by Buyer in the objection as an acceptable cure therefor, or (ii) states Seller's unwillingness or inability to remove or endorse the exception in question. Seller's failure to respond timely to Buyer's conditional approval and list of Title Objections will be deemed conclusively to be Seller's unwillingness to remove any of the Title Objections (other than Required Corrections). If Seller does agree to all the Title Objections, then only those exceptions listed in the Preliminary Reports not objected to by Buyer shall be Permitted Exceptions, and any endorsements specified by Buyer in the Title Objections shall be deemed part of the Title Policies for purposes of Paragraph 8.1.4 and Paragraph 9.5. If Seller does not agree to all the Title Objections, then Buyer shall, within five (5) days after receipt of Seller's notice stating unwillingness or inability to remove any Title Objection or provide any specified endorsements, in a writing delivered to Seller and to Escrow Holder, at Buyer's sole option either (a) terminate this Escrow and Agreement pursuant to Paragraph 6.4 below, or (b) waive those Title Objections not agreed to be removed by Seller or endorsed as specified, in which case all exceptions listed in the Preliminary Reports, other than the Title Objections agreed to be removed by Seller (and except as set forth below with respect to Required Corrections), will be Permitted Exceptions. Buyer's failure to respond, timely, to Seller's written response to Buyer's conditional approval and list of Title Objections will be deemed conclusively to be Buyer's election to waive the Title Objections not agreed to be removed by Seller. Notwithstanding anything in the foregoing to the contrary, in no event will any delinquent taxes, deeds of trust or other financing documents, or any mechanic's liens, abstracts of judgment or *lis pendens* notices placed upon the Property by a third party in connection with work performed or alleged to have been performed on the Property on behalf of Seller (unless caused by or placed upon the Property on behalf of Buyer or Buyer's agents, lenders, contractors, subcontractors and(or) consultants) (collectively, "**Required Corrections**"), whether or not timely objected to, be deemed to be Permitted Exceptions and shall be removed or terminated, as applicable, by Seller on or before the Closing.  Nothing in this Paragraph shall limit or otherwise affect Buyer's right in its discretion to disapprove the suitability of the Property pursuant to Paragraph 6.1.1.

      6.1.3   <u>ALTA Surveys</u>. Buyer shall obtain new surveys of the Property to meet Title Insurer's requirements (the "**Surveys**") before the Title Approval Date. Unless Buyer delivers written notice of disapproval of the Surveys to Escrow Holder on or before the Title Approval Date, this special condition shall be conclusively deemed to have been satisfied, and all matters shown on the Surveys (unless agreed to be removed by Seller pursuant to Paragraph 6.1.2) shall be conclusively deemed to be Permitted Exceptions. In lieu of simple approval or disapproval of the Surveys, Buyer may at its option deliver to Seller and to Escrow Holder, on or before the Title Approval Date, Buyer's conditional approval thereof accompanied by a written statement of the specific items shown on the Surveys that were not included in the Preliminary Reports which are objected to by Buyer ("**Survey Objections**") and which must be removed by Seller or endorsed by Title Insurer in order for Buyer's approval to become unconditional. In the event Buyer does provide such conditional approval and list of Survey Objections, Seller shall, within five (5) days after receipt of Buyer's Survey Objections, respond in a writing delivered to Buyer and to Escrow Holder in which Seller, as to each matter objected to by Buyer, either (i) agrees to remove (or cause to be removed) the matter at or before the Close of Escrow or obtain the endorsement (if any) specified by Buyer in the objection as an acceptable cure therefor, or (ii) states Seller's unwillingness or inability to remove or endorse the exception in question. Seller's failure to respond timely to Buyer's conditional approval and list of Survey Objections will be deemed conclusively to be Seller's unwillingness to remove any of the Survey Objections. If Seller does agree to all the Survey Objections, then only those matters shown on the Surveys not objected to by Buyer shall be Permitted Exceptions, and any endorsements specified by Buyer in the Survey Objections shall be deemed part of the Title Policies for purposes of Paragraphs 8.1.4 and 9.5. If Seller does not agree

to all the Survey Objections, then Buyer shall, no later than the earlier of the Contingency Date or five (5) days after receipt of Seller's notice stating unwillingness or inability to remove any Survey Objection or provide any specified endorsements, in a writing delivered to Seller and to Escrow Holder, at Buyer's sole option either (a) terminate this Escrow and Agreement pursuant to Paragraph 6.4 below, or (b) waive those Survey Objections not agreed to be removed by Seller or endorsed as specified. Buyer's failure to respond, timely, to Seller's written response to Buyer's conditional approval and list of Survey Objections shall be deemed conclusively to be Buyer's election to waive the Survey Objections not agreed to be removed by Seller.

        6.1.4   <u>Tenants in Common Properties</u>.

        (a)   <u>TIC Properties</u>.  Seller owns a tenant-in-common-interest in the following properties: identified by their common address): (i) 16914 Sonoma Highway, Sonoma, CA; (ii) 19 Merrydale Road, San Rafael, CA; (iii) 109 Professional Center Parkway, San Rafael, CA; (iv) 100 Sycamore Avenue, San Anselmo, CA; (v) 240 Tamal Vista, Corte Madera, CA; and (vi) 1441 Casa Buena Drive, Corte Madera, CA (individually, "**TIC Property**", collectively, "**TIC Properties**").  On or prior to July 9, 2021, Seller shall use commercially reasonable efforts to deliver an executed stipulation from each of the other tenants-in-common of the TIC Properties ("**TIC Owner**") in a form and substance acceptable to Buyer, which, in part, shall provide that TIC Owner approves the sale of their tenant-in-common interest in their respective Real Property in accordance with the terms of this Agreement and that TIC Owner shall deliver the applicable grant deed and any other document Escrow Holder shall request to transfer the  TIC Owner's interest in the TIC Property to Buyer ("**TIC Owner Stipulation**").  As soon as practicable after the commencement of the 363(h) Litigation (as defined below) but no later than July 16, 2021, Seller shall have the TIC Owner Stipulations approved by the Bankruptcy Court and have the same entered and made a part of the 363(h) Litigation case.  Notwithstanding the foregoing, Seller shall continue to endeavor to obtain the TIC Owner Stipulations up to the Closing Date.  To the extent that Seller obtains TIC Stipulations from all TIC Owners of a TIC Property (individually, "**Signed Property**", collectively, "**Signed Properties"**), such Signed Property shall be included in the definition of Property and the provisions of the Sale Order shall apply to such Signed Property.

        (b)   <u>Holdout TICs</u>.  As soon as practicable after July 9, 2021, but in no event after July 16, 2021, Seller shall initiate one or more lawsuits pursuant to Bankruptcy Code Section 363(h) (each a "**363(h) Litigation**") against any TIC Owner that failed or refused to execute and deliver a TIC Stipulation ("**Holdout TICs**") with respect to any TIC Property that Seller has yet to receive TIC Stipulations from all required TIC Owners (individually, "**Unsigned Property**," collectively, "**Unsigned Properties**").  The failure to obtain the signature(s) from the Holdout TICs shall not constitute a default by Seller and neither the Seller nor the Buyer shall have a right to terminate this Agreement as a result thereof.  Seller shall prosecute the 363(h) Litigation as expeditiously as possible including, without limitation, as appropriate and with consultation with Buyer, (i) by pursuing mediation with the Holdout TIC(s) as soon as possible after the commencement of the proceeding, (ii) upon filing of an answer by each of the Holdout TICs, immediately filing a motion on shortened time to set the trial date as soon as possible, and (iii) by engaging in such other acts to facilitate a commercially reasonable resolution of each 363(h) Litigation prior to the Closing.  Buyer can participate, at its option, in any mediation held in accordance with the foregoing sentence.  For each 363(h) Litigation resolved with respect to an Unsigned Property either by way of judgment or settlement not less than five (5) Business Days prior to the Closing Date, whereby all right, title and interests of the Holdout TICs in the Unsigned Property at issue shall be acquired by Buyer, and such Unsigned Property is not an Excluded Unsigned Property at such time, such Unsigned Property shall accordingly be considered a Signed Property, shall be included in the definition of Property and the provisions of the Sale Order shall apply. If at the Closing there remains Unsigned

Properties, the Purchase Price shall be reduced by the applicable Allocated Purchase Price attributable to those remaining Unsigned Properties.

(c)     Remaining Unsigned Properties. If any 363(h) Litigation involving any of the Unsigned Properties and Holdout TICs is unable to be resolved either by way of judgment or settlement not less than five (5) Business days prior to the Closing Date, the Closing Date for the Unsigned Properties shall be extended to permit the 363(h) Litigation to proceed against the Holdout TICs; provided, however, if such 363(h) Litigation is not resolved by judgement or settlement within forty-five (45) days after the Closing Date, Buyer, in its sole and absolute discretion, shall have the right, but not the obligation, to terminate the Agreement with respect to any or all of the remaining Unsigned Properties (individually, "**Excluded Unsigned Property,**" collectively, "**Excluded Unsigned Properties**"). If the Seller obtains a resolution of the 363(h) Litigation by judgment or settlement whereby all right, title and interests of the Holdout TICs in the Unsigned Property at issue shall be acquired by Buyer, and such Unsigned Property is not an Excluded Unsigned Property at such time, the Unsigned Property shall accordingly be considered a Signed Property and Buyer and Seller shall close the sale transaction with respect to such Signed Property at the applicable Allocated Purchase Price within five (5) Business Days after the 363(h) Litigation is finalized.

(d)     Seller's Interest in Remaining Unsigned Properties. In the event the 363(h) Litigation is not resolved by settlement or judgment whereby all right, title and interests of the Holdout TICs in the Unsigned Property at issue shall be acquired by Buyer, or at any time during the pending 363(h) Litigation, Buyer shall have the option, at its sole and absolute discretion, to purchase Seller's right, title, and interest in any Unsigned Property (subject to (i) the existing agreements between Seller and such TIC Owners, as such agreements may be amended by Buyer and TIC Owners, and (ii) loan documents between Seller, TIC Owners and lender for the respective Unsigned Property) at a purchase price to be agreed upon by Buyer and Seller which shall be equal to the Allocated Purchase Price attributable to such Unsigned Property as adjusted downward to reflect (y) the assumption or payoff of the loan on the Unsigned Property; provided, however, any such adjustment downward for the assumption or payoff of the loan shall be capped by the aggregate of Seller's and any cooperating TIC Owner's percentage ownership of the Unsigned Property multiplied by the loan balance when Buyer assumes or pays off the loan and (z) the economic change associated with purchasing a tenant-in-common interest in a real property subject to existing obligations rather than purchasing a real property free and clear of Liens. Buyer shall provide written email notice of such election to Seller and thereafter, Seller shall reasonably cooperate with Buyer to effectuate the sale of Seller's interest in such Unsigned Property to Buyer. If Buyer does not elect to purchase Seller's interest in the Unsigned Property at the time of a litigation outcome whereby all right, title and interests of the Holdout TICs in the Unsigned Property at issue shall not be acquired by Buyer, such Unsigned Property shall be considered an Excluded Unsigned Property and this Agreement shall be deemed terminated with respect to the Excluded Unsigned Property and the parties shall have no further rights or obligations under this Agreement with respect to the Excluded Unsigned Property.

(e)     TIC Documents. As soon as practicable but only to the extent in Seller's possession, Seller shall provide Buyer with respect to each of the TIC Properties: (a) organizational charts, (b) organizational documents of all the other TIC Owners, (c) loan documents, and (d) current Tenants-In-Common Agreements between Seller and TIC Owners ("**Tenants-In-Common Agreements**"). Seller shall also use commercially reasonable efforts to arrange for a meeting or telephone conference between Buyer and TIC Owners.

6.1.5     Estoppels. Seller shall use commercially reasonable efforts to deliver to Buyer, on or before eight (8) Business Days prior to the Closing Date (the "**Estoppel Deadline**

Date"), a tenant estoppel certificate in the form attached hereto as Exhibit G or, if a tenant's lease requires a specific form, then such required estoppel certificate form (the "**Estoppel Certificates**"), from at least seventy-five percent (75%) of the leased rentable square footage for each individual Real Property with respect to those tenants leasing premises at the commercial properties, as identified in Exhibit A-1 (the "**Commercial Leases**"), but which shall in any event include an Estoppel Certificate from any Commercial Lease that occupies greater than ten percent (10%) of the rentable square feet of any single commercial property (but in any event, no less than 1,500 rentable square feet of any single commercial property). The Estoppel Certificates shall be dated no earlier than sixty (60) days prior to the Closing Date. Prior to delivery of the Estoppel Certificates to tenants, Seller shall deliver drafts of such Estoppel Certificates for Buyer's review (with such drafts to be delivered to Buyer in reasonable quantities as such drafts are prepared, rather than delivering all drafts at once) and Buyer shall have three (3) Business Days after the receipt of any Estoppel Certificate to provide Seller with comments thereto, which comments shall be limited to correcting manifest errors in any such draft Estoppel Certificate, but not otherwise altering the form of such draft Estoppel Certificate or revising the statements therein. Seller shall provide to Buyer any executed Estoppel Certificates promptly upon Seller's receipt. Buyer shall have three (3) Business Days after receipt of each such executed Estoppel Certificate to approve or reasonably disapprove such Estoppel Certificate so received (and the failure to reasonably disapprove within such three (3) Business Days shall constitute approval thereof); provided, however, notwithstanding the foregoing or anything to the contrary set forth in this Agreement, Buyer's reasonable disapproval of an executed Estoppel Certificate shall be based upon at least one of the following ("**Disapproval Reason**"): if it (A) discloses material adverse economic terms of the applicable Commercial Lease that were not disclosed to Buyer (whether in the applicable Commercial Lease or any other document delivered to Buyer) prior to the date of the delivery of such Estoppel Certificate to Buyer, (B) alleges a material default of Seller (as landlord) under the applicable Commercial Lease, (C) discloses a material dispute between the Landlord and Tenant in connection with the applicable Commercial Lease, or (D) discloses an option in favor of a tenant to purchase all or any portion of the Real Property which was not previously disclosed to Buyer. In the event that with respect to any Individual Property, Buyer disapproves any such Estoppel Certificate based on a Disapproval Reason (collectively, the "**Disapproved Estoppel Certificates**"), then Buyer shall promptly notify Seller thereof and (i) in the event that the Disapproval Reasons for any Individual Property, in the aggregate, would result in Material Damage (defined below) or (ii) in the event the Disapproved Estoppel Certificates for an Individual Property covers at least the greater of ten percent (10%) of any such Individual Property or 1,500 rentable square feet of an Individual Property, then Buyer, at its sole election, shall have the right by delivery of written notice to Seller to terminate this Agreement solely with respect to such Individual Property, and the Purchase Price shall be reduced by the applicable Allocated Purchase Price attributable to such Individual Property as identified in Exhibit A-1 and thereafter the parties shall have no further rights or obligations under this Agreement with respect to the such Individual Property. Seller shall, at Seller's own expense, have the right to cure any such Disapproved Estoppel Certificates within five (5) days after receipt of notification in writing from Buyer of any Disapproved Estoppel Certificates; provided, however, if the cure or remedy thereof requires more than five (5) days, within a reasonable time after such notification (but in any event no later than two (2) Business Days before the Closing Date), provided that steps to cure or remedy have been commenced within five (5) days after receipt of Buyer's notification and are pursued with all due diligence.

6.1.6 **Title Commitment and Form of Sale Order**. Prior to the Contingency Date, Title Insurer shall have approved the form of Sale Order and provided written confirmation of the same to Buyer and Seller, such that the form of Sale Order shall be sufficient, if and when entered by the Bankruptcy Court and such order becomes final, to convey title of each Real Property to Buyer in the manner required under this Agreement, including Paragraph 8.1.4.

6.1.7 **HSR Act**. Notwithstanding anything in this Agreement to the contrary, for the benefit of both Buyer and Seller, that (i) Buyer and Seller will have mutually determined prior to the Contingency Date based upon the advice of their respective legal counsel that the purchase of

Property by Buyer from Seller is exempt from filing under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "**HSR Act**"), (ii) the waiting period under the HSR Act applicable to the purchase of Property by Buyer from Seller will have expired or been earlier terminated, or (iii) Buyer and Seller have obtained such other required approvals or consents under the HSR Act as may be required in order to consummate the Closing. Buyer and Seller each agree to cooperate in good faith and cause their respective legal counsel to cooperate in good faith to review the HSR Act and the rules and regulations thereunder, and take such other commercially reasonable steps as such party and its legal counsel deem reasonably appropriate to determine prior to the Contingency Date whether an exemption from filing under the HSR Act is available, and, if Buyer and Seller cannot mutually agree in good faith based upon advice from their respective counsel that such an exemption is available, then Buyer and Seller each agree to: (i) promptly make their respective filings as soon as practicable after execution of this Agreement and thereafter make any other required submissions under the HSR Act with respect to the purchase of Property by Buyer from Seller, and (ii) cooperate in good faith with the other party and use commercially reasonable efforts with respect to the same.

6.2 **Waiver**. The special conditions described in Paragraph 6.1 are for the benefit of Buyer, and if not timely satisfied may thereafter be waived unilaterally by Buyer unless and until such time as either party elects to terminate this Escrow pursuant to Paragraph 6.4. Any waiver will be effective only if the same is (i) in writing, (ii) signed by the waiving party(ies), and (iii) delivered to Escrow Holder prior to delivery by either party of a written notice of termination pursuant to the following Paragraph.

6.3 **Conditions Precedent**.

6.3.1 **Seller's Conditions Precedent**. As a condition precedent to Seller's obligations under this Agreement, all representations and warranties of Buyer as set forth in ARTICLE 12 shall remain true and correct in all material respects. This condition shall be conclusively deemed satisfied unless Seller delivers written notice of disapproval to Buyer and to Escrow Holder, on or before 4:30 p.m. on the Business Day before the Closing Date. Seller's notice of disapproval shall specify the representation and/or warranty that is no longer correct and a detailed statement of the grounds for so concluding. The condition described in this Paragraph 6.3.1 is for the benefit of Seller, and if not timely satisfied may thereafter be waived unilaterally by Seller unless and until such time as either party elects to terminate this Escrow pursuant to Paragraph 6.3.1. Any waiver will be effective only if the same is (i) in writing, (ii) signed by the waiving party(ies), and (iii) delivered to Escrow Holder prior to delivery by either party of a written notice of termination pursuant to Paragraph 6.4.

6.3.2 **Conditions Precedent**. As a condition precedent to Buyer's obligations under this Agreement, all representations and warranties of Seller as set forth in ARTICLE 12 shall remain true and correct in all material respects (as the same may be revised per Paragraph 12.6 below). Buyer's obligations to purchase the Property from Seller and to consummate the transactions contemplated under this Agreement are subject to satisfaction of the conditions set forth in ARTICLE 8 of this Agreement. Buyer may waive any conditions in whole or in part but such waiver shall be effective only if made in writing. If any of the conditions are not satisfied or waived by Buyer, then Buyer may terminate this Agreement upon written notice to Seller on or before Closing.

6.4 **Termination**. If any special condition described in Paragraph 6.1 has been neither satisfied nor waived in the manner and by the time specified therein, a party who is not then in default hereunder shall have the right to terminate this Agreement and this Escrow by delivering a written notice of termination to Escrow Holder. The right to terminate this Agreement and Escrow shall be optional, not mandatory. If the notice is delivered, then Escrow Holder shall deliver a copy of such notice to the other party, and unless written objection to termination of this Escrow is received by Escrow Holder from the other party within two (2) Business Days thereafter, Escrow Holder shall promptly terminate this Escrow and promptly return Deposits and accrued interest thereon to Buyer (except for the Nonrefundable Deposit which shall be delivered to Seller unless the termination was the result of Seller's default). Without limiting the foregoing,

this Agreement shall terminate on the occurrence of any of the following: (a) mutual written consent of Seller and Buyer prior to entry of the Sale Order; (b) if the Bankruptcy Court does not approve the sale of the Property by Seller to Buyer; (c) if the Bankruptcy Court does not approve the sale of the Property by Seller to Buyer on or before September 25, 2021, unless Buyer agrees in its sole discretion to a later date; or (d) if the closing shall not have occurred by October 15, 2021, unless Buyer agrees in its sole discretion to a later date. In the event of termination described in this Paragraph 6.4, Buyer shall be entitled to the prompt return of the Deposits and all accrued interest thereon (except for the Nonrefundable Deposit which shall be delivered to Seller unless the termination was the result of Seller's default), without regard to Paragraph 8.2.2.

## ARTICLE 7. PRE-CLOSING RIGHTS AND OBLIGATIONS

7.1 **Limit on Escrow Holder's Responsibilities**. Escrow Holder shall have no concern with, nor liability nor responsibility for, this Article.

7.2 **Delivery of Property Documents**. Buyer hereby acknowledges and agrees that all Property Documents will have been made available to Buyer on or before fifteen (15) days after the Escrow Opening Date and Seller agrees that if it comes into possession of other non-privileged documents that are consistent with the previously-disclosed Property Documents, that such non-privileged documents that are consistent with the previously-disclosed Property Documents will be made available to Buyer in the virtual data room through the Closing Date.

7.3 **Management of Property**. Seller shall manage, operate, and lease the Property through the Close of Escrow in the same manner as it had been operated prior to the Escrow Opening Date, and shall use reasonable best efforts to adequately staff the Business to operate as described in this Paragraph 7.3. Seller shall implement and enforce commercially reasonable policies and procedures, to the extent necessary, to ensure that the Personal Property remains on the Real Property and any other premises occupied by Seller through the Close of Escrow. Seller shall comply with all of its material obligations imposed by law or by any Leases or other Contracts or agreements relating to the operation and maintenance of the Property. Seller shall carry its existing insurance through the Closing, and shall not terminate or cancel any such insurance policies. Notwithstanding anything to the contrary in this Agreement, during the term of this Agreement, Seller shall have the right to enter into Post-Petition Construction Contracts, with Buyer's consent, which consent shall not be unreasonably withheld. Seller, at its sole cost and expense, shall make any payments required thereunder when due and payable through the Closing and to the extent any such payments have not been made, the aggregate of such payments shall be a credit to the Purchase Price. From and after the Closing, Buyer, at its sole cost and expense, shall make any and all payments due and payable thereafter under the Post-Petition Construction Contracts. Seller shall cause the Post-Petition Construction Contracts to be assigned, and Buyer shall assume, the Post-Petition Construction Contracts, as of Closing pursuant to one or more Post-Petition Construction Contracts Assignments and Transfers. As soon as practicable, Seller shall provide copies of all executory Post-Petition Construction Contracts to Buyer.

7.4 **Contracts**. Except as otherwise provided in Paragraph 7.3, without Buyer's prior consent, which shall be at Buyer's sole discretion, during the term of this Agreement Seller shall not enter into any Contracts, including Post-Petition Construction Contracts, that will be an obligation affecting the Property subsequent to the Closing (including easements and city-related documents), except for Contracts entered into in the ordinary course of business that are terminable without cause on thirty (30) days' notice without penalty or cancellation fee or Post-Petition Construction Contracts described in Paragraph 7.3. Effective as of the Close of Escrow, Seller shall terminate all Contracts other than those Contracts that have been assumed and assigned to Buyer pursuant to Paragraph 13.2.

7.5 **Leases and New Leases**. Until the Contingency Date and so long as this Agreement is in effect, Seller may with Buyer's consent, which consent shall not be unreasonably withheld, conditioned, or delayed, enter into new Commercial Leases and/or extend existing Commercial Leases; provided, however, that Seller shall not be required to obtain Buyer's consent for any Lease where the premises is less than 1,000 rentable square feet or the term of the Lease is 24 months or less (including option periods).

After the Contingency Date and so long as this Agreement is in effect, (i) Seller shall not enter into any new Commercial Leases nor modify any existing Commercial Leases where the premises is greater than 1,000 rentable square feet or the term of the Lease is 24 months or greater (including option periods) without Buyer's prior consent, which may be granted or withheld in Buyer's sole discretion, and (ii) without limiting the foregoing sections of Paragraph 7.4, Buyer shall be permitted to reasonably coordinate with Seller and its leasing broker to help maximize the leasing and property management practices for the Property for Commercial Leases. All leasing commissions and all tenant improvement allowances expressly provided for under the terms of existing Leases or with respect to Leases which are entered into prior to the Close of Escrow for which letters of intent have been issued prior to the Contingency Date will be Seller's responsibility (except to the extent such commissions or allowances would result from options exercised by the tenant under the applicable Lease after the Close of Escrow), and to the extent any such commissions or allowances remain unpaid at the Close of Escrow, Buyer will receive a credit against the Purchase Price. All commissions and tenant improvement costs associated with any new Leases entered into after the Contingency Date will be Buyer's responsibility, subject to the occurrence of the Closing (it being acknowledged that if Buyer does not purchase the Property, then Buyer shall have no responsibility for such costs). With respect to any residential apartment Leases, Seller may, in the ordinary course of business and in accordance with Seller's current practices, (a) extend the term of any Lease, (b) modify any Lease, (c) terminate any Lease following the occurrence of any event of default by the tenant under such Lease that is not cured within any cure period expressly set forth in and Lease or arising pursuant to applicable law, (d) enter into a new lease or (e) adjust lease rates and incentives, in each case, without the prior consent of Buyer.

       7.6    **Consultation by Buyer About Property**. During the term of this Escrow, Buyer and its representatives, employees, agents and independent contractors may meet with all tenants, City, district and other governmental entities and agencies, and discuss with any of those entities or agencies Buyer's plans for the Property. Any consultation with Seller's engineers or other paid consultants or contractors shall be at Buyer's sole cost and expense. Seller, at Buyer's sole cost and expense, shall reasonably cooperate with Buyer in its efforts to obtain any entitlements, including, without limitation, any submittals, applications, and permits. Notwithstanding anything to the contrary in this Agreement, entitlements obtained by Buyer shall not be binding on the Seller or the Property prior to the Closing and shall only be binding on the Property after the Closing.

       7.7    **Delivery of Documents; Site Inspections**. Throughout the term of this Agreement, Buyer shall, within two (2) Business Days of receipt, deliver to Seller, at no cost or expense to Seller and without any representation or warranty from Buyer as to the contents thereof, documents and materials relating to the Property that Buyer actually obtains or an institutional lender would require Buyer obtain from Buyer's third-party consultants (whether electronic or otherwise) with respect to: (i) property condition reports and mechanical condition reports (elevator/central systems) if included therein; (ii) environmental site assessments (e.g., ESAs, Phase 1s); (iii) termite and pest inspection reports; (iv) zoning reports (e.g., PZRs); and (v) ALTA Surveys (new Surveys for the Property). Buyer shall be solely responsible for obtaining and paying for all such documents and materials; however, Seller shall also be identified as a reliance party of all said third-party consultants preparing such documents and materials. The foregoing notwithstanding, Buyer shall have no obligation to deliver to Seller: (a) any appraisal documents or materials, or (b) any documents, memoranda, analyses or other materials that are privileged pursuant to the California Evidence Code. Notwithstanding anything to the contrary in this Agreement, Seller shall have the right, in its sole, absolute, and unfettered discretion, to assign, display, share, transmit, or post all such documents, including with any and all third parties, provided that Buyer shall have no liability or obligation to Seller or any other party with respect to documents or the contents thereof. Seller shall comply with all aspects of Paragraph 11.3 with respect to access to Property for site inspections and site due diligence.

## ARTICLE 8. THE CLOSING

       8.1    **Conditions to Closing**. Escrow Holder shall close this Escrow on the Closing Date by (i) filing for record Seller's Grant Deeds (and such other documents as may be necessary to procure the Title Policies), and (ii) delivering funds and documents to the parties (as set forth in ARTICLE 10) WHEN AND ONLY WHEN each of the following conditions has been satisfied:

8.1.1 <u>Deliveries</u>. All funds and documents described in ARTICLE 4 and ARTICLE 5 have been delivered to Escrow Holder.

8.1.2 <u>Plan Obligation</u>. Seller shall have filed with the Bankruptcy Court the Alternative Restructuring Transactions Memorandum (as defined in the Plan), if applicable.

8.1.3 <u>Seller Breach</u>. Seller shall not be in material breach of any provisions of this Agreement beyond any applicable notice or cure periods, unless waived in writing by Buyer.

8.1.4 <u>The Title Policies</u>. Title Insurer is irrevocably committed to issue the Title Policies with liability in the amount of the Purchase Price for each portion of the Real Property, insuring that the fee title to the Real Property vests in Buyer in a form satisfactory to Buyer, subject only to:

(a)     The exclusions listed in the standard "Schedule of Exclusions from Coverage" in the Title Policies;

(b)     Property Taxes which are, as of the Close of Escrow, not delinquent;

(c)     The exceptions to coverage listed in the Preliminary Reports that are Permitted Exceptions;

(d)     The Leases;

(e)     Any liens voluntarily imposed by Buyer or caused by or placed upon the Property on behalf of Buyer or Buyer's agents, lenders, contractors, subcontractors and(or) consultants); and

(f)     Permitted Encumbrances.

8.1.5 <u>Sale Order</u>. The Bankruptcy Court shall have entered the Sale Order and such order shall not have been stayed, vacated or otherwise rendered ineffective, and to which the fourteen (14) day appeal period from its entry has expired or been waived by Buyer, in Buyer's sole and absolute discretion.

8.2     **Delayed Closing; Termination; Gap Closing**.

8.2.1 <u>Delayed Closing</u>. If Escrow Holder cannot close this Escrow on or before the Closing Date, it shall, nevertheless, close this Escrow when all conditions have been satisfied or waived, unless after the Closing Date and prior to the Close of Escrow, Escrow Holder receives a written notice to terminate this Agreement and this Escrow from a party who, at the time the notice is delivered, is not in default under this Agreement. The right to terminate this Agreement and this Escrow shall be optional, not mandatory. Escrow Holder shall have no liability or responsibility for determining that a party giving a notice of termination is not in default under this Agreement.

8.2.2 <u>Termination of Escrow</u>. Within two (2) Business Days after receipt of a notice of termination from one party delivered pursuant to Paragraph 8.2.1 above from one party, Escrow Holder shall deliver one copy of such notice to the other party. Unless written objection to termination of this Escrow is received by Escrow Holder within two (2) Business Days after Escrow Holder delivers such notice to the other party, Escrow Holder shall promptly terminate this Escrow and return all funds and documents held by it to the party depositing same (subject to the terms of this Agreement), except that (a) Escrow Holder may retain such funds and documents usually retained by escrow agents in accordance with standard escrow termination procedures and (b) unless the reason for the termination was Seller's default, the Nonrefundable Deposit shall be paid to Seller as consideration for having entered into this Agreement. Escrow Holder may (i) retain any

Seller passbooks or certificates of deposit with Escrow Holder until such time as its escrow fees are paid in full, and/or (ii) deduct from any funds held by Escrow Holder a sufficient amount to pay its escrow fees in full. If written objection to the termination of this Escrow is delivered to Escrow Holder within such 2 day period, Escrow Holder shall hold all funds and documents delivered to it in connection with this Escrow and Escrow Holder shall take no further action until otherwise directed, either by the parties' mutual written instructions or by a final order or judgment of the Bankruptcy Court.

8.2.3 <u>Legal Remedies of Parties Not Affected</u>. Neither (i) the exercise of any right of termination, (ii) delay in the exercise of such right, nor (iii) the return of funds and documents, shall affect the right of the party giving notice of termination to recover damages or pursue other available legal remedies for the other party's breach of this Agreement, subject to the terms of this Agreement. Nor shall (a) the delivery of such notice, (b) any failure to object to termination of this Escrow, or (c) the return of funds and documents affect the right of the other party to recover damages or pursue other available legal remedies for the breach of the party who gives the notice of termination, subject to the terms of this Agreement.

8.2.4 <u>Gap Closing</u>. If Seller elects in its sole discretion to provide the Title Insurer with a gap indemnity acceptable to the Title Insurer, Seller may elect to cause the Closing to occur, including without limitation the release of funds, prior to confirmation of recording of the Seller's Grant Deeds; provided that the Title Insurer is irrevocably and unconditionally committed to issue the Title Policy effective as of the Closing, notwithstanding that confirmation of recording of the Seller's Grant Deeds have not been received.

## ARTICLE 9. PRORATIONS, FEES AND COSTS

9.1 **Property Taxes**. Escrow Holder shall prorate (*i.e.*, apportion) Property Taxes between the parties, in Cash, to the Close of Escrow (with Buyer being responsible for the date upon which the Close of Escrow occurs), based on the latest information available to Escrow Holder from the appropriate City or County office; provided, however, that the prorations shall be made by Escrow Holder without regard to any supplemental assessments levied pursuant to California REVENUE & TAXATION CODE Section 75 and following, which shall be prorated pursuant to Paragraph 9.2 below. All prorations shall be done based strictly upon the date on which the Close of Escrow occurs, without regard to the payment due date. With respect to any special assessments, Buyer agrees that (i) it shall take the Property subject to any such special assessments, and (ii) have the then current assessments prorated only to the extent such assessments are paid through the real property tax bills. Seller shall not be obligated to prepay any portion of any special assessments except as may be due and payable before the Close of Escrow.

9.2 **Supplemental Taxes**. With respect to supplemental tax bills, the following shall apply:

9.2.1 <u>Through Escrow</u>. A supplemental tax bill representing the tax due on any supplemental assessment relating to a date prior to the Close of Escrow with respect to the Real Property and Personal Property may be issued either before the Close of Escrow or subsequent thereto. If a supplemental tax bill is received by Seller and delivered to Escrow Holder prior to the Closing Date, Escrow Holder shall prorate the bill as specified in Paragraph 9.1.

9.2.2 <u>Post-Closing</u>. If no supplemental tax bill has been delivered to Escrow Holder by the Closing Date, the parties agree after the Close of Escrow to prorate the amount of the supplemental assessment and escape taxes relating to the times before and after the date upon which the Close of Escrow occurs. Within ten (10) Business Days after written demand by Buyer for Seller's pro rata share of such supplementary tax bill, Seller shall pay Buyer therefor. As a post-closing covenant, (i) Buyer agrees to hold Seller harmless from and indemnify it against any and all Property Taxes which may be imposed on the Property which relate to any period from and after the Close of Escrow, and (ii) Seller agrees to hold Buyer harmless from and indemnify it against any and all Property Taxes which may be imposed on the Property which relate to any period prior to the date upon which the Close of Escrow occurs.

2.2.3    Notwithstanding the foregoing provisions of this Paragraph 9.2, the payment of supplemental and escape taxes assessed solely as a result of the conveyance of the Property shall be the sole obligation of Buyer and shall not be subject to proration.

9.2.4    The Sale Order shall include all applicable provisions of the Bankruptcy Code with regard to the payment of transfer taxes to the extent permissible under the Bankruptcy Code.

9.3    **Other Prorations**. With respect to other prorations, the following shall apply:

9.3.1    <u>Through Escrow</u>. The following items shall also be prorated between Buyer and Seller as of the Close of Escrow: (i) utility payments, for which purpose Seller agrees to use its best efforts to obtain final meter readings as of the Closing Date; (ii) collected monthly rental and other occupancy charges paid by tenants under the Leases; (iii) sums payable under any Contracts or Leases assumed by Buyer and remaining in force after the Close of Escrow; and (iv) amounts payable pursuant to any recorded restrictions. Buyer and Seller shall provide Escrow Holder before the Closing Date with the information necessary to prorate the items set forth in this Paragraph. Prepaid charges, pre-payments (including lump sum signing payments and accrued charges under any Purchased Contracts and Leases shall be prorated at Closing in a manner reasonably acceptable to Seller and Buyer.

9.3.2    <u>Past Due Rents or Charges Owed Under the Leases</u>. Paragraph 9.3.1 notwithstanding, if at the Close of Escrow there are any past due rents or other charges owed by the tenants under the Leases, Seller shall not receive a credit for any such amounts. If the Closing occurs before rents and all other amounts payable by the tenants under the Leases (including Pass-Through Expenses (as defined below)) and all other income from the Property have been paid for the month in which the Closing occurs, the apportionment of such rents and other amounts and other income shall be upon the basis of such rents, other amounts and other income, actually received by Seller as of the Closing Date. There shall be no proration of any rents or other income not actually received by Seller as of the Closing Date (including delinquent rent, which shall not be prorated). Subsequent to the Closing, if any rents and other income are received by Buyer or Seller, all such amounts shall be applied in the following order: (i) first to rent due for the month in which Closing occurs, (ii) next, to rent due for the month(s) following the month in which Closing occurs, and (iii) the balance to delinquent rent relating to the period prior to the month in which Closing occurs. Buyer, for a period of six (6) months after the Closing Date, agrees to use commercially reasonable efforts to collect on behalf of the Seller all rents and other charges which became due prior to the Closing but which Seller will not have collected as of the Closing Date, and promptly remit same to Seller; provided, however, that Buyer shall not be obligated to terminate any Lease, or sue or threaten to sue any tenant. Any such rentals due to Seller shall be paid by Buyer to Seller within ten (10) days following Buyer's receipt thereof. If, subsequent to the Closing, any such rents and other income payable to Buyer, as provided above, are received by Seller, Seller shall remit Buyer's prorata share thereof, calculated as aforesaid, to Buyer within ten (10) days following Seller's receipt thereof. This Paragraph 9.3.2 shall survive Closing.

9.3.3    <u>Pass Through Expenses</u>. If payments by tenants to reimburse Seller for common area maintenance and operating expenses, including without limitation payments for insurance, real property taxes and cost-of-living adjustments (generically, "**Pass-Through Expenses**") are adjusted under the terms of any of the Leases at the end of any lease year or other period (such period being the "**Adjustment Period**") to reflect the actual Pass-Through Expenses incurred for such Adjustment Period, Buyer and Seller hereby agree and stipulate that all such Pass-Through Expenses shall be prorated based upon the best information available (e.g., utilizing past payments of Pass-Through Expenses and reasonable estimated future payments of Pass-Through Expenses) and that there shall be no reconciliation or re-proration after the Close of Escrow for such Pass-Through Expenses other than as set forth in Paragraph 9.4.

