SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
J. BARRETT MARUM, Cal. Bar No. 228628
JEANNIE KIM, Cal. Bar No. 270713
MATT KLINGER, Cal. Bar No. 307362
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:   415.434.9100
Facsimile:   415.434.3947
Email:       okatz@sheppardmullin.com
             bmarum@sheppardmullin.com
             jekim@sheppardmullin.com
             mklinger@sheppardmullin.com

Counsel for the Debtors

TRODELLA & LAPPING LLP
RICHARD A. LAPPING, Cal. Bar No. 107496
540 Pacific Avenue
San Francisco, CA 94133
Telephone:   (415) 399-1015
Facsimile:   (415) 651-9004
Email:  Rich@TrodellaLapping.com

Conflicts Counsel for the Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., *et al.*,<br><br>Debtors. | Case No. 20-30604<br>(Jointly Administered)<br>Chapter 11<br>**SALE SUPPLEMENT REGARDING PROFESSIONAL FINANCIAL INVESTORS' PROPOSED SALE OF CERTAIN REAL AND PERSONAL PROPERTY ASSETS OF PROFESSIONAL FINANCIAL INVESTORS IN FURTHERANCE OF THE PLAN AS MODIFIED**<br><br>Date:   December 16, 2021<br>Time:   10:00 a.m.<br>Place:  **Telephonic/Video Appearances Only**<br>450 Golden Gate Avenue, 16th Floor<br>Courtroom 19<br>San Francisco, CA  94102<br>Judge:  Hon. Hannah L. Blumenstiel |

**POTENTIALLY AFFECTED LIENHOLDERS**:   Five Star Bank; Marin County Tax Collector[1]

---

[1] Both Five Star Bank and the Marin County Tax Collector will be paid in full at the closing of the escrow for the sale of this property.

## I.

## INTRODUCTION

Professional Financial Investors, Inc. ("PFI" or the "Debtor")[2], a debtor and debtor in possession in the above-captioned jointly administered cases (the "Bankruptcy Cases"), submits this supplement (the "Sale Supplement") and moves the Court for (1) entry of an order in the form attached hereto as **Exhibit A** (the "Entrada Sale Order"), (a) approving the Sale (defined herein) of certain improved real and related personal property at the address commonly known as 300 Entrada Drive, Novato, California (the "Property"), free and clear of all claims, liens, liabilities, interests and encumbrances; (b) approving the assumption and assignment of certain designated Executory Contracts (as defined by the PSA, defined below); (c) authorizing PFI to pay Matthew Storms ("Mr. Storms"), the real estate broker who marketed the Property to the Buyer, a commission of 4.75% of the purchase price even though the Sale will close outside the period when he would be due such commission under the terms of his engagement, and (d) granting related relief.

PFI engaged Mr. Storms to market the Property in early 2021 but received very little interest from potential buyers. As a result, PFI has determined that it is in its best interests to sell the Property to a third party owner user (the "Sale") that, subject to Court approval, will purchase the Property for an amount that is more than an investor would pay for it if vacant. Subject to Court approval, PFI and Yireh Estates LLC (the "Buyer") have entered into that certain Purchase Agreement and Escrow Instructions, as amended by the First Amendment to Purchase Agreement and Escrow Instructions (as amended from time to time, the "PSA"),[3] attached as **Exhibit 1** to the supporting declaration of Andrew Hinkelman (the "Hinkelman Declaration") filed concurrently with this Sale Supplement. The Buyer intends to use the Property to operate its business, Dry Kings, which is a water and fire disaster response construction company. Under the terms of the

---

[2] As used in this Sale Supplement, the "Debtors" means, collectively, Professional Financial Investors, Inc. ("PFI"), Professional Investors Security Fund, Inc. ("PISF"), and the affiliated debtors in the above-captioned jointly administered chapter 11 case.

[3] Capitalized terms not otherwise defined in this Sale Supplement shall have the same meanings ascribed to them in the PSA.

PSA, the Buyer has agreed, among other things, to pay Two Million, Three Hundred Thousand Dollars ($2,300,000.00) for the Property, subject to Court approval.

PFI anticipates that the Sale will close some time in the second half of December 2021 or in January 2022. The terms of Mr. Storms' engagement to market the Property, however, do not permit him to receive a commission if the Property is sold more than one hundred eighty (180) days after the June 15, 2021 expiration of his engagement (i.e. on or before December 12, 2021). PFI believes it is reasonable and appropriate to pay Mr. Storms a commission in this instance because (i) he marketed the Property to the Buyer before his engagement expired, (ii) PFI and the Buyer entered into the PSA just after the period of Mr. Storms' engagement, and (iii) due to circumstances beyond Mr. Storms' control, the Sale is contemplated to close after December 12, 2021 but on or before January 31, 2022.

