SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
J. BARRETT MARUM, Cal. Bar No. 228628
JEANNIE KIM, Cal. Bar No. 270713
MATT KLINGER, Cal. Bar No. 307362
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        okatz@sheppardmullin.com
              bmarum@sheppardmullin.com
              jekim@sheppardmullin.com
              mklinger@sheppardmullin.com

Counsel for the Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

In re

PROFESSIONAL FINANCIAL INVESTORS, INC., *et al.*,

Debtors.

Case No. 20-30604
(Jointly Administered)
Chapter 11

**DEBTORS' MOTION FOR AUTHORITY TO WIND DOWN THEIR ESTATES IN FURTHERANCE OF THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC. AND ITS AFFILIATED DEBTORS**

Date:    December 16, 2021
Time:    10:00 a.m.
Place:   **Telephonic/Video Appearances Only**
         450 Golden Gate Avenue, 16th Floor
         Courtroom 19
         San Francisco, CA  94102
Judge:   Hon. Hannah L. Blumenstiel

The Debtors[1] in the above-captioned jointly administered cases (the "Bankruptcy Cases") move (the "Motion") the Court to authorize them to commence the winddown of their respective estates in furtherance of the *Modified Second Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee Dated (May 20, 2021)* filed on November 1, 2021, as Docket No. 964 (as modified, the "Plan") by entering the form of proposed order attached hereto as **Exhibit A** (the "Winddown Order"), and granting certain related relief. Specifically, the Debtors request that the Court authorize Andrew Hinkelman, the chief restructuring officer (the "CRO") of Professional Financial Investors, Inc. and Professional Investors Security Fund, Inc. (collectively, the "Original Debtors") to: (1) take steps to winddown the Debtors' estates after the Effective Date of the Plan (as defined therein) (collectively, the "Winddown Actions"), including, but not limited to, (a) entering into the Winddown Agreement[2] with Michael Goldberg, in his capacity as the Initial PFI Trustee (as defined in the Plan) upon the Effective Date of the Plan (under which Mr. Hinkelman will be appointed the "Winddown Agent," as defined in Winddown Agreement), (b) entering into, on behalf of PFI, a license agreement with Hamilton Zanze & Company (together with its affiliate, "Hamilton Zanze") for use of the Debtors' current headquarters through January 31, 2022 (at no charge to the Debtors), to continue the winddown of the Debtors' estates, (c) the preparation and filing of final tax returns, (d) compliance with final debtor in possession or post-confirmation U.S. Trustee reporting requirements, (e) the destruction of documents that do **not** relate to potential litigation claims, including potential third party litigation claims, (f) the provision of ongoing accounting support to the Debtors, and (g) the retention of professionals appropriate and necessary for the administration, liquidation, winddown, and dissolution of the Debtors' estates; (2) be appointed, as of the Effective Date, by the Initial

---

[1] "Debtors" means, collectively, Professional Financial Investors, Inc. ("PFI"), Professional Investors Security Fund, Inc. ("PISF"), and the affiliated debtors in the above-captioned jointly administered chapter 11 cases.

[2] A copy of the proposed Winddown Agreement in substantially final form is attached to the Hinkelman Declaration as **Exhibit 1**.

-1-

Case: 20-30604    Doc# 1008    Filed: 11/24/21    Entered: 11/24/21 00:18:00    Page 2 of 14

PFI Trustee as the Distribution Agent under the Plan notwithstanding his proposed appointment as the Winddown Agent until the Debtors' estates are fully liquidated and wound down; and (3) such other related relief as the Court deems appropriate.

This Motion is based on the discussion below, sections 105 and 363 of the Bankruptcy Code, the confirmed Plan, the supporting declarations of Andrew Hinkelman (the "Hinkelman Declaration") and Michael Goldberg (the "Goldberg Declaration"), each filed concurrently with the Motion, the notice given of this Motion, all other relevant papers of record, and any evidence or argument that may be presented to the Court before or at the hearing on the Motion.

