Debra I. Grassgreen (CA Bar No. 169978)
John D. Fiero (CA Bar No. 136557)
Cia H. Mackle (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower
40th Floor, Suite 4000
San Francisco, California 94105-1020
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
jfiero@pszjlaw.com
cmackle@pszjlaw.com

Counsel for the
Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

In re:

PROFESSIONAL FINANCIAL INVESTORS, INC. , a California corporation, *et al.*,

Debtors.

Case No. 20-30604 (HLB)

(Jointly Administered)

Chapter 11

**FOURTH AND FINAL APPLICATION OF PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

[Fourth Application Period: October 1, 2021 – December 15, 2021]

[Employment Period: August 23, 2020 – December 15, 2021]

Date: February 17, 2022
Time: 10:00 a.m.
Judge: Hannah L. Blumenstiel
Place: Telephonic/Video Appearances Only
450 Golden Gate Avenue
16th Floor, Courtroom 19
San Francisco, CA 94102

Pachulski Stang Ziehl & Jones LLP ("PSZJ" or the "Firm") hereby submits its *Fourth and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses* (the "Application"), as counsel to the Official Committee of Unsecured Creditors ("Committee")

Case: 20-30604 Doc# 1081-1 Filed: 01/20/22 Entered: 01/20/22 11:28:16 Page 1 of 32

of Professional Financial Investors, Inc. ("PFI"). This Application requests entry of an order allowing, on a final basis, compensation to the Firm for services rendered to the Committee and expenses incurred during the period from August 23, 2020 through December 15, 2021 (the "Employment Period").

The Firm seeks approval on a final basis of its fees incurred and reimbursement of expenses during the Employment Period totaling **$2,414,853.72** which sum represents compensation for legal services rendered in the amount of **$2,399,842.70** (after application of an 17% courtesy discount) and reimbursement for expenses incurred in the amount of **$15,011.02**, consisting of:

(a) $1,716,164.28, in previously approved and paid fees incurred during the Employment Period;

(b) $8,059.41 in previously approved and paid expenses during the Employment Period;

(c) $366,797.52 in previously approved but withheld fees incurred during the Employment Period;

(d) $301,880.90 in fees incurred and $6,961.61 in expenses advanced for fees and expenses incurred during the period October 1, 2021 through December 15, 2021 (the "Fourth Fee Period"); and

(e) an estimated $15,000.00 in connection with preparing this Application and any responses to objections thereto.

| Application Period | Fees Allowed/Sought | Expenses Allowed/Sought | Fees/Expenses Paid | Withheld Fees |
|---|---|---|---|---|
| 1st | $549,362.25 | $1,167.06 | $440,656.86 | $109,872.45 |
| 2nd | $1,035,651.15 | $1,484.45 | $830,005.37 | $207,130.23 |
| 3rd | $497,948.40 | $5,407.90 | $453,561.46 | $49,794.84 |
| Subtotal: | $2,082,961.80 | $8,059.41 | $1,724,223.69 | $366,797.52 |
| 4th | $301,880.90 | $6,951.61 | | |
| Est. Add'l | $15,000.00 | $0.00 | | |
| **Totals** | **$2,399,842.70** | **$15,011.02** | | |

The Firm has already received $1,724,223.69 in connection with the interim fee applications.

The Firm spent a total of 3,067.7 hours during the Employment Period. If the Firm had not agreed to (a) a 10% discount and (b) charge its 2020 rates in 2021, the fees incurred would have

been $2,880,946.50. *Accordingly, the benefit to the estate produced by these two concessions resulted in a savings of $496,103.80 in fees incurred, an overall reduction of over 17.2%.*

This Application is based upon the contents hereof, together with the exhibits, the declaration of John Fiero filed concurrently herewith, the pleadings, papers, and records on file in this cases, and any evidence or argument that the Court may entertain at the time of the hearing on the Application. This Application is subject to the United States Department of Justice's *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases* (the "Large Case Guidelines") Summary charts complying with the Large Case Guidelines and detailing the amount of fees charged and hours worked by each of the Firm's professionals and paraprofessionals during the Employment Period and Fourth Fee Period are attached hereto as **Exhibit C** through **Exhibit H**.

## I.

## BACKGROUND

### A. General Background

On July 16, 2020, Jacques Achsen, Samuel Goldberger, Elizabeth Goldblatt, Arthur Indenbaum, Andrew Michaels, Mary Michaels, and Joel Rubenzahl (the "Petitioning Creditors") worked with the Firm to commence an involuntary chapter 11 bankruptcy action against Debtor Professional Investors Security Fund, Inc. ("PISF" and, together with PFI, the "Original Debtors"). On July 26, 2020, PISF filed a consent to the entry of an order for relief in the PISF Case, which this Court entered on July 27, 2020.

Also on July 26, 2020 (the "Petition Date"), PFI commenced its bankruptcy case by filing a voluntary chapter 11 petition.

On July 27, 2020, the Court entered an *Order Directing the Joint Administration of Related Cases* [ECF No. 12], thereby jointly administering the chapter 11 cases of the Original Debtors for procedural purposes, and designating Case No. 20-30604 as the "lead case."

On August 19, 2020, the Office of the United States Trustee appointed a seven-member Official Committee of Unsecured Creditors. The seven members of the Committee are: (i) Peter

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

and Anne Bagatelos Revocable Trust; (ii) Lisa de Mondesir; (iii) Elizabeth Goldblatt; (iv) Paul S. Greidanus; (v) William Howard Levine; (vi) Keith Merron; and (vii) Pardi Revocable Trust.

On November 20, 2020, PFI filed involuntary chapter 11 petitions against many of the remaining Debtors (collectively, the "LLC/LP Debtors" and together with the Original Debtors, the "Debtors") under chapter 11 of the Bankruptcy Code, commencing the LLC/LP Cases. On December 11, 2020, this Court entered an order for relief against each of the LLC/LP Debtors.

Between February 3-4, 2021, PFI filed involuntary chapter 11 petitions against ten additional limited liability company affiliates (the "February 2021 Debtors"), and this Court subsequently entered orders for relief against the February 2021 Debtors.

On December 17, 2020, the Court entered an *Order Directing the (I) Joint Administration of Related Cases and (II) Temporary Suspension Of Deadline For Filing Proofs Of Claim* [ECF No. 302], thereby jointly administering these chapter 11 cases for procedural purposes.

**B. Employment of PSZJ**

On September 10, 2020, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Order Approving Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors* [Docket No. 108] (the "Retention Application"). On October 6, 2020, the Court entered its *Order Approving Application of the Official Committee of Unsecured Creditors for Order Approving Employment of Pachulski Stang Ziehl & Jones LLP as Counsel to the Official Committee of Unsecured Creditors* [Docket No. 185] (the "Retention Order"). A true and correct copy of the Retention Order is attached hereto as **Exhibit A**.

**C. PSZJ's Prior Requests for Compensation**

On January 21, 2021, the Firm filed its *First Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period August 23, 2020 through November 30, 2020* [Docket No. 362] and subsequently filed its *Amendment to Descriptions for Certain Time Entries Included in First Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period August 23, 2020 through November 30, 2020* [Docket No. 476] (together, the "First Application").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

On March 31, 2021, the Court entered an order approving the First Application and awarding interim compensation for professional services rendered during the first application period of August 23, 2020 through November 30, 2020, in the aggregate amount of $550,529.31, consisting of $549,362.25 of fees and $1,167.06 of expenses [Docket No. 521]. The Firm recently received $440,656.86 on account of the amount awarded in the First Application.

