1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   ORI KATZ, Cal. Bar No. 209561
3  J. BARRETT MARUM, Cal. Bar No. 228628
   JEANNIE KIM, Cal. Bar No. 270713
4  MATT KLINGER, Cal. Bar No. 307362
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4109
   Telephone:    415.434.9100
6  Email:        okatz@sheppardmullin.com
                 bmarum@sheppardmullin.com
7                jekim@sheppardmullin.com
                 mklinger@sheppardmullin.com
8
   Counsel for the Reorganized Debtors
9

10 TRODELLA & LAPPING LLP
   RICHARD A. LAPPING, Cal. Bar No. 107496
11 540 Pacific Avenue
   San Francisco, CA 94133
12 Telephone:    (415) 399-1015
   Email:        Rich@TrodellaLapping.com
13
   Conflicts Counsel for the Reorganized Debtors
14

15 DLA PIPER LLP
   ERIC D. GOLDBERG, Cal. Bar No. SBN 157544
   RICHARD A. CHESLEY (Pro Hac Vice pending)
16 SHELBY NACE (Pro Hac Vice pending)
   2000 Avenue of the Stars
17 Suite 400 North Tower
   Los Angeles, California 90067-0047
18 Telephone:    (310) 595-3000
   Email:        eric.goldberg@us.dlapiper.com
19                richard.chesley@us.dlapiper.com
                 shelby.nace@us.dlapiper.com
20
   Counsel for FTI Consulting, Inc.
21

22 PACHULSKI STANG ZIEHL & JONES LLP
   DEBRA I. GRASSGREEN, Cal. Bar No. 169978
23 JOHN D. FIERO, Cal. Bar No. 136557
   CIA H. MACKLE, admitted pro hac vice
24 150 California Street, 15th Floor
   San Francisco, CA 94111
25 Telephone:    (415) 263-7000
   Email:        dgrassgreen@pszjlaw.com
26                jfiero@pszjlaw.com
                 cmackle@pszjlaw.com
27
   Counsel to the Official Committee of Unsecured
28 Creditors

1   SKLAR KIRSH, LLP
    ROBBIN L. ITKIN, Cal. Bar No. 117105
2   KELLY K. FRAZIER, Cal. Bar No. 212527
    1880 Century Park East, Ste. 300
3   Los Angeles, California 90067
    Telephone:    (310) 845-6416
4   Emails:       ritkin@sklarkirsh.com
                  kfrazier@sklarkirsh.com
5
6   Counsel for Ad Hoc Committee of LLC Members

7   BAKER & HOSTETLER LLP
    CECILY A. DUMAS, Cal. Bar No. 111449
8   600 Montgomery Street, Suite 3100
    San Francisco, CA 94111
9   Telephone:    415.659.2600
    Email:        cdumas@bakerlaw.com
10
    Counsel for the Ad Hoc Committee of Deed of Trust Holders
11

12              **UNITED STATES BANKRUPTCY COURT**

13   **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

14   In re                              Case No. 20-30604
                                        (Jointly Administered)
15   PROFESSIONAL FINANCIAL             Chapter 11
     INVESTORS, INC., *et al.*,
16                                      **OMNIBUS REPLY TO OMNIBUS**
            Debtors.                    **OBJECTION FILED BY U.S. SECURITIES**
17                                      **AND EXCHANGE COMMISSION TO**
                                        **FINAL FEE APPLICATIONS FILED BY**
18                                      **BANKRUPTCY COUNSEL FOR THE**
                                        **DEBTORS AND COMMITTEES**
19
                                        Date:    March 31, 2022
20                                      Time:    10:00 a.m.
                                        Place:   **Telephonic/Video Appearances**
21                                               **Only**
                                                 450 Golden Gate Avenue, 16th Floor
22                                               Courtroom 19
                                                 San Francisco, CA 94102
23                                      Judge:   Hon. Hannah L. Blumenstiel

24

25

26

27

28

Case: 20-30604   Doc# 1337   Filed: 03/21/22   Entered: 03/21/22 20:02:27   Page 2 of
                                        25

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.  THE COURT SHOULD OVERRULE THE SEC OBJECTION ..................................... 2

     A.   The SEC Objection is Built on a Distortion of Section 330's
          Statutory Lens .................................................................................................. 2

     B.   The SEC's Focus on the Rates Charged in this Division Only is
          Unduly Parochial and Undermines the Intent of the Bankruptcy
          Code ................................................................................................................. 3

     C.   The Woodbridge Case Provides the Most Appropriate Comparison ..................... 5

     D.   These Cases Were Unusually Complex ................................................................ 6

     E.   Even if Local Rates Were the Yardstick (Which They are Not) the
          SEC Objection "Cherry Picks" Cases and Professionals that are
          Not Comparable ............................................................................................... 7

          1.   The SEC Objection Includes Attorneys in Non-Comparable
               Cases ....................................................................................................... 8

          2.   The SEC Objection Fails to Include Other Divisions or
               2020 Fee Applications ............................................................................. 9

     F.   The Three Committee Structure Was Essential and Saved Time
          and Money ..................................................................................................... 10

     G.   The UST did not Object to the Professionals' Rates or the Fee
          Applications. .................................................................................................. 11

     H.   The SEC Objection "Cherry Picks" Examples of Public Interest
          Fee Reductions ............................................................................................... 11

     I.   The Professionals' Billing Rates and Budget Projections Were
          Accepted by their Respective Clients and Widely Circulated ............................ 14

III. 15

CONCLUSION ............................................................................................................ 15

Case No. 20-30604
OMNIBUS REPLY
SMRH:4858-0765-1476.5

Case: 20-30604   Doc# 1337   Filed: 03/21/22   Entered: 03/21/22 20:02:27   Page 3 of
25

**Page(s)**

<u>**Cases**</u>

*In re Anthony Scott Levandowski*
  Case No. 20-30242 ......................................................................................... 7, 8, 9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*
  493 F.3d 110 (2d Cir. 2007) ......................................................................................... 4

*In re Baldwin United Corp.*
  36 B.R. 401 (Bankr. S.D. Ohio 1984) .......................................................................... 4

*Barjon v. Dalton*
  132 F.3d 496 (9th Cir. 1997) ......................................................................................... 3

*In re Boy Scouts of America*
  Case No. 20-10343 (Bankr. D. Del.) ........................................................................... 14

*In re Christ's Church of Golden Rule*
  157 F.2d 910 (9th Cir. 1946) ....................................................................................... 14

*In re DPMB*
  Case No. 20-30080 (Bankr. W.D.N.C.) ....................................................................... 14

