**Entered on Docket**
**April 18, 2022**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**




**Signed and Filed: April 18, 2022**

**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 20-30242 HLB |
| | ) | |
| PROFESSIONAL FINANCIAL INVESTORS, INC., | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART FTI CONSULTING, INC.'S FOURTH AND FINAL FEE APPLICATION (DKT. 1089)**

This case came before the court on March 31, 2022 for a hearing on the Fourth and Final Application for Compensation and Reimbursement of Expenses filed by FTI Consulting, Inc. ("FTI").[1] Appearances were as noted on the record.

For the reasons stated herein, the court will grant the Application in part and will approve on a final basis fees and expenses for the Relevant Period (October 1, 2021 – December 15, 2021) totaling: **$1,085,859.51,** which consists of fees totaling **$1,068,070** and expenses totaling **$17,789.51.** The court also will grant the Application in part and will approve on a final basis fees and expenses previously approved on an interim basis totaling **$14,044,719.20,** which consists of fees totaling **$13,903,835.30** and expenses totaling **$140,883.85.** These totals

[1] Dkt. 1089 (the "Application").



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 1 of 17

represent a reduction in fees totaling $521,923.86, an amount equal to 20% of FTI's Holdback of $2,609,619.30 and no reduction to FTI's expenses.

**A. FTI's Employment**

The court originally approved FTI's employment as financial advisor to debtors Professional Financial Investors, Inc. ("PFI") and Professional Investors Security Fund, Inc. ("PISF" and, together with PFI, the "Original Debtors") on October 13, 2020, with FTI's employment effective as of September 3, 2020.[2] This engagement contemplated that FTI would conduct a forensic investigation into the fraudulent activity carried out by the Original Debtors' former management, which appeared to have been conducted over many, many years.

FTI was selected as financial advisor after interviews of five candidate firms, with substantial input from the Official Committee of Unsecured Creditors (the "OCUC"), as well as from two court-appointed Ad Hoc Committees made up of Deed of Trust investors and LLC/LP investors. And FTI provided advisory services not only to the Debtors (as defined below), but to each of the Committees.

In February 2021, PFI, PISF, and several affiliated debtors (the "LLC/LP Debtors") moved[3] the court for approval of the employment of FTI Senior Managing Director Andrew Hinkelman as the Original Debtors' Chief Restructuring Officer ("CRO") and for approval of the expansion of FTI's original employment to include

---

[2] Dkt. 211.

[3] Dkt. 383.

its provision of financial advisory, forensic accounting, and investigatory services to the LLC/LP Debtors. The Original and LLC/LP Debtors asked that the court approve FTI's expanded employment and Mr. Hinkelman's employment as CRO as of January 4, 2021. The court entered an order granting this relief on March 3, 2021.[4]

On March 22, 2021, after several additional affiliates of the Original and LLC/LP Debtors became debtors in bankruptcy (the "New Debtors" and, together with the Original Debtors and the LLC/LP Debtors, the "Debtors"), the New Debtors asked the court to further expand FTI's employment to provide them with financial advisory, forensic accounting, and investigatory services, effective as of February 18, 2021.[5] The court entered an order granting the New Debtors' request on March 31, 2021.[6]

**B. FTI's Services**

Unwinding the Ponzi scheme perpetrated by Debtors' former management, while at the same time trying to manage the 41 Debtors as legitimate businesses in pending bankruptcy cases, has proven an enormously complicated, monumental task. Former management's fraud affected approximately 1,800 innocent investors, and FTI consistent with the terms of its employment) took up the laboring oar in attempting to calculate the claim of each investor, an essential aspect of these cases.

---

[4] Dkt. 442.

[5] Dkt. 495.

[6] Dkt. 522.



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 3 of 17

The results in this case have exceeded the court's expectations in virtually every respect. The Debtors, with significant input, support, and cooperation from the investors, as well as the OCUC and Ad Hoc Committees, confirmed a plan in June 2021 – less than a year after the first of these cases was commenced.