9.3.4 <u>Security Deposits</u>. Seller shall retain any and all unapplied refundable tenant security deposits and Buyer shall receive a credit against the Purchase Price for any and all unapplied refundable tenant security deposits. Within one week following the Close of Escrow, Buyer shall notify the tenants under the Leases that it has possession of and assumed ongoing liability for all such security deposits.

9.3.5 <u>Seller's Employees</u>. Buyer may, at its option, make offers of employment, effective as of the Close of Escrow, to certain of the Seller's employees. Any of the employees who accept an offer of employment with Buyer as of the Closing of Escrow shall be referred to in this Agreement as the "**Hired Employees**." All employees who are Hired Employees shall be terminated by the applicable Seller as of the Closing Date and shall become employees of Buyer effective as of the Close of Escrow. As provided in Paragraph 3.3.3, at Closing, Buyer shall pay Seller the value of accrued PTO as of the Closing as reflected in the respective employment records of the Seller and Seller shall pay such amounts to each Hired Employee upon their termination regardless of the priorities under the Bankruptcy Code and the provisions of the Plan. The provisions of this Paragraph 9.3.5 are solely for the benefit of the parties to this Agreement, and no employee or former employee or any other individual associated therewith or any employee benefit plan or trustee thereof shall be regarded for any purpose as a third party beneficiary of this Agreement. Buyer is not assuming any claims, liabilities, contract obligations, expenses, or obligations of the Seller with respect to the Hired Employees, or any other employees, including, without exception, claims arising under any state or federal statute, law or ordinance.

9.4 **Post-Closing Adjustments**. Buyer and Seller hereby agree to perform a one-time re-proration of any of the above-referenced prorations if, within a period of six (6) months after the Close of Escrow, more accurate or definitive information becomes available with respect thereto. The party receiving such information shall deliver written notice thereof to the other party within ten (10) days of such receipt and, within ten (10) days thereof, the parties shall re-prorate the affected matter and a party which is thereby shown to have received an excess credit shall to the extent of such excess reimburse the other party within ten (10) days thereafter. The parties shall also reconcile the rent and pass-through expenses prorations between themselves following the Close of Escrow as part of the one-time re-proration described above in this Paragraph 9.4. This Paragraph 9.4 shall survive Closing.

9.5 **Basis of Proration**. All prorations called for in this Agreement shall be made on the basis of a 30-day month. Seller shall provide Buyer with draft prorations, including reasonable backup materials for all calculations, and such other reasonable information as Buyer shall request, at least five (5) Business Days prior to Closing, and Seller and Buyer shall be obligated to work together in good faith to finalize all prorations at least two (2) Business Days prior to Closing.

9.6 **Seller's Charges**. Seller shall pay (i) fifty percent of Escrow Holder's fee or termination charge (and one hundred percent (100%) of Escrow Holder's fee or termination charge arising from a Seller's default), (ii) usual seller's document-drafting and recording charges, (iii) the cost of a standard 2006 ALTA owner's policy of title insurance, with liability in the amount of the Purchase Price plus a mechanic's lien endorsement, insuring that the fee title to the Land vests in Buyer subject only to the Permitted Exceptions, and (iv) documentary transfer tax.

9.7 **Buyer's Charges**. Buyer shall pay (i) fifty percent of Escrow Holder's fee or termination charge (and one hundred percent (100%) of Escrow Holder's fee or termination charge arising from a Buyer's default), (ii) any costs associated with the Surveys, (iii) the Title Policies premium to the extent it is greater than the cost of a standard 2006 ALTA owner's policy of title insurance, with liability in the amount of the Purchase Price plus a mechanic's lien endorsement, insuring that the fee title to the Land vests in Buyer subject only to the Permitted Exceptions, and (iv) the cost of preparing and recording the Seller's Grant Deeds and usual buyer's document-drafting and recording charges.

## ARTICLE 10. DISTRIBUTION OF FUNDS AND DOCUMENTS

10.1    **Interest**. Any sums delivered by Buyer to Escrow Holder pursuant to this Agreement shall be deposited by Escrow Holder into a separate money market account with Bank of America, Wells Fargo, Union Bank or such other financial institution in which Escrow Holder maintains its trust accounts, to bear interest at the highest rate available for similar deposits from time to time. Interest earned on Buyer's Deposits shall be credited to Buyer and shall apply to the Purchase Price.

10.2    **Disbursements**. All disbursements by Escrow Holder shall be made by checks of Escrow Holder or, at the request of the party to whom disbursement is made, by wire transfer.

10.3    **Payment of Encumbrances**. Escrow Holder shall, upon the Close of Escrow, pay, from funds to which Seller shall be entitled and from funds, if any, deposited by Seller with Escrow Holder, to the appropriate obligees, all encumbrances other than those permitted by Paragraph 8.1.4.

10.4    **Return After Recording**. Escrow Holder shall cause the County Recorder of the applicable County to mail Seller's Grant Deeds (and each other instrument which is herein expressed to be, or by general usage is, recorded) after recordation, to the grantee, beneficiary or person (i) acquiring rights under said document, or (ii) for whose benefit the instrument was acquired.

10.5    **Delivery of Instruments**. Escrow Holder shall, upon the Close of Escrow, deliver by United States mail and email (or shall hold for personal pickup, if requested) each non-recorded instrument received by Escrow Holder to the payee or person (i) acquiring rights under the instrument, or (ii) for whose benefit the instrument was acquired.

10.6    **Delivery of Cash**. Escrow Holder shall, upon the Close of Escrow, deliver by United States mail (or shall hold for personal pickup or wire, if requested) (i) to Seller, or order, the balance of the cash portion of the Purchase Price to which Seller shall be entitled, and (ii) to Buyer, or order, any excess funds delivered to Escrow Holder by Buyer.

10.7    **Reporting to Internal Revenue Service**. Any returns, statements to reports required to be filed under Section 6045(e) of the INTERNAL REVENUE CODE OF 1986 (or any similar reports required by state or local law) or relating to the Property shall be filed by Escrow Holder. In no event shall this Agreement be construed so as to require that such returns, reports or statements be filed by Buyer, Buyer's counsel, Seller or Seller's counsel. Within five (5) days after the date Escrow Holder receives a written request from Seller and/or Buyer to do so, Escrow Holder shall provide evidence to Seller and/or Buyer that it has complied with the provisions of this Paragraph.

## ARTICLE 11. POSSESSION; ENTRY BY BUYER

11.1    **Limit on Escrow Holder's Responsibilities**. Escrow Holder shall have no concern with, nor liability nor responsibility for, this Article.

11.2    **Possession**. Possession of the Property shall pass to Buyer at the Close of Escrow, free and clear of all interests of third parties except those tenants and occupants with continuing rights under the Leases that are assigned to Buyer, subject to the Permitted Exceptions and those items identified in subsections (a) – (f) of Paragraph 8.1.4.

11.3    **Entry by Buyer**.   Buyer, and its current and prospective investors, broker dealers, underwriters, and lenders, and their respective employees, agents, consultants, insurers, contractors and counsel (collectively, "**Buyer's Representatives**"), at Buyer's sole cost and expense, may, prior to termination of the Agreement, reasonably access at all reasonable times (based upon a mutually acceptable inspection schedule and reasonable notice, which may be provided by email, to the following owner's representatives: Andrew Hinkelman at andrew.hinkelman@fticonsulting.com, Greg Gotthardt at greg.gotthardt@fticonsulting.com, and Sofi Daar at sofi.daar@fticonsulting.com) the Property for purposes

of inspecting, testing and the like, subject to the rights of the existing tenants (generically, "**Inspections**"). With respect to the conduct of the Inspections, Buyer shall, at Buyer's sole cost and expense: (a) cause each Inspection to be conducted in a manner that does not interfere with the rights of tenants, occupants and licensees of the Property or the operation of the Property in any material respect; (b) prior to contacting tenants, occupants or Seller's representatives at the Property other than such persons, if any, as Seller may designate from time-to-time, Seller shall have the right to have a representative participate in any such communications; (c) immediately repair any damage to the Property resulting from any Inspection and replace, refill and regrade any holes made in, or excavations of, any portion of the Property as part of such Inspection and restore the Property to its condition existing prior to any Inspections which it conducts on the Property; (d) fully comply with all laws, statutes, regulations, and codes applicable to the activities undertaken in connection with the Inspections; and (e) take commercially reasonable precautions necessary to ensure that the Inspections pose no threat to the safety or health of persons or the environment, and cause no damage to the Property or other property of Seller or third persons. Before any entry onto the Property, Buyer shall secure and maintain, at Buyer's sole cost, a policy of comprehensive public liability and property damage insurance with combined limits of at least Two Million Dollars ($2,000,000.00), naming Seller as an additional insured; a certificate of insurance evidencing the required policy shall be delivered by Buyer to Seller before entry onto the Property by Buyer. Buyer shall indemnify and hold Seller, and Seller's members, managers, officers, directors, employees, agents, representatives, harmless from any claim, cost, lien, action or judgment (including, without limitation, Seller's attorney's fees and defense costs) for personal injury and property damage caused by Buyer or Buyer's Representatives related to entry onto the Property pursuant to this Paragraph. Buyer shall not permit any liens or encumbrances to be placed against the Property in connection with Buyer's investigation and inspection of the Property and/or in connection with Buyer's activities on the Property. No invasive testing or borings shall be done on the Property unless and then only to the extent consented to by Seller, which consent may be granted or withheld in Seller's sole, absolute, and unfettered discretion. The covenants, agreements, and obligations of Buyer set forth in this Paragraph 11.3 shall survive the termination of this Agreement and the Closing, as applicable. In furtherance of Seller's obligations under this Paragraph 11.3, in no event shall Seller knowingly allow any other potential bidder or purchaser of the Property to conduct physical, on-site inspections of the Property prior to the Contingency Date. Buyer shall have the right to access to the Property subject to the limitations in Paragraph 11.3 through and until the Contingency Date.

### ARTICLE 12. ACKNOWLEDGMENTS, WARRANTIES AND REPRESENTATIONS

12.1 <u>**Limit on Escrow Holder's Responsibilities**</u>. Escrow Holder shall have no concern with, nor liability nor responsibility for, this Article.

12.2 <u>**"As Is" Purchase**</u>. Except as otherwise expressly provided in this Agreement, Buyer acknowledges and agrees that Seller, or any member, shareholder, partner, director, officer, manager, person, firm, agent, employee or representative of, or acting or purporting to act on behalf of, Seller has not made, does not make and specifically negates and disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to the Property. Except as otherwise expressly provided in this Agreement, Seller is not liable or bound in any manner by any verbal or written statements, representations or information pertaining to the Property, or the operation thereof, furnished by any real estate broker or any agent or employee of Seller. Buyer further acknowledges and agrees that except as expressly set forth in this Agreement, to the maximum extent permitted by law, that should the Closing occur, then the sale of the Property as provided for herein will be made on an "AS IS" condition and basis "WITH ALL FAULTS". It is understood and agreed that the Purchase Price has been adjusted by prior negotiation to reflect that the Property is sold by Seller and purchased Buyer subject to the foregoing.

12.3 <u>**Seller Not a Foreign Person**</u>. Seller warrants that no individual or entity which, under the terms of this Agreement, will transfer United States Real Property Interests, as defined in Section 897(c) of the INTERNAL REVENUE CODE, is a "foreign person" within the meaning of Section 1445(f) of the INTERNAL REVENUE CODE. Seller also warrants that Buyer as transferee will not be required to withhold tax pursuant to Section 26131 of the California REVENUE AND TAXATION CODE.

12.4 **Brokerage Commissions**. Buyer hereby represents and warrants to Seller that it has not engaged or dealt with any broker, finder or other agent in connection with entry into this Agreement or the transactions contemplated hereby. Each party warrants to the other that the warranting party has incurred no obligation by reason of this Agreement or the transaction contemplated by this Agreement, for any real estate brokerage commission or finder's fee for which the other party would be liable. Each party will hold the other party free and harmless from and against any damage or expense the other party may incur by reason of the untruth as to the warranting party of the foregoing warranty, including expenses for attorneys' fees and court costs. Nothing in this Agreement is intended to create in any licensed real estate broker (or in any other person or entity) any right as a third party beneficiary of this Agreement; specifically, no person or entity has any right (a) to cause or compel either Buyer or Seller to perform any obligation, exercise any right or forebear from exercising any right either may have pursuant to this Agreement, including, but not limited to, any right to terminate this Agreement; or (b) to preclude Buyer and Seller from entering into any amendment of this Agreement.

12.5 **Seller's Other Representations and Warranties**. In addition to any other express agreements of Seller contained in this Agreement, the matters set forth in this Paragraph constitute representations and warranties by Seller which shall survive the Close of Escrow and recordation of Seller's Grant Deeds for a period of twelve (12) months.

12.5.1 <u>Affiliated Entities</u>. Upon entry of the Sale Procedures Order and the Amended SubCon Order, PFI is duly and validly authorized to enter into this Agreement on behalf of Affiliated Entities that are the record owners of certain of the Real Property being sold hereunder and, upon entry of the Sale Order, has authority on behalf of such Affiliated Entities to consummate the transactions contemplated hereunder.

12.5.2 <u>Property Documents</u>. To Seller's current, actual knowledge (without duty of investigation or imputation of knowledge), Seller has provided Buyer with materially complete copies of the Property Documents in Seller's possession.

12.5.3 <u>No Condemnation/Litigation Proceedings</u>. To Seller's current, actual knowledge (without duty of investigation or imputation of knowledge), there are no pending or threatened (to the extent Seller has received written notice thereof) (i) eminent domain proceedings or other actions or regulatory proceedings filed by any federal, state or local governmental agency or authority, or (ii) third-party litigation claims or proceedings other than those occurring in the ordinary course taken against tenants pursuant to Leases, which will affect any portion of the Property after the Closing, except as identified on <u>Exhibit E</u>. <u>Exhibit E</u> shall be completed and delivered to Buyer within fifteen (15) days of the Escrow Opening Date; provided, however, if Seller is unable to complete <u>Exhibit E</u> by such date, Seller shall not be considered in breach of this Agreement and the Contingency Date shall be extended on a day-for-day basis until Seller completes and delivers <u>Exhibit E</u> to Buyer.

12.6 **Untruth or Invalidity of Representations of Warranties; Survival; Limitations**. In the event that, during the period between the execution of this Agreement and the Close of Escrow, Seller learns or has reason to believe that any of Seller's representations and warranties have ceased or may cease to be true, Seller shall give notice to Buyer promptly (which notice shall include copies of any instrument, correspondence or document upon which Seller's notice is based). Within five (5) days after notification in writing by Buyer to Seller of any breach of the warranties and representations set forth herein or, if the cure or remedy thereof requires more than five days (but in no event later than the Closing Date), within a reasonable time after such notification, provided that steps to cure or remedy have been commenced within five days and are pursued with all due diligence, Seller shall, at Seller's own expense, have the right to cure such breach within such five-day period. In the event Buyer does not terminate this transaction pursuant to Paragraph 6.4 and has knowledge of an uncured breach of a Seller representation or warranty in this Article 12, then such representation or warranty shall be automatically reformed as of the expiration of the Contingency Date to conform to the present state of facts and such breach shall be deemed fully cured. The representations and warranties of Seller set forth in this Article 12, as well as the right and ability of Buyer to enforce the same and/or to seek damages for their breach, shall survive the

Closing for a period of six (6) months. For purposes of this Agreement and any document delivered at Closing, whenever the phrases "to Seller's knowledge", "to the actual knowledge of Seller" or the "knowledge" of Seller or words of similar import are used, they shall be deemed to refer to the current, actual knowledge of Andrew Hinkelman and Greg Gotthardt without any duty of investigation or imputation of knowledge. Notwithstanding anything to the contrary or inconsistent in this Agreement or in any of the agreements, certificates or affidavits delivered by Seller pursuant to this Agreement, no officer, director, shareholder, beneficial owner, agent or employee of Seller and/or its affiliates shall be personally liable for any obligation of Seller contained in this Agreement.

Buyer agrees that in the event that Buyer shall obtain any information that is or reasonably seems to be contradictory to, and could constitute the basis of a breach of, any representation or warranty or failure of any condition on the part of Seller, then Buyer shall promptly deliver Seller written notice of such information specifying the representation, warranty or condition to which such information relates. All claims, whether known or unknown, for breach by Seller of a representation or warranty as set forth in this ARTICLE 12, must be asserted in writing by Buyer and delivered to Seller on or before the expiration of such six (6) month period or otherwise such claims shall be invalid and of no force or effect and Seller shall have no liability with respect thereto. If a representation or warranty of Seller has become untrue because of a change in circumstances or conditions through no fault of Seller prior to the Closing, then Buyer, as its sole recourse therefor, may either (i) waive the breach of warranty or representation and proceed to Closing without a reduction in the Purchase Price, or (ii) terminate this Agreement and receive a return of the Deposits, including the Nonrefundable Deposit, along with any interest accrued thereon, which shall constitute an administrative claim in the Bankruptcy Case. All claims relating to or arising out of a breach of a Seller representation and warranty shall be subject to a cap in the aggregate amount of one and quarter percent (1.25%) of the Purchase Price (the "**Cap**"), and Seller's aggregate liability to Buyer for the breach of one or more representations and warranties shall not exceed the amount of the Cap. Further, Seller shall not have any liability for the breach of one or more Seller representations and warranties unless the liabilities, damages, judgments, costs, fees and expenses (including reasonable attorneys' fees) incurred by Buyer resulting from all such claims are in the aggregate amount of at least Two Hundred Fifty Thousand Dollars ($250,000.00). Buyer agrees to first seek recovery under any applicable insurance policies, service contracts and/or leases prior to seeking recovery from Seller, and Seller shall not be liable to Buyer to the extent Buyer's claim is satisfied from all or any of such sources. Notwithstanding anything to the contrary contained herein, Buyer acknowledges that Buyer shall not be entitled to bring any action after the Closing Date based on any representation made by Seller in this ARTICLE 12 to the extent that, prior to Closing, Buyer has or had actual knowledge of such claimed breach of such representation or warranty.

12.7    **Authorization; No Breach**. Buyer and Seller each represent and warrant to the other that each person executing this Agreement on behalf of such party is duly and validly authorized to do so, and that if such party is a partnership, limited liability company, corporation or trustee, that said partnership, corporation, limited liability company, or trustee has full power and authority to enter into this Agreement and consummate the transactions contemplated hereunder. Neither the execution and delivery of this Agreement and the instruments and documents referenced herein, nor the consummation of the transactions contemplated herein conflict with or result in the material breach of any terms, conditions or provisions of any contract or other agreement or instrument to which Buyer or Seller is a party or which affects the Property.

12.8    **Not Listed on OFAC**. Neither Seller nor any of Seller's executive officers is listed on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, Department of the Treasury ("**OFAC**") or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable governmental rules, regulations or orders (collectively, "**Lists**"). Seller is not owned or controlled by, nor acts for or on behalf of, any person or entity on any of the Lists or any person or entity that has been determined by competent authority to be subject to the prohibitions contained in governmental rules, regulations or orders pertaining to terrorists or terrorist organizations. Neither Buyer nor any of Buyer's executive officers is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC or on any other Lists. Buyer is not owned or controlled by, nor acts for or on behalf of, any person or entity on any of the Lists or any other person or entity that has been determined by competent authority to be subject to the

prohibitions contained in governmental rules, regulations or orders pertaining to terrorists or terrorist organizations.

12.9     **NO RELIANCE; AS-IS/WHERE-IS**.     EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, SELLER MAKES NO REPRESENTATION, WARRANTY, COVENANTS OR INDEMNIFICATIONS AS TO THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS, DATA OR INFORMATION DELIVERED BY SELLER OR SELLER'S AGENTS OR REPRESENTATIVES TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, THE PROPERTY INFORMATION.  BUYER ACKNOWLEDGES AND AGREES THAT ALL MATERIALS, DATA AND INFORMATION DELIVERED BY SELLER TO BUYER IN CONNECTION WITH THE TRANSACTION CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, THE PROPERTY INFORMATION, ARE PROVIDED TO BUYER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF SUCH MATERIALS, DATA OR INFORMATION BY BUYER SHALL BE AT THE SOLE RISK OF BUYER.  SELLER SHALL HAVE NO LIABILITY TO BUYER FOR ANY INACCURACY IN OR OMISSION FROM ANY SUCH MATERIALS, DATA AND INFORMATION. WITHOUT IN ANY MANNER LIMITING THE GENERALITY OF THE FOREGOING, BUYER ACKNOWLEDGES THAT IT AND ITS REPRESENTATIVES HAVE INSPECTED THE PROPERTY, THE ITEMS COMPRISING SELLER'S DELIVERIES, THE LEASES, THE CONTRACTS, THE PERMITS AND ENTITLEMENTS, AND ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE PROPERTY, OR WILL BE PROVIDED WITH AN ADEQUATE OPPORTUNITY TO DO SO, ARE OR WILL BE FULLY FAMILIAR WITH THE FINANCIAL AND PHYSICAL (INCLUDING, WITHOUT LIMITATION, ENVIRONMENTAL) CONDITION THEREOF, AND THAT THE PROPERTY, THE LEASES, THE CONTRACTS, THE PERMITS AND ENTITLEMENTS, AND ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE PROPERTY HAVE BEEN PURCHASED BY BUYER IN AN "AS IS" AND "WHERE IS" CONDITION AND WITH ALL EXISTING DEFECTS (PATENT AND LATENT) AS A RESULT OF SUCH INSPECTIONS AND INVESTIGATIONS AND NOT IN RELIANCE ON ANY AGREEMENT, UNDERSTANDING, CONDITION, WARRANTY (INCLUDING, WITHOUT LIMITATION, WARRANTIES OF HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE) OR REPRESENTATION MADE BY BUYER OR ANY AGENT, EMPLOYEE, MEMBER, OFFICER OR PRINCIPAL OF BUYER OR ANY OTHER PARTY (EXCEPT AS OTHERWISE EXPRESSLY ELSEWHERE PROVIDED IN THIS AGREEMENT) AS TO THE FINANCIAL OR PHYSICAL (INCLUDING, WITHOUT LIMITATION, ENVIRONMENTAL) CONDITION OF THE PROPERTY OR THE AREAS SURROUNDING THE PREMISES, OR AS TO ANY OTHER MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, AS TO ANY PERMITTED USE THEREOF, THE ZONING CLASSIFICATION THEREOF OR COMPLIANCE THEREOF WITH FEDERAL, STATE OR LOCAL LAWS, AS TO THE INCOME OR EXPENSE IN CONNECTION THEREWITH, OR AS TO ANY OTHER MATTER IN CONNECTION THEREWITH.

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, IT IS UNDERSTOOD AND AGREED THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR INDEMNIFICATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

BUYER ACKNOWLEDGES AND AGREES THAT, UPON THE CLOSING, SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS," EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT.  BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS, INFORMATION, COVENANTS OR INDEMNIFICATIONS PERTAINING TO THE PROPERTY OR RELATING THERETO MADE OR FURNISHED BY SELLER, OR ANY AGENT OR REPRESENTATIVE REPRESENTING OR PURPORTING TO REPRESENT SELLER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, UNLESS SPECIFICALLY SET FORTH IN THIS AGREEMENT.  BUYER FURTHER ACKNOWLEDGES THAT THE PURCHASE

061021

73ZL-319169

PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE PROPERTY IS BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."



_____                    _____
SELLER'S INITIALS                                  BUYER'S INITIALS

    **12.10** **Buyer's Release of Seller**.  Buyer hereby releases, remises, acquits and forever discharges Seller, its members, managers, directors, officers, shareholders, partners, employees, agents, representatives, affiliates, and their respective successors and assigns (collectively, the "**Released Parties**"), from and against any and all claims, causes of actions, suits, legal or administrative orders or proceedings, demands, damages, punitive damages, losses, costs, liabilities and expenses, whether known or unknown, liquidated or contingent, which Buyer has or may have in the future arising from or in any way relating to the following: (a) the completeness or accuracy of any and all materials, data and information regarding the Property, including, without limitation, the information found in the Property Documents; (b) the physical condition of the Land; (c) the existence or presence of any Hazardous Materials on, under or about the Land and/or the release or discharge of any Hazardous Materials from the Land; (d) the violations of any applicable statutes or laws with regard to the Land, including any Hazardous Materials laws; and (e) any and all other matters regarding the Property, in each case whether existing prior to or after the Closing.  Buyer hereby expressly waives any and all rights Buyer may have under Section 1542 of the California Civil Code, which provides as follows:

               **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

_____                    _____
SELLER'S INITIALS                                  BUYER'S INITIALS

    BUYER EXPRESSLY WAIVES AND RELINQUISHES ANY AND ALL RIGHTS AND BENEFITS UNDER ANY STATE OR FEDERAL STATUTE AND/OR ANY COMMON LAW WHICH PROVIDES RIGHTS AND BENEFITS IN ANY WAY SIMILAR TO THOSE PROVIDED IN CALIFORNIA CIVIL CODE SECTION 1542.

    **12.11** **Natural Hazard Disclosures**.  As used herein, the term "Natural Hazard Area" shall mean those areas identified as natural hazard areas or natural hazards in the Natural Hazard Disclosure Act, California Government Code Sections 8589.3, 8589.4 and 51183.5, and California Public Resources Code Sections 2621.9, 2694 and 4136, and any successor statutes or laws (collectively, the "**Natural Hazards Laws**").  Seller shall provide Buyer with a Natural Hazard Disclosure Statement ("**Disclosure Statement**") in a form required by the Natural Hazards Laws.  Buyer acknowledges that Seller will retain the services of Escrow Holder, or its agent, to examine the maps and other information made available to the public by government agencies for the purpose of enabling Seller to fulfill its disclosure obligations with respect to the Natural Hazards Laws and to prepare the written report of the result of its examination ("**Natural Hazards Report**").  Buyer acknowledges that the Natural Hazards Report will fully and completely discharge Seller from its disclosure obligations under the Natural Hazards Laws and under California Civil Code Sections 1102 through 1102.17.  Buyer acknowledges and agrees that nothing contained in the Disclosure Statement releases Buyer from its obligation to fully investigate and satisfy itself with the condition of the Property, including, without limitation, whether the Property is located in any Natural Hazard Area.  Buyer further acknowledges and agrees that the matters set forth in the Disclosure Statement or Natural Hazards Report may change on or prior to the Closing and that Seller has no obligation to update, modify or supplement the Disclosure Statement or Natural Hazards Report.  Buyer is solely responsible for preparing and delivering its own Disclosure Statement to subsequent prospective purchasers of the Property.

12.12 <u>**Independent Evaluation**</u>. Buyer is a sophisticated and experienced investor in commercial real properties and businesses and has been represented by independent legal counsel and other consultants in connection with the transaction contemplated by this Agreement. Buyer represents and warrants that, in performing its due diligence, Buyer has and will review the title to and the physical condition of the Property, and that it will conduct such independent analyses, studies, reports, investigations and inspections as it deems appropriate in connection with the purchase of the Property. The Purchase Price and the terms and conditions set forth herein are the result of arm's-length bargaining between experienced entities familiar with transactions of this kind.

12.13 <u>**California Required Plumbing Fixtures Disclosure**</u>. Buyer acknowledges that Seller has informed Buyer (i) of the requirements of California Civil Code Section 1101.5(a), which requires that on or before January 1, 2019 all noncompliant plumbing fixtures in any multifamily residential real property and in any commercial real property shall be replaced with water-conserving plumbing fixtures, and (ii) that Seller does not know, and makes no representations or warranties, whether any of the plumbing fixtures at the Property comply with the requirements of California Civil Code Section 1101.5(a). In the event Closing occurs, Buyer acknowledges and agrees that it shall be responsible, at its sole cost and expense, for complying with all such requirements.

## ARTICLE 13. POST-CLOSING OBLIGATIONS

13.1 <u>**Limit on Escrow Holder's Responsibilities**</u>. Escrow Holder shall have no concern with, nor liability nor responsibility for, this Article.

13.2 <u>**Buyer Assumption of Contracts and Leases**</u>. Effective as of the Close of Escrow and subject to the terms of this Agreement, upon assignment by Seller, Buyer shall assume all obligations of Seller under any Purchased Contracts and Leases, including Post-Petition Construction Contracts.

## ARTICLE 14. REMEDIES

14.1 <u>**Limit on Escrow Holder's Responsibilities**</u>. Escrow Holder shall have no concern with, nor liability nor responsibility for, this Article.

<u>**Default by Buyer**</u>. THE PARTIES AGREE THAT THE PURCHASE PRICE HAS BEEN DETERMINED NOT ONLY BY A CONSIDERATION OF THE VALUE OF THE PROPERTY *PER SE* BUT ALSO BY A CONSIDERATION OF THE VALUE OF THE VARIOUS COVENANTS, CONDITIONS AND WARRANTIES OF THIS AGREEMENT AS THEY RELATE TO THE PROPERTY. THE CONSIDERATION OF SUCH VALUES, SOMETIMES MEASURABLE IN RELATION TO KNOWN EXTERNAL STANDARDS AND SOMETIMES DETERMINED ONLY BY SUBJECTIVE BUSINESS JUDGMENTS OF THE PARTIES, ARE ALL INTERRELATED AND AFFECTED BY THE PARTIES' ULTIMATE AGREEMENT UPON THE PURCHASE PRICE. THE PARTIES HAVE DISCUSSED AND NEGOTIATED IN GOOD FAITH UPON THE QUESTION OF THE DAMAGES THAT WOULD BE SUFFERED BY SELLER IN THE EVENT THIS AGREEMENT TERMINATES PRIOR TO THE CLOSE OF ESCROW DUE TO A BUYER MATERIAL DEFAULT. IT SHALL BE A MATERIAL DEFAULT BY BUYER UNDER THIS AGREEMENT (A "**BUYER'S DEFAULT**") IF ANY OF BUYER'S REPRESENTATIONS AND WARRANTIES ARE MATERIALLY UNTRUE OR BUYER SHALL FAIL TO PERFORM OR COMPLY WITH ANY OF ITS COVENANTS, ACTS AND AGREEMENTS CONTAINED IN THIS AGREEMENT IN ANY MATERIAL RESPECT WHEN REQUIRED TO BE PERFORMED HEREUNDER AND SUCH FAILURE SHALL CONTINUE FOR FIVE (5) BUSINESS DAYS AFTER SELLER GIVES BUYER WRITTEN NOTICE OF SUCH FAILURE, EXCEPT THAT IF SUCH FAILURE RELATES TO ANY MATERIAL COVENANT OR AGREEMENT TO BE PERFORMED AT THE CLOSING, THERE SHALL BE NO NOTICE REQUIRED OR GRACE OR CURE PERIOD ALLOWED. IF A BUYER'S DEFAULT OCCURS AND PROVIDED NO MATERIAL DEFAULT BY SELLER HAS OCCURRED THAT HAS NOT BEEN CURED, THEN SELLER SHALL HAVE THE RIGHT TO TERMINATE THIS AGREEMENT IMMEDIATELY BY GIVING WRITTEN NOTICE TO BUYER, IN WHICH EVENT, THE PARTIES HAVE ENDEAVORED TO REASONABLY ESTIMATE SUCH DAMAGES AND

THEY HEREBY AGREE THAT, BY REASON OF THE AFORESAID CONSIDERATIONS, (I) SUCH DAMAGES ARE AND WILL BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, (II) LIQUIDATED DAMAGES IN THE AMOUNT OF ANY DEPOSITS ACTUALLY DELIVERED BY BUYER ARE AND WILL BE REASONABLE, (III) IN THE EVENT OF SUCH DEFAULT, SELLER SHALL RECEIVE SUCH DEPOSITS AS LIQUIDATED DAMAGES, AND (IV) IN CONSIDERATION OF THE PAYMENT OF SUCH LIQUIDATED DAMAGES, SELLER SHALL BE DEEMED TO HAVE WAIVED ALL OTHER CLAIMS FOR DAMAGES, EXCEPT PURSUANT TO PARAGRAPH 21.1 AND FOR CLAIMS FOR INDEMNITY ARISING UNDER PARAGRAPHS 11.3 AND 12.4.

| | |
|---|---|
| _____ | _____ |
| Seller's Initials | Buyer's Initials |

14.2     **Default by Seller**. If this transaction fails to close as a result of Seller's material default, which Seller fails to cure within five (5) Business Days after receipt of written notice describing in reasonable detail the nature of such material default, then Buyer's sole and exclusive remedy shall be to (i) terminate this Agreement and the Escrow by giving Seller and Escrow Holder written notice of Buyer's election to immediately terminate this Agreement and Escrow and receive an administrative claim in the Bankruptcy Case pursuant to Section 503(b) of the Bankruptcy Code in the amount of the Breakup and Expense Reimbursement Fee or (ii) assert and seek judgment against Seller for specific performance, and if such judgment is not obtained, then exercise such remedy under (i) above.

## ARTICLE 15. ASSIGNMENT

15.1     **Assignment**. Buyer shall not assign to any person(s) any or all of Buyer's rights in this Agreement without the prior written consent of Seller, which consent may be withheld in Seller's sole and absolute discretion; provided, however, that Buyer shall have the right without Seller's consent to assign this Agreement to any entity that controls, is controlled by, or is under common control with, Buyer. Any permitted assignment may be exercised only by written assignment executed by the assigning party and accepted in writing by the assignee (which must, in such written acceptance, obligate itself to perform the assignor's obligations under this Agreement), and delivered to Escrow Holder and the other party prior to the Close of Escrow. Any assignment of a party's rights made or attempted without such written assignment and acceptance shall be void. No such assignment shall release Buyer from the obligations of Buyer under this Agreement.

15.2     **Effect of Approved Assignment by Buyer**. In the event of any approved assignment by Buyer, the assignee will be and become: (i) the grantee of Seller's Grant Deeds; (ii) the insured owner under the Title Policies; and (iii) the person(s) having the right or obligation to (a) deliver statements, (b) deliver documents, (c) give approvals, (d) waive conditions, or (e) make demands, all as may be permitted or required by this Agreement and not then already accomplished by Buyer or another approved assignee.

## ARTICLE 16. JURISDICTION AND DISPUTE RESOLUTION

16.1     **Bankruptcy Court Jurisdiction**.  Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder or thereunder, or the transaction contemplated hereunder or thereunder; and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

16.2     **Jury Trial Waiver**.  EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT OR THE ANCILLARY DOCUMENTS

IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE ANCILLARY DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY. EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (a) NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION; (b) SUCH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER; (c) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY; AND (d) SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS 16.2.

## ARTICLE 17. DAMAGE OR CONDEMNATION

17.1 **Damage or Condemnation**. Risk of loss resulting from any condemnation or eminent domain proceeding which is commenced or has been threatened before the Closing, and risk of loss to the Property due to fire, flood or any other cause before the Closing, shall remain with Seller. If before the Closing the Property or any portion thereof should be materially damaged, or if the Property or any material portion thereof should be subjected to a *bona fide* threat of condemnation or shall become the subject of any proceedings, judicial, administrative or otherwise, with respect to the taking by eminent domain or condemnation, then Buyer may terminate this Agreement and Escrow as to the subject property described in Exhibit A-1 that has been materially damaged or that is the subject to condemnation described above (each, a "**Damaged/Taken Property**") by written notice to Seller and Escrow Holder given within five (5) days after Buyer learns of the material damage or taking. If the Closing Date is within the five-day period, then the Closing Date shall be extended to the next Business Day following the end of the five-day period. If no such election is made by Buyer, and in any event if the damage is not material, this Agreement shall remain in full force and effect and the transfer of the Property, less any interest taken by eminent domain or condemnation, shall be effected with no further adjustment (except as provided in this Paragraph), and upon the Closing, Seller shall assign, transfer and set over to Buyer all of the right, title and interest of Seller in and to any awards that have been or that may thereafter be made for such taking, and Seller shall assign, transfer and set over to Buyer any insurance proceeds that may thereafter be paid for such damage or destruction giving Buyer a credit against the Purchase Price at Closing for any deductible under such policies. For the purposes of this Paragraph, the phrases "material damage" and "materially damaged" mean, as to any particular Damaged/Taken Property, damage for which the cost of repair is reasonably expected to exceed three percent (3%) of the applicable Allocated Purchase Price attributable to such Damaged/Taken Property ("**Material Damage**"); provided further that if at least ten percent (10%) of the individual properties comprising the Property identified in Exhibit A-1 (each, an "**Individual Property**") each suffers Material Damage, then Buyer shall have the right to terminate this Agreement in its entirety as to all of the Property. If this Agreement terminates pursuant to this Paragraph as to only a portion of the Property described herein, then the Purchase Price shall be reduced by the applicable Allocated Purchase Price attributable to such Damaged/Taken Property (as mutually agreed upon by the parties), and thereafter the parties shall have no further rights or obligations under this Agreement with respect to the Damaged/Taken Property except for those that expressly survive termination of this Agreement. If this Agreement terminates pursuant to this Paragraph as to all of the Property, then the Deposits (other than the Nonrefundable Deposit) and all interest accrued thereon shall be refunded to Buyer, the same as if there had been a failure of one of the conditions of Paragraph 6.1.