PFI submits this Sale Supplement in furtherance of the confirmed *Modified Second Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee Dated (May 20, 2021)* filed with the Court on November 1, 2021 (as modified and confirmed, the "Plan").[4] While the proposed Sale is not subject to overbid, PFI represents that the Sale to the Buyer on the terms set forth in the PSA is the highest and best offer that PFI anticipates receiving.

---

[4] On June 9, 2021, the Court entered the *Order Finally Approving Amended Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee (Dated May 20, 2021)* as Docket No. 678 and thereby approved *Amended Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee (Dated May 20, 2021)* filed with the Court on June 8, 2021, as Docket No. 677 (the "Original Plan"). On November 2, 2021, the Bankruptcy Court entered approved, on a final basis, and confirmed, the modifications to the Original Plan as set forth in the Plan by entering that *Amended Order Finally Approving Amended Disclosure Statement and Confirming Modified Second Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and The Ad Hoc DOT Noteholders Committee (Dated May 20, 2021)* as Docket No. 966 (the "Amended Confirmation Order").

In support of the Motion, PFI respectfully represents as follows:

## II.

## FACTUAL BACKGROUND

### A. The Debtors' Bankruptcy[5]

PFI incorporates by this reference the summary of the events, including fraud by the Debtors' former management, that culminated in the entry of orders for relief in each of the Debtors' respective bankruptcy cases, whether voluntarily or by consent, as set forth in the numerous pleadings and papers previously filed in these cases, including, but not limited to, the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee* filed with the Court on April 16, 2021, as Docket No. 572 (the "Disclosure Statement") and the Plan. As set forth in the Disclosure Statement, on August 19, 2020, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors ("Official Committee"). Meanwhile, certain parties claiming membership interests in limited liability companies formed and controlled by PFI are represented by an ad hoc committee of LLC members while certain lenders to the Debtors claiming liens secured by deeds of trust on property owned by one of the Debtors have also formed into an ad hoc committee of DOT holders.

### B. Background Regarding the Property

The Property includes improved real property in the City of Novato, County of Marin, State of California, and is more particularly described on Exhibit A attached to the PSA ("Land"). The Land is an approximately 0.76-acre parcel designated as APN 160-161-02 and 160-161-08 and is improved with a building totaling approximately 12,641 square feet of rentable floor area with an address of 300 Entrada Drive, Novato, California and associated parking and landscaped areas ("Improvements"). The Land and the Improvements are referred to as the Property, which

---

[5] The *Declaration of Michael Hogan in Support of the Bankruptcy Filing and Early Case Administration Motions* filed on July 26, 2020 as Dkt. No. 5 (the "First Day Hogan Declaration")

term shall also encompass each of the following: all of Seller's right, title and interest in and to (1) any easements, privileges, rights of way and other rights, including but not limited to air rights, mineral, water and riparian rights appurtenant to the Land; (2) all affixed tangible personal property, if any, located on and affixed to the Property and used in connection with the ownership, operation or maintenance of the Property, including without limitation all sign poles, signs, and landscaping and maintenance equipment; (3) all land use entitlements, development rights, sewer capacity, map approvals, trip generation rights, density allocations and other rights or approvals relating to or authorizing the development, construction, ownership, or the operation of the Property, and any bonds held by third parties relating to the same; and (4) the Executory Contracts.

C. **Engagement of Mr. Storms**

On January 4, 2021, PFI filed its application (the "Application") to employ Mr. Storms as its commercial real estate agent to market the Property until June 15, 2021, with his compensation subject to the terms of the listing agreement for the Property filed concurrently with the Application (the "Listing Agreement"). The terms of Mr. Storms' compensation are set forth in Section 2 of the Listing Agreement, which provides as follows:

> 2. In consideration of Broker's agreement to diligently procure a buyer(s) for the Property, Owner agrees to grant the exclusive listing and agrees to pay Broker a commission or commissions as set forth below. **Commission rates are negotiable**.
> For a sale of the subject property, the sales commission shall be **4.75%** of the sales price.
> a. Owner shall pay said commission(s) to Broker if: (a) the Property is sold to a buyer by or through Broker, Owner or any other party prior to the expiration of this Agreement or any extensions thereof; or (b) a buyer is procured by or through Broker, Owner or any other party who is ready, willing and able to buy the Property on the terms above stated or other terms reasonably acceptable to Owner prior to the expiration of this Agreement or any extension thereof; or (c) a sale closes pursuant to any contract for the sale of the Property that is made directly or indirectly by Owner prior to the expiration of this Agreement or any extension thereof; or (d) the Property is withdrawn from sale without the written consent of Broker or made unmarketable by Owner's voluntary act during the term of this Agreement or any extension thereof; or (e) within one hundred eighty (180) days after the expiration of this

---

contains a detailed discussion of the background and capital structure of PFI and PISF, and the events leading to these Bankruptcy Cases.

Authorization or any extension thereof, the Property is sold to any person or entity with whom Broker has negotiated or to whom Broker has submitted the Property prior to such expiration in an effort to effect a transaction and whose name appears on any list of such persons or entities which Broker shall have mailed to Owner at the address above stated within thirty (30) days following such expiration, provided that if Broker has submitted a written offer to purchase, it shall not be necessary to include the offeror's name on such list.

This Court entered an order approving the Application on January 12, 2021.

Even after his engagement expired, Mr. Storms has continued to support PFI in dealing with diligence and other issues related to the Buyer and the Sale. Because the PSA was not fully executed by both PFI and the Buyer until June 22, 2021 (i.e., one week after Mr. Storms' engagement expired) and the Sale will not close until after December 12, 2021, Mr. Storms will not be entitled to compensation for marketing the Property to the Buyer unless the relief requested in this Sale Supplement is granted.

### D. Marketing of the Property

Given the Property's unique physical characteristics and the fact that it was 100% vacant and producing no income, PFI, together with the Debtors, determined that the Property should be marketed for sale individually apart from the Debtors' other commercial and residential properties, which are primarily income-producing assets suitable for sale to investors. Accordingly, PFI retained Mr. Storms of Keegan & Coppin Co., Inc., a commercial real estate brokerage focused on real property located in the North Bay region of the San Francisco Bay Area ("Keegan & Coppin").[6] Mr. Storms marketed the Property for many months but received very little interest in the Property. Nevertheless, through Mr. Storms, PFI received an offer from the Buyer for the purchase and sale of the Property that values the Property at a purchase price higher than PFI anticipates it will receive if it continues marketing the Property for sale subject to overbid and Court approval. As a result, the Debtors seek entry of an order approving the Sale and submits that, notwithstanding that the Sale is not subject to overbid, the Sale is in the best interest of PFI and its creditors.

E.  **Proposed Sale**

To effectuate the Plan, PFI intends to monetize certain of its real and personal property assets for the benefit of their creditors. In furtherance of the Debtors' goals under the Plan, PFI has determined in its business judgment that the PSA represents the highest and best offer PFI anticipates receiving for the Property. Therefore, the Sale maximizes the value of the Property for the benefit of PFI's creditors. PFI has reached this conclusion in large part based on discussions with its financial advisors, the operating and cash flow characteristics of PFI, the current market trends with respect to commercial real property valuations in Northern California (where the Property is located), and the efforts over many months to market the Property. Each of the foregoing factors has led PFI to conclude that the proposed Sale, as a private sale subject to a fiduciary out, will benefit PFI and the Debtors' collective estate.

The proposed Sale, as set forth in the PSA, provides for the following key terms:

- Purchase price of $2,300,000.00, $70,000.00 of which has been paid by the Buyer to the Escrow Holder, as and for the "Escrow Opening Deposit," and $2,230,000.00 which will be delivered to the Escrow Holder before the Closing Date;

- The Sale will be made on an "AS IS" condition and basis "WITH ALL FAULTS"; and

- If PFI receives a better offer for the Property prior to the entry of the Sale Order or learns of any other basis on which PFI must terminate the PSA and withdraw the Sale Supplement in furtherance of its fiduciary duties to its shareholders and creditors, any such withdrawal or other action or inaction shall not constitute a default under the PSA by either PFI or the Buyer, but PFI shall promptly return the Deposits and all accrued interest thereon (except for the Nonrefundable Deposit, which shall be delivered to PFI) and the PSA will be terminated, with the parties thereto having no further rights or obligations thereunder.

---

[6] The Court approved this employment on January 12, 2021 by order entered as Docket Number 336.