## I.

## INTRODUCTION

On November 2, 2021, the Court entered the *Amended Order Finally Approving Amended Disclosure Statement and Confirming Modified Second Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee (Dated May 20, 2021)* as Docket No. 966 (the "Amended Confirmation Order"), which, among other things, authorizes the Debtors to (1) consummate and close on the sale of 60 of their real properties as a portfolio (the "Portfolio Sale") in phases, (2) sell certain other Real Property (as defined in the Plan), individually to buyers outside of the Portfolio Sale, and (3) implement the Plan via a mechanism that provides for properties not sold as part of an initial closing to remain property of the Debtors' estates pending the disposition of such property. To ensure transparency regarding steps that the Debtors and the Initial PFI Trustee must take both in anticipation of the Effective Date of the Plan and to implement the Plan once it becomes effective, the Debtors move for Court authority for the CRO and Initial PFI Trustee to appoint Mr. Hinkelman as both the Winddown Agent to take the Winddown Actions on behalf of the Debtors' estates and the Distribution Agent under the Plan to make distributions to creditors as set forth in the confirmed Plan.

-2-

## II.

## FACTUAL BACKGROUND

To support this Motion, the Debtors incorporate by this reference the facts stated in the CRO Application,[3] the Disclosure Statement[4] and the Plan Modification Motion,[5] each of which the Debtors previously filed with the Court and is available free of charge at the court docket that the Debtors' Noticing Agent is maintaining on its website, regarding the background of the Debtors' bankruptcy, Mr. Hinkelman's retention and employment as the Original Debtors' CRO, background regarding the Plan (including modifications thereto), and the terms of the confirmed Plan, as modified.[6] In addition, the Debtors provide these facts to support the Motion:

### A. The Need to Appoint the Winddown Agent

The Plan provides, among other things, that "[o]n the Effective Date [of the Plan], each of the Debtors' existing directors, officers, and managers shall be terminated automatically without the need for any Corporate Action and without the need for any corporate or limited liability company filings, and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated)." Plan at Section 4.2.1. The Plan further provides that the PFI Trustee will succeed to the powers and authority of the Debtors' directors, officers, and managers after the Effective Date, but only in respect of the PFI Trust Assets. *See id.* Notwithstanding the foregoing, the Plan also

---

[3] The "CRO Application" is the *Debtors' Omnibus Motion for an Order: (I) Approving the Engagement Terms Between the Debtors and FTI Consulting, Inc. to Provide Andrew Hinkelman as the Debtors' Chief Restructuring Officer Under Section 363 of the Bankruptcy Code; and (II) Expanding the Scope of FTI Consulting, Inc.'s Employment Under Section 327 the Bankruptcy Code, Effective January 4, 2021* filed with the Court on February 3, 2021, as Dkt. No. 383.

[4] The "Disclosure Statement" is the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors and Supported by the Ad Hoc LLC Members Committee and the Ad Hoc DOT Noteholders Committee* filed with the Court on April 16, 2021, as Dkt. No. 572.

[5] The "Plan Modification Motion" is the *Plan Proponents' Motion to (I) Modify Confirmed Second Amended Joint Chapter 11 Plan of Professional Financial Investors, Inc. and Its Affiliated Debtors and (II) Enter Amended Confirmation Order* filed with the Court on September 30, 2021 as Dkt. No. 928.

[6] The docket for the Debtors' lead bankruptcy case, *In re Professional Financial Investors, Inc., et al.* (Case No. 20-30604) and all documents filed with the Court are available, free of charge, on the website of the Debtors' Noticing Agent, Donlin, Recano & Company, Inc. (the "Noticing Agent"): https://www.donlinrecano.com/Clients/pfi/Index.

Case: 20-30604    Doc# 1008    Filed: 11/24/21    Entered: 11/24/21 00:18:00    Page 4 of 14