On June 25, 2021, the Firm filed its *Second Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period December 1, 2020 through April 30, 2021* [Docket No. 706] and subsequently filed its *Amendment to Descriptions for Certain Time Entries Included in Second Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period December 1, 2020 through April 30, 2021* [Docket No. 794] (together, the "Second Application").

On November 4, 2021, the Court entered an order approving the Second Application and awarding interim compensation for professional services rendered during the second application period of December 1, 2020 through April 30, 2021, in the aggregate amount of $1,037,135.60, consisting of $1,035,651.15 of fees and $1,484.45 of expenses [Docket No. 968]. The Firm recently received $830,005.37 on account of the amount awarded in the Second Application.

On June 25, 2021, the Firm filed its *Third Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period May 1, 2021 through September 30, 2021* [Docket No. 975] and subsequently filed its *Amendment to Descriptions for Certain Time Entries Included in Third Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period May 1, 2021 through September 30, 2021* [Docket No. 1021] (together, the "Third Application").

On December 16, 2021, the Court entered an order approving the Third Application and awarding interim compensation for professional services rendered during the third application period of May 1, 2021 through September 30, 2021, in the aggregate amount of $503,356.30, consisting of $497,948.40 of fees and $5,407.90 of expenses [Docket No. 1049]. The Firm recently received $453,561.46 on account of the amount awarded in the Third Application.

**D. Present Posture of the Case**

As the Court well knows, the confirmed plan of reorganization became effective on December 15, 2021 when the portfolio sale of the vast majority of the Debtors' real estate to Hamilton Zanze closed for a purchase price of approximately $436,500,000. At the same time, the estates and the Committee implemented the Court-approved clawback settlement plan which, to date, has generated approximately $4.3 million in clawback settlement payments. The arduous process of claims review and allowance is well underway, with much work already having been completed. Additionally, the Committee has handed over the reins to the successor creditor voice – the PFI Trust's Board of Advisors.

## II.

## SERVICES RENDERED

In accordance with the Northern District Guidelines and the Local Rules, PSZJ classified all services performed for which compensation is sought into categories. PSZJ attempted to place the services performed in the category that best relates to the service provided. However, because certain services affected multiple categories, services pertaining to one category may occasionally be included in another category. The fact that similar services appear in several different categories did not result in any duplication of work or billing.

PSZJ has utilized the following billing categories during the Fourth Fee Period:

- Asset Analysis / Recovery
- Asset Disposition
- Avoidance Actions
- Bankruptcy Litigation
- Case Administration
- Claims Administration / Objections
- Compensation of Professionals
- Investor Communications
- Litigation (Non-Bankruptcy)
- Meeting of Creditors
- Plan and Disclosure Statement
- Settlement
- Tax Issues

**Exhibit B** includes the Firm's invoice for the Fourth Fee Period, which includes detailed breakdown of the time entries and expenses incurred. The amounts described below represent the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Firm's actual hourly rates, not the discounted amounts for which approval is sought (which discount is approximately 19.4% for this Fourth Fee Period).

**A. Asset Analysis / Recovery**

Time billed to this category was de minimis

**Total Hours 1.30/Total Fees $1,211.00**

**B. Avoidance Actions**

During the Fourth Fee Period, the Firm, among other things implemented the clawback procedures which involved overseeing and the clawback demand mailing to approximately 330 net winners. The Firm assisted over 100 "net winners" with understanding their netting statements and obtaining settlement agreements (or other agreements to resolve a clawback, such as aggregating units of account, where appropriate) from approximately 150 net winners. The result of the Firm's efforts has resulted in approximately $4.3 million in clawback settlement payments, and a reduction of the claim pool by several million dollars. In addition, the Firm oversaw the hardship application process in coordination with Michael Goldberg, in which approximately 25 "net winners" without the capacity to pay the clawback settlement provided proof of their financial situation. The Estates were then able to enter into hardship settlements or inform such applicants that the PFI Trust would not pursue a clawback against them.

**Total Hours 209.00/Total Fees $161,004.50**

**C. Asset Disposition**

During the Fourth Fee Period, the Firm, among other things addressed various sale issues including responding to investor inquiries regarding the sale status, attended to deed of trust lien removal issues and tenant-in-common issues, and participating in discussions regarding the closing.

**Total Hours 4.3/Total Fees $4,383.00**

**D. Bankruptcy Litigation**

During the Fourth Fee Period, the Firm, among other things: (i) addressed discovery matters including the collection of documents, email and data in connection with third party claim analyses; (ii) communicated with prospective counsel regarding the contingent fee counsel

Case: 20-30604 Doc# 1081-1 Filed: 01/20/22 Entered: 01/20/22 11:28:16 Page 7 of 32

selection process; (iii) reviewed and analyzed issues presented by loan documents; and (iv) performed research in connection with those loan document issues.

**Total Hours 30.10/Total Fees $30,483.00**

**E.      Case Administration**

This category relates to work regarding administration of these cases. During the Fourth Fee Period, the Firm, among other things: (i) collaborated with counsel for the Debtors and Ad Hoc Committees to avoid duplicating work among the constituencies (ii) conferred and corresponded with professionals regarding case status and administration; (iii) maintained a memorandum of critical dates and circulated to appropriate parties; and (iv) prepared weekly working task lists that were shared with and discussed by all estate professionals.

**Total Hours 19.00/Total Fees $18,548.00**

**F.      Claims Administration / Objections**

This category relates to the review and analysis of investor claims generally. During the Fourth Fee Period, the Firm, among other things, (i) responded to claimants regarding their proofs of claim; (ii) prepared a motion to approve investor claims procedures; (iii) communicated with counsel regarding the proposed investor claims procedures and timelines; (iv) prepared a motion to set an investor claims bar date; (v) addressed issues in connection with the finalization of investor claims packages; and (vi) reviewed claims and responded to creditors to resolve their claim issues.

**Total Hours 77.70/Total Fees $63,842.00**

**G.      Compensation of Professionals**

During the Fourth Fee Period, the Firm, among other things: (i) prepared its Third Fee Application; (ii) monitored budgeted professional fees compared to actual fees; and (iii) addressed inquiries from the U.S. Trustee in connection with the Firm's Third Application and prepared a response thereto.

**Total Hours 24.50/Total Fees $20,173.00**

**H.      Investor Communications**

During the Fourth Fee Period, the Firm prepared for and attended regular "all investor" meetings conducted on Monday evenings, and prepared minutes thereof for distribution to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

committees. The Firm also edited and provided content for the weekly emails sent by the Committee to investors generally, thereby communicating with investors regarding operational questions and providing case status updates.

**Total Hours 18.50/Total Fees $17,730.50**

**I. Litigation (non-Bankruptcy)**

During the Fourth Fee Period, the Firm addressed issues in connection with a subpoena request, including the upload, searching and culling of document relevant to a subpoena production required as a result of a pending class action lawsuit involving PFI.

**Total Hours 7.10/Total Fees $5,325.00**

**J. Meeting of Creditors**

During the Fourth Fee Period, the Firm prepared for and attended weekly meetings with Committee members and meetings with all three Committees regarding general case status updates, stalking horse issues, forensic analyses, and asset strategies.

**Total Hours 20.30/Total Fees $20,342.50**

**K. Plan and Disclosure Statement**

During the Fourth Fee Period, the Firm, among other things: (i) addressed issues with respect implementation of the Plan; (ii) attended transition calls; (iii) reviewed and analyzed plan modification motion and attended a hearing on the same; and (iv) reviewed edits to Plan documents.