*In re Easterday Ranches, Inc., et al.*
  (Bankr. E.D. Wash., August 25, 2021) ................................................................ 4, 5, 12

*In re Easterday Ranches, Inc., et al.*
  No. 21-00141 (Bankr. E.D. Wash., July 23, 2021), ECF No. 933 ............................... 4

*In re First Magnus Fin. Corp.*
  Case No. 4:07-bk-01578-JMM, 2008 Bankr. LEXIS 4949 (Bankr. D. Ariz. May 22,
  2008)......................................................................................................................... 4, 8

*In re Frontier Airlines, Inc.*
  74 B.R. 973 (Bankr. D. Colo. 1987) ............................................................................. 3

*Hawaiian Airlines, Inc. v. Mesa Air Group, Inc. (In re Hawaiian Airlines, Inc.)*
  Case No. 03-00817, 2008 Bankr. LEXIS 1501 (Bankr. D. Haw. Jan. 22, 2008)...................... 4

*In re Malhotra*
  No. 2:16-bk-02608-DPC, 2016 Bankr. LEXIS 2521 (Bankr. D. Ariz. July 7, 2016)............. 15

*In re Mandell*
  69 F.2d 830 (2d Cir. 1934) .......................................................................................... 15

Case: 20-30604    Doc# 1337    Filed: 03/21/22    Entered: 03/21/22 20:02:27    Page 1 of
25

*In re Robertson Cos.*
    123 B.R. 616 (Bankr. D.N.D. 1990) ................................................................. 3

*In re Sedgwick, LLP*
    Case No. 18-31087 ........................................................................................... 10

*In re Shore*
    No. 03-43072, 2004 Bankr. LEXIS 1432 (Bankr. D. Kan. May 14, 2004) ........... 15

*Smith v. Geltzer*
    507 F.3d 64 (2d Cir. 2007) ............................................................................... 15

*In re Strand*
    375 F.3d 854 (9th Cir. 2004) .............................................................................. 2

*In re The Weinstein Company Holdings LLC*
    Case No. 18-10601 (Bankr. D. Del.) ................................................................. 14

*In re Thrifty Oil Co.*
    205 B.R. 1009 (Bankr. S.D. Cal. 1997) ............................................................... 2

*In re USA Gymnastics*
    Case No. 18-09108 (Bankr. S.D. Ind.) ............................................................... 14

*In re Wave Computing, Inc.*
    Case No. 20-50682 ........................................................................................... 10

*In re Woodbridge Group of Companies, LLC, et al.*
    No. 17-12560 (Bankr. D. Del. Dec. 4, 2017) ............................................. 5, 6, 13

*Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*
    50 F.3d 253 (3d Cir. 1995) ................................................................................. 3

## Statutes

11 U.S.C. § 330 ............................................................................................ 2, 3, 12

Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin"), Trodella & Lapping LLP ("Trodella Lapping"), Pachulski Stang Ziehl & Jones LLP ("Pachulski"), Baker & Hostetler LLP ("Baker"), and Sklar Kirsh, LLP ("Sklar"), each for and on behalf of themselves, and DLA Piper LLP for and on behalf of FTI Consulting, Inc. ("FTI") submit this omnibus reply (the "Reply") to the *Omnibus Objection by U.S. Securities and Exchange Commission to Final Fee Applications Filed by Bankruptcy Counsel for the Debtors and Committees* (the "SEC Objection") filed by the U.S. Securities and Exchange Commission (the "SEC") on March 9, 2022 as Dkt. No. 1308 and to the letters sent by investors to this Court.[1]  In support of this Reply and in further support of the Fee Applications,[2] the Professionals[3] respectfully represent as follows:

# I.
## PRELIMINARY STATEMENT

The Professionals do not dispute that these cases were expensive.  By any measurement, $30 million in professional fees is a lot of money.  We are sympathetic to all investors and understand the concern, anger, and frustration expressed regarding the total amount of the fees incurred in these cases.  But that frustration is misdirected.  The cause of that frustration is not the Professionals who worked diligently, creatively, and efficiently to minimize the harm that was caused by Ken Casey and Lewis Wallach.  Given all of the hard work of the members of the investor community and the Professionals to minimize the harm associated with the fraud, it is concerning that the SEC appears to have led investors to believe it is customary for professionals in chapter 11 cases involving individual victims to reduce fees by 30 to 40 percent, and that because the Professionals here did not, the investors have been victimized a second time.   As set forth below, neither the law nor the facts support that contention.  To the contrary, when compared

---

[1]  Notwithstanding that the vast majority, if not all, of such letters do not fully comply with this Court's *Order Regarding Letters to Judge Blumenstiel* entered as Dkt. No. 1001, in this Reply the Professionals address the main arguments raised in the investor letters, while reserving all rights as to those letters.

[2]  The term "Fee Applications" refers to, collectively, the final fee applications of, Pachulski, FTI, Trodella Lapping, Sklar, Baker, and Sheppard Mullin filed as Dkt. Nos. 1083, 1089, 1090, 1092, 1095, and 1097, respectively.  Several of the Fee Applications have been supplemented by subsequent filings or declarations being made concurrently and those subsequent filings or declarations are incorporated by reference in this Reply.

[3]  The term "Professionals" refers to, collectively, Sheppard Mullin, Trodella Lapping, Pachulski, Baker, Sklar, and FTI.  FTI is party to this Reply because it is subject to some of the arguments made in the investor letters.

-1-

to other chapter 11 cases involving individual victims, the voluntary, up-front discounts that were provided here exceed the discounts in those other matters and the Professionals' rates here are well below "market," especially in light of the complexity of these cases.   The Professionals deeply regret the distress this misperception has caused within the community as evidenced by the letters that have been submitted to the Court.   Nonetheless, neither those letters nor the SEC Objection serve as a basis to deny or reduce the requested fees.   This is an unfortunate situation, but the Professionals have made the outcome here better, not worse.

## II.
## THE COURT SHOULD OVERRULE THE SEC OBJECTION

**A.      The SEC Objection is Built on a Distortion of Section 330's Statutory Lens**

The standard for approval of fees is determined by 11 U.S.C. § 330.  Courts in the Ninth Circuit often use the following standard in evaluating the reasonableness of professional fees under section 330 of the Bankruptcy Code:

> 1)      Are the services which are the subject of the application properly compensable services?
>
> 2)      If so, were they necessary and is the performance of the necessary tasks adequately documented?
>
> 3)      If so, how will they be valued? Were they necessary tasks performed within a reasonable amount of time and what is the reasonable value of that time?