Approximately 6 months later, the Debtors closed a transaction through which substantially all of their real property was sold in exchange for gross proceeds in excess of $436 million. Other real estate sales have recently closed or will soon close that will yield approximately $30 million in additional gross proceeds for these estates.

None of this could have been accomplished without FTI's hard work. For most of the duration of these cases, FTI's work was supervised by Mr. Michael Goldberg, who has served as the Original Debtors' sole director since August 2020. Mr. Goldberg has been in almost daily contact with FTI and has closely monitored its services and the fees it has incurred. In assessing the Application, the court gave great weight to Mr. Goldberg's declaration[7] in support thereof, given his intimate involvement in every aspect of this case, his personal knowledge of the quality and scope of the services FTI provided, and his expertise in Ponzi scheme cases.

---

[7] Dkt. 1338 (the "Goldberg Decl.").



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 4 of 17

### C. Objections to the Application

The United States Securities and Exchange Commission (the "SEC") has objected to the Application.[8] The SEC Objection raises four points: **(1)** FTI's fees for its forensic accounting and investigatory services should be substantially reduced due to an excessive number of internal meetings or "virtual working sessions"; **(2)** FTI's fees for its forensic accounting and investigatory services exceeded the budget for such services by approximately $756,000, and should be reduced accordingly; **(3)** FTI's fees for CRO services exceed the cap on such fees by $122,564, and should be reduced accordingly; **and (4)** the blended hourly rate charged by FTI CRO services ($685.00) is excessive and should be reduced.

The SEC did not quantify the amount of the reductions for which it advocates in arguments (1) or (4), but with respect to argument (4), the SEC provided brief descriptions of cases it argues are similar to these and in which blended hourly rates range from $311.00 - $614.00. As to argument (3), FTI has agreed to reduce its fees by $122,564.

The United States Trustee filed a response,[9] which pertains not only to the Application, but to the other 13 fee applications filed at the same time by other estate-retained professionals. The UST Response states that it negotiated a $13,000 reduction of FTI's fees. FTI does not dispute this.

---

[8] Dkt. 1312 (the "SEC Objection").

[9] Dkt. 1301 (the "UST Response").



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 5 of 17

And finally, the court received approximately 150 letters from investors regarding the final fee applications filed by estate-retained professionals, including this Application. Most of these letters object generally and unspecifically to the fees these professionals requested. But a few point directly to FTI's Application,[10] noting that FTI exceeded its budgets and expressing disappointment that the sale of the Debtors' real estate portfolio did not realize a higher price, a result for which they blame FTI.

**D. Replies in Support of the Application**

FTI filed a reply in support of the Application.[11] In addition, FTI joined an omnibus reply[12] filed in response to the SEC's Omnibus Objection[13] to the final fee applications filed by Debtors' counsel and counsel for the Committees. The SEC Omnibus Objection expressly did not pertain to FTI's Application, but raised arguments as to the relevant professionals' hourly rates similar to those the SEC asserted in its Objection to the Application.

FTI's Reply touts the results achieved in these cases and the speed with which that happened. It criticizes the SEC for allegedly omitting from its analysis of blended hourly rates cases that were much more similar to these and in which professional charged blended hourly rates higher that that

---

[10] See, e.g., Dkt. 1355 (March 28, 2022 Letter from Mr. Keith Merron, former Chair of the OCUC).

[11] Dkt. 1334 (the "Reply").

[12] Dkt. 1337.

[13] Dkt. 1308 (the "SEC Omnibus Objection").

charged by FTI here. It points out that FTI provided its financial advisory services not only to the Debtors but to the OCUC and Ad Hoc Committees, which it asserts saved the estates the cost of these Committees each hiring its own financial advisory firm. And finally, FTI notes that its hourly rates were disclosed at the time of its employment and were approved by the Debtors and the Committees.