## ARTICLE 18. NOTICES

18.1 **Time of Delivery; Addresses**. Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly delivered upon personal delivery, or by Federal Express (or similar reputable express delivery service), or by facsimile transmission or electronic mail with back-up copy mailed the same day, or as of the second Business Day after mailing by United States registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

| | |
|---|---|
| If to Seller, to: | Professional Financial Investors<br>350 Ignacio Blvd, Ste 200,<br>Novato, CA 94949<br>Attn:  Andrew Hinkelman, Chief Restructuring Officer<br>Email:  andrew.hinkelman@fticonsulting.com |
| With a copy to: | Sheppard, Mullin, Richter & Hampton LLP<br>379 Lytton Avenue<br>Palo Alto, CA 94301<br>Attn: Barrett Marum; Michael Leake<br>Telephone: (650) 815-2600<br>Facsimile: (650) 815-2601<br>Email: bmarum@sheppardmullin.com;<br>mleake@sheppardmullin.com |
| If to Buyer, to: | Hamilton Zanze & Company<br>37 Graham Street, Suite 200B<br>San Francisco, California 94129-0454<br>Attention:  Kurt Houtkooper, David Nelson, Ashlee Cabeal and Todd Williams<br>Email:    kurt@hamiltonzanze.com;    david@hamiltonzanze.com;<br>ashlee@hamiltonzanze.com and todd@hamiltonzanze.com<br>Telephone: (415) 561-6800 |
| With a copy to: | Allen Matkins Leck Gamble Mallory & Natsis LLP<br>Three Embarcadero Center, 12th Floor<br>San Francisco, California  94111-4074<br>Attention:  Debra Riley and Anthony Burney<br>Email: driley@allenmatkins.com; aburney@allenmatkins.com<br>Telephone: (415) 837-1515 |
| If to Escrow Holder, to: | Chicago Title Insurance Company<br>4911 Birch St.<br>Newport Beach, CA 92660<br>Attn: Kathleen Huntsman<br>Telephone: (949) 724-3110<br>Email: khuntsman@ctt.com |
| If to Title Officer, to: | Chicago Title Insurance Company<br>4911 Birch St.<br>Newport Beach, CA 92660<br>Attn: David James or SuZanne Kennedy<br>Telephone: (949) 724-3185<br>Email: david.james@ctt.com or suzanne.kennedy@ctt.com |

or to such other address or to such other person as any party shall designate to the others for such purpose in the manner set forth above.

## ARTICLE 19. EXCULPATORY PROVISIONS

19.1 **Neglect, Misconduct**. Escrow Holder shall not be liable for any of its acts or omissions unless the same constitutes negligence or willful misconduct.

19.2 **Information**. Escrow Holder shall have no obligation to inform any party of any other transaction or of facts within Escrow Holder's knowledge, even though the same concerns the Property, provided such matters do not prevent Escrow Holder's compliance with this Agreement.

19.3 **Form, Validity and Authority**. Escrow Holder shall not be responsible for (i) the sufficiency or correctness as to form or the validity of any document deposited with Escrow Holder, (ii) the manner of execution of any such deposited document, unless such execution occurs in Escrow Holder's premises and under its supervision, or (iii) the identity, authority or rights of any person executing any document deposited with Escrow Holder unless under Escrow Holder's supervision or control.

19.4 **Conflicting Instructions**. Upon receipt of any conflicting instructions, Escrow Holder shall have the right to take no further action until otherwise directed, either by the parties' mutual written instructions or a final order or judgment of the Bankruptcy Court.

19.5 **Interpleader**. Escrow Holder shall have the absolute right, at its election, to file an action in interpleader requiring the parties to answer and litigate their several claims and rights among themselves, and Escrow Holder is authorized to deposit with the clerk of the court all documents and funds held in this Escrow. If such action is filed, the parties shall jointly and severally pay Escrow Holder's termination charges and costs and reasonable attorneys' fees which Escrow Holder is required to expend or incur in the interpleader action, the amount thereof to be fixed and judgment therefor to be rendered by the court. Upon the filing of such action, Escrow Holder shall be and become fully released and discharged from all obligations to further perform any obligations imposed by this Agreement.

19.6 **Miscellaneous**. Recordation of any instruments delivered through this Escrow, if necessary or proper in the issuance of the Title Policies, is authorized. No examination or insurance as to the amount or payment of real or personal property taxes is required unless the real property tax is payable on or before the date of the Title Policies. If any party is seeking to obtain a loan secured by the Property, then, during the pendency of this Escrow, Escrow Holder is authorized to furnish the lender, or anyone acting on its behalf, any information concerning this Escrow, including, but not limited to, a certified copy of this Agreement and any amendments thereto. If any party uses facsimile-transmitted signed documents, Escrow Holder is authorized to rely upon such documents as if they bore original signatures; provided, however, that facsimile-transmitted signed documents will not be accepted for recordation by the County Recorder.

19.7 **Additional Instructions**. Escrow Holder may request that Buyer and Seller sign additional instructions related to the Escrow created by this Agreement. Buyer and Seller agree to be reasonable in reviewing, commenting on, proposing changes to, approving and entering into any such additional instructions; provided, however, Seller, Buyer and Escrow Holder agree that in the event of any conflict or inconsistency between this Agreement and such additional instructions, the terms, conditions and provisions of this Agreement shall govern and control.

## ARTICLE 20. BANKRUPTCY PROVISIONS

20.1 **Bankruptcy Court Approval**. This Agreement is subject to the approval of the Bankruptcy Court.

20.2 **Filing of Sale Motion**. Seller (and TICs, if necessary) will promptly file and diligently pursue the Sale Motion if Buyer does not terminate this Agreement on or before the Contingency Date pursuant to Paragraph 6.1. Seller and Buyer agree to cooperate in preparing and filing the notices(s) and

Sale Motion with the Bankruptcy Court. Seller shall promptly confer with Buyer regarding any written objections filed with the Bankruptcy Court with respect to the Sale Motion.

20.3 **Obligation to Seek Sale Order**. Seller shall promptly seek entry of the Sale Order if (i) there is no other qualified bidder, (ii) there is no other qualified bid; and (iii) Seller is the Successful Bidder (as defined in the Sale Procedures Order), and perform such other acts as may be necessary to permit Seller to consummate the transaction contemplated by this Agreement. If an appeal is filed, Seller shall use commercially reasonable efforts to defend the order or orders being appealed, and, at Buyer's sole election to close notwithstanding any such appeal, may close the transaction unless such closing is subject to a stay. Seller shall keep Buyer reasonably informed of the status of efforts to obtain the entry of the Sale Order.

20.4 **Sale Procedures**. Seller shall use reasonable best efforts to cause the Bankruptcy Court to enter the Sale Procedures Order approving Sale Procedures acceptable to both Buyer and Seller and consistent with the provisions and obligations set forth in Paragraphs 20.6 and 20.7 below, as soon as practicable after full execution of this Agreement. If the Bankruptcy Court does not approve the Sale Procedures in their entirety, or if the Buyer does not accept any modified terms approved by the Bankruptcy Court, then the Buyer shall have the right to terminate this Agreement and neither party shall have any further obligation under this Agreement except for Seller and Escrow Holder's obligation to return the Deposits as provided for in Paragraph 8.2.2.

20.5 **Amended SubCon Order**. At the same time Seller seeks the Sale Procedures Order, Seller shall file a motion requesting entry of the Amended SubCon Order and shall request to have such motion heard at the same time as the hearing on the Sale Procedures. If the Bankruptcy Court does not enter the Amended SubCon Order, Seller, with the reasonable cooperation of Buyer, shall formulate and implement an alternative strategy prior to the Contingency Date that authorizes Seller to convey and transfer the Non-Debtor Property to Buyer on the Closing Date ("**Non-Debtor Resolution**"). If Seller shall fail to implement a Non-Debtor Resolution by the Contingency Date, the Seller shall not be in breach of this Agreement, and the Contingency Date shall be extended on a day-for-day basis until such time that a Non-Debtor Resolution has been implemented.

20.6 **Breakup and Expense Reimbursement Fee.** In consideration of Buyer conducting its due diligence and entering into this Agreement subject to higher and better offers pursuant to the Auction (defined below), Buyer shall, subject to Bankruptcy Court approval in connection with the approval of the Sale Procedures, receive a fee of Six Million Six Hundred Eighty Thousand Dollars ($6,680,000) to compensate Buyer for its legal, accounting, and other professional costs and expenses, as well as Buyer's internal management time, incurred in connection with the proposed sale (the "**Breakup and Expense Reimbursement Fee**"), if Buyer is not the Successful Bidder at the Auction (defined below) or if the Seller defaults pursuant to Paragraph 14.2. The Breakup and Expense Reimbursement Fee shall be deemed to be an allowed expense of the kind specified in Section 503(b) of the Bankruptcy Code at the time the Auction concludes if Buyer is not the Successful Bidder. Buyer's Breakup and Expense Reimbursement Fee shall be satisfied exclusively from (i) the proceeds of the sale to the alternative Successful Bidder, (ii) from another bidder's forfeited deposit, or (iii) the proceeds of any subsequent sale of the Property by Seller.

20.7 **Competing Bid Requirements**.

20.7.1 A competing bid must have value to the bankruptcy estate that is greater than the sum of value offered under this Agreement, plus (i) the amount of the Breakup and Expense Reimbursement Fee ($6,680,000), and (ii) Two Million Dollars ($2,000,000) (the "**Bidding Increment**"). A qualified competing bid must therefore exceed Four Hundred Forty-Two Million Six Hundred Eighty Thousand Dollars ($442,680,000) ("**Opening Bid**"), plus the value of Assumed Obligations under this Agreement, and otherwise meet the financing and other requirements set forth in the Sale Procedures, including such requirements set forth Paragraph 20.7.2 (such bid, a "**Qualified Competing Bid**"). If there is a Qualified Competing Bid, Seller shall hold an auction for the Property (the "**Auction**") no later than 30 days following the Contingency Date, provided, however, if the 30th day is not a Business Day, then the first Business Day following the 30th day,

and as more fully described in the Sale Procedures ("**Auction Date**").   Buyer may participate in such Auction and shall be allowed, in connection with any subsequent bid amount, to receive a credit at Close of Escrow in the amount of $6,680,000, representing the Breakup and Expense Reimbursement Fee that the Seller will not have to pay because Buyer is the Successful Bidder. At the Auction, the first subsequent bid must exceed the Opening Bid by at least Five Hundred Thousand Dollars ($500,000).  Thereafter and continuing until there is only one bidder remaining, each bidder must increase the subsequent bid in an amount of at least Two Million Dollars ($2,000,000) to remain a bidder in the Auction.   To determine the winning bid at any such Auction, Seller shall evaluate the value to be provided under the bids, including the net economic effect upon Sellers' estates, taking into account the Breakup and Expense Reimbursement Fee owed to Buyer and the obligations assumed by Buyer under the Agreement.

20.7.2    To be deemed a Qualified Competing Bid, a bidder must comply with the Sale Procedures, including, without limitation: (i) submit its bid using a Purchase Agreement and Escrow Instructions substantially in the form of this Agreement, with a copy marked to show changes, if any, from this Agreement; (ii) submit its bid by no later than 5:00 p.m. PST twenty-two (22) days after the Contingency Date ("**Bid Deadline**"); (iii) not include any contingencies to closing the transaction in its bid, including, without limitation, financing, inspection, and due diligence contingencies; (iv) be able to close the transaction no later than fifteen (15) days after entry of the Sale Order as further explained in the Sale Procedures; (v) provide at the time of its bid (A) a representation that the bidder has the financial ability to perform and provide evidentiary documentation demonstrating such financial ability to close (*e.g.*, financial statements and bank statements that show available cash necessary to close the transaction) that are satisfactory to Seller in its reasonable discretion; and (B) a representation that the bidder is duly authorized to submit the bid and close the transaction and has already obtained all necessary approvals (*e.g.*, board approvals), plus, if requested by Seller, supporting documents satisfactory to Seller in its reasonable discretion; and (vi) submit with its bid a good-faith non-refundable deposit in the amount of Twenty-Five Million Dollars ($25,000,000).

20.8    **Back-up bidder**.  If a competing bidder outbids Buyer, Buyer may serve as the back-up bidder with a bid in the amount of Buyer's last bid amount less $6,680,000.  Buyer shall notify Seller of whether Buyer will serve as a back-up bidder contemporaneous with Buyer's delivery of the Auction Deposit.  Should Buyer become the back-up bidder at the conclusion of the Auction, Escrow Holder shall promptly return the Auction Deposit less the Back-up Deposit to Buyer pursuant to this Paragraph 20.8 and the Back-up Deposit shall thereafter serve as the deposit for any future Closing with Seller.  Notwithstanding Buyer's agreement to be a back-up bidder, Buyer shall be entitled to the Breakup and Expense Reimbursement as provided under Paragraph 20.6.  If the Successful Bidder fails to close the transaction on or before eighteen (18) days following the entry of the Sale Order, then Seller shall close the transaction with Buyer no later than ten (10) days thereafter or Buyer shall be relieved of any obligation to perform as the back-up bidder, the Escrow Holder shall promptly return the Back-up Deposit to Buyer and this Agreement shall be terminated, unless Buyer agrees to an extension of time, at its sole discretion.  If Buyer elects not to be the back-up bidder and the Buyer is not the Successful Bidder at the Auction, this Agreement shall be terminated and Escrow Holder shall promptly return the Auction Deposit to Buyer. Should Buyer elect to be a back-up bidder, Escrow Holder shall promptly return the Back-up Deposit to Buyer after the Close of Escrow with the Successful Bidder.

## ARTICLE 21. GENERAL PROVISIONS

21.1    **Attorneys' Fees**. If either party commences litigation for the judicial interpretation, reformation, enforcement or rescission of this Agreement, the prevailing party will be entitled to a judgment against the other for an amount equal to reasonable attorneys' fees and court and other costs incurred. The "prevailing party" shall be the party who is entitled to recover its costs of suit, whether or not the suit proceeds to final judgment. A party not entitled to recover its costs shall not recover attorneys' fees. No sum for attorneys' fees shall be counted in calculating the amount of a judgment for the purposes of determining whether a party is entitled to recover its costs or attorneys' fees.

21.2 **Gender, Number; Herein; Including**. Whenever the context requires, the use herein of (i) the neuter gender includes the masculine and the feminine, and (ii) the singular number includes the plural. The words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires. The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

21.3 **Calculation of Time; Business Days**. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the (i) stated Closing Date (as extended, if applicable), or (ii) last day for performance of an act falls on a non-Business Day, the Closing Date (as extended, if applicable) or such last day, as the case may be, shall be the next following regular Business Day.

21.4 **Time of the Essence**. Time is of the essence of each covenant of this Agreement for which a date of performance is specified.

21.5 **Survival of Provisions**. Subject to the express terms of this Agreement, the representations, warranties, agreements and indemnities set forth in this Agreement shall remain operative, shall be deemed made at the Close of Escrow, and shall survive the Closing and the execution and delivery of Seller's Grant Deeds and shall not be merged in Seller's Grant Deeds.

21.6 **Authority of Signatories**. Each individual signing this Agreement on behalf of a corporation, partnership, limited liability company or other entity warrants that he or she is duly authorized to sign and deliver this Agreement on behalf of the entity, either in accordance with a duly adopted resolution of the board of directors or management group of the entity, or in accordance with the bylaws, partnership agreement, operating agreement or other organizational documents of the entity, or as the entity's duly authorized agent with authority to bind the entity. Each individual signing also warrants that this Agreement is binding upon the entity in accordance with its terms.

21.7 **Joint and Several Liability**. If a party or an assignee of a party consists of more than one person, the liability of each person signing this Agreement on behalf of such party or assignee shall be joint and several.

21.8 **Captions**. Captions in this Agreement are inserted for convenience of reference only and do not define, describe or limit the scope or the intent of this Agreement.

21.9 **Applicable Law**. This Agreement shall be construed and enforced in accordance with the laws of the State of California.

21.10 **Entire Agreement**. This Agreement contains the entire agreement between the parties relating to the transaction contemplated hereby and all prior or contemporaneous agreements (including without limitation any letter of intent signed by either or both parties), understandings, representations and statements, oral or written, are merged herein.

21.11 **Modifications**. No modification, waiver or discharge of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver or discharge is or may be sought.

21.12 **Successors**. All terms of this Agreement shall be binding upon and inure to the benefit of the parties and their respective administrators or executors, successors and assigns; nothing contained in this Paragraph shall affect ARTICLE 15.

21.13 **Severability**. If any provisions of this Agreement, or any portion of any such provision, is held to be unenforceable or invalid, the remaining provisions and portions shall nevertheless be carried into effect.

21.14 **Further Assurances**. Each party to this Agreement, for itself and its successors and assigns, agrees to take such additional actions and execute such additional instruments as may be reasonably requested by Escrow Holder or the other party in order to give effect to the transaction contemplated hereby.

21.15 **Counterparts; Electronic Signatures**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one instrument. Electronic signatures are deemed to be equivalent to original signatures for purposes of this Agreement. The exchange of copies of this Agreement and of signature pages by electronic mail in "portable document format" (".pdf"), or by any other electronic means intended to preserve the original appearance of a document, shall constitute effective execution and delivery of this Agreement to the parties and may be used in lieu of an original hard-copy agreement. Buyer hereby consents to the use of any third-party electronic signature capture service providers as may be chosen by Seller.

*[Signatures appear on the following page]*

This Agreement has been executed as of the date set forth at the beginning hereof.

**Seller:**

Date: 6/16/2021
_____

Professional Financial Investors, Inc.,
a California corporation

By _Andrew Hinkelman_
F880F69AB4BC4E3...

Name___Andrew Hinkelman___

Its_____Chief Restructuring Officer___


**Buyer:**

Date: 6/16/2021
_____

Hamilton Zanze & Company,
a California corporation

By _Kurt Houtkooper_
32461429C9314A5...

Name___Kurt Houtkooper___

Its_____President___

## CONSENT OF ESCROW HOLDER

The undersigned Escrow Holder hereby agrees to (i) accept the foregoing Agreement, (ii) be Escrow Holder under the Agreement, and (iii) be bound by the Agreement in the performance of its duties as Escrow Holder; provided, however, the undersigned shall have no obligations, liability or responsibility under (a) this Consent or otherwise, unless and until the Agreement, fully signed by the parties, has been delivered to the undersigned, or (b) any amendment to said Agreement unless and until the same is accepted by the undersigned in writing.

Date: 6/17/2021

Chicago Title Insurance Company

DocuSigned by:

By _kathleen Huntsman_

Escrow Officer

**EXHIBIT A**

**Legal Description**

[To be attached]

Case: 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 11:25:55   Page 70 of
148

79ZL-319169

**EXHIBIT A-1**

**Property List**

**Commercial Properties:**

| Property Name | Address | City |
|---|---|---|
| Tamal Plaza | 100 Tamal Vista | Corte Madera |
| Hunt Plaza | 240 Tamal Vista | Corte Madera |
| North Bay Business Center | 7200 Redwood Blvd. | N. Novato |
| City Center | 1701 Novato Blvd. | N. Novato |
| Baywood Center | 1682 Novato Blvd. | N. Novato |
| Novato Business Center | 1500, 1510, 1516 Grant Ave. | N. Novato |
| HQ – Suite 102 – 300 | 350 Ignacio Blvd., Suite 100 | S. Novato |
| The Keys Center | 353-359 Bel Marin Keys Blvd. | S. Novato |
| Sequoia Business Center | 1425 North McDowell | Petaluma |
| The Redwoods | 1341-1353 Redwood Way | Petaluma |
| Duffy Place | 607 - 615 Irwin Street | San Rafael |
| Urban Business Center/Las Gallinas Business Center | 117-11-121 Paul Drive | San Rafael |
| Northgate Professional Center | 899 Northgate Drive | San Rafael |
| Northgate Heights Business Center | 1050 Northgate Drive | San Rafael |
| San Pedro Business Center | 30 North San Pedro Road | San Rafael |
| The Northgate Business Center | 555 Northgate Drive | San Rafael |
| Gateway Business Center | 851 Irwin Street | San Rafael |
| Creekside | 7 Mount Lassen Drive | San Rafael |
| Mariners Landing/Gate Five | 200 Gate Five Road | Sausalito |
| Broadway Square | 10 Maple St & 635-651 Broadway | Sonoma |
| The Broadway (1) | 1151 Broadway | Sonoma |

**Multi-Family Properties:**

| Property Name | Address | City |
|---|---|---|
| Sycamore Creek Apartments | 100 Sycamore Avenue | San Anselmo |
| Lincoln Villa | 1825 Lincoln Avenue | San Rafael |
| Glenwood Apartments | 1222 Irwin Street | San Rafael |
| Northgate Apartments | 825 Las Gallinas Avenue | San Rafael |
| Brookside Apartments | 515 B Street | San Rafael |

| Prospect Ridge | 419 Prospect Drive | San Rafael |
| 285 Woodland | 285 Woodland Avenue | San Rafael |
| 390 Woodland | 390 Woodland Avenue | San Rafael |
| The Heights Apartment Homes | 109 Professional Center Parkway | San Rafael |
| Rafael Gardens | 1315 Lincoln Avenue | San Rafael |
| Oak Hill Apartments | 216 Marin Street | San Rafael |
| Merrydale View Apartments | 7 Merrydale Road | San Rafael |
| Marin Heights Apartment Homes | 19 Merrydale Road | San Rafael |
| 1 Hammondale Court | 1 Hammondale Court | San Rafael |
| Albion Terrace Apartments | 225 Nova Albion Way | San Rafael |
| 107 Marin Street | 107 Marin Street | San Rafael |
| Parc Marin | 1441 Casa Buena Drive | Corte Madera |
| Pacheco Villas | 17-23, 30-42 Clay Court | Novato |
| Ignacio Hills Tennis & Garden Apartments | 461 Ignacio Blvd., 445 Ignacio Blvd., 475 Ignacio Blvd., 551 Alameda Del Prado, 401 Ignacio Blvd. & 521 Alameda Del Prado, 511 & 531 Alameda Del Prado, 501 Alameda Del Prado, and 481 Ignacio Blvd. | Novato |
| Ignacio Lane Apartments | 49 Ignacio Lane | Novato |
| Ignacio Place | 335 Enfrente Road | Novato |
| Ignacio Gardens Apartments | 380-450 Alameda del Prado | Novato |
| Country Club Apartments | 980 Ignacio Blvd. | Novato |
| Fairway Apartments | 1000 Ignacio Blvd. | Novato |
| 3rd Street Apartments | 1129 3rd Street | Novato |
| Novato Court | 1506 Vallejo Avenue | Novato |
| Sonoma Mission Apartments | 120 Orchard Avenue | Sonoma |
| Village Green | 350 Robinson Street | Sonoma |
| Redwood Manor Apartments | 355 Boyes Blvd. | Sonoma |
| 885 Broadway | 885 Broadway | Sonoma |
| Madrone Apartments | 15411-15499 Marty Drive | Glen Ellen |
| Oaktree Apartments | 16914 Sonoma Highway | Sonoma |

**EXHIBIT A-2**

**Personal Property**

**VEHICLE LIST**

| Item No. | Year Make/Model | VIN |
|---|---|---|
| 1 | 2007 Utility Trailer | 16VVX121572A64408 |
| 2 | 2010 Ford E350SD | 1FDSS3HL5ADA83577 |
| 3 | 2013 Ford F-150 | 1FTFX1CF8DKF32652 |
| 4 | 2019 Ford Ranger | 1FTER1EH5KLA99433 |
| 5 | 2019 Ford RANGER | 1FTER1EH3KLB02345 |
| 6 | 2020 Ford Edge | 2FMPK4J95LBA14066 |
| 7 | 2019 Ford F550SD with e | 1FDUF5GY6KEG04677 |

**MAINTENANCE SHED**

**Paint Sprayers**
**Shelf Rack**
**Lawn Trimmers**

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 1 | GRACO | MAGNUMX7 | PAINT SPRAYER | UL9 |
| 1 | WAGNER | 0288007 | PAINT SPRAYER | UL9 |
| 1 | GRACO | 490ST | PAINT SPRAYER | UL9 |
| 1 | UNKNOWN | UNKNOWN | STRIPING PAINT SPRAYER | UL9 |
| 1 | CROIX | CX-20 | TURBINE PAINT SPRAYER | UL9 |
| 1 | UNKNOWN | UNKNOWN | 8''X2'X2' SHELF RACK | UL9 |
| 1 | MCLANE | 101-35 RP-7 | LAWN EDGE TRIMMER | UL9 |
| 1 | HONDA | UNKNOWN | LAWN TRIMMER | UL9 |
| 2 | UNKNOWN | UNKNOWN | CARPETED MOVER DOLLY | UL9 |
| 2 | BRUTE | UNKNOWN | 42G TRASH CAN | UL9 |
| 1 | RUBBERMAID | UNKNOWN | 32G TRASH CAN | UL9 |

**Hand Sewer Snakes**
**Toilet Snakes**
**Sewer Snakes**
**Power Washers**

SMRH:4825-2386-3785.25
061021
73ZL-319169

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 1 | N/A | D-25 HANDY | GENERAL PIPE CLEANER | UL12 |
| 1 | RIDGID | N/A | GENERAL PIPE CLEANER | UL12 |
| 1 | COBRA | N/A | POWER PISTOL GRIP BRUMAUGER | UL12 |
| 1 | N/A | N/A | POWER PISTOL GRIP BRUMAUGER | UL12 |
| 1 | RIDGID | UNKNOWN | HAND TOILET-HELD | UL12 |
| 1 | UNKNOWN | UNKNOWN | HAND TOILET-HELD | UL12 |
| 2 | RIDGID | K-400-T2 | SEWER SNAKE | UL12 |
| 1 | RIDGID | C-45lw cable | SEWER SNAKE CABLE | UL12 |
| 1 | UNKNOWN | UNKNOWN | PRESSURE WASHER POLE | UL12 |
| 1 | UNKNOWN | UNKNOWN | PRESSURE WASHER POLE | UL12 |
| 12 | UNKNOWN | UNKNOWN | POWER WASHES HOSES | UL12 |
| 1 | UNKNOWN | UNKNOWN | 8'X2'X2' SHELF RACK | UL12 |

Power Washers
Water Hoses
Rubber Boots

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 1 | SUBARU | WP-2500HDRB | POWERWASHER | UL12 |
| 1 | HUSKY | UNKNOWN | POWERWASHER | UL12 |
| 1 | DEWALT | UNKNOWN | POWERWASHER | UL12 |
| 1 | KOHLER | WP-2700-OHDKB | POWERWASHER | UL12 |
| 1 | LANDA | UNKNOWN | POWERWASHER | UL12 |
| 1 | RYOBI | EZCLENA | CORDLESS PRESSURE GUN | UL12 |
| 1 | HUSKY | HUSKY1150 | POWER WASHER | UL12 |
| 7 | UNKNOWN | UNKNOWN | PRESSURE WASHER GUNS | UL12 |
| 6 | UNKNOWN | UNKNOWN | WATERHOSES | UL12 |
| 1 | IMER | UNKNOWN | CONCRETE MIXER | UL12 |
| 1 | IMER | UNKNOWN | CONCRETE MIXER | UL12 |
| 1 | JACKSON | UNKNOWN | SWIVEL HORSE REEL WAGON | UL12 |
| 1 | LACROSSE | UNKNOWN | RUBBER BOOTS | UL12 |
| 1 | ONGUARD | UNKNOWN | RUBBER BOOTS | UL12 |

Warehouse
Outside

SMRH:4825-2386-3785.25
061021

73ZL-319169

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 74 of
148

**Cage Area**

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 1 | STIHL | FS904 | WEED EATER | Outside Cage Area |
| 1 | UNKNOWN | MS311 | CHAINSAW | Outside Cage Area |
| 1 | STIHL | BR450 | BACKPACK LEAFBLOWER | Outside Cage Area |
| 1 | Husquarno | 521RS | LAWN MOWER | Outside Cage Area |
| 2 | UNKNOWN | UNKNOWN | SQUARE SHOVEL | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | CORNBROOM | Outside Cage Area |
| 7 | UNKNOWN | UNKNOWN | HEAVY DUTY PLASTIC BAGS | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | WATER HOSE 25' | Outside Cage Area |
| 1 | Uline | UNKNOWN | TIE-DOWN STRAPS 16' | Outside Cage Area |
| 1 | XTREMEPOWER | ML905-4 | CONCRETE FLOOR GRINDER | Outside Cage Area |
| 1 | STARK | 61009 | JUMPING JACK TAMPER | Outside Cage Area |
| 1 | Milwaukee | 40715 | APPLIANCE HAND TRUCK | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | APPLIANCE HAND TRUCK | Outside Cage Area |
| 1 | ULINE | H2503GR | UTILITY CART | Outside Cage Area |
| 2 | UNKNOWN | UNKNOWN | EXTENSION LADDER 16' | Outside Cage Area |
| 1 | Clark Equipments | C500-530 | FORKLIFT | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | TARPS 10' X 12' | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | FLOOR MOVING DOLLY | Outside Cage Area |

**Trash Cans**
**Wheelbarrows**
**Fuel Cans**
**Pallet Jack Trucks**

SMRH:4825-2386-3785.25
061021

73ZL-319169

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 5 | BRUTE | UNKNOWN | GARBAGE CANS - 44 GALLONS | Outside Cage Area |
| 3 | UNKNOWN | UNKNOWN | GARBAGE CANS - 32 GALLONS | Outside Cage Area |
| 6 | UNKNOWN | UNKNOWN | GARBAGE CANS - 32 GALLONS | Outside Cage Area |
| 2 | UNKNOWN | UNKNOWN | GARBAGE CANS - 24 GALLONS | Outside Cage Area |
| 1 | CATCHY | UNKNOWN | GARBAGE CANS - 28 GALLONS | Outside Cage Area |
| 2 | HONX | UNKNOWN | GARBAGE CANS - 49 GALLONS | Outside Cage Area |
| 4 | JACKSON | M6KBUT11 | WHEELBARROWS | Outside Cage Area |
| 3 | UNKNOWN | UNKNOWN | WHEELBARROWS | Outside Cage Area |
| 1 | ACE | UNKNOWN | WHEELBARROWS | Outside Cage Area |
| 1 | TRUETEMPER | UNKNOWN | WHEELBARROWS | Outside Cage Area |
| 5 | UNKNOWN | UNKNOWN | FUEL CANS - 2 GALLON CAN | Outside Cage Area |
| 3 | UNKNOWN | UNKNOWN | FUEL CANS - 1 GALLON CAN | Outside Cage Area |
| 3 | UNKNOWN | UNKNOWN | FUEL CANS - 5 GALLON CAN | Outside Cage Area |
| 1 | DAYTON | 44x97 | PALLETJACK TRUCK | Outside Cage Area |
| 1 | BIGJOE | UNKNOWN | PALLETJACK TRUCK | Outside Cage Area |

**Trimmers**
**Pump Sprayers**
**Garden Hoes**
**Rakes**

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 1 | STIHL | FS131R | TRIMMERS - GAS POLE TRIMMER | Outside Cage Area |
| 1 | ECHO | HC-151 | TRIMMERS - HEDGE TRIMMER | Outside Cage Area |
| 2 | UNKNOWN | UNKNOWN | TRIMMERS - HEDGE SHEARS TRIMM | Outside Cage Area |
| 1 | CHAPIN | UNKNOWN | 20 MP PUMPSPRAYER | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | MP PUMP SPRAYER | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | PM HOE 10'' (PERFORATED MORTA | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | PM HOE 7'' (PERFORATED MORTAF | Outside Cage Area |
| 3 | UNKNOWN | UNKNOWN | STEEL LEAF RAKE 24-TINE | Outside Cage Area |
| 1 | UNKNOWN | UNKNOWN | BOW RAKE 16-TINE | Outside Cage Area |

**Water Pumps**
**Ladders**
**Horse Saws**

SMRH:4825-2386-3785.25
061021

73ZL-319169

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 6 | NO VISIBLE | NO VISIBLE | HORSE SAW | UL8 |
| 1 | NO VISIBLE | NO VISIBLE | TRAILER DOLLY | UL8 |
| 1 | NO VISIBLE | NO VISIBLE | CAULKING GUN | UL8 |
| 2 | maintenance ware | NO VISIBLE | WATER PUMP | UL8 |
| 1 | maintenance ware | NO VISIBLE | WATER PUMP | UL8 |
| 1 | PROFLO | PF 92017 | DRAIN PUMP BOX | UL8 |
| 1 | ACE | 43756 | SUBMERSIBLE UTILITY PUMP | UL8 |
| 1 | NO VISIBLE | NO VISIBLE | LADDER | UL9 |
| 1 | HUSKY | NO VISIBLE | LADDER | UL9 |
| 1 | WERNER | NO VISIBLE | LADDER | UL9 |
| 1 | COSCO | NO VISIBLE | LADDER | UL9 |
| 1 | WERNER | NO VISIBLE | LADDER | UL9 |
| 1 | WERNER | NO VISIBLE | LADDER | UL9 |
| 1 | WERNER | NO VISIBLE | LADDER | UL9 |
| 1 | NO VISIBLE | NO VISIBLE | LADDER | UL9 |

**Drills**
**Work Lights**
**Power Booster**
**Winches**

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 1 | RIDGID | DP15501 | BENCH DRILL/PRESS DRILL/32MM | UL8 |
| 1 | DEWALT | DW988 | CORDLESS DRILL | UL8 |
| 1 | CRAFTSMAN | 315.10122 | 3/8 drill variable speed reversable | UL8 |
| 1 | WORKFORCE | HLD1000TS | TRIPOD WORK LIGHT | UL8 |
| 1 | HUSKY | L-5211HD | DUAL WORK LIGHT | UL8 |
| 1 | REGENT | PQ545A | WORK LIGHT PORTABLE | UL8 |
| 1 | N/A | N/A | PORTABLE STAND LIGHT | UL8 |
| 2 | FASTENMSC | 6506-S | POWER BOOSTER | UL8 |
| 1 | DRILL DORCTOR | DD350X | DRILL BIT SHARPENER | UL8 |
| 1 | WARN | VRX45 | VRX45 WIRE ROPE WINCH | UL8 |

**Weed Eaters**
**Electric Generators**

SMRH:4825-2386-3785.25
061021

73ZL-319169

**Battery Chargers**
**Air Compressors**
**Brooms**
**Landscape Rakes**
**Floor Wipers**

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---:|---|---|---|---|
| 1 | RYOBI | N/A | WEED EATERS | UL10 |
| 2 | STIHIL | FS777 | WEED EATERS | UL10 |
| 1 | CUB CADET | FS250 | WEED EATERS | UL10 |
| 1 | CUB CADET | 27CC | WEED EATERS | UL10 |
| 1 | TROY-BILT | TB635EC | WEED EATERS | UL10 |
| 1 | COLEMAN | PULSE1850 | PORTABLE ELECTRIC GENERATORS | UL10 |
| 1 | SCHUMACHER | SE-2352 | BATTERY CHARGER | UL10 |
| 1 | SOLAR | visible,not poss. | solar hd 6812 volt batt. charger | UL10 |
| 1 | PORTER CABLE | 2-6 5CFM 90PSM | AIR COMPRESSOR | UL10 |
| 1 | AIR MATE | NOT VISIBLE | AIR COMPRESSOR | UL10 |
| 1 | EMCLO | 59781 | ON WHEELS AIR COMPRESSOR | UL10 |
| 2 | N/A | N/A | BROOMS | UL10 |
| 14 | N/A | N/A | PUSH BROOMS | UL10 |
| 1 | RIDGE | N/A | LANDSCAPE LEVEL RAKE | UL10 |
| 3 | N/A | N/A | WIPERS | UL10 |

**Trimmers**
**Tampers**
**Sledgehammers**
**Pitchforks**
**Nupla Cutter**
**Hole Diggers**

SMRH:4825-2386-3785.25
061021
73ZL-319169

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|----:|-------|-------|-------------|----------|
| 1 | N/A | N/A | LAWN EDGE TRIMMER | UL10 |
| 1 | RYOBI | N/A | CORDLESS TRIMMER | UL10 |
| 1 | RYOBI | N/A | TRIMMER ELECTRIC | UL10 |
| 1 | CRAFTSMAN | N/A | TRIMMER ELECTRIC | UL10 |
| 1 | TRIMME PLUS | N/A | POLE TRIMMER | UL10 |
| 4 | N/A | N/A | TAMPER 8X8 | UL10 |
| 1 | N/A | N/A | TAMPER 10X10 | UL10 |
| 1 | HUSKY | N/A | SLEDGEHAMMER 16 LBS | UL10 |
| 2 | N/A | N/A | SLEDGEHAMMER | UL10 |
| 4 | N/A | N/A | PITCHFORK | UL10 |
| 1 | N/A | N/A | NUPLA CUTTER | UL10 |
| 1 | N/A | N/A | HATCHEL | UL10 |
| 2 | N/A | N/A | POST HOLE DIGGERS | UL10 |

**Web Remover**
**Shovels**
**Loppers**
**Lawn Rake**
**Pole Saw**

SMRH:4825-2386-3785.25
061021

73ZL-319169

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 5 | ETTORE | NO VISIBLE | WEB REMOVER | UL10 |
| 2 | NO VISIBLE | NO VISIBLE | HOE | UL10 |
| 4 | NO VISIBLE | NO VISIBLE | SQUARE SHOVEL | UL10 |
| 7 | NO VISIBLE | NO VISIBLE | ROUND SHOVELS | UL10 |
| 1 | NO VISIBLE | NO VISIBLE | ROOF SHINGLES REMOVER | UL10 |
| 4 | NO VISIBLE | NO VISIBLE | SMALL SHOVELS | UL10 |
| 3 | NO VISIBLE | NO VISIBLE | LEAVES SHOVELS | UL10 |
| 6 | FISKARS | NO VISIBLE | HEDGES SHEARS | UL10 |
| 4 | FORGED | NO VISIBLE | LOPPER | UL10 |
| 2 | CORONA | FL 3460 | LOPPER | UL10 |
| 9 | LAWN RAKE | NO VISIBLE | LAWN RAKE | UL10 |
| 6 | FISKARS | NO VISIBLE | TREE BRANCH TRIMMER | UL10 |
| 1 | REMIGTON | N/A | POLE SAW CHAIN | UL10 |
| 1 | REMIGTON | N/A | POLE SAW | UL10 |

**Scrapers**
**Shovel**
**Lawnmowers**
**Sprayers/Blowers**
**Poles**

SMRH:4825-2386-3785.25
061021

73ZL-319169

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|-----|-------|-------|-------------|----------|
| 3 | ACE | N/A | SCRAPER | UL10 |
| 1 | TRUGTEMPER | N/A | ROUND SCRAPER | UL10 |
| 1 | N/A | N/A | ROOF SHOVEL | N/A |
| 1 | HUSQUARNO | R535V | LAWNMOWER | UL10 |
| 1 | KOHLER | 10604 | LAWNMOWER | UL10 |
| 1 | SOLO | N/A | BACKPACK SPRAYER | UL10 |
| 1 | ECHO | MS-403 | BACKPACK SPRAYER | UL10 |
| 1 | RIDIG | KJ-2200 | WATER LETTER | UL10 |
| 1 | ECHO | ES-250 | BLOWER | UL10 |
| 1 | ECHO | STIHLBG72 | BLOWER | UL10 |
| 1 | ECHO | PB755SH | BACKPACK BLOWER | UL10 |
| 1 | ECHO | DB580T | BACKPACK BLOWER | UL10 |
| 1 | ETTORE | 18' | EXTENSION POLE | UL10 |
| 1 | WOOSTER | 18' | EXTENSION POLE | UL10 |
| 1 | N/A | 16' | EXTENSION POLE | UL10 |
| 1 | N/A | 14 | EXTENSION POLE | UL10 |