# III.
# RELIEF REQUESTED

By this Sale Supplement, PFI seeks entry of the Entrada Sale Order, which (a) approves the Sale of the Property, free and clear of all claims, liens, liabilities, interests and encumbrances; (b) approves the assumption and assignment of certain designated Executory Contracts (as defined by the PSA); (c) authorizes PFI to pay Mr. Storms a commission of 4.75% of the purchase price of the Property; and (d) grants related relief.

# IV.
# AUTHORITY FOR REQUESTED RELIEF

**A.  The Plan Authorizes the Sale Pursuant to this Sale Supplement**

Section 4.9.7 of the Plan provides as follows:

> Upon the Effective Date, unsold Real Property not subject to the Portfolio Sale shall remain property of the Estates, and shall not, under any circumstances, vest either automatically or without Court order in any other entity, including the PFI Trust, and instead such property shall expressly remain property of the Estates. Further upon the Effective Date, PFI, its affiliates, and PFI's Chief Restructuring Officer (currently Andrew Hinkelman) are authorized to sell such Real Property under this Plan upon: (i) the filing of a supplement (the "Sale Supplement") with the Bankruptcy Court outlining the material terms of the proposed sale of such Real Property, (ii) setting a hearing on the Sale Supplement and providing an opportunity for objection to the Sale Supplement, and (iii) obtaining an order from the Bankruptcy Court authorizing such sale.

# V.
# ARGUMENT

The Sale is in the best interest of creditors of PFI's estate.  As stated above, PFI marketed the Property for Sale, on a standalone basis, for many months.  PFI has received very little interest in the Property.  As a result, PFI believes that the proposed Sale, on a standalone basis, on the terms and conditions set forth in the PSA, is the highest and best offer PFI can anticipate receiving.  PFI estimates the Sale to the Buyer will result in approximately $400,000 in net cash to PFI's estate, which will benefit PFI's estate and its creditors.  The Sale also is in furtherance of the Plan and will allow PFI and the Debtors to increase the likelihood of the Plan's full consummation and success, including distributions to the PFI Trust Beneficiaries (as defined in the Plan).

There are two secured creditors with respect to the Property: Five Star Bank and the Marin County Tax Collector. If the Court approves this sale, both will have their secured claims paid in full through the escrow for the sale of the Property.

In addition, authorizing PFI to pay a commission of 4.75% of the purchase price to Mr. Storms represents a sound exercise of business judgment. The services Mr. Storms rendered to PFI were instrumental to identifying the Buyer, entering into the PSA, and, ultimately, the anticipated Sale of the Property. Without Mr. Storms' services, PFI may never have found itself with a buyer for the Property and this near to closing the Sale.

PFI believes that Mr. Storms should not be left hanging out to dry for providing such impactful assistance. Although under the terms of the Listing Agreement he is not technically entitled to being compensated for the services he has provided marketing the Property to the Buyer, paying him the commission described in the Listing Agreement offers a reasonable and fair way to remunerate Mr. Storms for his services and encourages others like him to continue assisting debtors in bankruptcy.

## VI.
## CONCLUSION

For the foregoing reasons, PFI requests that this Court enter the Entrada Sale Order and thereby (a) approve the Sale of the Property on the terms and conditions set forth therein, (b) approve the assumption and assignment of certain designated Executory Contracts; (c) authorize PFI to pay Mr. Storms a commission of 4.75% of the purchase price of the Property; and (d) grant related relief.

Dated: November 23, 2021

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     */s/ Ori Katz*
ORI KATZ
J. BARRETT MARUM
JEANNIE KIM
MATT KLINGER

Counsel for the Debtors

SMRH:4879-5257-2419.6

-9-

300 ENTRADA SALE SUPPLEMENT

Case: 20-30604    Doc# 1005    Filed: 11/23/21    Entered: 11/23/21 23:48:36    Page 9 of 13

# Exhibit A

Proposed Sale Order

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., *et al.*,[1]<br><br>Debtors. | Case No. 20-30604<br>(Jointly Administered)<br><br>Chapter 11<br><br>**[PROPOSED] ORDER APPROVING SALE SUPPLEMENT REGARDING PROFESSIONAL FINANCIAL INVESTORS' PROPOSED SALE OF CERTAIN REAL AND PERSONAL PROPERTY ASSETS OF PROFESSIONAL FINANCIAL INVESTORS IN FURTHERANCE OF THE PLAN AS MODIFIED**<br><br>Date: December 16, 2021<br>Time: 10:00 a.m.<br>Place: **Telephonic/Video Appearances Only**<br>450 Golden Gate Avenue, 16th Floor<br>Courtroom 19<br>San Francisco, CA 94102<br>Judge: Hon. Hannah L. Blumenstiel |

**POTENTIALLY AFFECTED LIENHOLDERS**:   Five Star Bank; Marin County Tax Collector

---

[1] A complete list of the Debtors and their respective chapter 11 case numbers may be found at www.donlinrecano.com/Clients/pfi/index. The federal tax identification numbers of each of the Debtors is also available in the bankruptcy petitions of each Debtor, also available at the Donlin Recano website.