states that "unsold Real Property not subject to the Portfolio Sale shall remain property of the Estates, and shall not, under any circumstances, vest either automatically or without Court order in any other entity, including the PFI Trust, and instead such property shall expressly remain property of the Estates" after the Effective Date of the Plan. Plan at Section 4.9.7. Given these provisions, the Debtors believe it is imperative that someone with extensive experience and knowledge of the Debtors, their operations, and the Real Property – such as Mr. Hinkelman – ensures that estate assets are preserved and their value maximized after the Effective Date of the Plan and until the assets are properly sold and liquidated for the benefit of creditors. Thus, the Debtors believe that it is in their best interests, and the best interests of creditors and the PFI Trust, for the Court to approve the appointment of Mr. Hinkelman as Winddown Agent to liquidate and administer the Debtors' estates after the Effective Date of the Plan to hold, manage, and maximize the value of assets that will remain property of the Debtors' estates after the Effective Date of the Plan and otherwise wind down the Debtors' businesses. In effect, Court approval of Mr. Hinkelman's service to the Debtors as their Winddown Agent will permit him to continue carrying out his duties as the Original Debtors' CRO as they relate to the Debtors' Estates after the Effective Date of the Plan, except that Mr. Hinkelman also will be responsible for winding down and dissolving the Debtors' Estates after liquidation and disposition of all of their assets.

**B.  Steps the Debtors Must Take to Implement the Plan and Ensure an Orderly Winddown**

The Debtors anticipate closing on the Portfolio Sale in early December 2021, which means the Effective Date will also occur in early December 2021. As soon after the Effective Date of the Plan as practicable, the Debtors intend to sell Real Property that will remain in their estates (i.e., the Real Property that is not being sold to Hamilton Zanze through the Portfolio Sale). As the Debtors close both the Portfolio Sale and the one-off transactions contemplated by the Plan, the Debtors will transfer the purchased assets to the respective buyers of the Portfolio Sale and the Real Property sales. To effectuate the closing of the Portfolio Sale and the sale of the Debtors' Real Property as set forth in the Plan and to liquidate and administer the Debtors' estates after the Effective Date of the Plan, the Debtors believe it is in their best interests, and the best interests of

-4-

Case: 20-30604   Doc# 1008   Filed: 11/24/21   Entered: 11/24/21 00:18:00   Page 5 of 14

MOTION TO IMPLEMENT PLAN AND WINDDOWN DEBTORS' ESTATES

creditors, for Mr. Hinkelman to enter into the Winddown Agreement with the Initial PFI Trustee, effective as of the Effective Date of the Plan. The Winddown Agreement provides for the appointment of Mr. Hinkelman as the Winddown Agent and will govern the post-Effective Date scope and terms of his services (including his compensation) to the Debtors and the PFI Trust to further the Plan and the liquidation and dissolution of the Debtors.

As of the filing of this Motion, the Debtors know certain Winddown Actions are necessary to ensure that the value of the Debtors' assets are preserved and maximized to benefit creditors, and that the Debtors' estates are timely and orderly liquidated and dissolved, to further the confirmed Plan, subject to Court approval. These Winddown Actions include, but are not limited to, (1) entry, by and between the CRO and Initial PFI Trustee, into the Winddown Agreement; (2) Mr. Hinkelman's appointment as the Winddown Agent under the Winddown Agreement; (3) entry, by PFI, into a license agreement with Hamilton Zanze for use of the Debtors' current headquarters through January 31, 2022 (at no cost to the Debtors' Estates); (4) the destruction of documents and data in the Debtors' possession unnecessary for potential litigation, including third party litigation; (5) Mr. Hinkelman's appointment as the Distribution Agent under the Plan concurrent with his appointment as the Debtors' Winddown Agent until the Debtors' estates are fully liquidated and wound down; and (6) such other acts that the CRO or the PFI Trustee may determine is necessary and appropriate to fully liquidate, administer, and dissolve the Debtors' Estates.

## III.
## JURISDICTION AND VENUE

This Court has jurisdiction over the Debtors, their estates, and this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## IV.
## RELIEF REQUESTED

By this Motion, the Proponents request the Court enter the form of proposed order attached hereto as **Exhibit A** (the "Order") and (a) authorize Mr. Hinkelman, in his capacity as the Original

Debtors' CRO, to enter into the Winddown Agreement with the Initial PFI Trustee and be appointed as the Winddown Agent to take the Winddown Actions, which include, but are not limited to, (i) entry, by PFI, into a license agreement with Hamilton Zanze for use of the Debtors' current headquarters through January 31, 2022, (ii) the preparation and filing of final tax returns, (iii) compliance with final debtor in possession or post-confirmation U.S. Trustee reporting requirements, (iv) the destruction of documents that do **not** relate to potential litigation claims, including potential third party litigation claims, (v) provision of ongoing accounting support to the Debtors, and (vi) the retention of professionals appropriate and necessary for the administration, liquidation, winddown, and dissolution of the Debtors' estates; (b) approve the appointment, by the Initial PFI Trustee, of Mr. Hinkelman as the Distribution Agent under the Plan concurrent with his appointment as the Winddown Agent until the Debtors' estates are fully liquidated and wound down; and (c) grant such other related relief as the Court deems appropriate.