**Total Hours 10.80/Total Fees $11,953.00**

**L. Settlement**

During the Fourth Fee Period, the Firm prepared a compromise motion and supporting papers relating to the first priority lien lenders' claims for prepayment penalties. The approval of this motion saved the estate almost $3 million in such penalties.

**Total Hours 17.50/Total Fees $18,170.50**

**M. Tax Issues**

During the Fourth Fee Period, the Firm, among other things, conferred with its advisors regarding tax issues.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 20-30604 Doc# 1081-1 Filed: 01/20/22 Entered: 01/20/22 11:28:16 Page 9 of 32

**Total Hours 1.30/Total Fees $1,520.00**

**N. List of Expenses by Category**

PSZJ advanced costs, including certain in-house charges in connection with the performance of the services described in this Application. During the Fourth Fee Period, PSZJ incurred a total of $6,951.61 in expenses. As this modest amount reflects, PSZJ made every effort to keep the costs in this case to a minimum. A summary chart detailing the type and amount of expenses incurred during the Fourth Fee Period is attached hereto as **Exhibit H-2**.

PSZJ customarily charges $0.20 per page for photocopying expenses, as well as $0.10 per page for scanning and copying expenses. PSZJ's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier. PSZJ summarizes each client's photocopying charges on a daily basis. Whenever feasible, PSZJ sends large copying projects to an outside copy service that charges a reduced rate for photocopying.

Regarding providers of on-line legal research, PSZJ charges the standard usage rates these providers charge for computerized legal research. PSZJ bills its clients the actual amount charged by such services, with no premium. Any volume discount received by PSZJ is passed on to the client. PSZJ does not charge for local or long distance calls placed by attorneys from their offices. PSZJ only bills its clients for the actual costs charged to PSZJ by teleconferencing services in the event that a multiple party teleconference is initiated through PSZJ.

**O. Hourly Rates**

The hourly rates of all professionals and paraprofessionals rendering services in this case are set forth on the Billing Summary Chart on **Exhibit D** annexed hereto.

**P. Professionals and Paraprofessionals**

The biographies of the attorneys and paraprofessionals who primarily worked on this matter and a description of their professional experience and education are attached hereto as **Exhibit I**. PSZJ has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any of the fees to be awarded in these proceedings, except to be shared among members of the Firm.

### Q. **Client Review of Billing Statements**

Pursuant to the Northern District Guidelines, an email enclosing this Application is being sent to each member of the Committee concurrently. This email invites the Committee to discuss with the Firm and/or the Office of the United States Trustee any objections, concerns, or questions the Committee may have with regard to the requested compensation and reimbursement set forth in the Application.

### R. **Notice of Application and Hearing**

Counsel for the Debtors have graciously agreed to provide notice of the submission of this Application and the hearing thereon to the Office of the United States Trustee, the Debtors, the Ad Hoc Committees, all parties requesting special notice and other interested parties in accordance with the Local Bankruptcy Rules. Complete copies of the Application will be promptly furnished to any other party upon specific request. Therefore, notice should be deemed adequate under the circumstances and in accordance with Federal Bankruptcy Rules 2002(a)(6) and 2002(c)(2). Finally, this Application is available from the claims agent, Donlin Recano, at no charge.

### S. **Other Compliance with Large Case Requirements**

Attached as **Exhibit C** through **Exhibit H** are the exhibits that PSZJ understands need to be completed and filed together with this Application in order to comply with the Large Case Guidelines. In addition, pursuant to paragraph C.5 of the Large Case Guidelines, PSZJ provides the following statements:

| INQUIRY | STATEMENTS |
| --- | --- |
| Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain | Yes, 10% discount from ordinary 2020 hourly rates, as stated in the Firm's employment application. This resulted in a savings of approximately 17.0% during the Employment Period and 19.4% during the Fourth Fee Period. |
| If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? | N/A |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| INQUIRY | STATEMENTS |
| --- | --- |
| Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? | No. |
| Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application). If so, please quantify by hours and fees. | No, although certain time modifying fee entries was incurred in response to comments from the UST. |
| Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees. | No. |
| If the fee application includes any rate increases since retention: i. Did your client review and approve those rate increases in advance? ii. Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458? | Although the Firm's standard hourly rates increased, and such rates are reflected on the detailed invoices, the Firm's courtesy discount eliminates the rate increase and provides an additional 10% discount off of the Firm's 2020 hourly rates. |

## III. THE FEES AND EXPENSES REQUESTED SHOULD BE AWARDED BASED UPON APPLICABLE LAW

The fees and expenses requested by this Application are an appropriate award for PSZJ's services in acting as counsel to the Committee.

### A. Evaluation of Requests for Compensation

Pursuant to section 330 of the Bankruptcy Code, the Court may award to a professional person reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred. Pursuant to section 331 of the Bankruptcy Code, the Court may award final compensation and reimbursement to a professional. As set forth above, the fees

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 20-30604 Doc# 1081-1 Filed: 01/20/22 Entered: 01/20/22 11:28:16 Page 12 of 32

for which the Firm requests compensation and the costs incurred for which the Firm requests reimbursement are for actual and necessary services rendered and costs incurred.

In determining the amount of allowable fees under section 330(a) of the Bankruptcy Code, courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters. " *Burgess v. Klenske* (*In re Manoa Finance Co., Inc*.), 853 F. 2d 687, 691 (9th Cir. 1988).

In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.* , 488 F. 2d 714, 717-719 (5th Cir. 1974, a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. , and *Kerr v. Screen Extras Guild, Inc.* , 526 F. 2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976): (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the service properly, (4) the preclusion of other employment by the professional due to acceptance of the case, (5) the customary fee, (6) whether fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the professionals, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F. 2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases).

The time for which compensation is sought is detailed in the Firm's invoices for the Fourth Fee Period annexed hereto as **Exhibit B**. PSZJ's services and time expenditures are reasonable in light of the labor required and outcome achieved in this case. The Firm's charges for its professional services are based upon the time, nature, extent, and value of such services and the cost of comparable services in the San Francisco area, other than in a case under the Bankruptcy Code. The compensation the Firm seeks by way of this Application is the customary compensation commonly sought by the Firm and other professionals representing trustees, committees, and debtors in similar circumstances.

### B. Section 330(a)(3) Factors

Section 330(a)(3) of the Bankruptcy Code sets forth five factors to be considered by the Court. Although several of these factors, such as the time involved and the timeliness of PSZJ's performance, were addressed above, PSZJ believes two of the five factors should be discussed separately again here.

First, section 330(a)(3)(C) of the Bankruptcy Code requires that the professional services be necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of, the case. PSZJ believes the facts of this case make it evident that PSZJ's services were both necessary and beneficial to the estate.

Third, section 330(a)(3)(E) of the Bankruptcy Code requires compensation to be reasonable based on customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. PSZJ believes that the fees charged by PSZJ are commensurate with the fees charged by PSZJ's counterparts engaged in non-bankruptcy specialties.

### C. Available Funds

As mentioned in footnote 1, supra, while the Debtors have substantial assets with value well over and above the amounts necessary to satisfy secured creditor claims, there are liquidity constraints that will prevent any estate professional from being paid at this time. Accordingly, no payment is expected prior to a plan becoming effective.

## IV.

## CONCLUSION

PSZJ requests final allowance of all fees and costs for the Employment Period. Neither PSZJ, nor any partners or associates of the Firm, have any agreement or any understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded PSZJ with any other person or attorney, except among members of the Firm.