*See In re Thrifty Oil Co*., 205 B.R. 1009, 1019-20 (Bankr. S.D. Cal. 1997) (citing *Unsecured Creditor's Committee v. Puget Sound Plywood, Inc*., 924 F.2d 955, 957-58 (9th Cir. 1990)); *see also In re Strand*, 375 F.3d 854, 860 (9th Cir. 2004)

No one questions that the Professionals' services, which were directed by the Debtors or the Committees, are properly compensable.  Similarly, there is no issue about whether  the Professionals' services were necessary and adequately documented.  Lastly, there is no questioning whether the Professionals' services were timely.   Instead, the SEC takes great pains – with scant legal and evidentiary support - to claim the Professionals' services were not reasonably valued.  As courts and the Office of the United States Trustee ("UST") have recognized,

-2-

"[g]enerally, so long as the rates being charged are the applicant's normal rates charged in bankruptcy or non-bankruptcy matters alike, they will be afforded a presumption of reasonableness." 3 Legal Manual for United States Trustees, 3-7.1, quoting *In re Jefsaba, Inc*. 172 B.R. 787, 798 (Bankr. E.D. Pa. 1994).

Given the effort expended, the often substantially discounted rates charged, the complexity of these cases, and the final results achieved, the Professionals submit that the compensation requested in the Fee Applications is reasonable under the standard set forth in section 330, the Federal Bankruptcy Rules, guidelines promulgated by the UST, and prevailing case law.

**B.**    **The SEC's Focus on the Rates Charged in this Division Only is Unduly Parochial and Undermines the Intent of the Bankruptcy Code**

The SEC is correct that, as a general rule, prevailing market rates should be determined with reference to the "relevant community," which is generally where the court sits. But extensive case law makes clear that there are recognized exceptions to the general rule and that an overly formulaic application of the rule works against the policies and goals of complex bankruptcy cases. *See, e.g.*, *Barjon v. Dalton*, 132 F.3d 496, 500, 501-02 (9th Cir. 1997); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253 (3d Cir. 1995) (baseline rule is for firms to be paid their customary rates); *In re Robertson Cos.*, 123 B.R. 616 (Bankr. D.N.D. 1990) (restriction of fees to typical local rates is unduly parochial in light of national and regional law firms working on larger and more complex bankruptcy cases with more than local import); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. D. Colo. 1987) (foreign counsel may charge normal hourly billing rates, even if in excess of local billing rates).

As the Bankruptcy Court for the District of Arizona has stated:

> Many large cases, which have involved the nation's bankruptcy courts, illustrate that the practice of bankruptcy law has become national in scope. … When one factors in that the Debtor's counsel of choice is a large single law firm with offices and expertise located in various parts of the nation, one must question whether the simple paradigm of "local law firm / local rates" has meaningful application. At the least, the complex facts of this case and the need for special expertise present circumstances which require looking beyond the local community rates. So long as the ultimate amount requested is, on the whole, reasonable for the type of case and work

involved, the fee can be approved. … The nature and scope of this case is of the type where exceptions swallow the rule.

*In re First Magnus Fin. Corp.*, Case No. 4:07-bk-01578-JMM, 2008 Bankr. LEXIS 4949, **6-8 (Bankr. D. Ariz. May 22, 2008); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 119 (2d Cir. 2007) (by definition, the market rate for legal work is the rate that a "reasonable, paying client" would pay); *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc. (In re Hawaiian Airlines, Inc.)*, Case No. 03-00817, 2008 Bankr. LEXIS 1501, **8-12 (Bankr. D. Haw. Jan. 22, 2008) (prevailing party awarded attorney's fees at Los Angeles rates over customary local, Hawaii rates).

Limiting rates to those customarily charged locally would be contradictory to the bankruptcy policy of attracting experienced professionals to bankruptcy cases, regardless of where the case is pending. *See e.g.*, *In re Baldwin United Corp.*, 36 B.R. 401 (Bankr. S.D. Ohio 1984); *In re Easterday Ranches, Inc., et al*. (Bankr. E.D. Wash., August 25, 2021), Verbatim Transcription of Proceedings from Audio File at 38-41, 49-55. As the Bankruptcy Court for the Eastern District of Washington has recently stated:

> I reject the view that there should be a categorical cap based on local rates or that local rates define by reference to what local practitioners charge in all cases set the ceiling for anything near a ceiling on the appropriate hourly rate in a given case . . . I think judges in jurisdictions that use the local rate concept are ultimately doing their district a disservice . . . I don't think that approach is mandatory, let alone even supported by the text of the [statute] or really the policy that Congress was attempting to advance when section 330 was codified in 1978 . . . I think the appropriate weight is better assessed, as I said, in a holistic fashion by situating the case in terms of the relevant community, perhaps. Here, the community would be a large megacase.[4]

*In re Easterday Ranches, Inc., et al.* (Bankr. E.D. Wash., August 25, 2021), Verbatim Transcription of Proceedings from Audio File at 49-50.

---

[4] *Easterday* is a chapter 11 liquidation case pending in Yakima, Washington in which the U.S. Trustee objected to a fee application submitted by Pachulski as debtor's counsel on the basis the requested compensation was unreasonable. *Objection to First Interim Fee Application, In re Easterday Ranches, Inc., et al.*, No. 21-00141, (Bankr. E.D. Wash., July 23, 2021), ECF No. 933. Pachulski's application reflected a blended billing rate of $1,053 per hour, with attorney billing rates ranging from $695 to $1,695 per hour. *Id.* at 6:10-11. The U.S. Trustee noted that rate was "substantially higher than the blended rate charged by other lead debtor's counsel in recent cases in this district which highest was $800." *Id.* at 11-14. The U.S. Trustee's objection was overruled, in part, on the basis noted above.

Case No. 20-30604

OMNIBUS REPLY

SMRH:4858-0745-1475.5

Case: 20-30604    Doc# 1337    Filed: 03/21/22    Entered: 03/21/22 20:02:27    Page 9 of 25

The circumstances of these cases justify honoring the Debtors' and Committees' choice of professionals and payment of each Professional's fees in the amount requested.