**E. Compensation and Expenses Sought**

The Application requests final approval of compensation and expenses the court previously approved on an interim basis, as follows:

(1) First Interim Application for Compensation[14]

| | |
|---|---|
| Relevant Period: | Sept. 3, 2020 – Nov. 30, 2020 |
| Interim Fees Approved: | $5,124,533.75 |
| Interim Expenses: | $56,293.69 |
| Interim Fees Paid: | $4,099,627.00 |
| Holdback: | $1,024,906.75 |

(2) Second Interim Application for Compensation[15]

| | |
|---|---|
| Relevant Period: | Dec. 1, 2020 – Apr. 30, 2021 |
| Interim Fees Approved: | $6,545,900.00 |
| Interim Expenses: | $44,090.20 |
| Interim Fees Paid: | $5,236,720.00 |
| Holdback: | $1,309,180.00 |

[14] Dkt. 365, as amended by Dkt. 468 and approved by Dkt. 493.

[15] Dkt. 697, approved by Dkt. 861.



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 7 of 17

(3) Third Interim Application for Compensation[16]

Relevant Period: May 1, 2021 – Sept. 30, 2021

Interim Fees Approved: $2,755,325.50

Interim Expenses: $40,499.96

Interim Fees Paid: $2,479,792.95

Holdback: $275,532.55

The fees previously approved on an interim basis total $14,425,759.20, of which FTI has received payment of $11,816,140.00 and of which $2,609,619.30 remains held back (the "Holdback") to account for any reductions that might be ordered in connection with the Application. FTI has received payment of all of its interim expenses, which total $140,883.85 The Application requests final approval of all of the foregoing fees and expenses and payment of the Holdback (less any reductions to which FTI has consented in connection with the Application).

The Application also requests final approval of fees and expenses incurred between October 1, 2021 – December 15, 2021 (the "Relevant Period"). These fees total $1,203,634.00, which consists of fees for CRO services totaling $954,444.00 and fees for forensic accounting and investigatory services totaling $249,190.00. Not included in this amount is an additional $15,000 in fees FTI anticipated incurring in connection with preparing and prosecuting the Application. FTI's expenses for the Relevant Period total $17,789.51.

According to the UST Response, FTI has agreed to a reduction in its fees of $13,000, which reduces the total fees requested in

[16] Dkt. 971, as supplemented by Dkt. 1011 and approved by Dkt. 1050.

the Application to $1,190,634. According to FTI's Reply, it also agrees to a further reduction of its fees by $122,564.00, the amount by which the SEC contends it exceeded the cap on its fees for CRO services, which further reduces FTI's total fees during the Relevant Period to $1,068,070. Adding these fees to FTI's expenses for the Relevant Period yields a total of $1,085,859.51.

Approval of fees and expenses of $1,085,859.51 as requested in the Application and approval of all prior interim compensation and expenses on a final basis would bring FTI's total compensation for these cases to $15,652,502.20. This consists of fees totaling $15,493,828.80 and expenses totaling $158,673.36.

**F. Analysis**

The Application gives rise to a core proceeding in a case under Title 11[17] that this court may hear and determine and as to which it may enter a final order.[18]

FTI's employment is governed by section 327(a), which means the court must analyze the Application under section 330. Section 330 permits the court to award "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses".[19] FTI bears the burden of

---

[17] Unless otherwise indicated, all statutory citations shall refer to Title 11 of the United States Code, aka the "Bankruptcy Code", and all citations to a "Bankruptcy Rule" shall refer to one of the Federal Rules of Bankruptcy Procedure.

[18] 28 U.S.C. §§ 157(a), (b)(1), and (b)(2)(A); General Order No. 24 of the United States District Court for the Northern District of California; In re Dexter Distrib. Corp., 2010 WL 6466583, *4 (B.A.P. 9th Cir. October 21, 2010) (acknowledging bankruptcy court's subject matter jurisdiction with respect to applications for compensation filed by estate-retained professionals).