**Skilsaws**
**Sanders**
**Heat Guns**

SMRH:4825-2386-3785.25
061021
73ZL-319169

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 81 of 148

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|----:|-------|-------|-------------|----------|
| 1 | SKILSAW | SHD77M | SKILSAW | UL8 |
| 1 | CRAFTSMAN | 315.1098 | SKILSAW | UL8 |
| 1 | SKILSAW | 5600 | SKILSAW | UL8 |
| 1 | SKILSAW | 5175 | SKILSAW | UL8 |
| 1 | RYOBI | R10632 | SKILSAW | UL8 |
| 1 | DEWALT | DW378G | SKILSAW | UL8 |
| 1 | CRAFTSMAN | 320.39594 | BELT SANDER | UL8 |
| 1 | BLACK DECKER | D5321 | BELT SANDER | UL8 |
| 1 | BLACK DECKER | 9530 | 6"SANDER POLISHER | UL8 |
| 1 | MAKITA | BO5030 | SANDER | UL8 |
| 1 | NORTON | 68287 | SANDER | UL8 |
| 1 | RYOBI | S652DG | SQUARE SANDER | UL8 |
| 1 | RYOBI | DS2000 | TRIANGULAR SANDER | UL8 |
| 1 | RYOBI | BD4600 | TABLE BELT SANDER | UL8 |
| 1 | BLACK DECKER | HG1000 | HEAT GUN | UL8 |
| 1 | RYOBI | HG500 | HEAT GUN | UL8 |
| 1 | WELLER | 8200 | WELDING GUN | UL8 |
| 1 | STANLEY | GR20 | GLUE GUN | UL8 |

**Sawzaws**
**Routers**
**Jackhammers**
**Levels/Squares**
**Bolt Cutters**

SMRH:4825-2386-3785.25
061021

73ZL-319169

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|----:|-------|-------|-------------|----------|
| 1 | DEWALT | DW303M | SAWZAW | UL8 |
| 1 | MILWAUKEE | 6509 | SAWZAW | UL8 |
| 1 | BOSCH | 1617EVS | ROUTER | UL8 |
| 1 | CRAFTSMAN | 315.17445 | ROUTER | UL8 |
| 1 | SKIL | 1823 | ROUTER | UL8 |
| 1 | MAKITA | HM1307CB | JACKHAMMER | UL8 |
| 1 | MAKITA | HM1800 | JACKHAMMER | UL8 |
| 1 | MILWAUKEE | NO VISIBLE | ROTARY JACK HAMMER | UL8 |
| 1 | BOSCH | NO VISIBLE | ROTARY JACK HAMMER | UL8 |
| 1 | HUSKI | H4620 | AIR HAMMER | UL8 |
| 1 | ACE | N/A | drywall measuring "L" square | UL8 |
| 1 | ACE | N/A | drywall measuring "T" square | UL8 |
| 1 | PITTSBURG | N/A | PRYWALL | UL8 |
| 1 | SEARS | N/A | 48INCH LEVEL | UL8 |
| 1 | EMPIRE | N/A | 62INCH LEVEL | UL8 |
| 2 | RIGID | N/A | 3/4" PIPES BENDER | UL8 |
| 1 | NO VISIBLE | N/A | 18"BOLT CUTTER | UL8 |
| 1 | NO VISIBLE | N/A | 36"BOLT CUTTER | UL8 |

**Grinders**
**Miter Saws**
**Other Saws/Cutters**

SMRH:4825-2386-3785.25
061021

73ZL-319169

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 83 of 148

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 1 | DEWALT | DW402 | ANGLE GRINDER | UL8 |
| 3 | BOSH | AG40-85P | ANGLE GRINDER | UL8 |
| 1 | RIGID | R1020 | 7' ANGLE GRINDER | UL8 |
| 1 | MAKITA | GA7021 | ANGLE GRINDER | UL8 |
| 1 | central machinery | 62501 | 8"BENCH GRINDER WITH LIGHT | UL8 |
| 1 | ACE | ace2104693 | 6"1/3 H.P. BENCH GRINDER | UL8 |
| 1 | BENCH PRO | CM5814UL | 8"-1/4" compound miter saw | UL8 |
| 1 | HITACHI | C15FB | MITER SAW | UL8 |
| 1 | MAKITA | L51212 | MITER SAW | UL8 |
| 1 | RYOBI | TS5102L | MITER SAW W LIZER | UL8 |
| 1 | RYOBI | TS-200 | 8 1/4  COMPOUND SAW | UL8 |
| 1 | RYOBI | TS5103T | MITER SAW | UL8 |
| 1 | DEWALT | 7790-3431T6 | 12" COMPACTORS POWERSHOP | UL8 |
| 1 | RYOBI | ZRBT5125 | PORTABLE TABLE SAW 10" | UL8 |
| 1 | MAKITA | 3901 | BICUIT PLATE JOINER CUTTER RC | UL8 |
| 1 | STIHL | TS350 | CONCRETE SAW | UL8 |
| 1 | MAKITA | 411214 | ANGLE CUTTER | UL8 |

**Nail Guns**
**Staplers**
**Handsaws**

SMRH:4825-2386-3785.25
061021

73ZL-319169

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 84 of
148

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|---|---|---|---|---|
| 1 | SENCO | 18BD0356 | FRAMING NAIL GUN | UL8 |
| 1 | NO VISIBLE | NO VISIBLE | FRAMING NAIL GUN | UL8 |
| 1 | DEWALT | DC 618 | FINISH NAIL GUN | UL8 |
| 1 | H D | NB003005 | SMALL FINISH NAIL GUN | UL8 |
| 1 | HILTI | 14487 | FINISH NAIL GUN | UL8 |
| 1 | HILTI | 15264 | STAPLER GUN | UL8 |
| 2 | RYOBI | BS902 | BAND SAW | UL8 |
| 1 | NO VISIBLE | NO VISIBLE | FENCE POST DRIVER | UL8 |
| 3 | ARROW | T-25P | HEAVY DUTY STAPLER | UL8 |
| 1 | ARROW | T50 | HAMMER STAPLER | UL8 |
| 3 | NO VISIBLE | NO VISIBLE | HAND SAW | UL8 |

**Specialty Tools**
**PPE**

SMRH:4825-2386-3785.25
061021
73ZL-319169

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 85 of
148

| QTY | BRAND | MODEL | DESCRIPTION | LOCATION |
|-----|-------|-------|-------------|----------|
| 1 | TEMTOP | LKC1000S+ | AIR QUALITY TESTER | UL3 LOCKER |
| 1 | FORBEST | 3188S – SERIES | 100' SNAKE CAMERA+7"CONTROL STATION | UL3 LOCKER |
| 1 | RIDGID | MICRO CA-150 | 4'INSPECTION CAMERA SNAKE | UL3 LOCKER |
| 1 | FORENSICS DETECTORS | FD-90E-RED | PORTABLE GAS DETECTOR | UL3 LOCKER |
| 1 | JB IND. | M2-5HD | 2 VALVE BRASS MANIFOLD | UL3 LOCKER |
| 1 | RAMSET | COBRA+ | SEMI-AUTOMATION FASTENING TOOL | UL3 LOCKER |
| 1 | URINE OFF | 12" WAND | INSPECTION BLACK LIGHT | UL3 LOCKER |
| 1 | N/A | HOME-MADE | CHIMNEY SWEEPING KIT 100' | UL3 LOCKER |
| 1 | SHOP VAC | MINI 12 | SMALL SHOP VAC FOR CHIMNEY CLEANING | UL3 LOCKER |
| 6 | MILLER | TURBO LITE | PERSONAL FALL LIMITER | UL3 LOCKER |
| 6 | MILLER | 3249389 | PERSONAL HARNESS KIT | UL3 LOCKER |
| 1 | IISES | RRR-AOC-16/26 | O-ZONE MACHINE | UL3 LOCKER |
| 12 | BULLARD | LARGE | SAFETY HARD HELMETS | UL3 LOCKER |
| 9 | PULVERIZE | 3 GALLON | HAND SANITIZER JUG | LOCK UP 2 |
| 9 | PULVERIZE | 1 GALLON | HAND SANITIZER JUG | LOCK UP 2 |
| 42 | DY | DY95 | (X50 EA)DISPOSABLE SURGICAL MASK | LOCK UP 2 |
| 26 | NIOSH | N95 | (x20 EA)N95 MASKS | LOCK UP 2 |
| 30 | AURA EXAM | XL | RUBBER GLOVES | LOCK UP 2 |
| 15 | AURA EXAM | LARGE | RUBBER GLOVES | LOCK UP 2 |
| 20 | KABOOM | | (x100 EA) DISINFECTANT WIPES | LOCK UP 2 |
| 20 | RAYOVAC | D95 | (x6 EA) D BATT'S | LOCK UP 2 |
| 180 | | | TOILET PAPER | LOCK UP 2 |

SMRH:4825-2386-3785.25
061021

73ZL-319169

**EXHIBIT A-3**

**Excluded Personal Property**

Items in Estate of Ken Casey located at 300 Ignacio, including:

ARTWORK, STATUES, ANTIQUES

| Item No. | Item Description | Location | Type |
|---|---|---|---|
| 1 | Floor rug | Ken's Former Office | Rugs/Tapestries |
| 2 | Pair of Carved Swords | Ken's Former Office | Antiques/Décor |
| 3 | Tomahawk | Ken's Former Office | Antiques/Décor |
| 4 | Lady Justice Statue and Stand | Reception Area | Statues/Figurines |
| 5 | Seaside Four Panel Painted Screen | Ken's Former Office | Artwork |
| 6 | Bronze Figurine - Man with Spear | Ken's Former Office | Statues/Figurines |
| 7 | Antique Projector | Reception Area | Antiques/Décor |
| 8 | Painting - Charles de Montfort Moulin Rouge | Hallway | Artwork |
| 9 | Egyptian Papyrus Artwork | Hallway | Artwork |
| 10 | Ink Brush Mountain and Calligraphy | Hallway | Artwork |
| 11 | Painting - Cliffside Café | Lewis' Former Office | Artwork |
| 12 | Painting - Ravmondo Residential Street | Lewis' Former Office | Artwork |
| 13 | Bronze Figurine - Man | Lewis' Former Office | Statues/Figurines |
| 14 | Painting - Impressionist Orchard | Kitchen | Artwork |
| 15 | Typewriter | Reception Area | Antiques/Décor |
| 16 | Ceramic Bowl | Ken's former office | Antiques/Décor |
| 17 | Seated Figurine | Office Adjacent to Ken's Former Office | Statues/Figurines |
| 18 | Figurine with Staff | Lewis' Former Office | Statues/Figurines |
| 19 | Brass Clock | Lewis' Former Office | Antiques/Décor |
| 20 | Vase | Office Adjacent to Ken's Former Office | Antiques/Décor |
| 21 | Decorative Statue - Peacock | Ken's former office | Statues/Figurines |
| 22 | Urn | Ken's Former Office | Antiques/Décor |
| 23 | Dagger with Carved Handle | Ken's Former Office | Antiques/Décor |
| 24 | Knife with Carved Blade | Ken's Former Office | Antiques/Décor |
| 25 | Pair of Carved Heads | Ken's Former Office | Antiques/Décor |
| 26 | Hanging Rug | Ken's Former Office | Rugs/Tapestries |
| 27 | Whiskey Bottle: White Horse Cellar Blended Scotch | Ken's Former Office | Antiques/Décor |
| 28 | Bronze Figurine - Boy in Tunic | Ken's Former Office | Statues/Figurines |
| 29 | Bronze Figurine - Boy Running | Ken's Former Office | Statues/Figurines |
| 30 | Hanging Tapestry | Ken's Former Office | Rugs/Tapestries |
| 31 | Figurine with Headdress | Ken's Former Office | Statues/Figurines |
| 32 | Figurine with Shovel | Ken's Former Office | Statues/Figurines |

SMRH:4825-2386-3785.25
061021

73ZL-319169

| 33 | Horse Figurine | Ken's Former Office | Statues/Figurines |
|---|---|---|---|
| 34 | Decorative Fish Figurine | Ken's Former Office | Statues/Figurines |
| 35 | Decorative Bottle | Ken's Former Office | Antiques/Décor |
| 36 | Decorative Drum | Ken's Former Office | Antiques/Décor |
| 37 | Figurine with Bagpipes | Ken's Former Office | Statues/Figurines |
| 38 | Antique Water Gourd | Ken's Former Office | Antiques/Décor |
| 39 | Carved Wooden Eagle Bust | Ken's Former Office | Statues/Figurines |
| 40 | Glass Eagle Paperweight | Lewis' Former Office | Statues/Figurines |
| 41 | Kneeling Knight Figurine | Office Adjacent to Ken's Former Office | Statues/Figurines |
| 42 | PFI Stamp (Perforator) | Ken's Former Office | Personal Office Items |
| 43 | Vintage Chinese Cork Diorama Scene with Herons | Ken's Former Office | Artwork |
| 44 | Model of Castle | Ken's Former Office | Antiques/Décor |
| 45 | Horse and Rider Figurine | Ken's Former Office | Statues/Figurines |
| 46 | Mini Thai Taxi Collectible Souvenir | Ken's Former Office | Antiques/Décor |
| 47 | Set of Painted Vases and Llama Figurine | Ken's Former Office | Antiques/Décor |
| 48 | Copper 'Dragonfish' Figurine | Ken's Former Office | Statues/Figurines |
| 49 | Show Spurs with Engraved Trim | Ken's Former Office | Antiques/Décor |
| 50 | Antique Pen and Inkwell | Ken's Former Office | Antiques/Décor |
| 51 | Dancing Couple Figurine | Ken's Former Office | Statues/Figurines |
| 52 | Vintage Laughing Elder Figurine | Ken's Former Office | Statues/Figurines |
| 53 | Bear Figurine Collectible Souvenir | Ken's Former Office | Antiques/Décor |
| 54 | Eiffel Tower Collectible Souvenir | Ken's Former Office | Antiques/Décor |
| 55 | Boy and Girl Figurine Set with Woven Baskets | Ken's Former Office | Antiques/Décor |
| 56 | Die-Cast Metal Phillipine Jeepney Collectible Souvenir | Ken's Former Office | Antiques/Décor |
| 57 | Painted Wooden Horse Figurine | Ken's Former Office | Statues/Figurines |
| 58 | Vintage Chinese Cork Diorama Scene with Pagodas | Ken's Former Office | Artwork |
| 59 | Metal Globe with Airplane | Office Adjacent to Ken's Former Office | Statues/Figurines |
| 60 | Antique Metal Clamp | Office Adjacent to Ken's Former Office | Antiques/Décor |
| 61 | Wood and Metal Desktop Bowling Set | Office Adjacent to Ken's Former Office | Antiques/Décor |
| 62 | Cut Glass Eagle Figurine | Reception Area | Statues/Figurines |
| 63 | Carved Wooden Box with Compartments | Ken's Former Office | Antiques/Décor |
| 64 | Locked Box | Ken's Former Office | Personal Office Items |
| 65 | Archive Cassette Tapes - 4 Boxes | Ken's Former Office | Personal Office Items |
| 66 | Decorative Cup with Lid | Ken's Former Office | Antiques/Décor |
| 67 | Personalized Souvenir - Model of a Tavern | Ken's Former Office | Antiques/Décor |

SMRH:4825-2386-3785.25
061021

73ZL-319169

| 68 | Desktop Miniature Globe | Ken's Former Office | Antiques/Décor |
|----|----|----|----|
| 69 | Collection of Plaques and Awards | Ken's Former Office | Personal Office Items |
| 70 | Personal Items - Photo Album | Ken's Former Office | Personal Office Items |
| 71 | Collection of Painted Boxes | Ken's Former Office | Antiques/Décor |
| 72 | Personalized Novelty 'Novatopoly' Game | Ken's Former Office | Personal Office Items |
| 73 | Metal Fairy and Lilypad Figurine | Ken's Former Office | Antiques/Décor |
| 74 | Decorative Metal Bucket with Handle | Ken's Former Office | Antiques/Décor |
| 75 | Glass Swan Figurine | Ken's Former Office | Statues/Figurines |
| 76 | Wrought Metal Figurine on Bicycle with Carriage | Ken's Former Office | Statues/Figurines |
| 77 | Glass Swan Paperweight | Ken's Former Office | Antiques/Décor |
| 78 | Family Crest Ornament | Ken's Former Office | Personal Office Items |
| 79 | Vintage Cannonball Grapeshot | Office Adjacent to Ken's Former Office | Antiques/Décor |
| 80 | Wooden Tray with Star Motif | Office Adjacent to Ken's Former Office | Antiques/Décor |
| 81 | Crystal Clock | Ken's Former Office | Antiques/Décor |
| 82 | Two (2) Custom Label Wine Bottles | Ken's Former Office | Personal Office Items |

FURNITURE

| | Matching Set - Wooden Table and | | |
|----|----|----|----|
| 83 | Chairs | Ken's Former Office | Furniture |
| 84 | Painted Cabinet | Reception Area | Furniture |
| 85 | Painted End Table | Reception Area | Furniture |
| 86 | Matching Set - Display Case 1 | Ken's Former Office | Furniture |
| 87 | Matching Set - Display Case 2 | Ken's Former Office | Furniture |
| 88 | Matching Set - Display Case 3 | Ken's Former Office | Furniture |
| 89 | Matching Set - Display Case 4 | Ken's Former Office | Furniture |
| 90 | Set of Painted End Tables (Nested Set of Three) | Ken's Former Office | Furniture |
| 91 | Desk with Leather Top, Floral Detail and Inlay | Ken's Former Office | Furniture |

SMRH:4825-2386-3785.25
061021

73ZL-319169

**EXHIBIT A-4**

**Intellectual Property**

Active Webpages or Websites

| Item No. | Web Address |
|---|---|
| 1 | www.Commercialleasingmarin.com |
| 2 | www.leasepfi.com |
| 3 | www.rentpfi.com |
| 4 | www.investorspfi.com |
| 5 | www.oakhillapartmenthomes.com |
| 6 | www.sonomamissionapartments.com |
| 7 | https://107marin.rentpfi.com |
| 8 | https://285woodland.rentpfi.com |
| 9 | https://390woodland.rentpfi.com |
| 10 | https://3rdstreetapts.rentpfi.com/ |
| 11 | https://albionterrace.rentpfi.com |
| 12 | https://885broadway.rentpfi.com |
| 13 | https://brookside.rentpfi.com |
| 14 | https://countryclub.rentpfi.com |
| 15 | https://fairway.rentpfi.com |
| 16 | https://glenwood.rentpfi.com |
| 17 | https://hammondale.rentpfi.com |
| 18 | https://ignaciogardens.rentpfi.com |
| 19 | https://ignaciohills.rentpfi.com |
| 20 | https://ignaciolane.rentpfi.com |
| 21 | https://lincolnvilla.rentpfi.com |
| 22 | https://madrone.rentpfi.com |
| 23 | https://marinheights.rentpfi.com |
| 24 | https://merrydaleview.rentpfi.com |
| 25 | https://northgate.rentpfi.com |
| 26 | https://novatocourt.rentpfi.com |
| 27 | https://oakhill.rentpfi.com |
| 28 | https://oaktree.rentpfi.com |
| 29 | https://pachecovilla.rentpfi.com |
| 30 | https://parcmarin.rentpfi.com |
| 31 | https://prospectridge.rentpfi.com |
| 32 | https://rafaelgardens.rentpfi.com |
| 33 | https://redwoodmanor.rentpfi.com |
| 34 | https://sonomamission.rentpfi.com |
| 35 | https://sycamorecreek.rentpfi.com |
| 36 | https://theheights.rentpfi.com |

SMRH:4825-2386-3785.25
061021

73ZL-319169

| 37 | https://villagegreen.rentpfi.com |
| 38 | PFI Incorporated \| LinkedIn |
| 39 | https://www.youtube.com/channel/UCuJWlUoNKYp2HDxz-w6kYJg |

Owned, But Not Apparently Being Used:

| 1 | www.commercialleasingsonoma.com |
| 2 | www.investpfi.com |
| 3 | www.marinpropertymanagement.net |
| 4 | www.professionalfinancialinvestors.com |
| 5 | www.professionalfinancialinvestorsinc.com |
| 6 | www.pfiincorporated.com |

Investor List

The investor list is provided to Buyer in the virtual data room.

Wordmark, that is dead:

| 1 | Professional Financial Services (Serial Number 85969232, Filing Date: June 25, 2013, Abandonment Date: April 9, 2014) |

Trademark, that is dead:



(Serial Number 73726031, Filing Date: May 2, 1988, Cancellation Date: December 4, 1995)

SMRH:4825-2386-3785.25
061021
73ZL-319169

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 91 of 148

Logos from PFI marketing team similar to sample below:



SMRH:4825-2386-3785.25
061021
73ZL-319169

Case: 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 11:25:55   Page 92 of
148

**EXHIBIT B**

**Form of Seller's Grant Deed**

Recording Requested By

When Recorded Mail To:

_____
_____
_____
_____

Mail Tax Statement To:

_____
_____
_____
_____

_____

APN: _____                    Space Above For Recorder's Use

DOCUMENTARY TRANSFER TAX $_____

[X] Computed on full value of property conveyed; or
[ ] Computed on full value less liens & encumbrances
remaining thereon at the time of sale.

_____
Signature of declarant or agent determining tax - firm name

**GRANT DEED**

　　　　FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, [_____, a _____ _____] ("Grantor"), hereby GRANTS to [_____, a _____ _____] ("Grantee"), the real property in the City of [_____], County of [_____], State of [_____], more particularly described on Exhibit A attached hereto ("Property").

　　　　THIS GRANT DEED is made and accepted upon all covenants, conditions, restrictions, reservations, easements and exceptions of record.

Date: _____          [*SELLER NAME AND ENTITY INFORMATION*]

                                      By_____
                                      Its_____

                                      By_____
                                      Its_____

                    [Add acknowledgments.]

**EXHIBIT A TO GRANT DEED**

[Add legal description.]

# EXHIBIT C

## Form of General Assignment and Transfer

# GENERAL ASSIGNMENT AND TRANSFER

THIS GENERAL ASSIGNMENT AND TRANSFER ("Assignment") is made and entered into this _____ day of _____, 20__, between [_____, a _____ _____] ("Assignor"), and [_____, a _____ _____] ("Assignee"), and shall be effective upon the date hereof.

For good and valuable consideration, the adequacy of which is acknowledged, Assignor hereby assigns (to the extent assignable and subject to the rights of any third parties) to Assignee all Assignor's right, title and interest, if any, and Assignee hereby assumes all of Assignor's right, title and interest, if any, in and to:

A. Any and all right, title and interest of Assignor in and to any affixed tangible personal property now or at any time hereafter located on or at those certain improved commercial and residential real properties as more particularly described on <u>Exhibit A</u> attached hereto ("Land"), or the buildings, structures, improvements, and fixtures constructed thereon ("Improvements"; with the Land, the "Property") and primarily used in connection with the ownership, operation, or maintenance of the Property; provided, however, Property shall not the Excluded Assets (as defined in the Purchase Agreement, as defined below).

B. All reciprocal easement agreements, operating agreements, development agreements and declarations of covenants, conditions and restrictions related to the Property or any portion thereof.

C. Any and all governmental and regulatory licenses, permits, authorizations, approvals or entitlement pertaining to the ownership, development, construction, marketing and operation of the Property, and any bonds or deposits held by third parties relating to the same not encompassed elsewhere in this Assignment.

D. Any and all building permits, land use entitlement, development rights, sewer capacity, map approvals, trip generation rights, density allocations and other rights or approvals relating to or authorizing the development of the Property.

E. Any and all architectural and engineering plans, specifications and drawings, as-built drawings, chattel paper, instruments and other documents which arise from or relate to construction on the Land or to any business now or later to be conducted on it, or to the Land and Improvements generally.

F. All rights and benefits of Assignor under the existing service agreements and contracts identified on <u>Exhibit B</u> attached hereto, if any.

G. All right, title and interest in and to all of Assignor's interests as landlord under all leases, subleases, subtenancies, licenses, occupancy agreements and concessions affecting the Property or any portion thereof or space therein now or hereafter existing, and all right, title and interest of Assignor under the same, including, without limitation, any unapplied refundable tenant security deposits ("Leases") identified on <u>Exhibit C</u> attached hereto, if any. Assignee assumes Assignor's obligations under the Leases as of the date hereof.

H. All warranty and other rights of Assignor against contractors, consultants and others involved in the design and construction of the Improvements and any tenant improvements within the Improvements.

I.     To the extent not covered by the foregoing, any and all Property Documents and other documents, studies and other materials required to be delivered by Assignor to Assignee pursuant to Paragraph 7.2 of that certain Purchase Agreement and Escrow Instructions dated [_____] between Assignor as Seller and Assignee as Buyer (the "Purchase Agreement").

J.     The foregoing assignment and assumption under this Assignment is made without any representation or warranty by Assignor, except as expressly set forth in the Purchase Agreement and shall be otherwise subject to the terms thereof.

K.     This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

L.     This Assignment shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be performed wholly within the State of California.

M.     This Assignment may be executed in counterparts, each of which shall constitute an original, but all of which shall collectively constitute one assignment.

**Assignor:**

Date: _____          [_____,
                                          a _____ _____]

                                          By_____
                                          Its_____

                                          By_____
                                          Its_____

**Assignee:**

Date: _____          [_____,
                                          a _____ _____]

                                          By_____
                                          Its_____

                                          By_____
                                          Its_____

[Add legal description.]

EXECUTION COPY

## EXHIBIT A TO GENERAL ASSIGNMENT AND TRANSFER

### Legal Description

[To be added before close of escrow.]

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 97 of
148

**EXHIBIT B TO GENERAL ASSIGNMENT AND TRANSFER**

**List of Assigned Contracts**

[To be added before close of escrow.]

**EXHIBIT C TO GENERAL ASSIGNMENT AND TRANSFER**

**List of Leases**

[To be added before close of escrow.]

**EXHIBIT D**

**Notice Letter**

**[Closing Date]**

To:    Tenants at _____

       **RE:**    **Your premises leased at _____, _____, California (the "Property")**

    This is to inform you that on _____, _____ ("Buyer") purchased the Property from _____, a _____ limited liability company ("Seller"), and that as of such date Buyer has succeeded to the rights and assumed the obligations of Seller, as Landlord, under your Lease. The deposit, if any, under your Lease has been transferred to and received by Buyer.

    Kindly make all future rent payments under the Lease payable to the order of _____ at _____.  Formal communications and all inquiries (including any request for return of security) should be sent to _____.

                      Very truly yours,

                      _____

                      ,
                      a _____ limited liability company

                      By:_____
                      Name:_____
                      Title:_____

                      By:_____
                      Name:_____
                      Title:_____

**EXHIBIT E**

**Litigation Schedule**

1. Susan Aitken v. Professional Financial Investors, Inc., et al. filed on July 2, 2020 in the Superior Court of California, County of Marin, Case No. CIV-2001560. This case has been stayed pending the Bankruptcy Case (defined below).

2. Seller filed voluntary petitions for relief under Chapter 11 of the United States Code with the United States Bankruptcy Court for the Northern District of California, San Francisco Division ("**Bankruptcy Court**") for the Bankruptcy Case (defined below), lead Case No. 20-30604 of Professional Financial Investors, Inc. ("**PFI**"), which is being jointly administered with the Chapter 11 cases of PFI's affiliate entities. "**Bankruptcy Case**" means the Chapter 11 proceeding entitled in re Professional Financial Investors, Inc., case number 20-30604 and all those proceedings being jointly administered with case numbers 20-30579, 20-30908, 20-30909, 20-30910, 20-30911, 20-30912, 20-30913, 20-30914, 20-30915, 20-30916, 20-30917, 20-30919, 20-30920, 20-30922, 20-30923, 20-30924, 20-30925, 20-30927, 20-30928, 20-30929, 20-30930, 20-30934, 20-30935, 20-30936, 20-30937, 20-30938, 20-30939, 20-30940, 20-30941, 20-30942, 21-30082, 21-30083, 21-30084, 21-30085, 21-30086, 21-30087, 21-30088, 21-30089, 21-30093, and 21-30094, all pending in the Bankruptcy Court.

**EXHIBIT F**

**Form of Post-Petition Construction Contracts Assignment and Transfer**

**POST-PETITION CONSTRUCTION CONTRACTS ASSIGNMENT AND TRANSFER**

THIS POST-PETITION CONSTRUCTION CONTRACTS ASSIGNMENT AND TRANSFER ("Assignment") is made and entered into this _____ day of _____, 20__, between [_____, a _____ _____] ("Assignor"), and [_____, a _____ _____] ("Assignee"), and shall be effective upon the date hereof.

       1.     Assignor and Assignee are parties to that certain Purchase and Sale Agreement dated as of _____ ___, 2021 (the "Agreement"), which provides, among other things, for the for the sale by Assignor to Assignee of that certain Property (as defined in the Agreement).

       2.     Assignee desires to acquire from Assignor, and Assignor desires to convey and assign to Assignee, the Post-Petition Construction Contracts and all of the obligations, duties, rights, benefits and privileges of the Post-Petition Construction Contracts in connection with Assignee's acquisition of the Property from Assignor.

       In consideration of the foregoing and the agreements and covenants herein set forth and for good and valuable consideration, the adequacy of which is acknowledged, the parties agree as follows:

       A.     Assignor hereby assigns (to the extent assignable and subject to the rights of any third parties) to Assignee all Assignor's obligations, duties, right, title, and interest, if any; provided, however, Assignor shall be responsible for all payments required by the Post-Petition Construction Contracts that are due and owing prior to the Close of Escrow (as defined in the Agreement). Assignor agrees to hold Assignee harmless from and indemnify Assignee against any and all obligations or duties, including, without limitation any required payments, which are due and owing prior to the Close of Escrow.

       B.     Assignee hereby assumes all of Assignor's obligations, duties, right, title and interest, if any, in and to the Post-Petition Construction Contracts provided, however, Assignee shall be responsible for all payments required by the Post-Petition Construction Contracts that are due and owing on or after the Close of Escrow. Assignee agrees to hold Assignor harmless from and indemnify Assignor against any and all obligations or duties, including, without limitation any required payments, which are due and owing on or after the Close of Escrow.

       C.     This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, representatives, successors-in-interest and assigns.

       D.     This Assignment shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be performed wholly within the State of California.

       E.     This Assignment may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one instrument. Electronic signatures are deemed to be equivalent to original signatures for purposes of this Assignment. The exchange of copies of this Assignment and of signature pages by electronic mail in "portable document format" (".pdf"), or by any other electronic means intended to preserve the original appearance of a document, shall constitute effective execution and delivery of this Assignment to the parties and may be used in lieu of an original hard-copy agreement. Buyer hereby consents to the use of any third-party electronic signature capture service providers as may be chosen by Seller.

*[Signatures appear on the following page]*

**Assignor:**

Date: _____          [_____,
                                         a _____ _____]


                                         By_____
                                         Its_____


                                         By_____
                                         Its_____


**Assignee:**

Date: _____          [_____,
                                         a _____ _____]


                                         By_____
                                         Its_____


                                         By_____
                                         Its_____

Case: 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 11:25:55   Page 103 of 148

73ZL-319169

## EXHIBIT G

### Form of Estoppel

## TENANT ESTOPPEL CERTIFICATE

Date: _____

To: _____ ("**Buyer**")

Re: Lease Agreement, as amended ("**Lease**") dated _____, _____ between _____ as tenant, _____, as guarantor (tenant and guarantor are collectively referred to herein as "**Tenant**") and _____ [(as successor-in-interest to _____)] ("**Landlord**"), for leased premises located at _____ compromised of _____ square feet (the "**Premises**" or the "**Property**").

Tenant understands that Buyer is contemplating acquiring from Landlord the building in which the Premises are located. The undersigned, as the tenant under the Lease, hereby certifies to Landlord, Buyer, any of Buyer's lenders and any of Buyer's and Buyer's lenders' respective successors and assigns, the following:

1. Tenant hereby certifies that the following representations with respect to the Lease are accurate and complete as of the date hereof:

    a. Dates of all amendments, letter agreements, modifications and waivers related to Lease:

    _____

    _____

    _____

    b. Commencement Date _____

    c. Expiration Date _____

    d. Current Annual Base Rent _____

    | | Adjustment Date | Rental Amount |
    |---|---|---|
    | e. Fixed or CPI Rent Increase | _____ | _____ |
    | f. Square Footage of Premises | _____ | |
    | g. Security Deposit Paid to and held by Landlord | _____ | |
    | h. Renewal Options _____ Additional Term for _____ years at $_____ per year | | |

SMRH:4825-2386-3785.25
061021

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 104 of 148

732L-319169

2.      Tenant further certifies to Landlord, Buyer, any of Buyer's lenders and any of Buyer's and Buyer's lenders' respective successors and assigns that:

a.      The Lease is presently in full force and effect and represents the entire agreement between Tenant and Landlord with respect to the Premises;

b.      To Tenant's actual knowledge, Landlord is not in default under the Lease and no event has occurred which, with the giving of notice or the passage of time, or both, could result in a default by Landlord, and Tenant has not sent any notice of default to Landlord or received any notice of default from Landlord.  To Tenant's actual knowledge, Tenant is not in default under the Lease;

c.      The Lease has not been assigned, the Premises have not been sublet by Tenant, and Tenant has not entered into any other agreement transferring any of its interest in the Lease or the Premises, except: _____;

d.      Tenant is currently occupying the Premises; to Tenant's actual knowledge, all construction or work required by the Lease has been completed and any payments, credits or abatements required to be given by Landlord to Tenant have been given; and any payments, free rent, or other payments, credits, tenant improvement allowances or abatements required to be given by Landlord to Tenant have already been received by Tenant except _____;

e.      No installment of rent or other charges under the Lease other than current monthly rent has been paid more than 30 days in advance and, to Tenant's actual knowledge, Tenant is not in arrears on any rental payment or other charges.  Tenant asserts no claim of default or offset or defense against the payment of rent or other charges payable by Tenant and asserts no claim against Landlord under the Lease in regard to the premises occupied by Tenant;

f.      To Tenant's actual knowledge, Landlord has no obligation to segregate the security deposit or to pay interest thereon;

g.      Tenant has no option or preferential right to lease or occupy additional space within the property of which the Premises are a part except _____.  Tenant has not been granted any options or rights of first refusal to purchase the Premises or the Property;

h.      To Tenant's actual knowledge, there are no actions, voluntary or otherwise, pending or threatened against Tenant or any guarantor of Tenant's obligations under the bankruptcy, reorganization, moratorium or similar laws of the United States, any state thereof or any other jurisdiction;

i.      [The Lease has been guaranteed by [Guarantor] pursuant to that certain [Guaranty], dated _____, and such Guaranty is in full force and effect and has not been amended or modified;]

SMRH:4825-2386-3785.25
061021                          732L-319169

j.       Tenant currently pays to Landlord $_____ per month on account of its prorate share of real property taxes, insurance, and common area expenses.

3.       This certification is made with the knowledge that Buyer is about to purchase the Property, and that Buyer, any of Buyer's lenders and any of Buyer's and Buyer's lenders' respective successors and assigns are relying on this Tenant Estoppel Certificate. Tenant further acknowledges and agrees that Buyer, any of Buyer's lenders and any of Buyer's and Buyer's lenders' respective successors and assigns holding title to the Property at any time after the date of this Tenant Estoppel Certificate shall have the right to rely on the information contained in this Tenant Estoppel Certificate. The undersigned is authorized to execute this Tenant Estoppel Certificate on behalf of Tenant.

[TENANT]

By: _____

Name:

Its:

(Authorized Signer)

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 106
of 148

**EXHIBIT H**

**Bill of Sale**

THIS BILL OF SALE ("Bill of Sale") is made and entered into this _____ day of _____, 20__, between [_____, a _____ _____] ("Seller"), and [_____, a _____ _____] ("Buyer"), and shall be effective upon the date hereof.

WITNESSETH:

WHEREAS, Seller entered into that certain Purchase and Sale Agreement dated as of _____, ___, _____ ("Purchase Agreement") pursuant to which Seller agreed to sell and Buyer agreed to purchase Seller's right, title, and interest to that certain real property as identified in the Purchase Agreement (said real property and improvements thereon being herein collectively referred to as the "Real Property"), Personal Property (as defined in the Purchase Agreement), Intellectual Property (as defined in the Purchase Agreement), and Purchased Contracts and Leases;

NOW THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby transfers, conveys, and assigns to Buyer, all of the Seller's right, title and interest in the Personal Property, Intellectual Property owned by Seller (and not owned by tenants and Ken Casey), and the Purchased Contracts and Leases (the "Assigned Property");

TO HAVE AND TO HOLD the same unto Buyer, its successors and assigns from and after the date hereof.

Seller makes no representation or warranty to Buyer, express or implied, with respect to the foregoing Assigned Property. Notwithstanding the foregoing, Seller hereby represents and warrants that Seller is the owner of the Assigned Property free and clear of any Liens (as defined in Purchase Agreement).

Seller and Buyer agree to execute, acknowledge and deliver any further agreements, documents or instruments that are reasonably necessary or desirable to carry out the transactions contemplated by this Bill of Sale, provided that such execution, acknowledgment and delivery does not impose any additional costs on such party (other than such party's attorneys' fees in the review thereof and de minimis recording costs).

This Bill of Sale may be executed in counterparts, each of which shall be an original and all of which taken together shall constitute one and the same document.