-1-

This Court having considered the *Sale Supplement Regarding Professional Financial Investors' Proposed Sale of Certain Real and Personal Property Assets of Professional Financial Investors in Furtherance of the Plan as Modified* (the "Sale Supplement")[1] filed by Professional Financial Investors ("PFI") on November 23, 2021 as Docket No. [•], all declarations and evidence submitted with respect to the Sale Supplement, the arguments of counsel at the hearing on the Sale Supplement and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A. Proper, timely, adequate, and sufficient notice of the Sale Supplement has been provided and no other or further notice of the Sale Supplement is required or necessary under the circumstances.

B. PFI has articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Supplement regarding the sale of the improved commercial real property located at 300 Entrada Drive, Novato, California (the "Property") to Yireh Estates LLC ("Buyer"). The legal description of the Property is attached hereto as **Exhibit A**.

C. The Buyer is authorized to purchase 100% of the interest in the Property including all interest in the Property currently held by PFI for $2,300,000.00 and pursuant to the terms of the Purchase Agreement and Escrow Instructions, as amended by the First Amendment to Purchase Agreement and Escrow Instructions (as amended from time to time, the "PSA") attached to the Hinkelman Declaration.

D. Approval of the Sale Supplement and the Sale of the Property pursuant to the terms of the PSA and the consummation of such Sale is in the best interests of PFI, its creditors, estate, and other parties in interest.

E. PFI has exercised sound and proper business judgment in determining to sell the Property pursuant to the terms of the PSA and as set forth in the Sale Supplement.

F. PFI provided ample notice of the relief requested by the Sale Supplement of its intent to sell the Property free and clear of all liens, claims, encumbrances, and interests with the

---

[1] Capitalized terms not otherwise defined shall have the same meanings ascribed to them in the

exception of those liens and claims against the Property held by Five Star Bank pursuant to its Deed of Trust on the Property, which as more fully described in the PSA will be paid from escrow at closing.

G. There are good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rule 6004(h).

H. There is no legal or equitable reason to delay the sale of the Property as set forth in the Motion.

IT IS HEREBY ORDERED THAT:

1. The Sale Supplement is approved in furtherance of the Plan.

2. PFI is authorized to sell the Property to the Buyer pursuant to the terms of the PSA.

3. The debt secured by Five Star Bank's Deed of Trust shall be paid directly from escrow at closing.

4. PFI is authorized to pay Mr. Storms a commission equal to 4.75% of the purchase price of the Property for his services marketing the Property, with such commission paid directly from escrow at closing.

5. All other customary sale expenses are to be paid directly from escrow at closing.

6. PFI is hereby authorized to sell the Property free and clear of all liens and claims. Pursuant to sections 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code, as set forth in the Plan, and upon closing, all of PFI's rights, title, and interest in the Property shall be transferred to Buyer free and clear of all liens and claims.

7. The transfer of the Property to Buyer will vest Buyer with all rights, title, and interests in and to the Property.

8. Except as otherwise specifically provided in the Purchase Agreement, this Order, and the Sale Supplement, Buyer and Buyer's successors and assigns, shall have no liability of any kind or character for liens and claims against the Property or proceeds from the contemplated sale of the Property.

---

Sale Supplement.

9. After closing, all persons and entities (as defined by section 101 of the Bankruptcy Code) are forever barred, estopped, and permanently enjoined from asserting any liens or claims, whether known or unknown at the time of closing, against the Property or Buyer, or any of Buyer's successors or assigns that either were in existence or were purportedly in existence prior to the date of closing. Following closing, no holder of a lien or claim shall interfere with Buyer's title to, or use and enjoyment of, the Property based on or related to any such lien or claim.

10. The fourteen (14) day stay of this order provided for in Bankruptcy Rule 6004(h) is hereby waived.

***END OF [PROPOSED] ORDER***