## V.

## **BASIS FOR RELIEF**

Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).[7] Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law throughout the

---

[7] *See also United States v. Energy Resources Co.*, 495 U.S.545, 549 (1990); *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008); *Martin v. United States (In re Martin)*, 150 B.R. 43, 47 (Bankr. S.D. Cal. 1993) (noting the Court's "broad" powers under Section 105); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 2005 WL 435207, *14 (D.N.J. Feb. 25, 2005) (reciting the power of the bankruptcy court to "… issue any order … that is necessary or appropriate to carry out the provisions of … [title 11]"); *see also CRO Application* at Section VII.

-6-

Case: 20-30604 Doc# 1008 Filed: 11/24/21 Entered: 11/24/21 00:18:00 Page 7 of 14
MOTION TO SUPPLEMENT PLAN AND WINDDOWN DEBTORS' ESTATES

country, if a debtor's proposed use of its assets under section 363 (b) of the Bankruptcy Code represents a reasonable business judgment on part of the debtor, such use should be approved.[8]

## A. The Winddown Agreement Has Been Negotiated at Arm's Length and in Good Faith

The terms of the Winddown Agreement were negotiated by the Original Debtors' CRO and the Initial PFI Trustee, at arm's length and in good faith. The Winddown Agreement provides for an orderly liquidation and dissolution of the Debtors' estates after the Plan becomes effective. During the term of the Winddown Agreement, the Debtors will need to prepare their estates for liquidation and dissolution, including but not limited to, transferring estate assets to purchasers of the Debtors' Real Property and related assets, the destruction of certain estate property, including documents that do not relate to potential litigation claims, and such other acts as may be appropriate and necessary to ensure that the Debtors and the PFI Trust implement the (modified) Plan as confirmed.

The Debtors submit that the CRO's entry into the Winddown Agreement is a sound exercise of the Original Debtors' business judgment and satisfies section 363 of the Bankruptcy Code as the services to be rendered by the Winddown Agent under the Winddown Agreement are necessary and essential to the Debtors' implementation of the Plan after the Effective Date. Based upon Mr. Hinkelman's extensive experience working with the Debtors' professionals and Mr. Goldberg, in his capacity as the Debtors' independent director, knowledge of the Debtors' financial affairs and operations, the terms of the Plan, and decades of experience providing

---

[8] *See e.g., In re 240 North Brand Partners*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the actions were in the best interests of the company.'"); *see also CRO Application* at Section VII.

Case: 20-30604 Doc# 1008 Filed: 11/24/21 Entered: 11/24/21 00:18:00 Page 8 of 14

SMRH:4806-0147-7304.4 MOTION TO IMPLEMENT PLAN AND WINDDOWN DEBTORS' ESTATES

management and financial services to distressed companies, the Debtors believe Mr. Hinkelman's continued service of the Debtors through the liquidation and dissolution of their estates is appropriate, necessary, and the most efficient way to ensure that the Plan is implemented as contemplated.

As the proposed Winddown Agent, Mr. Hinkelman's service to the Debtors will, effectively, be a continuation of services he has been rendering to the Original Debtors as their CRO, provided, however, that after the Effective Date, Mr. Hinkelman will manage the Debtors and their financial affairs through the liquidation, disposition, winddown, and dissolution of their estates. Without Mr. Hinkelman's agreement to continue maximizing the Debtors' value to benefit creditors, the Debtors would be forced to identify, retain, and employ yet another person as intimately involved with the Debtors and willing to work with them through liquidation and dissolution. Few people are qualified to perform such tasks and, even if qualified, may not be willing to work with the Debtors given the temporary nature of the role of the Winddown Agent and even Distribution Agent under the Plan. Mr. Hinkelman's willingness to continue in service of the Debtors' estates to winddown their financial and business affairs and to serve as both the Winddown Agent and the Distribution Agent under the Plan is beneficial to the Debtors and their creditors. Court approval of the Winddown Agreement and the terms thereof, then, is imperative to the Debtors' ability to consummate the Plan as confirmed.