PSZJ believes that the services rendered for which compensation is sought in this Application have been beneficial to investors and the estate, that the costs incurred have been necessary and proper, and that the sums requested for the services rendered and the costs incurred are fair and reasonable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

WHEREFORE, PSZJ respectfully requests that this Court authorize final allowance of the fees and costs of **$2,414,853.72** which sum represents compensation for legal services rendered in the amount of **$2,399,842.70** (after application of an 17% courtesy discount) and reimbursement for expenses incurred in the amount of **$15,011.02**, consisting of:

(a) $1,716,164.28, in previously approved and paid fees incurred during the Employment Period;

(b) $8,059.41 in previously approved and paid expenses during the Employment Period;

(c) $366,797.52 in previously approved but withheld fees incurred during the Employment Period;

(d) $301,880.90 in fees incurred and $6,961.61 in expenses advanced for fees and expenses incurred during the Fourth Fee Period and grant such other and further relief as may be appropriate under the circumstances; and

(e) an estimated $15,000.00 in connection with preparing this Application and any responses to objections thereto, subject to further detail to be by PSZJ prior to the hearing date.

Dated: January 20, 2022

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ John D. Fiero*
John D. Fiero
Debra I. Grassgreen

*Counsel for the Official Committee of Unsecured Creditors*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**EXHIBIT A**

**(Retention Order)**

**EXHIBIT B**

**(Invoices)**

# EXHIBIT C

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES WITH FEE APPLICATIONS**

(*See* Guidelines C.3. for definitions of terms used in this Exhibit.)

| CATEGORY OF TIMEKEEPER (using categories already maintained by the firm) | BLENDED HOURLY RATE | | |
|---|---|---|---|
| | BILLED OR COLLECTED<br>Firm or offices for preceding year, excluding bankruptcy* | BILLED<br>During the Fourth Fee Period (using discounted rates) | BILLED<br>During the Employment Period (using discounted rates) |
| Sr./Equity Partner/Shareholder | $1,050.00 | $892.77 | $925.33 |
| Of Counsel | $950.00 | $607.5 | $651.94 |
| Paraprofessionals | $450.00 | $382.50 | $383.45 |
| All timekeepers aggregated | | $683.93 | $777.99 |

* Represents approximate blended hourly rate. Non-estate work for PSZ&J represents a de minimis amount of the Firm's revenues as the Firm's engagements are primarily on behalf of debtors, official committees, and other estate-billed constituencies. For the fiscal year ending 2019, non-estate work represented approximately 4-5% of the Firm's revenues. In 2020, non-estate work represented approximately 5-7% of the Firm's revenues, and in 2021, it is expected that non-estate work will represent approximately 5-8% of the Firm's revenues.

**Represents an estimate for the aggregate blended hourly rate for all timekeepers on non-estate work.

| | |
|---|---|
| Case Name: | Professional Finance Investors, Inc., *et al.* |
| Case Number: | 19-30604 (HLB) |
| Applicant's Name: | Pachulski Stang Ziehl & Jones LLP |
| Date of Application: | 1/20/22 |
| Interim or Final: | Final |

# EXHIBIT D

## SUMMARY OF TIMEKEEPERS INCLUDED IN THIS APPLICATION

| NAME | TITLE OR POSITION | DEPT, GROUP OR SECTION | DATE OF ADMISSION (if applicable) | HOURS BILLED DURING FOURTH FEE PERIOD | HOURS BILLED DURING EMPLOYMENT PERIOD | FEES BILLED DURING FOURTH FEE PERIOD | FEES BILLED DURING EMPLOYMENT PERIOD | HOURLY RATE (with discount) |
|---|---|---|---|---|---|---|---|---|
| Isaac M. Pachulski | Partner | Bankruptcy | 1974 | 0.00 | 0.40 | $0.00 | $538.20 | $1,345.50 |
| Richard M. Pachulski | Partner | Bankruptcy | 1979 | 0.00 | 46.30 | $0.00 | $60,213.15 | $1,300.50 |
| Debra Grassgreen | Partner | Bankruptcy | 1992 | 36.20 | 647.10 | $35,675.10 | $637,717.05 | $985.50 |
| Henry Kevane | Partner | Bankruptcy | 1986 | 0.00 | 3.00 | $0.00 | $2,902.50 | $967.50 |
| Iain A.W. Nasatir | Partner | Bankruptcy | 1983 | 0.00 | 11.50 | $.00 | $10,608.75 | $922.50 |
| Kenneth H. Brown | Partner | Bankruptcy | 1981 | 0.80 | 1.40 | $716.40 | $1,253.70 | $895.50 |
| John D. Fiero | Partner | Bankruptcy | 1988 | 86.40 | 687.60 | $73,872.00 | $587898.00 | $855.00 |
| Maxim B. Litvak | Partner | Bankruptcy | 1997 | 0.00 | 42.70 | $0.00 | $36,508.50 | $855.00 |
| Gabriel I. Glazer | Partner | Bankruptcy | 2006 | 1.10 | 7.60 | $886.05 | $6,121.80 | $805.50 |
| Daryl G. Parker | Of Counsel | Bankruptcy | 1969 | 0.00 | 4.60 | $0.00 | $4,119.30 | $895.50 |
| Jonathan J. Kim | Of Counsel | Bankruptcy | 1996 | 0.00 | 345.20 | $0.00 | $278,058.60 | $805.50 |
| Colin R. Robinson | Of Counsel | Bankruptcy | 1997 | 0.00 | 0.90 | $0.00 | $668.25 | $742.50 |
| Cia H. Mackle | Of Counsel | Bankruptcy | 2006 | 309.00 | 1,219.70 | $187,717.50 | $740,967.75 | $607.50 |
| Leslie A. Forrester | Law Lib. Dir. | Bankruptcy | N/A | 0.00 | 2.10 | $0.00 | $850.50 | $405.00 |
| Beth D. Dassa | Paralegal | Bankruptcy | N/A | 0.00 | 7.40 | $0.00 | $2,830.50 | $382.50 |
| Patricia J. Jeffries | Paralegal | Bankruptcy | N/A | 7.9 | 40.2 | $3,021.75 | $15,376.50 | $382.50 |
| **SUB-TOTAL** | | | | **441.40** | **3,067.70** | **$301,888.80** | **$2,386,633.05** | |

| | |
|---|---|
| Case Name: | Professional Finance Investors, Inc., *et al.* |
| Case Number: | 19-30604 (HLB) |
| Applicant's Name: | Pachulski Stang Ziehl & Jones LLP |
| Date of Application: | 1/20/22 |
| Interim or Final: | Final |

**EXHIBIT E**

**SUMMARY COVER SHEET OF FEE APPLICATION**

| Name of Applicant: | Pachulski Stang Ziehl & Jones LLP |
|---|---|
| Name of client: | The Official Committee of Unsecured Creditors |
| Time period covered by this application: | August 23, 2020 – December 15, 2021 |
| Total compensation sought in Employment Period: | $2,384,842.70[1] |
| Total expenses sought in Employment Period: | $15,011.02 |
| Total compensation sought in Fourth Fee Period: | $301,880.90[2] |
| Total expenses sought in Fourth Fee Period: | $6,951.61 |
| Petition date: | July 26, 2020 |
| Retention date: | Effective August 23, 2020 |
| Date of order approving employment: | September 10, 2020 |
| Total fees approved by interim order to date: | $2,082,961.80 |
| Total expenses approved by interim order to date: | $8,059.41 |
| Total allowed fees paid to date: | $1,716,164.28 |
| Total allowed expenses paid to date: | $8,059.41 |
| Blended rate in this application for all attorneys (Employment Period): | $783.29 |
| Blended rate in this application for all timekeepers (Employment Period): | $777.99 |
| Blended rate in this application for all attorneys (Fourth Fee Period): | $689.43 |
| Blended rate in this application for all timekeepers (Fourth Fee Period): | $683.93 |
| Fees sought in this application already paid pursuant to a monthly compensation order but not yet allowed: | $0.00 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed: | $0.00 |

[1] This amount is after application of a 10% courtesy discount agreed to in advance by the Firm on its reduced 2020 rates.