**C.      The Woodbridge Case Provides the Most Appropriate Comparison**

The SEC Objection acknowledges that "when awarding professional compensation for services in a Ponzi scheme, the Court should consider compensation awarded to comparably skilled attorneys in other Ponzi scheme cases." [SEC Objection at 4]. Yet somehow the SEC failed to consider the rates and fees approved in the *Woodbridge* bankruptcy, the most comparable recent Ponzi case administered through Chapter 11.[5]

Notably, the SEC (represented by Mr. Baddley) played an active role in *Woodbridge*, a case in which the blended rates of bankruptcy counsel[6] for the debtors and committees exceeded the hourly rates sought here notwithstanding the passage of three years' time, as set forth below:

| WOODBRIDGE – 2017 | |
|---|---|
| **Role** | **Blended Rate** |
| Debtors' Counsel | $787.85[7] |
| UCC Counsel | $966.73 |
| Ad Hoc Noteholder Counsel | $739.42 |
| Ad Hoc Unitholder Counsel | $827.89 |

| PFI – 2020 | |
|---|---|
| **Role** | **Blended Rate** |
| Debtors' Counsel | $736.52[8] |
| UCC Counsel | $777.40 |
| Ad Hoc DOT Counsel | $675.86 |
| Ad Hoc LLC Counsel | $663.67 |

---

[5] *In re Woodbridge Group of Companies, LLC, et al.* ("Woodbridge"), No. 17-12560 (Bankr. D. Del. Dec. 4, 2017). Woodbridge and its related entities operated as a real estate finance and development company that bought, improved and sold high-end luxury homes. To fund its operations, Woodbridge fraudulently raised over $1 billion from individuals. The organization of the bankruptcy cases was similar to the situation here, where holders of different investment vehicles were represented by two ad hoc committees in addition to the UCC. The time between the filing date and plan confirmation date for both cases was approximately 11 months. While the Ponzi scheme in *Woodbridge* is by some measures larger (for example, the number of investors and netted claim pool exceed those in PFI), the complexity posed as a result of PFI's poor records was significantly greater. *See* Declaration of Cecily Dumas filed concurrently with this Reply citing difficulties regarding the Debtors' records.

[6] Consistent with the SEC's own analysis rubric, non-bankruptcy special counsel to the *Woodbridge* debtors and committees were excluded.

[7] Derived from a weighted average of the blended rates as set forth in the Declaration of Cia Mackle filed concurrently with this Reply (the "Mackle Declaration").

[8] Derived from a weighted average of the blended rates as set forth in the Mackle Declaration.

SMRH:4868-1662-14765

1    And this is the case even though the approved rates in *Woodbridge* are two to three years

2    out-of-date, and would have been considerably higher if 2020 or 2021 rates applied.  Further, the

3    Professionals have already provided discounts far greater than those the SEC agreed to in

4    *Woodbridge*.  In *Woodbridge*, the professionals' discounts provided *after* discussions with the

5    SEC were generally 5% off of then-standard billing rates.  Mackle Declaration, ¶7.

6    The overall approved fees in *Woodbridge* (almost $60 million in total with $43 million

7    being incurred pre-effective date) far exceed those sought in this case.[9]  While the initial

8    distribution in *Woodbridge* occurred at approximately the same time as it did here relative to the

9    petition date, that distribution only represented a 3.5%-4.5% recovery on claims – smaller than

10   this case by a factor of almost 10.[10]

11   The Professionals submit that *Woodbridge* provides the yardstick for considering the

12   reasonableness of the fees applied for, and when measuring against that yardstick there can be no

13   question that the professional fees in these very similar cases are fair and reasonable.

14   **D.    These Cases Were Unusually Complex[11]**

15   The SEC Objection's single-minded focus on contrasting the Professionals' rates to

16   "comparables" fails to properly take the complexity of these cases into account.

17   These cases involved fraud on a massive scale.  The Debtors' Ponzi scheme took place

18   over at least fourteen years, spanned forty-three total debtors, and involved hundreds of millions of

19   dollars.  The scheme was conducted largely through paper-based records, many of which were

20   crafted to obscure the transactions that had actually occurred.  Moreover, the fraud had a direct

21   impact on over 1,800 investors, residing domestically and internationally.  These investors took

22   various forms, each of which had a unique set of interests.

---

9    The total professional fees sought in these cases are approximately $30 million, with post-effective date professional fees budgeted at just $3.625 million because the Debtors and the UCC completed much of the traditional post-effective date work during the pendency of the cases.  Not only have claims here been almost entirely resolved, the vast majority of the unsecured creditor distribution (36% thus far) has already been made.

10   Additional distributions in *Woodbridge* have continued in the years since the initial distribution, but they have only recently begun to approximate the initial distribution already received by PFI investors.

11   The facts in this section D are supported by the concurrently filed declarations of Michael Goldberg, Cecily Dumas,  Ori Katz, and Andrew Hinkelman, and the previously filed declarations of Greg Gotthardt [Dkt. No. 909] and David Alfaro [Dkt. No. 595].

Case: 20-30604    Doc# 1337    Filed: 03/21/22    Entered: 03/21/22 20:02:27    Page 11
of 25

In addition, during the course of these cases the Debtors owned and operated more than 60 total apartment buildings and office complexes and obtained title to two residential homes. The Debtors have sold all but one of these properties pursuant to Court-approved sales,[12] including 60 in a single transaction. Because the Debtors' real estate portfolio was the product of massive fraud and the pre-petition Debtors did not engage in best (or even standard) practices in connection with the acquisition and maintenance of their property portfolio, the Professionals were faced with challenges at every turn.

Successfully unraveling the fraud, balancing investors' competing interests, and selling the Debtors' numerous properties was critical to achieving the elegant resolution embodied in the Debtors' Plan. The efficiency with which the Plan was confirmed (and modified) is extraordinary given the challenges involved. Even more telling was the level of investor support for the Plan. More than 99.7% of the ballots cast by investors were in favor of the Plan.[13] Because of the speed in which all of this was achieved and the overwhelming support of the constituencies involved, the investors have already received initial distributions of approximately 36% of their netted claim.[14]

**E.** **Even if Local Rates Were the Yardstick (Which They are Not) the SEC Objection "Cherry Picks" Cases and Professionals that are Not Comparable**

The SEC's analysis that the average rate for attorneys representing debtors or trustees in Chapter 11 cases in the San Francisco Division is $510 per hour is flawed for two reasons. First, the SEC's analysis is overwhelmingly composed of attorneys who appeared in non-comparable cases that would never be called "complex," including many individual debtor cases. Second, the SEC excluded the Goodwin Procter attorneys who represented the debtor in the *Levandowski* case.

---

[12] The Debtors' anticipate closing on the Court-approved sale of the remaining property, located at 523 4th Street and 535-545 4th Street/930 Irwin Street, San Rafael, California, around the time of the hearing on the Fee Applications.

[13] *Declaration of John Burlacu*, Dkt. No. 650-1.