[19] Section 330(a)(1)(A) and (B).

proving that the fees and costs it seeks are compensable or reimbursable under section 330.[20]

In determining the amount of reasonable compensation to be awarded, the court must consider "the nature, the extent, and the value of such services, taking into account all relevant factors", including: (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of the case; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) whether the applicant is board certified or otherwise has demonstrated skill and experience as a bankruptcy practitioner; and (F) whether the compensation sought is reasonable considering compensation customarily sought by comparably skilled practitioners in non-bankruptcy cases.[21] The court may not allow compensation for unnecessary duplication of services or for services that were not reasonably likely to benefit the debtor's estate, or that were not necessary to the administration of the case.[22]

The court has already entered orders approving in part the final applications for compensation that it heard at the same time as FTI's Application. Other than as to one of those

---

[20] In re IMG Transport LLC, 2012 WL 695019, *3 (B.A.P. 9th Cir. Mar. 5, 2012) ("[t]he burden is upon the applicant to demonstrate that the fees requested are reasonable") (citations omitted).

[21] Section 330(a)(3)(A)-(F).

[22] Section 330(a)(4)(A).



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 10 of 17

applications, which was filed on behalf of an applicant whose fees and costs were being paid under an insurance policy rather than by these bankruptcy estates, the court declined to award fees the given professional anticipated incurring in connection with the preparation and prosecution of its final fee application. The court also reduced each professional's fees by an amount equal to 15% of the given professional's Holdback. The court will afford like treatment to FTI, which means that the court will decline to approve the Application's request for $15,000 in anticipated fees and will reduce overall fees by an amount equal to 15% of FTI's Holdback, or $391,442.89. This will reduce FTI's total fees to $15,102,385.90.

The only remaining question is whether the court should take additional reductions for the reasons stated in the SEC Objection, the investor letters, or for any other reason. The parties do not dispute that, in evaluating the reasonableness of fees charged by any estate retained professional the court should consider rates charged by professionals with similar experience, performing similar services, in the relevant market.[23] They also do not dispute that the court has extremely broad discretion in determining whether fees are reasonable.[24]

With respect to the SEC's argument that the blended rate charged by FTI for its CRO services, the court finds that FTI has successfully carried its burden of proving the reasonableness of the rates it charged. The court does not find the parties'

---

[23] In re Tower Park Props. LLC, 2021 WL 755771, *5 (B.A.P. 9th Cir. Feb. 26, 2021) (citation omitted).

[24] Id.



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 11 of 17

comparison of cases persuasive one way or another. Rather, the court gives great weight to the fact that the Debtors, the Committees, and Mr. Goldberg accepted FTI's rates at the outset of its employment. While the court preserved the SEC's right to raise this argument in connection with the Application, it did not suggest that it agreed with it. And now, even with the benefit of the comparable cases to which the SEC cites, the court chooses instead to focus on the deal struck by the parties whose resources would be used to fund FTI's work: the Debtors and the Committee, and more particularly, the investors, who were involved every step of the way. In the absence of more persuasive evidence demonstrating that FTI's blended rate for CRO services was excessive, the court declines to disturb it.

The SEC and many investors also took issue with the fact that FTI repeatedly exceeded its budget, often without receiving prior permission to do so from the Debtors. Mr. Goldberg and FTI acknowledge this, but they explain that the Debtors' records were in a state of disarray far greater than anyone imagined, which made FTI's work exponentially more difficult. They also point out that FTI has already voluntarily reduced its fees or otherwise not billed for much of the additional work it was required to perform in order to complete its task of recreating the Debtors' records and calculating the investors' individual claims. And finally, they note that FTI worked with the Debtors and the Committee to implement greater control over FTI's work and closer monitoring of its adherence to its budgets.

Neither the SEC nor the investors dispute Mr. Goldberg's or FTI's explanations of how and why FTI's job proved much more



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 12 of 17

challenging than anyone originally imagined. They also do not dispute that FTI, the Debtors, Mr. Goldberg, and the Committees addressed FTI's adherence to its budget. They simply argue that budget overruns should not occur absent prior approval and they insist that the court reduce FTI's fees to account for these allegedly poor billing practices. The court respectfully disagrees.