**SELLER:**

_____,
a _____

By:_____
Name:
Title:

# FIRST AMENDMENT TO
## PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

THIS FIRST AMENDMENT TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS ("**Amendment**") is entered into as of this 11 day of August 2021, by and between Professional Financial Investors, Inc., a California corporation, and all affiliates ("**Seller**") and Hamilton Zanze & Company, a California corporation ("**Buyer**," with Seller, referred to as "**Parties**")

## RECITALS

A.     Seller and Buyer previously entered into that certain Purchase Agreement and Escrow Agreement dated for reference purposes June 16, 2021 (the "**Agreement**"), with respect to the sale of certain of the Seller's real and personal property assets as more particularly described in <u>Exhibits A-1 through A-4</u> of the Agreement.

B.     On July 12, 2021, the Bankruptcy Court entered an order authorizing the immediate substantive consolidation of Professional Investors 28, LLC ("**28 LLC**") And PFI Glenwood, LLC ("**PFI Glenwood**") with the Seller (Dkt No. 758).

C.     On July 15, 2021, the Bankruptcy Court entered an order approving the Bid Procedures, which order provided, in part, that (i) a lender whose Collateral (as defined in the Plan) is included in the Sale shall have its claim paid in full at the Close of Escrow, and shall not be allowed to credit bid, and (ii) no sale shall be approved with respect to any lender whose secured claim on its Collateral is not being paid in full unless Debtors prove that the lender had reasonable written notice of such treatment prior to the Auction and an opportunity to credit bid at the Auction. (Dkt. No. 759).

D.     On July 30, 2021, Buyer delivered Seller written notice of its election to extend the Contingency Date to August 16, 2021.  On August 2, 2021, Buyer timely wired the Extension Deposit to Escrow Holder in accordance with paragraphs 2.1.10 and 3.4.2 of the Agreement.

E.     Despite Buyer's diligent efforts to provide third-party reports pursuant to paragraph 7.7 of the Agreement and complete its due diligence by August 16, 2021, Buyer notified Seller on or about August 2, 2021 that additional time would be needed to complete its due diligence and requested that the Contingency Date be extended from August 16, 2021 to August 24, 2021.  Buyer agreed, however, that its site exclusivity as described in paragraph 11.3 of the Agreement would terminate on August 16, 2021 and that the dates in the Bid Procedures Order with respect to filing of Sale Motion, Bid Deadline, Auction, and Sale Hearing would remain the same.  Based on the foregoing, Seller agreed to the extension of the Contingency Date, with the caveat that Buyer agree that the Opt-out Period (defined in the Ex Parte Application for Order in Aid of Proposed Sale of Property, Dkt No. 736) be extended from August 2, 2021 to August 11, 2021.  Buyer agreed to this extension of the Opt-out Period.

F.     In light of the entry of the orders referred to above and the issues that have arisen in the due diligence period, the Parties have agreed to amend the Agreement as provided below.

Error! Unknown document property name..Error! Unknown document property name.

Case 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 11:25:55   Page 108 of 148

# AGREEMENT

NOW, THEREFORE, in consideration of the promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

1.  <u>Definition of Seller</u>.  For all purposes under the Agreement, the definition of Seller shall also include 28 LLC and PFI Glenwood.

2.  <u>Title and Survey Objection Deadline</u>.  For purposes of clarification, if Buyer elects to extend the Contingency Date and also satisfies all of the necessary requirements pursuant to paragraph 2.1.10, the Title Approval Date with respect to paragraphs 6.1.2 and 6.1.3 of the Agreement shall automatically be extended.

3.  <u>Contingency Date</u>.  Paragraph 2.1.10 of the Agreement is hereby amended to provide that the Contingency Date means August 24, 2021 except with respect to paragraphs 11.3, 20.2, 20.7.1 and 20.7.2  where the Contingency Date shall remain August 16, 2021 for the purposes therein.

4.  <u>Seller's Other Representations and Warranties</u>.  Paragraph 12.5 of the Agreement is hereby amended to add paragraph 12.5.4 as follows:

> 12.5.4  <u>Payment of Non-Investor First-Priority Lender Claims and Non-Investor Other Secured Claims</u>.  Seller warrants and covenants that, subject to the Bankruptcy Court's approval of the Sale Motion, all Non-Investor First-Priority Lender Claims (as defined in the Plan) and Non-Investor Other Secured Claims (as defined in the Plan) that are secured by liens against the Property shall be paid in full from the proceeds of the sale of the Property ("**Sale**") at the Close of Escrow. Other than as provided for under the Agreement or otherwise agreed to by the Parties, Seller further warrants that the Sale to Buyer encompasses all of the Property and that the Closing with respect to all the Property or an individual portion of the Real Property shall not be delayed as a result of the non-payment of Non-Investor First-Priority Lender Claims and Non-Investor Other Secured Claims at the Closing.

5.  <u>Opt-out Period</u>.  By this Amendment, the Parties agree that the Opt-out Period shall be extended to August 11, 2021.

6.  <u>Capitalized Terms</u>.  Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Agreement.

7.  <u>Counterparts and Electronic Copies</u>.  This Amendment may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, and all of which shall together constitute one and the same instrument.  Any party may execute this Amendment by facsimile or electronically transmitted .pdf (i.e. DocuSign), and any such facsimile or electronically transmitted .pdf shall be deemed an original signature.

Error! Unknown document property name..Error! Unknown document property name.

Case 20-30604   Doc# 966   Filed: 11/02/21   Entered: 11/02/21 11:25:55   Page 109 of 148

8.    <u>Effect of Amendment</u>.  In the event of any inconsistencies between this Amendment and the Agreement, the terms of this Amendment shall govern.  Except as provided for herein, all other terms and conditions of the Agreement shall remain unchanged and the parties hereto reaffirm the terms and conditions of the Agreement.  This Amendment may only be varied by a document executed in writing by both parties.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year hereinabove written.

"SELLER"

PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation

By: _Andrew Hinkelman_____
Name:  Andrew Hinkelman
Title:   Chief Restructuring Officer

"BUYER"

HAMILTON ZANZE & COMPANY, a California corporation

By: _____
Name:   Kurt Houtkooper
Title:    President

Error! Unknown document property name..Error! Unknown document property name.

Case: 20-30604    Doc# 966    Filed: 11/02/21    Entered: 11/02/21 11:25:55    Page 111 of 148

# SECOND AMENDMENT TO
# PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

THIS SECOND AMENDMENT TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS ("**Amendment**") is made and effective as of August 23, 2021, by and between Professional Financial Investors, Inc., a California corporation, and all affiliates (collectively, "**Seller**") and Hamilton Zanze & Company, a California corporation, and its assignee (collectively, "**Buyer**," with Seller, referred to as "**Parties**").

## RECITALS

A.      Seller and Buyer entered into that certain Purchase Agreement and Escrow Instruction dated for reference purposes June 16, 2021, as amended by that First Amendment to Purchase Agreement and Escrow Instruction dated August 11, 2021 (the "**Agreement**"), with respect to the sale of the Property.

B.      On Monday, August 16, 2021, Chicago Title Insurance Company ("**Chicago Title**") delivered Seller and Buyer written notice that it was declining to insure the transaction contemplated under the Agreement in its entirety. Without disclosing specifics of its confidential internal underwriting deliberations, Chicago Title stated that it had concluded that the subject transaction did not meet its current underwriting standards and further indicated that this was a final decision. As a result thereof, Buyer is unable to complete title and survey due diligence with respect to the Real Properties and has and will continue to incur significant additional expense with respect to the resolution of this issue.

C.      In connection with Buyer's due diligence to date, Buyer has identified, among other things and without limitation; (i) deferred maintenance items with respect to the Real Properties, (ii) a building in the northeast corner of the multi-family residential property commonly referred to as Woodland Apartment that is encroaching onto the neighboring property by approximately 10 feet at its widest point ("**Woodland Encroachment**"), (iii) an environmental condition at a commercial property commonly referred to as Broadway Square, and (iv) the lease scrivener errors ("**Scrivener Errors**") and permit, administrative, and red-tag violations identified in Exhibit A attached hereto, and which shall be supplemented by Buyer and delivered to Seller with respect to violations in the City of Novato within five (5) Business Days hereof ("**Permit Violations**") which are currently being addressed by Seller but remain incomplete at this time.

D.      As of the date hereof, Buyer has yet to receive survey reports for multi-family residential properties referred to as Sycamore Creek Apartments and Pacheco Villa properties.

E.      Buyer has advised Seller that it will be assigning its rights and obligations under the Agreement to NCP JV, LLC, a Delaware limited liability company, pursuant to Paragraph 15.1 of the Agreement.

F.      In light of the foregoing events and circumstances, the Parties have agreed to amend the Agreement as provided below.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

1.     <u>Assignment of Agreement</u>. Seller acknowledges and consents to Buyer's assignment of all of its rights, title and interest under the Agreement to NCP JV, LLC and NCP JV, LLC's assumption of such rights, title and interests under the Agreement pursuant to Paragraph 15.1 of the Agreement (the "**Assignment**"). After the effectiveness of the Assignment, Buyer shall mean NCP JV, LLC for all purposes under the Agreement. Notwithstanding anything to the contrary in this Section 1, the Assignment shall not release Buyer from the obligations of Buyer under the Agreement and this Amendment.

2.     <u>Definition of Title Insurer</u>. Paragraph 2.1.41 of the Agreement is hereby amended and restated as follows: "Title Insurer" means a title insurance company chosen by Seller, upon reasonable approval of Buyer. For purposes herein, Chicago Title Insurance Company, Stewart Title and Old Republic Title are approved title companies.

3.     <u>Definitions of Permitted Encumbrances and Permitted Exceptions</u>. Paragraphs 2.1.24 and 2.1.25 of the Agreement are hereby amended such that the definitions of Permitted Encumbrances and Permitted Exceptions are deemed to exclude the Required Corrections (as defined in Paragraph 6.1.2 of the Agreement) and Other Claims (as provided in new paragraph 8.1.4(g)).

4.     <u>Title Commitment and Form of Sale Order</u>. Paragraph 6.1.5 of the Agreement is hereby amended and restated as follows:

> Prior to the Hearing on the Sale, Title Insurer shall have approved the form of Sale Order and provided written confirmation of the same to Buyer and Seller, such that the form of Sale Order shall be sufficient, if and when entered by the Bankruptcy Court and such Order becomes final, to convey title of each Real Property to Buyer in the manner required under this Agreement, including Paragraph 8.1.4.

5.     <u>Pre-Closing Obligations</u>. Article 7 of the Agreement shall be amended by adding the following new paragraph:

> 7.8 <u>Outstanding Due Diligence Matters</u>. Seller shall continue to work in good faith with Buyer in resolving to Buyer's reasonable satisfaction Scrivener Errors and Permit Violations.

6.     <u>The Title Policies</u>. Paragraph 8.1.4 of the Agreement is amended by adding the following subparagraph:

> (g) For purposes of clarity, deeds of trust and other financing documents identified in the definition of Required Corrections in Paragraph 6.1.2 includes Non-Investor First-Priority Lender Claims, Non-Investor Other Secured Claims and DOT

Noteholder Claims (as each is defined in the Plan) (collectively, "**Other Claims**") and each shall be removed or terminated, as applicable from the Title Policies on or before the Closing.

7.     Surveys. Notwithstanding anything to the contrary in the Agreement or this Amendment, the Contingency Date is hereby extended until three (3) Business Days after identification of the replacement Title Insurer (as discussed in Section 2 above) and receipt of a title commitment ("**Survey Outside Date**") solely for the purpose of Buyer reviewing and approving, in its sole and absolute discretion, the surveys relating to the Sycamore Creek Apartments and Pacheco Villa; provided, however, in no event shall the Survey Outside Date occur later than seven (7) days prior to Closing. In the event that Buyer timely disapproves, in its sole and absolute discretion, by delivery of written notice to Seller prior to 5:00 p.m. PST on the Survey Outside Date one or both of such surveys, the Agreement shall be terminated with respect to the applicable Individual Property with respect to which Buyer has disapproved such survey, in which event the Purchase Price shall be reduced by such Individual Property's Allocated Purchase Price and the parties shall have no further rights or obligations under the Agreement with respect to such Individual Property

8.     Closing Conditions. Paragraph 8.1 of the Agreement is amended by adding the following subparagraphs:

(a)     8.1.6     Woodland Property Encroachment. Seller, at its sole cost and expense, shall process and obtain a lot line adjustment to cure the Woodland Encroachment. If Seller is unable to accomplish such lot line adjustment by Closing and notwithstanding anything to the contrary in this Agreement, Seller shall have the right, in its discretion, as reasonably approved by Buyer and as Buyer's sole and exclusive remedy, by delivery of written notice to Buyer prior to Closing, to either (i) enter into a binding agreement on or before Closing with the affected neighboring property owner that shall result in a cure of the Woodland Encroachment, with any resulting cost to cure the Woodland Encroachment to be paid solely by Seller or to be treated as a reduction of the Purchase Price, and assign such agreement to Buyer, (ii) the Purchase Price shall be reduced by $800,000, or (iii) this Agreement shall be terminated with respect to such Individual Property, the Purchase Price shall be reduced by its Allocated Purchase Price, and the parties shall have no further rights or obligations under the Agreement with respect to such Individual Property.

(b)     8.1.7     Permit Violations. Seller shall have cured by money satisfaction, or otherwise, the Permit Violations. If Seller is unable to cure or otherwise satisfy such violations by the Closing, then as Buyer's sole and exclusive remedy the Purchase Price shall be reduced by the amount of $250,000.

(c)     8.1.8     Broadway Square. For that Individual Property known as Broadway Square, Buyer shall have, on or before the date that is seven (7) days prior to Closing, either (i) received a satisfactory commitment, in Buyer's sole discretion, for the provision of environmental insurance insuring against the discovered environmental condition or, (ii) obtained a satisfactory Phase 2 environmental assessment, in Buyer's sole discretion. If, by the date that is seven (7) days prior to Closing, Buyer has delivered written notice to Seller that it is unable to satisfy itself with respect to the environmental condition of Broadway Square, this Agreement shall be terminated with

respect to this Individual Property, the Purchase Price shall be reduced by its Allocated Purchase Price, and the parties shall have no further rights or obligations under the Agreement with respect to such Individual Property, unless Buyer, in its sole discretion, agrees to continue the Closing Date with respect to this Individual Property if more time is necessary to satisfy the condition; provided, however, such continuation of the Closing Date for this Individual Property shall be until no later than December 23, 2021.

9. <u>Capitalized Terms</u>. Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Agreement.

10. <u>Counterparts and Electronic Copies</u>. This Amendment may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, and all of which shall together constitute one and the same instrument. Any party may execute this Amendment by facsimile or electronically transmitted .pdf, and any such facsimile or electronically transmitted .pdf shall be deemed an original signature.

11. <u>Effect of Amendment</u>. In the event of any inconsistencies between this Amendment and the Agreement, the terms of this Amendment shall govern. Except as provided for herein, all other terms and conditions of the Agreement shall remain unchanged and the parties hereto reaffirm the terms and conditions of the Agreement. This Amendment may only be varied by a document executed in writing by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year hereinabove written.

"SELLER"

PROFESSIONAL FINANCIAL INVESTORS, INC.,
a California corporation

By: _____
Andrew Hinkelman
F8DF691B49C4F3

Name: Andrew Hinkelman

Title: Chief Restructuring Officer

"BUYER"

HAMILTON ZANZE & COMPANY,
a California corporation

By: _____
kurt Houtkooper
E94F0646...

Name: Kurt Houtkooper

Title: President

# EXHIBIT A

## Permit Violations

        In addition to numerous administrative violations identified on the exhibit to the City of Novato's proof of claims, set forth below are the addresses of the properties with outstanding code violations:

        461 Ignacio Blvd., Novato, CA
        475 Ignacio Blvd., Novato, CA
        445 Ignacio Blvd., Novato, CA
        401 Ignacio Blvd., Novato, CA
        481 Ignacio Blvd., Novato, CA
        501 Alameda del Prado, Novato, CA
        551 Alameda del Prado, Novato, CA
        511 Alameda del Prado, Novato, CA
        531 Alameda del Prado, Novato, CA
        521 Alameda del Prado, Novato, CA
        1506 Vallejo Ave., Novato, CA
        59 Ignacio Lane, Novato, CA
        17-23, 30-42 Clay Ct., Novato, CA
        1000 Ignacio Blvd., Novato, CA
        980 Ignacio Blvd., Novato, CA
        335 Enfrente Rd. Building 1, 3, 5, 7, Novato, CA
        7200 Redwood Blvd., Novato, CA
        1500 Grant Ave., Novato, CA
        359 Bel Marin Keys Blvd., Novato, CA
        1707 Novato Blvd., Novato, CA
        353 Bel Marin Keys Blvd., Suite 1, Novato, CA (red-tagged)

# THIRD AMENDMENT TO
# PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

THIS THIRD AMENDMENT TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS ("**Amendment**") is made and effective as of September 6, 2021, by and between Professional Financial Investors, Inc., a California corporation, and all affiliates (collectively, "**Seller**") and NCP JV, LLC, a Delaware limited liability company (assignee of Hamilton Zanze & Company, a California corporation) (collectively, "**Buyer**," with Seller, referred to as "**Parties**").

## RECITALS

A.      Seller and Buyer entered into that certain Purchase Agreement and Escrow Instruction dated for reference purposes June 16, 2021 ("**Purchase Agreement**"), as amended by that First Amendment to Purchase Agreement and Escrow Instruction dated August 11, 2021 ("**First Amendment**"), and that Second Amendment to Purchase Agreement and Escrow Instructions dated August 23, 2021 ("**Second Amendment**" with Purchase Agreement and First Amendment, the "**Agreement**"), with respect to the sale of the Property.

B.      On Monday, August 16, 2021, Chicago Title Insurance Company ("**Chicago Title**") delivered Seller and Buyer written notice that it was declining to insure the transaction contemplated under the Agreement in its entirety.  As a result, Seller and Buyer have determined that Old Republic Title Company ("**ORTC**") is willing to insure the transaction contemplated under the Agreement in its entirety so long as certain conditions are met.

C.      Except as set forth in the Second Amendment and except for exceptions and matters constituting Liens and/or Required Corrections, Buyer has provided notice to Seller stating it has approved or is deemed to have approved the contingencies described in Paragraphs 6.1.1 through 6.1.3 of the Agreement as of the date of this Amendment.

D.      On June 9, 2021, the Bankruptcy Court entered an order (the "**Confirmation Order**") confirming the Plan. The Parties previously contemplated that the Property would be sold to Buyer pursuant to Section 363 of the Bankruptcy Code; however, ORTC has required that the transfer of the Property occur pursuant to a modified Plan (the "**Modified Plan**") and an amended Confirmation Order (the "**Amended Confirmation Order**").

E.      Together the Modified Plan and Amended Confirmation Order will authorize, among other provisions, (a) Seller's reconveyance of certain deeds of trust where Seller is trustee, provided, however, that Seller obtains on a property-by-property basis (the "**Reconveyance Thresholds**"): (i) consent, in the form approved by ORTC, for the reconveyance from one hundred percent (100%) of the beneficiaries under the applicable deeds of trust, or (ii) a judgment in an adversary proceeding against any non-consenting beneficiaries either avoiding their fractionalized interest in that certain deed of trust and/or authorizing such reconveyance of their respective fractionalized interest in that deed of trust, (b) sale of the Initial Closing Properties (as defined in Section 4 below) to Buyer free and clear of Interests (as defined in the Sale Motion) on the Closing Date (as defined in Section 2 below), and (c) subject to meeting the Reconveyance Threshold with

respect to the remaining Individual Properties not conveyed on the Closing Date ("**Phased Closing Properties**," and such Individual Property, a "**Phased Closing Property**"), sale of the Phased Closing Properties to Buyer free and clear of Interests over a period of time because the process of meeting the Reconveyance Thresholds may take weeks or months, and may not occur at the same time for each Individual Property. Seller will sell and convey the Phased Closing Properties to Buyer in a series of phased closings ("**Phased Closings**," and each individually is a "**Phased Closing**"), which shall correspond to their respective Reconveyance Thresholds being met.

F.      In light of the foregoing events and circumstances, the Parties have agreed to amend the Agreement as provided below.

**AGREEMENT**

NOW, THEREFORE, in consideration of the promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

1.      Definition of Escrow Holder and Title Insurer.      From and after the date hereof, but without limiting the terms of Section 2 of the Second Amendment, the Parties hereby select and approve ORTC to be the Title Insurer. As soon as practicable, the Parties shall take the necessary and appropriate steps to transfer the Buyer's Deposit with Chicago Title to ORTC and shall cause ORTC to be the Escrow Holder under the terms of the Agreement as amended herein and from that date forward, the term "Escrow Holder" in the Agreement shall be restated to mean ORTC.

2.      Definition of Closing Date.  The term "Closing Date" in the Agreement is hereby amended and restated as follows: "Closing Date" means the date that is one (1) Business Day following the Amended Confirmation Order becoming a final order (*i.e.* such order shall not have been stayed, vacated, or otherwise rendered ineffective, and to which the fourteen (14) day appeal period from entry of the Amended Confirmation Order has expired), unless such date is extended (i) at the request of the Escrow Holder because additional time is needed by Escrow Holder to effectuate the Initial Closing and any Phased Closing, or (ii) by agreement of the Parties.

3.      Updated Preliminary Reports from ORTC.  ORTC is preparing and will issue new Preliminary Reports for each Individual Property. For purposes of this Amendment, "**New Title Matters**" shall mean any exception identified on a Preliminary Report issued by ORTC that was not disclosed by a Preliminary Report or title commitment issued by Chicago Title while it was Title Insurer. Without limiting Seller's obligations to cure any Required Corrections, inclusive of Other Claims (as defined in the Second Amendment), and other matters placed on title by Seller or Tenants-In-Common after the Title Approval Date without Buyer's consent, Buyer acknowledges and agrees that it may only make an objection to New Title Matters to the extent that the cost to cure such New Title Matters with respect to any such Individual Property, would, in the aggregate, be in an amount greater than $50,000 or such New Title Matter affects the use of the Individual Property ("**Material New Title Matters**"). Any such objection must be provided by Buyer to Seller within seven (7) Business Days after Buyer's receipt of the applicable Preliminary Report and all related exception documents issued by ORTC for an Individual Property. Both parties agree to use good faith and diligent efforts to cure any New Title Matters,

including, without limitation, any Material New Title Matters. In the event that the Parties are unable to cure any Material New Title Matter, then at Buyer's election by delivery of written notice to Seller at least seven (7) days prior to the Initial Closing and each Phased Closing (as defined below), as applicable, it can elect (a) to waive any such New Title Matter, (b) to purchase the Individual Property with a reduction in the Purchase Price equal to the estimated reasonable out-of-pocket cost to cure the Material New Title Matter; provided, however, if the Parties are unable to mutually agree on the cost to cure the Material New Title Matter or if the cost to cure the Material New Title Matter exceeds $100,000, then Buyer shall only be permitted to elect either subsection (a) or (c) with respect to such Individual Property unless the Parties otherwise mutually agree, or (c) to terminate the Agreement solely with respect to any such Individual Property for which a Material New Title Matter remains uncured, and the Purchase Price shall be reduced by the applicable Allocated Purchase Price attributable to any such removed Individual Property as identified in <u>Exhibit A-1</u> of the Agreement and thereafter the Parties shall have no further rights or obligations under the Agreement, as amended, with respect to such Individual Property, except as provided in Paragraphs 11.3 and 12.4 of the Agreement. The failure of Buyer to timely make an election with respect to any Individual Property with an uncured Material New Title Matter or to permit any such Individual Property to be included in a Phased Closing shall be deemed conclusively to be Buyer's acceptance and approval thereof and such uncured Material New Title Matter shall be deemed a Permitted Exception and a Permitted Encumbrance. Notwithstanding anything to the contrary contained in the Agreement, as amended, but without limiting the terms of Article 7 of the Agreement, Permitted Exceptions and Permitted Encumbrances shall mean all exceptions and matters with respect to title and the Surveys for the Property other than (i) the Required Corrections (inclusive of the Other Claims (as defined in the Second Amendment)), (ii) any other matters placed on title by Seller or Tenants-In-Common after the Title Approval Date without Buyer's consent, (iii) Material New Title Matters, subject to the foregoing terms of this Section 3, and (iv) the title and survey matters identified in Sections 6, 7, and 8 of the Second Amendment. Buyer hereby acknowledges and agrees its approval of all Permitted Exceptions and Permitted Encumbrances as enumerated above.

4. <u>Phased Closings</u>.

(a) Subject to the terms and conditions of the Agreement and this Amendment, Buyer shall acquire the Property pursuant to the Phased Closings in the manner provided below. At each Phased Closing, any of the Individual Properties for which (i) ORTC is prepared to provide the Title Policy therefore and has delivered to the Parties written notice thereof at least three (3) Business Days prior to any such Phased Closing and (ii) the conditions precedent (including, without limitation, the Reconveyance Threshold) applicable to each such Individual Property have otherwise been satisfied or waived pursuant to the terms of the Agreement (collectively, "**Approval**"), shall be conveyed to Buyer. The initial closing ("**Initial Closing**") shall occur on the Closing Date and be for the Individual Properties identified in <u>Exhibit A</u> to this Amendment, which is attached hereto and incorporated herein, as well as any other Individual Property for which Approval has been obtained prior to the Closing Date (collectively, "**Initial Closing Properties**"). Phased Closings shall occur on the last Thursday of the first calendar month following the Initial Closing and monthly thereafter on the last Thursday of each month, except for November 2021 where the Phased Closing shall be on November 30, 2021, and December 2021, where the Phased Closing shall be on December 23, 2021, with respect to Phased Closing Properties in instances where Approval has been obtained and the conditions to Closing as

enumerated in Article 8 of the Agreement, as amended herein, have been met, and provided that the aggregate Allocated Purchase Price of such Phased Closing Properties exceeds $20,000,000. If the requirements for the Phased Closing have not been met for any given month, the closing with respect to such Phased Closing Properties will roll over to the next month, provided, however, that any Phased Closing Properties for which Approval has been obtained shall be closed on or before the Outside Closing Date. Phased Closings will continue until the entirety of the Phased Closing Properties have been conveyed to Buyer except to the extent any Individual Property has been removed from the definition of Property pursuant to the terms of the Agreement or this Amendment, or if such Approval has not been obtained by the Outside Closing Date (defined below).

(b)      Notwithstanding anything to the contrary in the Agreement or this Amendment, all Phased Closings must occur on or before March 31, 2022, unless the Buyer, in its sole discretion, agrees in writing to extend such date ("**Outside Closing Date**") to permit additional time to obtain Approval with respect to any such Individual Property and proceed to a closing pursuant to the terms of the Agreement and this Amendment and in the event there remains any unsold Individual Property for any reason whatsoever at the time of the Outside Closing Date such Individual Property shall be deleted from the term Property, shall not be included in the transaction contemplated by the Agreement and this Amendment, and the Purchase Price shall be reduced by the aggregate Allocated Purchase Price of any such unsold Individual Properties.

(c)      Notwithstanding anything to the contrary in the Agreement, including, without limitation Paragraph 5.1 of the Agreement, Seller's failure to convey to Buyer the fee estate to any Phased Closing Property free of all encumbrances and matters except those permitted by Paragraph 8.1.4 shall not be deemed a default by Seller; provided, however, with respect to any such Phased Closing Property which is excluded from the definition of Property under the terms of the Agreement, as modified by this Amendment, Buyer's sole and exclusive remedy shall be as set forth in Section 5(b) below.

(d)      The Purchase Price for the Initial Closing and any and all Phased Closings shall be the aggregate of the Allocated Purchase Price for the applicable Individual Properties included as part of the Initial Closing and any such Phased Closing. As soon as practicable hereafter, Buyer shall provide Seller with revised Allocated Purchase Prices for the Individual Properties ("**Revised APPs**"), which shall be subject to Seller's reasonable approval unless the Revised APPs have an "Adverse Economic Consequence" on Seller or seek to change or modify the Allocated Purchase Price for the TIC Properties, which in either event Seller shall have the sole, absolute, and unfettered right to reject, condition, or approve the Revised APPs. For purposes of this Section 5(d), Adverse Economic Consequence shall mean a ten percent (10%) deviation in the aggregate Revised APPs for the Initial Closing Properties from the aggregate Allocated Purchase Prices dated as of June 16, 2021 for the same Individual Properties. The Revised APPs for Individual Properties shall be based on such Individual Property's percentage of the aggregate appraised value as determined by MAI-certified appraisals of all of the Individual Properties. In addition, the terms "Land", "Improvements", "Property", "Personal Property", "Intellectual Property", "Contracts and Leases", and all obligations related thereto shall be deemed to refer to those items as they pertain solely to the Individual Properties that are subject to the applicable Phased Closing.

5.      Breakup and Expense Reimbursement Fee.

(a)      Notwithstanding anything to the contrary in the Agreement or this Amendment, including, without limitation, Paragraph 14.2 of the Agreement, in the event that the Agreement terminates because the Bankruptcy Court does not approve the sale of all the Property by Seller to Buyer pursuant to the Modified Plan and the Amended Confirmation Order, on or before the Outside Closing Date, then Buyer shall be entitled to receive the Breakup and Expense Reimbursement Fee pursuant to the terms of the Agreement.

(b)      In the event that a portion, but not all, of the Property has been conveyed to Buyer by the Outside Closing Date, then, Buyer shall receive the Prorated Breakup and Expense Reimbursement Fee (defined below) with respect to any Individual Property that has been removed pursuant to this Amendment  other than any Individual Properties removed pursuant to Paragraph 6.1.4 of the Agreement or as a result of Buyer's Default, with respect to which Buyer shall receive no Breakup and Expense Reimbursement Fee and no Prorated Breakup and Expense Reimbursement Fee with respect to such Individual Properties ("**Removed Individual Properties**").  For purposes of clarity, the Prorated Breakup and Expense Reimbursement Fee with respect to any Individual Property shall only be paid once to Buyer (i.e., Buyer shall only be entitled to receive the Prorated Breakup and Expense Reimbursement Fee with respect to any Individual Property under the terms of this Section 5(b) or under Paragraph 14.2 of the Agreement, but not both). The "**Prorated Breakup and Expense Reimbursement Fee**" means the Breakup and Expense Reimbursement Fee multiplied by a ratio, the numerator of which is the aggregate Allocated Purchase Price of the Removed Individual Properties and the denominator of which is the Purchase Price.  For avoidance of doubt, this Section 5 only applies if Buyer is the Successful Bidder, otherwise Buyer shall be allowed its Breakup and Expense Reimbursement Fee as provided for in the Agreement.

6.      Modification of Deadlines.  The applicable deadlines related to the timing for closings for the Property in the Agreement are modified in their entirety by this Amendment as necessary to accommodate the Phased Closings.

7.      Updated Bankruptcy Provisions.  Notwithstanding any provision to the contrary in the Agreement and this Amendment related to the Sale Order or Section 363 of the Bankruptcy Code, the Parties intend to consummate the transactions contemplated in the Agreement, as modified by this Amendment, via the Modified Plan and the Amended Plan Confirmation Order, provided, however, that the Amended Plan Confirmation Order incorporating and approving the Modified Plan contain identical or substantially equivalent protections for the Parties as contained in the Sale Order attached to the Sale Motion (Docket No. 824), and as such, the Amended Plan Confirmation Order confirming and incorporating the Modified Plan is hereby deemed the Sale Order for purposes under the Agreement and this Amendment and their content shall remain in a form and substance acceptable to Buyer, Buyer's lender, Title Insurer, and Seller as provided in Paragraph 2.1.33 of the Agreement.  The Parties understand that ORTC and the Bankruptcy Court may revise, object, or make comments to the Sale Order, Sale Motion, Modified Plan, or the Amended Plan Confirmation Order, in which case the Parties agree, in a commercially reasonable manner and in good faith, to diligently and expeditiously seek to resolve any such revisions, objections, or comments in a manner satisfactory to ORTC and/or the Bankruptcy Court, as applicable.

8.     Title Commitment and Form of Sale Order. Paragraph 6.1.6 of the Agreement is hereby deleted in its entirety and replaced with the following:

"Prior to hearing on the Motion to Approve the Modified Plan and Amend the Confirmation Order, Title Insurer shall have approved the form of Sale Order (i.e., Amended Confirmation Order pursuant to Section 7 herein) and provided written confirmation of the same to Buyer and Seller, such that the form of Sale Order shall be sufficient, if and when entered by the Bankruptcy Court and such order becomes final, to convey title to each of the Individual Properties to Buyer in the manner required under this Agreement, including Paragraph 8.1.4."

9.     Termination. Paragraph 6.4 of the Agreement is hereby deleted in its entirety and replaced with the following:

"If any special condition described in Paragraph 6.1 has been neither satisfied nor waived in the manner and by the time specified therein, a party who is not then in default hereunder shall have the right to terminate this Agreement and this Escrow in relation to any Individual Property that has not already been conveyed to Buyer by delivering a written notice of termination to Escrow Holder. The right to terminate this Agreement and Escrow in relation to any Individual Property that has not already been conveyed pursuant to a Phased Closing shall be optional, not mandatory. If the notice is delivered, then Escrow Holder shall deliver a copy of such notice to the other party, and unless written objection to termination of this Escrow is received by Escrow Holder from the other party within two (2) Business Days thereafter, Escrow Holder shall promptly terminate this Escrow and promptly return a prorated portion of the Deposits and accrued interest thereon to Buyer (except for the Nonrefundable Deposit which shall be delivered to Seller unless the termination was the result of Seller's default) based upon the amount obtained when the Deposits are multiplied by a ratio, the numerator of which is the aggregate Allocated Purchase Price of the Individual Properties that have not yet been transferred to Buyer (but excluding Removed Individual Properties) and the denominator of which is the Purchase Price ("**Prorated Deposits**"). Without limiting the foregoing, this Agreement shall terminate on the occurrence of any of the following: (a) mutual written consent of Seller and Buyer prior to entry of the Amended Confirmation Order, or (b) if the Initial Closing does not occur before January 27, 2022, unless Buyer agrees in its sole discretion to a later date for the Initial Closing. In the event of termination described in this Paragraph 6.4, Buyer shall be entitled to the prompt return of the Prorated Deposits and all accrued interest thereon (except for the Nonrefundable Deposit which shall be delivered to Seller unless the termination was the result of Seller's default), without regard to Paragraph 8.2.2."

10.    Default by Seller. Paragraph 14.2 of the Agreement is hereby deleted in its entirety and replaced with the following:

"If the Initial Closing or any Phased Closing contemplated in this Amendment fail to close as a result of Seller's material default, which Seller fails to cure within five (5) Business Days after receipt of written notice describing in reasonable detail the nature of such material default, then Buyer's sole and exclusive remedy shall be to (i) (a) terminate this Agreement and the Escrow by giving Seller and Escrow Holder

written notice of Buyer's election to immediately terminate this Agreement and Escrow and receive an administrative claim in the Bankruptcy Case pursuant to Section 503(b) of the Bankruptcy Code in the amount of the Breakup and Expense Reimbursement Fee in the event such failure to close is with respect to all Property, or (b) the Prorated Breakup and Expense Reimbursement Fee if the failure to close is with respect to Phased Closing Properties in which case the Prorated Breakup and Expense Reimbursement Fee shall be calculated for purposes of this Paragraph 14.2 using a ratio in which the numerator is the aggregate Allocated Purchase Price for such excluded Phased Closing Properties and the denominator is the Purchase Price or (ii) assert and seek judgment against Seller for specific performance, and if such judgment is not obtained, then exercise such remedy under (i) above."

11.     Other Title Policy Issues.

(a)     Right of First Refusal. Seller shall provide written notice to Buyer at the earlier of actual knowledge or ten (10) days before the Initial Closing, unless at Buyer's sole discretion, Buyer agrees to continue the closing to a Phased Closing in which event the notice is due ten (10) days before such Phased Closing, whether the right of first refusal to purchase the Property that may be held by that certain tenant leasing a portion of the Individual Property located at 1500, 1510, and 1516 Grant Avenue, Novato, California, commonly known as the Novato Business Center, has been terminated either through the Sale Order, Sale Motion, Modified Plan, the Amended Plan Confirmation Order, or due to such tenant's election not to exercise such right of first refusal, to the extent it has such a right. If (x) Seller delivers written notice to Buyer that Seller has failed to procure termination of the right of first refusal, or (y) Seller fails to provide written notice to Buyer ten (10) days before the applicable Closing that Seller has obtained a termination of the right of first refusal, then Buyer shall have the right by delivery of written notice to Seller at least seven (7) days before the applicable Closing, unless extended by Buyer in its sole discretion, to terminate the Agreement solely with respect to such Individual Property, and the Purchase Price shall be reduced by the applicable Allocated Purchase Price attributable to such Individual Property and thereafter the Parties shall have no further rights or obligations under the Agreement, as amended, with respect to such Individual Property, except as provided in Paragraphs 11.3 and 12.4 of the Agreement.

(b)     Endorsements. If within twenty (20) days after Buyer's receipt of the applicable Preliminary Report from Title Insurer, Title Insurer denies Buyer's request (or does not, within such period, affirmatively approve or disapprove Buyer's request, in which case the request shall be deemed denied for purposes of this paragraph) that Title Insurer issue any reasonable and customary endorsement to the Title Policy for an Individual Property pursuant to a request by Buyer despite Buyer's commercially reasonable and good faith efforts to obtain such endorsement and further provided that (i) as a result of Title Insurer's denial of such endorsement for such Individual Property, Buyer's lender is unwilling to proceed with the financing of such Individual Property and (ii) such endorsement was one that Buyer had previously requested be provided by Chicago Title as documented in a written correspondence previously sent to Seller from Buyer in connection with Buyer's Title Objections pursuant to the terms of Paragraph 6.1.2 of the Agreement (collectively, a "**Denied Endorsement**"), then Buyer shall provide written notice to Seller detailing the Denied Endorsement within five (5) Business Days of any such denial. Upon receipt of such written notice detailing any Denied Endorsement, Seller shall have the right to

elect, which election shall be in its sole, absolute, and unfettered discretion, to use commercially reasonable efforts to obtain any such Denied Endorsement on behalf of Buyer and/or Buyer's lender within five (5) Business Days after Seller receives any such written notice from Buyer detailing the Denied Endorsement. If Seller elects to use commercially reasonable efforts to obtain any Denied Endorsement, then Buyer shall reasonably cooperate with Seller's efforts to obtain any Denied Endorsement. In the event Seller is unable to obtain the Denied Endorsement or elects not to seek to obtain the Denied Endorsement, then Buyer's sole and exclusive remedy shall be an election made by delivery of written notice from Buyer to Seller at least seven (7) days before the Initial Closing or the applicable Phased Closing if the Denied Endorsement is for a Phased Closing Property to either (A) waive the Denied Endorsement or (B) to terminate the Agreement solely with respect to any Individual Property for which there is an Denied Endorsement, and the Purchase Price shall be reduced by the applicable Allocated Purchase Price attributable to any such Individual Property and thereafter the Parties shall have no further rights or obligations under the Agreement, as amended, with respect to any such Individual Property, except as provided in Paragraphs 11.3 and 12.4 of the Agreement.