**B.** **The Debtors Must Be Authorized to Destroy Documents Not Necessary for Potential Litigation, Including Third Party Litigation**

The Debtors currently possess tens of thousands, if not millions, of pages of documents and data housed on the Debtors' computers that the Plan does not contemplate transferring to a purchaser of Real Property or the PFI Trust. A significant portion of these documents may include personally identifiable information of Investors (as defined in the Plan) and other non-Debtor parties that are not relevant to the Debtors' business, the proposed sales of Real Property and associated transfers of estate assets, or potential litigation to be commenced by the PFI Trust on behalf of the Debtors' estates or other third parties in connection with criminal or other civil

proceedings based on the fact that the Debtors' prior management operated the Debtors' enterprise as a Ponzi scheme.

The Debtors believe it is appropriate and necessary to destroy such documents and data to (1) prepare for transferring the Debtors' headquarters to Hamilton Zanze, including vacating the offices at the Debtors' headquarters before January 31, 2022, and (2) otherwise ready the Debtors to liquidate and dissolve after transferring their assets to the respective purchasers of Real Property and the PFI Trust, as set forth in the Plan. Given the nature of the Debtors' prior operations and management as a Ponzi scheme, the Debtors and their current management and professionals are highly attuned to the sensitive nature of documents in the Debtors' possession and the potential value of certain documents to potential or ongoing litigation, including third party litigation, where the Debtors are neither plaintiffs nor defendants. The Debtors and their professionals have reviewed the documents and believe those documents relevant to potential or ongoing litigation, including third party litigation, already have been segregated or otherwise produced. By this Motion, the Debtors seek authority to destroy documents and data **not** required or relevant for any potential or ongoing litigation as such destruction of documents and data would alleviate the Debtors from the burden of continuing to house such documents and data, including the potential for expending estate resources to continue to house such documents and data for an indefinite amount of time. The Debtors represent that their request for authority to destroy documents is to further successful implementation and consummation of the Plan, which provides for, among other things, the vacating and transfer of the Debtors' headquarters (where most documents and data are now located) to Hamilton Zanze, and the maximization of the Debtors' value to benefit creditors.

C. **The Debtors Seek Authority for Mr. Hinkelman to Be Appointed as Distribution Agent under the Plan Concurrently with His Appointment as the Winddown Trustee**

Section 1.52 of the Plan defines "Distribution Agent" as (i) "[t]he person or entity serving as the PFI Trustee, but solely in his, her or its separate capacity as distribution agent under the Plan with respect to Distributions to Holders of Allowed Administrative Claims (including Professional Fee Claims), Involuntary Gap Claims, Priority Tax Claims, and Claims in Classes 1,

-9-

2 and 3 on account of such Allowed Claims, or (ii) any party designated by the PFI Trustee to serve in such capacity." *See* Plan at Section 1.52. The Initial PFI Trustee has determined to appoint Mr. Hinkelman as the Distribution Agent under the Plan.

As the Plan provides that certain of the Debtors' assets will remain estate property after the Effective Date of the Plan and the Debtors are seeking Court approval of the Winddown Agreement and the appointment of Mr. Hinkelman as the Winddown Agent, the Debtors believe it is appropriate to seek Court approval for the concurrent appointment of Mr. Hinkelman as the Distribution Agent under the Plan. As described above, Mr. Hinkelman is intimately familiar with the Debtors, their financial affairs and business operations, the Debtors' professionals, and the terms of the confirmed Plan as modified. Further, Mr. Hinkelman has extensive experience acting as the distribution agent under confirmed plans in other chapter 11 cases. The Debtors firmly believe that Mr. Hinkelman can, and will, efficiently and effectively serve the Debtors' estates and the PFI Trust as both the Winddown Agent and the Distribution Agent under the Plan, all of which will inure to the benefit of creditors.