[2] This amount is after application of a 10% courtesy discount agreed to in advance by the Firm on its reduced 2020 rates.

Case: 20-30604 Doc# 1081-1 Filed: 01/20/22 Entered: 01/20/22 11:28:16 Page 20 of 32

| Name of Applicant: | Pachulski Stang Ziehl & Jones LLP |
|---|---|
| Number of professionals included in this application (Employment Period): | 5 |
| Number of professionals included in this application (Fourth Fee Period): | 13 |
| If applicable, number of professionals in this application not included in staffing plan approved by client: | N/A |
| If applicable, difference between fees budgeted and compensation sought for this period: | Firm is under budget |
| Number of professionals billing fewer than 15 hours to the case during this period (Employment Period) | 7 |
| Number of professionals billing fewer than 15 hours to the case during this period (Fourth Fee Period) | 2 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | The rates shown on the invoices are higher, but the discount removes the rate increase and provides an additional 10% discount. |

| | |
|---|---|
| Case Name: | Professional Finance Investors, Inc., *et al.* |
| Case Number: | 19-30604 (HLB) |
| Applicant's Name: | Pachulski Stang Ziehl & Jones LLP |
| Date of Application: | 1/20/22 |
| Interim or Final: | Final |

# EXHIBIT F

## BUDGET[3]

| CATEGORY | EMPLOYMENT PERIOD | EMPLOYMENT PERIOD FEES | FOURTH FEE PERIOD | FOURTH FEE PERIOD FEES |
|---|---|---|---|---|
| Asset Analysis/ Recovery | 7.9 | $8,288.00 | 1.3 | $ 1,211.00 |
| Asset Disposition | 120.1 | $142,585.00 | 4.3 | $ 4,383.00 |
| Avoidance Actions | 290.5 | $230,897.50 | 209 | $ 161,004.50 |
| Bankruptcy Litigation | 137.4 | $133,083.50 | 30.1 | $ 30,483.00 |
| Case Administration | 270 | $256,005.00 | 19 | $ 18,548.00 |
| Claims Administration/ Objections | 382.3 | $305,352.50 | 77.7 | $ 63,842.00 |
| Committee Matters | 17.4 | $13,165.00 | | |
| Compensation of Professionals | 97.4 | $82,417.50 | 24.5 | $ 20,173.50 |
| Compensation of Professionals/ Others | 0.2 | $204.50 | | |
| Financing | 52.3 | $51,791.50 | | |
| First Day | 9.8 | $8,284.50 | | |
| Forensic Analysis | 95 | $98,582.50 | | |
| General Committee Matters | 8.7 | $9,231.50 | | |
| Hearing | 19.9 | $16,506.00 | | |
| Insurance Coverage | 22.5 | $23,278.50 | | |
| Investor Communications | 250.8 | $238,044.00 | 18.5 | $ 17,730.50 |
| Litigation (Non-Bankruptcy) | 21.4 | $16,050.00 | 7.1 | $ 5,325.00 |
| Meeting of Creditors | 289.7 | $291,764.50 | 20.3 | $ 20,342.00 |
| Operations | 42.9 | $44,427.00 | | |
| Plan and Disclosure Statement | 825.9 | $797,962.50 | 10.8 | $ 11,953.00 |
| PSZJ Retention | 5.6 | $4,276.50 | | |
| Regulatory | 3.1 | $3,191.50 | | |
| Retention of Professionals | 11.1 | $11,867.50 | | |
| Retention of Professionals/ Others | 50.5 | $51,194.00 | | |
| Settlement | 17.7 | $18,320.00 | 17.5 | $ 18,170.00 |
| Tax Issues | 20.1 | $24,175.50 | 1.3 | $ 1,520.00 |
| TOTAL | 3070.2 | $2,880,946.50 | 441.4 | $ 374,685.50 |
| Less Courtesy Discount | | (498,103.80) | | $ 72,805.10 |
| **TOTAL** | | **$2,384,842.70** | **441.4** | **$ 301,880.90** |

| | |
|---|---|
| Case Name: | Professional Finance Investors, Inc., *et al.* |
| Case Number: | 19-30604 (HLB) |
| Applicant's Name: | Pachulski Stang Ziehl & Jones LLP |
| Date of Application: | 1/20/22 |
| Interim or Final: | Final |

[3] This budget reflects PSZJ's efforts to reasonably estimate the hours and fees to be billed for this period. Actual hours and fees may vary based upon the circumstances of this case.

# EXHIBIT G

## STAFFING PLAN

## Pachulski Stang Ziehl & Jones LLP Staffing Plan

| CATEGORY OF TIMEKEEPER 1 (using categories maintained by the firm) | NUMBER OF TIMEKEEPERS EXPECTED TO WORK ON THE MATTER DURING THE APPLICATION PERIOD | NUMBER OF TIMEKEEPERS EXPECTED TO WORK ON THE MATTER DURING THE FOURTH FEE PERIOD | AVERAGE HOURLY RATE (Based upon 2021 Rates) |
|---|---|---|---|
| Sr./Equity Partner/Shareholder | 9 | 4 | $1,214.80 |
| Of Counsel | 4 | 1 | $750.00 |
| Law Library Director | 1 | 0 | $475.00 |
| Paralegal | 2 | 1 | $460.00 |

1 As an alternative, firms can identify attorney timekeepers by years of experience rather than category of attorney timekeeper: 0-3, 4-7, 8-14, and 15+. Non-attorney timekeepers, such as paralegals, should be identified by category.

| | |
|---|---|
| Case Name: | Professional Finance Investors, Inc., *et al.* |
| Case Number: | 19-30604 (HLB) |
| Applicant's Name: | Pachulski Stang Ziehl & Jones LLP |
| Date of Application: | 1/20/22 |
| Interim or Final: | Final |

**EXHIBIT H-1**

**SUMMARY OF COMPENSATION REQUESTED BY CATEGORY**

(*SEE* GUIDELINES ¶ C.8 FOR PROJECT CATEGORY INFORMATION)