[14] This percentage is within the 35-50% percent of "netted claims" (or "Allowed Claims" for the TICs) that investors were predicted to receive under the Plan as set forth in the Court-approved Disclosure Statement filed on April 16, 2021 as Dkt. No. 572.

Case No. 20-30604
SMRH:4859-1066-1476.5          OMNIBUS REPLY

Case: 20-30604    Doc# 1337    Filed: 03/21/22    Entered: 03/21/22 20:02:27    Page 12 of 25

1              1.        The SEC Objection Includes Attorneys in Non-Comparable Cases

2         The Baddley Declaration provides a list of thirty-eight attorneys whose rates appear in fee

3    applications or employment applications filed in this district in 2021 and who represented debtors

4    or Chapter 11 trustees.  These rates are then averaged giving equal weight to each attorney's rate.

5    However, with the single exception of the *Levandowski* case,[15] every case that the SEC deems

6    "comparable" for its' rate analysis was an individual or small business in non-complex cases in

7    which no creditors committee was even appointed.  The vast majority of these debtors were

8    represented by sole-practitioners or firms with just a few attorneys.    The circumstances of the PFI

9    case would not have permitted sole-practitioners or very small firms to handle the primary

10   engagements.[16]  The circumstances required firms with special expertise to address the attendant

11   complexities in an efficient manner, a factor regularly recognized by courts assessing fee

12   applications.  *In re First Magnus Fin. Corp.*, Case No. 4:07-bk-01578-JMM, 2008 Bankr. LEXIS

13   4949, **6-8 (Bankr. D. Ariz. May 22, 2008) (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405

14   (9th Cir. 1992); *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 767 (D. Md. 2001);

15   *Atlantic States Legal Foundation, Inc. v. Onondaga Dept. of Drainage & Sanitation*, 899 F. Supp.

16   84, 89-90 (N.D. N.Y. 1995)).  As a result, all of the attorneys named in the chart attached as

17   Exhibit A should be removed from the SEC's list on the grounds that none of them were

18   positioned to handle large, complex bankruptcy cases like these.

19         Ironically, the removal of the aforementioned "comps" results in the entire Baddley

20   Declaration list being reduced to the *Levandowski* bankruptcy case.  Notably, the SEC excludes

21   the rates of two Goodwin Procter bankruptcy attorneys whose time is accounted for in the firm's

22   fee applications in 2021.

---

[15]   The SEC also included Sacramento-based attorneys representing the plan administrator in the *Heller Ehrman* case, although the Baddley Declaration states he only included attorneys representing debtors or Chapter 11 trustees.  In addition to not meeting the stated standard for inclusion in the list, work performed representing a plan administrator eleven years after the plan was confirmed is inappropriate because those attorneys were not performing comparably complex tasks so late in the proceedings. *In fact, Pachulski served as counsel to the Debtors when the complex work was undertaken and the court compensated the firm at its then prevailing hourly rates.*

[16]   *See* the Declaration of Richard A. Lapping filed concurrently with this Reply.

SMRH:4859-1365-14765
Case: 20-30604    Doc# 1337    Filed: 03/21/22    Entered: 03/21/22 20:02:27    Page 13 of 25

Including the two attorneys in the calculation regarding Goodwin Procter's blended rate results in a $154 per hour increase in the SEC's proposed $510 blended rate benchmark for an attorney with twelve (rather than twenty-four) years of experience:

| Attorney | Case | Billing Rate | Year of Admission |
|---|---|---|---|
| Nathan Schultz[17] | *In re Anthony Scott Levandowski*, Case No. 20-30242 | $ 867.00 | 2010 |
| Artem Skorostensky[18] | | $ 629.00 | 2017 |
| Tobias Keller | | $ 900.00 | 1990 |
| Dara L. Silveira | | $ 500.00 | 2010 |
| Danisha Brar | | $ 425.00 | 2016 |
| **Average** | | **$ 664.20** | **2009** |

2. The SEC Objection Fails to Include Other Divisions or 2020 Fee Applications

The aforementioned analysis makes clear that only one case in the San Francisco Division for which fee applications were filed in 2021 is potentially comparable as a means of assessing the fairness of the rates charged in this case. Rather than look to non-comparable cases to obtain a wider sample as the SEC did, a better approach would have been the inclusion of cases for which fee applications were filed in 2020, or the inclusion of cases in other divisions of the Northern district. That methodology would have captured at least the following:

| Case | | Attorney Billing Rates Approved | Blended Rate (2018-2020) |
|---|---|---|---|
| *In re Sedgwick, LLP*, Case No. 18-31087 | Pachulski Stang Ziehl & Jones, LLP (debtor's counsel) [Dkt. No. 337] | $575.00 to $1,145.00 | $761.07 |
| | Sheppard Mullin Richter & Hampton (UCC counsel) [Dkt. No. 379] | $615.00 to $795.00 | $674.79 |
| | Pillsbury Winthrop Shaw Pittman LLP (initial UCC counsel) [Dkt. No. 175] | $600.00 to $785.00 | $681.71 |

---

17  Excluded from SEC's analysis of comparable cases.

18  Excluded from SEC's analysis of comparable cases.

SMRH:4858-1362-14765

| Case | | Attorney Billing Rates Approved | Blended Rate (2018-2020) |
|---|---|---|---|
| *In re Wave Computing, Inc.*, Case No. 20-50682 | Sidley LLP (debtors' counsel) [Dkt. No. 1282] | $590.00 to $1,390.00 | $908.36 (attorneys only) |
| | Hogan Lovells US LLP (UCC counsel) [Dkt. No. 1263] | $610.00 to $1,550.00 | $965.00 (attorneys only) |

These comparable cases, which include rates dating to 2018, demonstrate that hourly rates sought here are well within the market for bankruptcy attorneys performing services in complex reorganizations in this district.

Finally, the SEC argues that in the *PG&E* case filed in this district, the largest bankruptcy case in California history, the blended rates of attorneys were lower than this case. The blended rate cited by the SEC is not a true comparison for two reasons. First, the blended rates of Cravath Swaine & Moore LLP ("Cravath"), co-counsel for the Debtors ($624), and Baker & Hostetler LLP, counsel to the Official Committee of Tort Claimants ($634), are skewed lower because unlike the other case professionals, some non-bankruptcy professionals in those two firms spent large amounts of time preparing for fire litigation at lower blended litigation rates. The comparison of the blended rates of Weil Gotshal & Manges LLP, PG&E's lead bankruptcy counsel ($948) and Milbank Tweed Hadley & McCoy ("Milbank's"), counsel to the official committee of unsecured creditors of PG&E ($987), for a blended rate of $967.50 for the bankruptcy-related work is a more informative comparison.[19] Second, the SEC includes various non-bankruptcy special counsel in *PG&E* while omitting special counsel in its chart for these cases.