The court gives great weight to the fact that the Committees and Mr. Goldberg support FTI's Application, as well as to their unanimous assertion that, once they imposed greater control over FTI's work and more closely monitored FTI's adherence to its budget, they experienced no additional difficulty. The court also agrees with FTI's argument that its prior voluntary reductions are more than sufficient to account for budget overruns.

The SEC takes particular issue with FTI's billing for "virtual working sessions", arguing that FTI has failed to justify these multi-person meetings as required. FTI goes to great lengths to explain the necessity of these meetings and contends that it has already taken voluntary reductions that more than make up for any billing the court might find inappropriate.

After taking the Application under advisement, the court reviewed once again FTI's time sheets submitted with each of its fee applications, including the Application. For the most part, FTI's employees were judicious with their time and employed sound billing practices. With respect to the many meetings and conferences (virtual and otherwise) that occurred between FTI employees and other professionals and/or parties in interest, the



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 13 of 17

court believes such meetings were necessary to the effective administration of these cases. Simply put, professionals have to talk to one another and the court finds nothing unusual or unreasonable about the number or length of meetings that took place in these very complicated cases.

But the court did identify many, many examples in which FTI employees billed for clerical tasks. For the most part, these problems were attributable to FTI billers with relatively low hourly rates, which blunts the impact of this issue on the fees charged. But the court concludes that an additional reduction in fees must be taken.

Rather than identifying problematic time entries one by one, the court will exercise its substantial discretion and reduce FTI's fees by a total amount equal to 20% of its Holdback, or $521,923.86. This will adequately account for time billed for clerical tasks, and adequately accommodates voluntary reductions and discounts FTI has already taken.

Nothing in this order should be interpreted as the court disregarding the investors' letters or the sentiments they express. As the court has repeatedly acknowledged, this is a terrible situation. Many of the investors counted on distributions from their investments in the PFI enterprise to secure their retirement. Without that income, many of them have had to return to the workforce. For those who are unable to continue or resume working, the situation is more dire. While Mr. Goldberg and other professionals continue to pursue other sources of recovery for the investors through litigation taking place in other courts, it appears that investors will not see


Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 14 of 17

much more in the way of distributions from these bankruptcy estates. Nothing the court can do will change that heartbreaking result.

But the court does not believe it fair to point to FTI as the cause of their disappointment. This case was incredibly complex – much more so than even the most experienced of these professionals ever imagined. FTI worked incredibly hard, and other than the narrow issue the court has identified, the court is unable to find or conclude that FTI's work was not entirely necessary to the administration of these cases or that FTI's fees were not reasonable. Professionals cannot guarantee results.

**G. Conclusion**

For the reasons stated herein, the court **ORDERS** as follows:

**1.** The Application is **GRANTED IN PART AND DENIED IN PART.**

**2.** The court hereby **GRANTS IN PART** and **APPROVES** the Application on a final basis as to fees and expenses for the Relevant Period totaling: **$1,085,859.51,** which consists of fees totaling **$1,068,070** and expenses totaling **$17,789.51.**

**3.** The court hereby **GRANTS IN PART** and **APPROVES** on a final basis fees and expenses previously approved on an interim basis totaling **$14,044,719.20,** which consists of fees totaling **$13,903,835.30** and expenses totaling **$140,883.85.** These totals represent a reduction in fees totaling $521,923.86, an amount equal to 20% of FTI's Holdback of $2,609,619.30 and no reduction to FTI's expenses.

**4.** The Debtors are authorized to immediately pay FTI a total of **$3,173,554.95,** which consists of fees and expenses for



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 15 of 17

the relevant period totaling $1,085,859.51 and $2,087,695.44 of the Holdback.

**5.** To the extent the Application seeks $15,000 in fees FTI anticipated incurring in connection with the preparation and prosecution of the Application, it is hereby **DENIED IN PART.**

**6.** To the extent the Application seeks final approval of fees and expenses in excess of those awarded by this order, it is hereby **DENIED IN PART.**

****END OF ORDER****



Case: 20-30604 Doc# 1400 Filed: 04/18/22 Entered: 04/18/22 09:52:49 Page 16 of 17

**Court Service List**

[None]