12.    <u>No Default</u>:

(a)    Buyer hereby represents and warrants to Seller that, as of the date of this Amendment: (i) the Agreement (as amended hereby) is in full force and effect, (ii) there are no breaches or defaults under the Agreement (as amended hereby) by Buyer, or to Buyer's actual knowledge, by Seller, and (iii) to the extent of Buyer's actual knowledge, Buyer knows of no events or existing circumstances which, given the passage of time, would constitute a default under the Agreement (as amended hereby) by either Seller or Buyer as of the date hereof. For purposes of the Agreement and this Section "to the actual knowledge of Buyer" or "Buyer's actual knowledge" shall be deemed to refer to the current, actual knowledge of Kurt Houtkooper without any duty of investigation or imputation of knowledge.

(b)    Seller hereby represents and warrants to Buyer that, as of the date of this Amendment: (i) the Agreement (as amended hereby) is in full force and effect, (ii) there are no breaches or defaults under the Agreement (as amended hereby) by Seller, or to Seller's actual knowledge, by Buyer, and (iii) to the extent of Seller's actual knowledge, Seller knows of no existing events or circumstances which, given the passage of time, would constitute a default under the Agreement (as amended hereby) by either Seller or Buyer.

13.    <u>Seller's Other Representations and Warranties</u>. Paragraph 12.5 of the Agreement is hereby amended to add paragraph 12.5.5 as follows:

Seller represents and warrants that, as of the date of this Amendment, that the Sale of the Property pursuant to the terms of the Agreement as modified by this Amendment is in the best interest of the bankruptcy estate and its creditors and that sound business purpose exists to effectuate and consummate the Sale promptly in accordance with the terms set forth in the Agreement as modified by the Amendment and the Bid Procedures Order.

14.    <u>Capitalized Terms</u>. Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Agreement.

15.    Counterparts and Electronic Copies.  This Amendment may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, and all of which shall together constitute one and the same instrument.  Any party may execute this Amendment by facsimile or electronically transmitted .pdf, and any such facsimile or electronically transmitted .pdf shall be deemed an original signature.

16.    Effectiveness of Amendment.  This Amendment shall be void and of no effect  and not be binding on the Parties should the Bid Deadline of 5:00 p.m. on September 7, 2021 or the Auction Date of September 13, 2021 be extended.  In the event of any inconsistencies between this Amendment and the Agreement, the terms of this Amendment shall govern.  Except as provided for herein, all other terms and conditions of the Agreement shall remain unchanged and the parties hereto reaffirm the terms and conditions of the Agreement.  This Amendment may only be varied by a document executed in writing by the Parties.

[Signatures on Following Page]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date and year hereinabove written.

"SELLER"

PROFESSIONAL FINANCIAL INVESTORS, INC.,
a California corporation

By:_____
Name:  Andrew Hinkelman
Title:  Chief Restructuring Officer

"BUYER"

NCP JV, LLC
a Delaware limited liability company

By: *kurt Houtkooper*
Name:  Kurt Houtkooper
Title:    President

090621
73ZL-319169

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date and year hereinabove written.

"SELLER"

PROFESSIONAL FINANCIAL INVESTORS, INC.,
a California corporation

By: _____
 Andrew Hinkelman
Name:  Andrew Hinkelman
Title:  Chief Restructuring Officer

"BUYER"

NCP JV, LLC
a Delaware limited liability company

By: _____
Name:  Kurt Houtkooper
Title:  President

<u>EXHIBIT A</u>

<u>Initial Closing Individual Properties</u>

| | Property Name | Address |
|---|---|---|
| 1 | 107 Marin | 107 Marin Street, San Rafael |
| 2 | Baywood Center | 1682 Novato Blvd, Novato |
| 3 | Broadway Square | 10 Maple Street, Sonoma |
| 4 | Brookside | 517 B Street, San Rafael |
| 5 | City Center | 1701 Novato Blvd, Novato |
| 6 | Country Club Apt. | 980 Ignacio Blvd, Novato |
| 7 | Creekside | 7 Mount Lassen, San Rafael |
| 8 | Gateway Business Center | 851 Irwin Street, San Rafael |
| 9 | HQ - Suite 102 - 300 | 350 Ignacio Blvd, Novato |
| 10 | Hunt Plaza | 240 Tamal Vista, Corte Madera |
| 11 | Ignacio Hills Tennis & Garden Apts. | 401 Ignacio Blvd, Novato |
| 12 | Ignacio Hills Tennis & Garden Apts. | 481 Ignacio Blvd, Novato |
| 13 | Ignacio Hills Tennis & Garden Apts. | 511-531 Alameda del Prado, Novato |
| 14 | Ignacio Hills Tennis & Garden Apts. | 551 Alameda del Prado, Novato |
| 15 | Ignacio Place Apartment | 335 Enfrente Road, Novato |
| 16 | Madrone Apartment Homes | 15421 and 15435 Marty Drive |
| 17 | Marin Heights Apartment Homes | 19 Merrydale Road, San Rafael |
| 18 | Merrydale View Apartments | 7 Merrydale Rd, San Rafael |
| 19 | North Bay Business Center | 7200 Redwood Blvd, Novato |
| 20 | Northgate Heights Business Center | 1050 Northgate Drive, San Rafael |
| 21 | Northgate Professional Center | 899 Northgate Drive, San Rafael |
| 22 | Novato Business Center | 1500 1510 1516 Grant, Novato |
| 23 | 16914 Sonoma Hwy | 16914 Highway 12, Sonoma |
| 24 | Pacheco Villa | 1-7, 17-23, 30-42, 33-39 Clay, Novato |
| 25 | Parc Marin | 1441 Casa Buena Drive, Corte Madera |
| 26 | Rafael Gardens | 1315 Lincoln Avenue, San Rafael |
| 27 | Redwood Manor | 355 Boyes Blvd, Sonoma |
| 28 | San Pedro Business Center | 30 North San Pedro Rd, San Rafael |
| 29 | Sequoia Business Center | 1425 North McDowell, Petaluma |
| 30 | Sonoma Mission Apts. | 18179 Happy Lane, Sonoma |
| 31 | Sycamore Creek Apartments | 100 Sycamore Avenue, San Anselmo |

| | | |
|---|---|---|
| 32 | Tamal Plaza | 100 Tamal Vista, Corte Madera |
| 33 | The Broadway | 1151 Broadway, Sonoma |
| 34 | The Height Apartment Homes | 109 Professional Center Pkwy, San Rafael |
| 35 | The Northgate Business Center | 555 Northgate Drive, San Rafael |
| 36 | The Redwoods | 1341-1359 Redwood Way, Petaluma |
| 37 | Village Green Apts. | 350 Robinson Street, Sonoma |
| 38 | Woodland Apartments | 285 Woodland Avenue, San Rafael |
| 39 | 390 Woodland | 390-406 Woodland, San Rafael |

090621
73ZL-319169

# FOURTH AMENDMENT TO
## PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

THIS FOURTH AMENDMENT TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS ("**Amendment**") is made and effective as of October 14, 2021 ("**Effective Date**"), by and between Professional Financial Investors, Inc., a California corporation, and all affiliates (collectively, "**Seller**") and NCP JV, LLC, a Delaware limited liability company (assignee of Hamilton Zanze & Company, a California corporation) (collectively, "**Buyer**," with Seller, referred to as "**Parties**").

## RECITALS

A.      Seller and Buyer entered into that certain Purchase Agreement and Escrow Instruction dated for reference purposes June 16, 2021 ("**Purchase Agreement**"), as amended by that First Amendment to Purchase Agreement and Escrow Instruction dated August 11, 2021 ("**First Amendment**"), that Second Amendment to Purchase Agreement and Escrow Instructions dated August 23, 2021 ("**Second Amendment**"), and that Third Amendment to Purchase Agreement and Escrow Instructions dated September 6, 2021 ("**Third Amendment**" and with Purchase Agreement, First Amendment, Second Amendment, collectively, the "**Agreement**"), with respect to the sale of the Property.

B.      In discussions amongst the Parties, with ORTC, and Buyer's lender, the Parties determined that several of the Individual Properties are referred to with multiple addresses and that Exhibit A-1 to the Agreement should be clarified.

C.      The Parties also agreed that the Purchase Price should be increased and internal references clarified.

D.      In light of the foregoing events and circumstances, the Parties have agreed to amend the Agreement as provided below.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

1.      Exhibit A-1 to the Agreement.      Exhibit A-1 of the Agreement is hereby deleted in its entirety and replaced with the Exhibit A-1 that is attached to this Amendment and incorporated herein.

2.      Revised APPs.  Paragraph 2.1.1 shall be amended to provide that the term Revised APPs shall be used in place of the term Allocated Purchase Price throughout the Agreement.

3.      Purchase Price.  Paragraph 3.3 of the Agreement is hereby deleted in its entirety and replaced with the following:

3.3    **Purchase Price**. Subject to the terms and conditions of this Agreement, the purchase price ("**Purchase Price**") shall consist of the following:

3.3.1    Cash payment to Seller of Four Hundred Thirty-Six Million Five Hundred Thousand Dollars ($436,500,000), less (a) applicable Revised APPs attributable to (i) any such Excluded Unsigned Properties (as defined in Paragraph 6.1.4 below) as identified in Exhibit A-1 to the extent Buyer elects not to purchase Seller's right, title, and interest in the Excluded Unsigned Properties pursuant to Paragraph 6.1.4, or (ii) any other Individual Property that is excluded from the definition of Property pursuant to the terms of the Agreement, (b) a credit in the amount of the Deposits, (c) payments due, as of the Closing under any Post-Petition Construction Contract that were not timely paid by Seller, and (d) proration credits provided to Buyer pursuant to Paragraph 9.3, if any.

3.3.2    Payment of cure costs, if any, associated with any Purchased Contracts and Leases;

3.3.3    The aggregate amount of assumed Post-Petition Liabilities associated with the Post-Petition Construction Contracts (for the avoidance of doubt, this is not a payment in cash to Sellers); and

3.3.4    Lump-sum payment of Seller's accrued vacation and other paid time off (collectively, "**PTO**") as of the Closing, only with respect to Hired Employees (as defined in Paragraph 9.3.5). The amount paid by Buyer to Seller pursuant to this Paragraph 3.3.4 shall then be paid by Seller directly to the respective Hired Employee regardless of the payment priorities of the Bankruptcy Code and the payment provisions under the Plan. For the avoidance of doubt, Buyer is not assuming any claims, liabilities, contract obligations, expenses, or obligations of the Seller with respect to Seller employees, including, without exception, claims, obligations, charges arising under all state or federal statutes, laws and ordinances. The aggregate amount of items in Paragraphs 3.3.2, 3.3.3, and 3.3.4 shall be referred to as "**Assumed Obligations**."

4.    Exclusivity. As of September 7, 2021, Seller shall not (and shall ensure that no officer, director, employee, equity holder, agent, affiliate or representative of Seller shall) solicit, initiate, or seek any proposal, negotiation, or offer from any person or entity other than Buyer or Buyer's affiliates relating to the sale or other disposition of the Property. Furthermore, from the Effective Date, Seller agrees that all information about or regarding the Property that is located on or through the virtual data room shall no longer be made available to third parties other than Seller, the Affiliated Entities, Buyer, Buyer's affiliates, and any parties required to have access to such information by law or court order. Notwithstanding anything to the contrary in the Purchase Agreement and this Amendment, the provisions of this Section 3 shall not be applicable to the

Individual Property located at 390 Woodland Avenue, San Rafael, California before September 20, 2021.

     5.     <u>Woodland Property Encroachment</u>.  Paragraph 8.1.6 of the Agreement is hereby deleted in its entirety and replaced with the following:

     (a)     Subject to the terms of this Paragraph 8.1.6, Seller, at its sole cost and expense, shall process and obtain a lot line adjustment to cure the Woodland Encroachment.  If Seller is unable to accomplish such lot line adjustment by the Initial Closing and notwithstanding anything to the contrary in this Agreement, Seller shall have the right, in its discretion, as reasonably approved by Buyer and as Buyer's sole and exclusive remedy, by delivery of written notice to Buyer prior to Closing, to either (i) enter into a binding agreement on or before Closing with the affected neighboring property owner ("**Neighbor**") that shall result in a cure of the Woodland Encroachment ("**Binding Agreement**"), with any resulting cost to cure the Woodland Encroachment to be paid solely by Seller or to be treated as a reduction of the Purchase Price, and assign such agreement to Buyer, (ii) reduce the Purchase Price by $800,000, or (iii) this Agreement shall be terminated with respect to such Individual Property, the Purchase Price shall be reduced by such Individual Property's Revised APP, and the parties shall have no further rights or obligations under the Agreement with respect to such Individual Property.

     (b)     In the event Seller elects to proceed under item (i) of Paragraph 8.1.6 (a), as reasonably approved by Buyer, and Seller is unable to accomplish such lot line adjustment by the Initial Closing, but has entered into a Binding Agreement or is working with the Neighbor to enter into the Binding Agreement, then Buyer agrees to extend the Closing for such Individual Property to the next scheduled Phased Closing Date ("**Extension 1 Date**"). If by the Extension 1 Date, the lot line adjustment has not been obtained, but there is a Binding Agreement with the Neighbor or Seller is working with Neighbor to enter into the Binding Agreement, then Buyer agrees to extend the Closing for such Individual Property to the next scheduled Phased Closing Date ("**Extension 2 Date**").  If there is a Binding Agreement with Neighbor, but the Closing for such Individual Property is not accomplished by the Extension 2 Date, then Buyer shall take an assignment of the Binding Agreement and close on the Individual Property after the Extension 2 Date per the terms of the Binding Agreement in effect as of the Extension 2 Date with the greater of $800,000 or the cost to cure as provided in the Binding Agreement escrowed at Closing until such time the lot line adjustment is obtained per the terms of the Binding Agreement in effect as of the Extension 2 Date.  Excess funds in the escrow, if any, shall be returned to Seller after the lot line adjustment has been obtained and the Neighbor is compensated per the terms of the Binding Agreement in effect as of the Extension 2 Date.  If there is no Binding Agreement as of the Extension 2 Date, then Seller shall have the right, in its discretion, as reasonably approved by Buyer, and as Buyer's sole and exclusive remedy, by delivery of written notice to Buyer prior to Closing, to proceed under either item (ii) or (iii) of Paragraph 8.1.6(a).

     6.     <u>Broadway Square</u>.  Paragraph 8.1.8 shall be amended to provide that the outside date for extension of the Closing with respect to this Individual Property shall be the Outside Closing Date rather than December 23, 2021.

7.    Successful Bidder.  Since there was no other qualified bidder and no other qualified bid, Buyer is the Successful Bidder (as defined in the Sale Procedures Order).

8.    Capitalized Terms.  Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Agreement.

9.    Counterparts and Electronic Copies.  This Amendment may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, and all of which shall together constitute one and the same instrument.  Any party may execute this Amendment by facsimile or electronically transmitted .pdf, and any such facsimile or electronically transmitted .pdf shall be deemed an original signature.

10.    Effectiveness of Amendment.   In the event of any inconsistencies between this Amendment and the Agreement, the terms of this Amendment shall govern.  Except as provided for herein, all other terms and conditions of the Agreement shall remain unchanged and the parties hereto reaffirm the terms and conditions of the Agreement.  This Amendment may only be varied by a document executed in writing by the Parties.

[Signatures on Following Page]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date and year hereinabove written.

"SELLER"

PROFESSIONAL FINANCIAL INVESTORS, INC., a California corporation

By: _____
Andrew Hinkelman
F880F69AB4BC4E3...

Name: Andrew Hinkelman

Title: Chief Restructuring Officer

"BUYER"

NCP JV, LLC
a Delaware limited liability company

By: _____

Name: Kurt Houtkooper

Title: President

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date and year hereinabove written.

"SELLER"

PROFESSIONAL FINANCIAL INVESTORS, INC.,
a California corporation


By:_____
Name:  Andrew Hinkelman
Title:  Chief Restructuring Officer


"BUYER"

NCP JV, LLC
a Delaware limited liability company


By:_____
Name:    Kurt Houtkooper
Title:      President

SMRH:4831-2099-8960.4
100621

73ZL-319169

## EXHIBIT A-1

## Property List

**Commercial Properties:**

| Property Name(s)/Associated Address(es) | APN |
|---|---|
| Tamal Plaza<br>100 Tamal Vista Boulevard<br>Corte Madera | APN: 024-011-67 |
| Hunt Plaza<br>240 Tamal Vista Boulevard<br>Corte Madera | APN: 024-011-66 |
| North Bay Business Center<br>7200 Redwood Blvd.<br>Novato | APN: 153-091-10 |
| City Center<br>1701 Novato Blvd.<br>Novato | APN: 140-031-61 |
| Baywood Center<br>1682 Novato Blvd.<br>Novato | APN: 141-291-32 |
| Novato Business Center<br>1500, 1510, 1514 and 1516 Grant Ave.<br>Novato | APN: 141-252-35 |
| PFI Headquarters<br>350 Ignacio Blvd., Suites 100 (formerly 1A) , 101, 103, 107, 200 (formerly 2C, 203), 201, 202 (formerly 200), 300 (formerly 3A)<br>Novato | APN: 160-211-37, 160-211-34, B10-000-02, 160-211-35, 160-211-36, 160-211-41, B16-008-58, 160-211-42, 160-211-31 |
| The Keys Center<br>353 Bel Marin Keys Boulevard<br>359 Bel Marin Keys Boulevard<br>Novato | APN: 157-400-64 |
| Sequoia Business Center<br>1425 North McDowell<br>Petaluma | APN: 047-360-022-000 |
| The Redwoods<br>1341, 1343, 1345, 1347, 1349, 1351, 1353, 1355, 1357, and1359 Redwood Way<br>Petaluma | APN: 137-160-001, 137-160-002, 137-160-003, 137-160-004, 137-160-005, 137-160-006, 137-160-007, 137-160-008, 137-160-009, 137-160-010 |

100621<br>73ZL-319169

| Property Name(s)/Associated Address(es) | APN |
|---|---|
| Duffy Place<br>21, 23, 25, 27, 29, 31, 33, 35, and 37 Duffy Place<br>607 and 615 Irwin Street<br>San Rafael | APN: 013-031-12 and<br>013-031-22 |
| Urban Business Center/ Las Gallinas Business<br>Center<br>117, 119, and 121 Paul Drive<br>San Rafael | APN: 155-131-25 |
| Northgate Professional Center<br>899 Northgate Dr<br>San Rafael | APN: 175-360-13 |
| Northgate Heights Business Center<br>1050 Northgate Dr.<br>San Rafael | APN: 178-240-20 |
| San Pedro Business Center<br>30 North San Pedro Rd<br>San Rafael | APN: 179-301-29 |
| The Northgate Business Center<br>555 Northgate Drive<br>San Rafael | APN: 175-060-32 and<br>B17-006-86 |
| Gateway Business Center<br>851 Irwin Street<br>San Rafael | APN: 014-125-15 |
| Creekside<br>7 Mount Lassen Drive<br>San Rafael | APN: 164-481-10 |
| Mariners Landing / Gate Five<br>200 Gate Five Road<br>Sausalito | APN: 063-152-08 |
| Broadway Square<br>10 Maple St & 635, 645, and 651 Broadway<br>Sonoma | APN: 018-301-009, and<br>018-301-010 |
| The Broadway<br>1151, 1161, 1163, 1165, and 1167 Broadway<br>Sonoma | APN: 128-181-028-000<br>and<br>128-181-029-000 |

**Multi-Family Properties:**

| Property Name(s)/Associated Address(es) | APN |
|---|---|
| Sycamore Creek Apartments<br>100 Sycamore Avenue<br>San Anselmo | APN: 006-083-38 |

SMRH:4831-2908-9604<br>100621
73ZL-319169

| Property Name(s)/Associated Address(es) | APN |
|---|---|
| Lincoln Villa<br>1825 Lincoln Avenue<br>San Rafael | APN: 011-041-29 |
| Glenwood Apartments<br>1222 Irwin Street<br>San Rafael | APN: 014-013-03 |
| Northgate Apartments<br>825 Las Gallinas Avenue<br>San Rafael | APN: 175-021-21 |
| Brookside Apartments<br>515/517 B Street<br>San Rafael | APN: 012-157-23 |
| Prospect Ridge<br>419 Prospect Drive<br>San Rafael | APN: 011-023-15 |
| Woodland Apartments<br>390, 392, 394, 396, 398, 400, 404, and 406 Woodland Avenue<br>San Rafael | APN: 013-061-28 |
| Woodland Apartments<br>285 Woodland Avenue<br>San Rafael | APN: 013-101-02 |
| The Heights<br>109 Professional Center Parkway<br>San Rafael | APN: 155-073-05 |
| Rafael Gardens<br>1315 Lincoln Avenue<br>San Rafael | APN: 011-183-09 |
| Oak Hill Apartments<br>216 Marin Street<br>San Rafael | APN: 012-151-33 and 012-151-35 |
| Merrydale View Apartments<br>7 Merrydale Road<br>San Rafael | APN: 179-222-15 |
| Marin Heights Apartment Homes<br>19 Merrydale Road<br>San Rafael | APN: 179-222-17 |
| 1 Hammondale Court<br>1, 5, 7, and 9 Hammondale Court<br>San Rafael | APN: 011-041-07 and 011-041-08 |
| Albion Terrace Apartments<br>225 Nova Albion Way<br>San Rafael | APN: 175-021-11 |
| 107 Marin Street | APN: 012-172-11 |

| Property Name(s)/Associated Address(es) | APN |
|---|---|
| 107 Marin Street<br>San Rafael | |
| Parc Marin<br>1441 Casa Buena Drive<br>Corte Madera | APN: 033-011-56 |
| Pacheco Villa<br>1, 3, 5, 7, 17, 19, 21, 23, 30, 33, 34, 35, 37, 38, 39, and 42 Clay Court<br>Novato | APN: 160-581-09, 160-581-12, 160-581-14, and 160-581-16 |
| Ignacio Lane Apartments<br>49/59 Ignacio Lane<br>Novato | APN: 160-201-22 |
| Ignacio Place<br>335 Enfrente Road<br>Novato | 160-470-01, 160-470-02, 160-470-03, 160-470-04, 160-470-05, 160-470-06, 160-470-07, 160-470-08, 160-470-09, 160-470-10, 160-470-11, 160-470-12, 160-470-13, 160-470-14, 160-470-15, 160-470-16, 160-470-17, 160-470-18, 160-470-19, 160-470-20, 160-470-21, 160-470-22, 160-470-23, 160-470-24, 160-470-25, 160-470-26, 160-470-27, 160-470-28, 160-470-29, 160-470-30, 160-470-31, 160-470-32, 160-470-33, 160-470-34, 160-470-35, 160-470-36, 160-470-37, 160-470-38, 160-470-39, 160-470-40 |
| Ignacio Gardens Apartments<br>380, 390, 400, 410, 430, 440, and 450 Alameda del Prado<br>Novato | APN:160-281-01 and 160-281-03 |
| Ignacio Hills Tennis & Garden Apartments<br>401 Ignacio Boulevard and<br>521 Alameda del Prado<br>Novato | APN: 160-611-07 and 160-611-09 |
| Ignacio Hills Tennis & Garden Apartments<br>445 Ignacio Boulevard<br>Novato | APN: 160-611-05 |
| Ignacio Hills Tennis & Garden Apartments | APN: 160-611-04 |

100621
73ZL-319169

| Property Name(s)/Associated Address(es) | APN |
|---|---|
| 461 Ignacio Boulevard<br>Novato | |
| Ignacio Hills Tennis & Garden Apartments<br>475 Ignacio Boulevard<br>Novato | APN: 160-611-03 |
| Ignacio Hills Tennis & Garden Apartments<br>481 Ignacio Boulevard<br>Novato | APN: 160-611-02 |
| Ignacio Hills Tennis & Garden Apartments<br>501 Alameda del Prado<br>Novato | APN: 160-611-11 |
| Ignacio Hills Tennis & Garden Apartments<br>511-531 Alameda del Prado<br>Novato | APN: 160-611-08 and 160-611-10 |
| Ignacio Hills Tennis & Garden Apartments<br>551 Alameda del Prado<br>Novato | APN: 160-611-12 |
| Country Club Apartments<br>980 Ignacio Boulevard<br>Novato | APN: 160-421-09 |
| Fairway Apartments<br>1000 Ignacio Boulevard<br>Novato | APN: 160-040-19, 160-040-20 and 160-150-28 |
| 3rd Street Apartments<br>1129 3rd Street<br>Novato | APN: 141-241-22 |
| Novato Court<br>1506 Vallejo Avenue<br>Novato | APN: 141-221-60 |
| Sonoma Mission Apartments<br>120 Orchard Avenue;<br>18157, 18159, 18161, 18163, 18165, 18167, 18169, 18171, 18175, 18177, 18179, 18181, 18183, 18185, 18187, 18189, 18191, 18193, 18195, 18197, 18199, 18201, 18203, 18205, 18209, 18211, 18213, 18215, 18217, 18219, 18221, 18223, 18225, 18227, 18229, 18231, 18233, 18235, 18237, 18239, 18241 Happy Lane, Sonoma | APN:    056-395-013-000 and 056-433-014-000 |
| Village Green<br>350 Robinson Street<br>Sonoma | APN: 018-241-043-000 |
| Redwood Manor Apartments<br>355 Boyes Boulevard | APN: 052-191-004-000 |

100621   73ZL-319169

| Property Name(s)/Associated Address(es) | APN |
|---|---|
| Sonoma | |
| Broadway Apartments<br>885 Broadway<br>Sonoma | APN: 018-411-011-000 |
| Madrone Apartments<br>15411, 15413, 15415, 15417, 15419, 15421, 15423, 15425, 15427, 15429, 15431, 15432, 15435, 15437, 15439, 15441, 15443, 15445, 15447, 15449, 15451, 15453, 15455, 15457, 15459, 15461, 15467, 15469, 15471, 15473, 15475, 15479, 15481, 15483, 15485, 15487, 15489, 15491, 15493, 15495, 15497, and 15499 Marty Drive<br>Glen Ellen | APN:    054-394-004-000 and 054-394-005-000 |
| Oaktree Apartments<br>16914 Sonoma Highway/16914 Highway 12<br>Sonoma | APN: 056-081-059-000 |

**EXHIBIT B**

# Schedule of Pre-Petition Agreements

*Contracts and Agreements listed below may be assumed and assigned, however the list is subject to future revision.*