## VI.

## **CONCLUSION**

The Debtors request that the Court enter the proposed order (a) authorize Mr. Hinkelman, in his capacity as the Original Debtors' CRO, to enter into the Winddown Agreement with the Initial PFI Trustee and be appointed as the Winddown Agent to take the Winddown Actions, which include, but are not limited to, (i) entry, by PFI, into a license agreement with Hamilton Zanze for use of the Debtors' current headquarters through January 31, 2022, (ii) the preparation and filing of final tax returns, (iii) compliance with final debtor in possession or post-confirmation U.S. Trustee reporting requirements, (iv) the destruction of documents that do **not** relate to potential litigation claims, including potential third party litigation claims, (v) provision of ongoing accounting support to the Debtors, and (vi) the retention of professionals appropriate and necessary for the administration, liquidation, winddown, and dissolution of the Debtors' estates; (b) approve the appointment, by the Initial PFI Trustee, of Mr. Hinkelman as the Distribution

-10-

Agent under the Plan concurrent with his appointment as the Winddown Agent; and (c) grant such other related relief as the Court deems appropriate..

Dated: November 23, 2021

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    */s/ Ori Katz*
ORI KATZ
J. BARRETT MARUM
JEANNIE KIM
MATT KLINGER

Counsel for the Debtors

**Exhibit A**

Proposed Order

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PROFESSIONAL FINANCIAL INVESTORS, INC., *et al.*,<br><br>Debtors.[1] | Case No. 20-30604<br>(Jointly Administered)<br>Chapter 11<br><br>**[PROPOSED] ORDER AUTHORIZING DEBTORS TO WIND DOWN THEIR ESTATES IN FURTHERANCE OF THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF PROFESSIONAL FINANCIAL INVESTORS, INC. AND ITS AFFILIATED DEBTORS**<br><br>Date: December 16, 2021<br>Time: 10:00 a.m.<br>Place: **Telephonic/Video Appearances Only**<br>450 Golden Gate Avenue, 16th Floor<br>Courtroom 19<br>San Francisco, CA 94102<br>Judge: Hon. Hannah L. Blumenstiel |

The *Debtors' Motion For Authority To Wind Down Their Estates In Furtherance Of The Modified Second Amended Joint Chapter 11 Plan Of Professional Financial Investors, Inc. And Its Affiliated Debtors* (the "Motion") filed on November 23, 2021, as Docket No. **[•]**, came on for hearing on December **[•]**, 2021. Appearances were as noted on the Court's record. The Court having read and considered the Motion, the declarations and documents filed to support the Motion, the arguments of counsel, and finding that notice given of the hearing on the Motion was appropriate under the circumstances,

IT IS ORDERED that:

---

[1] "Debtors" means, collectively, Professional Financial Investors, Inc. ("PFI"), Professional Investors Security Fund, Inc. ("PISF"), and the affiliated debtors in the above-captioned jointly administered chapter 11 cases.

-1-

1. The Motion is GRANTED. Capitalized terms not otherwise defined in this Order shall have the same meanings ascribed to them in the Motion.

2. Andrew Hinkelman, in his capacity as the Original Debtors' CRO, is authorized to:

    a. Enter into the Winddown Agreement with the Initial PFI Trustee and be appointed as the Winddown Agent; and

    b. Take Winddown Actions that including, but are not limited to:

        i. On behalf of PFI, entering into a license agreement with Hamilton Zanze for use of the Debtors' current headquarters through January 31, 2022 (at no cost to the Debtors), to ensure the orderly liquidating the Debtors' estates,

        ii. The preparation and filing of final tax returns,

        iii. Compliance with final debtor in possession or post-confirmation U.S. Trustee reporting requirements,

        iv. The destruction of documents that do **not** relate to potential litigation claims, including potential third party litigation claims,

        v. The provision of ongoing accounting support to the Debtors, and

        vi. The retention of professionals appropriate and necessary for the administration, liquidation, winddown, and dissolution of the Debtors' estates.

3. Mr. Goldberg, in his capacity as the Initial PFI Trustee as of the Effective Date of the Plan, is authorized to appoint Mr. Hinkelman as the Distribution Agent under the Plan concurrently with his appointment as the Winddown Agent.

* * * END OF [PROPOSED] ORDER * * *