| CATEGORY | HOURS BILLED DURING EMPLOYMENT PERIOD | FEES INCURRED DURING EMPLOYMENT PERIOD | HOURS BILLED DURING FOURTH FEE PERIOD | FEES INCURRED DURING FOURTH FEE PERIOD |
|---|---|---|---|---|
| Asset Analysis/ Recovery | 7.9 | $8,288.00 | 1.3 | $ 1,211.00 |
| Asset Disposition | 120.1 | $142,585.00 | 4.3 | $ 4,383.00 |
| Avoidance Actions | 290.5 | $230,897.50 | 209 | $ 161,004.50 |
| Bankruptcy Litigation | 137.4 | $133,083.50 | 30.1 | $ 30,483.00 |
| Case Administration | 270 | $256,005.00 | 19 | $ 18,548.00 |
| Claims Administration/ Objections | 382.3 | $305,352.50 | 77.7 | $ 63,842.00 |
| Committee Matters | 17.4 | $13,165.00 | | |
| Compensation of Professionals | 97.4 | $82,417.50 | 24.5 | $ 20,173.50 |
| Compensation of Professionals/ Others | 0.2 | $204.50 | | |
| Financing | 52.3 | $51,791.50 | | |
| First Day | 9.8 | $8,284.50 | | |
| Forensic Analysis | 95 | $98,582.50 | | |
| General Committee Matters | 8.7 | $9,231.50 | | |
| Hearing | 19.9 | $16,506.00 | | |
| Insurance Coverage | 22.5 | $23,278.50 | | |
| Investor Communications | 250.8 | $238,044.00 | 18.5 | $ 17,730.50 |
| Litigation (Non-Bankruptcy) | 21.4 | $16,050.00 | 7.1 | $ 5,325.00 |
| Meeting of Creditors | 289.7 | $291,764.50 | 20.3 | $ 20,342.00 |
| Operations | 42.9 | $44,427.00 | | |
| Plan and Disclosure Statement | 825.9 | $797,962.50 | 10.8 | $ 11,953.00 |
| PSZJ Retention | 5.6 | $4,276.50 | | |
| Regulatory | 3.1 | $3,191.50 | | |
| Retention of Professionals | 11.1 | $11,867.50 | | |
| Retention of Professionals/ Others | 50.5 | $51,194.00 | | |
| Settlement | 17.7 | $18,320.00 | 17.5 | $ 18,170.00 |
| Tax Issues | 20.1 | $24,175.50 | 1.3 | $ 1,520.00 |
| TOTAL | 3070.2 | $2,880,946.50 | 441.4 | $ 374,685.50 |
| Less Courtesy Discount | | (498,103.80) | | $ 72,805.10 |
| **TOTAL** | | **$2,384,842.70** | **441.4** | **$ 301,880.90** |

| | |
|---|---|
| Case Name: | Professional Finance Investors, Inc., *et al*. |
| Case Number: | 19-30604 (HLB) |
| Applicant's Name: | Pachulski Stang Ziehl & Jones LLP |
| Date of Application: | 1/20/22 |
| Interim or Final: | Final |

**EXHIBIT H-2**

**SUMMARY OF EXPENSE REIMBURSEMENT REQUESTED BY CATEGORY**

(*SEE* GUIDELINES ¶ C.8 FOR PROJECT CATEGORY INFORMATION)

| EXPENSE | TOTAL (EMPLOYMENT PERIOD) | TOTAL (FOURTH FEE PERIOD) |
|---|---|---|
| Bloomberg | $276.80 | |
| Conference Call | $307.32 | $11.90 |
| Federal Express | $1,023.83 | $78.46 |
| Filing Fee | $350.00 | |
| Lexis Nexis Legal Research | $731.54 | $34.75 |
| Outside Services (Document Hosting) | $6,732.00 | $6,732.00 |
| Pacer – Court Research | $150.90 | $21.80 |
| Postage | $8.55 | |
| Reproduction / Scan Copy | $439.00 | $72.70 |
| Research | $4,666.13 | |
| Transcript | $324.95 | |
| **GRAND TOTAL** | **$15,011.02** | **$6,951.61** |

Case Name: Professional Finance Investors, Inc., *et al.*
Case Number: 19-30604 (HLB)
Applicant's Name: Pachulski Stang Ziehl & Jones LLP
Date of Application: 1/20/22
Interim or Final: Final

## EXHIBIT I

**(Attorney Biographies)**

**KENNETH H. BROWN**

Mr. Brown has extensive experience in bankruptcy and commercial litigation. He has represented and advised debtors, unsecured creditors, secured creditors, insurers, creditors' committees, and trustees in large complex chapter 11 and chapter 15 cases and in related litigation in both state and federal court. Mr. Brown leads the firm's litigation team in representations of the sex-abuse survivor committees in the chapter 11 bankruptcy cases involving the Roman Catholic Church. These matters involve the intersection of the First Amendment and the Religious Freedom Restoration Act ("RFRA") with Bankruptcy Code and focus on recovering assets transferred by the debtor prior to filing bankruptcy as part of asset protection scheme to protect the assets from the claims of the victims of sex abuse. The representations also require expertise in identifying, analyzing, and prosecuting claims against the management of the debtor for allowing or facilitating the sexual misconduct and abuse. Mr. Brown led the team that obtained a judgment in one of these cases worth in excess of $100 million. Mr. Brown also specializes in defending employers in WARN Act class-action litigation and advising them on the intersection of the WARN Act and bankruptcy. Mr. Brown also has extensive experience representing professional firms and their principals in dissolutions and bankruptcies.

He is a graduate of U.C. Santa Barbara and received his J.D. at Hastings College of the Law, where he was articles editor for the Hastings Law Journal. Mr. Brown is a former director of the Bay Area Bankruptcy Forum, a former member of the State Bar of California Business Law Section Subcommittee on Debtor/Creditor Relations and Bankruptcy, and frequently serves as a mediator for the Bankruptcy Dispute Resolution Program for the Northern District of California and the San Francisco Bar Association. He holds an AV Preeminent Peer Rating, Martindale-Hubbell's highest recognition for ethical standards and legal ability. He has been listed in every edition of Best Lawyers in America since 2018 for his work in Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law and Litigation - Bankruptcy. Mr. Brown is admitted to practice in California and is a resident in our San Francisco office.

**JOHN D. FIERO**

Mr. Fiero serves as a co-chair of the firm's Committee Practice Group and maintains a national practice representing debtors, committees, acquirers, and other significant parties in interest in complex reorganizations and financially distressed situations, both in and out of court.

Mr. Fiero is a graduate of the University of Massachusetts at Amherst and received his J.D. from Hastings College of the Law, where he was associate note editor for the *Hastings Journal of Communications and Entertainment Law*.

Mr. Fiero was a co-chair of the 2018 California Bankruptcy Forum. Every year since 2004, he has been named a Super Lawyer by *San Francisco Magazine*. He is also credited for his "highly constructive approach" in *Chambers USA*'s list of leading bankruptcy and restructuring lawyers and has been named every year since 2013 for his work in bankruptcy and creditor-debtor rights law by *Best Lawyers in America*. Mr. Fiero is admitted to practice in California and is resident in our San Francisco office.

**GABRIEL I. GLAZER**

Mr. Glazer regularly advises hedge funds, bondholders, and other creditors and investors with respect to a wide variety of issues affecting distressed entities, including covenant restrictions in credit agreements and indentures, intercreditor disputes, collateral issues, and in related litigation. Mr. Glazer counsels secured and unsecured creditors and equity holders both prior to and following the filing of a bankruptcy case, in out-of-court workouts, exchange transactions, and in connection with other corporate liability management transactions. He also represents various other parties in chapter 11 bankruptcy cases, including operating debtors, creditor and equity committees, and asset purchasers. Mr. Glazer has guided clients through some of the largest and most complex bankruptcy cases in the country, including the PG&E, Caesars, and Lehman Brothers cases. He remains on the cutting edge of issues affecting distressed debt and has been actively involved in new legal developments affecting this area.

Mr. Glazer received his J.D. from the University of Southern California Law School, where he served on the *Southern California Law Review* and graduated in the top 10% of his class. He received his B.A., *magna cum laude*, from the University of Arizona. In 2017, he was a recipient of the M&A Advisor's 8th Annual Emerging Leaders Award, which recognizes the achievements of young turnaround and financing professionals who have reached a significant level of success and have made a notable contribution to their industry and community. He has been selected for inclusion in *Best Lawyers in America* every year since 2017 for his work in Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law, as well as Litigation - Bankruptcy. He was also named a "Southern California Super Lawyer" in 2020; previously he was named a "Southern California Super Lawyers Rising Star" every year between 2013 and 2019, and was included on a select list of 100 lawyers receiving the highest point totals in the Southern California Rising Stars nomination, research, and blue-ribbon review process from 2015 - 2018.