**F.** **The Three Committee Structure Was Essential and Saved Time and Money**

While the SEC Objection focuses on blended rates, it is worth briefly addressing the investors' concerns regarding the payment of fees for two *ad hoc* committees in addition to the official committee. The legal costs easily could have doubled here if the LLC members and DOT

---

[19] Notably, Milbank's final fee application in *PG&E* shows that it charged an associate that had *not even been admitted to practice yet* at up to $625 per hour. Cravath's final fee application in *PG&E* also showed that it charged $595 per hour for an associate that had not yet been admitted to practice.

-10-

1    noteholders had not been organized into groups and been given a budget so that experienced

2    counsel could negotiate a compromise with the Debtors and the official committee. This is

3    because any outcome other than the compromise reached would have required lengthy litigation.

4    For instance, there could have been litigation to subordinate the interests of the LLC members. Or

5    litigation to enforce or to set aside the DOT liens. Or, more likely, both issues would have been

6    litigated, resulting in investors suing one another for priority of payment on claims in lawsuits that

7    lasted for years. It is difficult to quantify saved costs, but that is what the Professionals were able

8    to achieve using the three committee structure.

9    **G.    The UST did not Object to the Professionals' Rates or the Fee Applications.**

10          It is telling that the UST is not echoing the SEC's concerns regarding the Professionals'

11    hourly rates, particularly given the SEC initially raised the same concerns long ago. The UST is

12    regularly involved in Chapter 11 cases in this division. Given the UST's familiarity here, one

13    would expect that if the Professionals' rates truly were out of sync with the local market or the

14    complexity of these bankruptcy cases, the UST would have raised similar objections as the SEC.

15          The UST's involvement here included identifying issues with numerous interim and final

16    fee applications and negotiating additional discounts or other modifications with affected

17    Professionals. Regarding the Fee Applications in particular, on March 9, 2022, the UST filed an

18    Omnibus Response (the "UST Response") which stated the UST had reviewed the Fee

19    Applications, "identified issues concerning the reasonableness of the fees sought and reached

20    agreements with all professionals to resolve possible objections to the fee application for this final

21    period prior to the hearing." Nowhere in the UST Response is there any indication that the UST's

22    office, which is deeply familiar with the rates charged in this local market, has any objection to the

23    rates charged by any of the Professionals.

24    **H.    The SEC Objection "Cherry Picks" Examples of Public Interest Fee Reductions**

25          The SEC Objection asserts that the Court should consider the nature of the creditor body

26    ("a substantial number of individuals victimized by the debtor's long-running Ponzi scheme") in

27    determining reasonable compensation, setting forth the professional fees charged in five Ponzi

28    cases (four receivership cases and only one bankruptcy case). The premise that professionals' fees

1  should be subject to a reduction any time investors have been defrauded creates an unworkable

2  standard that will discourage attorneys from taking such representations, especially in light of the

3  many types of victims (including victims of sex abuse and opioid addiction to name just two) who

4  do not receive 30 or 40 percent discounts that the investor letters suggest some PFI investors have

5  been led to expect by the SEC.

6      If the Court agreed to treat Ponzi cases as a special exception to Section 330, then the SEC

7  Objection asserts the Court should "compare the requested compensation to the compensation

8  *customarily awarded* in other Ponzi scheme cases," [SEC Objection at 14 (emphasis added)].

9  However, the selection of five cherry-picked cases (only one of which is a bankruptcy case)

10  cannot establish a level of "customary" compensation.[20]

11      Bankruptcy cases are replete with examples of unimaginable victimization, but attempting

12  to weigh the distress from different harms inflicted on creditors in determining the reasonableness

13  of fees is unworkable, contrary to the Bankruptcy Code, and damaging to victims.  The Court

14  should reject the call to create new law in this regard.[21]  Further, utilizing the existence of a Ponzi

15  scheme as a standard in reasonableness ignores that Ponzi schemes, and their unravelling, are all

16  different.  The level of expertise required to administer a Ponzi in which real properties must be

17  operated and sold (and title defects cleared) during a case in which multiple types of creditors with

18  different legal arguments as to priority are victims, is vastly different from a Ponzi scheme in

19  which there is no real business or asset to administer.

20      Next, the SEC Objection has not established what "customary" compensation would be.

21  First, the SEC's reliance on receivership cases as a means of determining what is customary in a

22

23

---

[20]  Further, the examples cited in the SEC Objection tell a more mixed story than the SEC presents.  For example, in
the *Stanford* Ponzi case, as of April 30, 2021 (more than a decade after the receivership commenced), the court-
appointed receiver had recovered approximately $1 billion of the roughly $5 billion in investor losses, and paid
fees to professionals amounting to $263 million.  Authorized distributions were $549 million and provided a
distribution of 11.1%.  The blended rate for a single professional's work performed more than a decade after the
major work was done does not supply an appropriate "comp."  [Case 3:09-cv-00298-N; Dkt. No. 3086].

[21]  Judge Holt addressed this very issue in *Easterday*, noting that, in his estimation, a court could not force a
professional to cap fees or not charge its normal hourly rates in cases with public interest overlays.  *In re
Easterday Ranches, Inc., et al.* (Bankr. E.D. Wash., August 25, 2021), Verbatim Transcription of Proceedings
from Audio File at 35-6.

1  Chapter 11 Ponzi case is wholly inappropriate.  Receivership cases are very different from

2  bankruptcy cases for several reasons.  At the very least, no order issued in a receivership would

3  have given a title company sufficient comfort to close on a portfolio sale of the Debtors'

4  properties.

5          The SEC's remaining reference is to a *single* Chapter 11 Ponzi case (*1 Global Capital,

6  LLC*, Case No. 18-19121 (Bankr. S.D. Fla. July 27, 2018) in which debtors' counsel agreed in

7  2018, at the commencement of the case, to a 20% fee reduction with a maximum hourly rate of

8  $750 (which ultimately equated to a blended rate of $503.69)[22] This one case does not establish

9  (1) that there exists a customary discount for bankruptcy attorneys retained in Ponzi cases, much

10  less that one should be mandated by the Court after fees were agreed to by the clients and the fees

11  were incurred or (2) a customary blended rate for attorneys employed in Chapter 11 Ponzi cases.