| ENTITY TYPE | PROPERTY | ADDRESS | CONTRACT OR LEASE PURPOSE | NATURE OF THE DEBTOR'S INTEREST | EXECUTION DATE | EXPIRATION DATE | COUNTERPARTY NAME | ADDRESS | UNIT # | CITY | STATE | ZIP | CURE AMOUNT | SECURITY DEPOSIT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Tenant Lease | Lessor | 5/1/2016 | 7/31/2022 | "Norton Fine Art Handling/Vincent Zuardo | 615 Duffy Place | 23B | San Rafael | CA | 94901 | 0 | 7000 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Tenant Lease | Lessor | 8/1/2019 | 7/31/2024 | 200 Woodland, LLC | 615 Duffy Place | 22, 615 | San Rafael | CA | 94901 | 0 | 6500 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Tenant Lease | Lessor | 3/1/2013 | 7/31/2023 | Anthony Caprio / Precision Body Shop & Detail | 615 Duffy Place | 33 | San Rafael | CA | 94901 | 0 | 5988 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Tenant Lease | Lessor | 1/1/2013 | 7/31/2023 | Isaac Khelil / A. Tsesarsky / Acura | 615 Duffy Place | 21, 23A | San Rafael | CA | 94901 | 0 | 10378 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Tenant Lease | Lessor | 5/1/2013 | 4/30/2024 | Lawrence Levslik / Lawrence Automotive | 615 Duffy Place | 25A | San Rafael | CA | 94901 | 0 | 2430 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Tenant Lease | Lessor | 1/1/2015 | 12/31/2024 | North Bay Lighting and Electrical Supply, Inc. | 615 Duffy Place | 607 | San Rafael | CA | 94901 | 0 | 4624 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Tenant Lease | Lessor | 7/1/2015 | 6/30/2024 | Thomas Fetherston / Custom Furniture Design Studios | 615 Duffy Place | 31 | San Rafael | CA | 94901 | 0 | 8136 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Tenant Lease | Lessor | 10/1/2018 | 1/31/2022 | "Double Soo & Rachael Staub/Project Squeeble LLC | 200 Gate 5 Road | 110 | Sausalito | CA | 94965 | 0 | 2400 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Tenant Lease | Lessor | 8/1/2019 | 7/31/2021 | "SinglePoint Design Build | 200 Gate 5 Road | 109 | Sausalito | CA | 94965 | 0 | 2600 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Tenant Lease | Lessor | 5/5/2017 | 4/30/2022 | Anthono Brinton / Brinton Design | 200 Gate 5 Road | 204 | Sausalito | CA | 94965 | 0 | 1131 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Tenant Lease | Lessor | 10/1/2018 | 9/30/2023 | Barb Siskin / Far Western Anthropological Research Group, Inc. | 200 Gate 5 Road | 102 | Sausalito | CA | 94965 | 0 | 5020 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Tenant Lease | Lessor | 7/1/2019 | 1/31/2022 | Cereal Number LLC | 200 Gate 5 Road | 112 | Sausalito | CA | 94965 | 0 | 3600 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Tenant Lease | Lessor | 7/1/2020 | 6/30/2025 | Professional Financial Investors | 200 Gate 5 Road | 210 | Sausalito | CA | 94965 | 0 | 0 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Tenant Lease | Lessor | 10/1/2016 | 11/30/2021 | Tera & Alfredo Anacona / Cibo of Sausalito | 200 Gate 5 Road | 105 | Sausalito | CA | 94965 | 0 | 5500 |
| PFI | 117 | 117-119-121 Paul Drive, San Rafael, CA | Tenant Lease | Lessor | 1/1/2018 | 12/31/2021 | "Anna Alexandra Parhomenko / Mobile Kanaroo | 117-119-121 Paul Drive | 121C | San Rafael | CA | 94903 | 0 | 1010 |
| PFI | 117 | 117-119-121 Paul Drive, San Rafael, CA | Tenant Lease | Lessor | 10/29/2013 | 6/30/2021 | Gateway Learning Group, Inc. | 117-119-121 Paul Drive | 121B | San Rafael | CA | 94903 | 0 | 1225 |
| PFI | 117 | 117-119-121 Paul Drive, San Rafael, CA | Tenant Lease | Lessor | 1/7/1998 | 10/31/2023 | West Coast Reporters, Inc. | 117-119-121 Paul Drive | 117A, 119B, 119C | San Rafael | CA | 94903 | 0 | 3331 |
| PFI | 117 | 117-119-121 Paul Drive, San Rafael, CA | Tenant Lease | Lessor | 2/1/2020 | 1/31/2023 | Whitehall-Parker Securities, Inc. | 117-119-121 Paul Drive | 117B | San Rafael | CA | 94903 | 0 | 3500 |
| PFI | 117 | 117-119-121 Paul Drive, San Rafael, CA | Tenant Lease | Lessor | 12/15/2012 | 12/31/2021 | Right at Home - Homecare Marin, LLC | 117-119-121 Paul Drive | 121A-2 | San Rafael | CA | 94903 | 0 | 1190 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, CA | Tenant Lease | Lessor | 7/26/2019 | 7/31/2021 | Adobe Creek Brewing Company, LLC | 353-359 Bel Marin Keys Boulevard | 359-10 | Novato | CA | 94949 | 0 | 500 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, CA | Tenant Lease | Lessor | 4/1/2019 | 3/31/2023 | Brenda Audrey Lindstrom | 353-359 Bel Marin Keys Boulevard | 359-10 | Novato | CA | 94949 | 0 | 1800 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, CA | Tenant Lease | Lessor | 4/1/2019 | 3/31/2023 | Christopher's Construction, Inc. | 353-359 Bel Marin Keys Boulevard | 359-14 | Novato | CA | 94949 | 0 | 2100 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, CA | Tenant Lease | Lessor | 11/15/2015 | 5/31/2021 | David Clark / Clark Solutions | 353-359 Bel Marin Keys Boulevard | 353-09 | Novato | CA | 94949 | 0 | 900 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, CA | Tenant Lease | Lessor | 3/8/2020 | 3/31/2025 | Elizabeth Gracefo | 353-359 Bel Marin Keys Boulevard | 353-06 | Novato | CA | 94949 | 0 | 1800 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, CA | Tenant Lease | Lessor | 9/1/2018 | 8/31/2021 | Horiba Instruments Inc. | 353-359 Bel Marin Keys Boulevard | 359-18 | Novato | CA | 94949 | 0 | 1300 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, CA | Tenant Lease | Lessor | 6/1/2016 | 6/7/2022 | Lynne Frymoyer / Convention & Exposition Services | 353-359 Bel Marin Keys Boulevard | 359-05 | Novato | CA | 94949 | 0 | 2000 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, CA | Tenant Lease | Lessor | 6/1/2020 | 5/31/2021 | Simmonds & Associates, Inc | 353-359 Bel Marin Keys Boulevard | 359-03 | Novato | CA | 94949 | 0 | 1000 |
| PFI | 885 | 1315 Lincoln Avenue, San Rafael, CA | Tenant Lease | Lessor | 5/9/2020 | 1/7/2021 | Kevin Watson | 885 Bracket | 06 | Novato | CA | 94949 | 0 | 1595 |
| PFI | 1315 | 1315 Lincoln Avenue, San Rafael, CA | Tenant Lease | Lessor | 7/1/2020 | 6/30/2021 | "Denise Tierney | 1315 Lincoln Ave | 03 | San Rafael | CA | 94901 | 0 | 2195 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Tenant Lease | Lessor | 8/1/2017 | 7/31/2021 | "International Leisure Travel, Inc. (ILT) | 7200 Redwood Boulevard | 301 | Novato | CA | 94945 | 0 | 2300 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Tenant Lease | Lessor | 11/1/2019 | 10/31/2024 | "Luzzi, Murphy, Solomon , Churton & Hale LLP | 7200 Redwood Boulevard | 300 | Novato | CA | 94945 | 0 | 3471 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Tenant Lease | Lessor | 8/1/2017 | 7/31/2021 | Ghirardo, CPA | 7200 Redwood Boulevard | 312, 403, 404, STE | Novato | CA | 94945 | 0 | 15901 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Tenant Lease | Lessor | 12/1/2017 | 11/30/2022 | Jon Newton | 7200 Redwood Boulevard | 402 | Novato | CA | 94945 | 0 | 3936 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Tenant Lease | Lessor | 4/23/2020 | 5/31/2021 | Martz Accountancy Corporation | 325, STORAGE | Novato | CA | 94945 | 0 | 5700 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Tenant Lease | Lessor | 8/24/2007 | 9/30/2021 | Oberkamper & Assoc. | 7200 Redwood Boulevard | 308 | Novato | CA | 94945 | 0 | 11342 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Tenant Lease | Lessor | 8/31/2020 | 8/31/2021 | Sprint PCS Cell site | 7200 Redwood Boulevard | ROOF | Novato | CA | 94945 | 0 | 0 |
| PFI | 16914 | 16914 Sonoma Highway, Sonoma, CA | Tenant Lease | Lessor | 7/10/2020 | 7/31/2021 | Elisa Miramontes | 16914 Sonoma Hwy | 11 | Sonoma | CA | 95476 | 0 | 1895 |
| PFI | merv | 7 Merrydale Road, San Rafael, CA | Tenant Lease | Lessor | 5/14/2020 | 5/31/2021 | - Ralph Jon Leanhardt | 7 Merrydale Ave | 08 | San Rafael | CA | 94903 | 0 | 2200 |
| LLC | 20 | 511 & 531 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 7/1/2020 | 6/30/2021 | - Allison / Grandon | 511 & 531 Alameda Del Prado | 117 | Novato | CA | 94949 | 0 | 2495 |
| LLC | 20 | 511 & 531 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 7/21/2020 | 7/31/2021 | Clarence Timmons | 511 & 531 Alameda Del Prado | 217 | Novato | CA | 94949 | 0 | 2375 |
| LLC | 20 | 511 & 531 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 7/1/2020 | 6/30/2021 | Mazda Rodas | 511 & 531 Alameda Del Prado | 119 | Novato | CA | 94949 | 0 | 2495 |
| LLC | 20 | 511 & 531 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 7/10/2020 | 6/30/2021 | -Ronald -Bradburn | 511 & 531 Alameda Del Prado | 332 | Novato | CA | 94949 | 0 | 2375 |
| LLC | 20 | 511 & 531 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 7/15/2020 | 7/31/2021 | Victor De Leon | 511 & 531 Alameda Del Prado | 331 | Novato | CA | 94949 | 0 | 2695 |
| LLC | 21 | nacio Blvd. & 521 Alameda Del Prado, Nova | Tenant Lease | Lessor | 7/16/2020 | 7/31/2021 | Nevin Gramajo | 401 Ignacio Blvd | 325 | Novato | CA | 94949 | 0 | 2695 |
| LLC | 21 | nacio Blvd. & 521 Alameda Del Prado, Nova | Tenant Lease | Lessor | 10/23/2020 | 10/31/2021 | -Paul -Weber | 401 Ignacio Blvd | 321 | Novato | CA | 94949 | 0 | 2175 |
| LLC | 22 | 120 Orchard Ave., Sonoma, CA | Tenant Lease | Lessor | 8/12/2020 | 8/31/2021 | -Breanna Singletary | 120 Orchard Ave | 185 | Sonoma | CA | 95476 | 0 | 1995 |
| LLC | 22 | 120 Orchard Ave., Sonoma, CA | Tenant Lease | Lessor | 6/10/2020 | 5/31/2021 | Dario Montoya | 120 Orchard Ave | 223 | Sonoma | CA | 95476 | 0 | 2095 |
| LLC | 22 | 120 Orchard Ave., Sonoma, CA | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | -Esmorie Ramos | 120 Orchard Ave | 199 | Sonoma | CA | 95476 | 0 | 2195 |
| LLC | 22 | 120 Orchard Ave., Sonoma, CA | Tenant Lease | Lessor | 10/1/2020 | 9/30/2021 | Norma Pena | 120 Orchard Ave | 163 | Sonoma | CA | 95476 | 0 | 2250 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 8/15/2020 | 6/30/2021 | -William Wilson | 1701 Novato Blvd. | 305 | Novato | CA | 94947 | 0 | 1995 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 8/1/2015 | 12/31/2022 | "Ketron Financial, LLC / Russ Ketron | 1701 Novato Blvd. | 304 | Novato | CA | 94947 | 0 | 818 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 1/1/2014 | 12/31/2021 | Alders Financial Solutions / Louis Bahnsale | 1701 Novato Blvd. | 304 | Novato | CA | 94947 | 0 | 4104 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 8/1/2013 | 9/30/2021 | Catalyst Systems, LLC / Holfs DeGroot | 1701 Novato Blvd. | 205 | Novato | CA | 94947 | 0 | 4822 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 2/1/2016 | 1/31/2022 | Fidelis National Title Company | 1701 Novato Blvd. | 207 | Novato | CA | 94947 | 0 | 5000 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 9/1/2014 | 8/31/2021 | John Jaeger | 1701 Novato Blvd. | 201 | Novato | CA | 94947 | 0 | 1419 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 1/1/2010 | 12/31/2022 | Louie R. Linchayseng, DMD | 1701 Novato Blvd. | 108 | Novato | CA | 94947 | 0 | 3560 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 11/1/2012 | 10/31/2022 | Melissa Bradley Real Estate - Unit 300M | 1701 Novato Blvd. | 300M | Novato | CA | 94947 | 0 | 6857 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 3/1/2010 | 2/28/2022 | Neal Patel, D.D.S. | 1701 Novato Blvd. | 305 | Novato | CA | 94947 | 0 | 4974 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | Roberto Renteria | 1701 Novato Blvd. | 202 | Novato | CA | 94947 | 0 | 3192 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 3/1/2017 | 2/28/2022 | "Victoria Herzog | 1682 Novato Blvd. | 250A | Novato | CA | 94947 | 0 | 588 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 11/1/2019 | 9/30/2021 | Adder Corporation | 1682 Novato Blvd. | 203 | Novato | CA | 94947 | 0 | 1450 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 5/1/2018 | 4/30/2023 | Arthur Gallagher / Ms. Valerie Ellis, Coporate RE Coordinator DNJ Property Management / Common Interest Management Services (CIMS) | 1682 Novato Blvd. | 350 | Novato | CA | 94947 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 8/1/2018 | 7/31/2021 | Banatao Family | 1682 Novato Blvd. | 250 | Novato | CA | 94947 | 0 | 4000 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 3/1/2008 | 12/31/2021 | Robert Brook | 1682 Novato Blvd. | | Novato | CA | | 0 | 5729 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Tenant Lease | Lessor | 2/1/2015 | 1/31/2022 | Miller Robertson Insurance Services | 1682 Novato Blvd. | 300 | Novato | CA | 94947 | 0 | 481 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 10/15/2011 | 11/30/2021 | Morre & Alexander - Robert Alexander | 7 Mt. Lassen Drive | 200 | San Rafael | CA | 94903 | 0 | 5550 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 10/1/2019 | 9/30/2021 | "Joshua Archer | 7 Mt. Lassen Drive | C-122 | San Rafael | CA | 94903 | 0 | 700 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 8/1/2013 | 9/30/2021 | "Levi Studio C / Darren M Reynolds | 7 Mt. Lassen Drive | B-156 | San Rafael | CA | 94903 | 0 | 700 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 7/1/2019 | 6/30/2023 | "NIKSI Investments | 7 Mt. Lassen Drive | E-252 | San Rafael | CA | 94903 | 0 | 1700 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 6/8/2019 | 6/30/2021 | "Ryan Dempsey / Marines Community Acupuncture | 7 Mt. Lassen Drive | B-136 | San Rafael | CA | 94903 | 0 | 2100 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2004 | 2/28/2022 | Cars Giadano, CPA / Giadano & Associates | 7 Mt. Lassen Drive | C-208 | San Rafael | CA | 94903 | 0 | 2100 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 10/1/2007 | 11/30/2021 | Celtic Capital Corp / Bron Hafner | 7 Mt. Lassen Drive | C-104 | San Rafael | CA | 94903 | 0 | 1107 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2017 | 10/31/2022 | Cloverfdt / Tim Clover | 7 Mt. Lassen Drive | C-118 | San Rafael | CA | 94903 | 0 | 396 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 7/15/2010 | 6/30/2021 | Darius Anzadziewan / DAZ Associates | 7 Mt. Lassen Drive | A-210 | San Rafael | CA | 94903 | 0 | 917 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 9/1/2018 | 8/31/2021 | Dr. Craiss Isaacs | 7 Mt. Lassen Drive | A-134 | San Rafael | CA | 94903 | 0 | 1400 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 11/15/2008 | 11/30/2021 | Elpida Residential Programs | 7 Mt. Lassen Drive | C-258 | San Rafael | CA | 94903 | 0 | 2400 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 5/19/2017 | 2/28/2022 | Gabriel Hansford / Deep in the Heart of Taxes | 7 Mt. Lassen Drive | D-126 | San Rafael | CA | 94903 | 0 | 700 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 6/15/2019 | 6/30/2021 | Healthy Building Science, Inc. | 7 Mt. Lassen Drive | D-136 | San Rafael | CA | 94903 | 0 | 500 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 10/1/2012 | 3/31/2022 | John D'Andrea / Realty Solutions | 7 Mt. Lassen Drive | D-260 | San Rafael | CA | 94903 | 0 | 1400 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2020 | 5/31/2021 | Kathleen Cheek | 7 Mt. Lassen Drive | C-125 | San Rafael | CA | 94903 | 0 | 449 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 9/1/2019 | 9/30/2021 | LeraEm | 7 Mt. Lassen Drive | C-202 | San Rafael | CA | 94903 | 0 | 5500 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 10/1/2020 | 8/31/2021 | Lucas Valley Hme Owners Assoc. | 7 Mt. Lassen Drive | B-150 | San Rafael | CA | 94903 | 0 | 550 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 2/1/2014 | 5/31/2021 | Paulo & Dino Morani | 7 Mt. Lassen Drive | B-158 | San Rafael | CA | 94903 | 0 | 2200 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 7/5/2019 | 10/31/2021 | Robert Richards | 7 Mt. Lassen Drive | B-138 | San Rafael | CA | 94903 | 0 | 563 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 5/1/2011 | 10/31/2021 | Ryan Cassidy / Pauls Grease | 7 Mt. Lassen Drive | C-152 | San Rafael | CA | 94903 | 0 | 944 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 9/1/2012 | 8/31/2021 | Sara Pacific, Inc. / Michael Austin | 7 Mt. Lassen Drive | B-206 | San Rafael | CA | 94903 | 0 | 1400 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 3/1/2019 | 9/30/2021 | Susan Townsend | 7 Mt. Lassen Drive | C-126 | San Rafael | CA | 94903 | 0 | 700 |
| LLC | 26 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2004 | 2/28/2022 | Tina and David Pfell | 7 Mt. Lassen Drive | B-154 | San Rafael | CA | 94903 | 0 | 900 |
| LLC | 26 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 12/1/2018 | 11/30/2021 | William & Ronnie Feldman - D134 | 7 Mt. Lassen Drive | D-134 | San Rafael | CA | 94903 | 0 | 450 |
| LLC | 26 | 7 Mt. Lassen Drive, San Rafael, CA | Tenant Lease | Lessor | 3/1/2016 | 10/31/2021 | William Feldman | 7 Mt. Lassen Drive | D-130 | San Rafael | CA | 94903 | 0 | 525 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 4/1/2018 | 3/31/2022 | William Feldman - D-124 | 7 Mt. Lassen Drive | D-124 | San Rafael | CA | 94903 | 0 | 500 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 3/1/2005 | 2/28/2022 | "Ellen S Krantz | 100 Tamal Vista | 120 | Corte Madera | CA | 94925 | 0 | 1200 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 3/1/2013 | 5/31/2021 | "West Coast Retina | 100 Tamal Vista | 112 | Corte Madera | CA | 94925 | 0 | 3247 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 6/1/2016 | 5/31/2026 | Dr. Branko Smeds | 100 Tamal Vista | 250 | Corte Madera | CA | 94925 | 0 | 25838 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 8/23/2010 | 6/30/2023 | Eve Center of Northern California | 100 Tamal Vista | 125 | Corte Madera | CA | 94925 | 0 | 4800 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 2/1/2017 | 6/30/2024 | Fit Center Realty, LLC | 100 Tamal Vista | 108 | Corte Madera | CA | 94925 | 0 | 7500 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 1/1/2019 | 12/31/2021 | Geralyn Brostrom, Ph. D. | 100 Tamal Vista | 205 | Corte Madera | CA | 94925 | 0 | 1000 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 11/1/2019 | 1/31/2022 | Keri Kropp | 100 Tamal Vista | 114 | Corte Madera | CA | 94925 | 0 | 0 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 6/1/2015 | 9/30/2021 | "Rick Scarpello | 100 Tamal Vista | 104 | Corte Madera | CA | 94925 | 0 | 1600 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 12/1/2018 | 11/30/2022 | Angie Cheung | 100 Tamal Vista | 103 | Corte Madera | CA | 94925 | 0 | 4174 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 7/1/2016 | 6/30/2022 | Daniel MacDonald AIA Architects, Inc | 100 Tamal Vista | 160 | Corte Madera | CA | 94925 | 0 | 1500 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 2/1/2020 | 1/31/2023 | Dr. Branko Smeds | 100 Tamal Vista | 240 | Corte Madera | CA | 94925 | 0 | 7500 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 8/1/2019 | 10/31/2022 | Heide Nielsen | 100 Tamal Vista | 107 | Corte Madera | CA | 94925 | 0 | 3100 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 12/1/2015 | 11/30/2021 | Images of Style / Patricia Ladd | 100 Tamal Vista | 220 | Corte Madera | CA | 94925 | 0 | 1400 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 10/1/2019 | 9/30/2022 | Mary Kay Studio /Patsy Frech | 100 Tamal Vista | 115 | Corte Madera | CA | 94925 | 0 | 1300 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 4/1/2020 | 3/31/2023 | Patricia Haney | 100 Tamal Vista | 230 | Corte Madera | CA | 94925 | 0 | 0 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 2/1/2005 | 9/30/2021 | "Paul Hoffman | 100 Tamal Vista | 200 | Corte Madera | CA | 94925 | 0 | 6500 |
| LLC | 27 | 1151 Broadway, Sonoma, CA | Tenant Lease | Lessor | 8/1/2020 | 7/31/2021 | Transcendence Theater Co. | 1151 Broadway | 203 | Sonoma | CA | 95476 | 0 | 0 |
| LLC | 27 | 1151 Broadway, Sonoma, CA | Tenant Lease | Lessor | 6/15/2019 | 6/30/2021 | "Vickey Rohrer | PO Box 14481 | | Santa Rosa | CA | 95402 | 0 | 1300 |
| LLC | 27 | 1151 Broadway, Sonoma, CA | Tenant Lease | Lessor | 1/1/2020 | 12/31/2022 | Anova | 1151 Broadway | 100 | Sonoma | CA | 95476 | 0 | 2500 |
| LLC | 27 | 1151 Broadway, Sonoma, CA | Tenant Lease | Lessor | 10/1/2019 | 9/30/2022 | Carol E. Mikel, Ph. D. | PO Box 14481 | | Santa Rosa | CA | 95402 | 0 | 900 |
| LLC | 27 | 1151 Broadway, Sonoma, CA | Tenant Lease | Lessor | 9/1/2019 | 8/31/2021 | Lin Haley | PO Box 14481 | | Santa Rosa | CA | 95402 | 0 | 1000 |
| LLC | 27 | 1151 Broadway, Sonoma, CA | Tenant Lease | Lessor | 6/15/2019 | 7/31/2021 | Transcendence Theater Co. K201 | 1151 Broadway | 201 | Sonoma | CA | 95476 | 0 | 0 |
| LLC | 31 | 1341-1353 Redwood Hwy, Petaluma, CA | Tenant Lease | Lessor | 6/1/2019 | 5/31/2024 | "Clark J. Medoff, Ph. D. | 1341-1353 Redwood Way | 128 | Petaluma | CA | 94954 | 0 | 1450 |
| LLC | 31 | 1341-1353 Redwood Hwy, Petaluma, CA | Tenant Lease | Lessor | 11/13/2020 | 10/31/2021 | Deepti Vellila | 1341-1353 Redwood Way | 135 | Petaluma | CA | 94954 | 0 | 2500 |
| LLC | 31 | 1341-1353 Redwood Hwy, Petaluma, CA | Tenant Lease | Lessor | 12/1/2017 | 12/31/2021 | "NDF International Inc. | 1341-1353 Redwood Way | 213 | Petaluma | CA | 94954 | 0 | 7900 |
| LLC | 31 | 1341-1353 Redwood Hwy, Petaluma, CA | Tenant Lease | Lessor | 5/1/2020 | 4/30/2021 | Pacific Coast Trane | 1341-1353 Redwood Way | 223 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 31 | 1341-1353 Redwood Hwy, Petaluma, CA | Tenant Lease | Lessor | 6/1/2018 | 5/31/2021 | "Zero Breast Cancer | 1341-1353 Redwood Way | 1001B | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 31 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 3/1/2012 | 2/28/2021 | "Golden Gate Surgery / California General Surgery | 30 North San Pedro | 170 | San Rafael | CA | 94903 | 0 | 13733 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 9/1/2012 | 8/31/2021 | "Marin County Federal Credit Union | 30 North San Pedro | 115 | San Rafael | CA | 94903 | 0 | 6000 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 7/1/2016 | 12/31/2021 | National Home Health Svces, Inc. | 30 North San Pedro | 250 | San Rafael | CA | 94903 | 0 | 4500 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 4/1/2019 | 3/31/2024 | "Wellspring Psychotherapy Services, LLC | 30 North San Pedro | 140 | San Rafael | CA | 94903 | 0 | 1400 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 6/1/2019 | 5/31/2024 | "Zero Breast Cancer | 30 North San Pedro | 200 | San Rafael | CA | 94903 | 0 | 2350 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 4/1/2020 | 3/31/2023 | County of Marin - Health and Human Services | 30 North San Pedro | 225 | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 1/1/2019 | 12/31/2021 | Lynne Martin, Carol Normandi, Sabine Haake & Michaelene Fleming | 30 North San Pedro | 110 | San Rafael | CA | 94903 | 0 | 1900 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 7/1/2019 | 6/30/2021 | Marin Agel Institute | 30 North San Pedro | 120 | San Rafael | CA | 94903 | 0 | 1500 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 1/1/2016 | 12/31/2021 | The Ritter House | 30 North San Pedro | 100 | San Rafael | CA | 94903 | 0 | 700 |
| LLC | 33 | 30 North San Pedro, San Rafael, CA | Tenant Lease | Lessor | 11/1/2016 | 9/30/2021 | YYMCA | 30 North San Pedro | 210 | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 32 | 555 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 2/1/2020 | 1/31/2022 | Community Action Marin | 555 Northgate Drive | 101, 105B | San Rafael | CA | 94903 | 0 | 6200 |
| LLC | 32 | 555 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 8/1/2008 | 6/30/2022 | Marin Child Care Council | 555 Northgate Drive | 104 | San Rafael | CA | 94903 | 0 | 2800 |
| LLC | 32 | 555 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 6/30/2017 | 6/30/2022 | Edward D. Jones & Co., L.P. | 555 Northgate Drive | 200 | San Rafael | CA | 94903 | 0 | 4150 |
| LLC | 34 | 335 Enfrente Road, Novato, CA | Tenant Lease | Lessor | 7/1/2020 | 6/30/2023 | "Pamela Simmons, LMFT / Synergy Counseling | 335 Enfrente Road | 220 | Novato | CA | 94949 | 0 | 0 |
| LLC | 34 | 335 Enfrente Road, Novato, CA | Tenant Lease | Lessor | 8/1/2013 | 9/30/2021 | Sharon Carter MGRs | 335 Enfrente Road | 210 | Novato | CA | 94949 | 0 | 1000 |
| LLC | 34 | 335 Enfrente Road, Novato, CA | Tenant Lease | Lessor | 10/1/2019 | 3/31/2022 | Susan Montali | 335 Enfrente Road | 175 | Novato | CA | 94949 | 0 | 1000 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 1/1/2019 | 12/31/2021 | "Dr. Elizabeth Hoffenberg | 851 Irwin Street | 200F | San Rafael | CA | 94901 | 0 | 1000 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 10/1/2020 | 9/30/2021 | "Jennifer Leland | 851 Irwin Street | 200B | San Rafael | CA | 94901 | 0 | 0 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 7/1/2013 | 6/30/2021 | "Renaix Properties & Company | 851 Irwin Street | 200G | San Rafael | CA | 94901 | 0 | 1400 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 2/1/2017 | 1/31/2022 | "Callahan Financial | 851 Irwin Street | 200C | San Rafael | CA | 94901 | 0 | 1675 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 7/1/2016 | 6/30/2021 | "Ukiah Dragon & Company, LLP | 851 Irwin Street | 200D | San Rafael | CA | 94901 | 0 | 1400 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 1/1/2020 | 12/31/2022 | "David Finklestein | 851 Irwin Street | 200A | San Rafael | CA | 94901 | 0 | 0 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 8/1/2016 | 9/30/2021 | Catherine Condon / Marin Pediatric Dentistry | 851 Irwin Street | 100 | San Rafael | CA | 94901 | 0 | 2000 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 7/1/2014 | 6/30/2021 | Christopher Ferreira | 851 Irwin Street | 200E | San Rafael | CA | 94901 | 0 | 1000 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 3/15/2019 | 4/30/2022 | Darlene Maynard | 851 Irwin Street | 200H | San Rafael | CA | 94901 | 0 | 1290 |
| LLC | 35 | 851 Irwin Street, San Rafael, CA | Tenant Lease | Lessor | 9/1/2019 | 8/31/2021 | Tom Rains | 851 Irwin Street | 201 | San Rafael | CA | 94901 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 3/1/2020 | 2/28/2025 | Vantreo Insurance Brokerage | 125 North McDowell Boulevard | 100 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 4/1/2016 | 3/31/2024 | Bank of Marin | 125 North McDowell Boulevard | 101 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 1/1/2010 | 12/31/2021 | Aerotek, Inc. (Allegis Group) | 125 North McDowell Boulevard | 200 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 8/1/2020 | 7/31/2023 | Comprehensive Educational Services | 125 North McDowell Boulevard | 205 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 11/1/2017 | 10/31/2022 | Edward D. Jones & Co., L.P's Missouri Limited Partnership | 125 North McDowell Boulevard | 215 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 11/1/2017 | 10/31/2022 | Electronic Mortgages, Inc. / SOE Mortgages | 125 North McDowell Boulevard | 130 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 9/1/2013 | 8/31/2023 | Environmental Science Associates (ESA) | 125 North McDowell Boulevard | 220 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 5/1/2018 | 4/30/2023 | First Student, Inc. | 125 North McDowell Boulevard | 210 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 8/1/2017 | 7/31/2022 | Professional Filing Systems, Inc. / InterHealth Record Systems | 125 North McDowell Boulevard | 125 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 125 North McDowell Boulevard, Petaluma, CA | Tenant Lease | Lessor | 8/1/2005 | 10/30/2021 | State Compensation Insurance Fund | 125 North McDowell Boulevard | 125 | Petaluma | CA | 94954 | 0 | 0 |

8/17/2021

| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Tenant Lease | Lessor | 2/1/2015 | 1/31/2023 | Sorenson Communications, Inc. | 1425 North McDowell Boulevard | 207 | Petaluma | CA | 94954 | 0 | 4300 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Tenant Lease | Lessor | 12/1/2016 | 12/31/2021 | Syserco, Inc | 1425 North McDowell Boulevard | 135 | Petaluma | CA | 94954 | 0 | 2672 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Tenant Lease | Lessor | 5/1/2020 | 4/30/2022 | United Cerebral Palsy of the North Bay | 1425 North McDowell Boulevard | 115 | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 36 | 350 Robinson Street, Sonoma, CA | Tenant Lease | Lessor | 10/30/2020 | 10/31/2021 | Barbara Ross | 350 Robinson St | 32 | Sonoma | CA | 95476 | 0 | 1695 |
| LLC | 36 | 350 Robinson Street, Sonoma, CA | Tenant Lease | Lessor | 10/21/2020 | 10/31/2021 | Billie Settles | 350 Robinson St | 29 | Sonoma | CA | 95476 | 0 | 1695 |
| LLC | 36 | 350 Robinson Street, Sonoma, CA | Tenant Lease | Lessor | 9/30/2020 | 9/30/2021 | Cynthia Solis-Collins | 350 Robinson St | 38 | Sonoma | CA | 95476 | 0 | 1695 |
| LLC | 36 | 350 Robinson Street, Sonoma, CA | Tenant Lease | Lessor | 7/10/2020 | 7/9/2021 | Marilyn Dealey | 350 Robinson St | 14 | Sonoma | CA | 95476 | 0 | 1695 |
| LLC | 36 | 350 Robinson Street, Sonoma, CA | Tenant Lease | Lessor | 10/23/2020 | 10/31/2021 | Rafael Robinson | 350 Robinson St | 12 | Sonoma | CA | 95476 | 0 | 1695 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 11/11/2020 | 5/31/2021 | *Rick Avery | 10 Maple Street & 635-651 Broadway | 651-D | Sonoma | CA | 95476 | 0 | 900 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 9/1/2016 | 8/30/2026 | *Tom N. Ho | 10 Maple Street & 635-651 Broadway | 645-A | Sonoma | CA | 95476 | 0 | 2425 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 9/1/2015 | 10/31/2021 | Amano Trading | 10 Maple Street & 635-651 Broadway | 010-201 | Sonoma | CA | 95476 | 0 | 2528 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 6/1/2016 | 5/31/2021 | Barbara Rochester | 10 Maple Street & 635-651 Broadway | 651-B | Sonoma | CA | 95476 | 0 | 615 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 2/15/2020 | 2/29/2024 | C and F Company LLC | 10 Maple Street & 635-651 Broadway | 635-200 | Sonoma | CA | 95476 | 0 | 6200 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 5/1/2013 | 6/30/2021 | Corcoran Global Living/ELI | 10 Maple Street & 635-651 Broadway | 010-102 | Sonoma | CA | 95476 | 0 | 2200 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 9/1/2016 | 10/31/2021 | DJM Capital Partners, Inc. | 10 Maple Street & 635-651 Broadway | 010-303 | Sonoma | CA | 95476 | 0 | 2100 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 3/1/2019 | 2/28/2022 | Lockton Companies, LLC | 10 Maple Street & 635-651 Broadway | 635-100 | Sonoma | CA | 95476 | 0 | 6500 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 10/1/2013 | 9/30/2025 | Mechanics Bank | 10 Maple Street & 635-651 Broadway | 010-101, 010-301 | Sonoma | CA | 95476 | 0 | 0 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 6/1/2016 | 5/31/2022 | Patrick Jude | 10 Maple Street & 635-651 Broadway | 651-C | Sonoma | CA | 95476 | 0 | 510 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 10/1/2016 | 9/30/2021 | Sonoma Valley Chamber of Commerce | 10 Maple Street & 635-651 Broadway | 651-A | Sonoma | CA | 95476 | 0 | 2300 |
| LLC | 37 | Aaple Street & 635-651 Broadway, Sonoma | Tenant Lease | Lessor | 12/1/2018 | 1/31/2022 | The Strength Studio, Inc. | 10 Maple Street & 635-651 Broadway | 010-200 | Sonoma | CA | 95476 | 0 | 5000 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 8/1/2019 | 8/31/2024 | *Stanford HealthCare/Core Physician Council | 899 Northgate Drive | 530 | San Rafael | CA | 94903 | 0 | 16784 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 5/1/2015 | 6/30/2022 | Annadel Capital, Inc./ M. Gregory Smith | 899 Northgate Drive | 302 | San Rafael | CA | 94903 | 0 | 2761 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 7/1/2013 | 6/30/2023 | Brenda Friedlander - Spectrum Financial Management | 899 Northgate Drive | 305 | San Rafael | CA | 94903 | 0 | 3938 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 5/1/2015 | 6/30/2022 | Chiao, Smith & Associates, an Accountancy Corp. (CSM&M) | 899 Northgate Drive | 307 | San Rafael | CA | 94903 | 0 | 4411 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2017 | 11/30/2022 | Co-Active Training | 899 Northgate Drive | 304 | San Rafael | CA | 94903 | 0 | 4220 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 2/1/2020 | 1/31/2023 | Hart Family Foundation | 899 Northgate Drive | 301 | San Rafael | CA | 94903 | 0 | 10500 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 7/1/2017 | 1/31/2022 | High Note Management Professional Corp. | 899 Northgate Drive | 306 | San Rafael | CA | 94903 | 0 | 6000 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 1/1/2017 | 10/31/2021 | Marin Wealth Advisors, LLC | 899 Northgate Drive | 300 | San Rafael | CA | 94903 | 0 | 5500 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 4/1/2017 | 3/31/2022 | MarinWood Capital Management, LLC | 899 Northgate Drive | 408 | San Rafael | CA | 94903 | 0 | 1950 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 7/15/2016 | 8/31/2021 | Mark R. Lotz dba Nature's Sun Grown Foods, Inc. | 899 Northgate Drive | 405 | San Rafael | CA | 94903 | 0 | 5000 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 7/1/2017 | 8/31/2022 | Mr. Anthony Piynati | 899 Northgate Drive | 412 | San Rafael | CA | 94903 | 0 | 4000 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 10/29/2014 | 10/31/2021 | Nesbit of California | 899 Northgate Drive | ROOF | San Rafael | CA | 94903 | 0 | 1500 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 12/1/2016 | 11/30/2021 | Paul Handleman D.O. | 899 Northgate Drive | 406 | San Rafael | CA | 94903 | 0 | 9000 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 10/1/2009 | 12/31/2021 | Strategic Energy Innovations | 899 Northgate Drive | 410 | San Rafael | CA | 94903 | 0 | 6494 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 10/15/2017 | 2/28/2028 | Union Square Hearing, Inc | 899 Northgate Drive | 110 | San Rafael | CA | 94903 | 0 | 33000 |
| LLC | 38 | 899 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 9/1/2019 | 8/31/2024 | Vandermolen Maddux Law Corporation | 899 Northgate Drive | 210 | San Rafael | CA | 94903 | 0 | 11700 |
| LLC | 40 | 15411-15499 Marty Drive, Glen Ellen, CA | Tenant Lease | Lessor | 10/19/2020 | 10/31/2021 | *Kevin Conant | 15411 Marty Drive Glen | 41 | Ellen | CA | 95442 | 0 | 1650 |
| LLC | 40 | 15411-15499 Marty Drive, Glen Ellen, CA | Tenant Lease | Lessor | 6/12/2020 | 6/30/2021 | *Emily Adcock | 15411 Marty Drive Glen | 81 | Ellen | CA | 95442 | 0 | 1650 |
| LLC | 40 | 15411-15499 Marty Drive, Glen Ellen, CA | Tenant Lease | Lessor | 9/20/2020 | 9/30/2021 | Maritza Perez | 15411 Marty Drive Glen | 59 | Ellen | CA | 95442 | 0 | 1650 |
| LLC | 40 | 15411-15499 Marty Drive, Glen Ellen, CA | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | Maximiliano Guzman | 15411 Marty Drive Glen | 11 | Ellen | CA | 95442 | 0 | 1895 |
| LLC | 41 | 19 Merrydale Road, San Rafael, CA | Tenant Lease | Lessor | 11/20/2020 | 11/30/2021 | Amecies Cheese | 19 Merrydale Ave | 11 | San Rafael | CA | 94901 | 0 | 1975 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 1/15/2020 | 1/31/2024 | *Johnston & Smith, a Law Corporation | 1050 Northgate Drive | 510 | San Rafael | CA | 94903 | 0 | 3500 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 5/1/2018 | 5/31/2021 | Alexander & Edwards, Inc. | 1050 Northgate Drive | 285 | San Rafael | CA | 94903 | 0 | 3955 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 8/1/2020 | 7/31/2021 | Amitabh Bharadwaj, MD | 1050 Northgate Drive | 354 | San Rafael | CA | 94903 | 0 | 2500 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 2/1/2017 | 4/30/2022 | Atkinson, Andelson, Loya, Ruud & Romo | 1050 Northgate Drive | 530 | San Rafael | CA | 94903 | 0 | 8298 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 2/1/2020 | 1/31/2023 | Boukai Eekens,PSY,D Jason Beck, D.C Gigi Pagani, PSY.D. | 1050 Northgate Drive | 312 | San Rafael | CA | 94903 | 0 | 1550 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 8/1/2013 | 7/31/2023 | Bradford and Company, Inc. | 1050 Northgate Drive | 351 | San Rafael | CA | 94903 | 0 | 2265 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 4/1/2016 | 3/31/2022 | Carmel Software | 1050 Northgate Drive | 360 | San Rafael | CA | 94903 | 0 | 1965 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 6/29/2018 | 6/30/2023 | C-Dental X-ray Inc. | 1050 Northgate Drive | 445 | San Rafael | CA | 94903 | 0 | 3935 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2014 | 2/28/2099 | Conference Room | 1050 Northgate Drive | 125 | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 7/1/2016 | 9/30/2021 | Dr. Deborah Nelson | 1050 Northgate Drive | 010 | San Rafael | CA | 94903 | 0 | 1076 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 12/1/2018 | 11/30/2021 | Dr. Edward Sum | 1050 Northgate Drive | 460 | San Rafael | CA | 94903 | 0 | 5400 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 6/1/2014 | 6/30/2024 | Dr. Martin Borao DC | 1050 Northgate Drive | 350 | San Rafael | CA | 94903 | 0 | 1097 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 4/25/2009 | 4/30/2021 | HTL Hotel Advisors, Inc. | 1050 Northgate Drive | 465 | San Rafael | CA | 94903 | 0 | 1800 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 5/1/2018 | 5/31/2021 | JB&A Distribution, INC. | 1050 Northgate Drive | 110, 185, 195 | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 5/1/2018 | 8/30/2022 | JB&A Distribution, Inc. | 1050 Northgate Drive | 110, 185, 195 | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2013 | 1/31/2022 | Marin Children's & Families Commission / First 5 Marin | 1050 Northgate Drive | 130 | San Rafael | CA | 94903 | 0 | 3864 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2017 | 10/31/2021 | Marin Economic Forum | 1050 Northgate Drive | 150 | San Rafael | CA | 94903 | 0 | 1000 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 5/1/1991 | 6/30/2024 | New Cinqular Wireless PCS, LLC / AT&T | 1050 Northgate Drive | ROOF1 | San Rafael | CA | 94903 | 0 | 1386 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 1/1/2020 | 1/31/2027 | Pacific Coast Psychiatric Associates | 1050 Northgate Drive | 550, 570 | San Rafael | CA | 94903 | 0 | 9500 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2010 | 10/31/2021 | Rick DeMartini / DeMartini & Associates | 1050 Northgate Drive | 190 | San Rafael | CA | 94903 | 0 | 2174 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 2/1/2018 | 3/31/2022 | Stewart Wealth Management, Inc. | 1050 Northgate Drive | 333 | San Rafael | CA | 94903 | 0 | 3246 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 9/1/2008 | 9/30/2026 | Yeoperty Management Trust | 1050 Northgate Drive | 139 | San Rafael | CA | 94903 | 0 | 2750 |
| LLC | 42 | 1050 Northgate Drive, San Rafael, CA | Tenant Lease | Lessor | 8/29/2015 | 8/31/2022 | Bav Vaudhan, Inc. / Home Instead Senior Care | 1050 Northgate Drive | 180 | San Rafael | CA | 94903 | 0 | 4004 |
| LLC | 3 | 3 Professional Center Parkway, San Rafael, | Tenant Lease | Lessor | 6/30/2020 | 6/30/2027 | Cynthia Serrano | 100 Professional Center Pkw | 480 | San Rafael | CA | 94903 | 0 | 2395 |
| LLC | 3 | 3 Professional Center Parkway, San Rafael, | Tenant Lease | Lessor | 10/7/2020 | 10/6/2021 | *Erin Ardon | 100 Professional Center Pkw | 200 | San Rafael | CA | 94903 | 0 | 2100 |
| LLC | 3 | 3 Professional Center Parkway, San Rafael, | Tenant Lease | Lessor | 10/1/2019 | 10/9/2021 | *Louis Morgan | 100 Professional Center Pkw | 405 | San Rafael | CA | 94903 | 0 | 2395 |
| LLC | 3 | 3 Professional Center Parkway, San Rafael, | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | *Nancy Turcos | 100 Professional Center Pkw | 150 | San Rafael | CA | 94903 | 0 | 2395 |
| LLC | 44 | 100 Sycamore Avenue, San Anselmo, CA | Tenant Lease | Lessor | 7/6/2020 | 7/17/2021 | *Rebecca Evans | 100 Sycamore Ave | 04 | San Anselmo | CA | 94960 | 0 | 500 |
| LLC | 44 | 100 Sycamore Avenue, San Anselmo, CA | Tenant Lease | Lessor | 7/17/2020 | 6/30/2021 | Summer Sutton-Silais | 100 Sycamore Ave | 09 | San Anselmo | CA | 94960 | 0 | 500 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 1/13/2020 | 12/31/2024 | Cindy Reynolds | 240 Tamal Vista | 163 | Corte Madera | CA | 94925 | 0 | 3500 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 6/15/2016 | 6/30/2023 | Cindy Reynolds - Neurofit - 162 | 240 Tamal Vista | 162 | Corte Madera | CA | 94925 | 0 | 2500 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 1/1/2016 | 5/31/2021 | Cindy Reynolds - Neurofit - 255 | 240 Tamal Vista | 255 | Corte Madera | CA | 94925 | 0 | 3000 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | Chandra Jensen and Elizabeth Lane, MFT | 240 Tamal Vista | 195 | Corte Madera | CA | 94925 | 0 | 3100 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 6/1/2018 | 5/31/2023 | Collier Law Firm, LLP | 240 Tamal Vista | 100 | Corte Madera | CA | 94925 | 0 | 5000 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 6/1/2016 | 5/31/2021 | EHJ Environment & Water, Inc. | 240 Tamal Vista | 190 | Corte Madera | CA | 94925 | 0 | 2450 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 8/1/2016 | 7/31/2021 | Mark J. Schiller, MD Corporation | 240 Tamal Vista | 155, 160, 250, 252 | Corte Madera | CA | 94925 | 0 | 14500 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 5/1/2018 | 4/30/2023 | Mary Kay Harrison | 240 Tamal Vista | 150 | Corte Madera | CA | 94925 | 0 | 2040 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 1/1/2019 | 12/31/2023 | Robert Fowler, DDS | 240 Tamal Vista | 180 | Corte Madera | CA | 94925 | 0 | 3400 |
| LLC | 47 | 240 Tamal Vista, Corte Madera, CA | Tenant Lease | Lessor | 4/1/2019 | 3/31/2024 | William A. Dunlman, MD | 240 Tamal Vista | 180 | Corte Madera | CA | 94925 | 0 | 3000 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Tenant Lease | Lessor | 1/1/2020 | 12/31/2021 | Catherine Sullivan | 1414 Casa Buena Dr Corte | 202 | Madera | CA | 94925 | 0 | 500 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Tenant Lease | Lessor | 12/28/2020 | 12/31/2021 | Galen Martin | 1414 Casa Buena Dr Corte | 402 | Madera | CA | 94925 | 0 | 500 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Tenant Lease | Lessor | 8/11/2020 | 8/31/2021 | Kendra Tayler | 1414 Casa Buena Dr Corte | 105 | Madera | CA | 94925 | 0 | 500 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Tenant Lease | Lessor | 7/31/2020 | 7/30/2021 | Levi Yang | 1414 Casa Buena Dr Corte | 105 | Madera | CA | 94925 | 0 | 500 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Tenant Lease | Lessor | 9/28/2020 | 9/31/2021 | Norman Sanchez | 1414 Casa Buena Dr Corte | 306 | Madera | CA | 94925 | 0 | 500 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Tenant Lease | Lessor | 7/1/2020 | 6/30/2021 | Omar Shkeir | 1414 Casa Buena Dr Corte | 408 | Madera | CA | 94925 | 0 | 500 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Tenant Lease | Lessor | 11/1/2020 | 10/31/2021 | Phillip Harmon | 1414 Casa Buena Dr Corte | 202 | Madera | CA | 94925 | 0 | 500 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Tenant Lease | Lessor | 7/2/2020 | 6/30/2021 | Raquel Ximenes Grafer | 1414 Casa Buena Dr Corte | 404 | Madera | CA | 94925 | 0 | 500 |
| LP | 1 | 475 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | *Jan Iredill | 475 Ignacio Blvd | 359 | Novato | CA | 94949 | 0 | 2695 |
| LP | IX | 825 Las Galinas, San Rafael, CA | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | *Walter / Van Zandt | 825 Las Gallinas Dr | 124 | San Rafael | CA | 94903 | 0 | 2595 |
| LP | IX | 825 Las Galinas, San Rafael, CA | Tenant Lease | Lessor | 9/9/2020 | 8/31/2021 | *Alfredo Reyes | 825 Las Gallinas Dr | 306 | San Rafael | CA | 94903 | 0 | 2595 |
| LP | IX | 825 Las Galinas, San Rafael, CA | Tenant Lease | Lessor | 11/1/2020 | 10/31/2021 | Angel Minoza | 825 Las Gallinas Dr | 116 | San Rafael | CA | 94903 | 0 | 1995 |
| LP | IX | 825 Las Galinas, San Rafael, CA | Tenant Lease | Lessor | 10/20/2020 | 9/31/2021 | Juan Ramirez | 825 Las Gallinas Dr | 229 | San Rafael | CA | 94903 | 0 | 2195 |
| LP | IX | 225 Nova Albion Way, San Rafael, CA | Tenant Lease | Lessor | 6/22/2020 | 6/30/2021 | *Lee Walling | 225 Nova Albion Wy | 12 | San Rafael | CA | 94903 | 0 | 1695 |
| LP | IX | 225 Nova Albion Way, San Rafael, CA | Tenant Lease | Lessor | 9/12/2020 | 8/31/2021 | Crystal Nicole Landeros | 225 Nova Albion Wy | 235 | San Rafael | CA | 94903 | 0 | 1895 |
| LP | IX | 225 Nova Albion Way, San Rafael, CA | Tenant Lease | Lessor | 9/18/2020 | 9/30/2021 | Edgar Rondon | 225 Nova Albion Wy | 05 | San Rafael | CA | 94903 | 0 | 1895 |
| LP | VII | 445 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 10/17/2020 | 10/31/2021 | Jennifer Andreys Gramaglia Camil | 425 Ignacio Blvd | 122 | Novato | CA | 94949 | 0 | 1695 |
| LP | XIII | 1825 Lincoln Avenue, San Rafael, CA | Tenant Lease | Lessor | 11/1/2019 | 11/30/2021 | *Fernanda -Reyes | 1825 Lincoln Ave | 306 | San Rafael | CA | 94901 | 0 | 1475 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 7/8/2020 | 7/31/2021 | *My -Gonzalez | 1000 Ignacio Blvd | 42 | Novato | CA | 94949 | 0 | 2425 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 7/13/2020 | 7/31/2021 | *Sandra Beauchamp | 1000 Ignacio Blvd | 42 | Novato | CA | 94949 | 0 | 2425 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 9/8/2020 | 8/31/2021 | Derick Gonia | 1000 Ignacio Blvd | 05 | Novato | CA | 94949 | 0 | 2095 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 6/3/2020 | 6/30/2021 | Julie Kaufman | 1000 Ignacio Blvd | 46 | Novato | CA | 94949 | 0 | 2195 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 7/31/2020 | 7/31/2021 | Scott Manning | 1000 Ignacio Blvd | 41 | Novato | CA | 94949 | 0 | 2425 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 7/31/2020 | 7/31/2021 | Oona Hartnett | 1000 Ignacio Blvd | 41 | Novato | CA | 94949 | 0 | 2425 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | Sonia Ortiz | 1000 Ignacio Blvd | 10 | Novato | CA | 94949 | 0 | 2195 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 11/11/2020 | 11/30/2021 | Yolaunda Mikesell Lee | 1000 Ignacio Blvd | 49 | Novato | CA | 94949 | 0 | 2095 |
| LP | XVII | 980 Ignacio Boulevard, Novato, CA | Tenant Lease | Lessor | 11/1/2020 | 10/31/2021 | *Maria Lopez | 980 Ignacio Blvd | 05 | Novato | CA | 94949 | 0 | 1750 |
| LP | XVII | 216 Marin Street, San Rafael, CA | Tenant Lease | Lessor | 11/1/2020 | 10/31/2021 | *Hinelo Andrade | 216 Marin St | 17 | San Rafael | CA | 94901 | 0 | 1445 |
| LP | XVII | 216 Marin Street, San Rafael, CA | Tenant Lease | Lessor | 11/1/2020 | 10/31/2021 | Veronica Hayes | 216 Marin St | 16 | San Rafael | CA | 94901 | 0 | 1395 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 7/25/2020 | 7/31/2021 | *Sandra Tecum | 380 Alameda Del Prado | 404 | Novato | CA | 94949 | 0 | 1695 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 6/22/2020 | 6/30/2021 | *Deborah Stone | 380 Alameda Del Prado | 410 | Novato | CA | 94949 | 0 | 1895 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 7/1/2020 | 6/30/2021 | *Deidre McCarthy | 380 Alameda Del Prado | 208 | Novato | CA | 94949 | 0 | 1795 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 8/15/2020 | 8/31/2021 | Drew Reese | 380 Alameda Del Prado | 103 | Novato | CA | 94949 | 0 | 1795 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 7/1/2020 | 6/30/2021 | Erick Sanchez | 380 Alameda Del Prado | 102 | Novato | CA | 94949 | 0 | 1795 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 8/1/2020 | 7/31/2021 | Freddy Castro | 380 Alameda Del Prado | 305 | Novato | CA | 94949 | 0 | 1795 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 10/12/2020 | 10/31/2021 | Steve and Leticia Sansores | 380 Alameda Del Prado | 303 | Novato | CA | 94949 | 0 | 1895 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 8/1/2020 | 7/31/2021 | Rodrigo Lopez | 380 Alameda Del Prado | 305 | Novato | CA | 94949 | 0 | 1795 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Tenant Lease | Lessor | 9/1/2020 | 8/31/2021 | Maribel Rodriguez | 380 Alameda Del Prado | 304 | Novato | CA | 94949 | 0 | 1895 |
| PR | 107 | 107 Marin Street, San Rafael, CA | Washing Machine Lease | Customer | 5/26/2017 | 5/25/2021 | WASH Multifamily Laundry Systems | PO Box 1222 | | | | | 0 | 0 |
| PR | 107 | 107 Marin Street, San Rafael, CA | Landscaping Services | Customer | 7/13/2020 | 7/26/2021 | A.C. Services | 1401 N. McDowell Blvd | | El Segundo | CA | 90245 | 0 | 0 |
| PR | 108 | 108 Marin Street, San Rafael, CA | Washing Machine Lease | Customer | 4/26/2017 | 4/25/2021 | WASH Multifamily Laundry Systems | PO Box 1222 | | El Segundo | CA | 90245 | 0 | 0 |
| PRI | 350 | 350 Ignacio Boulevard, Novato, CA | Washing Machine Lease | Customer | 12/3/2020 | 12/2/2021 | WASH Multifamily Laundry Systems | PO Box 1222 | | El Segundo | CA | 90245 | 0 | 0 |
| ALL | ALL | | Subscription for Work Order System - Application Hosting and Software License | Customer | 2/18/2020 | 2/18/2025 | Yardi Systems, Inc | 430 S Fairview Avenue | | Santa Barbara | CA | 93117 | 0 | 0 |
| PR | 355 | 355 Boyes Boulevard, Sonoma, CA | Washing Machine Lease | Customer | 3/28/2018 | 3/27/2022 | WASH Multifamily Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| PRI | 419 | 419 Prospect Drive, San Rafael, CA | Washing Machine Lease | Customer | 3/28/2018 | 3/27/2022 | WASH Multifamily Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| PR | 885 | 885 Broadway, Sonoma, CA | Washing Machine Lease | Customer | 3/28/2018 | 3/27/2022 | WASH Multifamily Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| PR | 1500 | 1506 Vallejo Avenue, Novato, CA | Landscaping Services | Customer | 5/20/2019 | 7/30/2021 | A.C Services | PO Box 1222 | | Novato | CA | 94949 | 0 | 0 |
| PRI | 7200 | 7200 Redwood Boulevard, Novato, CA | Landscaping Services | Customer | 8/18/2014 | 4/30/2021 | Eckh Ghingo | | | Petaluma | CA | 94954 | 0 | 0 |
| PRI | 7200 | 7200 Redwood Boulevard, Novato, CA | Professional Services | Customer | 5/17/2019 | 5/17/2021 | Ray Morgan Company | 3131 Esplanade | | Chico | CA | 95973 | 0 | 0 |
| PRI | 16914 | 16914 Sonoma Highway, Sonoma, CA | Landscaping Services | Customer | 3/12/2018 | 3/11/2021 | A.C. Services | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| PR | 120 | 120 Orchard Avenue, Sonoma, CA | Washing Machine Lease | Customer | 3/13/2018 | 3/12/2022 | WASH Multifamily Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| PRI | 1341 | 1341-1353 Redwood Way, Petaluma, CA | Panel and Fire Device monitoring | Customer | 10/30/2019 | 4/30/2022 | Bay Alarm | 5150 Business Park Dr | | Santa Rosa | CA | 95407 | 0 | 0 |
| PRI | 34 | 34 Entrata Road, Novato, CA | Washing Machine Lease | Customer | 6/24/2017 | 6/23/2021 | WASH Multifamily Laundry Systems | | | Novato | CA | 94949 | 0 | 0 |
| PRI | 851 | 851 Irwin Street, San Rafael, CA | Landscaping Services | Customer | 7/13/2020 | 7/26/2021 | A.C. Services | 2970 Kerner Blvd | | San Rafael | CA | 94901 | 0 | 0 |
| PR | 350 | 350 Robinson Street, Sonoma, CA | Washing Machine Lease | Customer | 6/24/2017 | 6/23/2021 | WASH Multifamily Laundry Systems | PO Box 1222 | | El Segundo | CA | 90245 | 0 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Landscaping Services | Customer | 6/24/2017 | 6/23/2021 | Kone Inc. | 501 Innovation Way | | San Francisco | CA | 94132 | 17965 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Fire Device monitoring | Customer | 3/27/2019 | 3/21/2022 | Bay Alarm | 5150 Business Park Dr | | Santa Rosa | CA | 95407 | 0 | 0 |
| LLC | 19 | 19 Merrydale Road, San Rafael, CA | Washing Machine Lease | Customer | 11/2/2017 | 11/1/2022 | WASH Multifamily Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| LLC | 100 | 100 Sycamore Avenue, San Anselmo, CA | Washing Machine Lease | Customer | 7/25/2020 | 7/25/2021 | WASH Multifamily Laundry Systems | PO Box 1222 | | El Segundo | CA | 90245 | 273.19 | 0 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Washing Machine Lease | Customer | 7/11/2020 | 7/11/2021 | WASH Multifamily Laundry Systems | PO Box 1222 | | El Segundo | CA | 90245 | 954.46 | 0 |
| LP | XVII | 216 Marin Street, San Rafael, CA | Washing Machine Lease | Customer | 7/13/2020 | 7/13/2021 | WASH Multifamily Laundry Systems | PO Box 1222 | | El Segundo | CA | 90245 | 0 | 0 |
| ALL | ALL | | 20 PT telephone lines | Customer | Month-to-Month | Month-to-Month | Sonic | 2260 Apollo Way | | Santa Rosa | CA | 95407 | 0 | 0 |
| ALL | ALL | | 20 PT telephone lines | Customer | Month-to-Month | Month-to-Month | Comcast | PO Box 34744 | | Seattle | WA | 98124 | 0 | 0 |
| ALL | ALL | | IT Services provided by Connected Business Sol | Customer | Month-to-Month | Month-to-Month | Sprint | PO Box 4181 | | Carol Stream | IL | 60197 | 0 | 0 |
| ALL | ALL | | IT Services | Customer | Month-to-Month | Month-to-Month | CoStar Realty Information Inc. | 1331 L St NW | | Washington | DC | 20005 | 0 | 0 |
| ALL | ALL | | Subscription for Office and Collaboration Software | Customer | Month-to-Month | Month-to-Month | Microsoft | 1 Microsoft Way | | Redmond | WA | 98052 | 0 | 0 |
| PRI | 1315 | 1315 Lincoln Avenue, San Rafael, CA | Pest Control | Customer | Month-to-Month | Month-to-Month | EIS Consulting Group | 1445 Manzanita Avenue | | Santa Rosa | CA | 95404 | 0 | 0 |
| PRI | 461 | 461 Ignacio Boulevard, Novato, CA | Pest Control | Customer | Month-to-Month | Month-to-Month | Orkin | PO Box 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| PRI | 501 | 501 Alameda Del Prado, Novato, CA | Pest Control | Customer | Month-to-Month | Month-to-Month | Orkin | PO Box 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| PRI | 518 | 518 B Street, San Rafael, CA | Pest Control | Customer | Month-to-Month | Month-to-Month | Orkin | PO Box 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| PRI | 1315 | 1315 Lincoln Avenue, San Rafael, CA | Pest Control | Customer | Month-to-Month | Month-to-Month | Orkin | PO Box 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| PRI | 1506 | 1506 Vallejo Avenue, Novato, CA | Pest Control | Customer | Month-to-Month | Month-to-Month | Orkin | PO Box 7161 | | Pasadena | CA | 91109 | 0 | 0 |