Mr. Glazer frequently speaks to the legal and investment communities about issues and developments relevant to corporate bankruptcy and distressed investments. In addition to speaking regularly to investment funds, Mr. Glazer has spoken on multiple occasions at events sponsored by the State Bar of California and the Financial Lawyers Conference. Mr. Glazer served previously as chair of the Commercial Transactions Committee of the State Bar of California Business Law Section and was the principal author of a Statement of Position that facilitated the adoption of the Uniform Voidable Transactions Act (which amended the former Uniform Fraudulent Transfer Act) in California. He is admitted to practice in California and is resident in our Los Angeles office.

**DEBRA GRASSGREEN**

Ms. Grassgreen is a senior partner in the firm's San Francisco office and heads the firm's international insolvency practice. She is president of the prestigious International Insolvency Institute (the first woman to be elected to that position) and is widely regarded as a leading expert on cross border restructuring matters. Ms. Grassgreen has significant experience representing debtors, trustees, and creditors' committees in large and complex chapter 11 cases nationwide and internationally. Ms. Grassgreen has participated in the United Nations working group (UNCITRAL) developing a uniform international insolvency law and materials to assist countries in the adoption and implementation of insolvency legislation for over ten years.

Ms. Grassgreen is listed in *Who's Who Legal: Thought Leaders—Global Elite 2019,* one of only seven U.S.-based lawyers listed for Restructuring and Insolvency and has been named by the *Daily Journal* as one of the top 100 women lawyers in California for several years. She is a

fellow in the American College of Bankruptcy, and has been listed in *Best Lawyers in America* every year since 2001 for her work in both Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law and Litigation - Bankruptcy. Ms. Grassgreen holds an AV Preeminent Peer Rating, Martindale-Hubbell's highest recognition for ethical standards and legal ability, and is ranked among Bankruptcy/Restructuring attorneys by Chambers USA. Every year since 2010, she has been named a "Northern California Super Lawyer" by *San Francisco Magazine.* She was also listed by *Lawdragon* as one of the 2020 "Lawdragon 500 Leading Global Restructuring & Insolvency Lawyers." Ms. Grassgreen is a graduate of the University of Florida, where she also received her J.D., and is admitted to practice in Florida as well as California.

**HENRY C. KEVANE**

Mr. Kevane is the managing partner of the firm's San Francisco office. He has worked on transactional and bankruptcy matters with clients from a variety of industries. In 2011, the *Daily Journal* profiled him in a special supplement as one of the top 25 municipal lawyers in California for his work in chapter 9 bankruptcy cases. Mr. Kevane was inducted into the American College of Bankruptcy as a fellow in 2015. In 2020, he was selected as a fellow of the American Bar Foundation, a global honorary society of lawyers, judges, law faculty and legal scholars who have demonstrated outstanding dedication to the highest principles of the legal profession and to the welfare of society. Mr. Kevane is a graduate of Brown University and received his J.D. from Southwestern Law School, where he was editor in chief of the *Southwestern University Law Review.* He holds an AV Preeminent Peer Rating, Martindale-Hubbell's highest recognition for ethical standards and legal ability, has been listed in *Best Lawyers in America* for Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law since 2006, and is listed among the "Best Lawyers in America" and "San Francisco's Best Lawyers" for his work in bankruptcy and creditor-debtor rights law. Mr. Kevane is admitted to practice in California.

**JONATHAN J. KIM**

Mr. Kim has represented both debtors and creditors on a wide range of issues in chapter 11 cases, bankruptcy litigation, and federal court appeals, with substantial experience in plan, corporate/transactional, and litigation matters. He is a graduate of Duke University and received his J.D. from Harvard. He is a member of the Financial Lawyers Conference. Mr. Kim is admitted to practice in California, and is a resident in our Los Angeles office.

**MAXIM B. LITVAK**

Mr. Litvak specializes in bankruptcy and restructuring matters. He has represented debtors, trustees, creditors, and creditors' committees in numerous bankruptcy cases and out-of-court restructurings. He has authored a number of papers on insolvency issues and has lectured at various seminars and bar association meetings. Mr. Litvak is a graduate of UC Berkeley and received his J.D. from Duke University. Every year since 2014, he has been named a "Northern California Super Lawyer" in a peer survey conducted by Law & Politics and the publishers of *San Francisco* magazine, an honor bestowed on only 5% of Northern California attorneys, and has been listed in *Best Lawyers in America* for his work in Bankruptcy and Creditor Debtor Rights / Insolvency and Reorganization Law since 2016. He is admitted to practice in Texas and California, and speaks fluent Russian. Mr. Litvak is a resident in our San Francisco office.

**CIA H. MACKLE**

Ms. Mackle's practice has focused on a broad range of domestic and international business reorganization and restructuring matters, including the representation of debtors in possession, chapter 11 trustees, creditors' committees, and institutional creditors acting in various capacities. Ms. Mackle has also been involved in various bankruptcy litigation matters. She is a graduate of Duke University and received her J.D. from University of Southern California where she was a member of the Southern California Law Review. Ms. Mackle is admitted to practice in Florida.

**IAIN A.W. NASATIR**

Iain Nasatir specializes in insurance coverage, insolvency, regulatory, reinsurance, and bankruptcy disputes. Currently, he is involved with insurance coverage issues in the firm’s representations of creditors' committees of sexual-abuse survivors in the chapter 11 bankruptcies of the Diocese of Buffalo, the Diocese of Rochester, the Archdiocese of New Orleans, and the Archdiocese of Santa Fe, and in other sex-abuse related bankruptcies (e.g., Boy Scouts of America and U.S.A Gymnastics). Prior committee representations involving sexual-abuse coverage issues include bankruptcies of the Gallup, Stockton and Davenport dioceses and The Weinstein Company. Other cases have involved debtors’ obligations for SIRS and deductibles in bankruptcy (e.g., law firms Sedgwick and Heller Ehrman) and the interplay between state insurance regulators and bankruptcy court jurisdiction (e.g., Superior National, Fremont General and Executive Life).

For further information on the diocesan and other sex-abuse cases, please see general firm discussion.

In the course of the firm's bankruptcy representation of Sizzler Restaurants, Mr. Nasatir advised on complex reinsurance and insurance defense issues arising in the bankruptcy regarding the debtor's captive, and successfully implemented a mandatory mediation program in the bankruptcy court to maximize the opportunity for a premium refund to be paid to the debtor. Mr. Nasatir has also been involved in similar capacities for the trustee of a bankrupt American subsidiary of a Japanese scrap metal company and for Breed Technologies in its bankruptcy. In addition to handling coverage issues on primary insurance and reinsurance agreements, Mr. Nasatir has represented policyholders in coverage disputes, including D & O coverage litigation with National Union Fire Insurance Company and other similar carriers.

On the litigation front, Mr. Nasatir obtained a defense judgment at trial on behalf of Fremont General in a suit brought by the Bank of New York over workers compensation deposits. He also obtained dismissals for the same client in lawsuits brought by the California Insurance Commissioner. On behalf of his Superior National client, he settled a reinsurance fraud dispute with a "walk-away."