12          The Professionals do not believe that any "customary" discount for Chapter 11 Ponzi cases

13  exists.  Rather, a firm's decision to extend a discount at the commencement of the case is a

14  reflection of the economic bargain a firm makes with its client and is based on factors such as

15  desire to obtain the representation in relation to the firm's existing or anticipated case load.  The

16  Professionals here have represented a variety of debtors, chapter 11 trustees, and committees in a

17  wide range of "victim" and fraud bankruptcy cases – far greater than the sample size of five

18  provided by the SEC – and represent to the Court that fee reductions of 20% are not at all

19  "customary" and are instead very much an outlier.[23]

20          As set forth above, in *Woodbridge*, a significantly more comparable case where the SEC

21  agreed to the professionals' 5% discount, the blended rates of the attorneys representing the

22  debtors and committees ranged from $739.42 to $966.73.

23          Blended rates exceeding those sought here have been approved in a variety of recent victim

24  cases, including:

25

26

27  [22] As set forth in the final fee application of Greenberg Traurig.  Case No. 18-19121, Dkt. No. 966 at p. 15.

28  [23] As set forth in several of the declarations supporting this Reply, the lead Professionals do not believe that fee
         reductions of 20% are customary in victim-specific bankruptcy cases.

-13-

| Case | Firm | Blended Rate |
|---|---|---|
| *In re USA Gymnastics*, Case No. 18-09108 (Bankr. S.D. Ind.) | Jenner & Block LLP (debtor's counsel) [Dkt. No. 1423] | $832.61 |
| | Pachulski Stang Ziehl & Jones LLP (committee counsel) [Dkt No. 1421] | $988.03 |
| *In re The Weinstein Company Holdings LLC*, Case No. 18-10601 (Bankr. D. Del.) | Cravath, Swaine & Moore LLP (debtors' counsel) [Dkt. No. 3313] | $1,087.90 |
| | Pachulski Stang Ziehl & Jones LLP (committee counsel) [Dkt. No. 3316] | $853.22 |
| *In re Boy Scouts of America*, Case No. 20-10343 (Bankr. D. Del.)[24] | White & Case LLP (debtors' counsel) [Dkt. No. 9385]* | $966.14 |
| | Pachulski Stang Ziehl & Jones LLP (committee counsel) [Dkt. No. 8720]* | $962.30 |
| *In re Mallinckrodt plc*, Case No. 20-12522 (Bankr. D. Del.) | Latham & Watkins LLP (debtors' counsel) [Dkt. No. 6774] | $1,058.95 |
| | Akin Gump Strauss Hauer & Feld LLP (opiod-related committee counsel)* [Dkt. No. 6441] | $967.00 |
| | Cooley LLP (committee counsel) [Dkt. No. 6801] | $1,113.43 |
| *In re DPMB*, Case No. 20-30080 (Bankr. W.D.N.C.) | Jones Day (debtor's counsel) [Dkt. No. 1335] | $1,011.54 |
| | Robinson & Cole LLP (committee of asbestos personal injury claimants) [Dkt. No. 1231] | $764.73 |

These cases make clear that the rates sought by the Professionals are well within those sought and approved in victim-specific cases throughout the country.

## I. The Professionals' Billing Rates and Budget Projections Were Accepted by their Respective Clients and Widely Circulated

The SEC Objection also fails to acknowledge or account for the fact the Professionals' rates were agreed to by their respective clients. In each instance, the client - whether it was the Debtors, unsecured creditors committee, or one of the *ad hoc* committees - selected its Professional(s) after considering other options and with full knowledge of the rates that would be charged. This informed selection should be given deference as long-standing public policy favors permitting parties to retain professionals of their choice. *In re Christ's Church of Golden Rule*, 157 F.2d 910, 911 (9th Cir. 1946) ("'The relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together

---

[24] Blended rates for this case include paraprofessionals.

Case No. 20-30604
OMNIBUS REPLY

SMRH:4858-1365-14765

harmoniously. Only in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel . . .'") (quoting *In re Mandell*, 69 F.2d 830, 831 (2d Cir. 1934)); *Smith v. Geltzer*, 507 F.3d 64, 71 (2d Cir. 2007) (bankruptcy court should interfere with the trustee's choice of counsel "'[o]nly in the rarest cases,'" such as when the proposed attorney has a conflict of interest, or when it is clear that "'the best interest of the estate'" would not be served by the trustee's choice) (quoting *Mandell*); 3 COLLIER ON BANKRUPTCY ¶ 327.04 (Alan W. Resnick & Harry J. Sommer eds., 16th ed.) (in the absence of a legitimate or material conflict of interest, "failure to approve the trustee's selection [of counsel] in the absence of good reason has been called an abuse of judicial discretion"); *In re Malhotra*, No. 2:16-bk-02608-DPC, 2016 Bankr. LEXIS 2521, *8 (Bankr. D. Ariz. July 7, 2016) (same, citing *Christ's Church*, *Mandell* and Collier); *In re Shore*, No. 03-43072, 2004 Bankr. LEXIS 1432, at *11 (Bankr. D. Kan. May 14, 2004) ("a debtor's choice of counsel is entitled to great deference").

The Professionals have provided appropriate notice to interested parties of their fees. The hourly rates for the Debtors' and Committees' Professionals and the official committee's counsel were set forth in their respective employment applications filed with the Court. Monthly estimates of fees for each of the Professionals were also included in the Debtors' monthly operating reports. And accrued fees for each of the Professionals were identified in every omnibus notice of hearing on fee applications that was served on all creditors. So to the degree that parties express surprise at the Professionals' hourly rates and aggregate fees incurred, that surprise is misplaced.

## III.

## <u>CONCLUSION</u>

Wherefore, for the reasons set forth above, the Professionals respectfully request the Court overrule the SEC Objection and approve each of the Fee Applications as submitted.