8/17/2021

| ENTITY TYPE | PROPERTY | ADDRESS | CONTRACT OR LEASE PURPOSE | NATURE OF THE DEBTOR'S INTEREST | EXECUTION DATE | EXPIRATION DATE | COUNTERPARTY NAME | ADDRESS | UNIT # | CITY | STATE | ZIP | CURE AMOUNT | SECURITY DEPOSIT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PFI | 16914 | 16914 Sonoma Highway, Sonoma, CA | Pest Control | Customer | N/A | Month-to-Month | Bay Counties Pest Control Inc | 708 Gravenstein Hwy No #260 | | Sebastopol | CA | 95472 | 0 | 0 |
| PFI | hamm | 1-9 Hammondale Court, San Rafael, CA | Landscaping Services | Customer | N/A | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | hamm | 1-9 Hammondale Court, San Rafael, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| PFI | hamm | 1-9 Hammondale Court, San Rafael, CA | Washing Machine Lease | Customer | N/A | Month-to-Month | Wash Multi-Family Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| PFI | ilene | 49 Ignacio Lane, Novato, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| PFI | merry | 7 Merrydale Road, San Rafael, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LLC | 21 | nacio Blvd. & 521 Alameda Del Prado, Nova | Washing Machine Lease | Customer | 5/1/2013 | Month-to-Month | Wash Multi-Family Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| LLC | 22 | 120 Orchard Ave., Sonoma, CA | Landscaping Services | Customer | N/A | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 22 | 120 Orchard Ave., Sonoma, CA | Pest Control | Customer | N/A | Month-to-Month | Bay Counties Pest Control Inc | 708 Gravenstein Hwy No #260 | | Sebastopol | CA | 95472 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Building Access System | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Elevator Maintenance - Gold Service Agreement | Customer | N/A | Month-to-Month | Thussen Krupp Elevator Company | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Janitorial Services | Customer | N/A | Month-to-Month | MCC Building Maintenance | 7049 Redwood Blvd. | | Novato | CA | 94945 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Pest Control Services | Customer | N/A | Month-to-Month | Crown and Shield Exterminators | PO Box 5976 | | Petaluma | CA | 94955 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Roof Maintenance Contract | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Building Access System | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Elevator Maintenance - Gold Service Agreement | Customer | N/A | Month-to-Month | Thussen Krupp Elevator Company | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Protection Services | Customer | N/A | Month-to-Month | Orion Protection Group, Inc. | 55 Mitchell Blvd. | | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Roof Care Maintenance Program | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Fire panel monitoring and maintenance | Customer | N/A | Month-to-Month | Redwood Security Systems, Inc. | PO Box 1609 | | Mill Valley | CA | 94942 | 0 | 0 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Building Access System | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 27 | 1500, 1510, 1516 Grant Avenue, Novato, C | Roof Care Maintenance Program | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| LLC | 27 | 1500, 1510, 1516 Grant Avenue, Novato, C | Elevator Maintenance - Gold Service Agreement | Customer | N/A | Month-to-Month | Kone Inc. | 567 7th Street | | San Francisco | CA | 94103 | 0 | 0 |
| LLC | 27 | 1500, 1510, 1516 Grant Avenue, Novato, C | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 27 | 1500, 1510, 1516 Grant Avenue, Novato, C | Internet Service | Customer | N/A | Month-to-Month | WebPercolation LLC | 1701 Novato Blvd | | Novato | CA | 94947 | 0 | 0 |
| LLC | 27 | 1500, 1510, 1516 Grant Avenue, Novato, C | Pest Control Services | Customer | N/A | Month-to-Month | Crown and Shield Exterminators | PO Box 5976 | | Petaluma | CA | 94955 | 0 | 0 |
| PFI | 29 | 1151 Broadway, Sonoma, CA | Fire panel and device monitoring | Customer | N/A | Month-to-Month | Andy Dean Electric/Security | PO Box 14981 | | Santa Rosa | CA | 95402 | 0 | 0 |
| PFI | 29 | 1151 Broadway, Sonoma, CA | Pest Control | Customer | N/A | Month-to-Month | Bay Counties Pest Control Inc | 708 Gravenstein Hwy No #260 | | Sebastopol | CA | 95472 | 0 | 0 |
| #REF! | 29 | 1151 Broadway, Sonoma, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 30 | 1341-1353 Redwood Way, Petaluma, CA | Janitorial Services - Comet Building Maintenance | Customer | N/A | Month-to-Month | Comet Building Maintenance | 21 Commercial Blvd. | | Novato | CA | | 0 | 0 |
| | | 1341-1353 Redwood Way, Petaluma, CA | Services Agreement | | | | | | | | | 94949 | | |
| LLC | 30 | 1341-1353 Redwood Way, Petaluma, CA | Landscaping Services | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 32 | 555 North Gate Drive, San Rafael, CA | Building Access system | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 32 | 555 North Gate Drive, San Rafael, CA | Elevator Maintenance - Gold Service Agreement | Customer | N/A | Month-to-Month | ThyssenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LLC | 32 | 555 North Gate Drive, San Rafael, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 32 | 555 North Gate Drive, San Rafael, CA | Landscaping Services | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 33 | 335 Enfrente Road, Novato, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | Building Access system | Customer | N/A | Month-to-Month | Stanley Security | 41734 Christy Street | | Fremont | CA | 94538 | 0 | 0 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | Building Maintenance | Customer | N/A | Month-to-Month | Comet Building Maintenance | 21 Commercial Blvd. | | Novato | CA | 94949 | 0 | 0 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | Elevator Maintenance - Gold Service Agreement | Customer | N/A | Month-to-Month | ThyssenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | Pest Control Services | Customer | N/A | Month-to-Month | Crown and Shield Exterminators | PO Box 5976 | | Petaluma | CA | 94955 | 0 | 0 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | Security Patrol Services | Customer | N/A | Month-to-Month | Orion Protection Group, Inc. | 55 Mitchell Blvd. | | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Building Access system & Fire Monitoring | Customer | N/A | Month-to-Month | Stanley Security | 41734 Christy Street | | Fremont | CA | 94538 | 0 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Elevator Maintenance - Gold Service Agreement | Customer | N/A | Month-to-Month | ThyssenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 27 Pamaron Way | | Novato | CA | 94949 | 0 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Pest Control Services | Customer | N/A | Month-to-Month | Crown and Shield Exterminators | PO Box 5976 | | Petaluma | CA | 94955 | 0 | 0 |
| #REF! | 36 | 350 Robinson Street, Sonoma, CA | Pest Control | Customer | N/A | Month-to-Month | Bay Counties Pest Control Inc | 708 Gravenstein Hwy No #260 | | Sebastopol | CA | 95472 | 0 | 0 |
| LLC | 37 | Aaple Street & 635-651 Broadwau, Sonoma | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 37 | Aaple Street & 635-651 Broadwau, Sonoma | Janitorial Services | Customer | N/A | Month-to-Month | Quiones Cleaning Service | 619 Sunset Drive | | Sonoma | CA | 95476 | 0 | 0 |
| LLC | 37 | Aaple Street & 635-651 Broadwau, Sonoma | Monitoring and Maintenance (10 Maple) | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 37 | Aaple Street & 635-651 Broadwau, Sonoma | Monitoring and Maintenance (635 Broadway) | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 37 | Aaple Street & 635-651 Broadwau, Sonoma | Monitoring and Maintenance (645 Broadway) | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 40 | 15411-15499 Marty Drive, Glen Ellen, CA | Landscape Services | Customer | N/A | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| #REF! | 40 | 15411-15499 Marty Drive, Glen Ellen, CA | Pest Control | Customer | N/A | Month-to-Month | Sono-Marin | 3200 Dutton Ave, Suite 217 | | Santa Rosa | CA | 95407 | 0 | 0 |
| LLC | 41 | 19 Merrydale Road, San Rafael, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LLC | 43 | 3 Professional Center Parkway, San Rafael, | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LLC | 44 | 100 Sycamore Avenue, San Anselmo, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LLC | 46 | 285 Woodland Avenue, San Rafael, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LP | I | 475 Ignacio Boulevard, Novato, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LP | IX | 825 Las Gallinas, San Rafael, CA | Landscaping Services | Customer | N/A | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| LP | IX | 825 Las Gallinas, San Rafael, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LP | IX | 825 Las Gallinas, San Rafael, CA | Washing Machine Lease | Customer | N/A | Month-to-Month | Wash Multi-Family Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| LP | XIII | 1825 Lincoln Avenue, San Rafael, CA | Landscaping Services | Customer | N/A | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| LP | XIII | 1825 Lincoln Avenue, San Rafael, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Landscaping Services | Customer | N/A | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| LP | XIV | 1000 Ignacio Boulevard, Novato, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LP | XV | 980 Ignacio Boulevard, Novato, CA | Landscaping Services | Customer | N/A | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| LP | XV | 980 Ignacio Boulevard, Novato, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LP | XVII | 216 Main Street, San Rafael, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| LP | XVIII | 216 Marin Street, San Rafael, CA | Washing Machine Lease | Customer | N/A | Month-to-Month | Wash Multi-Family Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Landscaping Services | Customer | N/A | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | Pest Control | Customer | N/A | Month-to-Month | Sono-Marin | 3200 Dutton Ave, Suite 217 | | Santa Rosa | CA | 95407 | 0 | 0 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Roof Care Maintenance | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Fire Panel and Devices | Customer | 6/1/2020 | 5/31/2021 | Stanley Security | 41734 Christy Street | | Fremont | CA | 94538 | 0 | 0 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Fire Panel and Devices | Customer | 6/1/2020 | 5/31/2021 | Stanley Security | 41734 Christy Street | | Fremont | CA | 94538 | 0 | 0 |
| PFI | 2 | 615 Duffy Place, San Rafael, CA | Fire Panel and Devices | Customer | 6/1/2020 | 5/31/2021 | Stanley Security | 41734 Christy Street | | Fremont | CA | 94538 | 0 | 0 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Roof Care Maintenance | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Pest Control | Customer | N/A | Month-to-Month | Orkin Pest Control | P.O. BOX 7161 | | Pasadena | CA | 91109 | 0 | 0 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | HVAC Bi-Annual Maintenance | Customer | 9/1/2020 | 8/31/2021 | Redwood Security Systems, Inc. | PO Box 1609 | | Mill Valley | CA | 94942 | 0 | 0 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Parking Lot Sweeping | Customer | N/A | Month-to-Month | Universal Site Services | 760 E Capitol Ave | | Milpitas | CA | 95035 | 0 | 0 |
| PFI | 5 | 200 Gate 5 Road, Sausalito, CA | Janitorial Services | Customer | N/A | Month-to-Month | MCC Building Maintenance | 7049 Redwood Blvd. | | Novato | CA | 94947 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Interior Plant Maintenance | Customer | N/A | Month-to-Month | Calf'd dba California Foliage Company | PO Box 41618 | | Sacramento | CA | 95841 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Fire Panel and Devices | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 23 | 1701 Novato Blvd., Novato, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Water One Industries | Customer | N/A | Month-to-Month | Water One Industries | 5410 Galeway Plaza Dr. | | Benicia | CA | 94510 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Interior Plant Maintenance | Customer | N/A | Month-to-Month | Calf'd dba California Foliage Company | PO Box 41618 | | Sacramento | CA | 95841 | 0 | 0 |
| LLC | 24 | 1682 Novato Blvd., Novato, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 25 | 7 Mt. Lassen Drive, San Rafael, CA | Security Patrol | Customer | N/A | Month-to-Month | Bright Star Security, Inc. | PO Box 5326 | | Petaluma | CA | 94955 | # 12 | 0 |
| LLC | 26 | 100 Tamal Vista, Corte Madera, CA | Water One Industries | Customer | N/A | Month-to-Month | Water One Industries | 5410 Galeway Plaza Dr. | | Benicia | CA | 94510 | 0 | 0 |
| LLC | 27 | 1500, 1510, 1516 Grant Avenue, Novato, C | Comet Building Maintenance Services Agreement | Customer | 5/1/2020 | Annual Renewal | Comet Building Maintenance | 21 Commercial Blvd. | # 12 | Petaluma | CA | | 0 | 0 |
| LLC | 27 | 1500, 1510, 1516 Grant Avenue, Novato, C | Roof Care Maintenance | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| LLC | 27 | 1500, 1510, 1516 Grant Avenue, Novato, C | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 30 | 1151 Broadway, Sonoma, CA | Janitorial Service | Customer | N/A | Month-to-Month | Quinonez Cleaning Service | 19120 Linden Street | | Sonoma | CA | 95476 | 0 | 0 |
| LLC | 30 | 30 North San Pedro Road, San Rafael, CA | Janitorial Service | Customer | N/A | Month-to-Month | Preferred Building Services, Inc. | 26 Pamaron Way, Suite A | | Novato | CA | | 0 | 0 |
| LLC | 30 | 30 North San Pedro Road, San Rafael, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 30 | 30 North San Pedro Road, San Rafael, CA | Internet Service | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 32 | 555 North Gate Drive, San Rafael, CA | Gold Service Agreement | Customer | 10/1/2020 | 9/30/2021 | ThyssenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LLC | 32 | 555 North Gate Drive, San Rafael, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| LLC | 32 | 555 North Gate Drive, San Rafael, CA | Water One Industries | Customer | N/A | Month-to-Month | Water One Industries | 5410 Galeway Plaza Dr. | | Benicia | CA | 94510 | 0 | 0 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | Roof Care Maintenance | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Chemical Fire Alarm System Purchase and Agreemen | Customer | 11/1/2020 | 10/31/2021 | Alarm Detection | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| LLC | 34 | 851 Irwin Street, San Rafael, CA | Quarterly Service Agreement | Customer | N/A | Month-to-Month | Quarterly Service Agreement | 5410 Galeway Plaza Dr. | | Benicia | CA | 94510 | 0 | 0 |
| LLC | 35 | 125 North McDowell Boulevard, Petaluma, C | Building Access system | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 58 | 899 Northgate Drive, San Rafael, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| PFI | 58 | 899 Northgate Drive, San Rafael, CA | Service Agreement | Customer | N/A | Month-to-Month | Water One Industries | 5410 Galeway Plaza Dr. | | Benicia | CA | 94510 | 0 | 0 |
| PFI | 58 | 899 Northgate Drive, San Rafael, CA | Fire Panel and Devices | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 58 | 899 Northgate Drive, San Rafael, CA | Gold Service Agreement | Customer | 3/31/2024 | Annual Renewal | ThyssenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | Camera CCTV system | Customer | 3/31/2024 | Annual Renewal | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | Access System | Customer | 10/31/2023 | Annual Renewal | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | Fire Panel and Devices | Customer | 8/31/2023 | Annual Renewal | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | Roof Care Maintenance | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | Service Agreement | Customer | N/A | Month-to-Month | Water One Industries | 5410 Galeway Plaza Dr. | | Benicia | CA | 94510 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | Elevator Maintenance | Customer | 3/31/2024 | Annual Renewal | ThyssenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| PFI | 42 | 1050 Northgate Drive, San Rafael, CA | Security Agreement | Customer | 9/30/2023 | Annual Renewal | ThyssenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| PFI | 47 | 240 Tamal Vista, Corte Madera, CA | Security Patrol | Customer | N/A | Month-to-Month | Bright Star Security, Inc. | PO Box 5326 | | Petaluma | CA | 94955 | 0 | 0 |
| PFI | 47 | 240 Tamal Vista, Corte Madera, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 47 | 240 Tamal Vista, Corte Madera, CA | Access System | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 47 | 240 Tamal Vista, Corte Madera, CA | Fire Panel and Devices | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 47 | 240 Tamal Vista, Corte Madera, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| PFI | 115 | 117-119-121 Paul Drive, San Rafael, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| PFI | 115 | 117-119-121 Paul Drive, San Rafael, CA | Janitorial Services | Customer | N/A | Month-to-Month | MCC Building Maintenance | 7049 Redwood Blvd. | | Novato | CA | 94947 | 0 | 0 |
| PFI | 115 | 117-119-121 Paul Drive, San Rafael, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 150 | 350 Ignacio Boulevard, Novato, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 150 | 350 Ignacio Boulevard, Novato, CA | Fire Panel and Devices | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 150 | 350 Ignacio Boulevard, Novato, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| PFI | 150 | 350 Ignacio Boulevard, Novato, CA | Access System | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, C | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 353 | 13-359 Bel Marin Keys Boulevard, Novato, C | Fire Panel and Devices | Customer | N/A | Month-to-Month | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Roof Care Maintenance | Customer | N/A | Month-to-Month | Warren Construction and Roof Care | 3017 Santa Rosa Avenue | | Santa Rosa | CA | 95407 | 0 | 0 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Interior Plant Maintenance | Customer | N/A | Month-to-Month | Calf'd dba California Foliage Company | PO Box 41618 | | Sacramento | CA | 95841 | 0 | 0 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Service Agreement | Customer | N/A | Month-to-Month | Water One Industries | 5410 Galeway Plaza Dr. | | Benicia | CA | 94510 | 0 | 0 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Landscaping | Customer | N/A | Month-to-Month | Gordon Cato Landscaping | 1443 MeadowLark Ln | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Concord | CA | 94520 | 0 | 0 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Elevator Maintenance | Customer | 12/31/2024 | Annual Renewal | ThyssenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Fire Panel and Devices | Customer | 12/31/2024 | Annual Renewal | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| PFI | 7200 | 7200 Redwood Boulevard, Novato, CA | Access System | Customer | 12/31/2024 | Annual Renewal | Bay Alarm | 1016 Clegg Court | | Petaluma | CA | 94954 | 0 | 0 |
| ALL | ALL | Commercial Real Estate Exchange (CREXI) | Commercial Real Estate Exchange (CREXI) | Customer | N/A | Annual Renewal | Commercial Real Estate Exchange (CREXI) | 4096 Del Rey Ave | | Marina Del Rey | CA | 90292 | 0 | 0 |
| LP | VII | 225 Nova Albion Way, San Rafael, CA | Pool Cleaning Services | Customer | 11/15/2020 | 11/10/2021 | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| LP | VII | 335 Enfrente Road, Novato, CA | Pool Cleaning Services | Customer | 10/1/2018 | Month-to-Month | J.G. Becerra | 1827 A Wisteria Circle | | Petaluma | CA | 94954 | 0 | 0 |
| LP | IX | 825 Las Gallinas, San Rafael, CA | Pool Cleaning Services | Customer | 1/15/2020 | Month-to-Month | Herb's Pool Service | 3769 Redwood Highway | | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 43 | 3 Professional Center Parkway, San Rafael, | Pool Cleaning Services | Customer | 4/24/2019 | Month-to-Month | Herb's Pool Service | 3769 Redwood Highway | | San Rafael | CA | 94903 | 0 | 0 |
| LP | XV | 980 Ignacio Boulevard, Novato, CA | Pool Cleaning Services | Customer | 12/9/2019 | Month-to-Month | Herb's Pool Service | 3769 Redwood Highway | | San Rafael | CA | 94903 | 0 | 0 |
| LP | XV | 980 Ignacio Boulevard, Novato, CA | Pool Cleaning Services | Customer | 12/9/2019 | Month-to-Month | Herb's Pool Service | 3769 Redwood Highway | | San Rafael | CA | 94903 | 0 | 0 |
| LLC | 40 | 15411-15499 Marty Drive, Glen Ellen, CA | Pool Cleaning Services | Customer | 4/1/2020 | Month-to-Month | Herb's Pool Service | 3769 Redwood Highway | | San Rafael | CA | 94903 | 0 | 0 |

8/17/2021

| ENTITY TYPE | PROPERTY | ADDRESS | CONTRACT OR LEASE PURPOSE | NATURE OF THE DEBTOR'S INTEREST | EXECUTION DATE | EXPIRATION DATE | COUNTERPARTY NAME | ADDRESS | UNIT # | CITY | STATE | ZIP | CURE AMOUNT | SECURITY DEPOSIT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LLC | 48 | 1441 Casa Buena Drive, San Rafael, CA | Pool Cleaning Services | Customer | 2/10/2020 | Month-to-Month | Perfect Pass Pools | 122 Calistoga Rd. # 230 | | Santa Rosa | CA | 95409 | 0 | 0 |
| LLC | 22 | 120 Orchard Ave., Sonoma, CA | Pool Cleaning Services | Customer | 8/1/2014 | Month-to-Month | Gary's Pool Service | PO Box 1473 | | Sonoma | CA | 95476 | 0 | 0 |
| LP | VII | 225 Nova Albion Way, San Rafael, CA | RoofCare Preventative Maintenance | Customer | 6/25/2019 | N/A | Warren RoofCare Preventative Maintenance | 3017 Santa Rosa Ave. | | Santa Rosa | CA | 95407 | 0 | 0 |
| LP | XVII | 216 Marin Street, San Rafael, CA | RoofCare Preventative Maintenance | Customer | 7/15/2019 | N/A | Warren RoofCare Preventative Maintenance | 3017 Santa Rosa Ave. | | Santa Rosa | CA | 95407 | 0 | 0 |
| PFI | 515 | 515 B Street, San Rafael, CA | RoofCare Preventative Maintenance | Customer | 5/21/2019 | N/A | Warren RoofCare Preventative Maintenance | 3017 Santa Rosa Ave. | | Santa Rosa | CA | 95407 | 0 | 0 |
| PFI | 419 | 419 Prospect Drive, San Rafael, CA | RoofCare Preventative Maintenance | Customer | 3/1/2019 | N/A | Warren RoofCare Preventative Maintenance | 3017 Santa Rosa Ave. | | Santa Rosa | CA | 95407 | 0 | 0 |
| LLC | 43 | 3 Professional Center Parkway, San Rafael, | RoofCare Preventative Maintenance | Customer | 9/1/2020 | N/A | Warren RoofCare Preventative Maintenance | 3017 Santa Rosa Ave. | | Santa Rosa | CA | 95407 | 0 | 0 |
| LP | XVIII | 380-450 Alameda Del Prado, Novato, CA | RoofCare Preventative Maintenance | Customer | 5/21/2019 | N/A | Warren RoofCare Preventative Maintenance | 3017 Santa Rosa Ave. | | Santa Rosa | CA | 95407 | 0 | 0 |
| LP | XIII | 1825 Lincoln Avenue, San Rafael, CA | Elevator Maintenance | Customer | 6/7/2019 | 6/8/2024 | ThussenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LP | XVII | 216 Marin Street, San Rafael, CA | Elevator Maintenance | Customer | 6/7/2019 | 6/8/2024 | ThussenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LLC | 46 | 285 Woodland Avenue, San Rafael, CA | Elevator Maintenance | Customer | 5/1/2020 | 4/30/2025 | ThussenKrupp Elevator Corporation | 14400 Catalina Street | | San Leandro | CA | 94577 | 0 | 0 |
| LP | XVII | 216 Marin Street, San Rafael, CA | HVAC Preventative Maintenance | Customer | N/A | Month-to-Month | Matrix HG Inc. | 115 Mason Circle | | Santa Rosa | CA | 95402 | 0 | 0 |
| LLC | 21 | naco Blvd. & 521 Alameda Del Prado, Nova | Washing Machine Lease | Customer | 4/5/2013 | Month-to-Month | Wash Multi-Family Laundry Systems | 100 N. Sepulveda Blvd 12th Floor | | El Segundo | CA | 90245 | 0 | 0 |
| PFI | 350 | 350 Ignacio Boulevard, Novato, CA | Employment Agreement/Apartment | Employer | 5/11/2015 | N/A | Michael Elmore | 120 Orchard Ave. | | Sonoma | CA | 95476 | 0 | 0 |
| PFI | 350 | 350 Ignacio Boulevard, Novato, CA | Employment Agreement/Apartment | Employer | 2/15/2019 | N/A | Aaron Graham | 49 Ignacio Lane | | Novato | CA | 94949 | 0 | 0 |
| PFI | 350 | 350 Ignacio Boulevard, Novato, CA | Employment Agreement/Apartment | Employer | 12/11/2017 | N/A | Christopher Lush | 225 Nova Albion Way | | San Rafael | CA | 94903 | 0 | 0 |
| PFI | 350 | 350 Ignacio Boulevard, Novato, CA | Employment Agreement/Apartment | Employer | 3/20/2012 | N/A | Salvador Melpoza | 109 Professional Center Parkway | | San Rafael | CA | 94903 | 0 | 0 |
| PFI | 350 | 350 Ignacio Boulevard, Novato, CA | Employment Agreement/Apartment | Employer | 12/1/2017 | N/A | Jeremy Olivas | 350 Robinson Street | | Sonoma | CA | 95476 | 0 | 0 |
| PFI | 350 | 350 Ignacio Boulevard, Novato, CA | Employment Agreement/Apartment | Employer | 10/17/2017 | N/A | David Osinek | 380-450 Alameda Del Prado | | Novato | CA | 94949 | 0 | 0 |
| PFI | 350 | 350 Ignacio Boulevard, Novato, CA | Employment Agreement/Apartment | Employer | 10/28/2019 | N/A | Kelli Selmi | 1441 Casa Buena Drive | | San Rafael | CA | 94925 | 0 | 0 |

8/17/2021

**Court Service List**

Registered ECF Participants only.

SMRH:4876-0016-1040.3