He attended Stowe School in Bucks, England, Williams College, Columbia College and Cardozo School of Law. Mr. Nasatir is admitted to practice in New York and California, and is resident in our Los Angeles office.

**ISAAC M. PACHULSKI**

Mr. Pachulski is a nationally prominent bankruptcy attorney with over four decades of experience in reorganization proceedings and in dealing with a broad spectrum of bankruptcy-related issues. Throughout his legal career, Mr. Pachulski has specialized in corporate reorganization, insolvency, and bankruptcy law. He has represented debtors, significant creditors, official and unofficial committees, and creditor groups in cases around the country. Many of Mr. Pachulski's representations are nonpublic, involving advice to clients on a variety of bankruptcy-related issues. He has represented substantial creditors and creditor groups in major chapter 11 cases such as those of Westinghouse (substantial creditor); Toys R Us (substantial bondholder); Lehman Brothers (substantial creditor and bondholder); Tribune (substantial noteholder) Scotia Pacific ( holders of in excess of $200 million of secured notes); Calpine (appellate co-counsel to certain holders of convertible notes), Adelphia Communications (substantial noteholder and special conflicts counsel to ad hoc noteholder group) and Enron Corporation ( holders of in excess of $3 billion of senior unsecured debt). Recently, Mr. Pachulski represented the National Association of Bankruptcy Trustees in submitting an amicus brief to the Eleventh Circuit Court of Appeals focusing on the remedies available in a fraudulent conveyance action in support of the creditors' committee in Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re Tousa, Inc.), No. 17-11545 (11th Cir. July 19, 2017).

Previously, Mr. Pachulski has represented debtors and, to a lesser extent, trustees. Among these representations: He acted as lead chapter 11 counsel for Mariner Post-Acute Network, Inc., Mariner Health Group, Inc., and 185 affiliated entities that collectively operated approximately 400 skilled nursing and long-term acute care facilities as of the chapter 11 filing, and who successfully confirmed a chapter 11 plan. Mr. Pachulski represented the trustee for a failed clearing broker in a proceeding under the Securities Investor Protection Act.

Mr. Pachulski is a member of the National Bankruptcy Conference (where he chaired the Chapter 11 Committee and served on the Executive Committee) and the International Insolvency Institute, as well as being a fellow of the American College of Bankruptcy. In 2009, he testified before Congress on behalf of the National Bankruptcy Conference in connection with issues affecting the reorganization of retailers. He has been named in Who's Who Legal (for Insolvency & Restructuring), the Best of the Best (Legal Media Group), 500 Leading Lawyers in America; Southern California Best Lawyers in America (2011 & 2012); Best Lawyers in America (every year since 1993); and Super Lawyers for Bankruptcy & Creditor/Debtor Rights (Super Lawyers Magazine; every year since 2004). Mr. Pachulski holds an AV Preeminent Peer Rating, Martindale-Hubbell's highest recognition for ethical standards and legal ability. He was listed by Lawdragon as one of the 2020 "Lawdragon 500 Leading Global Restructuring & Insolvency Lawyers."

He received his J.D., summa cum laude, from Harvard University, earning the distinguished Fay Diploma for highest cumulative grade average. While at Harvard, he won the Sears Prize two years in a row and was a member of the Harvard Law Review. His BA was earned summa cum laude at University of California Los Angeles. He is admitted to practice in California and resident in our Los Angeles office.

**RICHARD M. PACHULSKI**

Mr. Pachulski is widely regarded as one of the preeminent corporate restructuring attorneys in America. He has been named an "Attorney of the Year" by American Lawyer Media's Recorder, and has been lead counsel on several deals that have been recognized as "Deal of the Year" by The M&A Advisor, Turnaround & Workouts and Global M&A Network. During 2019, in addition to working on several out-of-court workouts, Mr. Pachulski served as creditors' committee counsel in the successful chapter 11 reorganization of Woodbridge Group of Companies, a $1.2 billion fraud/Ponzi scheme also involving hundreds of millions of dollars of very high-end residential real estate; as debtor's counsel in White Eagle Asset Portfolio, owner of over $2.5 billion in face amount of life-insurance policies; and as debtor's counsel in Fuse LLC, a leading multicultural media company owning two cable networks. During the first few months of 2020, in addition to working on certain out-of-court workouts, Mr. Pachulski has principally worked on the chapter 11 case of Yueting Jia, an individual seeking to restructure approximately $4 billion of debt who historically has been referred to as the "Steve Jobs of China."

Over Mr. Pachulski's career, a sampling of his roles as lead debtor counsel includes the corporate restructurings of American Suzuki Motor Corporation, Solyndra LLC, and Mesa Airlines. Additionally, Mr. Pachulski also recently was lead bankruptcy counsel to Lehman Brothers in a matter involving over $2 billion due to Lehman Brothers.

For the past four decades, Mr. Pachulski has represented debtors and creditors' committees in both out-of-court workouts and in-court proceedings. In addition, he has extensive experience in business reorganizations, as well as debtor/creditor litigation across numerous industries. During the 1980s, he was a well-known chapter 7 and chapter 11 trustee. His work over this time span led to inclusion in the American College of Bankruptcy, an honorary association of the nation's most esteemed bankruptcy and insolvency professionals.

Other career highlights include representation of the debtors in MagnaChip Semiconductor, Breed Technologies, Sizzler International, Covad Communications and Peregrine Systems; representation of the Circuit City creditors' committee and, thereafter, the Circuit City liquidating trustee; representation of the ad hoc bondholders' committee in Adelphia Corporation; and lead counsel in the restructuring of the debts of internationally acclaimed singer-songwriter Toni Braxton. In total, he has assisted in tens of billions of dollars in restructurings during his career.

Several national publications and organizations frequently recognize Mr. Pachulski for his work in the restructuring and turnaround field. For example, Chambers USA repeatedly ranks him as a top-tier national bankruptcy/restructuring attorney; Best Lawyers in America has listed him among the nation's top bankruptcy attorneys every year since 1995; K&R Restructuring Register and Turnaround & Workouts listed him as one of America's top restructuring professionals; California Law Business listed him as one of "California's 100 Most Influential Attorneys;" and Los Angeles Business Journal listed him as one of fifteen top banking & finance "turnaround artists." He also holds an "AV Preeminent Peer Rating," Martindale-Hubbell's highest recognition for ethical standards and legal ability. In 2016, he was named to Thomson Reuters' "Top 10: 2016 Southern California Super Lawyers" list and in 2018 was listed by Who's Who Legal among "Thought Leaders - Restructuring & Insolvency." He was listed by Lawdragon as one of the 2020 "Lawdragon 500 Leading Global Restructuring & Insolvency Lawyers."

Mr. Pachulski is a graduate of UCLA, and received his J.D. from Stanford University. He is admitted to practice in California, and is resident in our Los Angeles office.

**COLIN R. ROBINSON**

Mr. Robinson's practice focuses on corporate reorganizations and liquidations, creditors' rights issues, and litigation arising in chapter 11 and chapter 7 bankruptcy cases. Mr. Robinson represents debtors, creditors' committees, secured and unsecured creditors, plan administrators, trustees, purchasers of assets out of bankruptcy, and parties in adversary proceedings. He was recognized every year from 2008 to 2010 as a New Jersey Rising Star; every year from 2012 to 2015 as a Delaware Rising Star by Super Lawyers, a rating service of outstanding lawyers from more than 70 practice areas; and is listed in the 2019 edition of Best Lawyers of America for his work in Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law.

Mr. Robinson received a BA from University of Pennsylvania and his JD from Temple University. He is resident in our Delaware office.