SMRH:4869x1366-14765

Case: 20-30604    Doc# 1337    Filed: 03/21/22    Entered: 03/21/22 20:02:27    Page 20 of 25

Dated: March 21, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____/s/ Ori Katz_____
ORI KATZ
J. BARRETT MARUM
JEANNIE KIM
MATT KLINGER

Counsel for the Reorganized Debtors

Dated: March 21, 2022

TRODELLA & LAPPING LLP

By _____/s/ Richard A. Lapping_____
RICHARD A. LAPPING

Conflicts Counsel for the Reorganized Debtors

Dated: March 21, 2022

PACHULSKI STANG ZIEHL & JONES LLP

By _____/s/ Debra I. Grassgreen_____
DEBRA I. GRASSGREEN
JOHN FIERO
CIA H. MACKLE

Counsel to the Official Committee of Unsecured Creditors

Dated: March 21, 2022

SKLAR KIRSH, LLP

By _____/s/ Robbin L. Itkin_____
ROBBIN L. ITKIN
KELLY K. FRAZIER

Counsel for Ad Hoc Committee of LLC Members

Dated: March 21, 2022

BAKER & HOSTETLER LLP

By        */s/ Cecily A. Dumas*
            CECILY A. DUMAS

Counsel for the Ad Hoc Committee of Deed of Trust
Holders

Dated: March 21, 2022

DLA PIPER LLP

By        */s/ Richard A. Chesley*
        ERIC D. GOLDBERG
        RICHARD A. CHESLEY
        SHELBY NACE

Counsel for FTI Consulting, Inc.

| Attorney | Billing Rate | Year Admitted | Case | Select Information Regarding Case and Counsel |
|---|---|---|---|---|
| Arasto Farsad | $350 | 2010 | *In re Miller Martinez Fernando & Malou Pangilinan Fernando, Case No. 21-30336-WJL* | Individual Debtor: Yes<br>Firm Size: 2 attorneys<br>Minimal Assets/Liabilities[1]: Yes<br>Total Docket Entries[2]: 57<br>Committee Appointed: No |
| Brian A. Barboza | $300 | 2008 | *In re Esly Figueroa, Case No. 21-30146-HLB* | Individual Debtor: Yes<br>Firm Size: Sole Practitioner<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 105<br>Committee Appointed: No |
| E. Vincent Wood | $425 | 2014 | *In re Edward Leonard Loev, Case No. 21-30252-HLB* | Individual Debtor: Yes<br>Firm Size: Sole Practitioner<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 108<br>Committee Appointed: No |
| Eric J. Gravel | $400 | 2008 | *In re Khosro Farahani, Case No. 21-30571* | Individual Debtor: Yes<br>Firm Size: Sole Practitioner<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 46<br>Committee Appointed: No |
| Stephen D. Finestone | $525 | 1986 | *In re Donald J. Putterman and Marla A. Sturges, Case No. 21-30353* | Individual Debtor: Yes<br>Subchapter 5 case<br>Firm Size: 4 attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 88<br>Committee Appointed: No |
| Jennifer C. Hayes | $525 | 1998 | | |
| Johnson C. Lee | $385 | 2007 | | |
| James A. Shepherd | $450 | 2009 | *In re Frederick Rhode Stoddard, Case No. 21-30329-WJL* | Individual Debtor: Yes<br>Firm Size: Sole Practitioner<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 156<br>Committee Appointed: No |
| Marc Voisenat | $450 | 1994 | *In re Maiohua Wu, Case No. 21-30109* | Individual Debtor: Yes<br>Firm Size: Sole Practitioner<br>Minimal Assets/Liabilities: Yes |

[1]  For purposes of this analysis, assets and liabilities per the bankruptcy petition of less than $10 million each are considered "minimal."

[2]  This information is included in order to help assess the complexity of the case.

| Attorney | Billing Rate | Year Admitted | Case | Select Information Regarding Case and Counsel |
|---|---|---|---|---|
| | | | | Total Docket Entries: 47<br>Committee Appointed: No |
| Michael H. Meyer | $525 | 1978 | *In re Michele Louise Nessier, Case No. 20-31026* | Individual Debtor: Yes<br>Firm Size: 2 attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 62<br>Committee Appointed: No |
| Brent D. Meyer | $375 | 2009 | | |
| Michael D. Lee | $500 | 2010 | *In re Mary Jennings, Case No. 21-30132* | Individual Debtor: Yes<br>Firm Size: 2 attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 112<br>Committee Appointed: No |
| Robert Goldstein | $550 | 1996 | *In re Wendy Hemming, Case No. 16-30394* | Individual Debtor: Yes<br>Firm Size: 2 attorneys<br>Majority of time entries were 2016-2018, so this is not an example of current rates. |
| Merle C. Meyers | $680 | 1976 | *In re Barett Evan Scherman and Susan Averbach Scherman, Case No. 20-30473* | Individual Debtor: No<br>Firm Size: 3 attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 123<br>Committee Appointed: No |
| Kathy Quon Bryant | $500 | 2001 | | |
| Michele Thompson | $450 | 2005 | | |
| Simon Aron | $595 | 1983 | *In re BSK Hospitality Group, LLC, Case No. 21-40686* | Individual Debtor: No<br>Firm Size: 50+ attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 124<br>Committee Appointed: No |
| Johnny White | $550 | 2010 | | |
| Andrew H. Morton | $515 | 2010 (NY) | *In re Crosscode, Inc., Case No. 20-30383* | Individual Debtor: No<br>Firm Size: 50+ attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 321<br>Committee Appointed: No |
| Matthew D. Metzger | $595 | 2005 | *In re Hireclub.com, Inc., Case No. 21-30694* | Individual Debtor: No<br>Firm Size: sole practitioner<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 69<br>Committee Appointed: No |
| Gregory A. Rougeau | $450 | 1998 | | Individual Debtor: No<br>Firm Size: 2 attorneys |

SMRH:4858-1266-14765

| Attorney | Billing Rate | Year Admitted | Case | Select Information Regarding Case and Counsel |
|---|---|---|---|---|
| Kenneth A. Brunetti | $450 | 1991 | *In re Don Ramon's Real Estate, LLC, Case No. 21-30191* | Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 65<br>Committee Appointed: No |
| Steven R. Fox | $475 | 1988 | *In re Douce France, Case No. 20-30095* | Individual Debtor: No<br>Firm Size: 2 attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 171<br>Committee Appointed: No |
| Michael St. James | $650 | 1980 | *In re Jackson Street Equities, LLC, Case No. 21-30298* | Individual Debtor: No<br>Firm Size: sole practitioner<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 77<br>Committee Appointed: No |
| Charles Maher<br>Gregg Kleiner<br>Jeffrey Fillerup<br>Michael Isaacs | $550<br>$550<br>$550<br>$550 | 1986<br>1989<br>1985<br>1981 | *In re Theos Fedro Holdings, LLC, Case No. 21-30202* | Individual Debtor: No<br>Firm Size: 4 attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 196<br>Committee Appointed: No |
| Sarah M. Stuppi | $425 | 1982 | *In re Theos Fedro Holdings, LLC, Case No. 21-30202* | Individual Debtor: No<br>Firm Size: 2 attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 196<br>Committee Appointed: No |
| Jeffrey I. Golden | $750 | 1988 | *In re Tali Corp. d/b/a BKR, Case No. 21-30254* | Individual Debtor: No<br>Firm Size: 11 attorneys<br>Minimal Assets/Liabilities: Yes<br>Total Docket Entries: 137<br>Committee Appointed: No |